## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation<br><br>        Plaintiffs,<br><br>v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation,  SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company<br><br>        Defendants. | **Case No.**  2:18-cv-1290 |

## COMPLAINT AND JURY DEMAND

Plaintiffs Kyko Global, Inc., Kyko Global GmbH, and Prithvi Solutions Inc. by and through their counsel, Joseph F. Rodkey, Jr. and Fowkes Rodkey, state as follows against Defendants:

## PARTIES

1.    Plaintiff Kyko Global, Inc. is a Canadian corporation with its principal place of business in Ontario, Canada.

2.      Plaintiff Kyko Global GmbH is a Bahamian corporation with its principal place of business located in New Providence, Bahamas and is a wholly-owned subsidiary of Kyko Global Inc. (together with Kyko Global Inc., "Kyko").

3.      Plaintiff Prithvi Solutions, Inc. ("PSI") is a Delaware corporation with its principal place of business in Wilmington, Delaware.

4.      By operation of orders entered in the Superior Court of King County in the State of Washington, Kyko is a controlling shareholder of PSI and has been judicially appointed as PSI's collection agent to recoup funds owing from third-parties to PSI.

5.      Defendant Prithvi Information Solutions, LTD ("PISL") is an Indian corporation registered to do business in Pittsburgh, Pennsylvania with its principal place of business in the United States located in Pittsburgh, Pennsylvania.

6.      PISL is an information technology consulting and solutions company.

7.      Madhavi Vuppalapati is an Indian citizen who resided and maintained a residence in Pittsburgh, Pennsylvania from approximately 2000-2014.

8.      Ms. Vuppalapati currently resides in Hyderabad, Telangana, India.

9.      Ms. Vuppalapati is the Chairwoman of PISL.

10.     The U.S. Justice Department has indicted Ms. Vuppalapati for, among other things, acts of Wire Fraud and Money Laundering Conspiracy that she committed against Kyko pertaining to a loan factoring agreement between PISL and Kyko that was the subject of a separate civil lawsuit Kyko filed against PISL, Ms. Vuppalapati, and others in the U.S. District Court for the Western District of Washington.

11.     Anandhan Jayaraman is an Indian citizen who resided and maintained a residence in Pittsburgh, Pennsylvania from approximately 2000-2014.

12.     Mr. Jayaraman currently resides in Hyderabad, Telangana, India.

13.     Mr. Jayaraman and Ms. Vuppalapati are married.

14.     Defendant Value Team Corporation is a British Virgin Islands corporation ("VTC") with its principal place of business located in Tortola, British Virgin Islands.

15.     Defendant SSG Capital Partners I, L.P. is a Cayman Islands Limited Partnership ("SSG Capital Partners") with its principal place of business located in George Town, Grand Cayman, Cayman Islands.

16.     SSG Capital Partners is an investment fund.

17.     Defendant SSG Capital Management (Hong Kong) Limited is a Hong Kong company ("SSG Hong Kong") with its principal place of business located in Hong Kong.

18.     SSG Hong Kong is an asset management firm.

19.     SSG Hong Kong and VTC share a common management team.

20.     SSG Hong Kong managed and directed the operations of SSG Capital Partners, and is its general partner.

21.     Shyam Maheshwari is an Indian citizen who resides in Singapore and Hong Kong.

22.     Mr. Maheshwari is a Director and Shareholder of VTC.

23.     Mr.  Maheshwari is a partner and co-founder of SSG Hong Kong.

24.     Mr. Maheshwari, as partner and co-founder of SSG Hong Kong - the general partner of SSG Capital Partners - manages SSG Capital Partners.

25.     Wong Ching Him a/k/a Edwin Wong is a Hong Kong citizen who resides in Hong Kong.

26.     Mr. Him is a Director and Shareholder of VTC.

27.     Mr. Him is the managing partner and chief investment officer of SSG Hong Kong.

28.     Mr. Him, as partner and co-founder of SSG Hong Kong - the general partner of SSG Capital Partners - manages SSG Capital Partners..

29.     Ira Syavitri Noor a/k/a Ira Noor Vourloumis resides in Hong Kong.

30.     Ms. Vourloumis is a Director of VTC.

31.     Andreas Vourloumis is an Indonesian citizen who resides in Singapore and Hong Kong.

3

32.    Mr. Vourloumis is a Director and Shareholder of VTC.

33.    Mr. Vourloumis is a partner and member of SSG Hong Kong's advisory committee.

34.    Mr. Vourloumis, as partner and co-founder of SSG Hong Kong - the general partner of SSG Capital Partners - manages SSG Capital Partners.

35.    Ms. Vourloumis and Mr. Vourloumis are married.

36.    Dinesh Goel is an Indian citizen who currently resides in Singapore.

37.    Mr. Goel was the executive director of SSG Hong Kong during all materials times at issue in this lawsuit.

38.    Prithvi Asia Solutions Limited is a Hong Kong company ("Prithvi Asia").

## JURISDICTION AND VENUE

39.    Plaintiffs incorporate all preceding paragraphs by reference.

40.    PISL is registered to do business in Pittsburgh, Pennsylvania.

41.    PISL has continuously conducted business in Pittsburgh, Pennsylvania since 2000.

42.    As set forth herein, PISL engaged in fraudulent activities and participated in a conspiracy in Pittsburgh, Pennsylvania.

43.    PISL is a co-conspirator along with the other Defendants in this case.

44.    This Court has personal jurisdiction over PISL pursuant to 42 Pa. C.S.A. § 5301.

45.    Ms. Vuppalapati resided in Pittsburgh, Pennsylvania from 2000-2014.

46.    As set forth herein, Ms. Vuppalapati engaged in fraudulent activities and participated in a conspiracy in Pittsburgh, Pennsylvania.

47.    Ms. Vuppalapati was a co-conspirator along with the other Defendants in this case.

48.    Alternatively, as set forth herein, Ms. Vuppalapati engaged in a loan transaction on behalf of PSI in Pittsburgh, Pennsylvania.

49.     This Court has personal jurisdiction over Ms. Vuppalapati pursuant to 42 Pa. C.S.A. § 5322.

50.     Mr. Jayaraman resided in Pittsburgh, Pennsylvania from 2000-2014.

51.     As set forth herein, Mr. Jayaraman engaged in fraudulent activities and participated in a conspiracy in Pittsburgh, Pennsylvania.

52.     Mr. Jayaraman was a co-conspirator along with the other Defendants in this case.

53.     This Court has personal jurisdiction over Mr. Jayaraman pursuant to 42 Pa. C.S.A. § 5322.

54.     As set forth herein, VTC engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

55.     VTC was a co-conspirator along with the other Defendants in this case.

56.     Alternatively, as set forth herein, VTC engaged in a loan transaction while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

57.     This Court has personal jurisdiction over VTC pursuant to 42 Pa. C.S.A. § 5322.

58.     This Court also has "absent co-conspirator personal jurisdiction" over VTC under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman and VTC was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

59.     As set forth herein, SSG Capital Partners engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

60.     SSG Capital Partners was a co-conspirator along with the other Defendants in this case.

61.     Alternatively, as set forth herein, SSG Capital Partners engaged in a loan transaction while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

62.     This Court has personal jurisdiction over SSG Capital Partners pursuant to 42 Pa. C.S.A. § 5322.

63.     This Court also has "absent co-conspirator personal jurisdiction" over SSG Capital Partners under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman, and SSG Capital Partners was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

64.     As set forth herein, SSG Hong Kong engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

65.     SSG Hong Kong was a co-conspirator along with the other Defendants in this case.

66.     Alternatively, as set forth herein, SSG Hong Kong engaged in a loan transaction while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

67.     This Court has personal jurisdiction over SSG Hong Kong pursuant to 42 Pa. C.S.A. § 5322.

68.     This Court also has "absent co-conspirator personal jurisdiction" over SSG Hong Kong under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman and SSG Hong Kong was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

6

69.     As set forth herein, Mr. Maheshwari engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed his activities to Pittsburgh, Pennsylvania.

70.     Mr. Maheshwari was a co-conspirator along with the other Defendants in this case.

71.     This Court has personal jurisdiction over Mr. Maheshwari pursuant to 42 Pa. C.S.A. § 5322.

72.     This Court also has "absent co-conspirator personal jurisdiction" over Mr. Maheshwari under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman and Mr. Maheshwari was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

73.     As set forth herein, Mr. Him engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed his activities to Pittsburgh, Pennsylvania.

74.     Mr. Him was a co-conspirator along with the other Defendants in this case.

75.     This Court has personal jurisdiction over Mr. Him pursuant to 42 Pa. C.S.A. § 5322.

76.     This Court also has "absent co-conspirator personal jurisdiction" over Mr. Him under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman and Mr. Him was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

77.     As set forth herein, Ms. Vourloumis engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed her activities to Pittsburgh, Pennsylvania.

78.     Ms. Vourloumis was a co-conspirator along with the other Defendants in this case.

79.     This Court has personal jurisdiction over Ms. Vourloumis pursuant to 42 Pa. C.S.A. § 5322.

80.     This Court also has "absent co-conspirator personal jurisdiction" over Ms. Vourloumis under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman, and Ms. Vourloumis was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

81.     As set forth herein, Mr. Goel engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed his activities to Pittsburgh, Pennsylvania.

82.     Mr. Goel was a co-conspirator along with the other Defendants in this case.

83.     This Court has personal jurisdiction over Mr. Goel pursuant to 42 Pa. C.S.A. § 5322.

84.     This Court also has "absent co-conspirator personal jurisdiction" over Mr. Goel under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman and Mr. Goel was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

85.     As set forth herein, Mr. Vourloumis engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed his activities to Pittsburgh, Pennsylvania.

86.     Mr. Vourloumis was a co-conspirator along with the other Defendants in this case.

87.     This Court has personal jurisdiction over Mr. Vourloumis pursuant to 42 Pa. C.S.A. § 5322.

88.     This Court also has "absent co-conspirator personal jurisdiction" over Mr. Vourloumis under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman, and Mr. Vourloumis was aware of, or should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

89.     As set forth herein, Prithvi Asia engaged in fraudulent activities and participated in a conspiracy while being physically located outside of Pittsburgh, Pennsylvania and directed its activities to Pittsburgh, Pennsylvania.

90.     Prithvi Asia was a co-conspirator along with the other Defendants in this case.

91.     This Court has personal jurisdiction over Prithvi Asia pursuant to 42 Pa. C.S.A. § 5322.

92.     This Court also has "absent co-conspirator personal jurisdiction" over Prithvi Asia under federal and Pennsylvania common law because substantial acts in furtherance of the conspiracy physically occurred in Pittsburgh, Pennsylvania by PISL, Ms. Vuppalapati, and Mr. Jayaraman, and VTC was aware of, should have been aware of, and otherwise participated in, these acts while being located outside of Pittsburgh, Pennsylvania.

93.     This Court also has personal jurisdiction over all Defendants pursuant to 18 USC § 1956(b)(2) and 18 USC § 1956(f) as set forth herein.

94.     This Court has subject matter jurisdiction pursuant to 28 USC § 1332 because there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00.

95.     This Court also has subject matter jurisdiction pursuant to 28 USC § 1331 and 28 USC § 1367.

96.     Venue is proper in this Court pursuant to 28 USC § 1391 and 18 USC § 1965.

## GENERAL ALLEGATIONS

97.     Plaintiffs incorporate all preceding paragraphs by reference.

98.    In February, 2007, PISL issued a Bond Offering Circular regarding $50,000,000 USD Zero Coupon Convertible Bonds due February 2012 which were able to be converted into shares of PISL ("Bonds").

99.    The Bonds were issued under Indian law, rules, and regulations.

100.    At all material times at issue in this lawsuit, PSI was a subsidiary of PISL and PISL was the sole shareholder of PSI.

101.    Consistent with the Bond Offer Circular, PISL and PSI entered into an agreement wherein the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States.

102.    On or about February 2007, Lehman Brothers, through Kingfisher Capital CLO Ltd., invested in the Bonds.

103.    Lehman Brothers subsequently placed $50,000,000 USD in an escrow account at UCO Bank located in Hong Kong.

104.    UCO Bank transferred approximately $15,000,000 USD of the $50,000,000 USD to PISL which in turn provided the Bonds funds to PSI to execute operations in the United States pursuant to the agreement between PISL and PSI.

105.    On or about September 15, 2008, Lehman Brothers filed a Chapter 11 bankruptcy petition in the United States and filed bankruptcy/insolvency petitions overseas.

106.    On or about August 3, 2010, Lehman Brothers sold its interest in the Bonds to VTC and SSG Capital Partners for approximately $15,500,000 USD.  The sale was an arm's -length transaction and did not involve deception or fraud.

107.    On or about September 6, 2010, SSG Capital Partners and PISL entered into an agreement to ostensibly restructure the Bonds but in reality the agreement was a scheme to transfer the Bonds funds held in escrow to Defendants.

108.    On or about September 8, 2010, SSG Capital Partners and PISL entered into an addendum of the September 6, 2010 restructuring agreement which required PISL to pay a $4,000,000 USD non-refundable deposit to SSG Capital Partners to ostensibly confirm SSG

Capital Partners' commitment to restructure the Bonds (together with the September 6, 2010 agreement, "SSG Capital Partners' Agreement").

109.    The requirement to have PISL pay a non-refundable deposit to restructure the Bonds under the SSG Capital Partners' Agreement is illegal under applicable Indian law, rules, and regulations.

110.    The non-refundable deposit served no purpose other than to further Defendants' fraudulent scheme as set forth herein.

111.    On or about September 6, 2010, VTC and PISL entered into an agreement to ostensibly restructure the Bonds but in reality the agreement was a scheme to transfer the Bonds funds held in escrow to Defendants.

112.    On or about September 8, 2010, VTC and PISL entered into an addendum of the September 6, 2010 restructuring agreement which required PISL to pay a $16,200,000 USD non-refundable deposit to VTC to ostensibly confirm VTC's commitment to restructure the Bonds (together with the September 6, 2010 agreement, "VTC Agreement").

113.    The requirement to have PISL pay a non-refundable deposit to restructure the Bonds under the VTC Agreement is illegal under applicable Indian law, rules, and regulations.

114.    The non-refundable deposit served no purpose other than to further Defendants' fraudulent scheme as set forth herein.

115.    At the same time that the SSG Capital Partners' Agreement and VTC Agreement were executed, Defendants were in the process of creating Prithvi Asia.

116.    The name "Prithvi Asia" was deliberately chosen to create the illusion of a legitimate relationship with PISL and PSI to try to disguise Defendants' money laundering activities.

117.    At the same time that the SSG Capital Partners' Agreement and VTC Agreement were executed, and pursuant to PISL's request, Bank of New York Mellon transferred approximately $35,000,000 USD of the $50,000,000 USD from the UCO Bank escrow account

11

located in Hong Kong to PISL's Key Bank account located in the State of Washington on or about October 29, 2010.

118.    On or about November 2, 2010, Defendants transferred approximately $35,000,000 USD from Key Bank located in the State of Washington to PSI's bank account at PNC Bank located in Pittsburgh, Pennsylvania.

119.    At this time, PISL was the sole shareholder of PSI and Ms. Vuppalapati was in control of all funds received by PISL and PSI.

120.    Defendants never had any intention of permitting PSI to utilize the Bonds funds or to otherwise restructure the Bonds as ostensibly indicated in the SSG Capital Partners' Agreement and VTC Agreement.

121.    After transferring the Bonds funds as discussed above to make it difficult to trace, on or about November 3, 2010, PSI, which was controlled by PISL and Ms. Vuppalapati, transferred at Defendants' behest approximately $8,000,000 USD of the $35,000,000 USD to Prithvi Information Solutions LLC located in the State of Washington.

122.    Ms. Vuppalapati was also in control of Prithvi Information Solutions LLC and, upon information and belief, retained some or all of the transferred Bonds funds.

123.    On or about November 3, 2010, PSI, at Defendants' behest, transferred approximately $7,000,000 USD of the $35,000,000 USD to PISL.

124.    On or about November 3, 2010, PSI, at Defendants' behest, transferred $20,400,000 USD of the $35,000,000 USD to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong.

125.    The $20,400,000 USD transferred to Prithvi Asia approximately equals the $4,000,000 USD non-refundable deposit in the SSG Capital Partners' Agreement and the $16,200,000 USD non-refundable deposit in the VTC Agreement (combined $20,200,000 USD).

126.    In order to further disguise the actual use of the Bonds funds, Defendants created bogus receivables on PSI's books and records regarding funds owing from SSG Capital Partners and SSG Hong Kong to PSI and funds owing from VTC to PSI.

127.    According to PSI's books and records, SSG Capital Partners and SSG Hong Kong owe $4,000,000 USD to PSI pursuant to a loan agreement.

128.    The $4,000,000 USD "receivable" owing from SSG Capital Partners and SSG Hong Kong to PSI is the same as the $4,000,000 USD non-refundable deposit contained in the SSG Capital Partners' Agreement between SSG Capital Partners and PISL.

129.    On or about November 12, 2010, Prithvi Asia, at Defendants' behest, transferred $4,000,000 to SSG Capital Partners' bank account located at DBS Bank Ltd. located in Hong Kong.

130.    SSG Capital Partners subsequently transferred and apportioned the $4,000,000 USD among Defendants.

131.    According to PSI's books and records, VTC owes $18,900,000 USD to PSI pursuant to a loan agreement.

132.    To account for, in part, the "receivable" owing from VTC to PSI, PSI, at Defendants' behest, paid VTC an additional $200,000 USD as part of the non-refundable deposit contained in the November 3, 2010, $20,400,000 transfer to Prithvi Asia ($16,200,000 to VTC + $200,000 to VTC + $4,000,000 to SSG Capital Partners = $20,400,000 USD).

133.    On or about November 12, 2010, and November 23, 2010, Prithvi Asia, at Defendants' behest, transferred approximately $16,400,000 to VTC's bank account located at UBS AG Bank in Singapore.

134.    On or about December 20, 2010, VTC and PISL entered into another agreement to ostensibly restructure the Bonds but in reality the agreement was a scheme to transfer the Bonds funds held in escrow to Defendants.

135.    On or about December 20, 2010, VTC and PISL entered into an addendum of the December 20, 2010 restructuring agreement which required PISL to pay a $2,500,000 USD non-refundable deposit to VTC to ostensibly confirm VTC's commitment to restructure the Bonds (together with the December 20, 2010 agreement, "VTC Agreement #2").

136.    The requirement to have PISL pay a non-refundable deposit to restructure the Bonds under VTC Agreement #2 is illegal under applicable Indian law, rules, and regulations.

137.    The non-refundable deposit served no purpose other than to further Defendants' fraudulent scheme as set forth herein.

138.    To try to further disguise the nature of Defendants' conduct, on or about May 28, 2011 and June 16, 2011, PISL transferred a total of $2,500,000 USD of the $7,000,000 USD it received on November 3, 2010, back to PSI which in turn, at Defendants' behest, was transferred to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong.

139.    On or about June 17, 2011, Prithvi Asia, at Defendants' behest, transferred approximately $2,500,000 to VTC's bank account located at UBS AG Bank in Singapore.

140.    Based on the foregoing, the $18,900,000 USD receivable purportedly owing from VTC to PSI is in actuality comprised of the following: (i) the $16,200,000 USD non-refundable deposit under the VTC Agreement between VTC and PISL; (ii) the additional $200,000 USD paid to VTC as part of the non-refundable deposit contained in the November 3, 2010, $20,400,000 transfer to Prithvi Asia; and (iii) the $2,500,000 non-refundable deposit under VTC Agreement #2 between VTC and PISL.

141.    VTC subsequently transferred and apportioned the $18,900,000 USD among Defendants.

142.    In order to try to further disguise the nature of Defendants' conduct, on or about January 23, 2013 Prithvi Asia transferred $10,000 USD to VTC's bank account located at UBS AG Bank in Singapore.

143.    In order to try to further disguise the nature of Defendants' conduct, on or about October 9, 2014,  Prithvi Asia withdrew $28,000 USD.

144.    On or about October 27, 2016, Kyko sent Mr. Maheshwari, SSG Hong Kong, SSG Capital Partners, and VTC a demand letter that requested payment of the amounts owing from SSG Capital Partners, SSG Hong Kong, and VTC to PSI as listed on PSI's books and records.

14

145.    On or about November 15, 2016, SSG Hong Kong and SSG Capital Partners denied for themselves and on behalf of Mr. Maheshwari and VTC that any amounts were owed to Kyko or PSI.

146.    Plaintiffs seek damages caused by Defendants' tortious conduct as described above.

147.    Alternatively, Plaintiffs seek damages caused by SSG Capital Partners', SSG Hong Kong's, and VTC's failure to repay the loaned funds owing from them to PSI.

## COUNT I - BREACH OF FIDUCIARY DUTY

148.    Plaintiffs incorporate all preceding paragraphs by reference.

149.    Ms. Vuppalapati was a Director of PSI during all material times.

150.    Ms. Vuppalapti was not the sole Director of PSI during all material times.

151.    Ms. Vuppalapati owed fiduciary duties to PSI.

152.    PSI relied upon Ms. Vuppalapati to properly administer the Bonds funds to the benefit of PSI.

153.    Ms. Vuppalapati breached her fiduciary duties owing to PSI by negligently and intentionally failing to act in good faith in executing her duties for PSI while being physically located in Pittsburgh, Pennsylvania.

154.    Ms. Vuppalapati acted to benefit herself and Defendants by misappropriating a portion of the Bonds funds to her personal use and to Defendants to the detriment of PSI which was entitled to use the Bonds funds to execute business operations in the United States.

155.    PSI has suffered damages because it has been deprived of the Bonds funds to execute business operations in the United States.

156.    Ms. Vuppalapati's acts of misappropriating the Bonds funds to her personal use and to Defendants was a real factor which caused PSI to suffer damages.

157.   Ms. Vuppalapati concealed her acts of misappropriating the Bonds funds by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

158.   On or about November, 2016, PSI discovered the nature and extent of Ms. Vuppalapati's acts of misappropriating the Bonds funds.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against Ms. Vuppalapati in the amount of $35,000,000  plus interest and award Plaintiffs their attorneys' fees and costs.

## COUNT II – AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

159.   Plaintiffs incorporate all preceding paragraphs by reference.

160.   Ms. Vuppalapati owed PSI fiduciary duties.

161.   Ms. Vuppalapati breached her fiduciary duties by misappropriating a portion of the Bonds funds to her personal use as set forth above.

162.   PISL was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

163.   PISL substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

164.   PISL undertook these actions while being physically located in Pittsburgh, Pennsylvania.

165.   Mr. Jayaraman, Ms. Vuppalapati's husband, was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

166.   Mr. Jayaraman substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

167. Mr. Jayaraman undertook these actions while being physically located in Pittsburgh, Pennsylvania.

168. VTC was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

169. VTC substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

170. SSG Capital Partners was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

171. SSG Capital Partners substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

172. SSG Hong Kong was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

173. SSG Hong Kong substantially assisted or encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

174. Mr. Maheshwari was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

175. Mr. Maheshwari substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds

funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

176.    Mr. Him was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

177.    Mr. Him substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

178.    Ira Noor Vourloumis was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

179.    Ira Noor Vourloumis substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

180.    Mr. Goel was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

181.    Mr. Goel substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

182.    Mr. Vourloumis was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

183.    Mr. Vourloumis substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but

directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

184.    Prithvi Asia was aware of Ms. Vuppalapati's breach of her fiduciary duties owing to PSI.

185.    Prithvi Asia substantially assisted and encouraged Ms. Vuppalapati to breach her fiduciary duties owing to PSI by taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania by, without limitation, arranging the transfer of the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

186.    Defendants concealed their acts of misappropriating the Bonds funds and creating bogus accounts receivable as previously set forth herein.

187.    On or about November, 2016, PSI discovered the nature and extent of Defendants' acts of misappropriating the Bonds funds

188.    PSI has suffered damages due to Defendants' actions because it has been deprived of the Bonds funds to execute business operations in the United States.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against Defendants, jointly and severally, in the amount of $35,000,000 plus interest and award Plaintiffs their attorneys' fees and costs.

## COUNT III - CONCERT OF ACTION

189.    Plaintiffs incorporate all preceding paragraphs by reference.

190.    Ms. Vuppalapati committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions in Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

191.    Ms. Vuppalapati undertook these actions in concert with the other Defendants and pursuant to a common design with Defendants as previously set forth herein.

192.     Through their actions, Ms. Vuppalapati and Defendants misappropriated the Bonds funds to their personal use and benefit.

193.     Defendants each had a duty, separate and distinct from Ms. Vuppalapatis' fiduciary duties owing to PSI, not to place PSI at harm through their actions as previously set forth herein.

194.     Defendants breached their duties by, without limitation, assisting each other to transfer the Bonds funds away from PSI and to themselves and creating bogus receivables on PSI's books and records as previously set forth herein.

195.     Through their actions, Defendants misappropriated the Bonds funds to their personal use and benefit.

196.     Defendants concealed their acts of misappropriating the Bonds funds and creating bogus accounts receivable as previously set forth herein.

197.     On or about November, 2016, PSI discovered the nature and extent of Defendants' concert of action as discussed above.

198.     PSI has suffered damages due to Defendants' actions because it has been deprived of the Bonds funds to execute business operations in the United States.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against Defendants, jointly and severally, in the amount of $35,000,000 plus interest and award Plaintiffs their attorneys' fees and costs.

## COUNT IV - CONVERSION

199.     Plaintiffs incorporate all preceding paragraphs by reference.

200.     PSI was entitled to use and possess the Bonds funds and had a property right in same.

201.     Defendants were not entitled to use and possess the Bonds funds and did not have a property right in same.

202.    Defendants wrongfully deprived PSI of its right to use and possess the Bonds funds by transferring the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

203.    Defendants' actions were without lawful justification.

204.    Defendants concealed their acts of misappropriating the Bonds funds and creating bogus accounts receivable as previously set forth herein.

205.    On or about November, 2016, PSI discovered the nature and extent of Defendants' conversion as previously set forth herein.

206.    PSI has suffered damages due to Defendants' actions because it has been deprived of the Bonds funds to execute business operations in the United States.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against Defendants, jointly and severally, in the amount of $35,000,000 plus interest and award Plaintiffs their attorneys' fees and costs.

## COUNT V - CONSPIRACY

207.    Plaintiffs incorporate all preceding paragraphs by reference.

208.    Ms. Vuppalapati committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions in Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

209.    PISL committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions in Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

210.    Mr. Jayaraman committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions in Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

211.     VTC committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

212.     SSG Capital Partners committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

213.     SSG Hong Kong committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

214.     Mr. Maheshwari committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

215.     Mr. Him committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

216.     Ira Noor Vourloumis committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

217.     Mr. Goel committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh,

Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

218.    Mr. Vourloumis committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

219.    Prithvi Asia committed tortious acts of misappropriating the Bonds funds by, without limitation, taking actions outside of Pittsburgh, Pennsylvania but directed to Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to Defendants and creating bogus receivables on PSI's books and records as previously set forth herein.

220.    Defendants combined and coordinated their acts of misappropriating the Bonds funds and creating bogus receivables on PSI's books and records with a common purpose to unlawfully transfer the Bonds funds to their personal use and benefit.

221.    Ms. Vuppalapati, Mr. Jayaraman, and PISL took substantial acts in Pittsburgh, Pennsylvania to transfer the Bonds funds away from PSI and to create bogus receivables on PSI's books and records.

222.    Defendants were aware of, or should have been aware of, and otherwise participated in, Ms. Vuppalapati's, Mr. Jayaraman's, and PISL's acts conducted in Pittsburgh, Pennsylvania.

223.    Defendants' intent was to harm PSI by depriving it of use of the Bonds funds and their actions were without justification.

224.    Ms. Vuppalapati's, Mr. Jayaraman's, and PISL's contacts with Pittsburgh, Pennsylvania are imputed to the other Defendants which allows this Court to exercise personal jurisdiction over the other Defendants.

225.    Alternatively, Defendants, excluding Ms. Vuppalapati, Mr. Jayaraman, and PISL, did not engage in tortious acts, but Defendants assisted Ms. Vuppalapati, Mr. Jayaraman, and PISL to commit tortious acts in Pittsburgh, Pennsylvania as previously set forth herein.

23

226.     Defendants were aware that the effects of their assistance to Ms. Vuppalapati, Mr. Jayaraman, and PISL to transfer the Bonds funds and creating bogus receivables on PSI's books and records in Pittsburgh, Pennsylvania would be felt by PSI in Pittsburgh, Pennsylvania.

227.     Ms. Vuppalapati's, Mr. Jayaraman's, and PISL's contacts with Pittsburgh, Pennsylvania are imputed to the other Defendants which allows this Court to exercise personal jurisdiction over the other Defendants even if the other Defendants only assisted Ms. Vuppalapati, Mr. Jayaraman, and PISL to commit the tortious acts set forth herein.

228.     Defendants concealed their acts of misappropriating, or assisting in the misappropriation, of the Bonds funds and creating bogus accounts receivable as previously described herein.

229.     On or about November, 2016, PSI discovered the nature and extent of Defendants' conspiracy as set forth above.

230.     PSI has suffered damages due to Defendants' actions because it has been deprived of the Bonds funds to execute business operations in the United States.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against Defendants, jointly and severally, in the amount of $35,000,000 plus interest and award Plaintiffs their attorneys' fees and costs.

## COUNT VI – CIVIL RICO

231.     Plaintiffs incorporate all preceding paragraphs by reference.

232.     As previously set forth herein, all Defendants engaged in conduct with the common purpose to divert the Bonds funds away from PSI and to Defendants.

233.     Defendants are interrelated as spouses and/or business partners who conducted their activities individually and through legal entities.

234.     Defendants' association had a sufficient duration which allowed Defendants to achieve their common purpose to divert the Bonds funds away from PSI and to Defendants.

235.     Defendants constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

236.     Defendants constitute a domestic enterprise.

237.     Alternatively, Ms. Vuppalapati, Mr. Jayaraman, Mr. Maheshwari, Mr. Him, Ira Noor Vourloumis, Mr. Goel, and Mr. Vourloumis constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

238.     Alternatively, VTC, SSG Capital Partners, SSG Hong Kong, PISL and Prithvi Asia constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

239.     Alternatively, VTC and Mr. Maheshwari, Mr. Him, Ira Noor Vourloumis, Mr. Goel, and Mr. Vourloumis constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

240.     Alternatively, SSG Capital Partners and Mr. Maheshwari, Mr. Him, Ira Noor Vourloumis, Mr. Goel, and Mr. Vourloumis constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

241.     Alternatively, SSG Hong Kong and Mr. Maheshwari, Mr. Him, Ira Noor Vourloumis, Mr. Goel, and Mr. Vourloumis constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

242.     Alternatively, PISL, Ms. Vuppalapati and Mr. Jayaraman constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

243.     Alternatively, Prithvi Asia and Mr. Maheshwari, Mr. Him, Ira Noor Vourloumis, Mr. Goel, Mr. Vourloumis, Ms. Vuppalapati and Mr. Jayaraman constitute an "enterprise" under 18 USC § 1961(4) because they are an association in-fact.

244.     18 USC § 2314 constitutes a "racketeering activity" under 18 USC § 1961(1).

245.     Defendants transported the Bonds funds away from PSI as previously set forth herein.

246.     Defendants' acts of transporting the Bonds funds away from PSI occurred through a series of money transfers and transactions in interstate and foreign commerce as previously set forth herein.

247.     The Bonds funds transferred away from PSI were in an amount above $5,000.

248.    Defendants knew that the Bonds funds that they transferred away from PSI were stolen and converted.

249.    Defendants have violated 18 USC § 2314.

250.    18 USC § 2315 constitutes a "racketeering activity" under 18 USC § 1961(1).

251.    The Bonds funds were stolen, unlawfully converted, or taken from PSI as previously set forth herein.

252.    After the Bonds funds were stolen, unlawfully converted, or taken, they were transferred outside of the United States as previously set forth herein.

253.    Defendants possessed and concealed the Bonds funds.

254.    Defendants knew that the Bonds funds were stolen, unlawfully converted, or taken.

255.    The Bonds funds' value exceeds $5,000.

256.    Defendants have violated 18 USC § 2315.

257.    18 USC § 1956 constitutes a "racketeering activity" under 18 USC § 1961(1).

258.    Defendants knowingly engaged in a "financial transaction" under 18 USC § 1956(c)(4) as previously set forth herein.

259.    The Bonds funds, transfers, and related transactions previously set forth herein are "monetary instruments" under 18 USC § 1956(c)(5).

260.    The Bonds funds diverted away from PSI and to Defendants are "proceeds" under 18 USC § 1956(c)(9).

261.    Defendants knew that diversion of the Bonds funds away from PSI and to Defendants through a series of transfers and related transactions previously set forth constituted a "specified unlawful activity" under 18 USC § 1956(c)(7).

262.    The transfers of the Bonds funds and related transactions previously set forth herein constitute a "transaction" under 18 USC § 1956(c)(3) which in fact involved the wrongful diversion of the Bonds funds away from PSI and to Defendants.

263.    Defendants intentionally diverted the Bonds funds away from PSI and to Defendants through a series of transfers and related transactions previously set forth herein with the intent to promote their scheme to defraud PSI.

264.    Defendants intentionally diverted the Bonds funds away from PSI and to Defendants through a series of transfers and related transactions previously set forth herein with the intent to conceal their scheme to defraud PSI.

265.    Defendants knowingly agreed among themselves to coordinate and otherwise undertake concerted actions to intentionally divert the Bonds funds away from PSI and to Defendants through a series of transfers and related transactions previously set forth herein.

266.    Defendants have violated 18 USC § 1956(a)(1)(A)(i), 18 USC § 1956(a)(1)(B)(i), 18 USC § 1956(a)(2)(A), 18 USC § 1956(a)(2)(B)(i), 18 USC § 1956(a)(3)(A), 18 USC § 1956(a)(3)(B), and 18 USC § 1956(h).

267.    This Court has personal jurisdiction over Defendants pursuant to 18 USC § 1956(b)(2) and 18 USC § 1956(f) because Defendants' acts of diverting the Bonds funds away from PSI and to Defendants occurred, in whole or in part, in the United States and the transfers and related transactions previously set forth herein exceed $10,000.

268.    18 USC § 1957 constitutes a "racketeering activity" under 18 USC § 1961(1).

269.    The Bonds funds, transfers, and related transactions previously set forth herein are "monetary transactions" under 18 USC § 1957(f)(1).

270.    The Bonds funds diverted away from PSI and to Defendants constitute "criminally derived property" under 18 USC § 1957(f)(2).

271.    Defendants' diversion of the Bonds funds away from PSI and to Defendants through a series of transfers and related transactions previously set forth herein constitutes a "specified unlawful activity" under 18 USC § 1957(f)(3).

272.    The Bonds funds diverted away from PSI and to Defendants are "proceeds" under 18 USC § 1957(f)(3).

273.    The Bonds funds' value exceeds $10,000.

27

274.    Defendants diverted the Bonds funds away from PSI to Defendants by engaging in a series of transfers and related transactions as previously set forth herein knowing that they were not entitled to obtain the Bonds funds.

275.    Defendants' conduct occurred in the United States.

276.    Defendants have violated 18 USC § 1957.

277.    18 USC § 1952 constitutes a "racketeering activity" under 18 USC § 1961(1).

278.    Defendants' diversion of the Bonds funds away from PSI and to Defendants through a series of transfers and related transactions previously set forth herein constitutes an "unlawful activity" under 18 USC § 1952(b).

279.    Defendants used the mail, email, and telephone facilities in interstate and foreign commerce with the intent to distribute the proceeds of their unlawful activity and otherwise promote, manage, establish, and carry on their unlawful activities.

280.    Defendants have violated 18 USC § 1952(a)(1) and 18 USC § 1952(a)(3).

281.    Defendants engaged in a "pattern of racketeering activity" under 18 USC § 1961(5) because Defendants engaged in two or more acts of each "racketeering activity" described above after the effective date of the RICO statute and within a ten year period of the first act of each racketeering activity described above.

282.    Alternatively, Defendants, excluding Ms. Vuppalapati, Mr. Jayaraman, and PISL, did not engage in a pattern of racketeering activity as set forth above but Defendants assisted Ms. Vuppalapati, Mr. Jayaraman, and PISL to commit a pattern of racketeering activity by, without limitation, creating bogus Memorandums of Understanding, creating bank accounts, assisting in the creation of bogus accounts receivable, and otherwise accepting receipt of the Bonds funds belonging to PSI with the purpose of trying to disguise Ms. Vuppalapati's, Mr. Jayaraman's, and PISL's pattern of racketeering activity as set forth above.

283.    Defendants' acts described above constitute a violation of 18 USC § 1962(c).

284.    Defendants conspired, agreed, and worked in a concerted effort to engage in the acts of racketeering activity described above by, without limitation, devising a scheme to engage

in a series of transfers of the Bonds funds away from PSI and to Defendants and creating, or assisting in the creation of, bogus Memorandums of Understanding, bank accounts, and bogus accounts receivable on PSI's books and records to try to disguise and hide their activities.

285.    Defendants engaged in a conspiracy to violate 18 USC § 1962(c) pursuant to 18 USC § 1962(d) because they agreed to form, conduct, participate in, and coordinate the activities of a corrupt enterprise as set forth above.

286.    PSI has suffered damages because it has been denied possession and use of the Bonds funds to execute business operations in the United States.

287.    PSI's damages do not arise from conduct that is actionable as fraud in the purchase or sale of the Bonds.

288.    On or about November, 2016, PSI discovered the nature and extent of Defendants' actions as set forth above.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against Defendants, jointly and severally, in the amount of $35,000,000 and trebled in the amount of $105,000,000, plus interest, costs and attorneys' fees pursuant to 18 USC § 1964(c).

## COUNT VII – BREACH OF CONTRACT - SSG CAPITAL PARTNERS, SSG HONG KONG, AND VALUE TEAM CORPORATION

289.    Plaintiffs incorporate all preceding paragraphs by reference.

290.    Plaintiffs assert this claim in the alternative to the tort-based claims previously set forth herein.

291.    According to PSI's books and records, PSI loaned SSG Capital Partners and SSG Hong Kong $4,000,000 USD.

292.    The loan is due and payable upon demand.

293.    SSG Capital Partners and SSG Hong Kong have refused to make payment to PSI.

294.    PSI has suffered damages due to SSG Capital Partners' and SSG Hong Kong's refusal to pay PSI.

295.    According to PSI's books and records, PSI loaned VTC $18,900,000 USD.

296.    The loan is due and payable upon demand.

297.    VTC has refused to make payment to PSI.

298.    PSI has suffered damages due to VTC's refusal to pay PSI.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against SSG Capital Partners and SSG Hong Kong, jointly and severally, in the amount of $4,000,000 USD plus interest, attorneys' fees, and costs and against VTC in the amount of $18,900,000 USD plus interest, attorneys' fees, and costs.

### COUNT VIII – PROMISSORY ESTOPPEL - SSG CAPITAL PARTNERS, SSG HONG KONG, AND VALUE TEAM CORPORATION

299.    Plaintiffs incorporate all preceding paragraphs by reference.

300.    Plaintiffs assert this claim in the alternative to the tort-based claims previously set forth herein.

301.    SSG Capital Partners and SSG Hong Kong promised to repay PSI $4,000,000 USD on demand in the event PSI loaned SSG Capital Partners and SSG Hong Kong $4,000,000 USD.

302.    SSG Capital Partners and SSG Hong Kong made this promise to induce PSI to loan the money.

303.    PSI loaned the money based on SSG Capital Partners' and SSG Hong Kong's promise to repay the money.

304.    SSG Capital Partners and SSG Hong Kong have failed to repay the money.

305.    An injustice will result if SSG Capital Partners' and SSG Hong Kong's promise to repay the money is not enforced.

306.    VTC promised to repay PSI $18,900,000 USD on demand in the event PSI loaned VTC $18,900,000 USD.

307.    VTC made this promise to induce PSI to loan the money.

308.     PSI loaned the money based on VTC's promise to repay the money.

309.     VTC has failed to repay the money.

310.     An injustice will result if VTC's promise to repay the money is not enforced.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against SSG Capital Partners and SSG Hong Kong, jointly and severally, in the amount of $4,000,000 USD plus interest, attorneys' fees, and costs and against VTC in the amount of $18,900,000 USD plus interest, attorneys' fees, and costs.

### COUNT IX – UNJUST ENRICHMENT - SSG CAPITAL PARTNERS, SSG HONG KONG, AND VALUE TEAM CORPORATION

311.     Plaintiffs incorporate all preceding paragraphs by reference.

312.     Plaintiffs assert this claim in the alternative to the tort-based claims previously set forth herein.

313.     PSI conferred a benefit upon SSG Capital Partners and SSG Hong Kong by advancing $4,000,000 USD to SSG Capital Partners and SSG Hong Kong.

314.     SSG Capital Partners and SSG Hong Kong accepted the $4,000,000 USD advanced by PSI.

315.     Equity demands that SSG Capital Partners and SSG Hong Kong repay the $4,000,000 USD advanced by PSI because SSG Capital Partners and SSG Hong Kong would be unjustly enriched if they do not repay the funds advanced by PSI.

316.     PSI conferred a benefit upon VTC by advancing $18,900,000 USD to VTC.

317.     VTC accepted the $18,900,000 USD advanced by PSI.

318.     Equity demands that VTC repay the $18,900,000 USD advanced by PSI because VTC would be unjustly enriched if it does not repay the funds advanced by PSI.

**WHEREFORE**, Plaintiffs request this Court to enter a money judgment against SSG Capital Partners and SSG Hong Kong, jointly and severally, in the amount of $4,000,000 USD

plus interest, attorneys' fees, and costs and against VTC in the amount of $18,900,000 USD plus interest, attorneys' fees, and costs.

## COUNT X – BREACH OF CONTRACT - PISL

319.    Plaintiffs incorporate all preceding paragraphs by reference.

320.    Consistent with the Bond Offer Circular, PISL and PSI entered into a contractual agreement wherein the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States.

321.    PISL and PSI entered into the contractual agreement because each would make profits if PSI successfully executed business operations in the United States.

322.    PISL partially performed under the contract by directing UCO Bank to transfer $15,000,000 USD of the $50,000,000 USD to PISL which in turn provided the Bonds funds to PSI to execute business operations in the United States.

323.    PISL breached the contract by converting $35,000,000 USD of the $50,000,000 USD of the Bonds funds belonging to PSI under the contract to its own use and otherwise disbursing same to Defendants as set forth above.

**WHEREFORE,** Plaintiffs request this Court to issue a money judgment against PISL in the amount of $35,000,000 USD plus interest, attorneys' fees, and costs.

Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757

FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139

(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
jrodkey@fowkesrodkey.com

*/s/ Jayson M. Macyda*
Jayson M. Macyda (*pro hac vice pending*)
Kyko Global, Inc.

P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

*Counsel for Plaintiffs,*
*Kyko Global, Inc.*
*Kyko Global GmbH*
*Prithvi Solutions, Inc.*

Dated:  September 26, 2018