APPENDIX LCvR 7.1.B

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYKO GLOBAL, INC., a Canadian corporation,
KYKO GLOBAL GmbH, a Bahamian corporation,
PRITHVI SOLUTIONS, INC., a Delaware Corporation

        Plaintiffs,

v.

PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation,
VALUE TEAM CORPORATION, a British Virgin Islands corporation,
SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership,
SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company,
MADHAVI VUPPALAPATI, an individual,
ANANDHAN JAYARAMAN, an Individual,
SHYAM MAHESHWARI, an individual,
IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual,
DINESH GOEL, an individual,
WONG CHING HIM, an individual,
ANDREAS VOURLOUMIS, an individual,
PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company

        Defendants.

RICO CASE STATEMENT

Pursuant to LCvR 7.1.B, any party filing a civil action under 18 U.S.C. §§ 1961-1968 shall set forth those facts upon which such party relied to initiate the RICO claim as a result of the "reasonable inquiry" required by Fed. R. Civ. P. 11. The statement shall be in paragraph form corresponding by number and letter to the paragraphs and subparagraphs appearing below and shall provide in detail and with specificity the information required herein.

1. **State whether the alleged unlawful conduct is in violation of any or all of the provisions of 18 U.S.C. §§ 1962(a), (b), (c) or (d).**

   18 USC § 1962(c) and 18 USC § 1962(d).

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

   During the material times at issue in this case, Prithvi Solutions Inc. ("PSI") was a subsidiary of Prithvi Information Solutions Ltd. ("PISL").

   In February, 2007, PISL issued a bond offering circular regarding $50,000,000 USD Zero Coupon Convertible Bonds due February 2012 which were able to be converted into shares of PISL. The bonds were issued under Indian laws, rules, and regulations. Lehman Brothers invested $50,000,000 USD in the bonds. PISL and PSI entered into an agreement wherein PISL would provide PSI with $50,000,000 USD generated through Lehman Brothers' investment in PISL's bonds to allow PSI to execute business operations in the United States. Pursuant to their agreement, $15,000,000 USD of the $50,000,000 USD was properly allocated to PSI and was used to execute business operations.

In August 2010, Lehman Brothers sold its interest in the Bonds to Defendants SSG Capital Partners I, L.P. ("SSG Capital Partners") and Value Team Corporation ("VTC"). The sale was an arm's-length transaction and did not involve deception or fraud. However, SSG, VTC and each of the other Defendants listed in the caption above thereafter participated in a conspiracy centered in Pittsburgh, PA to convert approximately $35,000,000 USD of the remaining Bonds funds owned by PSI to their personal use and benefit.

Starting in 2010 and concluding in 2014, Defendants effectuated their conspiracy by coordinating efforts regarding, and otherwise executing, a series of monetary transfers to launder the $35,000,000 USD through bank accounts located at UCO Bank in Hong Kong, Key Bank in the State of Washington, PNC Bank in Pittsburgh, PA and Hang Seng Bank in Hong Kong. Through these transfers, approximately $35,000,000 USD was eventually divvied among Defendants.

Defendants hid their conduct by creating sham Memorandums of Understanding between SSG Capital Partners and PISL and VTC and PISL to ostensibly restructure the Bonds upon payment of non-refundable deposits by PISL to SSG Capital Partners and VTC. The requirement to pay a non-refundable deposit is illegal under Indian law, rules and regulations and, nevertheless, Defendants never had any intention to restructure the bonds as evidenced through their laundering of the $35,000,000 USD via the monetary transfers discussed in Section 5(b) below.

Defendants further hid their conduct by creating bogus accounts receivable on PSI's books and records. PSI's books and records show that PSI "loaned" money to Defendants SSG Capital Partners, SSG Capital Partners (Hong Kong) Limited, and VTC. They also hid their conduct by creating Prithvi Asia Solutions Ltd. as a pass-through entity to lauder the Bonds funds.

On or about November 2016, Plaintiffs discovered the nature and extent of Defendants' conduct.

3. **List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each.**

   None.

4. **List the alleged victims and state how each victim has been allegedly injured.**

   PSI has been injured because it has been denied use of $35,000,000 USD to execute business operations.

5. **Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:**

   a. A list of the alleged predicate acts and the specific statutes which were allegedly violated;

   As set forth above, Defendants participated in a conspiracy centered in Pittsburgh, PA to convert approximately $35,000,000 USD owned by PSI to Defendants' personal use and benefit. Starting in 2010 and concluding in 2014, Defendants effectuated their conspiracy by coordinating efforts regarding, and otherwise executing, a series of monetary transfers to launder the $35,000,000 USD through bank accounts located at UCO Bank in Hong Kong, Key Bank in the State of Washington, PNC Bank in Pittsburgh, PA and Hang Seng Bank in Hong Kong. Through these transfers, approximately $35,000,000 USD was eventually divvied among Defendants to the detriment of PSI.

Defendants' conduct violates the following statutes: 18 USC § 2314, 18 USC § 2315, 18 USC § 1956, 18 USC § 1957, and 18 USC § 1952.

b.  **The date of each predicate act, the participants in each such predicate act and the relevant facts surrounding each such predicate act;**

On or about September 2010, Defendants PISL, Madhavi Vuppalapati, and Anandhan Jayaraman, while being physically located in Pittsburgh entered into a conspiracy with the other Defendants - who were located outside of Pittsburgh but directed their conduct to Pittsburgh and PISL, Madhavi Vuppalapati, and Anandhan Jayaraman - to convert $35,000,000 USD belonging to PSI to their own personal use and benefit through a series of money transfers.

The Defendants colluded to make the following money transfers: (i) On or about October 29, 2010, Defendants transferred $35,000,000 USD at UCO Bank located in Hong Kong to Key Bank located in the State of Washington. (ii) On or about November 2, 2010, Defendants transferred $35,000,000 located at Key Bank in the State of Washington to PNC Bank located in Pittsburgh. (iii) On or about November 3, 2010, Defendants transferred approximately $8,000,000 USD of the $35,000,000 from PNC Bank located in Pittsburgh to non-party Prithvi Information Solutions LLC located in the state of Washington; (iv) On or about November 3, 2010, Defendants transferred approximately $7,000,000 USD of the $35,000,000 from PNC Bank located in Pittsburgh to PISL; (v) On or about November 3, 2010, Defendants transferred $20,400,000 USD of the $35,000,000 USD from PNC Bank located in Pittsburgh to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong; (vi) On or about November 12, 2010, Prithvi Asia transferred $4,000,000 of the $20,400,000 USD from Hang Seng Bank located in Hong Kong to SSG Capital Partners' bank account located at DBS Bank Ltd. in Hong Kong: (vii) On or about November 12, 2010, and November 23, 2010, Prithvi Asia transferred a combined total of approximately $16,400,000 of the $20,400,000 USD from Hang Seng Bank Limited located in Hong Kong to VTC's bank account located at UBS AG Bank in Singapore. (viii) On or about May 28, 2011 and June 16, 2011, PISL transferred a total of $2,500,000 USD of the $7,000,000 USD it received on November 3, 2010, back to PSI which in turn, at Defendants' behest, was transferred to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong. (ix) On or about January 23, 2013 Prithvi Asia transferred $10,000 USD to VTC's bank account located at UBS AG Bank in Singapore. (x). On or about October 9, 2014, Prithvi Asia withdew $28,000 USD.

c.  **The time, place and contents of each alleged misrepresentation, the identity of persons by whom and to whom such alleged misrepresentation was made and if the predicate act was an offense of wire fraud, mail fraud or fraud in the sale of securities. The "circumstances constituting fraud or mistake" shall be stated with particularity as provided by Fed. R. Civ. P. 9(b);**

Please see Section 2 and Section 5(a)(b) above.

This case does not involve fraud in connection with the sale of securities and Plaintiffs do not assert independent predicate offenses of wire fraud and mail fraud.  As set forth above, the predicate offenses are 18 USC § 2314, 18 USC § 2315, 18 USC § 1956, 18 USC § 1957, and 18 USC § 1952.

d.  **Whether there has been a criminal conviction for violation of any predicate act and, if so, a description of each such act;**

There have been no criminal convictions.

e.  **Whether civil litigation has resulted in a judgment in regard to any predicate act and, if so, a description of each such act;**

No civil judgments have been entered regarding Defendants' conduct at issue in this case.

f.  **A description of how the predicate acts form a "pattern of racketeering activity."**

Each monetary transfer set forth above constitutes a violation of 18 USC § 2314, 18 USC § 2315, 18 USC § 1956, 18 USC § 1957, and 18 USC § 1952.  Because there are more than two monetary transfers under 18 USC § 1961(5), Defendants have engaged in a pattern of racketeering activity.

6.  **State whether the alleged predicate acts referred to above relate to each other as part of a common plan, and, if so, describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

    a.  **The names of each individual partnership, corporation, association or other legal entity which allegedly constitute the enterprise;**

Each predicate act previously mentioned above was part of a common plan to convert $35,000,000 USD owned by PSI to Defendants' use and benefit.  Each named Defendant constitutes the RICO enterprise because they are an association in-fact under 18 USC § 1961(4).

    b.  **A description of the structure, purpose, function and course of conduct of the enterprise;**

Madhavi Vuppalapati was the Chairwoman of PISL and Director of PSI at all materials times at issue in this case. She controlled the funds in the possession of PISL and PSI and she was physically located in Pittsburgh. Anandhan Jayaraman is Ms. Vuppalapati's husband, and he was physically located in Pittsburgh.  PISL and Ms. Vuppalapati had access to the $35,000,000 USD in Bonds funds that were held in escrow for PSI's benefit. PISL, Ms. Vuppalapati, and Mr. Jayaraman undertook actions in Pittsburgh to direct the transfer of the Bonds funds away from PSI and to Defendants through the monetary transfers set forth above.

The other Defendants – those other than PISL, Ms. Vuppalapati, and Anandhan Jayaraman - were aware of and otherwise participated in these money transfers by coordinating their efforts with PISL, Ms. Vuppalapati, and Mr. Jayaraman so that they could receive a portion of the transferred funds along with PISL through the money transfers set forth above.

Defendants also coordinated their efforts to hide their conduct by creating, or assisting in the creation of, bogus Memorandums of Understanding, bank accounts, and bogus accounts receivable on PSI's books and records.

    c.  **Whether each defendant is an employee, officer or director of the alleged enterprise;**

All Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

    d.  **Whether each defendant is associated with the alleged enterprise;**

All Defendants are associated with the enterprise.

e. **Whether it is alleged that each defendant is an individual or entity separate from the alleged enterprise, or that such defendant is the enterprise itself, or a member of the enterprise; and**

All Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

f. **If any defendant is alleged to be the enterprise itself, or a member of the enterprise, an explanation whether each such defendant is a perpetrator, passive instrument or victim of the alleged racketeering activity.**

None of the Defendants are victims. Based upon documentation reviewed to date, it appears that all Defendants played a role in transferring the Bonds funds away from PSI. Accordingly, all Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

7. **State and describe in detail whether it is alleged that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The pattern of racketeering activity and enterprise are separate. The Defendants constitute an association in-fact enterprise because Defendants operated within a defined structure as set forth in Section 6(b). Defendants' pattern of racketeering activity is set forth in Sections 2, 5, and 6.

8. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

Defendants created the enterprise as discussed above to engage in the pattern of racketeering activity as set forth above to convert $35,000,000 USD to their personal use and benefit.

9. **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The enterprise converted $35,000,000 USD to its benefit which was then divvied among Defendants as set forth above.

10. **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The enterprise diverted PSI's Bonds funds to their personal use by engaging in a series of money transfers that involve bank accounts located in Hong Kong, the State of Washington, Pittsburgh, Pennsylvania, and Singapore.

11. **If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

Not Applicable.

a. **The recipient of the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

b. **A description of the use or investment of such income**

12. **If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Not Applicable.

13. **If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

    a. **The identity of each person or entity employed by, or associated with, the enterprise and**

    As set forth above, all Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

    b. **Whether the same entity is both the liable "person" and the "enterprise" under §1962(c).**

    The corporate Defendant entities associated with the individual Defendants to form an association in-fact enterprise under 18 USC § 1961(4).

14. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy**

    As set forth above, Defendants agreed to form, conduct, participate in, and coordinate the activities of a corrupt enterprise to transfer $35,000,000 USD by engaging in, and otherwise assisting each other to execute, a series of monetary transfers and by trying to cover-up their actions by creating bogus Memorandums of Understanding, Prithvi Asia Solutions Ltd. as a pass-through entity, and bogus accounts receivable on PSI's books and records.

15. **Describe the alleged injury to business or property.**

    PSI has been injured because it has been denied use of $35,000,000 USD to execute business operations.

16. **Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

    By operating an enterprise and committing the predicate offenses discussed above, Defendants transferred $35,000,000 USD away from PSI by engaging in a series of money transfers and undertaking activities discussed above to cover-up their actions.

17. **List the damages sustained by each plaintiff for which each defendant is allegedly liable.**

    PSI has suffered actual damages in the amount of $35,000,000, trebled in the amount of $105,000,000 plus interest and attorneys' fees. Kyko Global Inc. and Kyko Global GmbH have suffered damages in their capacity as collection agent for PSI.

    Because, without limitation, Defendants conspired to violate RICO and that they otherwise constitute an association in-fact enterprise, all Defendants are jointly and severally liable to Plaintiffs for the damages that they have sustained.

18. **List all other federal causes of action, if any, and provide the relevant statute numbers.**

    None.

19. **List all pendent state claims, if any.**

    Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Concert of Action, Conversion, Conspiracy, Breach of Contract, Promissory Estoppel, Unjust Enrichment.

20. **Provide any additional relevant information that would be helpful to the court in processing the RICO claim.**

Kyko Global Inc. and Kyko Global GmbH (collectively "Kyko") sued Ms. Vuppalapati, PISL - and others who are not Defendants in this case - based on a loan factoring receivables fraud, and civil racketeering pertaining thereto, that Ms. Vuppalapati, PISL, and others committed against Kyko. The case was filed in the U.S. District Court for the Western District of Washington, Case No. 2:13-CV-1034 ("Civil Case"). The factoring receivables fraud at issue in the Civil Case is separate from, and otherwise has nothing to do with, Defendants' racketeering activities at issue in this case.

After conducting a bench trial and hearing evidence, Judge Marsha Pechman entered a money judgment against Ms. Vuppalapati and PISL (and others) in the total amount of approximately $133,000,000 in the Civil Case. The U.S. Justice Department subsequently indicted Ms. Vuppalapati based on her conduct at issue in the Civil Proceeding. The criminal proceeding has not been set for trial with respect to Ms. Vuppalapati.

During the course of the Civil Proceeding and Washington state court enforcement proceedings related thereto, Ms. Vuppalapati had a bench warrant issued for her arrest for failing to comply with court orders, and Ms. Vuppalapati and PISL destroyed evidence and fabricated documents to try to hide their conduct. Based on the Civil Proceeding, Kyko suspects that Ms. Vuppalapati and PISL have hidden and otherwise destroyed and fabricated evidence relating to the RICO enterprise and racketeering activities at issue in this proceeding. The allegations in this case are based, in part, on documentation that was formerly in the possession of Ms. Vuppalapati and PISL.

Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757

FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139
(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
jrodkey@fowkesrodkey.com

*/s/ Jayson M. Macyda*
Jayson M. Macyda (*pro hac vice pending*)
Kyko Global, Inc.
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

*Counsel for Plaintiffs,*
*Kyko Global, Inc.*
*Kyko Global GmbH*
*Prithvi Solutions, Inc.*

Dated:  September 26, 2018