IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____

KYKO GLOBAL, INC., et al.
                            Plaintiffs,
                                                    Civil Action
            vs                                      No. 18-1290

PRITHVI INFORMATION SOLUTIONS, LTD.,
et al.,

                        Defendants.

_____


            Transcript of case management proceedings held on

Tuesday, February 5, 2019, United States District Court,

Pittsburgh, Pennsylvania, before the Honorable Peter J. Phipps,

U.S. District Court Judge.


APPEARANCES:

For the Plaintiff:              Joseph F. Rodkey, Jr., Esq.
                                Fowkes Rodkey
                                732 Allegheny River Boulevard
                                Oakmont, PA 15139
                                jrodkey@fowkesrodkey.com


                                Jayson M. Macyda, Esq.
                                Kyko Global, Inc.
                                P.O. Box 87491
                                Canton, MI 48187
                                generalcounsel@kykoglobal.com


For the Defendant:              (On Following Page)

```
For the Defendant:              John D. Goetz, Esq.
                                Michael H. Ginsberg, Esq.
                                Douglas Baker, Esq.
                                Jones Day
                                One Mellon Center, Suite 4500
                                Pittsburgh, PA 15219
                                jdgoetz@jonesday.com
                                mhginsberg@jonesday.com
                                ddbaker@jonesday.com



Court Reporter:                 Shirley Ann Hall, RDR, CRR
                                6260 U.S. Courthouse
                                Pittsburgh, PA 15219
                                shirleyhall_uscra@yahoo.com



Proceedings recorded by digital stenography; transcript
produced by computer-aided transcription.
```

```
1                     P R O C E E D I N G S
2        (In open court.)
3             THE COURT:  Thank you, you may be seated.
4             We're here this morning on the record in Kyko Global,
5    Inc. v Prithvi Information Solutions, LTD, Case No. 18-cv-1290.
6    Will counsel for the parties please rise and introduce
7    themselves.
8             MR. MACYDA:  Jason Macyda on behalf of the Plaintiffs.
9             THE COURT:  Welcome.
10            MR. MACYDA:  Thank you, Judge.
11            MR. RODKEY:  Joseph Rodkey on behalf of the
12   Plaintiffs, Your Honor.
13            THE COURT:  Welcome.
14            MR. GINSBERG:  Your Honor, Michael Ginsberg from
15   Jones Day on behalf of the SSG Defendants.
16            THE COURT:  Welcome.
17            MR. GOETZ:  Good morning.  John Goetz from Jones Day
18   on behalf of the SSG Defendants.
19            THE COURT:  Nice to see you.
20            MR. BAKER:  Doug Baker from Jones Day on behalf of the
21   SSG Defendants.
22            THE COURT:  Welcome.
23            So there's been a lot of filings in this case, not
24   much judicial resolution to any of the filings yet; I apologize
25   for that.  At the same time I think it just made a lot of sense
```

1      to find out where we were.  So, believe it or not, I was

2      looking forward to this conference to just get a handle on

3      where things stand in this case.

4              I understand that there's past litigation, other

5      litigation in other forums.  It looks like there was -- I'll

6      ask this of Plaintiff.  I understand that there was a lawsuit

7      brought by the United States Department of Justice in the State

8      of Washington?

9              MR. MACYDA:  That's correct, Your Honor.  That's on

10     Madhavi -- you're referencing Madhavi Vuppalapati, and she is

11     one of the -- she is not an SSG Defendant, but she is one of

12     the Defendants in this case wherein, given the civil action

13     that we instituted in front of Judge Pechman in the Western

14     District of Pennsylvania [sic], that led to an investigation by

15     the FBI, the IRS, and the DOJ, which in turn resulted in an

16     indictment against Miss Vuppalapati.

17             THE COURT:  In the Western District of Washington.

18             MR. MACYDA:  Correct.

19             THE COURT:  That civil action was initiated in

20     Pennsylvania or in Washington?

21             MR. MACYDA:  That was initiated in Washington.

22             THE COURT:  Okay.  Is there also Hong Kong litigation?

23             MR. MACYDA:  There is, Your Honor.  And that's

24     derivative of the underlying civil litigation that was filed

25     with Judge Pechman in the Western District of Pennsylvania

1    [sic] and the short version of it is, Your Honor, in that

2    particular case we received a money judgment that's

3    approximately $134 million.

4            What we discovered in doing our due diligence

5    investigation is that there are accounts receivable showing on

6    Plaintiff Prithvi Solution, Inc.'s books and records that show

7    approximately $23 million, according to the books and records.

8    We're owed by Defendant in this case, Value Team Corporation --

9    which has not been served yet; they're not an SSG Defendant --

10   and the SSG entities in this case.

11           So what transpired in that case, referring to the

12   civil case out there in Washington, is that we entered a

13   letters rogatory petition to Judge Pechman to ask her to not

14   compel but request the Hong Kong court to compel certain

15   witnesses over there in Hong Kong to appear in Hong Kong to

16   produce deposition testimony relative to those accounts

17   receivable.  And that matter is being contested by the

18   Jones Day law firm in Hong Kong.  And that litigation is

19   ongoing in Hong Kong as we speak.  The SSG Defendants in the

20   Hong Kong litigation just filed their reply brief.

21           THE COURT:  So if I understand the crux of your

22   action, it's that you're suing -- your clients are suing a lot

23   of people in the Western District of Pennsylvania, some of whom

24   you believe actively defrauded your clients and some of whom

25   are due money from -- have money that you think you can get

1    because you -- because they had transactions with the entities

2    that have been proven to have defrauded your clients, and you

3    want that money as satisfaction for the wrong that I guess your

4    clients allege to have been harmed by?

5            MR. MACYDA:  We plead those claims in the alternative

6    in this case, Your Honor; but replead those -- I believe those

7    are counts starting around nine or ten in the complaint -- in

8    the alternative for breach of contract and quasi-contract

9    claims.

10           To answer your main question, we believe all the

11   Defendants in this particular case entered into a scheme to

12   divert $35 million worth of bond funds from PSI to their own

13   personal benefit.  That is the claim in this case.  In the

14   Washington litigation, that had to do with a loan factoring

15   agreement where certain Defendants in that case defrauded the

16   Kyko entities out of roughly, I think, 18 million; then with

17   interest and trebling of damages, that's how it crept up into

18   the hundred-plus million dollar figure.

19           THE COURT:  And so were these separate transaction

20   occurrences or were they all related to the same transaction or

21   occurrence?

22           MR. MACYDA:  We say they're separate transactions,

23   Judge.

24           THE COURT:  And so the transactions at issue in this

25   case took place in, what, October of 2010?  Do I have that

1  right?

2           MR. MACYDA:  Around about that time, Judge.

3           THE COURT:  Around that time?

4           MR. MACYDA:  Right.

5           THE COURT:  And the other transactions, when did those

6  take place that are separate?

7           MR. MACYDA:  Around 2011.

8           THE COURT:  Okay.

9           MR. MACYDA:  2011, 2012 is when we learned of what

10  transpired.

11           THE COURT:  Okay.  Looks like it's on or about

12  September 6th, 2010, is what the -- is what some of the

13  allegations in the complaint say.

14           Okay.  Now, I understand that there's a motion for

15  international service, I believe, on three entities or

16  individuals, entities, none of which include the SSG kind of

17  family of Defendants, is that correct?

18           MR. MACYDA:  That's correct, Judge.  That's because

19  the SSG Defendants are represented by Jones Day.

20           THE COURT:  Well, let me just use that.  Have you made

21  efforts to serve any of the SSG Defendants?

22           MR. MACYDA:  Have we made efforts to serve them?  No,

23  we have not, Judge.

24           THE COURT:  Okay.

25           MR. MACYDA:  We have discussed this with the SSG

1   Defendants in this case; and our position on that, Judge, is as

2   follows:  One, we initially offered to -- it's contested, but

3   we initially offered to have service effected and then we were

4   told we will only accept service if all the depositions and the

5   like take place overseas.  We didn't agree to that.  So we

6   haven't -- that was the initial term and condition that was

7   placed on it.  We rejected it.

8          And then after that, we filed, as we pointed out in

9   our briefing in this case, we filed the motions for alternate

10  service on PISL and Miss Vuppalapati and Mr. Jayaraman.  And we

11  believe, as indicated in our briefing, that the proper sequence

12  for this, Judge, is because there are common issues of law and

13  fact among all the Defendants, we assert a civil RICO claim on

14  the state claims, we assert conspiracy, concert of action,

15  aiding and abetting, a breach of fiduciary duty, that we

16  believe the proper course is to have all Defendants appear

17  roughly at the same time.

18          Instead, what's transpiring and what the SSG

19  Defendants have done in this case is they don't want to do

20  that.  They want to go right ahead right now with their motion

21  to dismiss before the other Defendants even show up, and

22  there's a reason for that.  One was -- is they're trying to

23  advance the litigation in the Hong Kong proceedings.  And

24  that's why they filed the motion that they originally filed

25  back in November, to get an initial scheduling conference.

 1          The other reason for that, Judge, is that they're

 2     scabbling between the Defendants, the SSG Defendants that claim

 3     that they've been defrauded relative to the bonds that are at

 4     issue in this particular case.  So our view is simply as

 5     follows:  Is that, one, let's get everybody served at the same

 6     time.  Two, after that, let's send this case to mediation.

 7     Judge Schwab has already -- he entered an order initially when

 8     this case was filed to send it to mediation, number one.

 9     Number two, although contested by the SSG Defendants, there is

10     previous overture to have the parties discuss settlement in

11     this case.  We've received word through Miss Vuppalapati's

12     brother that they may be amenable to discussing settlement in

13     this case.

14          So we believe, one, service at the same time; two,

15     mediation --

16          THE COURT:  Okay.  I understand the outline --

17          MR. MACYDA:  Okay.

18          THE COURT:  -- as indicated.  If you think service at

19     the same time is so important, why didn't you move for

20     international service for all Defendants at the same time?  Why

21     did you only move for three of them?  Because it looked to me

22     like almost all of them, save potentially one, would require

23     some form of international service.

24          MR. MACYDA:  Well, because the Jones Day law firm

25     indicated that they would represent all of the -- all of the

1    SSG Defendants.

2          THE COURT:  But when they attached, allegedly -- I

3    haven't heard from them yet -- but when they allegedly attached

4    conditions upon service that were disagreeable to you --

5          MR. MACYDA:  Right.

6          THE COURT:  -- why didn't you just say:  Fine, we will

7    move -- you don't want to do it the easy way, potentially, we

8    can do it the hard way.  We will now move for service

9    internationally of them.  It strikes me as kind of an

10   inconsistency if you want everything to begin at the same time

11   when you've moved for partial service of a group of Defendants

12   and left others out.

13         MR. MACYDA:  Well, the reason for that, Judge, it was

14   very obvious, at least to us, that the SSG Defendants here were

15   willing to accept service.  So our thought process was let's

16   file the international motions that I just mentioned.  Once

17   those are granted, then we'll go to the SSG Defendants.

18   Here's --

19         THE COURT:  But that's different than your position.

20   That shows a tiered approach to service; but you advocated a

21   minute ago that you wanted service at the same time.  And I

22   understand that there was a wrinkle in that.

23         Before I hear from the SSG Defendants, my first -- my

24   final question to you is at what day approximately did you

25   realize that you weren't going to be able to obtain a waiver of

1   service or an agreement of service from the SSG Defendants?

2           MR. MACYDA:  I would say that would be right about

3   when we filed the motions for alternate service on the other

4   Defendants.

5           THE COURT:  All right.

6           MR. MACYDA:  And again, Judge, we viewed that --

7           THE COURT:  So that was approximately

8   November 18th and November 19th of 2018 then, more or less.

9           MR. MACYDA:  Correct.  And we didn't believe it

10  necessary to file the international motion with the SSG

11  Defendants because we knew that they were going to accept

12  service.

13          THE COURT:  But my question is when did you realize

14  that they would not accept service?

15          MR. MACYDA:  Well, in their -- I believe in their

16  motion for initial scheduling conference, the SSG Defendants

17  then stated that no, no, no; we're willing to accept service

18  now.

19          THE COURT:  Okay.

20          MR. MACYDA:  So they retracted -- the conditions that

21  were originally there were then retracted in their motion for

22  initial scheduling conference.

23          THE COURT:  So the date that you realized that an

24  agreement for service would not work was the date that they

25  moved for an initial scheduling conference?

1          MR. MACYDA:  Yes, that's when they indicated there, at

2    least we heard for the first time, that the initial conditions

3    seemed to be withdrawn.

4          THE COURT:  Well, I've heard from you.  Let me hear

5    from SSG Defendants.  Who is going to be speaking for the SSG

6    Defendants?

7          MR. GOETZ:  Your Honor, John Goetz; good morning.

8          THE COURT:  So I've heard a lot about service in this

9    case and kind of -- let me start with this basic question.

10   Your clients -- you represent the SSG Defendants.  They haven't

11   been served in this case.

12         MR. GOETZ:  Correct, despite multiple offers to accept

13   service through counsel.

14         THE COURT:  So when you say multiple offers, I heard

15   from Plaintiff's counsel, Mr. Macyda, and he indicated that

16   those offers all had contingencies on them.  Is that an

17   accurate -- does that accurately reflect your understanding of

18   the offers?

19         MR. GOETZ:  No.  That's a wrong statement to the

20   Court.

21         THE COURT:  Okay.

22         MR. GOETZ:  And we stated on November 16th in our

23   filing that we've contacted Plaintiff's counsel three times to

24   discuss service.  Then we complied with the Court's order to

25   have a meet and confer conference.  We said we're willing to

1    accept service again.  And this morning I asked Mr. Macyda if

2    he's willing to serve us this morning.  No conditions on any of

3    those.

4              THE COURT:  All right.

5              MR. GOETZ:  Still we haven't been served.

6              THE COURT:  All right.  I'm not going to spend too

7    much longer with you based on that.

8              Mr. Macyda, Mr. Goetz just represented that they're

9    willing to accept service, no condition -- without any

10   conditions.  Is that a problem for you?

11             MR. MACYDA:  Well, the only problem -- when you say a

12   problem, we have no problem serving them with a complaint

13   today, but this bleeds into one of the other motions that we

14   filed previously here today, where we asked to either have the

15   motion to dismiss that they filed without -- after the meet and

16   confer to either be stricken temporarily or be stayed to allow,

17   again, the rest of the Defendants an opportunity to appear.

18   So --

19             THE COURT:  I don't think that that's a good

20   sequencing.  I think that if there is multiple Defendants and

21   they've been served, they can move to dismiss -- that's their

22   choice.  And it seems if you want to delay service because you

23   don't want to deal with a motion to dismiss, well, sooner or

24   later there is a 90-day clock for service; it's in Rule 4(m).

25   It has out clauses, of course, for service in foreign

1    countries, and that's understandable because that can take more
2    time and sometimes require motions such as the one that you
3    filed.  But at some point in time it seems that if they're
4    willing to accept service, and they're willing to brief the
5    issues that they've presented -- and they've presented issues
6    such as, as I understand it, lack of personal jurisdiction, and
7    we may get into this co-conspirator theory of personal
8    jurisdiction -- and if they want to raise claims such as
9    failure to state a RICO claim and even a forum non conveniens,
10   it seems that it makes the most sense to move with those.

11            And I think as that briefing is going forward, it
12   makes sense -- the motion for service by publication has been
13   fully briefed, I think.  It's in some ways awaiting a decision
14   from the Court.  I'm happy to turn attention to that; but it
15   struck me that there was something unusual going on because
16   there is an effort to serve three of the Defendants and not the
17   others, is what the papers indicated to me.

18            So I don't know if you need to confer with your
19   clients, but are you going to be able to effectuate service in
20   the next -- by the end of the week on -- through this consent
21   to service that counsel, the Jones Day law firm on behalf of
22   the SSG Defendants, has offered?

23            MR. MACYDA:  Your Honor, yes, we can serve the SSG
24   Defendants this week.  I mean, again, our position was of the
25   timing of issues, it wasn't to hold the service in perpetuity.

1          THE COURT:  Okay.  So I think the next -- so I think
2    that if that happens, then this case begins to get on a
3    slightly more regular course.  They've got a motion to dismiss
4    that has, from what I can tell, been pending for about two
5    weeks, if I've got that right -- since January 15th.  And you
6    have not served -- on opposition to that motion to dismiss, you
7    served a motion to strike that motion to dismiss.  But
8    that's -- I will probably be able to resolve that motion to --
9    the motion to strike the motion to dismiss fairly soon.  I
10   think it makes sense for you to plan a response date to their
11   motion to dismiss.
12        Given that it's already been pending for several
13   weeks, do you need more than ten days to respond to their
14   motion to dismiss?
15        MR. MACYDA:  I do, Judge, and there are two reasons
16   for that.  One is we intend to file a motion for jurisdictional
17   discovery here prior to the hearing of the motion to dismiss.
18   So we think that the better course is to set a date for us to
19   file the motion for jurisdictional discovery.  And, obviously,
20   pending the Court's ruling on that, will then sort of dictate
21   the timing of the response to the motion to dismiss.
22        The other factor in there, Judge, is just simply a
23   personal one.  In three or four days I'm going to be leaving on
24   vacation for about nine, ten days out of the country.
25        THE COURT:  Okay.  I mean it strikes me, though, that

1    this motion has been pending for a while.  There's been no
2    response to it.  If you -- if your position is that there needs
3    to be jurisdictional discovery, that's one thing.  But that
4    would strike me as a basis to have been raised shortly after
5    the motion was pending.
6            Let me hear from SSG Defendants in terms of -- I think
7    the one question I had that I didn't get to was I was a
8    little -- despite the clarity that you provided with regard to
9    accepting service, I'm not exactly sure where you stand with
10   respect to a Rule 26(f) conference.  Originally it seemed like
11   your clients wanted one, and then it seems like you didn't want
12   one, it seems like this is related to personal jurisdiction in
13   some way potentially; but I'd like to kind of get an
14   explanation from you because I have to say I was a little
15   surprised when you asked for a motion, the motion wasn't
16   granted just in the normal course, we triggered it, and then
17   you said actually we didn't want that.  Can you explain that a
18   little bit?
19           MR. GOETZ:  Sure, Your Honor.  We had filed a motion
20   for initial conference, not a Rule 26 conference.
21           THE COURT:  Okay.
22           MR. GOETZ:  Just an initial conference to discuss two
23   issues:  Getting our client served and to set down a schedule
24   to file a motion to dismiss for lack of personal jurisdiction
25   and subject matter jurisdiction.

1                    THE COURT:  Okay.

2                    MR. GOETZ:  When that motion was denied as moot

3     shortly before the end of 2018 --

4                    THE COURT:  Yes.

5                    MR. GOETZ:  -- Your Honor entered a scheduling order.

6     That order is operative and we wanted to comply with it.  We

7     filed a motion for relief of that order, one that was not acted

8     upon before the Court's order on a Rule 26.

9                    THE COURT:  Right.

10                   MR. GOETZ:  But we don't think a Rule 26 conference is

11    ripe at the moment.  There are serious, in our view,

12    dispositive issues of personal jurisdiction.  The Plaintiffs

13    are not entitled to jurisdictional discovery under the clear

14    case law.  We addressed that in a footnote of our brief.  They

15    should file their response; and if they do make a prima facie

16    case -- which they cannot in this case -- then we could talk

17    about jurisdictional discovery.  But the case law is clear that

18    they haven't made out a prima facie case.  The only contact

19    with Pennsylvania is a couple of wire transfers.

20                   THE COURT:  I saw in your case law, as -- I saw you

21    cite, I believe, Third Circuit case law that said that is

22    insufficient contact, if I recall your brief correctly.

23                   MR. GOETZ:  Correct.

24                   THE COURT:  I can't remember the case name.

25                   MR. GOETZ:  There is no right and no need for

1   jurisdictional discovery.  Again, the motion we're hearing

2   about this morning is just one more attempt to forestall a

3   decision on our motion.  They have to prove that jurisdictional

4   discovery is warranted, and on this complaint and RICO

5   statement it's not.

6            THE COURT:  Okay.

7            MR. GOETZ:  So we think that they should get on with

8   it and within ten days file their response because they've

9   certainly had a good look at our papers, enough to file a

10  motion to strike.  But they should get on with it, in ten days

11  file their response.

12           THE COURT:  So, Mr. Macyda, do you have any -- when

13  you say you're contemplating filing a motion for jurisdictional

14  discovery, do you have any allegations connecting, linking this

15  case to this forum beyond wire transfers at present?

16           MR. MACYDA:  Do we have any -- I'm sorry, what was the

17  question?

18           THE COURT:  Any other facts linking this case to this

19  forum beyond wire transfers?

20           MR. MACYDA:  Yes, some of the SSG Defendants actually

21  set up one of the entities in Hong Kong to receive some of

22  these monies, a Prithvi entity that there's supposedly --

23           THE COURT:  The point is in this forum -- I'm not

24  saying nothing unrelated to the transactions you're talking

25  about, but I'm specifically concerned with this forum.  So I

1   understand that there was a wire transfer that went through

2   this forum.  Is there anything else linking the allegations

3   that you have against any of the Defendants, but particularly

4   the SSG Defendants, to this forum beyond receipt of a wire

5   transfer?  At present.  I know you want discovery; but at

6   present do you have anything further?

7          MR. MACYDA:  When you say evidence, Judge, I mean they

8   were contacting people based in Pennsylvania, as our complaint

9   indicates, to set up the route that is in our RICO case

10  statement that ends up in Hong Kong, that ends up in the hands

11  of SSG and VTC.  And that's quite an elaborate -- as the Court

12  is -- I'm sure has read our RICO case statement, is quite an

13  elaborate maneuvering that took place.  We indicate that they

14  coordinated their efforts with people here in Pennsylvania to

15  effect that; one of which, of course, was the wire transfers,

16  and that is one of the RICO predicate offenses, is money

17  laundering which has its own separate jurisdictional

18  provision -- that's completely ignored, by the way, by the SSG

19  Defendants in their motion to dismiss and the like --

20         THE COURT:  Well, I mean I don't want to necessarily

21  hear your arguments on the motion to dismiss now because I'd

22  really like to hear your arguments in writing, and we'll need

23  to set a time for that.  I'm conscious of the fact that you're

24  going to be out of town.  What day do you get back?  What day

25  do you return to the country?

1          MR. MACYDA:  I believe I leave this weekend; I think I

2     come back -- let me get my calendar -- I think I get back on

3     the 18th, if I recall correctly.

4          THE COURT:  Okay.  All right.  I will set a response

5     date of February 28th.  I think that's very generous because I

6     think you already have familiarity with their pleadings, as

7     you're willing to make arguments on it.  I understand that you

8     have vacation, but February 28th respond to their motion to

9     dismiss.

10          If you have -- how many pages do you need to respond?

11    Do you need 15?

12          MR. MACYDA:  They submitted about 30, so combined,

13    about high 20s, if you look at their motion and brief combined?

14    So I would say at least 25.  I just --

15          THE COURT:  No, no, no.  I read it.  I thought it was

16    less.

17          How many was it?

18          MR. GOETZ:  We're checking right now, Your Honor.

19          THE COURT:  There's going to be parity or close to

20    parity.

21          MR. GOETZ:  It's 22 pages with the conclusion at the

22    top.

23          THE COURT:  Okay.  You can have 25, okay?  Is 25

24    enough?

25          MR. MACYDA:  Sure.

1          THE COURT:  Okay.  I don't think it needs 25, but you
2   can have 25.
3          As far as a reply, is 12 pages sufficient?
4          MR. GOETZ:  Yes, Your Honor.
5          THE COURT:  Okay.
6          MR. MACYDA:  Your Honor, just so I'm clear, are we not
7   afforded an opportunity to file the motion to request
8   jurisdictional discovery?
9          THE COURT:  No, we're going to schedule that in a
10  minute.
11         MR. MACYDA:  Okay.
12         THE COURT:  We're going to schedule that in a minute.
13  As far as a date for reply, I have afforded, I think -- I've
14  afforded respect to Mr. Macyda's schedule, so I want to afford
15  similar respect to SSG's Defendant's counsel.  You have 12
16  pages; on the 28th I'm looking at maybe about 12 days,
17  March 12th.  That's a page a day; is that doable?
18         MR. GOETZ:  Yes, Your Honor.  We can file it before
19  then if you'd like to see it.
20         THE COURT:  No, no.  March 12th is fine.
21         MR. GOETZ:  Yes, Your Honor.
22         THE COURT:  Okay.  So that will be due March 12th.
23  Now, let's schedule -- now let's set a briefing schedule for
24  the motion for jurisdictional discovery.  I'd like to do this
25  the same day.  I'd like to do this on February 28th.  Is that

1  doable, Mr. Macyda?

2          MR. MACYDA:  Yes, Your Honor.

3          THE COURT:  Do you need more than ten pages for your

4  motion to support?

5          MR. MACYDA:  Can I have 15, please?

6          THE COURT:  Okay, fifteen.

7          Let's go March 12th for a response date, with 15

8  pages.  Does that work?

9          MR. GOETZ:  Yes, Your Honor.

10          THE COURT:  Do you think you need a reply for this?

11          MR. MACYDA:  I would say so, just given the litigation

12  history.

13          THE COURT:  Okay.  So March 12th -- how about a six

14  page reply?  How about eight days for a six page reply,

15  March 20th?  Is that doable?

16          MR. MACYDA:  Yes, Your Honor.

17          THE COURT:  Okay.

18          All right.  What I will try to do is I will look in

19  earnest at your service for publication motion.

20          I understand there's no opposition to that motion at

21  present.  Is that right?

22          MR. MACYDA:  That's correct.

23          THE COURT:  Okay.  If -- if service by publication is

24  permitted and if no appearance is entered on behalf of the

25  three entities for which service by publication is sought,

1   would it be your next step to move for default and then follow

2   that with a request for default judgment?

3           MR. MACYDA:  I believe that would be our intent,

4   Your Honor, if they don't timely respond.  I think that is what

5   we have to do.

6           THE COURT:  And what is the statute of limitations for

7   these transactions that took place in 2010?

8           MR. MACYDA:  Well, I believe it depends on the claim.

9   The shortest statute of limitation I believe is going to be two

10  years.  The contract, I believe -- and again, Your Honor, I'm

11  doing this off the top of my head.

12          THE COURT:  No, I -- contracts usually are pretty

13  lengthy.

14          MR. MACYDA:  Probably five to six, but we believe it

15  would be tolled under various common law.

16          THE COURT:  Discovery rules, sort of, fraud and

17  discovery rules?

18          MR. MACYDA:  Correct.

19          THE COURT:  And so what is the -- does your complaint

20  set forth the date that you discovered the alleged, you know,

21  I'll call it the fraud because that's probably the exception to

22  the discovery rule that you would be using; does your complaint

23  set forth the date that these actions were actually discovered

24  by Plaintiffs?

25          MR. MACYDA:  Yes.  On or about -- I believe we used

1  November 2016.

2          THE COURT:  Okay.  So is it your position that each

3  one of the counts against the currently -- the three Defendants

4  subject to your motion for service by publication were all

5  within the shortest possible statute of limitations based on

6  your claims of discovery?

7          MR. MACYDA:  Correct.

8          THE COURT:  Okay.  All right.  What if it turns out

9  that in the course of discovery or litigation in this case

10  other facts become known to the Court that show that the

11  discovery was earlier than the date that you allege?  It would

12  seem that -- it would make sense to -- if service by

13  publication is granted, to at least withhold a default judgment

14  until other facts that are related to these transactions or

15  occurrences can be resolved because there's a strong preference

16  in the Federal Courts, and I hope all courts, to litigate cases

17  on the merits and not by default and not through court order

18  that are something other than the merits.

19          Would you have any objection to holding off and

20  staying any entries of default until -- if we get to the point

21  that discovery in this case occurs -- discovery would be

22  complete?

23          MR. MACYDA:  Your Honor, I don't think objections is

24  the word I would use.  I would say -- I think at a minimum they

25  should be held in default, not necessarily default judgment.

1    And then they could show whatever the legal standard is to set

2    aside that default; and if they meet it, then they're back in

3    the case.  But I believe what Your Honor is driving at is you

4    want to enter a default judgment if other facts come to light,

5    and in that sense we would not have an objection to that,

6    Judge.

7              THE COURT:  Okay.  I don't think -- kind of given

8    where this case is, beyond those two briefing schedules,

9    there's not a lot that I have.  I don't think that we can

10   really meaningfully engage in any other kind of Rule 26(f)

11   conversations at this stage of the game.  It's going to depend

12   on those briefing schedules.  The briefing appears to be

13   dispositive.  Those are requests for certain discovery; and

14   when you brief the discovery that you want, any motion for

15   discovery is much, much more successful, at least here, if it

16   specifies precisely the volume of discovery you want and the

17   reason you want it.

18             If you say I want three depositions of four hours each

19   of these people, okay, I can get my head around that.  If you

20   just say open the doors to discovery so I can do some

21   jurisdictional discovery, that's harder.  That's a taller ask.

22             All right.  Let me hear from SSG Defendants.  Is there

23   anything else that you'd like to add?  We've set the two

24   briefing schedules; I don't think there's too much we can do.

25   It's almost like your motion for an initial conference was

1   granted instead of the Rule 26(f) conference, but it wasn't;

2   but is there anything else that you'd like to add?

3           MR. GOETZ:  No.  No, Your Honor, we look forward to

4   receiving service and the summons and complaint from Mr. Macyda

5   and Mr. Rodkey by the end of this week.

6           THE COURT:  Okay.  Good.  I have nothing further.

7           Mr. Macyda, anything further?

8           MR. MACYDA:  No, Judge.

9           THE COURT:  Thank you.

10          MS. ABBOTT, DEPUTY CLERK:  All rise.

11      (Hearing concluded at 10:05 a.m.)

12                  C E R T I F I C A T E

13  I, Shirley Ann Hall, certify that the foregoing is a correct

14  transcript for the record of proceedings in the above-titled

15  matter.

16

17

18                          s/Shirley Ann Hall
                            Shirley Ann Hall, RDR, CRR
19                          Official Court Reporter

20

21

22

23

24

25