IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


KYKO GLOBAL, INC., et al.,

      Plaintiff,

        vs.

PRITHVI INFORMATION SOLUTIONS, LLP, et al.,

      Defendant.
_____

Civil Action

No. 18-1290


     Transcript of TELEPHONIC STATUS CONFERENCE proceedings
recorded on September 25, 2019, in the United States District
Court, Pittsburgh, Pennsylvania, before
The Hon. William S. Stickman, United States District Judge

APPEARANCES:

| | |
|---|---|
| For the Plaintiffs: | Jayson M. Macyda, Esq.<br>Kyko Global, Inc.<br>P.O. Box 87491<br>Canton, MI 48187 |
| | Joseph F. Rodkey, Jr., Esq.<br>Fowkes Rodkey<br>732 Allegheny River Boulevard<br>Oakmont, PA 15139 |
| For the SSG Defendants: | John D. Goetz, Esq.<br>Douglas Baker, Esq.<br>Michael H. Ginsberg, Esq.<br>Jones Day<br>One Mellon Center, Ste. 4500<br>500 Grant Street<br>Pittsburgh, PA 15219 |
| Court Reporter: | Deborah Rowe, RMR, CRR<br>700 Grant Street, Ste. 5300<br>Pittsburgh, PA 15219<br>(412) 471-2510 |

Proceedings recorded by mechanical stenography; transcript
produced by computer-aided transcription

1                    P R O C E E D I N G S

2                              - - -

3            (10:00 a.m.; teleconference proceedings:)

4            THE COURT:  Good morning.  Is everybody there?

5            MR. MACYDA:  Can you hear us?

6            THE COURT:  I can hear you.  We're good.  We wanted

7    to make sure we had the connection.  Okay.  For the court

8    reporter's benefit, and we do have a court reporter here,

9    anybody is free to order the transcript if desired

10   afterwards.

11           We are here in the matter of Kyko Global, et al.,

12   versus Prithvi, P-r-i-t-h-v-i, Information Solutions, et al.,

13   18-cv-1290, on a meet and confer call about a potential

14   discovery dispute concerning the scope of the Court's Order

15   granting jurisdictional discovery to the Plaintiffs in the

16   case.  Would the counsel please introduce themselves and

17   enter their appearance for whom they represent?

18           MR. GOETZ:  Sure, Your Honor.  John Goetz, Michael

19   Ginsberg and Douglas Baker for the SSG Defendants.

20           THE COURT:  Good morning.

21           MR. MACYDA:  Good morning, Your Honor.  This is

22   Jayson Macyda with the Plaintiffs as well.

23           MR. RODKEY:  This is Joe Rodkey on behalf of the

24   Plaintiffs.

25           THE COURT:  Good morning, gentlemen.  So I have

1  received a series of letters raising three specific areas of

2  dispute about the Court's Order granting jurisdictional

3  discovery; the first being the number of depositions to be

4  taken; the second being the location of those depositions;

5  and finally, there are some issues regarding the written

6  discovery requests that were proffered upon the Defendants by

7  the Plaintiffs.

8           I understand the papers before me.  If each side,

9  Defendants and Plaintiffs, would want to give a pretty brief

10  summation of their position, I'm all ears.  So why don't we

11  start with the Defendants, who are resisting the discovery

12  requests?

13          MR. GOETZ:  Yes, Your Honor.  John Goetz here.

14  Thank you very much for the Court's time this morning and for

15  the time of your staff as well.

16          The crux of our discussion today really is the

17  location and the number of depositions.  Our clients are

18  located resident in Hong Kong and Singapore.  We offered to

19  produce a designated representative for our entity clients in

20  our Hong Kong office that the Plaintiff can then depose by

21  videoconference either where Mr. Macyda's office is located

22  in Michigan or, if he prefers, we'll make our office

23  available here in Pittsburgh, Pennsylvania.

24          The depositions, according to the Court's Order,

25  should be limited to contacts with Pennsylvania, this forum,

1    relating to the allegations of this case.  In the Complaint

2    the only thing specific to Pennsylvania was three wire

3    transfers.  There's no specific allegation in the Complaint

4    against any of our individual clients.  So that's why we

5    proposed a designated representative deposition on behalf of

6    our entity clients.

7         So we think the case law is very clear that the

8    location of the deposition should be where the corporate

9    Defendant resides, specifically appropriate here because we

10   have contested jurisdiction, as the Court knows, for a long

11   time.

12        THE COURT:  Sure.

13        MR. GOETZ:  We're willing to produce our clients in

14   Hong Kong at our office that the Plaintiff can depose

15   consistent with the scope of the Court's Order from either

16   Pittsburgh or Michigan.

17        THE COURT:  Let's hear from the Plaintiffs.

18   Mr. Macyda?

19        MR. MACYDA:  Macyda, yes, Your Honor.

20        THE COURT:  What's your response about the location

21   of the depos?

22        MR. MACYDA:  Well, as outlined in our letter,

23   Judge, the main concern that we would have is potentially

24   having to go to Hong Kong, which is literally halfway around

25   the world only to be unable to actually conduct the

1    depositions, given what's going on in Hong Kong right now.

2         This matter was actually just addressed at the U.N.

3    yesterday.  It's still a very ripe dispute, but it would be a

4    tremendous waste of resources if we should fly over there and

5    we don't go forward. I mean -- go ahead.

6         THE COURT:  Well, I mean I'm looking at the paper

7    that you filed before Judge Phipps on March 19 where the

8    Plaintiffs, when they were asking for jurisdictional

9    discovery represented at footnote 7 -- this is ECF No. 45 --

10   that while the Plaintiffs would prefer to take the

11   depositions in Pittsburgh, which I mean I understand that

12   preference, I understand it entirely, the Plaintiffs are

13   willing to appear in Hong Kong to discuss the deponents'

14   depositions.

15        I think that -- I understand that there has been an

16   uptick in some disturbances in Hong Kong protesting some of

17   the issues with the Chinese Government, but to me it seems

18   like a reasonable accommodation that the Defendants have

19   agreed to tender witnesses to you via video conference.

20        I noticed in one of the parties' letters back and

21   forth that there was a concern that in the course of the

22   deposition, because of the 12-hour time difference, if a

23   dispute arose, the Court would not be able to respond.

24        And the Court is telling you that he will be

25   available to respond.  And in fact, the Court will give you

1    the Court's court cell phone that they gave me just for this

2    reason.  And if you let my staff know when these depos are

3    going on, I'll be sure to have it next to me on my

4    nightstand, and I mean that's what I get paid to do.  So my

5    availability to conduct discovery mediation of disputes or

6    issue Orders in the middle of the night is not an issue.

7           I believe that the case law is persuasive, if not

8    controlling -- I know the Court has discretion -- that when

9    taking jurisdictional discovery depositions, they should be

10   located at the principal place of business of the deponent.

11          So the Court's going to enter an Order after this

12   clarifying my previous Order granting jurisdictional

13   discovery that the depositions are either to be taken in

14   person in Hong Kong or via the videoconference that the

15   Court -- that has been offered to the parties.

16          MR. MACYDA:  Your Honor, can I inquire as to the

17   video conference aspect?  That's something that, you know, in

18   theory, you know, sounds appealing.  My only concern, Judge,

19   is we have a 12-hour difference, meaning either the examiner

20   or the examinee would essentially have to, you know, pull an

21   all-nighter to do one of these things.  I mean how would that

22   work?

23          THE COURT:  Yeah.  That's -- in my experience, on

24   your side of the aisle as an advocate, we had a case -- I had

25   a case in this Court before one of my colleagues, and several

1    depositions were conducted either in Dubai or in the Green

2    Zone of Iraq of military personnel, and we used

3    videoconferencing, and that's just a fact.

4           And the way the Court looked at it -- the way I

5    looked at it then as an attorney is with jet lag I would

6    probably be up in the middle of the night in Dubai or the

7    Green Zone of Iraq anyway, so that's just the way that it

8    works out because of the time differences.  But it could save

9    the parties the time and the money of traveling, of actually

10   traveling.

11          MR. MACYDA:  Okay.

12          THE COURT:  So there was also a question about --

13   that the Defendants wanted to tender only one witness.  It

14   looks like from my letters that I've received from the

15   parties, that the Plaintiffs were asking for six witnesses to

16   be deposed.

17          Again, looking at the March 19, 2019, filing before

18   Judge Phipps, it looks like -- and which is what I had before

19   me when I made my decision on jurisdictional discovery --

20   that the Plaintiffs sought to depose three representatives.

21   I thought at the time that three was reasonable.  And I'm

22   happy to hear specific reasons from either side why that's

23   not the case, but I'm inclined to clarify my Order that I

24   issued on this one.  You know, I issued that based on the

25   representations of the parties in those papers.  So I think

1    that three is reasonable.  Is there any objection to three?

2              MR. GOETZ:  Your Honor, one point on that -- and

3    this is John Goetz.  One of the three was Vuppalapati, who we

4    don't represent.  So Mr. Macyda's obviously entitled to take

5    Ms. Vuppalapati's deposition as one of the three.  If the

6    Court would like us to produce two people that we represent,

7    then we will of course comply with the Court's Order.

8              We thought that one person could be a designated

9    representative for both of our entity clients.  And if there

10   was testimony about individuals that had contacts with

11   Pennsylvania, then Mr. Macyda should ask for those

12   individuals.  But if Your Honor would like us to produce

13   three, we will comply with that, recognizing that one of the

14   three is a person we don't represent.

15             THE COURT:  Yes.  Understood that you don't

16   represent Miss Vuppalapati; but that being said, I mean it's

17   just the case that in any litigation, the counsel know the

18   case more than the Court does.  I have what was before me and

19   what was represented to me in the papers.  And it seemed at

20   the time of the argument here, the argument was that the

21   Plaintiffs wanted three.  I thought that was reasonable.

22   That's what they represented on page 7 of the brief.  And you

23   know, I still think that's reasonable.

24             So I'll clarify my prior Order allowing up to three

25   depositions.  And I understand that you don't represent her.

1    So -- but that's something that -- I think that three

2    depositions are reasonable as to scope.  The one thing that I

3    noticed when --

4              MR. MACYDA:  Your Honor, can I ask for

5    clarification on something there?

6              THE COURT:  Sure.

7              MR. MACYDA:  When we say three depositions, at

8    least from our perspective, it's important for us to have

9    binding testimony actually on the SSG entities.  So when

10   we're saying three depositions, like three people, I assume

11   that means that these people would also be testifying in a

12   corporate capacity; right?

13             Because I have -- there are like eight SSG

14   Defendants approximately.  And I think in there you have

15   Value Team Corporation, SSG Hong Kong and SSG Capital One.

16   So if we're only getting three individuals testifying solely

17   in an individual capacity, we have absolutely no testimony

18   over three corporate Defendants who are challenging personal

19   jurisdiction.

20             MR. GOETZ:  Your Honor, this is John Goetz.  I mean

21   Mr. Macyda can choose the three depos as he would like, with

22   one being Vuppalapati.  So he gets two shots if he wants for

23   all people.  And that's essentially what we proposed in our

24   letter.

25             If he wants to depose two representatives, two

1    corporate representatives, that's Mr. Macyda's prerogative

2    pursuant to the Court's Order.

3              MR. MACYDA:  I guess I ask the question if we're

4    being expected to carry the laboring oar over -- establishing

5    personal jurisdiction over every single Defendant who is

6    challenging, I found no case, and I'm yet to hear of any case

7    law that says we don't have the right to depose each and

8    every one of them.

9              That said, what we're asking to do is to depose the

10   three individuals that are listed in the letter as well as a

11   corporate representative of the entities, which to me is

12   probably going to be one of the three people listed in my

13   letter.

14             But I mean it's kind of like a proverbial

15   hit-and-run.  I'm going to challenge personal jurisdiction,

16   but no, no, no.  You don't get to ask me any questions --

17             THE COURT:  I mean it's sort of clear here that --

18   I didn't place the burden of proving personal jurisdiction on

19   the Plaintiffs.  Rule 12 places the burden of establishing

20   jurisdiction on the party that's making the argument that

21   jurisdiction is appropriate in this case.

22             MR. MACYDA:  Correct.

23             THE COURT:  And I guess the way that I look at it

24   as the person who will look at the evidence that you find in

25   discovery is that this isn't like you're trying to meet your

1    burden of proof at trial of pinning down the specific

2    Defendants or the specific misconduct which gives rise to

3    your causes of action.

4            This is discovery which is supposed to ferret out

5    whether and to what extent the Defendants in this case had

6    contact with this forum sufficient to permit me to exercise

7    jurisdiction over this case under the Pennsylvania Long Arm

8    Statute and the federal due process guarantees.

9            So, you know, that might be able to be proven by

10   somebody who can't potentially when it comes to the merits of

11   the case bind the company.  It's not the same level of

12   showing that you have to do, that you would have to prove

13   your substantive claims.  You need to show contacts with the

14   forum.

15           And again, I'm just taking the Plaintiffs at their

16   word when they represented to Judge Phipps that they seek to

17   do three depositions that are binding on both the individual

18   deponents and the corporate Defendants.  That's what the

19   Court --

20           MR. MACYDA:  Correct.  And -- I'm sorry.  Go

21   ahead --

22           THE COURT:  No.  That's all.  I mean that's the way

23   I view this, is this isn't necessarily the same as your

24   30(b)(6) deposition notice so that you can go and get great

25   admissions binding the corporation to put before the jury

1    some day at trial.  This is looking for contacts, and I

2    tended to think that your request before Judge Phipps was

3    reasonable when I entered my Order.

4         MR. MACYDA:  Just for clarification then, what we

5    requested of Judge Phipps in the proposed Order is binding

6    testimony both on the individuals and the corporations listed

7    in there.  But if I'm understanding you correctly, Your

8    Honor, you're stating that for three individuals, we get to

9    do exactly that, get binding testimony on individuals and

10   binding testimony on the entities.

11        THE COURT:  I mean it's -- I think that we're

12   splitting hairs here.  Again, the Court is looking for facts

13   from witnesses that would establish contact with this

14   jurisdiction on behalf of the Defendants in this case.

15        I don't know what the focus is that your -- what

16   your concern is as to who they're able to bind.  I mean

17   whether you can bind somebody in sort of an admission of a

18   party opponent sense or as to the substantive -- like

19   admissions to the substantive liability you're seeking and

20   whether a witness has enough information to establish

21   contacts with the forum I think are different standards that

22   we're looking at.

23        MR. MACYDA:  I guess my concern is, Judge, if I'm

24   asking somebody a question that would, say, relates to VTC in

25   an individual capacity, well, I don't know that answer.

13

1    Well, who would?  Well, Joe Blow -- I don't know, make up a
2    name.  If I ask a question regarding SSG Hong Kong, well, I
3    don't know that question.  I'm here in my individual
4    capacity.  Well, who would know?  Right?  And away we go.
5            So that's my concern.  I don't want to necessarily
6    get tripped up in technicalities, although I don't think
7    we're advancing one.  I just want to make sure -- we'll do
8    the supplemental briefs; and then when the Court rules, that
9    I'm not getting arguments from the other side that that's not
10   binding on these other Defendants because only this person
11   testified --
12           THE COURT:  No.  I understand.
13           MR. MACYDA:  -- and that sort of thing.
14           THE COURT:  I understand.  Here's what we'll do.
15   I'm a firm believer in crossing bridges if we come to them.
16   If that's the case and witnesses are going to have selective
17   amnesia in the course of depositions, then I think that you
18   were right to come to me now to get clarification, and we can
19   seek clarification at that point.
20           What I'm saying is I granted limited jurisdictional
21   discovery in a limited timeframe to give you the opportunity
22   to take the depositions and the discovery that you were
23   seeking to meet your burden to prove personal jurisdiction.
24   And I think that three, based upon your own representations,
25   is adequate.

1          And again, I will give you my contact information

2     so that you keep me on call so that we can try to minimize as

3     much as possible the ongoing disputes between the parties.

4          To that end, one other issue that I wanted to raise

5     is dealing with the written discovery that you've requested.

6     I went through the discovery.  I understand the written

7     discovery.  I understand that there are some issues that the

8     Defendants proffered about contacts with the United States

9     but not necessarily Pennsylvania.

10          So that we're clear here, I am going to order,

11     having looked at these, the Defendants to respond to the

12     discovery that's been proffered.  I think it's reasonable,

13     and I think that the written discovery can serve as a back

14     drop for more focused questions in the course of the

15     depositions.

16          But just so we're all clear as to what we're

17     looking for here, it's -- the contacts that are relevant to

18     jurisdiction in the Western District of Pennsylvania are

19     contacts that are relevant to this jurisdiction.  I

20     understand that there were actions that have been alleged to

21     have taken place in other districts, in other states of the

22     United States, which may or may not be relevant to this

23     litigation here.  I do not believe they're per se relevant to

24     the question of contacts with this jurisdiction that I'm

25     required to find.

1            But that being said, I understand that written

2       discovery frequently casts a broader net, and then you focus

3       on it when you go into depositions.  So I am going to order

4       compliance with what has been proffered in the written

5       discovery that's before me.

6            MR. GOETZ:  Thank you, Your Honor.  We will adhere

7       to the Court's Order.

8            MR. MACYDA:  I think there are a couple

9       housekeeping items I want to address, Judge, before we

10      conclude.

11           THE COURT:  Who is this?

12           MR. MACYDA:  This is Jayson Macyda.  I just want to

13      address a few housekeeping items before we conclude.

14           THE COURT:  Okay.

15           MR. GOETZ:  Judge, I just thought you were going to

16      speak.  So I didn't want you to --

17           THE COURT:  No.  Go ahead.

18           MR. MACYDA:  Okay.  So I think if I heard the Court

19      right, on the written discovery, they are to respond to the

20      discovery requests as we propounded them; correct?

21           THE COURT:  Correct.

22           MR. MACYDA:  Okay.  Number two is to get into Hong

23      Kong to do depositions, we're going to need to get visas.  I

24      know this because we've looked into this issue before.  That

25      process can take -- it's undefined.  It's an undefined time

1   limit.  But what I can sort of gather, that's like a month to

2   two-month process to get that.

3         So I just want to make the Court aware that I am

4   going to go back to the clients and discuss the option of

5   doing a video deposition and see how they feel about it.  But

6   if we're going to go to Hong Kong, and I assume Mr. Goetz is

7   coming, too, I guess that's another issue we need to ferret

8   out, is any attorney who's appearing in Jones Day's office

9   needs to be admitted in this case.

10        But I think that what we need to have happen here,

11   Judge, is, given what you've just ordered, I think we

12   temporarily need to suspend the November 1 cutoff date just

13   temporarily to allow us then to get the visas.  Then once the

14   visas arrive, then I think at that point we can schedule the

15   depositions --

16        THE COURT:  Why don't we do this --

17        MR. MACYDA:  -- if we go to Hong Kong.

18        THE COURT:  Why don't we do this?  First of all,

19   you're using the "if" there.  You mentioned you were going to

20   discuss with your client the possibility of taking the

21   deposition via the videoconference.

22        Why don't we first see two things:  Number one,

23   whether your client acquiesces to save the time and expense

24   and take the video depositions; or, number two, you also

25   said -- and I agree -- it is an indeterminate amount of time

1    as to how long it takes to get a visa to get into Hong Kong.

2            Let's see if we can get there.  And if it comes and

3    we're pressing the deadline, and a good faith effort has been

4    made to comply with the deadline and get to Hong Kong, if

5    necessary, then the Court will be agreeable out of necessity

6    to discuss extending for a limited amount of time focusing on

7    these depositions the deadline.  I'm hesitant to do it now

8    because I think that it's possible that -- it's possible that

9    this could be done.

10           Secondly, is it my understanding -- and, you know,

11   I've seen mentions back and forth in briefs, it's not in the

12   pleadings, not really before the Court, that Kyko has

13   litigation pending in Hong Kong?

14           MR. MACYDA:  Yes.  That's correct.  I don't know

15   what bearing that has on this case.

16           THE COURT:  Well, I mean it seems as though your

17   client is currently litigating in Hong Kong.  Is there any

18   way that you could cooperate with your counsel on the ground

19   in Hong Kong to see if they can give you specific guidelines,

20   guidance, if not assistance, in undertaking your discovery in

21   that jurisdiction or at least helping you through the visa

22   process?

23           MR. MACYDA:  That's what we've done with them

24   before, Judge, regarding litigation in Hong Kong, and that's

25   how I know the visa process, how long it generally takes to

1   get that done.  And then, of course we would have to make --

2   we're at the end of September.  We'd have to make travel

3   arrangements and the like, only to potentially have to cancel

4   them.  So I mean, you know, and I think I have to renew my

5   passport, by the way.  It's getting ready to expire.

6        So all I'm saying to you, Judge, is we'll

7   definitely make a good faith effort.  I just think I'm going

8   to be coming back to you, if we don't do the video

9   depositions, asking for more time.  I just wanted to make

10  that clear at this point.

11       THE COURT:  Let me point out one concern as a guy

12  that just had had his passport renewed.  That's a process in

13  itself depending on the backlog at the State Department.

14  That could take two months I think is what the turn-around

15  time of that is.  So I think these are logistical issues that

16  potentially should have been considered.  I think that these

17  are issues that are surmountable with the assistance of

18  technology.

19       But if your client is adamant, even though they're

20  litigating in Hong Kong, that video depositions are not

21  something that should be done, I think that you need to make

22  all practicable effort to make these arrangements to get

23  there without causing further undue delay in this case.

24       I understand that some of the delay was caused

25  because of the transfer of this case from one Judge to

19

1    another to another.  That's something that the Court

2    understands and is trying to be reasonable with.  I tried as

3    soon as I got on board, seeing the long pendency of these

4    motions, to give them prompt adjudication.

5              But let's see, first of all, if we can do these by

6    video.  And if not, I think that I need to see good faith

7    efforts to make arrangements to get to Hong Kong before we

8    preemptively extend the deadline.

9              MR. MACYDA:  Very well.  The other question I have,

10   Judge, is, you know, the Jones Day appearing in this matter.

11   I assumed that if it was going to go here, that would be

12   Mr. Goetz appearing.  If it goes over there, I don't know if

13   the same is the case.  And I think we should have

14   clarification on that issue.

15             MR. GOETZ:  Your Honor, Mr. Macyda needs to tell us

16   how he's going to do the depositions.  And the

17   videoconference is the way to do the depositions.  If

18   Mr. Macyda changes his mind, we'll answer that question at

19   that point.

20             We're well aware of the admission requirements,

21   including Mr. Macyda's pro hac vice motion, which we did not

22   oppose for this case.  So these issues are premature.  And --

23             THE COURT:  Yeah.  Actually -- I tend to agree.  My

24   view is that I grant as a matter of course within hours of

25   receiving any pro hac vice admission requirement for this

1    Court, provided it meets the minimum requirements required by

2    the local practice of this Court.  So I am not concerned.

3           I mean Hong Kong is the home to satellite offices

4    of many American law firms.  Hong Kong is a common law

5    jurisdiction.  And I mean we would look into, of course, the

6    papers and the requests for pro hac proffered before us.  But

7    that's not an issue that I would allow in any respect to slow

8    down this litigation.  Things like that I address within ten

9    minutes of getting to work every day.  So that's something

10   that I would take care of.

11          Before we're off the phone -- and I hope that I

12   don't come to regret this.  But I'm going to give you my

13   District Court cell phone number so that when these

14   depositions are scheduled, to the extent that a stitch in

15   time can save nine or a call in the night can save an hour of

16   our time during the day, my District number is XXX-XXX-XXXX.

17          I generally don't have it with me on my nightstand.

18   But if you send my office an E-mail or give us a call when

19   these depositions are going to take place, I will make sure

20   that I do and that I'm on call to try to aid the parties in

21   making the discovery process as streamlined as possible.

22          And just for the record, we're going to ask that

23   the court reporter redact that so that if you have a question

24   and you lose it, it's not in the transcript.  You can call my

25   Courtroom Deputy, and she will give you the number if you

1   lose it.

2          So if there's nothing else for the good of the

3   order, I'm going to adjourn the call, and an Order will

4   follow today clarifying my prior Order setting forth the

5   results of what we've discussed today.

6          I appreciate the call; and, again, I view my role

7   in the discovery process as as much as possible to be an

8   asset to the parties to try to avoid the need to take the

9   time and expense of filing formal motions, briefing them,

10  having argument on them.  So if you need me in the future,

11  please, again, as my case management standing order requires,

12  don't hesitate to give us a call.

13          MR. GOETZ:  Thank you, Your Honor, for your time

14  this morning.

15          MR. MACYDA:  Thank you, Judge.

16          THE COURT:  No worry.  Have a good day.

17          (Proceedings were concluded at 10:32 a.m.)

18                        – – –

19

20             C E R T I F I C A T E

21

22          I, Deborah Rowe, certify that the foregoing is
    a correct transcript from the record of proceedings in the
23  above-titled matter.

24  S/Deborah Rowe   _____

25  Certified Realtime Reporter