```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

_____

KYKO GLOBAL, INC., et al,
                Plaintiffs,
                                            Civil Action
     vs                                      No. 18-1290

PRITHVI INFORMATION SOLUTIONS, LTD, et al.,
                Defendants.

_____

       Transcript of telephone status conference proceedings held on October 8, 2019, United States District Court, Pittsburgh, Pennsylvania, before the Honorable William S. Stickman, U.S. District Court Judge.


APPEARANCES:

For the Plaintiff:         Jayson M. Macyda, Esq.
                                 Kyko Global, Inc.
                                 P.O. Box 87491
                                 Canton, MI 48187
                                 generalcounsel@kykoglobal.com


For the Defendant:        Michael H. Ginsberg, Esq.
                                 Jones Day
                                 One Mellon Center
                                 Suite 4500
                                 Pittsburgh, PA 15219
                                 mhginsberg@jonesday.com



Court Reporter:            Shirley Ann Hall, RDR, CRR
                                 6260 U.S. Courthouse
                                 Pittsburgh, PA 15219
                                 shirleyhall_uscra@yahoo.com


Proceedings recorded by digital stenography; transcript produced by computer-aided transcription.

```
 1                      P R O C E E D I N G S
 2           (By telephone conference call.)
 3           MS. ABBOTT, DEPUTY CLERK:  You are now connected to
 4   the conference.
 5           THE COURT:  Hello.  This is the Judge --
 6           MR. KING:  Good morning, Judge Stickman.  This is
 7   Mike Ginsberg at Jones Day.
 8           THE COURT:  Mr. Ginsberg, how are you?
 9           MR. GINSBERG:  I'm fine, thank you; how are you?
10           THE COURT:  Okay, I think.
11           So it looks like we have another discovery dispute.
12   I've read the parties' letters to one another, and I guess
13   let's zero in on what issues are before the Court.
14           MR. MACYDA:  Your Honor, this is Jayson Macyda on
15   behalf of the Plaintiffs.  I think today you have three issues
16   in front of you:  Whether or not the November 1 discovery
17   cut-off date should be adjourned to January for the reasons set
18   forth in our letter; two:  I think the scope of the
19   depositions, whether or not the inquiry includes just contacts
20   with the State of Pennsylvania or the United States as well;
21   and then, three:  The length of the depositions.
22           THE COURT:  Okay.  Well, I would like to address those
23   matters in reverse order.
24           I think that when it comes to length of the
25   depositions, I understand that there are some back and forth
```

1  about scheduling all-day depositions. The Federal Rules of
2  Civil Procedure give a presumptive seven hours for depositions.
3  I think that it's presumed that attorneys using their
4  professional expertise as to the case and the issues in the
5  case will tailor depositions to the amount of time necessary to
6  fully and fairly address the issues that are out there.
7        Both my order granting jurisdictional discovery and my
8  order of -- I believe it was September the 25th, clarifying my
9  September the 5th order, were clear -- or at least I tried to
10 make them clear, that these depositions would be limited to
11 jurisdictional contacts with this forum.
12       Look, I'm not the lawyer in the case. I can't imagine
13 how it would take seven hours to address forum contacts with
14 these -- with each of these witnesses and with the forum. But
15 at the same time I don't think it's the role of the Court to
16 hold the hand of the attorneys and tell them exactly what
17 questions to ask and how long to do it in.
18       So what I'm inclined to say is subject to the other
19 two pieces, the other two issues out there that we'll address,
20 I'm inclined to say that I'm not going to set a hard timeframe.
21 I'm going to set a timeframe based on substance. And what the
22 substance is is what is in my prior two orders. I think
23 that -- and this kind of bleeds into No. 2, the second issue
24 that you've raised as to what is the scope of these
25 depositions.

1               In the Court's view, the scope of these depositions is
2    not a fishing expedition.  It's not the merits of your claim.
3    It's whether I can hear the merits of your claim, whether this
4    Court has diversity jurisdiction in this district -- whether
5    this Court has personal jurisdiction, actually, in this
6    district is what the issue is, personal jurisdiction.  And that
7    requires contacts with this district to be established.
8               I read your submission back and forth about RICO and
9    the broader service that you allege, rules governing RICO, but
10   RICO still required -- RICO -- there's no universal personal
11   jurisdiction under RICO.  The RICO statute, specifically
12   Section 1965, still requires that a RICO action be brought in a
13   district which -- in which a person, the Defendant, resides, is
14   found, has an agent, or transacts affairs.  It still requires
15   contacts.
16              So, again, not really having delved into the substance
17   of your claims beyond reading what's in the complaint and the
18   moving papers in this case, my understanding is that you've
19   alleged a couple of financial transactions that went through
20   this district and some presence, at least at some point, of
21   some of these parties in this district.  I don't know, but I
22   think that --
23              MR. MACYDA:  Your Honor, if I could briefly interrupt,
24   we also allege financial transactions occurring in the State of
25   Washington; and what we're alleging on the RICO context is that

1  the SSG Defendants were complicit and were involved in that --
2  in that contact at a minimum out there in the State of
3  Washington.  Moreover, you have three Defendants, PISL, Madhavi
4  Vuppalapati and Anandhan Jayaraman who were all based, as we
5  set forth in our complaint and in our briefing papers, who were
6  located in Pittsburgh.
7  　　　　　So when we're looking at RICO and you're exercising
8  federal question jurisdiction and, in particular, whenever our
9  RICO predicate offenses is money laundering, which is an
10 explicit territorial reach for foreign citizens who reach into
11 the United States to engage in that conduct, that's why we
12 submit that, of course, there has to be some connection to
13 Pennsylvania, but the jurisdictional inquiry for purposes of
14 RICO does not stop there.  It looks at contacts relative to the
15 United States as well.
16 　　　　　THE COURT:  So here's what the Court's view of this
17 is.  The Court's view is this:  For this Court to exercise
18 personal jurisdiction over the Defendants that have been sued
19 in this case, there has to have been sort of minimum contacts
20 with this -- with the Commonwealth of Pennsylvania and with
21 this district, but with the Commonwealth under our long arm
22 statute and with -- under US Supreme Court decisions about due
23 process.
24 　　　　　I understand that the claims that you have asserted
25 are that the players involved in the transactions and in the

1 misconduct that you've alleged in your complaint engaged in
2 activities in certain other jurisdictions as well. But I
3 think -- and again it's not my job as the Court to craft your
4 deposition strategies and your deposition questions. The focus
5 of this has to be focused on discovery regarding contacts with
6 this forum that would give this Court personal jurisdiction
7 over the parties which you've sued.
8     To the extent that those contacts involve activities
9 that occurred in -- through other jurisdictions, I understand
10 that's part of any deposition. And in any deposition, in any
11 case, there is a -- the parties are given some degree of
12 latitude on how they frame their questions and get to the
13 issue.
14     I don't think it's the job of the Court when we're --
15 when the Court is dealing with professionals on the part of the
16 counsel to have to sit and vet every question that comes forth.
17 So, again, I'm going to stand on the order that I set forth
18 earlier, that the discovery is to be focused on contacts with
19 this jurisdiction.
20     And, again, if that means that there are questions --
21 that to some extent there are tentacles that go into other
22 jurisdictions, then that's fine. But the focus has to be with
23 this jurisdiction because this is the place that you've chosen
24 to bring your action and this is the place that you have the
25 burden of establishing jurisdiction.

1    So to that end, again, I'll give the same, I suppose,
2 invitation that I gave.  I would hope that the counsel in
3 preparing for these depositions can do so in a manner which
4 avoids as much as possible needless discovery disputes.  But
5 that being said, the Court will make itself available -- and it
6 doesn't matter what time of day or night it is -- to answer
7 these so as to make sure that you get what you need -- that
8 both sides get what they need in these depositions so as to be
9 able to supplement your briefs and allow this Court to have the
10 record before it that it needs to make the determination on
11 personal jurisdiction.
12    The final point again is as to the deadline, and at
13 this point I'm sticking with the November 1st deadline.  With
14 all due respect to the Plaintiffs, as early as March 17th --
15 March 19th of this year the invitation had been made that if
16 the Court disagrees with the Plaintiff's position that the
17 jurisdictional discovery should be conducted in Pittsburgh,
18 which the Court did disagree, the Plaintiffs made themselves --
19 gave the invitation to the Court, said that they would be
20 willing to appear in Hong Kong to conduct a deponent's
21 deposition.
22    I think as part of that statement it was implicit that
23 counsel for the parties would have the ability to do so
24 vis-a-vis having a passport.  We are now over six weeks after,
25 past my order giving limited jurisdictional discovery, and two

1  weeks after our last conference, and we still haven't gotten
2  any progress on getting these depositions scheduled.  And,
3  frankly, I don't think it's -- I don't think it's appropriate
4  now to put off discovery until after the new year so that
5  paperwork can be taken care of that, frankly, was a necessary
6  prerequisite to taking these depositions in Hong Kong as early
7  as the first moving papers before the Court.
8        Secondly, again, there has been an invitation made
9  that a videotaped deposition -- or not videotaped -- video
10 conference deposition would be made available.  Federal Rule of
11 Civil Procedure 30(b)(4) gives the Court the authority to order
12 depositions to be taken by video conference or other
13 alternative means.  Federal District Courts throughout the
14 country facing situations like this with witnesses in other
15 countries -- I've seen Equatorial Guinea, I've seen Pakistan in
16 some of the cases -- where there's a question as to where
17 depositions should be taken, have ordered depositions to be
18 taken in or via simulcast video conference depositions.  I'm
19 not going to order that.
20       Again, I'm going to give the option, if you can do
21 what you need to do to get these things taken care of before
22 the deadline the Court set six weeks ago, then you're welcome
23 to go and do it.  Otherwise, I think that you should seriously
24 consider the offer to have these by video conference
25 deposition.

1  MR. MACYDA: And, Your Honor, I would just like to go
2  on record saying that it would be an impossibility for us to
3  have applied for a visa back in March. The visa process, if we
4  submitted the declaration, requires putting in dates certain.
5  So it was not -- you know, when we went from, I think, a
6  briefing schedule that concluded in March of this year and we
7  didn't get a ruling, I believe, until towards the back end of
8  September of this year; and since that point in time, as you
9  see, the SSG Defendants have been fighting us on the concept of
10 whether or not you even need to get a visa.
11  And so with that being the case, and our declaration
12 saying what it says, that -- you know, as soon as we got the
13 order entered and the discovery disputes with Your Honor, it
14 would have been an impossibility for us to have made the
15 November 1 deadline, number one.
16  Number two, I'm not quite sure what the legal basis is
17 for the rush of wanting to have the depositions scheduled --
18 excuse me, completed, by November 1. You know, this case is --
19 you know, we are where we are as far as, you know, the
20 progression of the case from where we filed it. But, you know,
21 we have an order saying that we were entitled to go to
22 Hong Kong and now we effectually do not because we can't get
23 the -- you know, the visa application, you know, processed
24 through in time.
25  So, you know, the Plaintiff is going on record saying

1    we respectfully disagree with your Court's opinion.
2              THE COURT:  Exception noted.
3              Does Mr. Ginsberg, Mr. Goetz or Mr. Baker have any
4    response about the issue for the record about the need to have
5    a work visa to take a deposition in Hong Kong?
6              MR. GINSBERG:  Yes, Your Honor.  This is Mike Ginsberg
7    for the record.
8              The Hong Kong Immigration Department Guidebook says
9    that -- it's Paragraph -- Section 5, Paragraph 13 on Page 6 of
10   the Guidebook says that a person permitted to enter the
11   Hong Kong region as a visitor may generally engage in the
12   following business-related activities.  Section B says
13   certainly compensation for other civil proceedings.  We found
14   in a very short Internet search the opinion of Tanner DeWitt, a
15   very well-respected Hong Kong law firm, that depositions are
16   permitted under that provision; and that's consistent with the
17   rules themselves.  And originally I produced that to Mr. Macyda
18   and, frankly, have been telling them for a number of weeks we
19   do not believe that a visa is required.
20             We are prepared to go as soon as they want to get them
21   scheduled to Hong Kong, if they want to have the depositions in
22   Hong Kong; and will repeat our offer to make the witnesses
23   available by video conference.  We've made that offer
24   repeatedly for the last many months.  But if they want to do it
25   in Hong Kong, we'll go and do it in Hong Kong.  But we don't

1  want to wait -- we don't want to delay the process of getting
2  this resolved.
3          MR. MACYDA:  Your Honor, a brief response to that,
4  because we just received their position on the handbook three
5  hours ago -- or roughly four hours ago.  The civil proceedings
6  that they reference, my understanding in talking to my
7  solicitor, refers to Hong Kong litigation, not US litigation.
8  So -- and you also notice in Mr. Ginsberg's letter, he
9  references, you know, that his colleagues have -- in Hong Kong
10 apparently affirm Mr. Ginsberg's position.
11         Notably, Your Honor, though, none of them were willing
12 to put that in a declaration, like Mr. Watt did.  So what you
13 have in front of you are hearsay statements from a website and
14 apparently colleagues of Mr. Ginsberg's in Hong Kong and -- or
15 you have Mr. Duncan Watt's verified declaration in front of you
16 that lays out the rough timeline in the process to get into
17 Hong Kong.
18         And, Your Honor, you know --
19         THE COURT:  I guess --
20         MR. MACYDA:  Go ahead.
21         THE COURT:  No.  I guess my issue is this:  I mean the
22 visa is really the second hurdle that you would have to
23 overcome to take one of these depositions in person.  The first
24 is that despite requesting the Court's -- despite requesting
25 jurisdictional discovery in representing as early as March that

1    you'd be willing to take it in Hong Kong, you don't even have a
2    passport to make arrangements.
3             Secondly, these issues were not specifically raised
4    but for perhaps an addendum to the conversation at the very end
5    the last time we had one of these meet and confers two weeks
6    ago.  And, thirdly -- I mean this is not a -- an issue of when
7    general discovery should cut off.  This is an issue of whether
8    this Court can even move into that phase, whether this Court
9    has jurisdiction, or whether you should be filing this case
10   somewhere else.
11            And I think that there is -- it has been my effort
12   since I've become the trial judge on this case to give the
13   parties attention to the motions that were outstanding, which I
14   did within two weeks of taking the bench.  And my concern is --
15   is that I believe that in light of the offer for the
16   depositions to be conducted via live video conferencing, which
17   has been held both by Rule 30(b)(4) of the Rules of Civil
18   Procedure as well as numerous District Courts as being a
19   permissible and sometimes a favorable method of taking
20   discovery, that I think that the Court is -- the Court is of
21   the position that the deadline is not going to change.
22            If you can somehow either yourself or through
23   affiliate counsel take the depositions in person in Hong Kong,
24   that's great and that's up to you.  But if the depositions have
25   to be taken via video conference, that is an acceptable option

1  both under the rule and the case law and that's the position is
2  that the Court takes.
3      MR. MACYDA:  Just for the record, then, the Plaintiffs
4  respectfully disagree, Your Honor.
5      THE COURT:  Exception noted.
6      If there's nothing else, what we will do is issue
7  another order recounting and clarifying the Court's decision
8  again relating back to its September 5th order affording
9  jurisdictional discovery.
10      MR. GINSBERG:  Thank you, Your Honor.
11      THE COURT:  Thank you; have a good day.
12      MR. MACYDA:  Thank you.
13     (Telephone conference concluded at 2:55 p.m.)
14          C E R T I F I C A T E
15  I, Shirley Ann Hall, certify that the foregoing is a correct
16  transcript for the record of proceedings in the above-titled
17  matter.
18
19
20          s/Shirley Ann Hall
        Shirley Ann Hall, RDR, CRR
21          Official Court Reporter
22
23
24
25