IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation<br><br>Plaintiffs,<br>v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation, SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company<br><br>Defendants. | Case No. 2:18-cv-1290-WSS |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN OPPOSITION TO SSG DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2)**

**BACKGROUND**

On September 5, 2019, this Court granted Plaintiffs' motion to conduct jurisdictional discovery and ordered that discovery is "*strictly limited to* the issue of Defendants' relevant contacts with this forum." [Doc. No. 63] (Emphasis Included). On October 8, 2019, this Court entered another order that states that discovery is limited to "relevant contacts **with this forum**" [Doc. No. 71] (Emphasis Included). Accordingly, Plaintiffs only discuss the SSG Defendants' contacts with Pennsylvania.[1]

For the reasons set forth in Plaintiffs' prior briefs, and as more fully discussed below, Plaintiffs have established a prima facie case of personal jurisdiction over the SSG Defendants which requires the SSG Defendants' Fed. R. Civ. P. 12(b)(2) Motion to be denied.

**ARGUMENT**

**I. Standard of Review**

"[W]hen the court does not hold an evidentiary hearing on the motion to dismiss [for lack of personal jurisdiction], the plaintiff need only establish *a prima facie case* of personal jurisdiction *and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor*." Miller Yacht Sales Inc. v. Smith, 384 F.3d 93, 97 (3rd Cir. 2004) (Emphasis Added); In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (3rd Cir. 2003) (holding that plaintiff's averments of jurisdictional facts are accepted as true, and when jurisdictional discovery has occurred, but no evidentiary hearing is conducted, plaintiff's factual averments should be "credited" to determine whether personal jurisdiction exits)(Citation Omitted).

"A single contact that creates a substantial connection with the forum can be sufficient to

---

[1] Plaintiffs have previously briefed and argued that the personal jurisdiction inquiry also includes contacts outside of Pennsylvania. Accordingly, Plaintiffs do not waive their argument that the personal jurisdiction inquiry also involves contacts that have occurred within the United States and overseas.

1

support the exercise of personal jurisdiction over a defendant." Miller Yacht, 384 F.3d at 96. "A plaintiff meets its burden to establish a prima facie case of personal jurisdiction by demonstrating 'with reasonable particularity sufficient contacts between the defendant and the forum state.'" Skidmore v. Led Zeppelin, 106 F.Supp.3d 581, 585 (E.D. Pa. 2015)(Citations Omitted).

## II. The SSG Defendants' Denials of Personal Jurisdiction Are Irrelevant

In Feinberg Inc. v. Central Asia Capital Corp. Limited, 936 F.Supp. 250, 254 (E.D. Pa. 1996), the court stated in pertinent part:

> In ascertaining whether Plaintiff has established a *prima facie* case, the Court does not act as a fact-finder ... , the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal.... **[This rule] prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts....** (Citation Omitted)(Emphasis Added).

Given the SSG Defendants' "responses" to Plaintiffs' written discovery requests and the evasive deposition testimony of Peter Cairns, Dinesh Goel, and Shyam Maheshwari, the SSG Defendants will invariably argue that jurisdiction is allegedly lacking given their denials of same. As set forth in Feinberg, the SSG Defendants' denials are irrelevant and this Court does not act as a fact-finder to determine which parties' version of events is correct. The sole issue is whether Plaintiffs have set forth a prima facie case of personal jurisdiction over the SSG Defendants. As set forth below, Plaintiffs have clearly done so.[2]

## III. The SSG Defendants Entered into an Agreement to Become Equity Holders of PISL With Respect to PSI's Bond Funds

Defendant Dinesh Goel, SSG's managing director, testified that he physically appeared in Pittsburgh in June, 2008, and met with Defendant Madhavi Vuppalapati (among others) in

---

[2] On November 15, 2019, this Court ruled that Defendant Value Team Corporation ("VTC") lacked capacity to appear in this matter and defend, and consequently, this Court ruled that VTC did not have to participate in jurisdictional discovery. [Doc. No. 106]. Accordingly, Plaintiffs do not address VTC in this Supplemental Brief and have sought reconsideration of this Court's ruling [Doc. No. 107] which is currently pending this Court's review. Nevertheless, consistent with Doc. No. 107, Plaintiffs further state that the SSG Defendants' legally impermissible attempts to act on VTC's behalf throughout this case to seek affirmative relief from this Court amounts to a submission of personal jurisdiction.

Pittsburgh to discuss Prithvi's U.S. operations.[3] **(Exhibit A)**[4]**.** Moreover, pursuant to Plaintiffs' written jurisdictional discovery requests, the SSG Defendants produced PSI's Annual Report (SSG Bates Number 00045) dated March 16, 2010 *that shows the SSG Defendants were aware that PSI's principal place of business was in Pittsburgh* during all material times set forth in the Complaint **(Exhibit B)**. The SSG Defendants appear to have requested PSI to send this document to the SSG Defendants as part of the SSG Defendants' "KYC" (know your client) process. **(Exhibit C)**.

After conducting their due diligence, and otherwise being familiar with PISL and PSI based on Mr. Goel's personal appearance in Pittsburgh to learn about the companies' operations, the SSG Defendants entered into an agreement with PISL to become an equity holder in PISL. Defendant Shyam Maheshwari, Partner at SSG and part of its investment team, testified that Defendant SSG Capital Partners I LP ("SSG Capital") and PISL entered into an agreement with respect to PSI's Bond Funds that was designed to have SSG Capital become an "equity holder" of PISL. **(Exhibit D)**.

As SSG Defendants' counsel stated during Mr. Goel's deposition: "The question in this case, Mr. Macyda, isn't his knowledge; the question in this case is whether they did business in Pennsylvania." **(Exhibit E).** As set forth above, the SSG Defendants clearly did business in Pittsburgh with PISL and PSI which involve the Bond Funds at issue in this case. Accordingly, Plaintiffs have established a prima facie case of personal jurisdiction over the SSG Defendants.[5]

---

[3] PISL has been registered to conduct business in Pittsburgh from 2000 - present. [Doc. No. 11-2].
[4] Exhibits include document(s) followed by relevant testimony transcript excerpts.
[5] In fact, the SSG Defendants routinely do business in Pennsylvania as evidenced by their management of $300,000,000 allocated to them for investment by the Pennsylvania Public School Employees' Retirement System ("PSERS"). [Doc. No. 83-8]. Even though this Court has ordered the SSG Defendants to produce documents evidencing their involvement with PSERS [Doc. No. 68 requires "complete responses to the Plaintiffs' written discovery requests"], they have refused to do so which has caused Plaintiffs to file an Open Records Request with the Pennsylvania Office of Open Records. This matter is currently on appeal as the SSG Defendants again refuse to produce documentation.

See O'Connor v. Sandy Lane Hotel Co. Ltd., 496 F.3d 312, 323 (3rd Cir. 2007)(permitting personal jurisdiction when it is "reasonably foreseeable" that a defendant may be subject to suit in a forum).

**IV. PSI's and PISL's Executives Acted in Pittsburgh With Respect to the Bond Funds**

As set forth in David Amorose's Declaration (**Exhibit F**) - PISL's and PSI's former Corporate Controller and court-appointed CFO - PISL and PSI conducted business at the same location in Pittsburgh and PSI maintained its principal place of business solely in Pittsburgh and maintained its sole bank account at PNC Bank located in Pittsburgh. Further, Mr. Amorose worked with Defendant Madhavi Vuppalapati, Satish Vuppalapati, and Guru Pandyar (collectively "Executives") with respect to the Bond Funds. Mr. Amorose states that all operations with respect to the Bond Funds were executed and managed solely in Pittsburgh and that the Executives managed the Bond Funds while physically present in Pittsburgh and via electronic means such as email and telephone. Accordingly, Mr. Amorose states that all communications among the Executives and Defendants with respect to the Bond Funds were directed to, and received from, Pennsylvania.[6],[7]

**V. The SSG Defendants Reached into Pittsburgh to Create Prithvi Asia Solutions Limited to Act as a Pass-Through Entity to Receive PSI's Bond Funds**

---

[6] The SSG Defendants have relied upon Walden v. Fiore, 571 U.S. 277 (2014) for the proposition that the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" [Doc. No. 43, Pg. 8]. The SSG Defendants take this quote out-of-context, as the Court stated "although physical presence in the forum is not a prerequisite to jurisdiction ... physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact". Walden 571 U.S. at 286. Moreover, in Tracinda Corp. v. Daimler Chrysler AG, 502 F.3d 212, 225 (3rd Cir. 2007), the court stated, "[i]t is axiomatic that a corporation by structural necessity must act, if it acts at all, through its agents." (Citation Omitted). Accordingly, the SSG Defendants' contacts with PISL's and PSI's executives, both in their corporate and individual capacities, are part of the minimum contacts analysis.

[7] It is anticipated that the SSG Defendants may claim that they did not contact Pittsburgh because some email or other communications contain signature blocks that reference Washington or India or that other communications allegedly occurred outside of Pennsylvania. As previously set forth Feinberg, this Court is not acting as a fact-finder on this Motion and the SSG Defendants' jurisdictional denials are otherwise irrelevant. In any event, as set forth in Mr. Amorose's Declaration, Pittsburgh served as the sole focal point regarding PSI's Bond Funds and communications related thereto.

4

As part of the Defendants' conspiracy to steal PSI's Bond Funds, the SSG Defendants obtained PSI's and PISL's corporate information by contacting PSI and PISL in Pittsburgh to enable them to create Prithvi Asia Solutions Limited ("PASL") to serve as a pass-through entity to receive PSI's Bond Funds.

On August 6, 2010 - approximately two months before the commencement of the wire transfers as set forth in Plaintiffs' RICO Case Statement[8] - Mr. Goel contacted Satish Vuppalapati to obtain PSI's corporate information to allow Mr. Goel to facilitate the creation of PASL.[9] On August 26, 2010, Mr. Goel again contacted Mr. Vuppalapati to obtain PSI's corporate documentation. (**Exhibit G**).

Mr. Maheshwari was involved in creating PASL and activating PASL's bank account. On September 6, 2010 - approximately one month before commencement of the wire transfers - Mr. Maheshwari contacted Ms. Vuppalapati and Mr. Vuppalapati and requested detailed corporate information from both PISL and PSI for "activating the bank account" for PASL. Among other things, Mr. Maheshwari requested PSI's Certificate of Incorporation. (**Exhibit H**).

On September 7, 2010, Mr. Maheshwari reviewed PSI's corporate information and determined that he did not receive all the information he requested, including PSI's Certificate of Incorporation. However, Mr. Maheshwari apparently received PSI's Annual Report (SSG Bates Number 00045, **Exhibit B**) after September 7, 2010, pursuant to his request and as part of the SSG Defendants' KYC process previously discussed above *which shows that PSI's principal place of business was in Pittsburgh* because, on September 9, 2010, Mr. Maheshwari informed PSI and PISL that he received all requested information and arranged to have it filed with the Hong Kong Register of Companies to have PASL created and to have this information submitted

---

[8] The RICO Case Statement Transfers discussed in this Brief are listed in Doc. No. 5, Pg. 3.
[9] PSI's and PISL's corporate information was needed to give the appearance that PASL was a legitimate subsidiary.

5

to Hang Seng Bank to open PASL's bank account. **(Exhibit H).**

Through Messrs. Goel's and Maheshwari's contacts with PISL and PSI in Pittsburgh, PASL was created and its bank account was activated which set the stage to allow the SSG Defendants to funnel PSI's Bond Funds out of Pittsburgh via wire transfers with full knowledge that the wired funds would come from Pittsburgh.

**VI. The SSG Defendants Reached into Pittsburgh to Effectuate the Wire Transfers**

To try to escape the jurisdictional consequences of their involvement with the wire transfers, the SSG Defendants try to argue that wire transfers are insufficient to establish personal jurisdiction by relying on Dollar Savings Bank v. First Security Bank of Utah, N.A, 746 F.2d 208 (3rd Cir. 1984). [Doc. No. 26, Pgs. 12, 16-17]. In Dollar Savings, the court held that, "[w]e conclude that the minimum contacts required for due process have not been established when the non-resident bank does no more than borrow from and repay a loan to the forum bank by wire transfer." Id. at 209.

This case does not involve the repayment of a loan by a non-resident bank to a forum bank by wire transfer. It involves a conspiracy to steal and launder PSI's Bond Funds out of PSI's Pittsburgh PNC bank account to PASL, a sham pass-through entity, and then ultimately to Defendants. As such, the wire transfers serve as a basis to assert personal jurisdiction as a matter of law (and common sense). See Vasquez v. Hong Kong and Shanghai Banking Corp. Ltd., 2019 WL 2327810, Case No. 18 Civ. 1876, *8-13 (S.D. N.Y. May 30, 2019)(finding that wire transfers may give rise to personal jurisdiction under RICO and related state law tort claims); Al Rushaid v. Pictet & Cie., 28 N.Y.3d 316, 326-328 (2016)(finding that wire transfers gave rise to personal jurisdiction in money laundering scheme); 18 U.S.C. §1956(b)(2),(f)(permitting personal jurisdiction over a foreign person regarding a financial transaction that occurs in part in

6

the United States); 42 Pa. C.S.A. § 5322(a)(3)(permitting personal jurisdiction for "[c]ausing harm or tortious injury by an act or omission in this Commonwealth"); 42 Pa. C.S.A. § 5322(a)(4)(permitting personal jurisdiction for "[c]ausing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth"); 42 Pa. C.S.A. § 5303 ("The tribunals of this Commonwealth shall have jurisdiction over chattels situated within this Commonwealth ...").

As set forth in Plaintiffs' RICO Case Statement, the "source" of PSI's Bond Funds ultimately received by the SSG Defendants came from UCO Bank as set forth in transfer (i) in the RICO Case Statement. Mr. Maheshwari and Mr. Goel testified that they were aware that PSI's Bonds Funds were originally held at UCO Bank. **(Exhibit I)**. In furtherance of the conspiracy, on November 4, 2010, Mr. Vuppalapati contacted Mr. Maheshwari and Mr. Goel to let them know that $20,400,000 of PSI's Bond Funds were transferred from PSI's PNC bank account located in Pittsburgh to PASL's Hang Seng bank account. This transfer is listed as (v) in the RICO Case Statement. Realizing that this established a direct connection among the SSG Defendants, PSI's Bond Funds, and Pittsburgh, Mr. Maheshwari and Mr. Goel gave evasive, nonresponsive, and nonsensical responses when examined regarding transfer (v) to try to avoid admitting to personal jurisdiction (and SSG Defendants' counsel lodged protracted objections). (Exhibit I) **(Exhibit J)**.

The SSG Defendants received $4,000,000 of PSI's Bond Funds transferred from PSI's PNC bank account in Pittsburgh to PASL's Hang Seng bank account from transfer (v) discussed above. Mr. Maheshwari testified that SSG Capital Partners received $4,000,000 from PASL as set forth in transfer (vi) in Plaintiffs' RICO Case Statement (but claimed ignorance regarding whether these funds were carved out of the $20,400,000 listed in transfer (v)). **(Exhibit K)**.

7

The SSG Defendants also contacted PSI and PISL in Pittsburgh to obtain $2,500,000 of PSI's Bond Funds. As set forth in transfer (viii) of the RICO Case Statement, on or about May 28, 2011 and June 16, 2011, PSI transferred $2,500,000 from PNC Bank located in Pittsburgh to PASL's Hang Seng bank account (discussed further below). To initiate this transfer, on February 23, 2011 Mr. Maheshwari and Mr. Goel contacted Ms. Vuppalapati and Mr. Vuppalapati and stated: "I again request you to please send us the swift confirmation of the USD $2.5mm transfer **done from Prithvi US to Prithvi Asia, so <u>we</u> can process the same to SSG immediately.**" (emphasis added) **(Exhibit L)**.

Mr. Goel testified that he communicated with Guru Pandyar via email and telephone and that Mr. Goel was aware that Mr. Pandyar was "part of the finance team in PISL's U.S. offices" (Exhibit A). As set forth in Exhibit L, from May 25, 2011 to June 1, 2011, Mr. Goel and Guru Pandyar engaged in a series of email exchanges that discuss how the $2,500,000 of PSI's Bond Funds were to be transferred out of PSI's PNC Bank account located in Pittsburgh.

Mr. Pandyar was formerly PISL's and PSI's Assistant Vice President of Finance and Accounts who has knowledge regarding PSI's Bond Funds and the transfers set forth in Plaintiffs' RICO Case Statement **(Exhibit M)**. Mr. Pandyar states that Mr. Goel requested PSI to wire $2,500,000 from PNC Bank in Pittsburgh to PASL's Hang Seng Bank. On May 25, 2011, Mr. Pandyar provided Mr. Goel with a "Customer Full Detail Wire Activity Report" which states that the wire transfer came from PSI's PNC Bank and was sent to Prithvi Asia's Hang Seng Bank.

Mr. Goel, who was never a Board member or employee of any Prithvi entity, nevertheless had direct access to PASL's Hang Seng Bank account and informed Mr. Pandyar that he did not receive the wire transfer and requested Mr. Pandyar to send him a MT103[10] so that he could trace the Bond Funds.

On May 27, 2011, Mr. Pandyar informed Mr. Goel that the wire transfer did not go through because it was put under investigation by PSI's PNC Bank. However, while the investigation was pending, Mr. Pandyar initiated a $1,000,000 transfer from PSI's PNC Bank to Mr. Goel and, again, provided Mr. Goel with a "Customer Full Detail Wire Activity Report" which states that the wire transfer came from PSI's PNC Bank. On June 9, 2011, Mr. Pandyar initiated a $1,000,000 transfer, and on June 10, 2011, Mr. Pandyar initiated a $500,000 transfer. On June 15, 2011, Mr. Pandyar informed Mr. Goel that these wire transfers were sent. As before, Mr. Pandyar provided Mr. Goel with a "Customer Full Detail Wire Activity Report" for each transaction which states that the wire transfers came from PSI's PNC Bank.

Mr. Pandyar states that he wired a total of $2,500,000 of PSI's Bond Funds from PSI's PNC Bank located in Pittsburgh to Mr. Goel, PASL, and Hang Seng Bank with Mr. Goel's knowledge that the wire transfers came from PSI and PNC Bank located in Pittsburgh. Further, Mr. Pandyar states that the $2,500,000 of Bond Funds that Mr. Goel requested to receive are described as transfer (viii) in Plaintiffs' RICO Case Statement. See Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1225-1226 (3rd Cir. 1992)(distinguishing Dollar Savings and finding personal jurisdiction exists where defendant initiates in-state banking activity).

**VII. The SSG Defendants Reached into Pittsburgh to Obtain a Loan from PSI**

---

[10] A "MT103" is a SWIFT payment message used by banking institutions regarding international wire transfers. The MT103 contains, among other things, the name and location of the sending banking institution and the name and location of the receiving banking institution.

9

In Counts VII - IX of the Complaint (pled in the alternative), PSI asserts breach of contract and quasi-contract claims against Defendants SSG Capital Partners and SSG Capital Management (Hong Kong) Limited ("SSG HK") regarding a loan issued by PSI to SSG Capital Partners and SSG HK in the amount of $4,000,000 which appears on PSI's books and records. A set forth in Mr. Amorose's Affidavit (Exhibit F), PSI did not solicit third-parties to issue loans as part of its business operations and that this loan would have been created by the SSG Defendants contacting PSI in Pittsburgh to negotiate and finalize the loan. See Mellon Bank, 960 F.2d at 1223 (finding personal jurisdiction in Pennsylvania over out-of-state defendants who affirmatively approached bank for a loan in Pennsylvania).

## **CONCLUSION**

For the reasons set forth above, Plaintiffs have established a prima facie case of personal jurisdiction. As such, this case should now proceed to trial on the merits where the jurisdictional evidence can then be reviewed under the preponderance of the evidence standard.[11]

Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757

FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139

(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
jrodkey@fowkesrodkey.com

Jayson M. Macyda
Jayson M. Macyda (admitted *pro hac vice*)

---

[11] See LaRose v. Sponco Mfg. Inc., 712 F.Supp. 455, 458-459 (D. N.J. 1989)("[I]f plaintiff meets the *prima facie* burden, he may proceed to trial, and may only be challenged to establish jurisdiction again at pre-trial hearing where the burden is then raised to a preponderance of the evidence standard, such as on a motion for summary judgment, or at trial where the higher burden also attaches, but no other preliminary motions on the papers can re-visit the jurisdiction issue."

Kyko Global, Inc.
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

# CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served via the Court's CM/ECF Notification System on this 16th day of December, 2019 upon the following:

Michael H. Ginsberg
mhginsberg@jonesday.com
John D. Goetz
jdgoetz@jonesday.com
Douglas Baker
ddbaker@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514

**Counsel for Defendants:**

**SSG Capital Partners I, L.P.
SSG Capital Management (Hong Kong) Limited
Shyam Maheshwari
Ira Syavitri Noor a/k/a Ira Noor Vourloumis
Dinesh Goel
Wong Ching Him a/k/a Edwin Wong
Andreas Vourloumis
Value Team Corporation**

**Counsel for Defendant**

**Anandhan Jayaraman**

Jeffrey T. Morris
Elliott & Davis, PC
6425 Living Place, Suite 200
Pittsburgh PA 15206
morris@elliott-davis.com

The undersigned certifies that a true and correct copy of the foregoing document was served via U.S. Mail for posting on the 16th day of December, 2019 upon the following:

Prithvi Information Solutions, LTD.
Prithvi Asia Solutions Limited
214 S. Craig Street
Suite 5
Pittsburgh, PA 15213

The undersigned certifies that a true and correct copy of the foregoing document was served via Email on the 16th day of December, 2019 upon Madhavi Vuppalapati by sending an email to:

Madhavi@prithvisolutions.com
Vuppalapatim@gmail.com

Satish@prithvisolutions.com
Vuppalapatis@gmail.com
ajayaraman@gmail.com

*/s/ Joseph F. Rodkey, Jr.*