**EXHIBIT I**

Gmail - FW: Inward Remmitance-Regarding  https://mail.google.com/mail/u/0/?ui=2&ik=af486af267&view=pt&q=s...



**Dinesh Goel**

## FW: Inward Remmitance-Regarding

**Satish** <satish@prithvisolutions.com>  Thu, Nov 4, 2010 at 12:44 PM
To: Shyam Maheshwari <████████████████>, Dinesh Goel ████████████████

Fyi..will call her up in the next -10 minutes and follow up

**From:** Satish [mailto:satish@prithvisolutions.com]
**Sent:** Thursday, November 04, 2010 10:13 AM
**To:** 'bibianhui@hangseng.com'; 'bibian.hui@hangseng.com'
**Subject:** Inward Remmitance-Regarding

Dear Ms. Bibian Hui,

As discussed over the phone, we have received 20.4 million US$ into our account from our parent company Prithvi Solutions Inc from our banker (PNC Bank), The money that came is as advance/shareholders loan from the parent company.

Please credit the same immediately to our accounts.

Satish Vuppalapati,
Managing Director,
Prithvi Information Solutions,
Hyderabad, India.
Ph:+91-40-66846019

Mobile: +919550290909

D☐ P☐ Exhibit 38
Deponent Maheshwari
Date 11/21/19  Rptr AT

Case 2:18-cv-01290-AJS   Document 5   Filed 09/27/18   Page 1 of 7

### APPENDIX LCvR 7.1.B

### IN THE UNITED STATES DISTRICT COURT

### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYKO GLOBAL, INC., a Canadian corporation,
KYKO GLOBAL GmbH, a Bahamian corporation,
PRITHVI SOLUTIONS, INC., a Delaware Corporation

        Plaintiffs,
v.

PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation,
VALUE TEAM CORPORATION, a British Virgin Islands corporation,
SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership,
SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company,
MADHAVI VUPPALAPATI, an individual,
ANANDHAN JAYARAMAN, an Individual,
SHYAM MAHESHWARI, an individual,
IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual,
DINESH GOEL, an individual,
WONG CHING HIM, an individual,
ANDREAS VOURLOUMIS, an individual,
PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company

        Defendants.

### RICO CASE STATEMENT

Pursuant to LCvR 7.1.B, any party filing a civil action under 18 U.S.C. §§ 1961-1968 shall set forth those facts upon which such party relied to initiate the RICO claim as a result of the "reasonable inquiry" required by Fed. R. Civ. P. 11. The statement shall be in paragraph form corresponding by number and letter to the paragraphs and subparagraphs appearing below and shall provide in detail and with specificity the information required herein.

1. **State whether the alleged unlawful conduct is in violation of any or all of the provisions of 18 U.S.C. §§ 1962(a), (b), (c) or (d).**

    18 USC § 1962(c) and 18 USC § 1962(d).

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

    During the material times at issue in this case, Prithvi Solutions Inc. ("PSI") was a subsidiary of Prithvi Information Solutions Ltd. ("PISL").

    In February, 2007, PISL issued a bond offering circular regarding $50,000,000 USD Zero Coupon Convertible Bonds due February 2012 which were able to be converted into shares of PISL. The bonds were issued under Indian laws, rules, and regulations. Lehman Brothers invested $50,000,000 USD in the bonds. PISL and PSI entered into an agreement wherein PISL would provide PSI with $50,000,000 USD generated through Lehman Brothers' investment in PISL's bonds to allow PSI to execute business operations in the United States. Pursuant to their agreement, $15,000,000 USD of the $50,000,000 USD was properly allocated to PSI and was used to execute business operations.



In August 2010, Lehman Brothers sold its interest in the Bonds to Defendants SSG Capital Partners I, L.P. ("SSG Capital Partners") and Value Team Corporation ("VTC"). The sale was an arm's-length transaction and did not involve deception or fraud. However, SSG, VTC and each of the other Defendants listed in the caption above thereafter participated in a conspiracy centered in Pittsburgh, PA to convert approximately $35,000,000 USD of the remaining Bonds funds owned by PSI to their personal use and benefit.

Starting in 2010 and concluding in 2014, Defendants effectuated their conspiracy by coordinating efforts regarding, and otherwise executing, a series of monetary transfers to launder the $35,000,000 USD through bank accounts located at UCO Bank in Hong Kong, Key Bank in the State of Washington, PNC Bank in Pittsburgh, PA and Hang Seng Bank in Hong Kong. Through these transfers, approximately $35,000,000 USD was eventually divvied among Defendants.

Defendants hid their conduct by creating sham Memorandums of Understanding between SSG Capital Partners and PISL and VTC and PISL to ostensibly restructure the Bonds upon payment of non-refundable deposits by PISL to SSG Capital Partners and VTC. The requirement to pay a non-refundable deposit is illegal under Indian law, rules and regulations and, nevertheless, Defendants never had any intention to restructure the bonds as evidenced through their laundering of the $35,000,000 USD via the monetary transfers discussed in Section 5(b) below.

Defendants further hid their conduct by creating bogus accounts receivable on PSI's books and records. PSI's books and records show that PSI "loaned" money to Defendants SSG Capital Partners, SSG Capital Partners (Hong Kong) Limited, and VTC. They also hid their conduct by creating Prithvi Asia Solutions Ltd. as a pass-through entity to lauder the Bonds funds.

On or about November 2016, Plaintiffs discovered the nature and extent of Defendants' conduct.

3. **List alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each.**

   None.

4. **List the alleged victims and state how each victim has been allegedly injured.**

   PSI has been injured because it has been denied use of $35,000,000 USD to execute business operations.

5. **Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. The description of the pattern of racketeering shall include the following information:**

   a. **A list of the alleged predicate acts and the specific statutes which were allegedly violated;**

   As set forth above, Defendants participated in a conspiracy centered in Pittsburgh, PA to convert approximately $35,000,000 USD owned by PSI to Defendants' personal use and benefit. Starting in 2010 and concluding in 2014, Defendants effectuated their conspiracy by coordinating efforts regarding, and otherwise executing, a series of monetary transfers to launder the $35,000,000 USD through bank accounts located at UCO Bank in Hong Kong, Key Bank in the State of Washington, PNC Bank in Pittsburgh, PA and Hang Seng Bank in Hong Kong. Through these transfers, approximately $35,000,000 USD was eventually divvied among Defendants to the detriment of PSI.

Defendants' conduct violates the following statutes: 18 USC § 2314, 18 USC § 2315, 18 USC § 1956, 18 USC § 1957, and 18 USC § 1952.

    **b.  The date of each predicate act, the participants in each such predicate act and the relevant facts surrounding each such predicate act;**

On or about September 2010, Defendants PISL, Madhavi Vuppalapati, and Anandhan Jayaraman, while being physically located in Pittsburgh entered into a conspiracy with the other Defendants - who were located outside of Pittsburgh but directed their conduct to Pittsburgh and PISL, Madhavi Vuppalapati, and Anandhan Jayaraman - to convert $35,000,000 USD belonging to PSI to their own personal use and benefit through a series of money transfers.

The Defendants colluded to make the following money transfers: (i) On or about October 29, 2010, Defendants transferred $35,000,000 USD at UCO Bank located in Hong Kong to Key Bank located in the State of Washington. (ii) On or about November 2, 2010, Defendants transferred $35,000,000 located at Key Bank in the State of Washington to PNC Bank located in Pittsburgh. (iii) On or about November 3, 2010, Defendants transferred approximately $8,000,000 USD of the $35,000,000 from PNC Bank located in Pittsburgh to non-party Prithvi Information Solutions LLC located in the state of Washington; (iv) On or about November 3, 2010, Defendants transferred approximately $7,000,000 USD of the $35,000,000 from PNC Bank located in Pittsburgh to PISL; (v) On or about November 3, 2010, Defendants transferred $20,400,000 USD of the $35,000,000 USD from PNC Bank located in Pittsburgh to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong; (vi) On or about November 12, 2010, Prithvi Asia transferred $4,000,000 of the $20,400,000 USD from Hang Seng Bank located in Hong Kong to SSG Capital Partners' bank account located at DBS Bank Ltd. in Hong Kong: (vii) On or about November 12, 2010, and November 23, 2010, Prithvi Asia transferred a combined total of approximately $16,400,000 of the $20,400,000 USD from Hang Seng Bank Limited located in Hong Kong to VTC's bank account located at UBS AG Bank in Singapore. (viii) On or about May 28, 2011 and June 16, 2011, PISL transferred a total of $2,500,000 USD of the $7,000,000 USD it received on November 3, 2010, back to PSI which in turn, at Defendants' behest, was transferred to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong. (ix) On or about January 23, 2013 Prithvi Asia transferred $10,000 USD to VTC's bank account located at UBS AG Bank in Singapore. (x). On or about October 9, 2014, Prithvi Asia withdew $28,000 USD.

    **c.  The time, place and contents of each alleged misrepresentation, the identity of persons by whom and to whom such alleged misrepresentation was made and if the predicate act was an offense of wire fraud, mail fraud or fraud in the sale of securities. The "circumstances constituting fraud or mistake" shall be stated with particularity as provided by Fed. R. Civ. P. 9(b);**

Please see Section 2 and Section 5(a)(b) above.

This case does not involve fraud in connection with the sale of securities and Plaintiffs do not assert independent predicate offenses of wire fraud and mail fraud. As set forth above, the predicate offenses are 18 USC § 2314, 18 USC § 2315, 18 USC § 1956, 18 USC § 1957, and 18 USC § 1952.

    **d.  Whether there has been a criminal conviction for violation of any predicate act and, if so, a description of each such act;**

There have been no criminal convictions.

    e. **Whether civil litigation has resulted in a judgment in regard to any predicate act and, if so, a description of each such act;**

No civil judgments have been entered regarding Defendants' conduct at issue in this case.

    f. **A description of how the predicate acts form a "pattern of racketeering activity."**

Each monetary transfer set forth above constitutes a violation of 18 USC § 2314, 18 USC § 2315, 18 USC § 1956, 18 USC § 1957, and 18 USC § 1952. Because there are more than two monetary transfers under 18 USC § 1961(5), Defendants have engaged in a pattern of racketeering activity.

6. **State whether the alleged predicate acts referred to above relate to each other as part of a common plan, and, if so, describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

    a. **The names of each individual partnership, corporation, association or other legal entity which allegedly constitute the enterprise;**

Each predicate act previously mentioned above was part of a common plan to convert $35,000,000 USD owned by PSI to Defendants' use and benefit. Each named Defendant constitutes the RICO enterprise because they are an association in-fact under 18 USC § 1961(4).

    b. **A description of the structure, purpose, function and course of conduct of the enterprise;**

Madhavi Vuppalapati was the Chairwoman of PISL and Director of PSI at all materials times at issue in this case. She controlled the funds in the possession of PISL and PSI and she was physically located in Pittsburgh. Anandhan Jayaraman is Ms. Vuppalapati's husband, and he was physically located in Pittsburgh. PISL and Ms. Vuppalapati had access to the $35,000,000 USD in Bonds funds that were held in escrow for PSI's benefit. PISL, Ms. Vuppalapati, and Mr. Jayaraman undertook actions in Pittsburgh to direct the transfer of the Bonds funds away from PSI and to Defendants through the monetary transfers set forth above.

The other Defendants – those other than PISL, Ms. Vuppalapati, and Anandhan Jayaraman - were aware of and otherwise participated in these money transfers by coordinating their efforts with PISL, Ms. Vuppalapati, and Mr. Jayaraman so that they could receive a portion of the transferred funds along with PISL through the money transfers set forth above.

Defendants also coordinated their efforts to hide their conduct by creating, or assisting in the creation of, bogus Memorandums of Understanding, bank accounts, and bogus accounts receivable on PSI's books and records.

    c. **Whether each defendant is an employee, officer or director of the alleged enterprise;**

All Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

    d. **Whether each defendant is associated with the alleged enterprise;**

All Defendants are associated with the enterprise.

 e. **Whether it is alleged that each defendant is an individual or entity separate from the alleged enterprise, or that such defendant is the enterprise itself, or a member of the enterprise; and**

All Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

 f. **If any defendant is alleged to be the enterprise itself, or a member of the enterprise, an explanation whether each such defendant is a perpetrator, passive instrument or victim of the alleged racketeering activity.**

None of the Defendants are victims. Based upon documentation reviewed to date, it appears that all Defendants played a role in transferring the Bonds funds away from PSI. Accordingly, all Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

7. **State and describe in detail whether it is alleged that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The pattern of racketeering activity and enterprise are separate. The Defendants constitute an association in-fact enterprise because Defendants operated within a defined structure as set forth in Section 6(b). Defendants' pattern of racketeering activity is set forth in Sections 2, 5, and 6.

8. **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

Defendants created the enterprise as discussed above to engage in the pattern of racketeering activity as set forth above to convert $35,000,000 USD to their personal use and benefit.

9. **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

The enterprise converted $35,000,000 USD to its benefit which was then divvied among Defendants as set forth above.

10. **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

The enterprise diverted PSI's Bonds funds to their personal use by engaging in a series of money transfers that involve bank accounts located in Hong Kong, the State of Washington, Pittsburgh, Pennsylvania, and Singapore.

11. **If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

Not Applicable.

 a. **The recipient of the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and**

 b. **A description of the use or investment of such income**

12. **If the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.**

Not Applicable.

13. **If the complaint alleges a violation of 18 U.S.C. § 1962(c), provide the following information:**

    a. **The identity of each person or entity employed by, or associated with, the enterprise and**

    As set forth above, all Defendants constitute an association in-fact enterprise under 18 USC § 1961(4).

    b. **Whether the same entity is both the liable "person" and the "enterprise" under §1962(c).**

    The corporate Defendant entities associated with the individual Defendants to form an association in-fact enterprise under 18 USC § 1961(4).

14. **If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy**

    As set forth above, Defendants agreed to form, conduct, participate in, and coordinate the activities of a corrupt enterprise to transfer $35,000,000 USD by engaging in, and otherwise assisting each other to execute, a series of monetary transfers and by trying to cover-up their actions by creating bogus Memorandums of Understanding, Prithvi Asia Solutions Ltd. as a pass-through entity, and bogus accounts receivable on PSI's books and records.

15. **Describe the alleged injury to business or property.**

    PSI has been injured because it has been denied use of $35,000,000 USD to execute business operations.

16. **Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.**

    By operating an enterprise and committing the predicate offenses discussed above, Defendants transferred $35,000,000 USD away from PSI by engaging in a series of money transfers and undertaking activities discussed above to cover-up their actions.

17. **List the damages sustained by each plaintiff for which each defendant is allegedly liable.**

    PSI has suffered actual damages in the amount of $35,000,000, trebled in the amount of $105,000,000 plus interest and attorneys' fees. Kyko Global Inc. and Kyko Global GmbH have suffered damages in their capacity as collection agent for PSI.

    Because, without limitation, Defendants conspired to violate RICO and that they otherwise constitute an association in-fact enterprise, all Defendants are jointly and severally liable to Plaintiffs for the damages that they have sustained.

18. **List all other federal causes of action, if any, and provide the relevant statute numbers.**

    None.

19. **List all pendent state claims, if any.**

    Breach of Fiduciary Duty, Aiding and Abetting Breach of Fiduciary Duty, Concert of Action, Conversion, Conspiracy, Breach of Contract, Promissory Estoppel, Unjust Enrichment.

20. **Provide any additional relevant information that would be helpful to the court in processing the RICO claim.**

Kyko Global Inc. and Kyko Global GmbH (collectively "Kyko") sued Ms. Vuppalapati, PISL - and others who are not Defendants in this case - based on a loan factoring receivables fraud, and civil racketeering pertaining thereto, that Ms. Vuppalapati, PISL, and others committed against Kyko. The case was filed in the U.S. District Court for the Western District of Washington, Case No. 2:13-CV-1034 ("Civil Case"). The factoring receivables fraud at issue in the Civil Case is separate from, and otherwise has nothing to do with, Defendants' racketeering activities at issue in this case.

After conducting a bench trial and hearing evidence, Judge Marsha Pechman entered a money judgment against Ms. Vuppalapati and PISL (and others) in the total amount of approximately $133,000,000 in the Civil Case. The U.S. Justice Department subsequently indicted Ms. Vuppalapati based on her conduct at issue in the Civil Proceeding. The criminal proceeding has not been set for trial with respect to Ms. Vuppalapati.

During the course of the Civil Proceeding and Washington state court enforcement proceedings related thereto, Ms. Vuppalapati had a bench warrant issued for her arrest for failing to comply with court orders, and Ms. Vuppalapati and PISL destroyed evidence and fabricated documents to try to hide their conduct. Based on the Civil Proceeding, Kyko suspects that Ms. Vuppalapati and PISL have hidden and otherwise destroyed and fabricated evidence relating to the RICO enterprise and racketeering activities at issue in this proceeding. The allegations in this case are based, in part, on documentation that was formerly in the possession of Ms. Vuppalapati and PISL.

                Respectfully submitted,

                */s/ Joseph F. Rodkey, Jr.*
                Pa. I.D. No. 66757

                FOWKES ♦ RODKEY
                732 Allegheny River Blvd.
                P.O. Box 173
                Oakmont, PA 15139
                (412) 828-2802 (Phone)
                (412) 828-2588 (Fax)
                jrodkey@fowkesrodkey.com

                */s/ Jayson M. Macyda*
                Jayson M. Macyda (*pro hac vice pending*)
                Kyko Global, Inc.
                P.O. Box 87491
                Canton, MI 48187
                (248) 243-6685
                generalcounsel@kykoglobal.com

                *Counsel for Plaintiffs,*
                *Kyko Global, Inc.*
                *Kyko Global GmbH*
                *Prithvi Solutions, Inc.*

Dated: September 26, 2018

# EXHIBIT F

D☐ P☐ Exhibit 44
Deponent Maheshwari
Date 1/21/19  Rptr AJ

**From:** Mathur Narayanan [mailto:mathur.narayanan@prithvisolutions.com]
**Sent:** Monday, January 23, 2012 3:04 AM
**To:** 'Guru Prasad Rao Pandyar'
**Subject:** FW: Urgent information

Guru,

As promised by you, I am expecting this info by Monday your time.

Regards,

MN

Desk: +91 040 44856019 XT:189

**From:** Mathur Narayanan [mailto:mathur.narayanan@prithvisolutions.com]
**Sent:** Tuesday, January 17, 2012 2:15 PM
**To:** 'Guru Pandyar'
**Cc:** 'Satish Vuppalapati'
**Subject:** RE: Urgent information

Dear Guru,

Send me the PSI Bank statement for the period Nov 2010 to Dec 2011 (14 months) i.e. the bank account where the FCCB money was transferred from PISL Key Bank in Nov 2010. Kindly treat this on priority.

Regards,

MN

# EXHIBIT F

Desk: +91 040 44856019 XT:189

**From:** Guru Pandyar [mailto:guru@prithvisolutions.com]
**Sent:** Tuesday, January 17, 2012 11:10 AM
**To:** 'Mathur Narayanan'
**Cc:** 'Satish Vuppalapati'
**Subject:** RE: Urgent information

Mathurji,

Sorry for not responding to your call, I was on another call and I see there was a missed call from an Unknown number (sometimes the number does not show up for international calls). Kindly leave me a voice mail so that I can call back, was not sure who was trying to reach me.

With regards to Probound, it is for FCCB & DLA is for Sojitz.

Yes $ 1.3 min was used for working capital.

Let me know if you have any questions.

Thanks & Regards,

**Guru Pandyar | Prithvi Information Solutions**
**Asst. Vice President - Operations & Accounts**
14711 NE 29th Pl, Ste 110 Bellevue, WA 98007
(: 425.296.5050 7: 425.296.5070 *:guru@prithvisolutions.com

Disclaimer in signature: CONFIDENTIALITY NOTICE: This Electronic Mail (e-mail) contains confidential and privileged information intended only for the use of the individual or entity to which it is sent. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please immediately notify the sender by reply e-mail or telephone.

**EXHIBIT F**

**From:** Mathur Narayanan [mailto:mathur.narayanan@prithvisolutions.com]
**Sent:** Monday, January 16, 2012 9:28 PM
**To:** 'Guru Pandyar'
**Cc:** 'Satish Vuppalapati'
**Subject:** RE: Urgent information

Dear Guru,

I tried calling you this morning but there was no response. Can you also mention the purpose of the payments made to Probound and DLA Escrow? Are you saying that we utilised $ 1.3 mln for business purposes? Kindly clarify urgently.

Regards,

MN

Desk: +91 040 44856019 XT:189

**From:** Guru Pandyar [mailto:guru@prithvisolutions.com]
**Sent:** Tuesday, January 17, 2012 4:40 AM
**To:** 'Mathur Narayanan'
**Cc:** 'Satish Vuppalapati'
**Subject:** RE: Urgent information

Mathurji,

Find below the requested information:

1.  SSG Capital        : $  4,000,000
2.  Value Team         : $ 18,900,000
3.  Probound           : $  3,450,000

**EXHIBIT F**

4.  DLA Escrow A/c      : $ 7,700,000

5.  Working Capital     : $ 1,300,000

**Total**               : $ 35,350,000

Thanks & Regards,

**Guru Pandyar | Prithvi Information Solutions**
**Asst. Vice President - Operations & Accounts**
14711 NE 29th Pl, Ste 110 Bellevue, WA 98007
(: 425.296.5050  7: 425.296.5070  *:guru@prithvisolutions.com

Disclaimer in signature: CONFIDENTIALITY NOTICE: This Electronic Mail (e-mail) contains confidential and privileged information intended only for the use of the individual or entity to which it is sent. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please immediately notify the sender by reply e-mail or telephone.

**From:** Mathur Narayanan [mailto:mathur.narayanan@prithvisolutions.com]
**Sent:** Monday, January 16, 2012 3:17 AM
**To:** 'Guru Prasad Rao Pandyar'
**Cc:** 'Satish Vuppalapati'
**Subject:** Urgent information

Dear Guru,

I need the utilisation statement of the FCCB funds that was transferred to PSI from PISL UCO HK Escrow account. Kindly provide this info urgently. Let me know if you have any query.

Regards,
**Mathur Narayanan**
Vice President

**Prithvi Information Solutions Ltd**
Prithvi House

# EXHIBIT F

H.No: 2-56/2/19
Near Thanda, Khanamet Village

Madhapur
Hyderabad - 500 081

Desk: +91 40 44856019 XT:189

http://www.prithvisolutions.com

# EXHIBIT F

Page 58

1    Shyam Maheshwari
2  referenced in No. 1?
3    A. Sorry, this is No. 1 at the very top of this
4  page?
5    Q. Yes.
6    A. That is a transfer form for transfer of this
7  Hong Kong company incorporated by Zetland to Prithvi.
8    Q. Do you know if that document was attached or
9  produced to plaintiffs as part of this litigation?
10    A. I don't know.
11    MR. MACYDA: Go on the record to make a
12  request to have counsel for the SSG defense produce
13  that document.
14    MR. GINSBERG: Well, just to be clear, it's
15  not an SSG document. We could look to see if we have
16  a copy of it; but he's just testified that these were
17  Prithvi documents and he was just facilitating
18  Zetland's request. But we can look to see if we have
19  it. I think we've done that already, but we can look
20  again.
21    MR. MACYDA: Okay.
22    I'm going to mark as 37, at the top, it's an
23  email from Guru Pandyar dated September 10, 2010, to
24  Pamela Munar.
25    (Exhibit 37 marked for identification)

Page 59

1    Shyam Maheshwari
2    COURT REPORTER: The witness has the
3  exhibit.
4  BY MR. MACYDA:
5    Q. Okay. I'm going to go on Page 1.
6    A. Yes.
7    Q. Pamela Munar is writing to you, Madhavi,
8  Satish, cc'd to Dinesh and Guru, do you see that?
9  She says:
10    "Hi Shyam.
11    Please find attached complete Register of
12  Members for PSI."
13    Do you see that?
14    A. Yes.
15    Q. Okay. Go above that on September 9, 2010,
16  you write back:
17    "Dear all.
18    Package received in HK.
19    Filing with ROC in HK today and with Hang
20  Seng Bank on Monday."
21    Do you see that?
22    A. Yes.
23    Q. What is ROC?
24    A. The Register of Companies.
25    Q. And that's the Hong Kong

Page 60

1    Shyam Maheshwari
2  Register of Companies?
3    A. Yes.
4    Q. And you say "filing." Who's doing the
5  filing?
6    A. Zetland.
7    Q. And how did you know Zetland was going to do
8  that?
9    A. Once the FedEx was received, I passed it on
10  to Zetland and they informed me the timeline of the
11  incorporation and other secretarial process for
12  Prithvi (Hong Kong).
13    Q. Okay. so Zetland informed you that that's
14  what they were going to do as described in your
15  email; is that correct?
16    A. That is correct.
17    Q. And do you know if it was actually done by
18  Zetland?
19    A. I wouldn't know.
20    Q. Do you know if PASL became a registered
21  company in Hong Kong?
22    A. Yes.
23    Q. Do you know if PASL obtained a bank account
24  at Hang Seng bank?
25    A. Yes.

Page 61

1    Shyam Maheshwari
2    Q. And how do you know those two things?
3    A. The MOU signed between Prithvi PASL (Hong
4  Kong) and SSG Capital Partners 1 clearly states that
5  PASL is incorporated in Hong Kong.
6    Q. Okay. So are you aware that PASL also had a
7  bank account at Hang Seng bank?
8    A. Yes.
9    Q. Okay. My question was: How do you know
10  that?
11    A. The payment received under the MOU by
12  SSG Capital Partners 1 LP from Prithvi (Hong Kong)
13  was from Hang Seng bank.
14    MR. MACYDA: I'm going to mark as Exhibit
15  38, it's an SSG production, so if you go in the lower
16  right-hand corner SSG 3.
17    (Exhibit 38 marked for identification)
18    COURT REPORTER: Exhibit marked and handed
19  to the witness.
20  BY MR. MACYDA:
21    Q. Okay, Mr. Maheshwari, do you see the bottom
22  email from Satish November 4, 2010, to a
23  bibianhui@hangseng.com?
24    A. Yes.
25    Q. Okay. It says:

Page 62

1        Shyam Maheshwari
2        "As discussed over the phone, we have
3  received 20.4 million US$ into our account from our
4  parent company Prithvi Solutions Inc. from our banker
5  (PNC Bank)..."
6        And then it goes on.
7        Do you see that?
8     A. Yes.
9     Q. Then at the top Satish forwards that to you
10 and Mr. Goel.
11       Do you see that?
12    A. Yes.
13    Q. Why did he do that?
14       MR. GINSBERG:  Objection, calls for
15 speculation.
16       You can answer.
17    A. I don't know why.
18 BY MR. MACYDA:
19    Q. What was your reaction when you received
20 this forward?
21    A. I can't remember anything in particular.
22    Q. Did you ever ask Satish why he sent that to
23 you?
24    A. No.
25    Q. Did you ever discuss it with Mr. Goel?

Page 63

1        Shyam Maheshwari
2     A. No.
3     Q. Did you discuss it with anybody at SSG?
4     A. I don't recall discussing with anyone in
5  SSG.
6     Q. Do you know if this money transaction
7  described in the email from Satish relates to the
8  bond fund restructuring as previously defined?
9     A. I don't know.
10       MR. MACYDA:  I'm going to mark as
11 Exhibit 39, plaintiff's Rico case statement.
12       (Exhibit 39 marked for identification)
13       COURT REPORTER:  Exhibit marked and handed
14 to the witness.
15 BY MR. MACYDA:
16    Q. Okay.  If you go to Page 3, at the top,
17 you'll see a page is listed, Page 3, Paragraph D.
18       Let me know when you're there.
19    A. Yes.
20    Q. In the middle, you'll see a series of
21 transactions marked by number, roman numeral numbers.
22 Do you see those?
23    A. Yes.
24    Q. Can you go to No. 5 and read it to yourself.
25    A. "On or about," yes.

Page 64

1        Shyam Maheshwari
2     Q. Okay.  Now, previously, you testified that
3  you are familiar that PSAL opened a bank account at
4  Hang Seng, correct?
5     A. Correct.
6     Q. Okay.  Does No. 5 refresh your recollection
7  as to what the financial transaction is as reflected
8  in 38, Exhibit 38?
9        MR. GINSBERG:  Object to the form of the
10 question.  The exhibit contains narrative that is not
11 accurate and it refers to defendants as if all the
12 defendants were involved and this is without any
13 distinction, which makes the question inherently
14 vague.
15 BY MR. MACYDA:
16    Q. You can answer.
17    A. Sorry, what was your question again, please?
18    Q. Sure.  So if you look at Transfer 5 in
19 Exhibit 39, and you've read that, right?
20    A. Yes.
21    Q. Does that refresh your recollection as to
22 what Satish Vuppalapati is referring to in Exhibit
23 38?
24    A. Sorry, can you rephrase your question?
25    Q. Let me try to break it down.

Page 65

1        Shyam Maheshwari
2        So if I heard you right, Exhibit 38, you
3  testified that you don't know what Satish is
4  referencing with respect to the 20.4 million in his
5  email; isn't that correct?
6     A. That is not correct.
7     Q. Okay.  Correct me, please.
8     A. I only said I don't know why he forwarded
9  that email, I don't recollect why he forwarded that
10 email to me.
11    Q. Okay.  Let me ask you a different question
12 then:  Do you know what the 20.4 million referenced
13 in his email what it refers to?
14    A. Could you rephrase it, please, for me?
15 Because I am reading it, but I'm not able to get your
16 question.
17    Q. Sure.  Okay.  Satish writes to Ms. Hui:
18       "As discussed over the phone, we have
19 received the 20.4 million US$ into our account from
20 our parent company Prithvi Solutions Inc. from our
21 banker (PNC Bank)."
22       And I'll stop there.
23       Do you see that?
24    A. Yes.
25    Q. Do you know what he's referring to there?

17 (Pages 62 to 65)

TSG Reporting - Worldwide  877-702-9580

Page 66

1        Shyam Maheshwari
2     A. It's Satish writing to his banker. I
3 wouldn't know the context.
4     Q. Okay. Well -- I'm sorry, is that the end of
5 your answer?
6     A. Yes.
7     Q. Okay. And this is kind of coming full
8 circle, but I think it's important for my next
9 question. Yet Satish forwarded that email to you,
10 correct?
11     A. Correct.
12     Q. So if I'm you understand you right, you have
13 no idea why he's forwarding that to you; is that
14 true?
15     A. That's correct.
16     Q. Okay. So my question is, if we go to
17 Exhibit 39, Page 3, Transfer 5 -- and you've already
18 read it, and you can reread it if you need to -- does
19 No. 5 refresh your recollection as to what could be
20 being referenced or what is referenced, I should say,
21 in Exhibit 38?
22     MR. GINSBERG: Objection, the witness did
23 not testify that he didn't have a recollection, he
24 said he did not know why it was forwarded to him.
25 The question "does it refresh your recollection?" is

Page 67

1        Shyam Maheshwari
2 improper.
3 BY MR. MACYDA:
4     Q. You can answer.
5     A. Could you repeat your question, please, on
6 Exhibit 39?
7     Q. Yes. If you look at Transfer 5 on Page 3.
8     A. Yes.
9     Q. Subject to Mr. Goel's objection, does that
10 transfer refresh your recollection as to what Satish
11 is referring to in Exhibit 38?
12     A. Exhibit 39 is Kyko's statement. Exhibit 38
13 is Satish writing to his banker. How am I supposed
14 to know?
15     Q. Okay. So just so we're clear, you can't
16 answer a question with a question. So I guess what I
17 think your answer is to my question is "no," but only
18 you can state that.
19     So I'll ask it one more time so the record
20 is clear: Does Transfer 5 on Exhibit 39 refresh your
21 recollection as to what is being referenced in
22 Exhibit 38?
23     MR. GINSBERG: Same objection with respect
24 to the exhibit and with respect to the question.
25     A. Are you asking -- sorry, are you asking me

Page 68

1        Shyam Maheshwari
2 to confirm that No. 5 on Page 3 of Exhibit 39 is the
3 same as what is in Exhibit 38?
4 BY MR. MACYDA:
5     Q. Yes, if that will speed it along.
6     A. I don't know.
7     Q. Okay. Regarding Transfer 5 and irrespective
8 of Exhibit 38, are you aware that Transfer 5 as
9 listed in Exhibit 39 occurred?
10     A. I don't know.
11     Q. And I'm just taking your testimony and
12 looking at some exhibits for streamlining. Give me a
13 minute.
14     I'm going to mark as Exhibit 40 an SSG
15 production, 77.
16     MR. GINSBERG: Jayson, can we take five
17 minutes?
18     MR. MACYDA: Sure.
19     MR. GINSBERG: Thank you.
20     (12.37 a.m.)
21         (Break taken.)
22     (12.51 a.m.)
23     MR. MACYDA: So I'm going to mark as
24 Exhibit 40 is SSG production 77.
25     (Exhibit 40 marked for identification)

Page 69

1        Shyam Maheshwari
2     COURT REPORTER: The exhibit is marked and
3 handed to the witness.
4 BY MR. MACYDA:
5     Q. I'm going to go to the bottom,
6 Mr. Maheshwari, to your email to Satish Vuppalapati,
7 Madhavi Vuppalapati, and Dinesh Goel.
8     Do you see that?
9     A. Yes.
10     Q. Okay. You write:
11     "We need to settle the 3 million bond
12 payment."
13     Do you see that?
14     A. Yes.
15     Q. What does that pertain to?
16     A. This pertains to 3 million face value of the
17 bond for which there was an MOU between SSG entity
18 and PASL, and the payment had not been received.
19     Q. So this is the bond restructuring, as we
20 previously defined it; is that correct?
21     A. Yes, that is correct.
22     Q. Going to your Point 1, second paragraph, you
23 reference "other partners."
24     Who are they?
25     MR. GINSBERG: I'm going to object and

Page 86

1             Shyam Maheshwari
2     A. I can't see any other emails with this
3  "categories," so I don't know how this "categories"
4  shows up here. Is it -- yes, I don't know.
5         MR. MACYDA: I'm going to mark Exhibit 44.
6  It's already an existing document in the underlying
7  Pennsylvania litigation. It's document 40-7.
8         (Exhibit 44 marked for identification)
9         COURT REPORTER: Exhibit marked and handed
10 to the witness.
11 BY MR. MACYDA:
12    Q. Do you have that document?
13    A. Yes, I do.
14    Q. Okay. If you flip to the second-to-last
15 page, you'll see an email at the bottom from a
16 Mr. N-A-R-A-Y-A-N-A-N, January 16, 2012, to
17 Guru Pandyar, cc to Satish Vuppalapati.
18        Do you see that?
19    A. Yes.
20    Q. You'll see in the first line of the email it
21 references FCC bond funds being transferred for to
22 PSI from PISL UCO HK escrow account.
23        Do you see that?
24    A. Yes.
25    Q. Do you know what that escrow account is?

Page 87

1             Shyam Maheshwari
2     A. Yes.
3     Q. What is it?
4     A. Under the conditions of PISL bond, there was
5  an escrow account in UCO Bank, Hong Kong.
6     Q. If you go to the third page excluding the
7  title page, it's an email from Guru Pandyar to
8  Mr. N-A-R-A-Y-A-N-A-N, dated January 17, 2012.
9         Let me know when you find that.
10    A. Yes.
11    Q. Okay. Do you see Item 1: SSG Capital?
12    A. Yes.
13    Q. Do you see the 4 million?
14    A. Yes. Yes.
15    Q. Do you know why SSG Capital was paid that
16 4 million?
17        MR. GINSBERG: I'm going to object. This is
18 beyond the scope now of the jurisdictional discovery.
19 I'll let him answer this question. But, again, you
20 need to explain to me how this goes to the
21 jurisdictional discovery the Pennsylvania connection.
22 Unless it goes to merits.
23 BY MR. MACYDA:
24    Q. You can answer, sir.
25        MR. GINSBERG: One question, you can answer.

Page 88

1             Shyam Maheshwari
2  But we're going to go slowly, because, again, I think
3  we're well beyond the scope of the deposition that's
4  allowed by the Court.
5     A. What I know is SSG Capital Partners 1 LP
6  received $4 million under the MOU and -- sorry, with
7  PASL Hong Kong and the money was received from PASL
8  Hong Kong. The exhibit that you are showing me is
9  internal of Prithvi's communication between their
10 people. I don't want to speculate what they mean.
11 BY MR. MACYDA:
12    Q. Can you go back to Exhibit 39?
13    A. Yes.
14    Q. Page 3.
15    A. Yes.
16    Q. Let me know when you're there.
17    A. Yes, I'm there.
18    Q. Okay. Does Transfer 6 describe the
19 transaction that you just discussed with me?
20        MR. GINSBERG: Object to the use of this
21 document once again, because it's your argument
22 document, not a SSG document.
23        You can answer the question if you're able.
24    A. I can confirm SSG Capital Partners 1
25 received $4 million from Prithvi Asia. What I don't

Page 89

1             Shyam Maheshwari
2  know is this clause here, "of 20.4 million," all the
3  way until "Hang Seng Bank."
4         MR. MACYDA: I'm going to mark as Exhibit 45
5  the SSG defendants responses to plaintiffs
6  jurisdictional discovery request.
7         COURT REPORTER: We don't have that document
8  here.
9         MR. GINSBERG: It's not in the materials you
10 sent today.
11        MR. MACYDA: Oh, I don't know how that was
12 omitted.
13        Give me a moment.
14        Amanda, those were marked in the two
15 previous depositions. Do you have a copy with you?
16        (Discussion off the record.)
17        MR. MACYDA: Use Exhibit 8 from
18 Peter Cairns' deposition.
19        (Cairns Exhibit 8 handed to the witness.)
20 BY MR. MACYDA:
21    Q. Mr. Maheshwari, have you ever seen this
22 document before?
23    A. Yes.
24    Q. Were you involved in producing documents
25 relative to the requests in Exhibit 8?