```
 1                IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

       KYKO GLOBAL, Inc., et al
 3               Plaintiffs,
        vs.
 4                                       Civil Action No.  18-1290
       PRITHVI INFORMATION SOLUTIONS,
 5     LTD., et al,

 6     vs.

 7     SSG CAPITAL PARTNERSHIPS I,
       L.P.:
 8               Defendants.
                                    -  -  -
 9

          Transcript of proceedings on Monday, November 4, 2019,
10        United States District Court, Pittsburgh, PA,
          before Judge William S. Stickman, District Judge.
11
    APPEARANCES:
12

       For the Plaintiffs:    KYKO GLOBAL, INC.
13                            Jayson M. Macyda, Esquire
                              P.O. Box 87491
14                            Canton, MI 87491

15                            FOWKES RODKEY
                              Joseph F. Rodkey, Jr., Esquire
16                            732 Allegheny River Boulevard
                              Oakmont, PA 15139
17

18     For the Defendants     JONES DAY
       SSG Capital            Michael H. Ginsberg, Esquire
19     Partnerships I:        Douglas Baker, Esquire
                              John D. Goetz, Esquire
20                            One Mellon Center, Ste 4500
                              Pittsburgh, PA 15219
21

22     Court Reporter:        Sharon Siatkowski, RPR, CRR, CBC, CRI
                              700 Grant Street
23                            Suite 5300
                              Pittsburgh, Pennsylvania 15219
24

25  Proceedings recorded by mechanical stenography;
    transcript produced by computer-aided transcription.
```

```
 1                    P R O C E E D I N G S

 2                           -  -  -

 3                        [9:22 a.m.]

 4           THE COURT:  Is everybody on the line?

 5           MR. MACYDA:  Yes, Your Honor.

 6           MR. GINSBERG:  Yes, Your Honor.

 7           THE COURT:  We are here today on several outstanding

 8    motions in the matter of Kyko vs. Prithvi, P-r-i-t-h-v-i,

 9    et al., 18-cv-1290.

10           Will all the counsel introduce themselves so the court

11    reporter can put you on the record, beginning with the

12    Plaintiffs?

13           MR. MACYDA:  Sure.  This is Jayson Macyda on behalf of

14    the Plaintiffs.

15           MR. RODKEY:  Joseph Rodkey on behalf of the

16    Plaintiffs.

17           MR. GINSBERG:  Michael Ginsberg on behalf of the

18    Defendants, SSG Defendants.

19           MR. GOETZ:  John Goetz on behalf of the SSG

20    Defendants.  Good morning.

21           THE COURT:  Good morning.

22           MR. BAKER:  Douglas Baker on behalf of the SSG

23    Defendants.

24           THE COURT:  Well, the reason that -- the Court has

25    read and carefully reviewed all of the outstanding motions and
```

1    specifically had some questions that I believe needed to be

2    discussed with counsel for both sides on the issue that we have

3    with VTC, VTC's participation in this case, and VTC's

4    obligations in the discovery and a going forward basis.

5           I wanted to hear from the Jones Day firm about VTC.

6    VTC's role looms large in several of the motions that we have

7    outstanding.  Specifically, the Court's question is that I have

8    the Notice of Appearance that was filed in September,

9    September 18th, in this case wherein Jones Day entered its

10   appearance on behalf of VTC, but at the same time, it looks as

11   though in some of the responses in discovery, specifically to

12   the Plaintiffs' requests for admission and in some prior filings

13   with this Court, VTC, or SSG on behalf of VTC, has taken the

14   position that VTC no longer exists.  What the Court would like

15   to hear argument on today is, is VTC -- how VTC can both be a

16   dissolved Virgin Islands corporation, yet at the same time have

17   an appearance entered before the Court, and what obligations, if

18   any, it should have in responding to the outstanding discovery

19   and on a moving forward basis in this litigation.

20          To that end, I think it would make the most sense if

21   Jones Day, who's entered its appearance on behalf of VTC, would

22   go first, and then I will give the Plaintiffs an opportunity to

23   respond.

24          MR. GINSBERG:  Thank you, Your Honor.  This is Mike

25   Ginsberg on behalf of the SSG Defendants known as VTC.

1          We are doing everything we can to be transparent about

2     what is an unusual situation.  VTC itself is a defunct

3     corporation.  It does not operate, it has not operated for a

4     number of years.  It has been stricken from the roles of the

5     British Virgin -- the corporate roles of the British Virgin

6     Islands.  Under the BVI Business Companies Act, a company that's

7     been struck off as VTC has, cannot commence legal proceedings,

8     defend any legal proceeding, act in any way with respect to the

9     carriage of the company.  That's the British Virgin Island

10    corporate law.

11         However -- and again, we think we've been perfectly

12    transparent about this -- it's apparent to us that Kyko's plan

13    is to try to get a default judgment against VTC and then pursue

14    a remedy or any judgment that it receives against VTC, against

15    its former officers and directors, shareholders, whomever, and

16    there is substantial -- a complete overlap between those people

17    and the SSG Defendants.  And so in order to protect the rights

18    of the SSG Defendants from what we believe is the scheme that

19    Kyko has cooked up against the defunct company, we've entered an

20    appearance in order to, number one, protect the interests of

21    those SSG Defendants vis-à-vis the VTC matters and, two, to be

22    as responsive as we can possibly be with respect to discovery.

23         VTC is in exactly the same position as the SSG

24    Defendants regarding the personal jurisdiction issues, regarding

25    the efficacy of Plaintiffs' complaints and the basis for any

1    claims against VTC and the SSG Defendant.  So we're completely

2    in line -- VTC is completely in line with the SSG Defendants.

3    But in order to protect the SSG Defendants, who concluded it was

4    best to enter an appearance on behalf of VTC and then to respond

5    to discovery on behalf of VTC, we would -- which could have been

6    done through the same people because the SSG Defendants, some of

7    them, were directors of VTC and have knowledge -- that the only

8    corporate knowledge that exists is the knowledge that these

9    former directors have.  So that's what we've done.

10           We've been clear and transparent about that from the

11   beginning.  From the very beginning we've said VTC does not

12   exist.  It has not been served.  It cannot be served.  Kyko has

13   taken the position that it has served VTC.  And then really, out

14   of an abundance of caution, in order to protect the rights of

15   the -- I mean, it's moved for default judgment against VTC

16   twice, both times denied by the Court.  But our concern is that

17   if there's a default judgment or any judgement against VTC, that

18   our clients, the SSG Defendants, or some of them, will be at

19   risk --

20           THE COURT:  I think --

21           MR. GINSBERG:  -- in future legal proceedings.  That's

22   why we behaved the way we have.  That's why we've taken the

23   action we've taken.  And again, I think we've been completely

24   transparent about the reasons for that.

25           THE COURT:  Well, I understand.  But I guess the

1  question that the Court has is, as you've said, if VTC has been

2  stricken from the roles of entities entitled to do business

3  under Virgin Islands' law, can it as a matter of law represent

4  itself in this matter, even in the limited manner in which your

5  Notice of Appearance purports to do so?

6         I mean, you did file the motion to join.  It has

7  submitted a legal filing in this Court.  Essentially, I guess,

8  can a ghost defend itself, a ghost of a former corporation?  In

9  other words, looking at this, is this all legal fiction?  And

10 can a Court engage in a legal fiction on behalf of a -- I mean,

11 can the Court allow a no-longer existing entity which doesn't

12 have legal personage to come to Court and purport to put up a

13 defense to itself in order to protect another entity which is a

14 real entity because -- in a going forward proceeding?  I mean, I

15 just don't know procedurally how this can be done.

16         MR. GINSBERG:  It's certainly an unusual situation,

17 Your Honor.  The Federal Rules of Civil Procedure 17(b)(2) tells

18 us that the capacity to be sued or -- to sue or be sued is

19 determined for a corporation by the law under which it was

20 organized.  And there's no question under the BVI Business

21 Companies Act that Value Team, VTC, cannot commence legal

22 proceedings or defend any legal proceedings.  So you're

23 absolutely right.  But, at the same point, default judgment

24 can't be entered against them because they can't defend

25 themselves in the litigation.  But --

```
 1           THE COURT:  Isn't this a case if default judgment
 2   could be entered, but when it comes to collecting on that
 3   default judgment, that's where the issue would be about
 4   execution, not so much entering the judgment?  Default judgment,
 5   I think, is a ministerial act.  The question is then when you
 6   try to monetize that judgment, you go with the judgment to the
 7   Virgin Islands in order to monetize it and then discover it's a
 8   nonentity; you have a judgment against a nobody.
 9           MR. GINSBERG:  Well, Your Honor, I hear you on the
10   ministerial act of that, but the Court has to have jurisdiction
11   over a party before it can enter a judgment against that party,
12   and that's the challenge we have here, is that there's no
13   evidence that the Court has jurisdiction over VTC.
14           So, I was thinking about exactly the issue you raised.
15   You know, if someone sued my dog and say I'm going to enter a
16   default judgment when the dog doesn't enter an appearance and
17   then I'm going to collect against the owner of the dog, well,
18   the Court has no jurisdiction over the dog because it's not a
19   person, and that's really the situation we have here.  The Court
20   has no jurisdiction over VTC, so it shouldn't be taking any
21   action until the Plaintiff can demonstrate that the Court does
22   have jurisdiction over the entity.
23           And so the argument that we've put forward is:  The
24   issues of jurisdiction for VTC are the same as the issues of
25   jurisdiction for SSG, and so no default should be entered
```

1    against VTC, whether ministerial or otherwise, until there's

2    been a determination that the Court has jurisdiction.

3            There's a case, Your Honor, Sinochen International,

4    S-i-n-o-c-h-e-n, International --

5            THE COURT:  What's the citation?

6            MR. GINSBERG:  The citation is 549 U.S. 422 at 431.

7    The Supreme Court said the Federal Court has leeway to choose

8    among threshold grounds for denying audience to a case on the

9    merit.  So the point being, Your Honor, that you have leeway to

10   determine on what basis you're going to deny Kyko their

11   opportunity to make a claim or to seek a judgment against VTC.

12   One of them could be the fact that VTC no longer exists and has

13   been stricken off from the corporate roles, and we've given you

14   the evidence of that; the other could be that you don't have

15   personal jurisdiction.  So what Kyko wants just for you to do is

16   enter a judgment, a default against VTC without any resolution

17   of those issues --

18           THE COURT:  Okay.

19           MR. GINSBERG:  -- because VTC hasn't appeared.  That's

20   what Judge Stickman, before Your Honor -- I'm sorry, Judge

21   Phipps said we're not going to do in this case.  And, Your

22   Honor, you said the same thing:  We're not going to enter a

23   default judgment until there's at least a thorough discovery and

24   understanding of the status of the parties.

25           THE COURT:  And that was my September 5th order and I

1    did say that.

2          Let me ask Kyko -- we've heard a couple of times from

3    Kyko about what Kyko may or intends on doing.  Mr. Macyda or

4    Mr. Rodkey, please give us your position on this issue.

5          MR. MACYDA:  This is Jayson Macyda, Your Honor.  I

6    think we need to back up here a little bit, at least from our

7    perspective.

8          Number one, it's standard Hornbook law that a

9    corporate -- a corporation and its members and directors are

10   distinct legal entities.  Number two, there are absolutely no

11   pierce the corporate veil claims asserted in this case.  And

12   three, we've been hearing a lot, for the first time on the phone

13   today, from Mr. Ginsberg about what VTC law allegedly is.  I

14   mean, they attempted to try to do this through Mr. Cairns, who

15   is not a lawyer at all, in one of their responsive filings.

16         But, as we cited in Doc No. 90-4 is that the struck-

17   off entity in BVI is capable of being sued for a period of up to

18   seven years after it's stricken off.  So, according to the SSG

19   Defendants, VTC doesn't even appear to contest whether or not it

20   was actually served, that that was done around about end of, I

21   believe, November 2016.  So this is an entity that is capable of

22   being sued pursuant to BVI law.

23         And so, your know, what the SSG Defendants have been

24   doing, what we heard here a minute ago, is they want to come to

25   the Court and state, hey, when it comes to seeking affirmative

1   relief, we can do that.  We want to come eight months after

2   Judge Phipps' briefing schedule is concluded, even though we

3   were of aware of this case since the outset, even though we were

4   served in January of 2019, and say, hey, we want out; we can

5   join; we have knowledge of this case; we're like them, we're

6   like the SSG Defendants.  But when it comes to participation in

7   discovery, no, no, no, no, we're dead; we lack knowledge; we're

8   unable to do that.

9           So it's really, what they're trying to set it up,

10  Your Honor, it's the best of the both worlds for them.  They can

11  appear trying to seek affirmative relief, but then when we want

12  to have -- and Mr. Ginsberg talked a little bit here about

13  jurisdiction -- when we want to explore those issues, no, no,

14  no, we don't have to do that because we're dead.  And that's

15  what's been going on, Your Honor, since the outset of this case.

16          I mean, the SSG Defendants have informed this Court,

17  as of November 27, 2018, that VTC allegedly was a defunct

18  entity.  And then in January of this year they were served, via

19  under The Hague, we have an attestation of service by the BVI

20  Supreme Court, they make a conscious decision not to appear, VTC

21  does, at the February 5th status conference wherein, among other

22  things, Judge Phipps set a briefing schedule for the motion to

23  dismiss.  What their hope was, is that Judge Phipps was going to

24  rule on that fairly quickly, which Judge Phipps obviously didn't

25  do, and that, by their own admissions, that takes care of the

```
1    case for everybody.  So the strategic decision by VTC was made
2    up front not to appear.  It was only after we got proof of
3    service by the BVI Supreme Court when we started filing motions
4    to -- for default and default judgment.
5           By the way, Your Honor, before we did that, we gave
6    a warning letter to the Jones Day law firm, to VTC, hey, we're
7    going to do this, and nobody appears to show up, nobody
8    responds to the letter.  It's only after we file those motions
9    that the SSG Defendants filed documents, I think they called
10   them notices of intent to oppose entry of default and default
11   judgment.  But then when Your Honor took over the case and
12   granted jurisdictional discovery, VTC found itself in a bind.
13   It realized that the strategy that they originally wanted to go
14   forward with wasn't going to work, and in particular, they
15   realized that the requests for admissions have legal effect.
16          So after taking the position, really since the outset
17   of the case up until, I believe, September of this year, when
18   the Notice of Appearance was filed that they were dead, it was
19   one of those uh-oh moments:  Well, now we have to be sort of
20   dead, but now we have to be alive as well, which is one of Your
21   Honor's questions to Mr. Ginsberg.
22          And so when we -- when you look at kind of pulling
23   this into the two motions in front of the Court, the request for
24   admissions motion, Rule 36 is unequivocally clear.  It's the
25   party to whom the request for admissions is directed must give a
```

1    response.  It's clear in the rule; it's clear in the case law.

2    The Jones Day law firm cited no cases in opposition to that.

3    And if you couple that with this Court's order, which was

4    entered prior to Jones Day -- excuse me, SSG Defendants, and VTC

5    tried to avoid the request for admissions, Your Honor entered an

6    order, a discovery order, that unequivocally states you are to

7    answer these completely; you are to answer these as propounded.

8    They chose not to, and so there's a legal consequence for that.

9         Now, we look at service, as we indicated, and I know

10   your Court -- Your Honor has read, you know, we have the

11   attestation of service in January of 2019.  As I told you, on

12   February 8th, of 2019, pursuant to the Jones Day law firm's

13   request discussed with Judge Phipps at the status conference, we

14   emailed them a copy of the complaint, even though they had it

15   well in advance of that because they filed their motion to

16   dismiss three weeks before the status conference.  And so when

17   it comes to service they, for the first time -- originally we

18   got attorney argument regarding service and whatnot -- they give

19   the declaration of Peter Cairns.  Well, as Your Honor's read,

20   Mr. Cairns is not a lawyer, let alone a BVI lawyer, but then he

21   purports to give an opinion on BVI law saying the registered

22   agent wasn't capable of accepting service.  I think he writes --

23   I'm kind of reading here -- that they were dissolved on

24   November 1, 2016.  But as we indicated before, and as we already

25   submitted into this record, that the law's clearly contrary to

1    that.

2            But more importantly, Your Honor, I think what really

3    shines through is what Mr. Cairns does not refute:

4            Number one, that VTC has been aware of this case since

5    the outset;

6            Number two, that VTC's resident registered agent

7    accepted service of the summons and complaint January 14, 2019;

8            Number three, that VTC actually served -- actually

9    received a copy of the summons and complaint;

10           Number four, that VTC called off the registered agent

11   in July 2019 to stop accepting Plaintiffs' documents;

12           So what we're talking a lot about, you know, default

13   and default judgment here, Your Honor, seems to be a lot of what

14   we're talking earlier about, saying for the purposes of the two

15   motions that the Court wanted, you know, argument on here today,

16   I mean, that's sort of our view of this.  I mean, they were

17   served.  They're aware of this case.  They made conscious

18   decisions not to appear and the like.  And there's simply legal

19   consequences for doing that.

20           But when it comes to the -- I believe Your Honor asked

21   a question, a motion for default and default judgment, we intend

22   to renew that at -- you know, by way of a separate motion to set

23   forth all of our legal arguments for that.  You know, if the

24   Jones Day law firm wants to continue with the argument that

25   there's no personal jurisdiction and all of that, that's fine.

1    I mean, that's their right under, you know -- in response to our

2    motion for default and default judgment again.  But I think when

3    it comes to the two motions before the Court here today, I just

4    don't think it's relevant.

5         THE COURT:  Thank you.  Mr. Ginsberg, I do want to

6    focus in on the question of VTC's participation in this case.

7    So, I think that what the Court is concerned about is something

8    that Mr. Macyda raised, is that understanding whatever your

9    strategic basis is for VTC entering an appearance through your

10   firm to defend itself, entering a joinder, a motion to join the

11   SSG motion to dismiss, it has placed itself, at least in some

12   capacity, ostensibly as a party with the capacity to defend in

13   Court itself against the Plaintiffs' claims, but at the same

14   time has -- when given requests for admission steadfastly

15   refused to participate individually.

16        I see that SSG has made some representations on behalf

17   of VTC, but can you have it both ways?  Can VTC say that while

18   VTC is a dissolved entity, Jones Day can represent it in certain

19   facets of the litigation in order to protect and defend other

20   Defendants in this case but not in every facet of the litigation

21   so that it -- while VTC can come before this Court, ask to join

22   SSG's motion to dismiss, it can also represent to this Court

23   that it doesn't have an obligation to respond to discovery?

24        MR. GINSBERG:  Well, Your Honor -- this is Mike

25   Ginsberg -- to be fair, VTC did participate in discovery.  VTC

1  can only participate, and any corporation, through its officers

2  and directors or its former officers and directors.  What was

3  directed to VTC were requests for admission.

4        THE COURT:  Correct.

5        MR. GINSBERG:  Although we stated that VTC was a

6  defunct entity and did not have the capacity to respond, it did

7  respond through its officers and directors to the requests for

8  admissions.  So to say that we haven't participated in

9  discovery, as Mr. Macyda is suggesting, is incorrect.  We have,

10  in fact, and the three individuals Mr. Macyda has told us he

11  wants to depose were, in fact, the officers and directors of

12  VTC.  So he's going to have discovery of the people who

13  controlled VTC at the time it was an entity.

14        THE COURT:  But I -- here's the issue, though:

15  There's an interesting almost tap dance through the way these

16  questions are asked.  So I'm looking at the request for

17  admission and it says all requests for admission were directed

18  to VTC only.  This is your overall response:  VTC is a defunct

19  entity and is therefore unable to admit or deny the requests.

20  However, the relevant SSG Defendants' answer, to the best of

21  their knowledge, as follows, and I reviewed the responses.  So

22  it's not really VTC that's responding to any of these; it's SSG

23  as to its knowledge of VTC.  These are indirect discourse, so to

24  speak, as opposed to VTC's direct response.  How can it be the

25  case that VTC can say that it doesn't have any responsibility to

1  respond while it has put itself before this Court, via your

2  firm, via a motion to join the motion to dismiss, and then when

3  asked direct questions in discovery, apparently speaks through

4  the voice of SSG, a different entity, a different Defendant?

5        MR. BAKER:  Your Honor, this is Doug Baker from Jones

6  Day.  With respect to the discovery responses -- well, first

7  of all, Plaintiffs have not really identified what information

8  that they hadn't received in response.  In terms of what

9  jurisdictional discovery is intended to do is design and,

10 according to this Court's order, it's supposed to suss out

11 whether any of the SSG Defendants or VTC have contacts with the

12 forum.  So, Plaintiffs' requests were designed to determine

13 whether jurisdictional contacts were there.  And to that extent,

14 they received the information from the former principals of VTC

15 regarding VTC's contacts with the forum and with the United

16 States generally.  So, in a way, like you mentioned earlier, I

17 mean, this is sort of a weird, fictitious legal issue that we're

18 dealing with because, in a way -- in a way, what is VTC supposed

19 to do in this circumstance other than answer to the best of

20 their ability?

21       I mean, I suppose that the correct approach might be,

22 under Rule 17(b)(2), to determine that VTC simply can't -- isn't

23 capable of being sued.  Well, even a situation where that

24 applies, VTC still needs to appear before the Court and make the

25 argument that it can't be sued under Rule 17(b)(2).

1          So in terms of the jurisdictional issue, if the Court

2    determines that there is no jurisdiction, well, VTC still has to

3    appear and make the argument that there's no jurisdiction, if

4    that makes sense.

5          THE COURT:  It's -- it makes -- your response makes

6    sense, but I'm not quite sure it answers my question because I

7    do understand that VTC has come, and by moving to join SSG's

8    motion to dismiss has raised the arguments set forth in SSG's

9    motion to dismiss, which include personal jurisdictional

10   arguments.  This Court granted jurisdictional discovery

11   specifically geared toward determining the relevant --

12   Defendants' relevant contacts with this forum.

13         VTC, after that motion for jurisdictional discovery

14   had been granted in September, through counsel, made an

15   appearance in this Court, joined into the motion to dismiss

16   raising jurisdictional issues.  Yet, when asked specific

17   questions about contacts with this forum and requests for

18   admission has, again, raised the issue of its nonexistence, its

19   incapacity to answer, having come before the Court already and

20   purports, at least from the Court's reading, to answer through

21   the mouths of another entity.  And, frankly, the Court doesn't

22   know what to do with this issue.  This is something that the

23   Court would like to look more deeply and probingly at.

24         This isn't merits discovery.  This is jurisdictional

25   discovery that's been given by a motion.  And VTC was silent up

1   until it entered its appearance.  The parties' understanding, I

2   think, because of representations made, leading up to and before

3   the September entry of appearance by VTC, was that VTC can't

4   defend itself because it doesn't exist.  And now we see VTC come

5   in and claim existence for the purpose of defending itself, but

6   not for the purpose of responding in its own voice to discovery.

7           MR. GINSBERG:  Your Honor, it's Mike Ginsberg again.

8   Let me just -- VTC is between the literal rock and a hard place

9   here.  VTC has been defunct and has been stricken off which

10  is -- BVI's Companies Act says that a company that has been

11  stricken off cannot defend itself in any legal proceedings.  And

12  just to correct what Mr. Macyda said, the exception he's

13  referring to is for a company that has been struck off may

14  continue to defend or carry on legal proceedings that were

15  instituted prior to the date of striking off, which this was

16  not.

17          THE COURT:  Do you have a citation for that exception?

18  I know it's in the filings somewhere, but just for the Court's

19  convenience and for the record here, do you have a citation?

20          MR. GINSBERG:  Let me give you the citation of the

21  bankruptcy case from the Southern District of Mississippi that

22  quotes this langue.  It's In Re: Community Home Financial

23  Services, Inc., 583 B.R.1, 73-74,(Bankr. S.D. Miss. 2018).

24          THE COURT:  Thank you.

25          MR. GINSBERG:  The reason that we're --

1        MR. MACYDA:  Just for the record, Your Honor, we're

2    going to object to the entry of that case.  I mean, that wasn't

3    part of the legal briefing, nor was any discussion prior to this

4    morning given on BVI law by the Jones Day law firm.

5        THE COURT:  Mr. Macyda, you raised the issue of BVI

6    law permitting a Court to be sued -- permitting a dissolved

7    entity to be sued up to seven years.  I think it's only fair for

8    the Court to be given -- I mean, I'm the one that asked for the

9    citation.  Objection denied.

10        MR. MACYDA:  No, no, no, I understand it, Judge.  I'm

11    just saying we're now getting a bankruptcy recorder decision

12    that wasn't included in the briefing, number one.  Number two,

13    Your Honor, actually, they were the ones who originally raised

14    it in their filing in response to our motion to have the request

15    for admissions deemed admitted.  And I believe in a footnote

16    they indicate both that -- two issues:  One is this BVI law

17    issue, and two, they raise the service issue as well.

18        THE COURT:  Okay.

19        MR. MACYDA:  I just wanted to make sure the record's

20    clear.  But I understand, Judge.

21        THE COURT:  Mr. Ginsberg?

22        MR. GINSBERG:  Your Honor, it's Mike Ginsberg again.

23    Just to finish what I was getting at which is, we don't know --

24    we're not BVI corporate lawyers -- we don't know what impact

25    Value Team Corporation, acting as if it still has existence,

 1   could have on its obligations under BVI law.  Does it now have

 2   to pay taxes under these guidelines?  Does it have to do some

 3   other registration?

 4           So what we've done is, yes, as you said, we're tap

 5   dancing, we're trying to protect, as we said, transparently the

 6   interest of the former directors against whom Mr. Macyda has

 7   made it perfectly clear he will make an effort to enforce any

 8   default judgment against VTC.  So we are here representing the

 9   interest of the ex-directors of VTC -- the former directors of

10   VTC, who are the same Defendants that Mr. Macyda has already

11   named.

12           THE COURT:  Okay.

13           MR. GINSBERG:  And so, yeah, it is a complicated issue

14   and it's not at all clear that it's appropriate for VTC to be

15   doing anything in this case.  But Mr. Macyda has twice, and now

16   he told us he will thrice, seek a default judgment against VTC.

17   So what we've done, Your Honor, is try to put before the Court

18   what the issue is.  We've tried to be responsive.  Yes, we

19   answered through the SSG Defendants because VTC is defunct, but

20   the answers would have to be the same because VTC can only speak

21   through its directors.  And what we've said is, in the responses

22   for request for admission in an attempt to be absolutely direct

23   and responsive, is to say:  Here's what we know, here's what the

24   SSG Defendants know about VTC's operations, and they're the

25   people who would have that knowledge.

```
1              THE COURT:  Okay.  Okay.

2              MR. GINSBERG:  Mr. Macyda has gotten all of the

3    information he needs to have to respond and to take his

4    depositions at some point and get this case resolved.

5              THE COURT:  So, the Court is satisfied with the

6    argument on the questions that I -- on the motions that I

7    identified in my order scheduling today's argument.

8              I have two other questions I would like to raise.  The

9    first is on October 30th, there was a motion for default

10   judgment against PISL and the two individual Defendants.  I

11   haven't seen an opposition to that.  I don't know what grounds

12   or what standing your client, Mr. Ginsberg, would have to that

13   motion for default judgment.  But we'll give you an opportunity,

14   first of all, to say today if you have no objection, just let me

15   know; and if you do have an objection, to the extent you can

16   have an objection, I would direct any response to the

17   October 30th motion to be filed by Wednesday of this week.

18             MR. GINSBERG:  Yes, Your Honor.  We don't intend to

19   object to that, although we remain concerned that, as Judge

20   Phipps said back in February, I believe, that how does he enter

21   default judgment against a party for whom he has no

22   jurisdiction?  They haven't appeared, but that's not our issue

23   for these folks.

24             THE COURT:  Right.  Right.

25             MR. MACYDA:  Your Honor -- go ahead.  I don't want to
```

1   cut you off, Judge.

2           THE COURT:  That's fine.  I think that we have the

3   answer on that one.  There's no objection from counsel for the

4   defendants who have appeared in the case to those motions.  And

5   the Court will review the issue of the default in light of the

6   jurisdictional issue and we'll decide that motion.

7           The other question that I had for the parties is just

8   what the status is of the jurisdictional depositions.  The Court

9   views these issues here, although I do plan on having an order

10  disposing of all the motions before me in short order as being

11  independent of the question of the depositions, which the Court

12  strongly urges the parties to make arrangements to have those

13  depositions taken.  I just wonder what the status of that was.

14          MR. MACYDA:  Your Honor, this is Jayson Macyda.  What

15  we intend to do because, as we indicated before, that to try to

16  get over to Hong Kong we would need a visa.  We understand that

17  the Court moved, and we appreciate it, the jurisdictional

18  discovery cut-off date, I believe, to December 2nd.  I'm doing

19  that off the top of my head.

20          THE COURT:  That's correct.

21          MR. MACYDA:  So that being the case, we're going to

22  have to do those remotely --

23          THE COURT:  That's fine.

24          MR. MACYDA:  -- by video conferencing.

25          THE COURT:  That works.  And have the parties agreed

1  on dates?

2       MR. GINSBERG:  Your Honor, Mike Ginsberg.  We offered

3  dates, three consecutive dates, for the depositions and

4  Mr. Macyda still has yet to issue any notices of deposition.  So

5  we're still waiting to hear.

6       MR. MACYDA:  Right.  Judge, the reason I haven't is, I

7  didn't get proper discovery responses, right?  So, you know, and

8  I understand the Court just indicated that you're going to make

9  some rulings here in short order and so we look forward to

10  those.

11       But when it comes to scheduling, I mean, one of the

12  people, Judge -- I mean, we were allotted three -- could be

13  Peter Cairns.  I mean, he's the one who, although we think his

14  certification is completely improper, but he's the one who seems

15  to be speaking on behalf of the SSG Defendants and the like.

16  So, you know, what we -- you know, what we need to do is kind of

17  figure out what -- from our perspective, Judge, we need to

18  figure out, you know, after you enter your order, sort of what

19  we have, and then from there we'll be able to push, you know,

20  for the jurisdictional discovery at that point.

21       THE COURT:  Well, as to SSG, the Court has looked

22  carefully at the discovery that was provided, as well as your

23  motion for sanctions, Jones Day' response thereto, the discovery

24  that was attached as exhibits and, I mean, it's the Court's view

25  that you have enough -- and I will address each of the

 1  outstanding motions -- but the Court's view is you have enough
 2  to schedule these depositions.
 3          And the Court, because of this flurry of motions on
 4  the eve of the deadline of November 1st that had previously been
 5  set, did grant an extension, reluctantly, for jurisdictional
 6  discovery because this is jurisdictional discovery.  But that
 7  being said, the Court is not inclined to do so again.
 8          So, it's my strong recommendation that arrangements be
 9  made and put in place for everything that needs to be done to
10  get the witnesses scheduled, to get the video feed set up, to
11  get court reporters, and everything like that that needs to be
12  done to get these depositions because the Court is not inclined
13  to extend the jurisdictional discovery cut-off again.
14          Okay.  And just -- the reason I raise that again is
15  that I would hope that both sides can cooperate in the course of
16  those depositions.  But I will have my court phone, so once the
17  deposition deadlines are established, please let my courtroom
18  deputy, Ms. Abbott, know so that any issues that arise in the
19  course of those depositions the Court can give prompt
20  disposition to, if necessary.  Hopefully it won't be necessary,
21  but if so, I will be a resource to both of you.
22          With that said, I will have orders on these issues in
23  short order.  I may address them separately, so you might not
24  get one blanket order covering all of them.  I might take care
25  of the easy ones first and then proceed on some of the more

1   thorny issues.  But I would strongly urge you to make your

2   deposition arrangements and get moving on the jurisdictional

3   discovery.

4            Have a good day, guys.

5            MR. GINSBERG:  Thank you, Your Honor.

6            MR. MACYDA:  Thank you.

7            (At 10:12 a.m., the proceedings were adjourned.)

8

9                C E R T I F I C A T E

10           I, Sharon Siatkowski, certify that the
     foregoing is a correct transcript from the record of proceedings
11   in the above-entitled matter.

12   S/Sharon Siatkowski_____
     Certified Realtime Reporter
13

14

15

16

17

18

19

20

21

22

23

24

25