# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation<br><br>    Plaintiffs,<br><br>v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation,  SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company<br><br>    Defendants. | Case No. 2:18-cv-1290-WSS<br>**[Oral Argument Requested]** |

## PLAINTIFFS' RESPONSE TO SSG DEFENDANTS' MOTION TO STRIKE AFFIDAVITS

NOW COME Plaintiffs Kyko Global Inc., Kyko Global GmbH, and Prithvi Solutions Inc. ("Plaintiffs") and state the following as their Response to the SSG Defendants' Motion to Strike Affidavits:

## **BACKGROUND**

On January 28, 2019, the SSG Defendants informed Judge Phipps that they did not want to engage in Fed. R. Civ. P. 26(a) disclosures until after the Court ruled on their Motion to Dismiss:

> The SSG Defendants respectfully propose that Rule 26(a) disclosures be deferred until 14 days after (i) the Court's ruling on the merits of the SSG Defendants' pending Motion to Dismiss (ECF No. 25), if the Court denies the Motion, and (ii) the resolution of all service issues." [Doc. No. 33-1, Pg. 6].

Notwithstanding their refusal to engage in the Fed. R. Civ. P. 26(a) disclosure process, the SSG Defendants reviewed the record in the unrelated case of Kyko Global Inc. et al. v. Prithvi Information Solutions, No. C13-1034 MJP (W.D. Wash.) ("Washington Litigation") and try to use (improperly and out-of-context) Mr. Guru Pandyar's Declaration in that case in support of their Motion to Dismiss in this case [Doc. No. 43, Pgs. 17-18]. Moreover, Mr. David Amorose submitted a Declaration in the Washington Litigation [Doc. No. 239] which the SSG Defendants have strategically decided not to try to use in this case.[1]

Plaintiffs' counsel examined Defendant Dinesh Goel with respect to his email communications with Mr. Pandyar which Mr. Pandyar addresses in his Declaration [Doc. No. 109-13]. Plaintiffs' counsel specifically informed SSG Defendants' counsel that he was making erroneous objections due to the SSG Defendants' failure to undertake any jurisdictional discovery:

> BY MR. MACYDA:
> ...

---

[1] The SSG Defendants have also reviewed the record in the unrelated case of Kyko Global Inc. et al. v. Omkar Bhongir, No. 2:17-CV-00212 (W.D. Pa.), to try to make arguments in support of their defense in this case.

So my first question is:· Why is
Guru Pandyar sending you this email?

MR. GINSBERG: Objection, calls for
speculation.·I'll also note that Mr. Pandyar email or
attaches his address as Bellevue Washington, so I'm
struggling to understand how this document relates to
your permitted scope of discovery with respect to
contacts with the Western District of Pennsylvania.

MR. MACYDA:· You guys have opportunity to do
your own discovery in this case and opted not to do
it.· So Mr. Pandyar's role in this matter will be
whatever it is.

MR. GINSBERG:· Well, no, you're limited to
discovery about contacts with the Western District of
Pennsylvania and --

MR. MACYDA:· And it's been our position which your clients cannot refute, that Mr. Pandyar
has been at all material times a corporate representative of both PISL and PSI.

MR. GINSBERG:· I'm not sure we have any obligation to dispute that; but, again, I'm not
understanding how this email from an operative in Washington state has anything to do with the
Western District of Pennsylvania.
...
(Goel Trs. Pgs. 75-77, **Exhibit A**)[2]

After refusing to participate in the Fed. R. Civ. P. 26(a) disclosure process, refusing to

engage in their own jurisdictional discovery, and nevertheless having full knowledge of Mr.

Pandyar and Mr. Amorose during the jurisdictional discovery period, the SSG Defendants now

try to invent reasons to strike out Mr. Pandyar's and Mr. Amorose's Declarations because they

demonstrate that the SSG Defendants had contacts with Pittsburgh and the SSG Defendants

regret having failed to examine these witnesses prior to the submission of their Supplemental

Jurisdiction Brief.

## ARGUMENT

### I.  The Declarations Were Timely Submitted

The SSG Defendants state that the Declarations should be stricken because they were

_____

[2] As discussed later in this Brief, Mr. Goel also explicitly told Plaintiffs' counsel during his examination that
Plaintiffs' counsel should contact Mr. Pandyar to obtain answers to Plaintiffs' counsel's questions due to Mr. Goel's
purported inability to provide answers.

filed after the December 2, 2019, discovery cutoff date. (Mtn. Pg. 2). This Court did not order a cutoff date regarding the submissions of Declarations. The Court ordered a jurisdictional discovery cutoff date - December 2, 2019 - and a supplemental brief filing date - December 16, 2019. The Declarations were submitted on December 16, 2019, as part of Plaintiffs' Supplemental Jurisdiction Brief. Accordingly, Plaintiffs timely submitted the Declarations under this Court's Order.[3] See Also Woods v. Austal, U.S.A., LLC, 2011 WL 1380054, at *2 (S.D. Ala. Apr. 11, 2011) ("[P]laintiff identifies no authority for the proposition that he was entitled to a 'free preview' of defendant's summary judgment witness declarations before the close of discovery.... Nor is there any rule or legal principle mandating that declarations be stricken from a summary judgment record unless they were prepared, executed and produced to opposing counsel before the close of discovery.").

Moreover, after refusing to participate in the Fed. R. Civ. P. 26(a) disclosure process, refusing to engage in their own jurisdictional discovery, and otherwise having full knowledge of Mr. Pandyar and Mr. Amorose, the SSG Defendants cannot claim that they are prejudiced by these Declarations. See Enos-Martinez v. Bd. of Cnty. Comm'rs of the Cnty. of Mesa, 2012 WL 1079442, Case No. 10-cv-00033, at *3 (D. Colo. March 30, 2012)("After making the tactical decision not to depose these third-party witnesses, Defendant cannot now complain that it is somehow prejudiced by the attachment of these affidavits to Plaintiff's Summary Judgment Response").

As set forth above, the Declarations were timely submitted and the SSG Defendants cannot claim that they have suffered any prejudice. Accordingly, the SSG Defendants' Motion

---

[3] Under the SSG Defendants' view, Plaintiffs were required to file the Declarations as standalone documents on December 2, 2019, and then file their Supplemental Jurisdiction Brief on December 16, 2019. The analog to this would be that the SSG Defendants were required to file their transcripts in support of their Supplemental Jurisdiction Brief on December 2, 2019, as standalone documents and then file their Supplemental Jurisdiction Brief on December 16, 2019. Clearly, the Court did not order this illogical sequence of events.

should be denied.

## II.  Mr. Amorose's Declaration Is Based on Personal Knowledge

The SSG Defendants argue that Mr. Amorose's Declaration is based on speculation given the following statement contained in Mr. Amorose's Declaration:

> Accordingly, <u>to the extent that these loans are properly due and owing, they would have been created</u> by SSG Capital and Value Team Corporation contacting PSI in Pittsburgh to negotiate and finalize the loans.  (Mtn. Pg. 2, emphasis included)

Plaintiffs have pled breach of contract/quasi contract claims, *in the alternative*, against the SSG Defendants (Counts VII-IX).  As set forth in Plaintiffs' Supplemental Jurisdiction Brief [Doc. No. 109] and their previous filings, Plaintiffs maintain that the SSG Defendants made numerous contacts with Pittsburgh to try to steal and launder PSI's Bond Funds out of Pittsburgh. However, in the event it is determined that these acts relate to a loan transaction instead of a conspiracy to steal PSI's Bond Funds, Plaintiffs are entitled to submit jurisdictional evidence, in the alternative, to support jurisdiction. <u>See</u> <u>Burns v. Events & Transport Associates Inc.</u>, 2010 WL 11500040,  Case No. 08-173, at * 6 (D. N.M. March 9, 2010)("The Court has considered Plaintiff's affidavit in support of jurisdiction and finds that the facts therein do not preclude one theory or another ... as the Court might disagree with her legal conclusion. Such alternative pleading is permissible precisely because the rules recognize that a plaintiff may not be sure in advance upon which legal theory she will succeed"). Consistent with Plaintiffs' alternative claims, Mr. Amorose - who was PISL's and PSI's Corporate Controller and CFO - states that to the extent the loans are properly due and owing, the loans would have been created by SSG Capital and VTC contacting PSI in Pittsburgh based on his familiarity with PSI's operations and documentation.[4]

---

[4] The SSG Defendants premise their argument on their self-serving testimony that the loans do not exist.  (Mtn Pg. 2). Whether the loans actually exist goes to the merits of this case, not jurisdiction.  Moreover, this Court is required to accept Plaintiffs alternative allegations as true to determine whether Plaintiffs have established a prima facie case

The SSG Defendants also state, "Mr. Amorose's conditional statement that nonexistent loans 'would have been created' in Pennsylvania is not based on personal knowledge, but rather is pure speculation and conjecture." (Mtn. Pg. 2).   Mr. Amorose worked for PSI and PISL for a little over eight years and during the time period at issue in Plaintiffs' Complaint. [Doc. No. 109-6, ¶ 2].  Mr. Amorose's job duties entailed finance, taxation, accounting, and payroll.  [Doc. No. 109-6, ¶ 6].  Mr. Amorose reviewed Plaintiffs' Complaint and has personal knowledge regarding the Bond Funds discussed in the Complaint. [Doc. No. 109-6, ¶ 7].  Mr. Amorose reviewed PSI's balance sheet which shows $4,000,000 owing from SSG Capital and $18,900,000 owing from VTC. [Doc. No. 109-6, ¶ 12].   Based upon Mr. Amorose's familiarity with PSI's and PISL's operations, review of PSI's balance sheet, and his former job duties, Mr. Amorose states that the SSG Defendants and VTC would have contacted PSI in Pittsburgh to negotiate and finalize the loans. [Doc. No. 109-6, ¶ 12].

Courts routinely permit witnesses to provide opinions based upon their familiarity with a company's operations and records. See United States v. Polishan, 336 F.3d 234, 242 (3rd Cir. 2003)("A witness testifying about business operations may testify about 'inferences that he could draw from his perception' of a business's records, or 'facts or data perceived' by him in his corporate capacity ... Lay opinion testimony may be based on the witness's own perceptions and 'knowledge and participation in the day-to-day affairs of [the] business'")(Citations Omitted); In re Texas Eastern Transmission Corp. PCB Contamination Ins. Coverage Litigation, 870 F.Supp. 1293, 1303-1304 (E.D. Pa. 1992)(company employee permitted to submit affidavit regarding company's historical practices based on his review of company records); Seltzer v. I.C. Optics

of personal jurisdiction. See  Miller Yacht Sales Inc. v. Smith, 384 F.3d 93, 97 (3rd Cir. 2004)("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss [for lack of personal jurisdiction], the plaintiff need only establish *a prima facie case* of personal jurisdiction *and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor*").(Emphasis Added).

Ltd., 339 F.Supp.2d 601, 606 (D. N.J. 2004)(permitting plaintiff to oppose Rule 12(b)(2) motion by providing affidavit regarding company's advertising, sales, and management activities because, as defendant's former Managing Director and Chief Operating Officer, "a person in his position would have sufficient knowledge of company operations to support the assertions [made] in his affidavit").

As set forth above, Mr. Amorose's Declaration is not based on "speculation." It is based on his personal involvement in PISL's and PSI's business operations and review of corporate documentation related to same. Accordingly, the SSG Defendants' Motion should be denied.

## III. Mr. Pandyar's Declaration Is Consistent With Plaintiffs' Pleadings

The SSG Defendants state that Mr. Pandyar's Declaration should be stricken because it states that the Bond Funds belong to PSI, instead of PISL, and that this statement allegedly contradicts Plaintiffs' Complaint which requires Mr. Pandyar's statement to be stricken. (Mtn. Pg. 3).

The SSG Defendants cite Pellegrino v. McMillen Lumber Products Corp., 16 F.Supp.2d 574, 583 (W.D. Pa. 1996) to support their argument. In this case, merits discovery had occurred and the Court precluded the plaintiff from submitting an affidavit that contradicted her prior deposition testimony and interrogatory responses to try to create a genuine issue of material fact to preclude summary judgment. Here, merits discovery has not occurred, there is no pending motion for summary judgment, and Mr. Pandyar's Declaration does not contradict any previously made declaration (or Complaint or any other pleading). Accordingly, Pellegrino is inapposite.

Nevertheless, the SSG Defendants misrepresent Plaintiffs' Complaint. The SSG Defendants refer to ¶ 98 which references the Bond offering and ignore ¶ 101 which states:

> Consistent with the Bond Offer Circular, PISL and PSI entered into an agreement wherein the Bonds were issued for the benefit of PSI **and the Bonds funds were to be used solely by PSI** to execute business operations in the United States. (Emphasis Added). [5]

Moreover, Plaintiffs have routinely asserted through this case that the Bond Funds belong to PSI[6] and recently restated this position in their Supplemental Jurisdiction Brief: "As part of the Defendants' conspiracy to steal **PSI's Bond Funds**, the SSG Defendants obtained PSI's and PISL's corporate information by contacting PSI and PISL in Pittsburgh to enable them to create Prithvi Asia Solutions Limited ("PASL") to serve as a pass-through entity to receive **PSI's Bond Funds.**" [Doc. No. 109, Pg. 6] (Emphasis Added).

As set forth above, Mr. Pandyar's statement that he transferred PSI's Bond Funds is entirely consistent with Plaintiffs' Complaint and Plaintiffs' submissions in this case.[7] Accordingly, the SSG Defendants' Motion should be denied.

## IV. Mr. Pandyar's Declaration Does Not Assert Legal Argument

Mr. Pandyar's Declaration describes his personal involvement with Defendant Dinesh Goel with respect to his request to receive $,2,500,000 of PSI's Bond Funds. Not liking Mr. Pandyar's opinions regarding Mr. Goel's contacts with Pittsburgh, the SSG Defendants state:

> 8. Mr. Pandyar's Declaration provides inappropriate legal argument based on a gross mischaracterization of documents in the record:
>
> As reflected on SSG00007-SSG00008, Mr. Goel requested PSI to wire $2,500,000 of Bond Funds from its PNC Pittsburgh Bank….ECF No. 109-13, ¶ 7.
>
> This averment is not based on Mr. Pandyar's personal knowledge but is his interpretation about documents in the record. It should therefore be stricken. *Ne.Revenue Servs., LLC v. Maps Indeed, Inc.*, No. 14-00852, 2015 WL 1963170, at *4 (M.D. Pa. Apr. 30,2015) (striking portions of declaration because "legal conclusions … are not permissible"). (Mtn. Pgs. 3-4).

"The best way to determine whether opinion testimony contains legal conclusions, 'is to determine whether the terms used by the witness have a separate, distinct and specialized

---

[5] PSI's use of the Bond Funds is also referenced in, without limitation, ¶ 120, ¶ 121, ¶ 123, ¶ 124, ¶ 132, ¶ 138.

[6] For example, and without limitation, Doc. No. 40-1, ¶¶ 8, 35.

[7] Even if Mr. Pandyar's statements were inconsistent, this would not affect jurisdiction (or liability) - PSI's principal place of business was in Pittsburgh, PISL is registered to do business in Pittsburgh, and all operations regarding the Bond Funds were executed in Pittsburgh. [Doc. No. 109-6].

meaning in the law different from that present in the vernacular.'" <u>U.S. v. Barile</u>, 286 F.3d 749, 760 (4th Cir. 2002). <u>See</u> <u>Also</u> Fed. R. Evid. 704(a)("An opinion is not objectionable just because it embraces an ultimate issue").

Mr. Pandyar's states: "Mr. Goel requested PSI to wire $2,500,000 of Bond Funds from its PNC Pittsburgh Bank ..." ECF No. 109-13, ¶ 7. This is clearly a statement of fact and not a legal conclusion - The SSG Defendants are simply arguing with Mr. Pandyar and do not like that this statement of fact, when applied to the governing law as set forth in Plaintiffs' Briefs, demonstrate that Plaintiffs have established a prima facie case of personal jurisdiction.

## V. Mr. Pandyar's Declaration Is Not False And Misleading

The SSG Defendants state:

9. Mr. Pandyar's legal characterization of SSG00007 – SSG00008 is also false and misleading. Those documents do not show that Mr. Goel requested a wire transfer from Pittsburgh. To the contrary, the documents say:

> <u>As per the instructions of Satish [Vuppalapati],</u> Please find attached confirmation of the amount transferred to Prithvi Asia yesterday.

ECF No. 109-13, at 7 (emphasis added). The documents show that *Satish Vuppalapati* instructed Guru Pandyar to send a confirmation to Dinesh Goel. They do not show that Dinesh Goel requested anything of PSI—or that *anyone* from the SSG Defendants requested a wire transfer take place.

During his deposition, Mr. Goel claimed he was unable to answer basic questions regarding what had occurred regarding SSG00007-000011 (attached to Mr. Pandyar's Declaration) and repeatedly told Plaintiffs' counsel that he should contact Mr. Pandyar to understand what occurred with respect to these documents. By way of example, but not limitation:

BY MR. MACYDA:
Q.· So, sir, why did Mr. Pandyar send this email to you on May 27, 2011?

MR. GINSBERG:· Objection, calls for speculation.

A.· You should ask Mr. Pandyar.

BY MR. MACYDA:

Q.· Okay.· So when you received this email, it took you completely by surprise, that's your testimony?

MR. GINSBERG:· Objection, misstates the testimony.

A.· I did not say that.

BY MR. MACYDA:
Q.· Okay.· So, again, why would Mr. Pandyar have sent this email to you?

MR. GINSBERG:· Objection, calls for speculation.

A.· I repeat, you should ask Mr. Pandyar that question, he is the one who sent the email. (Goel Trs. 78-79)**(Exhibit B).**
...
BY MR. MACYDA:
Q.· Okay.· So if we go to SSG 11 -- and we'll do these a little backwards today, it's going to be clearer -- you'll see Guru Pandyar's email, 15 June, 2011, to you, with a cc to Satish, subject line is "Transfer of Funds."· Mr. Pandyar writes to you: "Find attached the wire transfer sent to Prithvi Asia.· Kindly confirm the receipt of the same." And then if you look at 9 and 10, your wire activity reports generated from PNC Bank. Do you see all of that?

A.· Yes, I do.

Q.· Why did Mr. Pandyar send that to you?

A.· As I said earlier, you should ask Mr. Pandyar.
(Goel Trs. 85-86) **(Exhibit C).**

Plaintiffs followed Mr. Goel's suggestion and contacted Mr. Pandyar to learn what had occurred. As set forth in Mr. Pandyar's Declaration, Mr. Goel, who was never a Prithvi Board member or employee, nevertheless had direct access to Prithvi Asia's bank account and engaged in repeated email exchanges with Mr. Pandyar wherein Mr. Goel repeatedly requested Mr. Pandyar to send Mr. Goel information to allow Mr. Goel to acquire PSI's Bond Funds; and Mr. Pandyar describes how Mr. Goel was repeatedly made aware that the Bond Funds he requested to receive came from PSI's PNC Bank Account.· Not liking what Mr. Pandyar has to say, the SSG Defendants once again argue with Mr. Pandyar and seek to strike his Declaration because it establishes the SSG Defendants' contacts with Pittsburgh.

The SSG Defendants' reference to Satish Vuppalapati is simply a diversion to the foregoing as Mr. Pandyar clearly sets forth how Mr. Goel independently requested to receive

PSI's Bond Funds from Mr. Pandyar as discussed above. Moreover, the SSG Defendants' statement that Mr. Goel did not request Satish Vuppalapati to effectuate the wire transfers is patently false. As set forth in Plaintiffs' Supplemental Jurisdiction Brief, Mr. Maheshwari and Mr. Goel both requested Satish Vuppalapati (and Madhavi Vuppalapati) to wire $2,500,000 *prior* to the email exchanges between Mr. Pandyar and Mr. Goel discussed above. [Doc. No. 109, Pg. 9]. Clearly, the "instructions of Satish [Vuppalapati]" referenced in the email exchanges were caused by Mr. Goel's demands made to Satish Vuppalapati to have the funds wired.

## **CONCLUSION**

For the reasons set forth above, the SSG Defendants' Motion should be denied.


Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757
Fowkes ♦ Rodkey
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139
(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
jrodkey@fowkesrodkey.com

Jayson M. Macyda
Jayson M. Macyda (admitted *pro hac vice*)
Kyko Global, Inc.
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing document was served via the Court's CM/ECF Notification System on this 31st day of December, 2019 upon the following:

Michael H. Ginsberg
mhginsberg@jonesday.com
John D. Goetz
jdgoetz@jonesday.com
Douglas Baker
ddbaker@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514

**Counsel for Defendants:**

**SSG Capital Partners I, L.P.**
**SSG Capital Management (Hong Kong) Limited**
**Shyam Maheshwari**
**Ira Syavitri Noor a/k/a Ira Noor Vourloumis**
**Dinesh Goel**
**Wong Ching Him a/k/a Edwin Wong**
**Andreas Vourloumis**
**Value Team Corporation**

**Counsel for Defendant**

**Anandhan Jayaraman**

Jeffrey T. Morris
Elliott & Davis, PC
6425 Living Place, Suite 200
Pittsburgh PA 15206
morris@elliott-davis.com

The undersigned certifies that a true and correct copy of the foregoing document was served via U.S. Mail for posting on the 31st day of December, 2019 upon the following:

Prithvi Information Solutions, LTD.
Prithvi Asia Solutions Limited
214 S. Craig Street
Suite 5

Pittsburgh, PA 15213

   The undersigned certifies that a true and correct copy of the foregoing document was served via Email on the 31st day of December, 2019 upon Madhavi Vuppalapati by sending an email to:

Madhavi@prithvisolutions.com
Vuppalapatim@gmail.com
Satish@prithvisolutions.com
Vuppalapatis@gmail.com
ajayaraman@gmail.com

*/s/ Joseph F. Rodkey, Jr.*