# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

KYKO GLOBAL, INC. et al.,

        *Plaintiffs,*

   v.

PRITHVI INFORMATION SOLUTIONS
LTD. et al.,

        *Defendants.*

Civil Action No. 2:18-cv-01290-WSS

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

      This controversy arises from allegations of fraud involving coupon-bond funds. In 2016, Plaintiffs Kyko Global, Inc. ("KGI") and Kyko Global GmbH ("KGG") (collectively "Kyko") obtained a civil RICO judgment in the United States District Court for the Western District of Washington for a fraud-factoring scheme committed by entities and employees affiliated with the Prithvi family of businesses. As a result of litigation in Washington State, Kyko serves as the collection agent for Plaintiff Prithvi Solutions, Inc. ("PSI"). There is a criminal indictment pending in that district related to the conduct of Prithvi entities and employees. Plaintiffs seek another civil RICO judgment in this Court against Prithvi entities and employees for an unrelated conspiracy to launder stolen bond funds.

      Pending before the Court are two motions to dismiss on jurisdictional grounds. The first was filed by Defendants Prithvi Information Solutions, Ltd. ("PISL"), Prithvi Asia Solutions, Ltd. ("PASL"), SSG Capital Management (Hong Kong), Ltd. ("SSG Hong Kong"), SSG Capital Partners I, L.P. ("SSG Capital Partners"), Madhavi Vuppalapati ("Madhavi"), Wong Ching Him

a/k/a Edwin Wong ("Him"), Shyam Maheshwari ("Maheshwari"), Ira Syavitri Noor a/k/a Ira Noor Vourloumis ("Noor"), Andreas Vourloumis ("Vourloumis"), and Dinesh Goel ("Goel") (collectively "SSG Defendants"). The second was filed by Defendant Anandhan Jayaraman ("Jayaraman"). SSG Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 25) ("SSG Def.'s Mot. to Dismiss") at p. 1; Motion to Dismiss on Behalf of Defendant Anandhan Jayaraman (ECF No. 103) ("Jayaraman's Mot. to Dismiss") at p. 1.

Three discovery-related motions are intertwined with both motions to dismiss: SSG Defendants' motion to strike Plaintiffs' jurisdictional discovery, Plaintiffs' motion to strike Jayaraman's jurisdictional discovery, and Jayaraman's motion to withdraw admissions. SSG Defendants' Motion to Strike Affidavits (ECF No. 111) ("SSG Def.'s Mot. to Strike Aff.") at pp. 1–4; Plaintiffs' Motion to Strike Defendant Anandhan Jayaraman's Reply Brief in Support of Motion to Dismiss (ECF No. 116) ("Pl.'s Mot. to Strike Jayaraman's Reply") at p. 1; Jayaraman's Motion to Withdraw Admissions (ECF No. 119) ("Jayaraman's Mot. to Withdraw Admissions") at p. 1.

For the reasons set forth in this opinion, Plaintiffs' motion to strike jurisdictional discovery proffered by Jayaraman will be granted and Jayaraman's motion to withdraw admissions will be denied. SSG Defendant's motion to strike Plaintiffs' jurisdictional discovery will be denied. The jurisdictional discovery submitted shows that the Court can exercise subject matter jurisdiction, and personal jurisdiction. This Court is the appropriate venue. As a result, SSG Defendants' and Jayaraman's motions to dismiss will both be denied.

# TABLE OF CONTENTS

**STATEMENT OF FACTS** ........................................................................................................... 5

  **I.**    **Background** ...................................................................................................... 5

  **II.**    **The Controversy** .......................................................................................... 9

    *A.*  *The Bond-Circular Offering* ....................................................................... 9

    *B.*  *Alleged Racketeering Activities* ................................................................ 10

        1.    PISL Transfers $35,000,000.00 to PISL's Washington State Account. .................. 13

        2.    PISL Transfers $35,000,000.00 to PSI's Pittsburgh Account. ................................ 13

        3.    PSI Transfers $8,000,000.00 to Prithvi, LLC's Washington State Account. ............. 13

        4.    PSI Transfers $7,000.000.00 to PISL (Account Unknown). ..................................... 13

        5.    PSI Transfers $20,400,000.00 to PASL's Hong Kong Account. .............................. 14

        6.    PASL Transfers $4,000,000.00 to SSG Capital Partners' Hong Kong Account........ 14

        7.    PASL Transfers $16,400,000.00 to VTC's Singapore Account.................................. 14

        8.    PISL Transfers $2,500,000.00 to PSI's Pittsburgh Account. .................................... 14

        9.    PSI's Transfers $2,500,000.00 to PSAL's Hong Kong Account. ............................... 14

           *i.*   *PSI Initially Fails to Transfer $2,500,000.00.* ..................................... 15

           *ii.*  *PSI Transfers $1,000,000.00 to PSAL's Hong Kong Account.* ............................. 15

           *iii.*   *PSI Transfers $1,500,000.00 to PSAL's Hong Kong Account.* .......................... 15

        10.    PSAL Transfers $2,500,000.00 to VTC's Account. ................................................. 15

        11.    PSAL Transfers $10,000.00 to VTC's Account. ..................................................... 16

        12.    PASL Withdraws $28,000.00. ............................................................................... 16

    *C.*  *The Aftermath* ........................................................................................... 16

  **III.**    **Procedural History** .................................................................................... 17

    *A.*  *Civil Litigation in Washington State and Hong Kong* ................................. 17

        1.    The Unconsolidated Washington Federal District Court Case ................................ 18

        2.    The Washington Superior Court and Federal Bankruptcy Court Cases ................... 19

        3.    The Consolidated Washington Federal District Court Case ..................................... 20

        4.    The Civil Case in Hong Kong ................................................................................ 21

    *B.*  *Criminal Litigation in Washington State* ................................................... 22

    *C.*  *Litigation in this Forum* ............................................................................ 23

**STANDARD OF REVIEW** .................................................................................................... 25

  **I.**    **Federal Rule 12(b)(1)** ................................................................................ 25

  **II.**    **Federal Rule 12(b)(2)** ................................................................................ 26

**III.    Federal Rule 12(b)(6)** ....................................................................................................... 27

**ANALYSIS** ....................................................................................................................................... 28

**I.    Motions Raising Discovery-Related Issues** ..................................................................... 29

   A.    *SSG Defendants' Objections to Plaintiffs' Supplemental Discovery* ........................... 29

      1.    Timeliness .............................................................................................................. 30

      2.    Personal Knowledge .............................................................................................. 30

      3.    Inconsistency with the Complaint ......................................................................... 31

      4.    Improper Legal Argument ..................................................................................... 32

   B.    *Jayaraman's Deemed Admissions* ............................................................................... 33

      1.    Presentation of the Merits ...................................................................................... 34

      2.    Prejudice ................................................................................................................. 35

**II.    Subject Matter Jurisdiction** ............................................................................................ 36

   A.    *Diversity Jurisdiction* .................................................................................................. 38

   B.    *Federal Question Jurisdiction* ..................................................................................... 39

      1.    Overview of Plaintiffs' RICO Claim ...................................................................... 40

      2.    Element 1: Existence of a RICO Enterprise Under Rule 12(b)(6) ......................... 41

         i.    *The Boyle Test* ................................................................................................ 42

         ii.    *The Turkette Test* .......................................................................................... 44

      3.    Element 3: Conduct of a RICO Enterprise Under Rule 12(b)(6) ......................... 46

      4.    Element 4: Predicate Offenses "Sounding in Fraud" Under Rule 9(b) ................ 47

**III.    Personal Jurisdiction** ...................................................................................................... 53

   A.    *Personal Jurisdiction Under Pennsylvania's Long-Arm Statute* ................................ 54

      1.    Waiver ..................................................................................................................... 55

      2.    General Jurisdiction ............................................................................................... 57

      3.    Specific Jurisdiction ............................................................................................... 58

         i.    *The Traditional Minimum Contacts Test* ..................................................... 59

            a.    The Contacts Prong .................................................................................. 60

            b.    The Reasonableness Prong ....................................................................... 64

         ii.    *Intentional Torts "Effects" Test* .................................................................. 65

         iii.    *Conspiracy Jurisdiction* ............................................................................. 67

            a.    Overview of Conspiracy Jurisdiction ....................................................... 67

            b.    The Substantial Acts Prong ...................................................................... 69

            c.    The Knowledge Prong .............................................................................. 70

   B.    *Statutory Personal Jurisdiction* .................................................................................. 72

   1.   Personal Jurisdiction under the MCLA ..................................................... 73

   2.   Personal Jurisdiction under RICO ........................................................... 74

IV.   **Venue** ............................................................................................................. 77

   A.   *Forum Non Conveniens* ......................................................................... 78

   B.   *Alternative Forum* ................................................................................. 79

   C.   *Presumption that Plaintiffs' Choice is Proper* ...................................... 80

   D.   *Public and Private Interest Factors* ..................................................... 81

   1.   Private Interest Factors ........................................................................ 82

   2.   Public Interest Factors ......................................................................... 82

   E.   *Conclusion* ............................................................................................. 83

## STATEMENT OF FACTS

### I.   Background

There are three Plaintiffs. Plaintiff KGI is a Canadian corporation. Plaintiffs' Complaint and Jury Demand (ECF No. 1) ("Pl.'s Compl.") at p. 1, ¶ 1. Plaintiff KGG, a Bahamian corporation, is a wholly owned subsidiary of KGI. Pl.'s Compl. at p. 2, ¶ 2. Plaintiff PSI is a Delaware corporation formed in 2007 with a principal place of business in Pittsburgh, Pennsylvania. Pl.'s Compl. pp. 1, 10, ¶¶ 1, 100; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. F (ECF No. 109-6) ("Amorose Decl.") at pp. 2–3, ¶¶ 4, 11. PSI is a subsidiary and sole shareholder of PISL; PISL formed PSI to expand PISL's business operations in the United States. Pl.'s Compl. pp. 1, 10, ¶¶ 1, 100; Amorose Decl. at pp. 1–2, ¶¶ 2, 4; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. I (ECF No. 109-9) ("Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I") at p. 3, ¶ 2. PISL and PSI conducted business in the same office in Pittsburgh. Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. M (ECF No. 109-13) ("Pandyar Decl.") at p. 2, ¶ 3. PNC's branch in Pittsburgh maintained PSI's sole bank account.

Amorose Decl. at p. 3, ¶ 11; Pandyar Decl. at p. 2, ¶ 5; Declaration of Kiran Kulkarni (ECF No. 40-1) ("Kulkarni Decl.") at p. 3, ¶ 11.

There are five corporate Defendants. PISL is an Indian company in the information technology sector with its principal place of business in Pittsburgh. Pl.'s Compl. pp. 1–2, 5–6, 10, ¶¶ 1, 5–6, 100; SSG Defendants' Supplemental Brief in Support of Plaintiffs' Motion to Dismiss Ex. C (ECF No. 108-3) ("Shyam Maheshwari Dep.") at p. 104; Amorose Decl. at pp. 1–2, ¶¶ 2–3; Pandyar Decl. at p. 1, ¶ 2; Kulkarni Decl. at p. 2, ¶ 6. PSAL is a Hong Kong company. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 16. Value Team Corporation ("VTC") is a British Virgin Islands corporation. Pl.'s Compl. at p. 2, ¶ 14. SSG Hong Kong is a Hong Kong company and asset management fund. Pl.'s Compl. at p. 3, ¶¶ 15–20. SSG Capital Partners is a Cayman Islands limited partnership and investment fund created in August 2009. Pl.'s Compl. at p. 3, ¶¶ 15–20. SSG Hong Kong is the general partner and director of operations for SSG Capital Partners. SSG Defendants' Supplemental Brief in Support of SSG Defendants' Motion to Dismiss Ex. A (ECF No. 108-1) ("Cairns Dep.") at p. 12.

There are eight individual Defendants. Madhavi is an Indian citizen, current resident of Hyderabad, India, and Chairman of PISL. Pl.'s Compl. at p. 2, ¶¶ 7–9; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. A (ECF No. 109-1) ("Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. A") at p. 13; Amorose Decl. at p. 2, ¶ 8; Kulkarni Decl. at p. 3, ¶ 10. She is said to have physically resided in Pittsburgh and Washington State from 2010 through 2014, the timeframe when the alleged actionable conduct occurred. Amorose Decl. at p. 2, ¶ 8; Kulkarni Decl. at p. 3, ¶ 12. Jayaraman, Madhavi's husband, is an Indian citizen, and current resident of Hyderabad but allegedly lived with his wife in Pittsburgh during part of the timeframe when the alleged actionable conduct

occurred. Pl.'s Compl. at p. 2, ¶¶ 11–13; Shyam Maheshwari Dep. at p. 105; Kulkarni Decl. at p. 3, ¶ 12. Him is a Hong Kong citizen, Hong Kong resident, Director and shareholder of VTC, and Director and Chief Executive Officer ("CEO") of SSG Hong Kong. Pl.'s Compl. at p. 3, ¶¶ 25– 26; Cairns Dep. at p.13; Kulkarni Decl. at p. 2, ¶ 4. Maheshwari is an Indian citizen, resident of Singapore and Hong Kong, Director and shareholder of VTC, and partner, co-founder, and manager of SSG Hong Kong. Pl.'s Compl. at p. 3, ¶¶ 21–24; Kulkarni Decl. at p. 2, ¶ 4. Noor is a resident of Hong Kong and Director of VTC. Pl.'s Compl. at p. 3, ¶¶ 29–30; Kulkarni Decl. at p. 2, ¶ 4. Vourloumis, Noor's husband, is an Indonesian citizen, resident of Singapore and Hong Kong, Director and shareholder of VTC, and partner and member of SSG Hong Kong's advisory committee. Pl.'s Compl. at pp. 3–4, ¶¶ 31–34; Cairns Dep. p.13; Kulkarni Decl. at p. 2, ¶ 4. Goel is an Indian citizen, Singapore resident, and Managing Director of SSG Hong Kong. Pl.'s Compl. at p. 4, ¶¶ 36–37; SSG Defendants' Supplemental Brief in Support of SSG Defendants' Motion to Dismiss Ex. B (ECF No. 108-2) ("Dinesh Goel Dep.") at p. 17–18.

SSG Defendants are intertwined with three corporate entities: VTC, SSG Capital Partners, and SSG Hong Kong. SSG Defendants are equity holders in PISL and PSI. Kulkarni Decl. at p. 2, ¶ 4. Maheshwari, Noor, Vourloumis, and Wong control and operate VTC. Pl.'s Compl. at pp. 3–4, ¶¶ 24–34; Kulkarni Decl. at p. 2, ¶ 4. Goel, Maheshwari, Wong, and Vourloumis control and operate SSG Hong Kong. SSG Hong Kong, Goel, Maheshwari, Wong, and Vourloumis control and operate SSG Capital Partners. Pl.'s Compl. at pp. 3–4, ¶¶ 24–34; Kulkarni Decl. at p. 2, ¶ 4."[1]

The filings reference several noteworthy third parties. The Complaint twice references Prithvi Information Solutions, LLC ("Prithvi, LLC"). There is no information about Prithvi, LLC

---

[1] On November 15, 2019, the Court struck VTC's notice of appearance, therefore, VTC is not included within the "SSG Defendants" designation for the purposes of this Opinion. Order of Court (ECF No. 106) ("Order Striking VTC's Appearance") at p. 1.

in the record except that it received a wire transfer from PSI. Pl.'s Compl. at p. 12, ¶¶ 121–22. The Court deduces that it is an entity within the Prithvi family of businesses. Satish Kumar Vuppalapati ("Satish") is the brother of Madhavi and Managing Director of both PISL and PSI. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. A at p. 13; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. E (ECF No. 109-5) ("Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. E") at pp. 1–2; Amorose Decl. at pp. 2–3, ¶ 9. Satish is embroiled in the conspiracy allegations in this case despite the fact that no allegation is specifically directed at him. Several other persons have provided deposition testimony and declarations/affidavits attesting to facts relevant to the Court's jurisdictional determination. David Amorose ("Amorose") served as Corporate Controller and court-appointed Chief Financial Officer ("CFO") for PISL and PSI from May 2005 to November 2013. Amorose Decl. at p. 2, ¶ 3. His duties involved finance, taxation, accounting, and payroll. Amorose Decl. at p. 2, ¶ 6. Guru Pandyar ("Pandyar") was a Pennsylvania resident who moved to Washington State when the alleged actionable conduct occurred. He served as PISL's Assistant Vice President of Finance and Accounts and as a member of PSI's management team. Amorose Decl. at p. 3, ¶ 10; Pandyar Decl. at p. 1, ¶ 2. Mathur Narayanan ("Narayanan") was Vice President of PISL during the timeframe when the alleged actionable conduct occurred. Kulkarni Decl. at p. 6, ¶ 33. Kiran Kulkarni ("Kulkarni") is Plaintiffs' Director and CEO. Kulkarni Decl. at p. 1, ¶ 2. And Peter Cairns ("Cairns") is the Chief Operating Officer ("COO") of SSG Hong Kong. SSG Defendants' Supplemental Brief in Support of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(3) (ECF No. 108) ("SSG Def.'s Supp. Br. in Supp. of Pl.'s Mot. to Dismiss") at p. 3 & n.4.

## II.  The Controversy

The timeline of events prompting this action can be broken down into three sequences: A) the bond-circular offering by PISL, B) the timeframe when Defendants allegedly engaged in racketeering and laundered the bond funds, and C) the aftermath leading to the filing of this lawsuit.

### A.  The Bond-Circular Offering

In February 2007, PISL executed an agreement under Indian law with its subsidiary, PSI, to raise funds by issuing bonds so that PSI could conduct business in the United States.  By doing so, PISL intended to expand its business in the United States as well.  Pl.'s Compl. at p. 10, ¶ 101; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2; Plaintiffs' RICO Case Statement (ECF No. 5) ("Pl.'s RICO Case Statement") at p. 1.  PISL issued a bond offering circular[2] for $50,000,000.00 worth of coupon bonds[3] due in February 2012 that were convertible to PISL shares.  Pl.'s Compl. at p. 10, ¶ 98; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2; Kulkarni Decl. at p. 1, ¶ 4; Pl.'s RICO Case Statement at p. 1

Lehman Brothers invested in the bonds through Kingfisher Capital CLO Ltd. and placed $50,000,000.00 in an escrow account at UCO Bank in Hong Kong for that investment.  Pl.'s

---

[2] "An offering circular is a prospectus for a new security listing. It is delivered to individuals and brokerage houses who are interested in potentially purchasing the newly issued mutual fund or stock." Will Kenton, *Offering Circular*, INVESTOPEDIA (Feb. 20, 2018), https://www.investopedi a.com/terms/o/offeringcircular.asp.

[3] "A coupon bond, also referred to as a bearer bond or bond coupon, is a debt obligation with coupons attached that represent semiannual interest payments. With coupon bonds, there are no records of the purchaser kept by the issuer; the purchaser's name is also not printed on any kind of certificate. Bondholders receive these coupons during the period between the issuance of the bond and the maturity of the bond." James Chen, *Coupon Bond*, INVESTOPEDIA (Sept. 18, 2019), https://www.investopedia.com/terms/c/couponbond.asp.

Compl. at p. 10, ¶¶ 102–03; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2. UCO Bank transferred approximately $15,000,000.00 of those bond funds to PISL. PISL, in turn, transferred those funds to PSI so that PSI could conduct business operations in the United States. Pl.'s Compl. at p. 10, ¶ 104; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2.

The locus of bond fund management was Pittsburgh. All communications among PISL and PSI executives and Defendants about the bond funds were directed to and received from Pennsylvania. Amorose Decl. at pp. 3, ¶ 11. Madhavi and Jayaraman managed operations related to the bond funds while physically residing in Pittsburgh and through electronic communications, such as emails and telephone calls. Amorose Decl. at p. 2, ¶ 8; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 6, ¶ 6. Satish assisted in the management of the bond funds in Pittsburgh by traveling from India to Pittsburgh and through electronic communications by email and telephone. Amorose Decl. at pp. 2–3, ¶ 9. Pandyar also helped manage the bond funds while physically residing in Pittsburgh and through electronic communications (email and telephone). Amorose Decl. at p. 3, ¶ 10.

*B. Alleged Racketeering Activities*

In 2008, PISL conducted business and retained employees in Pittsburgh. Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. C (ECF No. 109-3) ("Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. C") at p. 2. In June 2008, Goel went on a business trip to the United States on behalf of PISL that included a stop in Pittsburgh. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. A at pp.

5–6, 11–12, 14.[4] Plaintiffs allege that a racketeering conspiracy formed, at least in part, as a result of that trip.

On September 15, 2008, Lehman Brothers filed petitions for bankruptcy in the United States and overseas. Pl.'s Compl. at p. 10, ¶ 105. On or about August 3, 2010, Lehman Brothers sold its interest in its PISL bonds to VTC and SSG Capital Partners for approximately $15,500,000.00. Pl.'s Compl. at p. 10, ¶ 106; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at pp. 2–3, ¶ 2; Pl.'s RICO Case Statement at p. 2. The allegations here arise from SSG Defendants' alleged conspiracy to launder the bond funds between 2010 and 2014 through UCO Bank and Hang Seng Bank in Hong Kong, Key Bank in Washington State, and PNC Bank in Pittsburgh. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2; Pl.'s RICO Case Statement at p. 2.

Plaintiffs assert that the conspiracy was facilitated by two sham Memorandums of Understanding ("MOUs"): one between PISL and SSG Capital Partners, the other between PISL and VTC. These MOUs purported to restructure PISL coupon bonds, conditional on SSG Capital Partners and VTC paying non-refundable deposits to PISL as gestures of good faith. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2; Pl.'s RICO Case Statement at p. 2. On September 6, 2010, PISL entered into agreements with SSG Capital Partners and VTC ("SSG Capital Partners Agreement #1" and "VTC Agreement #1," respectively). Pl.'s Compl. at pp. 10–11, ¶¶ 107, 111. On September 8, 2010, SSG Capital Partners and PISL executed an addendum to SSG Capital Partners Agreement #1 requiring SSG Capital Partners to pay a $4,000,000.00 non-refundable deposit to PISL as confirmation of SSG Capital Partners' commitment to the

---

[4] The exhibits to Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss are not consecutively paginated and violate L.R. 5.1(E), therefore, the Court's pagination reflects the page numbers for each exhibit as applied by EM/ECF.

restructuring process. Pl.'s Compl. at pp. 10–11, ¶¶ 108–09. VTC and PISL entered an addendum to VTC Agreement #1 requiring VTC to pay a $16,200,000.00 deposit with PISL that same day for the same reason. Pl.'s Compl. at p. 11, ¶ 112. These non-refundable deposits allegedly violated Indian law. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2; Pl.'s RICO Case Statement at p. 1.

At the time of the "restructuring," SSG Capital Partners and SSG Hong Kong owed $4,000,000.00 to PISL under SSG Capital Partners Agreement #1, the same sum as the non-refundable deposit stipulated in the addendum to that agreement. Pl.'s Compl. at p. 13, ¶ 128. PASL transferred $4,000,000.00 at SSG Defendants' behest to SSG Capital Partners' bank account with DBS Bank Ltd. in Hong Kong. Pl.'s Compl. at p. 13, ¶ 129; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 19. SSG Capital Partners then allegedly distributed that sum among all SSG Defendants. Pl.'s Compl. at p. 13, ¶ 130. Similarly, VTC owed $18,900,000.00 to PSI under VTC Agreement #1. Pl.'s Compl. at p. 13, ¶ 131. VTC entered a second restructuring agreement with PISL on December 20, 2010 ("VTC Agreement #2") and then allegedly used a similar scheme as SSG Capital Partners to launder the bond funds. By June 17, 2011, VTC had allegedly distributed $18,900,000.00 of bond funds among Defendants. Pl.'s Compl. at pp. 13–14, ¶¶ 131–141.

Plaintiffs accuse Madhavi of being the mastermind behind these illicit distributions. As Chairman of PISL and the sole shareholder of PSI at the time, Madhavi was in control of all funds PISL received from PSI. She is alleged to have abused her position to defraud Plaintiffs of the bond funds through a series of wire transfers. These transfers are described in Plaintiffs' RICO Case Statement and are described below. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 6, ¶ 6; Kulkarni Decl. at p. 3, ¶ 9.

1. **PISL Transfers $35,000,000.00 to PISL's Washington State Account.**

On or about October 29, 2010, Bank of New York Mellon, at PISL's behest, transferred approximately $35,000,000.00 of bond funds from PISL's UCO Bank escrow account in Hong Kong to PISL's Key Bank account in Washington State. Pl.'s Compl. at pp. 11–12, ¶ 117; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Ex. J (ECF No. 109-10) ("Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J") at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 1.

2. **PISL Transfers $35,000,000.00 to PSI's Pittsburgh Account.**

On November 2, 2010, PISL wired approximately $35,000,000.00 in bond funds from its Key Bank account in Washington State to PSI's PNC Bank account in Pittsburgh. Pl.'s Compl. at pp. 11–12, ¶ 118; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.

3. **PSI Transfers $8,000,000.00 to Prithvi, LLC's Washington State Account.**

On or about November 3, 2010, PSI wired approximately $8,000,000.00 to Prithvi, LLC in Washington State. Pl.'s Compl. at p. 12, ¶ 121; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.

4. **PSI Transfers $7,000,000.00 to PISL (Account Unknown).**

On or about November 3, 2010, PSI transferred approximately $7,000,000.00 back to PISL. Pl.'s Compl. at p. 12, ¶ 123; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.[5]

---

[5] Neither Plaintiffs' Complaint nor Plaintiffs' RICO Statement specifies which PISL bank account received the $7,000,000.00 in bond funds (i.e., PISL's Hong Kong bank account, PISL's Washington State account, or some other PISL account). *Compare* PL.'s Compl. at p. 12, ¶ 123, *with* Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b.

5. PSI Transfers $20,400,000.00 to PASL's Hong Kong Account.

On or about November 3, 2010, PSI transferred approximately $20,400,000.00 to PASL's Hang Seng Bank account in Hong Kong. Pl.'s Compl. at p. 12, ¶ 124; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.

6. PASL Transfers $4,000,000.00 to SSG Capital Partners' Hong Kong Account.

On November 12, 2010, PASL transferred $4,000,000.00 of the $20,400,000.00 worth of bond funds in its Hang Seng Bank account in Hong Kong to SSG Capital Partners' DBS Bank account in Hong Kong. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Kulkarni Decl. at p. 7, ¶ 37; Pl.'s RICO Case Statement at p. 3.

7. PASL Transfers $16,400,000.00 to VTC's Singapore Account.

On or about November 12, 2010 and November 23, 2010, PASL transferred $16,400,000.00 of the $20,400,000.00 in bond funds it originally received from PSI from its Hang Seng Bank account in Hong Kong to VTC's UBS AG Bank account in Singapore. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Kulkarni Decl. at p. 7, ¶ 38; Pl.'s RICO Case Statement at p. 3.

8. PISL Transfers $2,500,000.00 to PSI's Pittsburgh Account.

On or about May 27, 2011 and June 15, 2011, PISL transferred $2,500,000.00 of the $7,000,000.00 in bond funds it originally received from PSI back again to PSI's PNC Bank account in Pittsburgh. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.

9. PSI's Transfers $2,500,000.00 to PSAL's Hong Kong Account.

PSI ultimately transferred $2,500,000.00 in bond funds from its PNC Bank account in Pittsburgh to PSAL's Hang Seng Bank account in Hong Kong. Pandyar Decl. at p. 3, ¶ 12; Pl.'s

Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3. This wire transfer was initially thwarted, however, by an investigation by PNC Bank in Pittsburgh. [6]

### i. *PSI Initially Fails to Transfer $2,500,000.00.*

On May 25, 2011, PSI tried to wire $2,500,000.00 in bond funds from its PNC Bank account in Pittsburgh to PSAL's Hang Sen Bank account in Hong Kong at Goel's request. Pandyar Decl. at p. 2, ¶ 7. On May 27, 2011, Pandyar informed Goel that the transfer failed because it was under investigation by PNC Bank. Pandyar Decl. at p. 3, ¶ 10.

### ii. *PSI Transfers $1,000,000.00 to PSAL's Hong Kong Account.*

That same day, Pandyar successfully executed a $1,000,000.00 wire transfer of bond funds from PSI's PNC Bank account in Pittsburgh to PSAL's Hang Seng Bank account in Hong Kong. Pandyar Decl. at p. 3, ¶ 10.

### iii. *PSI Transfers $1,500,000.00 to PSAL's Hong Kong Account.*

On June 15, 2011, Pandyar informed Goel by email that he successfully wired an additional $1,500,000.00 from PSI's PNC Bank account in Pittsburgh to PSAL's Hang Seng Bank account in Hong Kong. Pandyar Decl. at p. 3, ¶ 11.

### 10. PSAL Transfers $2,500,000.00 to VTC's Account.

On or about June 17, 2011, PSAL transferred $2,500,000.00 in its Hang Seng Bank account in Hong Kong that it had just received from PSI to VTC's UBS AG Bank account in Singapore.

---

[6] Plaintiffs' RICO Statement and the Kulkarni Declaration state that the transfers occurred on May 28, 2011 and June 16, 2011, while the Pandyar Declaration states that the transfers occurred on May 27, 2011 and June 15, 2011. Given Pandyar's intimate knowledge of PISL and PSI's daily operations, the Court will defer to his dates. *Compare* Pl.'s RICO Case Statement at p. 3, *and* Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b, *and* Kulkarni Decl. at p. 6, ¶ 30, *with* Pandyar Decl. at pp. 2–3, ¶¶ 7–10.

Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Kulkarni Decl. at pp. 6–7, ¶¶ 30, 38; Pl.'s RICO Case Statement at p. 3.

11. <u>PSAL Transfers $10,000.00 to VTC's Account.</u>

On or about January 23, 2013, PASL wired $10,000.00 from its Hang Seng Bank account in Hong Kong to VTC's UBS AG Bank account in Singapore. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.

12. <u>PASL Withdraws $28,000.00.</u>

On or about October 9, 2014, PASL withdrew $28,000.00 from its Hang Seng Bank account in Hong Kong. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. J at p. 5, ¶ b; Pl.'s RICO Case Statement at p. 3.

*C. The Aftermath*

During a series of emails exchanged on January 16 and 17, 2012, Pandyar confirmed to Narayanan that of the original $35,000,000.00 in bond funds that were distributed, $4,000,000.00 were wired to SSG Capital Partners, $18,900,000.00 were sent to VTC, and the remainder were sent to other entities or used as PISL's working capital. Kulkarni Decl. at pp. 6–7, ¶¶ 33–36. The $4,000,000.00 in bond funds received by SSG Capital Partners and the $18,900,000.00 in bond funds received by VTC were listed as accounts receivable on PSI's books. Kulkarni Decl. at p. 7, ¶ 39.

Defendants allegedly disguised their racketeering conspiracy in several ways. Pl.'s Compl. at pp. 13–14, ¶¶ 131–41. They used MOUs and related addenda to create the appearance that SSG Capital Partners, VTC, and PISL restructured PISL bonds, when in fact they were stealing and laundering them. Kulkarni Decl. at p. 8, ¶ 40. They tried to hide their scheme by creating bogus accounts receivable in PSI's books, and in doing so mischaracterized the wire transfers as loans

from PSI to SSG Capital Partners, SSG Hong Kong, and VTC. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at pp. 3, 6, ¶¶ 2, 6; Pl.'s RICO Case Statement at p. 2. They also created PSAL to serve as a sham pass-through entity for laundering the stolen bond funds. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2. On or about October 27, 2016, Kyko sent SSG Capital Partners, SSG Hong Kong, VTC, and Maheshwari demand letters requesting payments of amounts owed according to PSI's books and records. Defendants denied that any amounts were owed. Plaintiffs uncovered Defendants' alleged illicit conduct in November 2016 and sued. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 3, ¶ 2; Pl.'s RICO Case Statement at p. 2.

## III.    Procedural History

Before this action began, prior civil and bankruptcy litigation involving both parties took place in Washington State. A federal criminal indictment against one of SSG Defendants—Madhavi—was also issued in the Western District of Washington. Those other matters provide some perspective on this case.

### A. Civil Litigation in Washington State and Hong Kong

The parties previously litigated fraud factoring allegations in the Superior Court for King County, Washington, as well as in the United States Bankruptcy and District Courts for the Western District of Washington.[7] Pl.'s Compl. at p. 2, ¶ 10. The parties also litigated letters of

---

[7] A factoring agreement is a financial transaction where a business sells its accounts receivable—the balance of money due to a firm for goods or services delivered or used but not yet paid for—to a third party at a discounted price. Adam Barone, *Factor*, INVESTOPEDIA (Apr. 14, 2019), https://www.investopedia.com/terms/f/factor.asp; Will Kenton, *Accounts Receivable (AR)*, INVESTOPEDIA (Oct. 4, 2019), https://www.investopedia.com/terms/a/accountsreceivable.asp; *see also Factor*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("4. Someone who buys accounts receivable at a discount <the company sold its receivables to a factor at only 5% of their stated value[>]."); *Factoring*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The buying of accounts

request issued by the United States District Court for the Western District of Washington in Hong Kong.

### 1. The Unconsolidated Washington Federal District Court Case

On June 17, 2013, KGI and KGG (collectively, as in this case, "Kyko") filed a complaint in the United States District Court for the Western District of Washington, alleging a fraud factoring scheme against PISL; Prithvi Catalytic, Inc. ("PCI"); PSI; Prithvi, LLC; Inalytix, Inc. ("Inalytix"); International Business Solutions, Inc. ("IBS"); Avani Investments, Inc. ("Avani"); Ananya Capital Inc. ("Ananya"); Madhavi; Jayaraman;[8] Pandyar; Jane Doe Pandyar (Pandyar's wife); Srinivas Sista ("Srinivas"); Lalita Sista ("Lalita"—Srinivas' wife);[9] DCGS, Inc. ("DCGS"); EPP, Inc. ("EPP"); Financial Oxygen, Inc. ("FOI"); Huawei Latin American Solutions, Inc. ("HLAS"); and L3C, Inc. ("L3C"). Compl. at pp. 1–2, Kyko Global, Inc. v. Prithvi Info. Solutions Ltd. (W.D. Wash. June 17, 2013) (Case No. 2:13-cv-01034-MJP). This will be referred to as the "unconsolidated Washington federal district court case."

The eight-count complaint specifically alleged fraud (Count I), negligent or intentional misrepresentation (Count II), conversion (Count III), breach of guarantees (Count IV), temporary and preliminary injunctive relief (Count V), civil RICO—wire and mail fraud (Count VI), civil RICO—financial institution fraud (Count VII), and unjust enrichment (Count VIII). *Id.* at pp. 19–26, 57–103. The court later granted partial summary judgment in favor of Jayaraman and dismissed both Pandyar and his wife. Order Granting Part Defendant Anandhan Jayaraman's

---

receivable at a discount. The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable.").

[8] Jayaraman's name was spelled "Jagaraman" in that complaint.

[9] At that time, Lalita Sista was identified as John Doe Sista.

Motion for Summary Judgment at p. 1, Kyko Global, Inc. v. Prithvi Information Solutions Ltd. (W.D. Wash. June 4, 2014) (Case No. 2:13-cv-1034-MJP); Stipulated Judgment of Dismissal of Guru Pandyar and Jane Doe Pandyar Pursuant to Fed. R. Civ. P. 41(a)(2) at p. 1, Kyko Global, Inc. v. Prithvi Info. Solutions Ltd. (W.D. Wash. Nov. 5, 2014) (Case No. 2:13-cv-1034-MJP). Following a bench trial, the district court entered judgment against PISL; Prithvi, LLC; PCI; PSI; Inalytix; Avani; Ananya; Madhavi; DCGS; EPP; FOI; HLAS; and L3C in the amount of $17,568,854.00. Judgment in a Civil Case at p. 1, Kyko Global, Inc. v. Prithvi Info. Solutions Ltd. (W.D. Wash. September 6, 2013) (Case No. 2:13-cv-01034-MJP).

## 2. The Washington Superior Court and Federal Bankruptcy Court Cases

On December 6, 2013, Kyko filed a Notice of Filing of Foreign Judgment against PISL and other defendants in the Superior Court for King County, Washington. Notice of Foreign Judgment at p. 1, Kyko Global Inc. v. Prithvi Information Solutions Ltd. (Sup. Ct. King Cnty., Wash., December 6, 2013) (Case No. 13-2-41165-2-SEA). This will be referred to as the "Washington Superior Court case." On June 17, 2014, Srinivas and Lalita filed for Chapter 7 bankruptcy. Petition at p. 1, In Re Sistas, (W.D. Wash. June 17, 2014) (Case No. 14-14670). On July 30, 2014, Kyko filed an Adversary Complaint to the Sistas' Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Washington against PISL, PSI, and other entities not named in this action. Adversary Complaint at p. 1, In re Sista (W.D. Wash. July 30, 2014) (Case No. 14-01316). This will be referred to as the "adversary Washington federal bankruptcy court case." The adversary Washington federal bankruptcy court case was later consolidated with the Washington federal district court case. Order Granting Plaintiffs' Motion for Withdrawal of Reference at pp. 1–2, Kyko Global Inc. v. Srinivas Sista (W.D. Wash. Feb. 9,

2015) (Case No. 2:18-13-cv-01034). From that point, they will be referred to collectively as the "consolidated Washington federal district court case."

### 3. The Consolidated Washington Federal District Court Case

On September 16, 2015, Plaintiffs amended their complaint in the consolidated Washington federal district court case to assert the same six counts as before. First Amend. Compl. at pp. 1–26, ¶¶ 1–103, Kyko Global, Inc. v. Prithvi Info. Solutions, Ltd. (W.D. Wash. Sept. 16, 2015) (Case No. 2:13-cv-01034). The only distinction between the original complaint in the unconsolidated Washington federal district court case and the first amended complaint in the consolidated Washington federal district court case was that the latter clarified that PISL is an Indian corporation, not a Pennsylvania corporation. *Id.* at p. 2 & n.3.

On February 8, 2016, the King County Superior Court appointed Kyko as collection agent for receivables owed to PSI, its subsidiaries, and its affiliates. As a result of the litigation before the King County Superior Court, Kyko is now a controlling shareholder of PSI. Pl.'s Compl. at p. 2, ¶ 4; Order Permitting Kyko Global Inc. and Kyko Global GmbH to Act as Collection Agent for Prithvi Solutions Inc. at pp. 1–2, Kyko Global Inc. v. Prithvi Information Solutions Ltd. (Sup. Ct. King Cnty., Wash., Feb. 8, 2016) (Case No. 13-2-41165-2-SEA). From May 31, 2016 to June 1, 2016, the district court conducted a bench trial. On June 30, 2016, the district court entered final civil judgment in favor of Kyko's first claim for fraud, second claim for negligent misrepresentation, and third claim for conversion against Madhavi; Srinivas; Lalita; PISL; Ananya; Avani; DCGS; EPP; FOI; HLAS; IBS; Prithvi, LLC; PISI; and Inalytix in the amount of $33,579,660.00. Civil Judgment at pp. 1–3, Kyko Global, Inc. v. Prithvi Info. Solutions, Ltd. (W.D. Wash., June 30, 2016) (Case No. 2:13-cv-01034). The district court also entered final civil judgment in favor of Kyko's fourth claim for civil RICO against Madhavi; Srinivas; Lalita; PISL;

Ananya; Avani; DCGS; EPP; FOI; HLAS; IBS; L3C; Prithvi, LLC; PISI; and Inalytix for treble damages in the amount of $100,738,980.00. *Id.* at p. 4. The allegations as to the fraud factoring scheme litigated in the consolidated Washington federal district court case and related judgments garnished in the King County Superior Court case are unrelated to the racketeering allegations here. Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I at p. 9, ¶ 20; Pl.'s RICO Case Statement at pp. 4, 7 ("No civil judgments have been entered regarding Defendants' conduct at issue in this case.").

### 4. The Civil Case in Hong Kong

On February 16, 2017, the United States District Court for the Western District of Washington issued a Letter of Request ("LOR") to the Hong Kong Special Administrative Region. The LOR described the litigation in Washington State and noted that Kyko was appointed as collection agent for PSI, thereby entitling it to obtain funds to satisfy the judgment in the consolidated Washington federal district court case. The LOR requested that the High Court of the Hong Kong Special Administrative Region compel Maheshwari, Vourloumis, and Him to appear as witnesses in their personal capacities in Hong Kong to provide deposition testimony regarding the receivables of SSG Capital Partners and VTC. Request for Judicial Assistance to the High Court of the Hong Kong Special Administrative Region, Court of First Instance at pp. 1–10, Kyko Global, Inc. v. Prithvi Info. Solutions, Ltd. (W.D. Wash., Feb. 16, 2017) (Case No. 2:13-cv-01034). On May 10, 2017, Kyko filed an originating summons as applicants in the High Court of the Hong Kong Special Administrative Region's Court of First Instance. On January 30, 2018, the Western District of Washington issued a renewed LOR. Request for Judicial Assistance to the High Court of the Hong Kong Special Administrative Region, Court of First Instance at pp. 1–10,

Kyko Global, Inc. v. Prithvi Info. Solutions, Ltd. (W.D. Wash., Jan. 30, 2018) (Case No. 2:13-cv-01034).

On July 24, 2018, Master Reuden Lai Tat-Cheung issued an ex parte examination order requiring Maheshwari, Vourloumis, and Him to give oral testimony in response to the LORs. On October 31, 2018, respondents Maheshwari, Vourloumis, and Him applied for the examination order to be set aside. They also applied for the originating summons to be struck, arguing that the High Court of the Hong Kong Special Administrative Region did not have jurisdiction, that the Western District of Washington did not have jurisdiction, that the order contravened the Protection of Trading Interests Ordinance of 1980, Cap. 471, §§ 6, 8 (H.K.), that the order was an abuse of process, and that there was a material non-disclosure in Kyko's application. *Miscellaneous Proceedings No 1082 of 2017*, [2019] HKCFI 1–16. On July 16, 2019, Madam Recorder Yvonne Cheng SC granted respondents request, struck the originating summons, and set the examination order aside. *Id.* at 90.

### B. Criminal Litigation in Washington State

On December 13, 2017, a grand jury in the Western District of Washington issued a twenty-one-count indictment against Madhavi, Satish, Srinivas, and Pandyar for crimes arising from the factoring fraud scheme. Pl.'s Compl. at p. 2, ¶ 10; Indictment at p. 1, United States v. Vuppalapati (W.D. Wash. Dec. 13, 2017) (Case No. 2:17-cr-00317).[10] They were specifically indicted for wire fraud, willfully failing to pay over employment taxes, and a money laundering conspiracy. Indictment at pp. 4–15, ¶¶ 19–58, United States v. Vuppalapati (W.D. Wash. Dec. 13, 2017) (Case

---

[10] Another indicted defendant not referenced in this case whatsoever was Gyry Orasad Rai Oabdtar. Indictment at p. 2, ¶¶ 1–5, United States v. Vuppalapati (W.D. Wash. Dec. 13, 2017) (Case No. 2:17-cr-00317).

No. 2:17-cr-00317). On February 19, 2019, the district court accepted Pandyar's guilty plea as to counts fifteen and twenty-one of the indictment. Acceptance of Plea of Guilty, Adjudication of Guilt and Notice of Sentencing at p. 1, United States v. Vuppalapati (W.D. Wash. Feb. 19, 2019) (Case No. 2:17-cr-00317). To the best of the Court's knowledge, none of the other defendants are in custody. It is unclear whether the criminal case in the Western District of Washington is relevant to civil allegations asserted in this case.[11]

C. *Litigation in this Forum*

On September 26, 2018, Plaintiffs filed their ten-count Complaint and Jury Demand in this Court. Pl.'s Compl. at 1. They claimed breach of fiduciary duty, aiding and abetting breach of fiduciary duty, concert of action, conversion, conspiracy, and racketeering against all Defendants. Pl.'s Compl. at pp. 15–29, ¶¶ 148–288. They claimed breach of contract, promissory estoppel, and unjust enrichment against SSG Capital Partners, SSG Hong Kong, and VTC. Pl.'s Compl. at pp. 29–32, ¶¶ 289–318. Finally, they claimed breach of contract against PISL. Pl.'s Compl. at pp. 32, ¶¶ 318–23. For the purpose of jurisdiction, Plaintiffs alleged that PISL, VTC, SSG Capital Partners, SSG Hong Kong, PASL, Jayaraman, Maheshwari, Him, Noor, Goel, and Vourloumis formed a criminal conspiracy involving fraudulent activities that took place in Pittsburgh. Pl.'s Compl. at pp. 4–9, ¶¶ 42–43, 51, 54–55, 59–60, 64–65, 69–70, 73–74, 77–78, 81–82, 85–86, 89–90. In the alternative that there was no criminal conspiracy, Plaintiffs alleged that PISL, VTC, SSG Capital Partners, SSG Hong Kong, PASL, Jayaraman, Maheshwari, Him, Goel, Noor, and Vourloumis nevertheless engaged in fraudulent loan transactions putting them within the jurisdiction of this Court. Pl.'s Compl. at pp. 4–9, ¶¶ 44, 48–49, 53, 56–58, 61–63, 66–68, 71–72,

---

[11] Plaintiffs' RICO Case Statement filed on September 27, 2018 states that there have been no criminal convictions for violations of any predicate act to the RICO statute. Pl.'s RICO Case Statement at p. 3.

75–76, 79–80, 83–84, 87–88, 91–93. Plaintiffs asserted that this Court has personal jurisdiction and subject matter jurisdiction over their claims. Pl.'s Compl. at p. 9, ¶¶ 94–95.

On January 15, 2019, SSG Defendants filed a motion to dismiss. SSG Def.'s Mot. to Dismiss at p. 1. On February 28, 2019, Plaintiffs filed their response. Plaintiffs' Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 39) ("Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss") at p. 1. On March 12, 2019, Plaintiffs filed their reply. SSG Defendants' Reply in Support of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 43) ("SSG Def.'s Reply to Pl.'s Opp. to SSG Def.'s Mot. to Dismiss") at p. 1.

On November 11, 2019, Jayaraman filed a motion to dismiss. Jayaraman's Mot. to Dismiss at p. 1. On December 16, 2019, Plaintiffs filed their response. Plaintiffs' Brief in Opposition to Defendant Anandhan Jayaraman's Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 110) ("Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss") at p. 1. Jayaraman filed his reply on December 23, 2019. Reply Brief in Support of Motion to Dismiss by Anandhan Jayaraman (ECF No. 112) ("Jayaraman's Reply") at p. 1. On December 29, 2019, Plaintiffs filed a motion to strike Jayaraman's reply. Pl.'s Mot. to Strike Jayaraman's Reply at p. 1. Jayaraman's response was filed on January 12, 2020. Response in Opposition to Plaintiff's [sic] Motion to Strike Jayaraman Reply Brief in Support of Motion to Dismiss (ECF No. 118) ("Jayaraman's Br. in Opp. to Pl.'s Mot. to Strike Jayaraman's Reply") at p. 1. On January 15, 2020, Jayaraman filed a motion to withdraw admissions. Jayaraman's Mot. to Withdraw Admissions at p. 1. Plaintiffs filed a response on January 29, 2020. Plaintiffs' Response to Defendant Anandhan Jayaraman's Motion to Withdraw Admissions (ECF No. 120) ("Pl.'s Br. in Opp. to Jayaraman's Mot. to Withdraw Admissions") at p. 1.

In December 2019, the parties supplemented their filings and concluded jurisdictional discovery.  SSG Def.'s Supp. Br. in Supp. of Pl.'s Mot. to Dismiss at p. 1; Plaintiffs' Supplemental Brief in Supposition to SSG Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) (ECF No. 109) ("Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss") at p. 1; Order at pp. 1–2, *Kyko Global, Inc. v. Prithvi Info. Solutions Ltd.* (W.D. Pa. Oct. 22, 2019) (Case No. 2:18-cv-1290-WSS).  The issues presented by all of the outstanding motions are now ripe for determination.

## STANDARD OF REVIEW

There are three relevant standards of review at issue in Defendants' motions to dismiss: Federal Rule of Civil Procedure ("Rule") 12, subsections (b)(1), (b)(2), and (b)(6).

### I.  Federal Rule 12(b)(1)

Under Rule 12(b)(1), a court must grant a motion to dismiss if there is a lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).  A plaintiff bears the burden of persuasion that federal jurisdiction is present.  *Saint Vincent Health Ctr. v. Shalala*, 937 F. Supp. 496, 501 (W.D. Pa. 1995) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).  The threshold to survive a motion to dismiss under Rule 12(b)(1) is lower than under Rule 12(b)(6). *Lunderstadt v. Colafella*, 886 F.2d 66, 70 (3d Cir. 1989).  This is because dismissal for lack of jurisdiction cannot be predicated on the mere probability that a plaintiff's legal theories are false; a court will only dismiss for a lack of jurisdiction if a plaintiff's legal theories 1) are solely proffered to obtain federal jurisdiction but otherwise are immaterial, or 2) are "insubstantial on their face."  *Growth Horizons, Inc. v. Del. Cnty., Pa.*, 983 F.2d 1277, 1280 (3d Cir. 1993) (quoting *Bell v. Hood*, 327 U.S. 678, 773, 776 (1946)).

## II.     Federal Rule 12(b)(2)

Rule 12(b)(2) requires a court to dismiss a case when a court lacks personal jurisdiction over a defendant. FED. R. CIV. P. 12(b)(2). A court must analyze jurisdictional contacts on a claim-by-claim basis. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 104 (3d Cir. 2004). A defendant bears the initial burden of raising personal jurisdiction as a defense. *See* FED. R. CIV. P. 12(h)(1). When a defendant raises that defense, the burden shifts to a plaintiff to establish personal jurisdiction. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). If there is no evidentiary hearing, a plaintiff must make a prima facie case by furnishing facts that establish with reasonable particularity that personal jurisdiction exists. *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citing *Gehling v. St. George's Sch. of Med., Ltd.*, 773 F.2d 539, 542 (3d Cir. 1985)). If a court holds an evidentiary hearing, the standard of proof elevates to a preponderance of the evidence standard. *LaRose v. Sponco Mfg., Inc.*, 712 F. Supp. 455, 458–59 (D.N.J. 1989) (citing *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)); *Hufnagel v. Ciamacco*, 281 F.R.D. 238, 244 (W.D. Pa. 2012) (citing cases). If a plaintiff meets his burden, then the burden shifts back to a defendant to present a compelling case that personal jurisdiction is unreasonable. *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 142 & n.1 (3d Cir. 1992) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

A plaintiff's case cannot merely rely on the pleadings but must be supported by sworn affidavits or other competent evidence. *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 & n.9 (3d Cir. 1984). All allegations made by a plaintiff are accepted as true and all disputed facts are construed in a plaintiff's favor. *Carteret*, 954 F.2d at 142 & n.1. To that end, any conflicts between the evidence submitted by a plaintiff and a defendant are construed in a plaintiff's favor. *In re Enter. Rent-A-Car Wage & Hour Empl.'t Practices Litig.*, 735 F. Supp. 2d

277, 307 (W.D. Pa. 2010). If a plaintiff initially fails to meet his burden but makes factual allegations suggesting that the requisite contacts exist, a court can order jurisdictional discovery to ameliorate the jurisdictional inquiry. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).

### III.     Federal Rule 12(b)(6)

A motion to dismiss filed pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); *see also DiCarlo v. St. Marcy Hosp.*, 530 F.3d 255, 262–63 (3d Cir. 2008). Although this Court must accept the allegations in the Complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement, but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, a complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts give rise to a plausible inference, that inference alone will not

entitle a plaintiff to relief. *Id.* at 682. A complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

Generally, a court may not consider extraneous documents when reviewing a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). If matters outside the pleadings are presented to, and not excluded by, the court, a motion to dismiss must be converted to a motion for summary judgment. *See* FED. R. CIV. P. 12(d). When reviewing the sufficiency of a complaint, however, a court may consider attachments to it without converting the motion into one for summary judgment as long as they are integral to the allegations in the complaint and are indisputably authentic. *See In re Burlington*, 114 F.3d at 1426 (holding that a court may consider a "document integral to or explicitly relied upon in the complaint." (citations omitted)); *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994) (same); *Fallon v. Mercy Catholic Med. Ctr. of Se. Penn.*, 877 F.3d 487, 493 (3d Cir. 2017) (same); FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *see also Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (holding that a court may consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

## ANALYSIS

Pending here are three discovery motions and two motions to dismiss. Jayaraman moves to withdraw admissions made relating to issues of personal jurisdiction. SSG Defendants move to strike Plaintiffs' jurisdictional discovery. Plaintiffs move to strike Jayaraman's reply and jurisdictional discovery submitted in the form of affidavits in support of his motion to dismiss. More substantively, the parties dispute subject matter jurisdiction under Rule 12(b)(1), personal

jurisdiction under Rule 12(b)(2), venue under Rule 12(b)(3), and the sufficiency of the allegations under Rule 12(b)(6). For the reasons given below, the Court will deny SSG Defendants' motion to strike Plaintiffs' jurisdictional discovery. The Court will grant Plaintiffs' motion to strike Jayaraman's reply as to jurisdictional discovery in support of his motion to dismiss. It will deny Jayaraman's motion to withdraw admissions. The Court will decline to strike SSG Defendants' and Jayaraman's reply briefs as to arguments addressing forum non conveniens. Finally, the Court will deny both SSG Defendants' and Jayaraman's motions to dismiss for lack of subject matter jurisdiction, personal jurisdiction, forum non conveniens, and failure to state a claim.

## I.     Motions Raising Discovery-Related Issues

The Court may order jurisdictional discovery to assist its resolution of motions to dismiss. *Toys "R" Us, Inc.*, 318 F.3d at 456. The Court having done so here, SSG Defendants now dispute the propriety of two affidavits attached to Plaintiffs' supplemental brief in opposition to SSG Defendants' motion to dismiss: Exhibit F and Exhibit G. Amorose Decl. at p. 1–4; Pandyar Decl. at p. 1. Exhibit F is the Amorose Declaration. Amorose Decl. at p. 1. Exhibit G is the Pandyar Declaration. Pandyar Decl. at 1. Plaintiffs, on the other hand, dispute the propriety of the affidavits attached to Jayaraman's reply brief in support of his motion to dismiss. Because these discovery issues bear on the issues of subject matter jurisdiction and personal jurisdiction, the Court will consider them first.

### A.  SSG Defendants' Objections to Plaintiffs' Supplemental Discovery

SSG Defendants raise four objections to Exhibits F and G to Plaintiffs' supplemental brief: 1) they were filed after the Court-ordered deadline, 2) the Amorose Declaration is not based on personal knowledge, 3) the Pandyar Declaration is inconsistent with Plaintiffs' Complaint, and 4)

the Pandyar Declaration makes improper legal arguments. SSG Def.'s Mot. to Strike Aff. at pp. 1–4. The Court will address each objection in turn.

1. Timeliness

As to the first objection, the Court holds that the declarations were timely submitted. The Court's order of October 22, 2019 stated that "jurisdictional discovery shall be completed on or before 12/2/19 and that jurisdictional supplemental briefs shall be filed on or before 12/16/19." Order at p. 2, Kyko Global, Inc. v. Prithvi Info. Solutions Ltd. (W.D. Pa. Oct. 22, 2019) (Case No. 2:18-cv-1290-WSS). Plaintiffs' objection is misguided. The jurisdictional discovery deadline is the last date when discovery between the parties can take place, not when materials can be submitted to the Court. Moreover, declarations in support of a filing are not discovery. Indeed, declarations are routinely submitted in support of motions and other applications. That is what happened here. There is no merit to the contention that the declarations at issue were untimely.

2. Personal Knowledge

As to the second objection, the Court holds that the Amorose Declaration is based on personal knowledge. SSG Defendants challenge Paragraph 12, which states that "to the extent that these loans are properly due and owing, they would have been created by SSG Capital and Value Team Corporation contacting PSI in Pittsburgh to negotiate and finalize the loans." Amorose Decl. at p. 3, ¶ 12. According to SSG Defendants, the conditional phraseology of this quote automatically renders it speculative and conjectural. SSG Def.'s Mot. to Strike Aff. at p. 2, ¶¶ 3–4. The Court disagrees. A condition is not necessarily a conjecture. Taking the language in the context of Plaintiffs' alternative breach of contract and quasi-contract claims, the Court holds that the declaration is within Amorose's personal knowledge given his familiarity with PSI operations.

### 3. Inconsistency with the Complaint

As to the third objection, the Court holds that the Pandyar Declaration is not materially inconsistent with the Complaint. Paragraph 98 of the Complaint states that "[i]n February, 2007, PISL issued a Bond Offering Circular for $50,000,000 USD Zero Coupon Convertible Bonds due February 2012 that were convertible to shares of PISL ("Bonds")." Pl.'s Compl. at p. 10, ¶ 98. Paragraph 10 of the Pandyar Declaration states:

> On May 27, 2011, I informed Mr. Goel that the $2,500,000 wire transfer did not go through because it was put under investigation at PSI's PNC Bank. However, while the $2,500,000 wire transfer remained under investigation, on May 27, 2011, *I initiated a $1,000,000 wire transfer of PSI's Bonds Funds from PNC Bank to Hang Seng Bank.* As before, I provided Mr. Goel with an attachment known as a 'Customer Full Detail Wire Activity Report' which states that the wire transfer was initiated from PSI's PNC Bank and sent to Prithvi Asia.

Pandyar Decl. at p. 3, ¶ 10 (emphasis added). SSG Defendants assert that there is an inconsistency between the Complaint and the Pandyar Declaration about whether PISL or PSI issued the bonds, therefore, the declaration should be struck. SSG Def.'s Mot. to Strike Aff. at p. 3, ¶¶ 5–6. This objection is baseless.

The alleged tension between Paragraph 98 of the Complaint and Paragraph 10 of the Pandyar Declaration is resolved by Paragraph 101 of the Complaint—"Consistent with the Bond Offer Circular, PISL and PSI entered into an agreement wherein the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States." Pl.'s Compl. at p. 10, ¶ 101. PISL issued bond funds for PSI to conduct business in the United States, therefore, the bond funds can be fairly characterized as "belonging to PSI." There is no inconsistency between the Complaint and the Pandyar Declaration.

### 4. Improper Legal Argument

As to the fourth objection, the Court holds that the Pandyar Declaration does not make improper legal argument about documents in the record. Paragraph 7 of the Pandyar Declaration states,

> As reflected on SSG00007-SSG00008, Mr. Goel requested PSI to wire $2,500,000 of Bonds Funds from its PNC Pittsburgh Bank to Prithvi Solutions Asia Limited's ("Prithvi Asia") Hang Seng Bank located in Hong Kong. On May 25, 2011, I attached a confirmation of this wire transfer. The attachment referenced in my email is known as a 'Customer Full Detail Wire Activity Report' which states that the wire transfer was initiated from PSI's PNC Bank and sent to Prithvi Asia's Hang Seng Bank.

Pandyar Decl. at p. 2, ¶ 7. SSG Defendants characterize Paragraph 7 as improper legal argument that should be struck. Def.'s Mot. to Strike Aff. at pp. 3–4, ¶¶ 7–9. This argument is not persuasive. Paragraph 7 states that two documents evidence Goel's request for a wire transfer of $2,500,000.00 in bond funds from PSI's Pittsburgh bank account to PSAL's Hong Kong bank account. This is a statement of fact, not a conclusion of law. Nothing about this statement can be fairly characterized as misleading. Exhibit A to the Pandyar Declaration contains an email signifying that Madhavi's husband, Satish, instructed Pandyar to confirm the wire transfer for Goel. Pandyar Decl. Ex. A at p. 2. Although Exhibit A does not in-and-of-itself corroborate the notion that Goel requested a wire transfer from PSI, Plaintiffs point to deposition evidence, that, when cross-referenced with Paragraph 7, supports Pandyar's narrative. Plaintiffs' Response to SSG Defendants' Motion to Strike Affidavits (ECF No. 117) ("Pl.'s Response to SSG Def.'s Mot. to Strike") at p. 9.

For all of these reasons, SSG Defendants' motion to strike the affidavits submitted by Plaintiffs will be denied. The Court's personal jurisdiction analysis below will consider and

incorporate all jurisdictional discovery submitted by Plaintiffs thus far, including the Amorose and Pandyar declarations.

### B. *Jayaraman's Deemed Admissions*

Plaintiffs served requests for admissions upon Jayaraman, specifically seeking admissions to facts directly pertinent to Jayaraman's contacts with this forum. Jayaraman did not respond to the requests within the timeframe required by Rule 36. Only after the Court issued an entry of default and default judgment against him did Jayaraman retain counsel. Jayaraman's counsel entered his appearance on November 5, 2019. Jayaraman filed a motion to dismiss on November 11, 2019 that challenged the Court's exercise of personal jurisdiction and responded to Plaintiffs' requests for admissions. The facts that Plaintiffs sought in their requests for admissions were deemed admitted by the Court at this point in time, however, as Plaintiffs point out in their opposition brief. Jayaraman's reply filed on December 23, 2019 attached two affidavits contradicting the deemed admissions regarding jurisdictional facts. On January 15, 2020—over two months after Jayaraman's counsel entered his appearance in this case and weeks after the briefing deadlines on the motions to dismiss closed—Jayaraman filed a motion to withdraw admissions.

Rule 36(a) authorizes a party to serve on an opponent a request for admissions. FED. R. CIV. P. 36(a). A matter is deemed admitted unless it is denied within thirty days of being served. FED. R. CIV. P. 36(a)(3). Rule 36(b) provides that a matter is admitted and conclusively established unless the court permits the admission to be withdrawn. FED. R. CIV. P. 36(b). A court can permit withdrawal of an admission if 1) it promotes the presentation of the merits of the action, and 2) is not unduly prejudicial. FED. R. CIV. P. 36(b). A party who made an admission has the burden to show that withdrawal promotes presentation of the merits, while a party opposing a motion to

withdraw has the burden to show prejudice. *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 123 F.R.D. 97, 102 (D. Del. 1988).

A court's discretion to grant or deny a motion to withdraw admissions is very broad. *Kleckner v. Glover Trucking Corp.*, 103 F.R.D. 553, 557 (M.D. Pa. 1984) ("While the Rule establishes two prerequisites to *permitting* withdrawal of an admission, it says nothing about disallowing withdrawal of an admission. 'Because the language of the Rule is permissive, the Court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the Rule.'" (quoting *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983), *rev'd on other grounds by McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988))). Interest in substantial justice cannot counteract the restrictiveness of the rule. *See Brook Village N. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 72–73 (1st Cir. 1982).

Plaintiffs argue that Jayaraman's motion to withdraw his admission should be denied under Rule 36(b) and, on a related note, that the affidavits attached to his reply that are factually irreconcilable with the deemed admissions be struck. Pl.'s Mot. to Strike Jayaraman's Reply at p. 1; Pl.'s Br. in Opp. to Jayaraman's Mot. to Withdraw Admissions at p. 1. The Court will address each of Rule 36(b)'s prongs in turn.

1. Presentation of the Merits

Jayaraman contends in his motion that permitting withdrawal of his deemed admissions will promote the presentation of the merits because the record demonstrates that the admitted facts are contrary to the actual facts. *See* Jayaraman's Mot. to Withdraw Admissions at p. 5, ¶ 6 (citing *Fed. Dep. Ins. Corp. v. Prusia*, 18 F.3d 637 (8th Cir. 1994)). That contention is sufficient. The Court holds that Jayaraman meets his burden on this prong of the Rule 36(b) analysis.

## 2. Prejudice

Plaintiffs argue that the affidavits should be struck because allowing Jayaraman's admissions to be withdrawn would lead to severe prejudice. Pl.'s Mot. to Strike Jayaraman's Reply at p. 3, ¶ 11; Pl.'s Br. in Opp. to Jayaraman's Mot. to Withdraw Admissions at pp. 7–10. Prejudice "relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions." *Brook Village N. Assocs.*, 686 F.2d at 70. The Court holds that Plaintiffs have met their burden to show prejudice by demonstrating that they repeatedly relied upon Jayaraman's admissions up until Defendants' motions to dismiss were filed. *See* Pl.'s Br. in Opp. to Jayaraman's Mot. to Withdraw Admission at p. 9. Jayaraman's admissions affected their discovery strategy. Indeed, it was the reason why they opted to depose Cairns, Goel, and Maheshwari rather than Jayaraman—a critical tactical choice that cost time, money, and opportunity.[12] *See* Pl.'s Br. in Opp. to Jayaraman's Mot. to Withdraw Admissions at pp. 7–8. Jayaraman has failed to show good cause for why he did not timely respond to Plaintiffs' request for admissions in the first place. *See Gwynn v. City of Phila.*, 719 F.3d 295, 298 (3d Cir. 2013) ("Courts may consider other factors as well, such as whether the moving party can show good cause for the delay, *see Conlon v. United States*, 474 F.3d 616, 625 (9th Cir. 2007), but they are not required to do so, *see* FED. R. CIV. P. 36(b)."). Jayaraman was served with Plaintiffs' requests

---

[12] Specifically, Plaintiffs argue that in conducting their limited jurisdictional discovery, they used their three allotted depositions to focus on jurisdiction over SSG Defendants. They state that they did not notice a deposition of Jayaraman because facts underlying personal jurisdiction were established through the deemed admissions. Further, they credibly argue that Jayaraman's counsel led them to believe that he would file an answer, rather than a motion to dismiss. They believed that Jayaraman acknowledged that he was bound by his admissions and that it was unnecessary to focus on him in conducting jurisdictional discovery.

for admissions in September 2019, his counsel entered his appearance on November 5, 2019, and his motion to dismiss raising jurisdictional issues was filed on November 11, 2019. Despite the fact that his admissions loomed large over the arguments regarding dismissal, Jayaraman did not actually move to withdraw them until January 15, 2020.

The Court is persuaded that Plaintiffs relied on Jayaraman's admissions over the past three months and that they would be prejudiced if he were allowed to withdraw them. *See* Pl.'s Br. in Opp. to Jayaraman's Mot. to Withdraw Admissions at pp. 7–10. Additionally, Jayaraman failed to show good cause for his delay. Plaintiffs' met their burden to show prejudice under the second prong of Rule 36(b). The Court will deny Jayaraman's motion to withdraw admissions and grant Plaintiffs' motion to strike the contradictory affidavits attached to Jayaraman's reply brief.[13]

## II.     Subject Matter Jurisdiction

Federal Rule 12(b)(1) allows a federal court to dismiss a case for lack of subject matter jurisdiction. The parties dispute whether the Court can exercise subject matter jurisdiction here. Plaintiffs plead federal question jurisdiction over their claim under Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act of 1974, Pub. L. 91-452, 84 Stat. 922-3 (codified as amended at 18 U.S.C. §§ 1961–68). A civil RICO claim requires at least two predicate offenses committed within ten years of each other. 18 U.S.C. § 1961(5). Plaintiffs predicate their RICO claim on violations of three statutes: the National Stolen Property Act ("NSP") of 1934, Pub. L. 73-246, 48 Stat. 794 (codified as amended at 18 U.S.C. §§ 2311 et seq.), the International

---

[13] The practical effect of the Court's denial of Jayaraman's motion to withdraw admissions is that Jayaraman is deemed to have admitted facts that will submit him to the personal jurisdiction of this Court. This result is not unduly harsh. Indeed, it is well established that even summary judgment can be predicated on deemed admissions under Rule 36. At any rate, even if facts pertaining to personal jurisdiction were not deemed admitted, there are additional grounds upon which the Court can exercise personal jurisdiction over Jayaraman that will be discussed below. *See infra* Part III.

Travel Act ("ITA") of 1961, Pub. L. 87-63, 75 Stat. 129-2 (codified as amended at 18 U.S.C. § 1952), and the Money Laundering Control Act ("MLCA") of 1986, Pub. L. 99-570, 100 Stat. 3207 (codified as amended at 18 U.S.C. §§ 1956–57). Pl.'s Compl. at pp. 24–29, ¶¶ 231–88.[14] Plaintiffs also plead diversity jurisdiction and supplemental jurisdiction in the alternative over their nine state law claims.

Subject matter jurisdiction can be challenged on facial or factual grounds. A facial challenge contends that a plaintiff failed to properly plead subject matter jurisdiction. A factual challenge, on the other hand, attacks subject matter jurisdiction based on facts outside the pleadings. Whereas facial challenges presume the truthfulness of the allegations in a plaintiff's complaint, factual challenges do not. *Brock v. Thomas*, 782 F. Supp. 2d 133, 138 (E.D. Pa. 2011) (citing cases). SSG Defendants and Jayaraman assert facial challenges to the Court's subject matter jurisdiction over this matter under Rule 12(b)(1), therefore, the Court will presume the truthfulness of the allegations in the Complaint. For the reasons set forth below, SSG Defendants' and Jayaraman's motions to dismiss for a lack of subject matter jurisdiction will be denied. The Court holds that it can exercise diversity jurisdiction and federal question jurisdiction.[15]

---

[14] Plaintiffs specifically claim that SSG Defendants' violations of NSP Sections 2314–2315, ITA Section 1952, and MCLA Sections 1952, 1956, and 1957 constituted racketeering activities in violation of RICO Section 1962(c)–(d). Pl.'s Compl. at pp. 24–29, ¶¶ 244, 249–50, 256–57, 266, 268, 276–77, 280–81, 283; Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at p. 5.

[15] As Plaintiffs point out, SSG Defendants' and Jayaraman's arguments on subject matter jurisdiction track each other. *See* Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss at pp. 2–3 & n.6 ("Mr. Jayaraman's Motion to Dismiss is a 'me too' filing that tracks virtually lockstep with the SSG Defendants' Motion to Dismiss."). The Court's analysis of both sets of arguments is therefore collapsed.

*A. Diversity Jurisdiction*

Plaintiffs plead diversity jurisdiction over their claims. Pl.'s Compl. at p. 9, ¶ 94. SSG Defendants and Jayaraman respond that the requirements for diversity jurisdiction are not satisfied. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 18; Brief in Support of Motion to Dismiss on Behalf of Defendant Anandhan Jayaraman (ECF No. 104) ("Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss") at p. 16. For the reasons set forth below, the Court holds that the requirements for diversity jurisdiction are met.

When a citizen of a foreign state is a party, diversity jurisdiction can be based only on Section 1332(a)(2) or Section 1332(a)(3). *Marks & Sokolov, LLC v. Mireskandari*, No. 2:13-cv-03152, 2016 WL 2771785, at **1, 2 (E.D. Pa. May 10, 2016). Complete diversity (also known as maximum diversity) exists when no plaintiff is a citizen of the same state as any defendant, while partial diversity (also known as minimum diversity) exists when at least one plaintiff is diverse to every defendant. *Bautista Cayman Asset Co. v. The Ferrer Grp., Inc.*, Civ. No. 15-2277 (GAG), 2016 WL 1642630, at **1, 2 (D. P.R. Apr. 25, 2016). In *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 498 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit held that Section 1332(a)(2) requires complete diversity but Section 1332(a)(3) only requires partial diversity. *Id.* at 498–99.

The Court holds that it can exercise diversity jurisdiction under 28 U.S.C. § 1332(a). Plaintiffs are seeking $35,000,000.00 along with interest, attorneys' fees, and costs—a figure well above the minimum amount-in-controversy requirement. *See* 28 U.S.C. § 1332(a); Pl.'s Compl. at p. 32. Plaintiffs KGI, KGG, and PSI are incorporated in, and citizens of, Canada, the Bahamas, and Delaware respectively. *See* Pl.'s Compl. at pp. 1–2, ¶¶ 1–3. SSG Defendant PISL is a citizen of Pennsylvania and India under 28 U.S.C. § 1332(c)(1). *See Grunblatt v. UnumProvident Corp.*,

270 F. Supp. 2d 347, 351 (E.D.N.Y. 2003) ("However, the principal place of business prong does not replace the citizenship of the state of incorporation; it merely adds another state of citizenship—either of which could destroy diversity."). None of the other Defendants are citizens of Canada, the Bahamas, or Delaware. *See* Pl.'s Compl. at pp. 2–4, ¶¶ 4–38. There are aliens on both sides of the controversy, therefore, Section 1332(a)(3) controls. *Cf. Dresser*, 106 F.3d at 498 ("As the Seventh Circuit noted, when citizens of states are on both sides of the litigation and are completely diverse, the presence of aliens on one or both sides of the controversy 'fits section 1332(a)(3) to a t.'" (quoting *Allendale Mut. Ins. Co. v. Bull Data Sys., Inc.*, 10 F.3d 425, 428 (7th Cir. 1993))).

The parties are diverse under Section 1332(a)(3). The presence of aliens on both sides of this controversy does not destroy federal jurisdiction. *See id.* at 499. Even if Section 1332(a)(2) controlled, diversity jurisdiction would still survive because there is complete diversity between the parties. The Court therefore has a proper and independent basis to review Plaintiffs' claims even if their RICO claim would fail and/or supplemental jurisdiction would be unavailable under 28 U.S.C. § 1367. SSG Defendants' and Jayaraman's motions to dismiss for a lack of subject matter jurisdiction as to Plaintiffs' state law claims under Rule 12(b)(1) will be denied. *See* FED. R. CIV. P. 12(b)(1).[16]

### B. Federal Question Jurisdiction

Plaintiffs plead federal question subject matter jurisdiction through their RICO claim. Pl.'s Compl. at p. 9, ¶ 95. Because there is subject matter jurisdiction through diversity jurisdiction,

---

[16] Because the Court agrees with Plaintiffs that the requirements for diversity subject matter jurisdiction are satisfied, Plaintiffs need not amend their Complaint to remove KGG and KGI under Rule 15 as they suggested they might do in their brief in the alternative that the Court disagreed. *See* Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss at pp. 17–18.

there is initially no independent need to determine whether this Court has federal question subject matter jurisdiction under the RICO statute. SSG Defendants and Jayaraman contend, however, that Plaintiffs' RICO claim is implausible and should be dismissed under Rule 12(b)(6). In determining whether Plaintiffs' RICO claims can proceed on a substantive basis under Rule 12(b)(6), the Court will also dispose of whether the RICO statute serves as an alternative or additional basis for subject matter jurisdiction. In other words, if Plaintiffs' RICO claim may proceed on its merits, it will also confer federal question jurisdiction.

### 1. Overview of Plaintiffs' RICO Claim

Plaintiffs allege that SSG Defendants violated Section 1962(c) of the RICO statute. "RICO is a remedial statute which is to be liberally construed to effectuate its purposes." *United States v. Mazzio*, 501 F. Supp. 340, 342 (E.D. Pa. 1980) (citing *United States v. Forsythe*, 560 F.2d 1127, 1135–36 (3d Cir. 1977); and then citing *United States v. Provenzano*, 620 F.2d 985, 993 (3d Cir. 1980)). Section 1962(c) states that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). This provision was specifically enacted to govern only those instances where RICO defendants victimize an innocent or passive corporation and either drain it of its own money or use it as a passive tool to take money from third parties. *Moffatt Enter., Inc. v. Borden, Inc.*, 73 F. Supp. 143, 149 (W.D. Pa. 1990) (citing *Pro–Tech., Inc. v. W. Co. of N. Am.*, 824 F.2d 1349, 1369 (3d Cir. 1987)).

A plaintiff has the burden to plead four elements when claiming a violation of Section 1962(c): 1) the existence of an enterprise affecting interstate commerce; 2) defendants were

employed or associated with the enterprise; 3) defendants participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and 4) through a pattern of racketeering activity that includes at least two racketeering acts. *Shearing v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989), *abrog. on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000) (citing *R.A.G.S. Coulture, Inc. v. Hyatt*, 774 F.2d 1350, 1352 (5th Cir. 1985)); *Rose v. Bartle*, 871 F.2d 331, 358 (3d Cir. 1989). SSG Defendants and Jayaraman contend that Plaintiffs failed to meet their burden for the first, third, and fourth elements. Plaintiffs purportedly failed to allege 1) the existence of an enterprise under Rule 12(b)(6), 2) the conduct of an enterprise under Rule 12(b)(6), and 3) predicate offenses involving fraudulent activity under Rule 9(b). For the reasons set forth below, the Court holds that Plaintiffs' allegations for the first, third, and fourth elements of Section 1962(c) are sufficient under Rules 9(b) and 12(b)(6). Plaintiffs' RICO claim may proceed.

## 2. Element 1: Existence of a RICO Enterprise Under Rule 12(b)(6)

Defendants contend that Plaintiffs failed to plead the first element of a RICO claim under Section 1962(c)—the existence of an enterprise affecting interstate commerce. Plaintiffs respond that they did adequately plead that SSG Defendants formed an enterprise—an association-in-fact enterprise. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at pp. 20–21; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 14–15. To properly plead the first element, a plaintiff must satisfy requirements established by two Supreme Court cases: *United States v. Turkette*, 452 U.S. 576, 583 (1981) and *Boyle v. United States*, 556 U.S. 938, 940 (2009). In *Turkette*, the Supreme Court held that to prove the existence of an association-in-fact enterprise, a plaintiff must show that 1) there is an ongoing organization that is either formal or informal; 2) the associates of the organization function as a continuing unit (the continuity requirement); and 3) the organization has an existence apart from the alleged pattern of racketeering activity (the

distinctiveness requirement.). *Turkette*, 452 U.S. at 583. In *Boyle*, the Supreme Court expanded on the *Turkette* test by requiring a plaintiff to prove the existence of an association-in-fact through three structural features: 1) a purpose, 2) relationships among those associated with the enterprise, and 3) longevity sufficient to permit these associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 940.

Although the *Turkette* and *Boyle* tests appear to overlap, neither the Supreme Court nor the Third Circuit has articulated an updated formula that collapses them together. For the purposes of this analysis, the Court will address them separately. For reasons set forth below, the Court holds that Plaintiffs' allegations for the first element of their Section 1962(c) claim are sufficient under Rule 12(b)(6): both the *Turkette* and *Boyle* tests are satisfied.

i.      *The Boyle Test*

First, the Court will address whether Plaintiffs properly pleaded the existence of an association-in-fact enterprise under the *Boyle* test. RICO Section 1961(4) defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An association-in-fact enterprise may consist of a corporation along with non-employee individuals. *Schwartz v. Lawyers Title Ins. Co.*, 680 F. Supp. 2d 690, 703 (E.D. Pa. 2010) (citing *Brittingham v. Mobil Corp.*, 943 F.2d 297, 302 (3d Cir. 1991)). *Boyle* sets forth three sub-elements for proving the existence of an association-in-fact enterprise: 1) a purpose for the enterprise, 2) relationships among those associated with the enterprise, and 3) longevity permitting the associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 946; *see also United States v. Bergrin*, 650 F.3d 257, 266 (3d Cir. 2011). Although evidence used to prove these elements may coalesce in particular cases, proof of one does not necessarily establish another. *Turkette*, 452 U.S. at 583. The first

element does not require that every decision be made by the same group member, only that there is some mechanism for directing the group's affairs. *United States v. Riccobene*, 709 F.2d 214, 223 (3d Cir. 1983), *abrog. on other grounds by Boyle*, 556 U.S. at 938. A plaintiff need not prove, however, that the group has a chain of command, name, regular meeting, dues, established regulations, disciplinary procedures, initiation ceremonies, or communications between the members. *Boyle*, 556 U.S. at 948; *Schwartz v. Lawyers Title Ins. Co.*, 970 F. Supp. 2d 395, 404 (E.D. Pa. 2013).[17] The second element does not foreclose individuals from leaving the group or new ones from joining the group later. *Riccobene*, 709 F.2d at 222. The function of coordinating the commission of predicate offenses on an on-going basis will satisfy the third element. A plaintiff need not show that the group has a function totally unrelated to racketeering activity. *Id.* at 223–24.

Under *Boyle*, Plaintiffs adequately pleaded all three sub-elements for showing the existence of an association-in-fact enterprise affecting interstate commerce. The purpose of an association-in-fact enterprise was to steal and launder bond funds through fraudulent wire transfers and create a sham pass-through entity: PSAL. The relationships between the individuals and entities forming the association-in-fact enterprise is manifest in Plaintiffs' detailed allegations about the relationships between individual and corporate Defendants and their coordinated attempt to steal and launder the bond funds. And the longevity of the association-in-fact enterprise is demonstrated by SSG Defendants' activities from 2009 until 2014, a sufficient timeframe for them to orchestrate

---

[17] To the extent that *Riccobene's* commentary on the first sub-element for association-in-fact enterprises required proof of a hierarchical structure, *Riccobene* was abrogated by the Supreme Court's decision in *Boyle*. *Bergrin*, 650 F.3d at 266 & n.5. No proof of a hierarchical structure is required.

and execute their alleged scheme. *See* Pl.'s Compl. at pp. 2–3, 9–15, 21–28, ¶¶ 5–38, 97–145, 207–88; Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at pp. 20–21.

Plaintiffs do not claim that Defendants merely conducted the normal affairs of a business relationship, but rather that they engaged in a pattern of racketeering behavior by defrauding Plaintiffs of bond funds in violation of several predicate criminal statutes. *See Schwartz*, 680 F. Supp. 2d at 707. Defendants' critique of Plaintiffs' RICO claim is unpersuasive because it focuses on Paragraphs 232–34, rather than cross-referencing those specific RICO allegations with general allegations spread throughout the rest of the Complaint. *See* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 16; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 14–15. In viewing the Complaint as a whole, Plaintiffs' allegations satisfied the structural requirements of the *Boyle* test. *See* FED. R. CIV. P. 12(b)(6); *Schwartz*, 970 F. Supp. 2d at 404; *Am. Trade Partners, L.P. v. A-1 Int'l Importing Enter., Ltd.*, 757 F. Supp. 545, 549–51 (E.D. Pa. 1991).

### ii. <u>The Turkette Test</u>

Second, the Court will address whether Plaintiffs properly pleaded the existence of an association-in-fact enterprise under the *Turkette* test. While the parties do not explicitly dispute any of the three prongs of the *Turkette* test, the Court will address the third prong—the distinctiveness requirement—on its own cognizance under Rule 12(b)(6), as it is a frequent point of contention in RICO claims such as this one.

The third prong of the *Turkette* test requires a plaintiff to allege that a person conducted a pattern of racketeering through a separate and distinct enterprise. *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 72 (3d Cir. 1994). The RICO statute defines a "person" as "any individual or entity capable of holding a legal or beneficial interest in property. . . ." 18 U.S.C. § 1961(3). An "enterprise," as noted above, is "any individual, partnership, corporation, association, or other

legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise can take many forms, for example, single-entity enterprises, bilateral enterprises, etc. An association-in-fact enterprise may consist of a corporation along with non-employee individuals. *Schwartz*, 680 F. Supp. 2d at 703 (citing *Brittingham*, 943 F.2d at 302).

The distinctiveness requirement limits the number of shapes an enterprise can take by barring RICO claims that assert that a corporation and its officers engage in the same enterprise. A plaintiff typically can only recover against defendant officers who use their corporation as an enterprise. A corporation can only be liable if it is a distinct "person," that is, if it engages in racketeering activity that constitutes an enterprise that is distinct from the one formed by its officers. *See Jaguar Cars, Inc. v. Royal Oaks Motor Car Co., Inc.*, 46 F.3d 258, 268 (3d Cir. 1995); *Brittingham*, 943 F.2d at 300–03; *Petro–Tech., Inc.*, 824 F.2d at 1359; *B.F. Hirsch v. Enright Refining Co., Inc.*, 751 F.2d 628, 634 (3d Cir. 1984). The upshot of this rule of law is that if a plaintiff seeks to hold a corporation and its officers liable under RICO Section 1962(c), it must allege that two or more enterprises exist.

Plaintiffs plead that all SSG Defendants form one association-in-fact enterprise (singular), and in the alternative, that they form association-in-fact enterprises (plural) through seven different group combinations. Pl.'s Compl. at pp. 24–5, ¶¶ 235–43. This is permissible, as a plaintiff may "allege alternative enterprise theories in their complaint without limit." *Schwartz*, 970 F. Supp. 2d at 403 (citing *United States v. Stratton*, 649 F.2d 1066, 1075 (5th Cir. 1981)). Neither the Supreme Court nor the Third Circuit has clearly identified the circumstances where a corporation can form a distinct enterprise. *See Brittingham*, 943 F.2d at 302–03 & n.3 ("It is theoretically possible for a corporation to take a separate "active" role in RICO violations also committed by its employees. The corporation would not be the passive victim of racketeering activity, but the active

perpetrator. . . . We decline at this time to speculate on the precise circumstances that might give rise to such a claim."). The Court does not perceive, at any rate, any facially implausible single-entity enterprises in Plaintiffs' Complaint. *In re Aetna UCR Litig.*, MDL No. 2020. Civ. No. 07-3541, 2015 WL 3970168, at **1, 25 (D. N.J. June 30, 2015). The liberal notice regimes for pleading generally and RICO claims specifically warrant a conservative approach towards dismissal for failure to plead the distinctiveness requirement.[18] The Court will permit the parties to engage in discovery to parse whatever distinctions there may be between SSG Defendants, Jayaraman, and the alleged enterprise(s) they collectively formed for racketing activities. The Court may revisit the issue later. At this stage of the litigation, the Court holds that Plaintiffs' allegations adequately pleaded the distinctiveness requirement under the *Turkette* test. *See* FED. R. CIV. P. 12(b)(6); *Portland Gen. Elec. Co. v. Westinghouse Elec. Corp.*, 842 F. Supp. 161, 167 (W.D. Pa. 1993).

Having satisfied both the *Boyle* and *Turkette* tests, the Court holds, in turn, that Plaintiffs' allegations for the first element of their Section 1962(c) claim—the existence of an association-in-fact enterprise—are sufficient under Rule 12(b)(6).

### 3. Element 3: Conduct of a RICO Enterprise Under Rule 12(b)(6)

Defendants contend that Plaintiffs failed to plead the third element of a RICO claim under Section 1962(c)—that Defendants participated, either directly or indirectly, in the conduct or the affairs of an association-in-fact enterprise. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss

---

[18] The Court by no means implies that it is always appropriate for discovery to resolve the distinctiveness issue. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 370 ("3d Cir. 2010) ("RICO cases, like antitrust cases, are 'big' cases and the defendant should not be put to the expense of big-case discovery on the basis of a threadbare claim." (quoting *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008))). Suffice it to say that the allegations here cross the threshold necessary for the RICO claim to go forward. Plaintiffs' allegations are neither threadbare nor conclusory.

at pp. 17–18; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 15–16. Plaintiffs respond that they adequately pleaded that Defendants formed an enterprise by fraudulently obtaining and laundering bond funds. Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at pp. 22–23. The Court agrees. Plaintiffs' allegations for the third element of a Section 1962(c) claim are sufficient under Rule 12(b)(6).

To adequately plead the third element of a Section 1962(c) claim, a plaintiff must satisfy the so-called "operation or management test." The management test simply provides that a defendant must participate in the operation or management of the enterprise itself in order be liable. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 300. Defendants' critique of Plaintiffs' Complaint exclusively concerns the management test. A lack of factual allegations for how each SSG Defendant participated in operating or managing the association-in-fact enterprise is said to doom Plaintiffs' RICO claim. This argument is unpersuasive. Plaintiffs' Complaint details the contribution of each Defendant in operating or managing an enterprise(s) as a part of a conspiracy to steal and launder bond funds. *See* Pl.'s Compl. at pp. 2–3, 9–15, 21–28, ¶¶ 5–38, 97–145, 207–288; Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at pp. 21–23. The Court holds that Plaintiffs allegations for the third element of their Section 1962(c) claim—conduct in the affairs of an association-in-fact enterprise—are sufficient under Rule 12(b)(6). *See* FED. R. CIV. P. 12(b)(6).

4. <u>Element 4: Predicate Offenses "Sounding in Fraud" Under Rule 9(b)</u>

Defendants contend that Plaintiffs failed to plead the fourth element of a RICO claim under Section 1962(c)—specifically by failing to meet the heightened pleading standard for fraud under Rule 9(b). SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at pp. 13–14; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 11–14. Plaintiffs respond that Rule 9(b) does not

apply because they never pleaded a fraud claim as a predicate offense for their RICO claim. Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at pp. 22–23; Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss at pp. 12–14. Though the Court agrees with Defendants that Rule 9(b) applies, the Court nevertheless holds that Plaintiffs' Complaint satisfies Rule 9(b)'s heightened particularity requirement.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). The elements of a common law fraud claim (intentional misrepresentation claim) in Pennsylvania are 1) a misrepresentation, 2) material to a transaction, 3) made falsely, 4) intending to mislead another to rely on it, 5) so justifiable reliance resulted, and 6) reliance proximately caused injury. *Santana Prods. Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 136 (3d Cir. 2005) (citing *Weinberg v. Sun Co., Inc.*, 777 A.2d 442, 446 (Pa. 2001)).[19] Fraud claims can serve as predicate offenses for a RICO claim. *See, e.g.*, 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud); 18 U.S.C. § 1961(1) (defining wire fraud and mail fraud as forms of racketeering activity). When a RICO claim is predicated on a fraud claim, a plaintiff must satisfy the heightened pleading standard under Rule 9(b). *See, e.g.*, *Seville Indus. Machinery Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); *Ramiro Aviles v. S & P Global, Inc.*, 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019) (applying Rule 9(b) to wire fraud and mail fraud claims pleaded as predicate offenses to a RICO claim).

---

[19] Though reliance is not an element of mail fraud, most courts agree that reliance must be established when mail fraud is pleaded as a predicate act for a civil RICO claim. *Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network*, No CIV. A. 99-4653, 2001 WL 41143, at **1, 5 (E.D. Pa. Jan. 18, 2001) (citing cases).

Though Plaintiffs refer to "fraudulent" activities committed by Defendants nineteen times in the Complaint, they never actually plead a statutory or common law-based fraud claim independently or as a predicate offense to their RICO claim. *See* Pl.'s Compl. at pp. 2, 4–8, 10, 11, 13, 27–28, ¶¶ 42, 46, 51, 54, 59, 64, 69, 73, 77, 81, 85, 89, 106, 110, 114, 137, 263, 264, 287; Pl.'s RICO Case Statement at p. 3 ("This case does not involve fraud in connection with the sale of securities and Plaintiffs do not assert independent predicate offenses of wire fraud and mail fraud."). Instead, their RICO claim hinges on violations of the NSP, the ITA, and the MCLA. Pl.'s Compl. at pp. 24–29, ¶¶ 231–88. None of those predicate offenses necessarily trigger the heightened pleading standard under Rule 9(b). Despite that being the case, SSG Defendants and Jayaraman insist that Plaintiffs' claims trigger Rule 9(b) because they "sound in fraud." SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at pp. 13–14; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 11–14.

Several courts in this circuit have held that claims that do not have fraud as an element, but nevertheless "sound in fraud," can trigger Rule 9(b)'s heightened pleading standard. Examples of these include claims under Section 12(2) of the Securities Act of 1933, Pub. L. 73-22, 48 Stat. 74 (codified as amended at 15 U.S.C. §§ 77a et seq.) and negligent misrepresentation claims under state common law. *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710, 717 (3d Cir. 1996) (applying Rule 9(b) to claims under Sections 10(b) and 12(2) of the Securities Act); *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 550 (E.D. Pa. 2014) (applying Rule 9(b) to Connecticut common law negligent misrepresentation claims); *see also* Arthur Miller et al., 5A FED. PRAC. & PROC. § 1298 (4th ed. 2019). *But see Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 510 (D.N.J. 1999) (noting that negligent misrepresentation claims are not subject to Rule 9(b)).

The Court holds that Plaintiffs' allegations as to violations of NSP Sections 2314–15, ITA

Section 1952, and MCLA Sections 1956–57 do indeed "sound in fraud." *See Fed. Ins. Co. v.*

*Ayers*, 741 F. Supp. 11179, 1185 (E.D. Pa. 1990). The only court to have directly confronted the

applicability of Rule 9(b) to claims under the NSP and the MCLA found that Rule 9(b) did not

apply:

> Plaintiff uses the phrases "fraudulently and deliberately converting"
> and "conspiracy to defraud plaintiff" in paragraphs 17 and 25 of its
> complaint. Plaintiff is alleging acts of theft and conversion, not acts
> of fraud. Plaintiff does not establish predicates of its RICO claim by
> alleging mail or wire fraud under 18 U.S.C. §§ 1341 and 1343.
> Rather, plaintiff sets forth predicates of its RICO claim by alleging
> interstate transportation of stolen goods under 18 U.S.C. § 2314,
> laundering of monetary instruments under 18 U.S.C. § 1956, and
> engaging in monetary transactions in property derived from
> specified unlawful activity under 18 U.S.C. § 1957.
>
> ***
>
> Particularity pursuant to Rule 9(b) is necessary when the predicate
> acts are acts of fraud, but not otherwise. *See Saporito v. Combustion
> Engineering Inc.*, 843 F.2d 666, 673 (3d Cir.1988). It is apparent
> from the face of the complaint that the "fraud" referred to by
> plaintiff relates to defendants' thefts and conversion of Marcy's
> property. Therefore, defendants' argument that plaintiff has failed to
> plead its allegations of fraud with sufficient particularity as required
> by Rule 9(b) is entirely without merit.

*Id.* at 1185. That decision, however, did not reference, let alone engage, the "sound in fraud"

exception at all. The Court therefore finds the reasoning underlying its categorical holding

unpersuasive, and takes the opposite view, not only as to Plaintiffs' NSP and MCLA claims, but

as to their ITA claims as well. The basic intuition behind this finding is that fraudulent activity can

facilitate property theft, money laundering, and travel for unlawful activity. *See Ferguson v.*

*Moeller*, Case No. 2:16-cv-41, 2016 WL 1106609, at **1, 3 (W.D. Pa. Mar. 22, 2016) ("Where,

as here, Plaintiffs assert fraud-related predicate acts to support a RICO claim, the pleading must

meet the particularity standard set forth in FED. R. CIV. P. 9(b)." (citing *Zavala v. Wal-Mart Stores, Inc.*, 393 F. Supp. 2d 295, 312 (D.N.J. 2005), *aff'd,* 691 F.3d 527 (3d Cir. 2012))). The Complaint's replete references to fraudulent activity make it clear that this is what Plaintiffs contend is going on here. *See* Pl.'s Compl. at pp. 2,4, 5, 6, 7, 8, 10, 11, 13, 27–28, ¶¶ 42, 46, 51, 54, 59, 64, 69, 73, 77, 81, 85, 89, 106, 110, 114, 137, 263, 264, 287. The Court will therefore apply Rule 9(b) to Plaintiffs' NSP, ITA, and MCLA claims as predicate offenses to the RICO statute.

Rule 9(b) is not fatal to Plaintiffs' NSP, ITA, and MCLA claims. As the Third Circuit has repeatedly stated, courts must be sensitive to the fact that applying Rule 9(b) before discovery "may permit sophisticated defrauders to successfully conceal the details of their fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (citing *Christidis v. First Pa. Mortgage Trust*, 717 F.2d 96, 99–100 (3d Cir. 1983)). An approach that exclusively focuses on the particularity requirement is too narrow and fails to follow the general flexibility and simplicity of the rules. *Id.* (citing *Christidis*, 717 F.2d at 100); *Allen*, 2001 WL 41143, at *3 (citing *Seville*, 742 F.2d at 791). As one treatise explains,

> Allegations of the circumstances of a fraud based on information and belief, which are commonplace and often a necessity in many litigation contexts, usually do not satisfy the particularity requirement of Rule 9(b), unless accompanied by a statement of the facts upon which the pleader's belief is founded or by allegations that the necessary information lies within the defendant's control. Thus, Rule 9(b)'s fraud pleading requirement should not be understood to require absolute particularity as to matters peculiarly within the opposing party's knowledge that the pleader is not privy to at the time of the pleading and that can only be developed through discovery.

MILLER, *supra*, at §1298. Courts must relax the rule when factual information is within a defendant's knowledge or control. *Craftsmatic*, 890 F.2d at 645 (citing cases); *Livingston v. Shore*

*Slurry Seal, Inc.*, 98 F. Supp. 2d 594, 597 (D.N.J. 2000); *Mardini v. Viking Freight, Inc.*, 92 F.

Supp. 2d 378 (D.N.J. 1999) (citing *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658

(3d Cir. 1998); and then citing *Christidis*, 717 F.2d at 99). The allegations set forth in the

Complaint are not exhaustive, but the Complaint need not be exhaustive. The Complaint needs to

present a sufficiently particular set of facts, and it does. "It is 'reasonable to presume' that the

corporate scheme to defraud was collectively devised by the director defendants." *See Blake v.*

*Dierdorff*, 856 F.2d 1365, 1370 (9th Cir. 1988) (citing *Wool v. Tandem Computers Inc.*, 8181 F.2d

1433, 1440 (9th Cir. 1987); and then citing *Sun Sav. And Loan Ass'n v. Dierdorff*, 825 F.2d 187,

195 (9th Cir. 1987)).

The Complaint presents a descriptive chronology of events. It includes dates, times, and

locations where each SSG Defendant allegedly contributed to a fraudulent and illicit scheme to

steal and launder bond funds. It contains precision and some measure of substantiation for the

fraudulent activity of each individual Defendant on behalf of the corporate Defendants, activity

that violated the predicate offenses to the RICO statute. *See Blake*, 856 F.2d at 1370; *Naporano*,

79 F. Supp. 2d at 511 (citing cases).

As Plaintiffs rightly point out, SSG Defendants' and Jayaraman's statements that Plaintiffs'

"allegations do not indicate what conduct any individual Defendant is alleged to have committed"

rely on four paragraphs cherrypicked from the Complaint—specifically Paragraphs 118, 120, 123,

and 126. *Compare* Pl.'s Compl. at p. 12, ¶¶ 118, 120, 123, 126, *and* Pl.'s Br. in Opp. to SSG

Def.'s Mot. to Dismiss at p. 19, *with* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p.

15, *and* Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 13–14. In viewing the

Complaint as a whole under a flexible application of Rule 9(b), the Court holds that Plaintiffs'

allegations for the fourth element of their RICO claim, specifically the predicate offenses under

the NSP, ITA, and MCLA, are sufficient at this stage of the litigation under Rule 9(b). *See* FED. R. CIV. P. 9(b); *cf. Gurfein v. Sovereign Grp.*, 826 F. Supp. 890, 906 (E.D. Pa. 1993) (finding significance in a plaintiff's ability to furnish documents showing fraudulent activity).[20]

The Court holds that Plaintiffs have asserted a plausible civil RICO claim. As such the motions to dismiss under Rule 12(b)(6) will be denied. Because the civil RICO claim may proceed, the Court can exercise federal question jurisdiction (along with supplemental jurisdiction over the state law claims) even if, as explained above, the requirements of diversity jurisdiction were not satisfied.

## III. Personal Jurisdiction

Personal jurisdiction is a genus that contains two species: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8–9 (1984)). General jurisdiction arises from a defendant's non-forum related activities, while specific jurisdiction arises from a defendant's forum-related activities. *Hall*, 466 U.S. at 414 & nn.8–9; *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (citing *N. Penn Gas Co. v. Corning Nat. Gas. Corp.*, 897 F.2d 687, 690 (3d Cir. 1990), *cert. denied*, 498 U.S. 847 (1990)).

Plaintiffs plead personal jurisdiction through specific jurisdiction under Pennsylvania's long-arm statute, specific jurisdiction under the federal long-arm statute, and statutory jurisdiction under the MCLA and RICO. SSG Defendants and Jayaraman ask the Court to dismiss this case for lack of personal jurisdiction under Rule 12(b)(2). SSG Def.'s Mot. to Dismiss at p. 1. For the

---

[20] SSG Defendants assert in a footnote that there are "insurmountable statute of limitations issues with Plaintiffs' RICO claim," but then decline to address them fully. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 18. As an affirmative defense, Defendants are free to raise the statute of limitations after answering the Complaint.

reasons set forth below, SSG Defendants' and Jayaraman's motions to dismiss for a lack of personal jurisdiction will be denied. The Court previously held that Jayaraman's motion to withdraw admissions would be denied; therefore, he is bound by the deemed admissions that conclusively establish personal jurisdiction. In the alternative that nothing was deemed admitted, however, the Court will consider Jayaraman's substantive arguments on personal jurisdiction.[21]

*A. Personal Jurisdiction Under Pennsylvania's Long-Arm Statute*

If a court can exercise diversity jurisdiction under 28 U.S.C. § 1332, it can exercise personal jurisdiction through a state long-arm statute under Rule 4(e). Under Rule 4(e), the law of the forum in which a federal district court sits controls the analysis of personal jurisdiction under its long-arm statute. This Court sits in Pennsylvania, therefore, Pennsylvania law controls. The boundaries imposed by Pennsylvania's long-arm statute on personal jurisdiction are coextensive with those imposed by the Fourteenth Amendment. 42 PA. C.S.A. § 5322; *Vetrotex*, 75 F.3d at 150; *Kenneth H. Oaks, Ltd. v. Josephson*, 568 A.2d 215 (Pa. Super. 1989) (citing *E. Continuous Forms v. Island Bus. Forms*, 513 A.2d 466 (Pa. Super. 1986)). A federal court sitting in diversity in Pennsylvania must therefore look to federal jurisprudence to determine whether a defendant is subject to personal jurisdiction. *Vetrotex*, 75 F.3d at 150.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution only authorizes a court to exercise personal jurisdiction if a defendant purposefully established minimum contacts that have a substantial connection with the forum. U.S. CONST. amend XIV; *Burger King Corp.*, 471 U.S. at 475 (citing cases); *Int'l Shoe Co. v. State of Wash., Off. of Unemp't*

---

[21] SSG Defendants' and Jayaraman's arguments on personal jurisdiction track each other. *See* Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss at pp. 2–3 & n.6 ("Mr. Jayaraman's Motion to Dismiss is a 'me too' filing that tracks virtually lockstep with the SSG Defendants' Motion to Dismiss."). The Court's analysis of both sets of arguments, therefore, is collapsed.

*Comp. & Placement*, 326 U.S. 310, 319 (1945). Courts apply this rule of law using a two-prong test: 1) whether a defendant has sufficient contacts with the forum (the contacts prong), and 2) whether the exercise of jurisdiction would be reasonable under the circumstances (the reasonableness prong). *Daimler AG v. Bauman*, 571 U.S. 117, 144 (2014). There are a few exceptions to this general rule. Parties may consent to a forum. *Nat'l Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316 (1964); *Pitt. Nat'l Bank v. Kassir*, 153 F.R.D. 580, 583 (W.D. Pa. 1994). Defendants can also waive their lack of personal jurisdiction when they enter a general appearance with a court. *Lee v. Chesapeake & O. Ry. Co.*, 260 U.S. 653, 655 (1923).

The Court holds that it cannot exercise general jurisdiction over Defendants under Pennsylvania's long-arm statute. The Court can, however, exercise specific jurisdiction over Defendants through Pennsylvania's long-arm statute under the traditional minimum contacts test and, in the alternative, under special tests for intentional torts and conspiracy claims as well.

### 1. Waiver

The Court will first consider whether SSG Defendants waived objections to personal jurisdiction. Plaintiffs contend that SSG Defendants committed waiver by seeking affirmative relief from the Court through filing five motions: a Motion for Initial Conference (ECF No. 10), a Reply Brief in Support of their Motion for Initial Conference (ECF No. 17), a Motion to Vacate Scheduling Conference (ECF No. 24), a Response to Plaintiffs' Submission to Rule 26(f) Report and ADR Stipulation (ECF No. 27), and a Response to Plaintiffs' Motion to Strike the Motion to Dismiss (ECF No. 32). They also contend that SSG Defendants' representation to a court in Hong Kong that they would file a motion to dismiss to bolster their position in the Hong Kong litigation supports a finding of waiver. Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at p. 3. SSG Defendants counter that these motions cannot constitute waiver. SSG Def.'s Reply in Supp. of

SSG Def.'s Mot. to Dismiss at p. 7–9. The Court finds SSG Defendants' argument more persuasive.

A party can waive personal jurisdiction through actions that are voluntary or involuntary, especially when it seeks affirmative relief. *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 443 (3d Cir. 1999) (citing *Ins. Corp. of Ireland, Ltd., et al. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703–05 (1982); and then citing *Adam v. Saenger*, 303 U.S. 59 (1938)). Neither the Supreme Court nor the Third Circuit has published an exhaustive list of the kinds of actions, voluntary or involuntary, that cross the threshold and count as waiver. The test appears to be whether the action requires the court to consider the merits or quasi-merits of the controversy. *Ciolli v. Iravani*, 625 F. Supp. 2d 276, 291 (E.D. Pa. 2009) (citing *Wyrough & Loser, Inc. v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967)). Under that test, a hearing on a motion for a preliminary injunction causes waiver because it resolves factual disputes that will grant or deny relief sought. A request for a stay, however, does not result in waiver because granting a stay does not require analysis of the merits. *Wyrough*, 376 F.2d at 547 (preliminary injunction); *Ciolli*, 376 F. Supp. 2d at 291 (stay).

The Court finds especially persuasive the Third Circuit's opinion in *Bel-Ray*, where the panel held that although the appellants timely raised a personal jurisdiction defense, they still waived personal jurisdiction by filing motions for summary judgment on a counterclaim that requested an injunction. *Id.* at 443. The motions Plaintiffs challenge here are in no way analogous to the motions at issue in *Bel-Ray*. They are not dispositive motions, motions for equitable relief, or counterclaims. Indeed, SSG Defendants have not asserted counterclaims. The scheduling conference motions did not request substantive, merits oriented affirmative relief, but rather what can more accurately be described as administrative relief. The notion that SSG Defendants'

responses to Plaintiffs' motions constituted requests for affirmative relief strikes against all common sense: a party does not waive personal jurisdiction by engaging in the very medium required to dispute it. The Court holds that SSG Defendants have not waived personal jurisdiction.

## 2. General Jurisdiction

The Court will next consider whether it should exercise general personal jurisdiction over SSG Defendants and Jayaraman under Pennsylvania's long-arm statute. In the context of general jurisdiction, the contacts prong is satisfied when a plaintiff shows that a defendant maintains "continuous and systematic contacts" with the forum such that they are "essentially at home in the forum state." *See Goodyear Dunlop Tires*, 564 U.S. at 919 (internal citations omitted); *Vetrotex*, 75 F.3d at 147 & n.3.[22] Defendants argue that this Court cannot exercise general jurisdiction because they are foreign corporations and individuals who neither reside nor have a principal place of business in the United States. Moreover, they emphasize that Plaintiffs never alleged that there are enough "continuous or systematic contacts" to establish general jurisdiction. SSG Defendants' Brief in Support of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 26) ("SSG Def.'s Br. in Supp. of SSG.'s Mot. to Dismiss") at pp. 5–6; SSG Def.'s Reply in Supp. of SSG's Mot. to Dismiss at pp. 1–2; SSG Def.'s Supp. Br. in Supp. of SSG's Mot. to Dismiss at p. 1. These arguments are persuasive.

Construing the pleadings in a light most favorable to Plaintiffs, the Complaint can only plausibly be read to suggest that the Court can exercise general personal jurisdiction over PISL.

---

[22] Although the Supreme Court has applied both prongs to specific jurisdiction questions, it has never explicitly decided whether the reasonableness prong applies to general jurisdiction questions. *Daimler*, 571 U.S. at 145–46 & n.1. There is no authoritative Supreme Court precedent on this issue. Most federal courts of appeals have applied the reasonableness prong to the general jurisdiction analysis. *Id.* at 146 & n.1. The Third Circuit, however, has not taken a position. As explained herein, the requirements of the contacts prong are not satisfied, therefore, the Court will not take a position.

*See* Compl. at p. 4, ¶ 41 ("PISL has *continuously* conducted business in Pittsburgh, Pennsylvania since 2000.") (emphasis added). Plaintiffs' briefs fail to make a substantive argument for general jurisdiction. *See generally Dollar Sav. Bank v. First Sec. Bank of Utah, N.A.*, 746 F.2d 208, 212 (3d Cir. 1984) ("The record as it currently stands is insufficient to support general jurisdiction"); *Fatouros v. Lambrakis*, 627 Fed. App'x 84, 87 & n.5 (3d Cir. Sept. 23, 2015) (per curiam) (same) (citing *Kehm Oil Co. v. Texaco, Inc.*, 537 F.3d 290, 300 (3d Cir. 2008)); *Sathianathan v. Pac. Exch., Inc.*, 248 Fed. App'x 345, 347 (3d Cir. Sept. 14, 2007)) (same); Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at p. 12; Pl.'s Supp. Br. in Opp. to Def.'s Mot. to Dismiss at pp. 2–10. The Court cannot find any basis to conclude that Defendants have continuous and systematic contacts with the forum such that they are "practically" at home here. Because the requirements of the first prong are not satisfied, it need not address the second. The Court declines to exercise general personal jurisdiction. *See Daimler*, 571 U.S. at 139–140; *Acorda Therapeutics, Inc. v. Mylan Pharma., Inc.*, 78 F. Supp. 572, 583 (D. Del. 2015).

3. Specific Jurisdiction

The Court will next consider whether it should exercise specific personal jurisdiction over SSG Defendants and Jayaraman under Pennsylvania's long-arm statute. Plaintiffs raise three independent grounds for specific jurisdiction: 1) the traditional minimum contacts test, 2) the "effects" test for intentional torts, and 3) conspiracy jurisdiction. For the reasons set forth below, the Court holds that both prongs of the traditional minimum contacts test are satisfied. In the alternative, the Court holds that the requirements of the "effects" test and conspiracy jurisdiction are both satisfied as well.

*i.*     *The Traditional Minimum Contacts Test*

The traditional two-prong test for specific jurisdiction is 1) a defendant must have minimum contacts with the forum state, and 2) exercising personal jurisdiction must accord with traditional notions of fair play and substantial justice. As to the first prong, a defendant can be said to have sufficient minimum contacts when he purposefully avails himself of the forum such that he could reasonably anticipate being hailed into court. *Goodyear Dunlop Tires*, 564 U.S. at 919 (citing Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 HARV. L. REV. 1121, 1136 (1966)); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Vetrotex*, 75 F.3d at 150–51 (quoting *Int'l Shoe*, 326 U.S. at 310; and then citing *Farino*, 960 F.2d at 1222). "A single contact that creates a substantial connection with the forum can be sufficient to support the exercise of personal jurisdiction over a defendant." *Miller Yacht Sales, Inc.*, 384 F.3d at 96 (citing *Burger King Corp.*, 471 U.S. at 475 & n.18). As to the second prong, a court can consider the following factors when determining whether the exercise of specific jurisdiction is reasonable: the forum state's interest in adjudicating the dispute, a plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of several states in furthering fundamental substantive social policies. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292 (citing cases); *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 677 (E.D. Pa. 1997) (citing *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992)).

Defendants contend that they did not purposefully avail themselves of this forum. The only contacts they have with the forum, so they say, are four wire transfers initiated by Madhavi from PSI's PNC Bank account in Pittsburgh to PISL's Key Bank account in Washington State and

PASL's bank account in Hong Kong. *See* SSG Def.'s Br. in Supp. of SSG's Mot. to Dismiss at pp. 6–8; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at p. 6. These four wire transfers cannot trigger specific personal jurisdiction, according to Defendants, because Defendants apparently had no access to PISL's bank account in Washington State and knew nothing about any of the transfers. SSG Def.'s Supp. Br. in Supp. of Def.'s Mot. to Dismiss at p. 8 ("Nothing in the record shows the SSG Defendants were involved in the wire transfers, and Plaintiffs' depositions did not show the witnesses took part in any of the three transfers."); Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at 6 ("Plaintiffs do not allege that Jayaraman knew that the PNC Bank transfers ever happened or took any specific actions to affect them."). Defendants state that even if these transfers cumulatively constituted a "connection" to the forum, that connection is too de minimis to pass the minimum contacts test. SSG Def.'s Br. in Supp. of SSG's Mot. to Dismiss at pp. 7–8 & n.6; SSG Def.'s Reply in Supp. of SSG's Mot. to Dismiss at pp. 2–3; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at p. 7. Defendants also argue that there is no direct causal connection between their activities and Plaintiffs' claims. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 9; SSG Def.'s Reply in Supp. of SSG's Mot. to Dismiss at p. 3; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at p. 8. These arguments are not persuasive.

a. The Contacts Prong

At the first prong, Plaintiffs have shown that Defendants bear the requisite minimum contacts with the forum. Defendants purposefully availed themselves of this forum in at least three ways. To begin with, the record makes it clear that Madhavi, with the assistance of her husband, Jayaraman, allegedly managed all operations involving the bond funds at the core of the dispute while physically residing in Pittsburgh. *See* Pl.'s Compl. at p. 12, ¶¶ 120–22; Pl.'s Supp. Br. in

Opp. to Def.'s Mot. to Dismiss at p. at 4; Amorose Decl. at p. 2, ¶ 8. These operations included the alleged frauds perpetrated using PSI's PNC bank account in Pittsburgh—PSI's only bank account. Madhavi's and Jayaraman's wire transfer operations while residing in Pittsburgh constituted significant contacts with the forum and evidence a direct, causal connection between Defendants' conspiracy and harms alleged in Plaintiffs' Complaint. Defendants' blanket statement that they did not know about the wire transfers complained of here, in view of jurisdictional discovery produced, is demonstrably false. *Compare* SSG Def.'s Supp. Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 8, and Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at p.6, *with* Amorose Dec. at pp. 2–3, ¶¶ 8–12, *and* Pandyar Decl. at pp. 2–3, ¶¶ 6–13.

The Court agrees with Defendants that the significance of the wire transfers is decisive to the issue of personal jurisdiction but disagrees with their analysis. The cases Defendants cite in favor of their position are all easily distinguishable. The Third Circuit's holding in *Dollar Sav. Bank*, 746 F.2d at 214–15, for example, is inapposite because it involved the wire transfer of a loan repayment *to*—not *from*—Pennsylvania.[23] The United States Court of Appeals for the Eight Circuit's decision in *T.J. Raney & Sons, Inc. v. Sec. Sav. & Loan Assoc.*, 749 F.2d 523, 525 (8th

---

[23] As the Third Circuit explained,

> Before the default, the Utah bank had made payments on the loan to Dollar by wire transfers to Pittsburgh but the supporting documents were sent by the Utah bank to the United States Trust Company in New York. The Utah bank is not licensed to do business in Pennsylvania and has never maintained an office, telephone listing, or bank account in that state. Moreover, it has never solicited business there and has no employees in the state. The Utah bank has, however, acted as a trustee for certain chattels located in Pennsylvania, but that transaction is unrelated to the one sued on by Dollar.

*Dollar Sav. Bank*, 746 F.2d at 210. The conspiracy alleged in this case, on the other hand, involves Defendant entities conducting business in the forum and initiating wire transfers in the forum.

Cir. 1984) and the United States District Court for the Western District of Virginia's decision in *Tatoian v. Andrews*, 100 F. Supp. 3d 549, 554 (W.D. Va. 2015) are distinguishable for the same reason—they both involve wire transfers *to* the forum, not *from* the forum. This case is more analogous to *Roanoke Cemente Co., LLC v. Chesapeake Products, Inc.*, Civil No. 2:07cv97, 2007 WL 2071731, at **1, 7–8 (E.D. Va. July 13, 2017), where a district court determined that a fraudulent wire transfer triggered specific personal jurisdiction under a state long-arm statute because it was initiated *from*, and managed *in*, the forum state. As in *Roanoke*, the fraudulent wire transfers here were initiated *in*, and managed *from*, this forum. The Court therefore determines that the wire transfers facilitating Defendants' conspiracy to defraud the Plaintiffs in this case are alone sufficient to trigger specific personal jurisdiction under Pennsylvania' long-arm statute. *See id.*

Next, Goel physically visited Pittsburgh in June 2008 to meet with Madhavi to discuss the operations of Prithvi family entities in the United States, including PSI. Pl.'s Supp. Br. in Opp. to Def.'s Mot. to Dismiss at pp. 2–4. This visit was ostensibly for the purpose of obtaining information about PISL and PSI so that Defendants could create a pass-through entity—PASL— to launder stolen bond funds. *See* Pl.'s Compl. at p. 18, ¶¶ 180–81; Pl.'s Supp. Br. in Opp. to Def.'s Mot. to Dismiss at p. at 5. Goel's business activity on behalf of Defendants constituted a significant contact with the forum because it effectively tied the thread of the conspiracy connecting the Prithvi family of businesses and the situs of where the bond funds would be stolen: Pittsburgh.

Plaintiffs have made a prima facie showing that all Defendants conspired to steal bond funds PISL wired to PSI's Pittsburgh bank account, leading to, at the very least, $4,000,000.00 being wired to SSG Capital Partners bank account and $2,500,000.00 being wired to PASL's bank

account. *See* Pl.'s Compl. at p. 19, ¶¶ 184–86; Pl.'s Supp. Br. in Opp. to Def.'s Mot. to Dismiss at pp. 7–8. Defendants emphasize that they were not physically present and incorporated in Pennsylvania during the timeframe when the alleged actionable conduct occurred. As the Third Circuit has noted, however, when defendants conduct business activities with a forum, courts have "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction. . . ." *Mellon Bank*, 960 F.2d at 1226 (quoting *Burger King*, 471 U.S. at 476) (internal quotation omitted); *see also Leonard A. Feinberg, Inc. v. Cent. Cap. Corp., Ltd.*, 936 F. Supp. 250, 257 (E.D. Pa. 1996) ("Central Asia's physical presence in the forum, however, is neither a 'jurisdictional litmus test' nor a dispositive factor." (citing *Mellon Bank*, 960 F.2d at 1223)). Defendants received the benefits and protections of this forum's laws by engaging in business activities with its residents. Goel's meeting with Madhavi is merely one illustration. *See* Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. E at pp. 1–2; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss at pp. 1–15.

Finally, a significant quantum of contacts aggregating in favor of personal jurisdiction are the electronic and telephone communications exchanged between Defendants for their business activities. As the Third Circuited noted, "Mail and telephone communications sent by the defendant into the forum may count toward the minimum contacts that support jurisdiction. . . . '[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines. . . .'" *Grand Ent. Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (quoting *Burger King*, 471 U.S. at 476) (internal citations omitted). Maheshwari's electronic and telephone communications with other Defendants about obtaining corporate documents from PSI and PISL, documents ostensibly needed to create a PASL bank account in Hong Kong to launder bond funds wired through

Pittsburgh, are critical to the Court's analysis. *Compare* Shyam Maheshwari Dep. at pp. 43–45, *with* Kulkarni Decl. at pp. 3–7, ¶¶ 13–39. Defendants could reasonably anticipate being hailed into this Court for fraudulent activity associated with specific business contacts and accounts they conspired to operate and control both electronically and telephonically from abroad and while physically on Pennsylvania soil. *See Goodyear Dunlop Tires*, 564 U.S. at 919; *World-Wide Volkswagen Corp.*, 444 U.S. at 297; *Vetrotex*, 75 F.3d at 150–51; Amorose Decl. at pp. 2–3, ¶¶ 7–12; Pandyar Decl. at pp. 2–3, ¶¶ 6–13; Kulkani Dec. at pp. 2–9, ¶¶ 4–45.

### b.  The Reasonableness Prong

The Court holds that the exercise of personal jurisdiction over this matter accords with traditional notions of fair play and substantial justice. On the one hand, the interstate judicial system's interest in efficiency favors resolution of this dispute in Washington State because the parties already litigated against each other in that forum multiple times. There is also a criminal indictment pending in the Western District of Washington that may be relevant to civil allegations levied against some or all the Defendants here. These factors are counterbalanced, however, by the general interest of the states, including Pennsylvania, to punish harm where it occurs. Pennsylvania has a significant interest in this dispute because Plaintiffs effectively plead that the "nerve center" of the alleged racketeering activities was in Pittsburgh. The principal bank account through which money was stolen was located at PNC Bank in Pittsburgh. The bond fund operations were mainly managed in Pittsburgh. Because Pittsburgh appears to be ground zero for the harms alleged, it is just and equitable for this matter be adjudicated in this Court. *Cf. World-Wide Volkswagen Corp.*, 444 U.S. at 292 (citing cases); *Elbeco Inc.*, 989 F. Supp. at 677. The traditional minimum contacts test is satisfied. The Court can and will exercise specific personal jurisdiction over SSG Defendants and Jayaraman.

*Intentional Torts "Effects" Test*

In the alternative that the traditional minimum contacts test is not satisfied, the Court can still exercise specific personal jurisdiction as to the intentional tort claims. The Supreme Court adopted the Second Restatement's "effects" test for intentional business tort claims. *Calder v. Jones*, 465 U.S. 783, 789 (1984) (citing *Woodson*, 444 U.S. at 297–98; and then citing RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 37 (Am. Law Inst. 1971)). Under the effects test, a court can exercise personal jurisdiction over a nonresident defendant who commits an intentional tort through acts outside the forum if those acts have a particular type of effect on a plaintiff within the forum. This test only applies if a defendant lacks sufficient minimum contacts under a traditional specific jurisdiction analysis. *IMO Indus, Inc. v. Kiekert AG*, 155 F.3d 254, 258–61 (3d Cir. 1998). The Third Circuit breaks down the effects test into three elements:

> (1) The defendant committed an intentional tort;
>
> (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort;
>
> (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity;

*Id.* at 265–66. The Circuit interprets the effects test conservatively and focuses the analysis on the relationship between the defendant, the forum, and the litigation. *See id.* at 265.

The unique relationship between Defendants, Pittsburgh, and the alleged intentional tortious conduct they committed renders their contacts with the forum sufficient, even assuming they otherwise would be too de minimis to satisfy the traditional minimum contacts test. Defendants expressly aimed their alleged tortious conduct at Pittsburgh, rendering it the focal point of their tortious activity. *See IMO Indus, Inc.*, 155 F.3d at 265. Defendants' contacts are enhanced

by Defendants' relationship with Plaintiffs, particularly with PSI. *See IMO Indus, Inc.*, 155 F.3d at 265 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 780 (1984)). Madhavi had executive positions with both PISL and PSI, therefore, she was uniquely poised to abuse her authority and commit intentional business torts by manipulating PNC's Pittsburgh bank account. At the behest of the other Defendants, she and her husband allegedly managed fraudulent wire transfers, leading to the theft of the bond funds from PNC Bank in Pittsburgh. *See* Pl.'s Compl. at pp. 4–5, ¶¶ 45–48, 50–53; Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at p. 15; Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss at pp. 3–6; Amorose Decl. at p. 2, ¶ 8. Defendants' contacts with the forum through the business activities and correspondence between Goel, Madhavi, and Maheshwari also show the unique relationship between the parties and Pittsburgh's centrality to their conspiracy. The purpose of Goel's visit to Pittsburgh in June 2008 and Maheshwari's communications with Madhavi and Goel were, at least in part, to set up PASL's bank account in Hong Kong to launder stolen bond funds. *See* Pl.'s Compl. at pp. 7–8, 69–73, 81–84; Pl.'s Supp. Br. in Opp. to Def.'s Mot. to Dismiss at p. 5; Pandyar Decl. at p. 2, ¶¶ 6–13; Kulkarni Decl. at pp. 4–8, ¶¶ 14–40.

In the Court's view, these factors present a compelling case for rendering Defendants' out-of-forum activities, especially the creation and operation of PSAL's Hong Kong bank account, "contacts" for the purposes of the personal jurisdiction analysis. *See IMO Indus, Inc.*, 155 F.3d at 265. The Court therefore holds that Plaintiffs met their burden by pleading that Defendants committed intentional torts, that Defendants expressly aimed their tortious conduct at the forum, and that Plaintiffs felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the Plaintiffs as a result of those torts. *See IMO*, 155 F.3d at 165–66. The Court holds that even if Plaintiffs' case for personal jurisdiction fails the traditional minimum contacts test, it still prevails under the effects test. The Court can and will exercise

personal jurisdiction over the intentional business torts allegedly committed by SSG Defendants and Jayaraman.

*iii.*    *Conspiracy Jurisdiction*

In the alternative that Plaintiffs' case for specific jurisdiction fails under both the traditional minimum contacts test and the effects test, the Court will consider whether their conspiracy allegations themselves cross the jurisdictional threshold. Conspiracy jurisdiction is an issue of state law. *Miller Yacht Sales, Inc.*, 384 F.3d at 102 & n.8 (citing *Stauffacher v. Bennett*, 969 F.2d 455, 460 (7th Cir. 1992)). It is not a distinct species within the genus of personal jurisdiction. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 846, F. Supp. 374, 379 (E.D. Pa. 1994). Rather, conspiracy jurisdiction simply expands the contacts prong of the analysis within the two established species personal jurisdiction—general jurisdiction and specific jurisdiction—by imputing the contacts of resident coconspirators to foreign coconspirators. *Id.* For this reason, courts often collapse their discussion of conspiracy jurisdiction into their traditional minimum contacts analysis. The Court will address conspiracy jurisdiction separately here, however, for two reasons: it is argued in the alternative and the Third Circuit's position on conspiracy jurisdiction is unclear.

a.    Overview of Conspiracy Jurisdiction

The Supreme Court has not directly addressed the conspiracy theory of personal jurisdiction. *Istituto Bancario Italiano SpA v. Hunter Engineering Co., Inc.*, 449 A.2d 210 (Del. 1982). Although the Third Circuit has not taken a firm position on this theory either, other federal courts of appeals and federal district courts have. *See, e.g., Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 425 & n.19 (D.C. Cir. 1991); *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1392 (7th Cir. 1983); *Arrington v. Colortyme, Inc.*, 972 F. Supp. 2d 733, 745 (W.D.

Pa. 2013); *Am. Bar Ass'n*, 846, F. Supp. at 379; *Ethanol Partners Accredited v. Wiener, Zuckerbrot, Weiss & Brecher*, 635 F. Supp. 15, 18 (E.D. Pa. 1985); *Vespe Contracting Co. v. Anvan Corp.*, 433 F. Supp. 1226, 1233 & n.9 (E.D. Pa. 1977); *see also Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343 (2d Cir. 1972) (suggesting that the conspiracy theory of jurisdiction may be a valid method of obtaining personal jurisdiction). *But see Kipperman v. McCone*, 422 F. Supp. 860, 879 (N.D. Cal. 1976) (rejecting the concept of conspiracy jurisdiction on constitutional grounds). As noted above, conspiracy jurisdiction is an issue of state law. Federal district courts in this forum have uniformly adopted conspiracy jurisdiction because it appears to be commensurate with Pennsylvania law. *See, e.g., Goodson v. Maggi*, 797 F. Supp. 2d 604, 621 (W.D. Pa. 2011) (citing *Santana Prods*, 14 F. Supp. 2d at 718); *Santana Prods.*, 14 F. Supp. 2d at 718 ("Under Pennsylvania law, personal jurisdiction of a non-forum co-conspirator may be asserted only where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum co-conspirator was aware or should have been aware of those acts."); *Raymark Indus, Inc. v. Baron*, No. CIV. 96-7625, 1997 WL 359333, at **1, 4 (E.D. Pa. June 23, 1997) ("Pennsylvania law requires proof that the co-conspirator was or should have been aware of the conspiratorial acts within the forum state. . . .").

There appears to be no universally accepted formulation of the conspiracy jurisdiction test.[24] District courts in this circuit have imposed on plaintiffs the burden to prove that a resident coconspirator 1) performed substantial acts in furtherance of the conspiracy within the forum, and 2) the foreign coconspirator was or should have been aware of those acts. *See, e.g., Am. Bar Ass'n*,

---

[24] Ann Althouse, *The Use of Conspiracy Theory to Establish In Personam Jurisdiction: A Due Process Analysis*, 52 FORDHAM L. REV. 234, 243 & n.57 (1983).

846 F. Supp. at 379–80; *Murray v. Nat'l Football League*, No. CIV. A. 94-5971, 1996 WL 363911, at **1, 16 (E.D. Pa. 1996) (citing *Am. Bar Ass'n*, 846 F. Supp. at 380). "Merely belonging to a civil conspiracy does not make a member subject to the jurisdiction of every other member's forum." *Id.* at 379 (citing *In re Arthur Teacher's Franchisee Litig.*, 92 F.R.D. 398, 411 (E.D. Pa. 1981)); *see also Com. ex rel. Pappert v. TAP Pharma. Products, Inc.*, 868 A.2d 624, 632 (Pa. Cmwlth. 2005) ("[B]are assertions of a conspiracy connection are insufficient to justify the exercise of personal jurisdiction."). The Court will apply this test.

Defendants' position is that they neither committed substantial acts in furtherance of a conspiracy for the wire transfers in Pittsburgh nor were they aware of them. SSG Def.'s Br. in Supp. of SSG's Mot. to Dismiss at pp. 10–11; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 9–11. The Court finds this position to be untenable considering the jurisdictional discovery that has been produced. This case is distinguishable from cases where no jurisdictional discovery was produced due to a lack of any prima facie evidence of physical or electronic contacts with the forum. *See, e.g.*, *Doe v. Hesketh*, 15 F. Supp. 3d 586, 596–602 (E.D. Pa. 2014) (declining to exercise personal jurisdiction over three persons charged with child pornography crimes because they neither accessed nor exchanged child pornography in Pennsylvania); *Baron*, 1997 WL 359333, at *5 (declining to order jurisdictional discovery because a plaintiff's conspiracy allegations were poorly pleaded).

b. The Substantial Acts Prong

This case is a far cry from the circumstance where a plaintiff only brings forth bald allegations without specific facts. *See, e.g.*, *Aardvark Event Logistics, Inc. v. Bobcar Media, LLC*, Civ. No. 16-5873, 2017 WL 59059, at **1, 7 (E.D. Pa. Jan. 5, 2017) ("In this case, plaintiff has not identified a single act, let alone substantial acts, that took place in Pennsylvania in furtherance

of the alleged conspiracy."). Plaintiffs plead with particularity that resident Defendant coconspirators—PISL, Madhavi, and Jayaraman—committed substantial acts in furtherance of a racketeering conspiracy in Pittsburgh by illicitly wiring bond funds from PSI's PNC Bank account to SSG Capital Partners and PSAL for illicit distribution among all Defendants. The Kulkarni and Amorose declarations establish that Madhavi and Jayaraman—acting at the behest of PISL and the rest of SSG Defendants—had operational control of the bond funds kept in PSI's PNC Bank account in Pittsburgh. *See* Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at p. 14; Kulkarni Decl. at p. 3, ¶ 12; Amorose Decl. at p. 2, ¶ 8. Further, Plaintiffs adequately pleaded that the resident Defendant coconspirators created bogus accounts receivable on PSI's books and MOUs for a sham "bond restructuring process" to hide their illicit conduct. *See* Pl.'s Compl. at p. 28–9, ¶ 282, 284; Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at p. 14. Defendants' counterargument that Plaintiffs' wire transfer allegations are insubstantial and de minimis have no serious support in any case law submitted to this Court. The wire transfer allegations embody the very essence of what the word "substantial" means in the context of racketeering, namely the illegal and fraudulent procurement of money.

### c. The Knowledge Prong

Plaintiffs have adequately pleaded that the foreign Defendant coconspirators—VTC, SSG Capital Partners, SSG Hong Kong, PSAL, Maheshwari, Noor, Goel, Him, and Vourloumis,— knew or should have known of substantial activity advancing the conspiracy. *See* Pl.'s Complaint at pp. 5–9, ¶¶ 58, 63, 68, 72, 76, 80, 84, 88, 92; Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss at pp. 14–15. Defendants' initial statement that Plaintiffs failed to argue this prong is swept away by the supplemental briefing and jurisdictional discovery submitted to the Court. *See* SSG Def.'s Supp. Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 11; Jayaraman's Br. in Supp. of Jayaraman's Mot.

to Dismiss at p. 10. The jurisdictional discovery reveals that Defendants are seemingly intertwined with one another through three corporate entities: VTC, SSG Capital Partners, and SSG Hong Kong. They are also affiliated with, and equity holders in, PISL and PSI. Kulkarni Decl. at p. 2, ¶¶ 4–5. The foreign entity Defendant coconspirators—SSG Capital Partners, PSAL, and VTC— allegedly had knowledge because they received fraudulent wire transfers to their bank accounts. Pl.'s Compl. Pandyar Decl. at p. 3, ¶ 12.

Plaintiffs have adequately pleaded that individual foreign Defendant coconspirators had knowledge as well. Goel himself requested a $2,500,000.00 wire transfer from PNC Bank in Pittsburgh to PSAL's Hang Seng Bank account in Hong Kong and coordinated with Pandyar to achieve that purpose. Pandyar Decl. at pp. 2–3, ¶¶ 7–13. Maheshwari communicated with Narayanan, Madhavi, Satish, and Goel to create PSAL and PSAL's Bank account that received fraudulent wire transfers. Amorose Decl. at pp. 3–9, ¶¶ 13–45. And Jayaraman, Him, Noor, and Vourloumis presumably had knowledge: Him, Noor, and Vourloumis served in high leadership positions in VTC and SSG Hong Kong. Jayaraman resided with his wife, Madhavi, in Pittsburgh during the timeframe when the alleged actionable conduct occurred and helped her convert the bond funds. *See* Pl.'s Compl. at pp. 3–5, 7–9, ¶¶ 28–53, 73–88; Amorose Decl. at p. 2–3, 8, ¶¶ 11–12; Pl.'s RICO Case Statement at pp. 3–4. Based on these findings, the Court holds that Plaintiffs' conspiracy allegations justify the exercise of specific personal jurisdiction over all SSG Defendants and Jayaraman. The Court will impute the contacts of resident Defendant coconspirators to all foreign Defendant coconspirators. This imputation remedies whatever defects exist in Plaintiffs' traditional minimum contacts analysis.

*B. Statutory Personal Jurisdiction*

Plaintiffs plead statutory personal jurisdiction through the RICO statute and the MCLA. Pl.'s Compl. at p. 27, ¶ 267 (citing 18 U.S.C. § 1956(b)(2), (f)); Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at p. 8; Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss at p. 3. The Court holds that statutory personal jurisdiction is present though the RICO statute, but not the MCLA.

Congressional legislation operates under a presumption against extraterritoriality. *RJR Nabisco, Inc. v. Euro. Community*, 136 S. Ct. 2090, 2100 (2016) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 255 (2010)). In that vein, the United States Supreme Court has interpreted the RICO statute to afford extraterritorial jurisdiction only to the extent that the predicate statutory offenses underlying it are themselves extraterritorial. *RJR*, 136 S. Ct. at 2103. MCLA Section 1956 authorizes extraterritorial jurisdiction in certain circumstances:

> (b) Penalties
>
> ***
>
> > (2) Jurisdiction over foreign persons.—For purposes of adjudicating an action filed or enforcing a penalty under this section, district courts shall have jurisdiction over any foreign person, including any financial institution authorized under the laws of a foreign country, against whom the action is brought, if service of process upon the foreign person is made under the Federal Rules of Civil Procedure or the laws of the country in which the foreign person is found, and—
> >
> > > (A) the foreign person commits an offense under subsection 9(a) involving a financial transaction that occurs in whole or in parting the United States;
> > >
> > > (B) the foreign person converts, to his or her own use, property in which the United States has an ownership interest by virtue of the entry of an order of

> forfeiture by a court of the United States; or

> (C) the foreign person is a financial institution that maintains a bank account at a financial institution in the United States.

> \*\*\*

> (f) There is extraterritorial jurisdiction over the conduct prohibited by this section if—

>> (1) the conduct is by a United States citizen or, in the case of a non-United States citizen, the conduct occurs in part in the United States; and

>> (2) the transaction or series of related transactions involves funds of monetary instruments of a value exceeding $10,000.

18 U.S.C. § 1956(b)(2), (f). Defendants object that Plaintiffs cannot use the MCLA's jurisdictional hook to establish personal jurisdiction because the MCLA does not create a remedy for a private cause of action. *See* SSG Def.'s Br. in Supp. of Def.'s Mot. to Dismiss at p. 6. SSG Defendants also argue that Plaintiffs cannot establish personal jurisdiction under the RICO statute itself. Although the Court agrees that personal jurisdiction is unavailable under the MCLA, the Court holds that it is available under the RICO statute.

## 1. Personal Jurisdiction under the MCLA

Defendants are correct in asserting that neither a private cause of action nor personal jurisdiction are available under the MCLA. Dismissal for a lack of federal question subject matter jurisdiction because of the insufficiency of a federal claim is permissible only when the claim is "'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Envir.*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. Cnty. of Oneida*, 414 U.S. 661,

666 (1974)). The United States Supreme Court outlined a four factor test for determining whether a statute contains a private cause of action: 1) whether the plaintiff is of a class for whose benefit the statute was enacted, 2) is there evidence of legislative intent—explicit or implicit—to create or deny a remedy, 3) is a private cause of action consistent with the purpose of the legislative scheme, and 4) is the alleged cause of action traditionally relegated to state law such that it would be inappropriate to infer a federal cause of action. *Cort v. Ash*, 422 U.S. 66, 78 (1975). Under these factors, a private cause of action under the MCLA is implausible and devoid of merit. *See Cort*, 422 U.S. at 78; *see also Dubai Islamic Bank v. Citibank, N.A.*, 126 F. Supp. 2d 659, 668 (S.D.N.Y. 2000); *Thompson v. Kramer*, Civ. A. No. 93-2290, 1994 WL 725953, at **1, 15 (E.D. Pa. 1994) (citing cases); *Schwartz v. F.S. & O. Assocs., Inc.*, No. 90 Civ. 1606 (VLB), 1991 WL 208056, at **1, 2 (S.D.N.Y. Sept. 27, 1991). Plaintiffs neither argue for, nor offer affirmative evidence in support of, the notion that the MCLA creates a private cause of action. Further, those courts that have weighed the *Cort* factors on this issue agree that Congress never intended for the MCLA to offer a civil remedy. "Jurisdiction," as the United States Court of Appeals for the District of Columbia observed in *Untied States v. Vanness*, 85 F.3d 661, 663 & n.2 (D.C. Cir. 1996), "is a word of many, too many meanings." Plaintiffs adopted the wrong meaning here and misconstrued an extraterritorial jurisdictional provision in a criminal statute as authorizing personal jurisdiction for a civil remedy. The MCLA does not provide an independent statutory basis for personal jurisdiction because it does not authorize a civil remedy. The Court holds that it cannot exercise personal jurisdiction over Defendants through MLCA Section 1956(b)(2), (f).

## 2. Personal Jurisdiction under RICO

The Court's finding that there is no private cause of action under the MCLA does not end the inquiry. There remains a question of whether the Court can exercise personal jurisdiction over

all Defendants through the RICO statute itself. RICO authorizes civil remedies for violating Section 1962. 18 U.S.C. § 1964(c). The circuits are split on what provision governs personal jurisdiction in RICO claims. The minority position adopted by the United States Courts of Appeals for the Fourth and Eleventh Circuits holds that RICO Section 1965(d) controls. *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 627 (4th Cir. 1997); *Rep. of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 940–41 (11th Cir. 1997). Under the majority position adopted by the United States Courts of Appeals for the Second, Seventh, Ninth, Tenth, and District of Columbia Circuits, RICO Section 1965(b) controls. *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65, 71–72 (2d Cir. 1998); *Lisak v. Mercantile Bancorp, Inc.*, 834 F.2d 668, 671 (7th Cir. 1987); *Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1231 (10th Cir. 2006); *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1099 (D.C. Cir. 2008).

The United States Court of Appeals for the Third Circuit recently joined the majority position, and so RICO Section 1965(b) will control here. *See Laurel Gardens, LLC v. McKenna*, No. 18-3758, 2020 WL 202215, at **1, 1 (3d Cir. Jan. 14, 2020) (published, reporter numbers pending). RICO Section 1965(b) provides that

> In any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States by the marshal thereof.

18 U.S.C. § 1965(b). The circuits comprising the majority differ on points of nuance in interpreting the "ends of justice" language. All courts of appeals comprising the majority position except the Seventh Circuit interpret Section 1965(b) as requiring that at least one defendant satisfy traditional personal jurisdiction requirements. The Third Circuit joined this so-called "majority within the majority" by requiring that at least one RICO defendant have minimum contacts with the forum.

*Laurel Gardens*, 2020 WL 202215, at *7. The Ninth Circuit interprets the "ends of justice" language in Section 1965(b) as imposing a second requirement, namely that the district court can only exercise personal jurisdiction over a RICO claim if no other district has personal jurisdiction over all the alleged coconspirators. The Tenth Circuit has explicitly rejected this view. *Cory*, 468 F.3d at 1233. The Third Circuit has not taken a position on that issue. This Court will not take a position either.

Plaintiffs pleaded plausible violations of the RICO statute by all Defendants. The only cases raised by Defendants in support of their position are easily distinguishable because the complaints in those cases neither alleged racketeering activities nor predicate offenses to the RICO statute. *Compare Marten v. Godwin*, 499 F.3d 290, 294 (3d Cir. 2007) (alleging defamation in violation of state law and violation of the First Amendment under 42 U.S.C. § 1983), *and Pop Test Cortisol, LLC v. Univ. of Chic.*, NO. 14-cv-7174, 2015 WL 3822237, at **1, 5 (D. N.J. June 18, 2015) ("The Complaint does not allege a pattern of racketeering or explain what predicate acts of racketeering each defendant supposedly committed."), *with* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 6 ("Plaintiffs have failed to establish—and cannot establish—any of these elements" (citing *Marten*, 499 F.3d at 297)), *and* SSG Def.'s Reply in Supp. of SSG Def.'s Mot. to Dismiss at pp. 6–7 ("Initially, Plaintiffs fail to state a plausible RICO claim, which is necessary for the assertion of jurisdiction under the RICO statute (citing *Pop Test Cortisol*, 2015 WL 3822237, at *5)). The Complaint here, on the other hand, alleged both. Pl.'s Compl. at pp. 24–29, ¶¶ 231– 88. The Court holds that the traditional minimum contacts test is satisfied. Under *Laurel Gardens* and *RJR Nabisco*, the Court will exercise extraterritorial personal jurisdiction over all SSG Defendants. *See* 18 U.S.C. § 1965(b); *RJR Nabisco*, 136 S. Ct. at 2122; *Laurel Gardens*, 2020 WL 202215, at *7.

For the foregoing reasons, the Court holds that it can exercise specific personal jurisdiction under Pennsylvania's long-arm statute and statutory jurisdiction under the RICO statute over SSG Defendants and Jayaraman. The Court holds that Jayaraman waived personal jurisdiction by failing to respond to Plaintiffs' request for admissions. In the alternative that Jayaraman did not waive personal jurisdiction, the Court holds that it can exercise specific personal jurisdiction under the Pennsylvania's long-arm statute and statutory jurisdiction under the RICO statute over him as well. The remaining bases Plaintiffs assert for personal jurisdiction over Defendants are unavailable.

## IV.    Venue

Federal Rule 12(b)(3) allows a federal court to dismiss a case for lack of venue. Plaintiffs plead venue under 28 U.S.C. § 1391 and 18 U.S.C. § 1965. Pl.'s Compl. at p. 9, ¶ 96. SSG Defendants and Jayaraman move for dismissal under the common law conflict-of-laws doctrine of forum non conveniens. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 19; Jayaraman Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 17–18. That doctrine is now codified at 28 U.S.C. § 1404(a) with respect to transfers within the federal system. *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 61 (2013). Section 1404(a) provides that "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The doctrine remains a matter of federal common law as to transfers abroad. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (citing *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 & n.2 (1994)). SSG Defendants' and Jayaraman's motions to dismiss due to the inconvenience of the forum will both be denied.

*A. Forum Non Conveniens*

The purpose of the federal common law doctrine of forum non conveniens is to determine where trial will be convenient and just. *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 562 (S.D.N.Y. 1996) (citing *R. Maganlal & Co. v. M.G. Chem. Co., Inc.*, 942 F.2d 164, 167 (2d Cir. 1991)). A plaintiff's choice of forum should rarely be disturbed. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258 (1981). The presumption of the appropriateness of the forum is less weighty when a plaintiff's forum of choice is not their home forum. *Id.* The Third Circuit dictates that a district court must follow a three step analysis when making a forum non conveniens determination: it must decide whether a defendant failed to 1) show an alternative forum exists, 2) undercut the presumption that a plaintiff's choice of forum is proper, and 3) show that the balance of public and private interest factors favors dismissal. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 190 (3d Cir. 2008). Private interest factors include a) the ease of access to sources of proof, b) the availability of compulsory process for attendance of unwilling witnesses, c) the cost of obtaining attendance of willing witnesses, d) practical problems involving the efficiency and expense of a trial, e) enforceability of judgments, and f) imposing jury duty on citizens of the forum. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). Public interest factors include a) administrative difficulties flowing from court congestion, b) the local interest in having controversies decided at home, and c) the avoidance of unnecessary problems in the application of foreign law. *Id.* The court has discretion to dismiss based on the balance of these factors. Defendants bear a heavy burden of proving that the balance of these factors favor a foreign forum. *Sinochem*, 549 U.S. at 430 (citing *Piper Aircraft*, 454 U.S. at 255–56). SSG Defendants and Jayaraman failed their burden at each step.

*B. Alternative Forum*

SSG Defendants and Jayaraman have failed their burden to show that an adequate alternative forum exists. Neither SSG Defendants nor Jayaraman provided an alternative forum in their briefs in support of their motions to dismiss. *Compare* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 19–21, *with* Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 17–18. They did provide alternative forums in their replies—Hong Kong and India respectively. *Compare* SSG Def.'s Reply in Supp. of SSG Def.'s Mot. to Dismiss at p. 12 (Hong Kong), *with* Jayaraman's Reply in Supp. of Jayaraman's Mot. to Dismiss at p. 3 (Hyderabad, India).[25]

The Court, in considering Defendants' proposals for alternative forums, finds them wholly unpersuasive. SSG Defendants briefly contend that Hong Kong is a preferable forum in Part II.D of their reply because there is ongoing litigation between the parties there. Yet they fail to explain the context of that litigation beyond a few scraps of transcript from a hearing a year ago in February 2019. *See* SSG Def.'s Reply in Supp. of SSG Def.'s Mot. to Dismiss at p. 12.[26] Likewise, Jayaraman's case for Hyderabad as an alternative forum in Part III of his reply is also unavailing. It consists of a mere three sentences asserting that Hyderabad is preferable because that is where Jayaraman and PISL reside and "a large volume of documents and witnesses" are located.

---

[25] Plaintiffs move to strike the Jayaraman's reply, arguing that it inappropriately raised arguments regarding alternative forums for the first time. The Court agrees that the both reply briefs were not "true" replies. However, the Court declines to strike the briefs because, as explained herein, even considering the arguments proffered therein, the Defendants failed to establish an appropriate alterative forum.

[26] The Court finds no basis for the proposition that Hong Kong is a preferable forum in the High Court of the Hong Kong Special Administrative Region's judgment of July 16, 2019. To the contrary, that judgment references to this case suggest that this Court is the appropriate venue. *See Miscellaneous Proceedings No 1082 of 2017*, [2019] HKCFI at pp. 12, 55–56, 57, 74, 90.

Jayaraman does not specify what kinds of documents or which witnesses. Jayaraman also fails to explain how Hyderabad, India would be a preferable forum as to all Defendants, not just him. *See* Jayaraman's Reply in Supp. of Jayaraman's Mot. to Dismiss at pp. 2–3. Finally, neither SSG Defendants nor Jayaraman explain how substantive Hong Kong law and Indian law will provide Plaintiffs with appropriate remedies. For these reasons, the Court holds that SSG Defendants and Jayaraman failed their burdens to propose alternative forums at step one.

### C. Presumption that Plaintiffs' Choice is Proper

Second, SSG Defendants and Jayaraman fail to meet their burdens to undercut the presumption that Plaintiffs' choice of forum is appropriate. A plaintiff can bolster deference to their preferred forum by providing evidence of convenience. *See Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 875–76 (3d Cir. 2013). Plaintiffs have done so here by furnishing jurisdictional discovery showing that Defendants' alleged conspiracy was mainly orchestrated by Madhavi and Jayaraman while they were in Pittsburgh. Although SSG Defendants and Jayaraman argue that all relevant parties, witnesses, evidence, and actionable conduct associated with this case took place outside Pennsylvania—outside the United States in fact—these arguments are unpersuasive. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at pp. 20–21; Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 17–18. SSG Defendants and Jayaraman are effectively asking the Court to do exactly what the Third Circuit instructs it not to do: "assign 'talismanic significance to the citizenship or residence of the parties. . . .'" *See Kisano*, 737 F.3d at 875 (quoting *Pollux Holding Ltd. v. Chase Manhattan Bank*, 329 F.3d 64, 73 (2d Cir. 2003)).

Though Kyko is a foreign plaintiff, PSI is a resident and citizen of the United States, therefore, its preference is entitled to considerable deference. Although PSI is not entitled to an absolute right to maintain an action in this country, its election of this forum cannot be disregarded

because there is no evidence that this Court's retaining jurisdiction will cause manifest injustice to Defendants. *See Burke v. Quartey*, 969 F. Supp. 921, 929 (D.N.J. 1997) (citing *Hoffman v. Goberman*, 420 F.2d 423, 428 (3d Cir. 1970); and then citing *Am. Cyanamid Co. v. Picaso-Anstalt*, 741 F. Supp. 1150, 1155 (D.N.J. 1990)). The foreign citizenship and residency of Kyko may slightly decrease the level of deference owed to their preference. But this slight decrease in deference does not justify a transfer of venue to forums that Defendants neither mentioned in their initial briefs nor adequately discussed in their replies.[27] The Court holds that SSG Defendants and Jayaraman failed their burdens at step two.

### D. Public and Private Interest Factors

Third, SSG Defendants and Jayaraman have failed their burden to show that the balance of public and private interest factors favor dismissal. SSG Defendants' and Jayaraman's briefing of the public interest and private interest factors is scant to nonexistent. *Compare* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at pp. 19–21, *and* SSG Def.'s Reply in Supp. of SSG Def.'s Mot. to Dismiss at p. 12, *and* Jayaraman's Br. in Supp. of Jayaraman's Mot. to Dismiss at pp. 17–18, *and* Jayaraman's Reply in Supp. of Jayaraman's Mot. to Dismiss at pp. 1–3 *with* Pl.'s Br. in Opp. to SSG Def.'s Mot. to Dismiss at p. 24, *and* Pl.'s Br. in Opp. to Jayaraman's Mot. to Dismiss at p. 19. Their lack of due diligence is fatal to their argument.

---

[27] Defendants never propose a transfer of venue under 28 U.S.C. § 1404(a) to the United States District Court for the Western District of Washington. This is curious, given that some of the actionable conduct in this case took place there, the parties previously litigated a civil case there, and there is a pending criminal indictment there against Madhavi for a money laundering conspiracy potentially related to Plaintiffs' RICO claim here. At any rate, Defendants have not contested Plaintiffs' statement that the claims here are unrelated to the claims previously litigated in the consolidated Washington district court case. *See* Pl.'s Supp. Br. in Opp. to SSG Def.'s Mot. to Dismiss Ex. I" at p. 9, ¶ 20; Pl.'s RICO Case Statement at pp. 4, 7.

### 1. Private Interest Factors

As to the private interest factors, the Court holds that adjudicating this controversy in this forum would not unduly hazard access to sources of proof, hinder the availability of compulsory process, or impose exorbitant costs for obtaining willing witnesses. Moreover, neither SSG Defendants nor Jayaraman have identified any special problems this forum would pose in terms of efficiency and expediency of trial, jury selection, or the enforceability of the Court's judgment.

### 2. Public Interest Factors

As to the public interest factors, SSG Defendants and Jayaraman have similarly failed to note any administrative difficulties flowing from court congestion or issues with applying foreign law. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). Plaintiffs seek relief under federal law and Pennsylvania law. Defendants never challenge choice-of-law. Thus, the Court is not plagued by an exhausting choice-of-law analysis, such as those that often present themselves in international commercial disputes featuring choice-of-law clauses. The Court knows federal law and Pennsylvania and can readily apply them. The majority of the public interest factors are, in other words, neutral. *See Wall v. Corona Cap., LLC.*, 221 F. Supp. 3d 552, 559 (W.D. Pa. 2016).

Local interest, however, is a public interest factor that seems to favor the resolution of this controversy in this forum. It is true that some Defendants reside in Hyderabad, India. It is also true that PSAL, the alleged sham pass-through entity Defendants used to launder stolen bond funds, is incorporated in Hong Kong and related actionable conduct associated with it took place in Hong Kong. But those facts do displace the interest of justice in seeing the vindication of Plaintiffs where the center of the conspiracy allegedly occurred: Pittsburgh. The Court therefore holds that SSG Defendants and Jayaraman failed their burden at step three.

*E. Conclusion*

That Plaintiffs are seeking treble damages under their RICO claim does not detract from the convenience of this forum, for the Court has already established the local interest here and that it can exercise both subject matter jurisdiction and personal jurisdiction. Defendants, by conducting business activities in Pittsburgh, Pennsylvania, availed themselves of this forum—this jurisdiction—this venue. Ultimately, the forum non conveniens analysis comes down one essential factor: there is a showing of substantial evidence of liability in Pennsylvania. The Court holds that it is highly convenient to adjudicate this controversy here. SSG Defendants' and Jayaraman's motions to dismiss under the doctrine of forum non conveniens will be denied under Rule 12(b)(3). *See* FED. R. CIV. P. 12(b)(3).

## CONCLUSION

AND NOW, this 10th day of March 2020, IT IS HEREBY ORDERED that SSG Defendants' Motion to Strike Affidavits (ECF No. 111) is DENIED. Plaintiffs' Motion to Strike Defendant Anandhan Jayaraman's Reply Brief in Support of Motion to Dismiss (ECF No. 116) is GRANTED IN PART and DENIED IN PART. Plaintiffs' request to strike Jayaraman's discussion of personal jurisdiction and his jurisdictional discovery is GRANTED. The discussion of personal jurisdiction in the Reply Brief in Support of Motion to Dismiss by Anandhan Jayaraman (ECF No. 112) is STRUCK. The Affidavit of Anandhan Jayaraman Respecting Jurisdictional Facts (ECF No. 113) and the Affidavit of Satish Kumar Vuppalapati Respecting Jurisdictional Facts (ECF No. 114) are STRUCK. Plaintiffs' request to strike Jayaraman's discussion of forum non conveniens is DENIED. The Court will not strike the discussion of forum non conveniens in Part II.D of SSG Defendants' Reply in Support of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). Defendant Anandhan Jayaraman's Motion to Withdraw Admissions (ECF No. 119) is DENIED. SSG Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 25) and the Motion to Dismiss on Behalf of Defendant Anandhan Jayaraman (ECF No. 103) are DENIED.

**WILLIAM S. STICKMAN IV**
**UNITED STATES DISTRICT JUDGE**