**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation<br><br>              Plaintiffs,<br><br>v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation,  SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company<br><br>              Defendants. | Case No. 2:18-cv-1290-WSS |

## PLAINTIFFS' BRIEF IN OPPOSITION TO SSG DEFENDANTS' MOTION FOR RECONSIDERATION, OR IN THE ALTERNATIVE, TO CERTIFY FOR INTERLOCUTORY APPEAL

NOW COME Plaintiffs Kyko Global, Inc., Kyko Global GmbH, and Prithvi Solutions Inc. (collectively "Plaintiffs") and state the following as their Brief in Opposition to SSG Defendants' Motion For Reconsideration, or in the Alternative, to Certify for Interlocutory Appeal.

## <u>INTRODUCTION</u>

Plaintiffs' filed their Complaint on September 26, 2018.  Since January 15, 2019, when the SSG Defendants filed their Motion to Dismiss [ECF 25], the parties have submitted a combined total of approximately 620 pages of briefing and exhibits regarding the SSG Defendants' Motion to Dismiss, jurisdictional discovery, and Mr. Jayaraman's Motion to Dismiss.[1] [ECF 103]  This Court undertook an extensive review of the parties' submissions which lasted approximately 1½ months after briefing concluded and then issued a thoroughly well-reasoned  84 page Memorandum Opinion (the "Opinion") on March 10, 2020 denying the SSG Defendants' Motion to Dismiss as well as issued an Order Scheduling Case Management Conference [ECF 123] -- the precursor to merits discovery.

Unhappy with this Court's Opinion, the SSG Defendants now file an additional approximate 55 pages of briefing and exhibits[2] to have the Court "reconsider" its Opinion.  In doing so, the SSG Defendants now tell the Court that it wasted its time: the Court got the facts wrong; the Court got the law wrong; and the Court does not know how to apply facts to law.

The SSG Defendants' strategy is simple:  try to make as much "noise" as possible and hope that something sticks.  To do this, the SSG Defendants attempt to re-litigate matters the

---

[1] This includes all briefs and exhibits regarding the SSG Defendants' Motion to Dismiss, Mr. Jayaraman's Motion to Dismiss, Plaintiffs' Motion to Strike Mr. Jayaraman's Reply Brief/Discovery Responses, Supplemental Jurisdiction Briefs, Mr. Jayaraman's Motion to Withdraw Admissions, and the SSG Defendants' Motion to Strike Declarations.

[2] The so-called "exhibits" are nothing but impermissible extended argument from the SSG Defendants' Motion and Brief. Moreover, Plaintiffs assert that the SSG Defendants' Brief violates this Court's Practices and Procedures because a Motion for Reconsideration is not a dispositive motion, and therefore, the SSG Defendants were limited to a total of 10 pages of briefing and must seek leave to file a reply brief.

Court has already decided, drum up new so-called legal and fact issues that do not exist, and argue matters that they failed to raise in their original briefings.

At its core, the SSG Defendants simply do not like that the Court found what the law and the facts clearly compel - personal jurisdiction exists over them - because they hoped that this issue would dispose of the entire case.  Frustrated that it did not, the SSG Defendants state that the Court committed "manifest factual errors," and engaged in an "erroneous" personal jurisdiction analysis, and as a fallback to try to obtain dismissal, they state that the Court engaged in a "flawed" subject matter jurisdiction analysis.  In short, they simply argue with the Court in the hope that they will get a different result.

The reason for doing this? The SSG Defendants fear what merits discovery will reveal.[3] The SSG Defendants have repeated time and again for approximately 1½ years that their involvement with Prithvi Solution Inc.'s ("PSI") bond funds was legitimate and that the SSG entities do not owe any money to PSI pursuant to a loan agreement that appears on PSI's books and records.  But when it comes to merits discovery into the SSG Defendants' professed innocence, they want nothing to do with it. The desire to avoid merits discovery is so strong, that the SSG Defendants now request this Court to stay all discovery and permit them the extraordinary relief of interlocutory appeal in the event their Motion is denied.

This case is already 1½ years old.  Jurisdictional discovery has taken place and volumes of briefs and exhibits have been filed.  The Court has ruled.  It is time to move forward with the standard merits discovery process.  As is standard in any civil case, after merits discovery the Court can revisit this matter at the summary judgment stage to the extent necessary or let the jury have the final say.

---

[3] And as set forth in Plaintiffs' Response to the SSG Defendants' Motion for Stay, this Motion and the Stay Motion are legal ploys to try to close on a business transaction pending in India that has been held up due to the existence of this lawsuit.

## ARGUMENT

### I.  Standard of Review.

"Effective trial court management requires a presumption against reconsideration of interlocutory decisions."  In Re Anthanassious, 418 F. App'x 91, at *3 (3rd Cir. 2011).  In Black Bear Energy Services Inc. v. Youngstown Pipe & Steel LLC, 2017 WL 3481068, Case No. 15-50, at *3 (W.D. Pa. Aug. 14, 2017), the court stated:

> While "district courts have more discretion in reconsidering interlocutory orders than in revising final judgments," Foster v. Westchester Fire Ins. Co., Civ. Action No. 09-1459, 2012 WL 2402895, at *4 (W.D. Pa. June 26, 2012), the Third Circuit Court of Appeals has held that "[t]he trial court must, of course, exercise this authority in a responsible way, both procedurally and substantively," and that "[e]ffective trial court management requires a presumption against reconsideration of interlocutory decisions." In re Anthanassious, 418 Fed.Appx. 91, 96 (3d Cir. 2011). Thus, courts should exercise this inherent power with a "light hand." Foster, 2012 WL 2402895, at *4 n.1. In discussing the scope of a district court's discretion to reconsider an interlocutory decision, the Third Circuit Court of Appeals has held that while " '[a] court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance ... as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would make a manifest injustice.' " In re Pharmacy Benefit Managers, 582 F.3d 432, 439 (3d Cir. 2009) (quoting Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 816 (1988)).

As further stated in Qazizadeh v. Pinnacle Health System, 214 F.Supp.3d 292, 295-296 (M.D. Pa. 2016):

> Before entertaining a motion for reconsideration of an interlocutory order, the movant must still establish good cause for why the court should revisit its prior decision. See Confer v. Custom Eng'g Co. Emp. Health Benefit Plan, 760 F.Supp. 75, 77 (W.D. Pa. 1991). Moreover, whether involving a final or interlocutory order, a motion for reconsideration is "not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." Ogden v. Keystone Residence, 226 F.Supp.2d 588, 606 (M.D. Pa. 2002) (citation omitted). A reconsideration motion should not be used to try to get a "second bite at the apple," Kropa v. Cabot Oil & Gas Corp., 716 F.Supp.2d 375, 378 (M.D. Pa. 2010), or to raise new arguments or *296 evidence that could have been proffered prior to the issuance of the order in question, McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co., 817 F.Supp. 538, 541 (M.D. Pa. 1993).[4]

### II. This Court Did Not Make "Manifest Factual Errors."

The SSG Defendants claim that this Court made "manifest factual errors" that caused the

---

[4] By filing this Response, Plaintiffs do not waive the right to make additional/different arguments later in this case or on appeal (including claims of error) regarding any order entered in this case and expressly reserve all rights with respect to same.

Court to make "erroneous legal conclusions." (Brf. Pgs. 8-9).  In particular, the SSG Defendants assert that the inclusion of Prithvi Information Solutions Ltd ("PISL"), Prithvi Asia Solutions Limited ("PASL"), and Madhavi Vuppalapati[5] as a "SSG Defendant" somehow converts the Court's entire 84 page Opinion into a nullity. The SSG Defendants protest: "The Court's incorrect definition is neither harmless nor inconsequential." (Brf. Pg.8).

The reality, of course, is that this Court's reference to these Defendants as "SSG Defendants" is harmless.  On pages 5-8 of the Opinion, the Court discusses in great detail, and on an *individual basis*, all the parties and non-parties involved in this action and their relationships to each other. Thus, notwithstanding the Court's passing references to "SSG Defendants" or "Defendants" in its Opinion (which appears to be done for sake of brevity), the Court was clearly aware of the relevant parties and non-parties at issue and their relationships to each other and the claims asserted in this case.

The SSG Defendants' argument that this Court made "manifest factual errors" discussed above is in reality an admonishment to this Court that it did not make the factual findings the SSG Defendants hoped the Court  would make.  Accordingly, the SSG Defendants now attempt to supply this Court with a version of their own which this Court must now accept unless the Court make "manifest factual errors."  (Brf. Pgs. 10-12); (Exhibits "A," "B," and "C" of the Motion).

The Court properly refused to accept the SSG Defendants' version of jurisdictional facts because it is legally bound to accept *Plaintiffs'* allegations as true and construe all disputed facts in *Plaintiffs' favor.*[6]  See Miller Yacht Sales Inc. v. Smith, 384 F.3d 93, 97 (3rd Cir.

---

[5] On September 25, 2019, this Court explicitly informed SSG Defendants' counsel that the Court was aware that, "you [SSG Defendants' counsel] don't represent Miss Vuppalapati ..." [Sept. 25, 2019 Trs. Pg. 8).

[6] As the Court correctly held: "All allegations made by a plaintiff are accepted as true and all disputed facts are

2004)("[W]hen the court does not hold an evidentiary hearing on the motion to dismiss [for lack of personal jurisdiction], the plaintiff need only establish *a prima facie case* of personal jurisdiction *and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor*." (Emphasis Added)); In re Magnetic Audiotape Antitrust Litigation, 334 F.3d 204, 206 (3rd Cir. 2003) (holding that plaintiff's averments of jurisdictional facts are accepted as true, and when jurisdictional discovery has occurred, but no evidentiary hearing is conducted, plaintiff's factual averments should be "credited" to determine whether personal jurisdiction exits)(Citation Omitted).

Indeed, the SSG Defendants are precluded from trying to defeat personal jurisdiction by merely denying jurisdictional facts.  As set forth in  Feinberg Inc. v. Central Asia Capital Corp. Limited, 936 F.Supp. 250, 254 (E.D. Pa. 1996), the court stated in pertinent part:

> In ascertaining whether Plaintiff has established a *prima facie* case, the Court does not act as a fact-finder ... , the court disposing of a 12(b)(2) motion does not weigh the controverting assertions of the party seeking dismissal.... **[This rule] prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts....** (Citation Omitted)(Emphasis Added).

Like Rule 12(b)(2), Plaintiffs' factual averments are required to be accepted as true under Rule 12(b)(6) and 12(b)(1).  See Connelly v. Lane Construction Corp., 809 F.3d 780, 786 (3rd Cir. 2016)("To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, **accepted as true**, to state a claim to relief that is plausible on its face.")(Emphasis Added)(Citation Omitted)[7];  D.C. v. Pittsburgh Public Schools, 415 F.Supp.3d 636, 649 (W.D. Pa. 2019)("In a facial challenge [under Rule 12(b)(1)], the court looks to the face of the complaint and **accepts as true** the facts alleged by the plaintiff.")(Emphasis

_____

construed in a plaintiff's favor ... To that end, any conflicts between the evidence submitted by a plaintiff and a defendant are construed in a plaintiff's favor."  (Op. at 26).

[7] As this Court correctly held: "A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face." (Op. at 27). As further stated in Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000), the "complaint's factual allegations [are accepted] as true ... and must [be given] "the benefit of all inferences that can be derived from the facts alleged."

Added)(Citation Omitted).[8]

This Court provided the parties with an extensive opportunity to create the record they wanted this Court to review.  Disappointed with the result, the SSG Defendants now seek to create a new record in the hope that, by making enough clamor, the Court will somehow change its mind and view the facts in *their* favor in contravention of the governing law.

In short, this is not summary judgment; and there has been no jury trial conducted that permits the SSG Defendants to file what amounts to an attempted pseudo motion for JMOL. Indeed, the SSG Defendants know that to get to the summary judgment/trial stage, merits discovery will have to be conducted, additional witnesses will need to be examined/cross-examined, and additional documents produced. They simply do not want that to happen.[9]  The solution?  Ignore the law with respect to Rule 12(b)(1), (2), (6), supply this Court with a self-serving version of facts, and then tell the Court that it must find these facts as true upon pain of making "manifest factual errors."

The SSG Defendants' Motion must be denied.

### III.  The Court's Personal Jurisdiction Analysis Is Correct.

### A. The Court's Opinion Comports with <u>Walden</u>.

The SSG Defendants assert that this Court's personal jurisdiction analysis did not comport with <u>Walden v. Fiore</u>, 571 U.S. 277 (2014).  This argument fails.

In <u>Walden</u>, a police officer seized cash from Nevada citizens who were at an Atlanta, Georgia airport because he believed it to be illicit drug proceeds. The police officer then assisted

---

[8] As this Court correctly held: "SSG Defendants and Jayaraman assert facial challenges to the Court's subject matter jurisdiction over this matter under Rule 12(b)(1), therefore, the Court will presume the truthfulness of the allegations in the Complaint." (Op. at 37).

[9] By way of example and not limitation, the Court stated: "The Court will permit the parties to engage in discovery to parse whatever distinctions there may be between SSG Defendants, Jayaraman, and the alleged enterprise(s) they collectively formed for racketing activities."  (Op. at 46).  The SSG Defendants are concerned regarding what this discovery will reveal. (Brf. 9).

in the creation of an affidavit to show probable cause for the seizure which was sent to the U.S. Attorney's office in Georgia.

The Nevada citizens sued the police officer in Nevada. The District Court found that the search and seizure, having occurred in Georgia, precluded the exercise of personal jurisdiction even if the police officer knew that the harm would be experienced in Nevada (the place of residence). A divided panel of the Ninth Circuit Court of Appeals reversed holding that personal jurisdiction could be exercised given the police officer's affidavit that he submitted to the U.S. Attorney's Office in Georgia because the police officer knew that it would ultimately affect the Nevada citizens in Nevada. The Supreme Court reversed.

As set forth above, Walden has no factual relevance to this case. In any event, against this factual backdrop, Walden opined as follows regarding specific personal jurisdiction: (i) "[T]he relationship must arise out of contacts that the 'defendant *himself* ' creates with the forum State" Id. at 284 (Emphasis Included); (ii) The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there" Id. at 285; (iii) "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction ... physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." Id. at 285; and (iv) "[I]t is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." Id. at 285.

A plain reading of this Court's Opinion Pgs. 58-71 shows that the elements of Walden are clearly satisfied. The SSG Defendants simply do not like the Court's Opinion and attempt to foist their version of events upon the Court - as discussed in Section II - to re-argue matters this

Court has already decided (Brf. Pgs. 12-17).[10]  Accordingly, the Motion should be denied.

**B. <u>Walden</u> Does Not "Drastically Limit" <u>Calder</u>.**

This Court ruled that personal jurisdiction exists under the traditional personal jurisdiction test.  As an alternative, the Court also found that personal jurisdiction exists under the <u>Calder</u> "effects test." Not liking the Court's Opinion, the SSG Defendants now assert that this Court misapplied the "effects test" because <u>Walden</u> "drastically limited <u>Calder</u>'s meaning and reach." (Brf. Pgs. 17-18). This argument fails.

The <u>Calder</u> "effects test" contains the following elements: (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.  <u>Imo Industries Inc. v. Kiekert AG</u>, 155 F.3d 254, 265-266 (3rd. Cir. 1998).

This Court, citing <u>Imo Industries</u> 155 F.3d at 265, stated: "The Circuit interprets the

---

[10] Try to manufacture a legal issue when none exists, the SSG Defendants also accuse the Court of failing to address each Defendant's specific contacts when the Opinion has clearly done so.  In any event, throughout this case the SSG Defendants have referred to themselves in the collective as "SSG Defendants" and made both fact and legal argument in the collective. For example, and without limitation, the SSG Defendants state the following in their Supplemental Personal Jurisdiction Brief:

> Extensive written discovery and roughly 12 hours of deposition testimony have unequivocally confirmed that the **SSG Defendants** had no contacts with Pennsylvania relating to Plaintiffs' allegations. As the **three SSG witnesses testified** throughout their depositions, the **SSG Defendants** only had contacts with Prithvi Information Solutions, Ltd. ("PISL"), the Indian company, which all took place in India or Hong Kong. The **SSG Defendants** had no contacts with Prithvi Solutions, Inc. ("PSI"), the U.S. company. The **SSG Defendants** have no general presence in Pennsylvania and, with respect to the matters set forth in the Complaint, have not directed any activities into Pennsylvania. This Court should dismiss the **SSG Defendants** for lack of personal jurisdiction. [Doc. No. 108, Pg. 1](Emphasis Added).

Accordingly, not only is the SSG Defendants' accusation false, it is unfair to this Court and hypocritical as the SSG Defendants themselves did not engage in the "nose counting" in their Supplemental Personal Jurisdiction Brief that they claim that this Court allegedly failed to do (which also further exposes their argument that this Court made "manifest factual errors" as a sham).

effects test conservatively and focuses the analysis on the relationship between the defendant, the forum, and the litigation." (Op. at 65). Similarly, Walden stated: "**Well-established principles of personal jurisdiction** are sufficient to decide this case. The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.' *Calder,* 465 U.S., at 788, 104 S.Ct. 1482." Walden 571 U.S. at 291 (Emphasis Added). Directly in line with Walden, this Court held: "The unique relationship between Defendants, Pittsburgh, and the alleged intentional tortious conduct they committed renders their contacts with the forum sufficient ..." (Op. at 65).

Thus, Walden merely clarifies Calder to mean that personal jurisdiction must ultimately be based on the intentional tortfeasor's conduct that creates the necessary contacts with the forum, which is exactly what this Court determined as discussed above. As Walden further states:

> These same principles apply when intentional torts are involved. In that context, it is likewise insufficient to rely on a defendant's "random, fortuitous, or attenuated contacts" or on the "unilateral activity" of a plaintiff. *Ibid.* (same). A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum. Walden 571 U.S.at 286.[11]

From the faulty premise that Walden drastically modified Calder, the SSG Defendants then claim that this Court erred in its jurisdiction analysis given the Court's statement that,

---

[11] To try to obtain some type of psychological effect with the Court, the SSG Defendants routinely refer to the unpublished case of Kyko Global Inc. v. Bhongir, 2020 WL 1545858 (3rd. Cir. 2020). In this case, Plaintiffs Kyko Global Inc. and Kyko Global GmbH argued that Defendant Bhongir failed to legally support his Rule 12(b)(2) motion (he failed to address the "effects test") and that the district court (reassigned in 2017 to Judge Yvette Kane filling in from the M.D. Pa.) failed to provide plaintiffs with an opportunity to address this test before dismissing the case for lack of personal jurisdiction. Plaintiffs also argued that Defendant Bhongir's contacts are statutorily created under 42 Pa. C.S.A. § 5322(a)(7)(iv) (he is a former out-of-state PISL Director) and, consequently, that the Court's application of Walden in that case impermissibly strips Pennsylvania of its interest to adjudicate claims against out-of-state Directors, such as Mr. Bhongir, who commit torts in Pennsylvania. Given the legal significance of these rulings, Plaintiffs will file a Petition for a Writ of Certiorari to the U.S. Supreme Court.

In any event, while Plaintiffs disagree with the appellate court's application of Walden to the particular facts and law at issue in Bhongir, the appellate court nevertheless viewed Walden as clarifying the principle in Calder that personal jurisdiction must ultimately be based on a defendant's conduct directed to the forum. Bhongir, 2020 WL 1545858 at *3.

"Plaintiffs felt the brunt of the harm in the forum ..." (Brf. Pg. 18)(Op. at 66).  This statement is clearly in reference to the Court's opinion regarding how all 3 factors of the "effects test" set forth in <u>Calder</u> are satisfied, in particular, factor 2:

> The Court therefore holds that Plaintiffs met their burden by pleading that Defendants committed intentional torts, **[Factor 1]]**  that Defendants expressly aimed their tortious conduct at the forum, **[Factor 3]** and that **<u>Plaintiffs felt the brunt of the harm in the forum</u> [Factor 2]** such that the forum can be said to be the focal point of the harm suffered by the Plaintiffs as a result of those torts. ***See IMO*, 155 F.3d at 165–66**. (Emphasis Added).

Accordingly, the Court's Opinion is proper under both <u>Walden</u> and <u>Calder</u>.

## C.  Conspiracy Jurisdiction Exists Post-<u>Walden</u>.

As yet another alternative form of personal jurisdiction, this Court held that it can exercise conspiracy jurisdiction. (Op. at. Pgs. 67-71).  For the first time,[12] the SSG Defendants now claim that conspiracy jurisdiction does not exist post-<u>Walden</u>. (Brf. Pgs. 18-19). This argument fails.

"The availability of the conspiracy theory of jurisdiction, under which the in-forum acts of co-conspirators can be attributed to an out-of-forum defendant in certain circumstances, is a question of state law."  <u>Lasala v. Marfin Popular Bank Pub. Co.</u>, 410 F.App'x 474, 478 (3rd Cir. 2011).  The Eastern District Court of Pennsylvania flatly rejected this argument squarely ruling that Pennsylvania's conspiracy jurisdiction doctrine remains viable post-<u>Walden</u>:

> Sun's argument is misplaced. **<u>Walden</u> did not touch on the co-conspirator jurisdiction theory**, but rather considered whether a police officer, who seized cash from airline passengers in Georgia during their return trip to Nevada, was subject to personal jurisdiction in a lawsuit in Nevada by those airline passengers. <u>Id.</u> at 1119. The court found that the police officer lacked minimal contacts with Nevada even if he knew that his tortious conduct in Georgia would delay return of funds to passengers with connections in Nevada. <u>Id.</u> at 1125. In so holding, the Court reasoned that "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." <u>Id.</u> at 1122. **As such, <u>Walden</u> did not undermine the basis for co-conspirator jurisdiction, which turns not on a plaintiff's connection to the forum, but rather on the defendant's purposeful contacts with a conspiracy directed at or carried out in the forum state. As set forth above, numerous cases in this District—decided after <u>Walden</u>— have emphasized the continuing viability of the co-conspirator jurisdiction theory.**

---

[12] The SSG Defendants' Reply Brief in Support of their Motion to Dismiss fails to contain any argument regarding how conspiracy jurisdiction allegedly ceased to exist post-<u>Walden</u>.   [Doc. No. 43, Pgs. 11-12].

United Health Care Services Inc. v. Cephalon Inc., 2018 WL 878766, Case No. 17-555, at *5 (E.D. Pa. Feb. 13, 2018)(Emphasis Added).[13]

As also articulated in Contant v. Bank of America Corp., 385 F.Supp.3d 284, 293 (S.D. N.Y. 2019):

> Finally, the Foreign Defendants argue that an agency relationship between co-conspirators is necessary because personal jurisdiction cannot be based on the unilateral activity of a third party. *See Walden*, 571 U.S. at 286, 134 S.Ct. 1115 (2014) ("[A] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."). But this argument misapprehends both the nature of a conspiracy and the nature of conspiracy jurisdiction. First, a co-conspirator is no mere third party. Rather, "[i]n any conspiracy, two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit." *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 769, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Second, the exercise of conspiracy jurisdiction in the absence of a formal agency relationship does not offend due process, because a plaintiff still must demonstrate that the defendant's conduct and connection with the forum is "such that [the defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297, 100 S.Ct. 559. That is, conspiracy jurisdiction is best conceived of as an example of the well-established principle that "a defendant's contacts with the forum State may be intertwined with his transactions or interactions with ... other parties." *Walden*, 571 U.S. at 286, 134 S.Ct. 1115.[14]

As set forth above, the SSG Defendants' argument fails as a matter of law.

## IV.  The Court's Subject Matter Jurisdiction Analysis Is Correct.

The SSG Defendants argue that this Court's Subject Matter Jurisdiction analysis is flawed. (Brf. Pgs. 19-20).  This argument fails.

As this Court correctly stated: The "SSG Defendants and Jayaraman assert facial challenges to the Court's subject matter jurisdiction over this matter under Rule 12(b)(1), therefore, the Court will presume the truthfulness of the allegations in the Complaint." (Op. at 37).  Accordingly, this Court properly accepted Plaintiffs' allegations as true. D.C. v. Pittsburgh Public Schools, 415 F.Supp.3d 636, 649 (W.D. Pa. 2019)("In a facial challenge [under Rule 12(b)(1)], the court looks to the face of the complaint and **accepts as true** the facts alleged by

---

[13] See Also Plumbers' Local Union No. 690 Health Plan v. Apotex Corp., 2017 WL 3129147, Case No. 16-665, at *8 (E.D. Pa. July 24, 2017)(applying Pennsylvania's co-conspirator jurisdiction doctrine post-Walden).

[14] Various State Supreme Courts have also found that conspiracy jurisdiction remains viable post-Walden. E.g. Raser Technologies Inc. v. Morgan Stanley & Co. LLC, 449 P.3d 150, 169-170 (Utah 2019); Tricarichi v. Cooperative Rabobank U.A. 135 Nev. 87, 96 (2019).

the plaintiff.")(Emphasis Added)(Citation Omitted).

In doing so, the Court correctly found that PISL was both a citizen of Pennsylvania and India under 28 U.S.C. § 1332(c)(1) and that diversity jurisdiction exists under 28 U.S.C. § 1332(a)(3), and that complete diversity otherwise exists under 28 U.S.C. § 1332(a)(2). (Op. at 38-39).

Not liking this Court's finding, the SSG Defendants now want this Court to leave the Complaint and take their so-called evidence as true in *their favor* to find that PISL's headquarters was in India, and not Pittsburgh, thereby eliminating diversity jurisdiction. There has been no subject matter jurisdictional discovery in this case.[15] Therefore, this Court cannot now consider the SSG Defendants' purported evidentiary arguments.

As a fallback, the SSG Defendants argue, again by leaving the Complaint, that diversity of citizenship jurisdiction would still be lacking even if this Court found PISL's principal place of business was in Pittsburgh because PSI also had, prior to the filing of the Complaint, its principal place of business in Pittsburgh *i.e.* Pennsylvania entities would allegedly be on both sides of the controversy. To make the argument that PSI's principal place of business was in Pittsburgh, the SSG Defendants rely upon Mr. Amorose's Declaration. Mr. Amorose's Declaration states PSI "had" its principal place of business in Pittsburgh between 2005-2013. [Doc. No. 109-6].

---

[15] Pedrick v. The United States Virgin Island, 2010 WL 4027807, Case No. 2009/0088, at * 2 (D.V.I. Oct. 13, 2010)("[W]hen a defendant presents a factual attack to subject matter jurisdiction, as Defendants have done here, the plaintiff should 'be given an ample opportunity to secure and present evidence relevant to the existence of jurisdiction.'"(Citation Omitted)); Berardi v. Swanson Memorial Lodge No. 48 of the Fraternal Order of Police, 920 F.2d 198, 200 (3rd Cir.1990) ("[T]he record must clearly establish that after [subject matter] jurisdiction was challenged the plaintiff had an opportunity to present facts by affidavit or by deposition, or in an evidentiary hearing, in support of his jurisdictional contention.")(Citation Omitted); Brown v. Marler, 2020 WL 1975064, Case No. 20-1914, at * 3 (E.D. Pa. April 24, 2020)("It is well-established that '[d]istrict courts have the authority to allow discovery in order to determine whether subject-matter jurisdiction exists ... '[P]arties should be granted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough consideration' of preliminary issues relating to subject matter jurisdiction"(Citations Omitted).

Subject matter jurisdiction is determined at the time of filing.  See Grupo Dataflux v. Atlas Global Group L.P., 541 U.S. 567, 570-571 (2004)("This time-of-filing rule is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure. It measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing—whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal").

As set forth in the Complaint (and consistent with the timeline set forth in Mr. Amorose's Declaration), PSI is a Delaware corporation because, at the time of filing the Complaint, PSI was incorporated in Delaware and had its principal place of business in Delaware.  (Complaint ¶ 3). Accordingly, Pennsylvania entities cannot be on both sides of the controversy for purposes of evaluating diversity of citizenship jurisdiction.[16]

For the reasons set forth above, this Court's subject matter jurisdiction analysis is correct.

## V.   The State Law Claims Must Proceed Because This Court Has Personal Jurisdiction And Subject Matter Jurisdiction Over The State Law Claims.

The SSG Defendants do not seek dismissal of the state law claims under Rule 12(b)(6); they seek dismissal of these claims based solely on the alleged basis of lack of personal jurisdiction and subject matter jurisdiction.  As set forth above, personal jurisdiction exists under the traditional test, the "effects test," and under Pennsylvania's conspiracy jurisdiction doctrine. Subject matter jurisdiction exists based on diversity of citizenship.  Thus, while RICO provides additional bases for subject matter jurisdiction - federal question jurisdiction and supplemental

---

[16] As set forth above, subject matter jurisdiction exists. Nevertheless, to extent the Court now vacates its subject matter jurisdiction opinion, Plaintiffs renew their request for leave to amend as a matter of right under Fletcher-Harlee Corp. v. Pote Concrete Contractors Inc., 482 F.3d 247, 252 (3rd Cir. 2007) and Aetna Life Ins. Co. v. Foundation Surgery Affiliates LLC, 358 F.Supp.3d 426, 436 (E.D. Pa. 2018)(and cases cited therein)[Doc. No. 110, Pg. 19].

jurisdiction - and statutory personal jurisdiction, Plaintiffs' state law claims must go forward regardless of whether the Court vacates its Opinion with respect to RICO (which it should not do as discussed below).

## VI.  The Court's RICO Analysis Is Correct.

### A.  Personal Jurisdiction Exists Under 18 U.S.C. § 1965(b).

The SSG Defendants argue that 18 U.S.C. § 1965(b)  does not apply to them because the statute "does not apply to foreign defendants but only to parties residing in other United States districts." (Brf. Pg. 19).  This argument fails.

The SSG Defendants  reliance on  Laurel Gardens, LLC v. Mckenna, 948 F.3d 105 (3rd Cir. 2020) is misplaced.  In Laurel Gardens, the court did not address the application of Section 1965(b) to foreign RICO defendants but instead did so only with respect to domestic defendants. Accordingly, Laurel Gardens is inapposite.

Courts routinely hold that Section 1965(b) applies to foreign defendants when they are served in the United States.  See Elsevier Inc. v. Grossman, 77 F.Supp.3d 331, 343 (S.D. N.Y. 2015)(" ("[T]he court may exercise personal jurisdiction in a civil RICO action over a foreign defendant if (i) the defendant is served within the United States and such exercise of jurisdiction satisfies federal due process requirements ...); National Asbestos Works Medical Fund v. Phillip Morris Inc.,  86 F.Supp.2d 137, 140 ("The Second Circuit's recent interpretation of 1965(b) as providing for jurisdiction over additional parties 'not residing in the district' if the ends of justice require, *see PT United Can Co.,* 138 F.3d at 71, would seem to permit the assertion of personal jurisdiction over RICO defendants residing abroad. Nevertheless, such defendants must be served with process within the United States.")(collecting cases therein).[17]

---

[17] The SSG Defendants cite Elsevier and PT United. (Brf. Pg. 19 n. 15).

At the February 5, 2019 Scheduling Conference before Judge Phipps, the SSG Defendants agreed to voluntarily accept service in Pittsburgh and expressly represented to Judge Phipps that they did so without any "contingencies" or "conditions." [February 5, 2019 Conference Trs. Pgs. 7-14 ][18,19,20]. On February 8, 2019, Plaintiffs served the SSG Defendants with the Complaint in Pittsburgh as they agreed to accept before this Court. [Doc. No. 90-1]. Accordingly, Section 1965(b) authorizes this Court to assert personal jurisdiction over the SSG Defendants.

## B. The *In Pari Delicto* Doctrine Does Not Apply.

The SSG Defendants argue, for the first time, that the *in pari delicto* doctrine bars Plaintiffs' RICO claim because PSI allegedly participated in the fraudulent scheme to divert its own bond funds. (Brf. Pgs. 20-21). "It is axiomatic that a corporation by structural necessity must act, if it acts at all, through its agents." Tracinda Corp. v. Daimler Chrysler AG, 502 F.3d 212, 225 (3rd Cir. 2007)(Citation Omitted). Under the *in pari delicto* doctrine, courts look to the law of imputation: "Under the law of imputation, courts impute the fraud of an officer to a

---

[18] As Judge Phipps summarized it: "Mr. Macyda, Mr. Goetz just represented that they're willing to accept service, no condition -- without any conditions. Is that a problem for you?" [February 5, 2019 Conference Trs. Pg. 13].

[19] As Judge Phipps further inquired:

"THE COURT: ... but are you going to be able to effectuate service in the next -- by the end of the week on -- through this consent to service that counsel, the Jones Day law firm on behalf of the SSG Defendants, has offered?

MR. MACYDA: Your Honor, yes, we can serve the SSG Defendants this week. I mean, again, our position was of the timing of issues, it wasn't to hold the service in perpetuity." [February 5, 2019 Conference Trs. Pg. 14].

[20] As the SSG Defendants' counsel concluded the hearing:

" MR. GOETZ: No. No, Your Honor, we look forward to receiving service and the summons and complaint from Mr. Macyda and Mr. Rodkey by the end of this week."
[February 5, 2019 Conference Trs. Pg. 26]

corporation when the officer commits the fraud (1) in the course of his employment, and (2) for the benefit of the corporation." Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co. Inc., 267 F.3d 340, 358 (3rd Cir. 2001). PSI was clearly harmed by, and did not benefit from, the fraudulent scheme perpetrated by Madhavi Vuppalapati and others. Accordingly, the SSG Defendants' argument fails.[21]

## C. Plaintiffs Properly Allege an "Enterprise."

The SSG Defendants' simply repeat the same arguments they previously made to try to assert Plaintiffs failed to properly assert an "Enterprise." (Brf. Pgs. 21-23). See [Doc. No. 26, Pgs. 23-24]; Doc. No. 43, Pgs. 15-16]. In its Opinion, the Court clearly discusses in detail how Plaintiffs' allegations satisfy the Boyle and Turkette tests. (Op. at 40-46). The SSG Defendants simply do not like it, and are particularly bothered by the Court's statement that they must participate in merits discovery: "The Court will permit the parties to engage in discovery to parse whatever distinctions there may be between SSG Defendants, Jayaraman, and the alleged enterprise(s) they collectively formed for racketing activities." (Op. at. 46). To try to avoid discovery, the SSG Defendants falsely claim that the Court made a legal error when none clearly exists.

The SSG Defendants also argue that the "Enterprise" durational requirement is not satisfied because the allegations, even if true, "show nothing more than a one-time financial transaction." (Brf. Pg. 22). This Court's Opinion contains a section titled "Alleged Racketeering Activities." (Op. at 10- 17). How these events can possibly be described as a "one-time financial

---

[21] The "sole actor" exception (R.F. Lafferty, 267 F.3d at 359) does not save the SSG Defendants' argument because, although Madhavi Vuppalapati was involved in the fraudulent scheme, she was not the sole agent or corporate officer of PSI. By way of example, but not limitation, See Pandyar Declaration [Doc. No. 109-13, ¶ 2]; Amorose Declaration [Doc. No. 109-6, ¶¶ 2, 5]. Moreover, as this Court stated: "This provision [18 U.S.C. § 1962(c)] was specifically enacted to govern only those instances where RICO defendants victimize an innocent or passive corporation and either drain it of its own money or use it as a passive tool to take money from third parties." (Op. at 40).

transaction" defies comprehension.  Similarly, it defies comprehension how these allegations were not of "sufficient duration to permit [the SSG Defendants] to 'participate' in those affairs through 'a pattern of racketeering activity'" (Boyle v. United States, 556 U.S. 938, 946 (2009)), or otherwise fail to show "an ongoing organization," or a "continuing unit," or any entity "separate and apart from the pattern of activity in which it engages." (Brf. Pg. 22).  Again, the SSG Defendants simply try to invent legal error when none exists and otherwise want this Court to accept *their* version of facts as true.

As a last-ditch effort, the SSG Defendants claim that the Court is setting an "unwarranted precedent" by finding that an Enterprise has been properly pled. (Brf. Pg. 22).  To make this argument, the SSG Defendants fall back on their "one time transaction" theory that fails as previously discussed.  Moreover, it would set an unprecedented opinion *not* to find that an Enterprise exists given the allegations contained in the "Alleged Racketeering Activities" (Op. at 10- 17).  As this Court stated, "RICO is a remedial statute which is to be liberally construed to effectuate its purposes")(Op. at 40)(Citation Omitted).

 **D.  Plaintiffs Properly Allege "a Pattern of Racketeering Activity."**

The SSG Defendants generally repeat the same arguments they previously made to try to assert Plaintiffs failed to properly assert a "pattern of racketeering activity." (Brf. Pgs. 23-25). This Court devoted an entire section of its Opinion to the "Alleged Racketeering Activities" (Op. at 10- 17).  Moreover, the Court explicitly addressed the "pattern of racketeering activity" under what the Court defined as "Element Four" (Op. at 41; 47-53). As the Court stated:

> "The Complaint presents a descriptive chronology of events. It includes dates, times, and locations where each SSG Defendant allegedly contributed to a fraudulent and illicit scheme to steal and launder bond funds.  It contains precision and some measure of substantiation for the fraudulent activity of ***each individual Defendant*** on behalf of the corporate Defendants, activity that violated ***the predicate offenses*** **to the RICO statute**" (Emphasis Added).

(Op. at. 52).[22]

Accordingly, the SSG Defendants' argument that the Court engaged in an impermissible "limited analysis" is meritless (Brf. Pg. 23). They just do not like the result of the Court's analysis.

The SSG Defendants - who intentionally failed to address any of the predicate offenses in their original briefing [Doc. No. 39, Pgs. 18-19] - now claim that the Court failed to find that each SSG Defendant engaged in at least two predicate offenses. (Brf. Pg. 23). They also claim that the Court failed to "adequately scrutinize Plaintiffs' facially implausible allegations" and make the nonsensical statement that: "Plaintiffs' allegations are thus self-defeating; no factual allegations show that the Bonds proceeds were 'stolen.'" (Brf. Pg. 25). Even though the SSG Defendants failed to address the predicate offenses, the Court nevertheless did. (Op. at 10- 17; 36-37; 44; 47-53). The Court stated that Plaintiffs' Complaint "contains precision and some measure of substantiation for the fraudulent activity of *each individual Defendant* on behalf of the corporate Defendants, activity that violated *the predicate offenses* **to the RICO statute**" (Emphasis Added).[23] The SSG Defendants simply do not like it and continue to argue with the Court.

The SSG Defendants argue that Plaintiffs' allegations do not establish "long term criminal conduct" to support a "pattern of racketeering activity." To assert this argument, the SSG Defendants try to impose their own version of facts and state that the alleged criminal conduct only lasted over an eight month period. (Brf. Pg. 24). As this Court's "Alleged Racketeering Activities" (Op. at 10- 17) discussion states, the activities commenced in 2008 and concluded in

---

[22] Compare "This case is a far cry from the circumstance where a plaintiff only brings forth bald allegations without specific facts." (Op. at 69)

[23] See Also ("Plaintiffs do not claim that Defendants merely conducted the normal affairs of a business relationship, but rather that they engaged in a pattern of racketeering behavior by defrauding Plaintiffs of bond funds in violation of several predicate criminal statutes ... Defendants' critique of Plaintiffs' RICO claim is unpersuasive because it focuses on Paragraphs 232–34, rather than cross-referencing those specific RICO allegations with general allegations spread throughout the rest of the Complaint ... In viewing the Complaint as a whole, Plaintiffs' allegations satisfied the structural requirements of the *Boyle* test. ")(Op. at. 44).

2014. Accordingly, the SSG Defendants engaged in "long term criminal conduct." See Tabas v. Tabas, 47 F.3d 1280, 1294 (3rd Cir. 1995)("We conclude that a scheme lasting over three years extends over a 'substantial' period of time and therefore constitutes the type of 'long-term criminal conduct' that RICO was enacted to address.").[24]

The SSG Defendants  state: "Nor can there be a '*pattern* of racketeering activity' when, as here, only one alleged victim cries foul." (Brf. Pg. 24)(Emphasis Included).  This is false.  The number of victims is one of six factors utilized to assess continuity and relatedness to form a pattern of conduct under RICO.  Barticheck v. Fidelity Union Bank/First Nat. State, 832 F.2d 36, 38 (3rd Cir.1987).  Accordingly, the existence of one victim alone does not preclude a finding of RICO liability. See Curtin v. Tilley Fire Equipment Co., 1999 WL 1211502, Case No. 99-2373, at *4 (E.D. Pa. Dec. 14 1999)("Although the alleged scheme did injure only one victim, that factor will not preclude a finding of racketeering activity.").

The SSG Defendants also falsely state that the Court's application of Rule 9(b)  was in error. (Brf. Pgs. 25-26)(Op. at 51-53).  First, it is common sense that the factual information pertaining to Defendants' conduct as set forth in the Court's "Alleged Racketeering Activities" (Op. at 10- 17) is clearly within the Defendants' knowledge and control.[25] Second, Plaintiffs have expressly informed this Court that the necessary factual information lies within Defendants' knowledge and control. [Doc. No. 39, Pg. 19, n. 13].  Third, Plaintiffs made efforts to obtain information prior to filing suit to be able to plead their claims with as much particularity as reasonable under the circumstances by reviewing information in the public domain, PISL's and

---

[24] Even if the Court were to now exclude Mr. Goel's 2008 visit to Pittsburgh as urged by the SSG Defendants (which it should not), the illegal conduct would still occur over a 4 year period.

[25] Cf. Rohm and Haas Co. v. Continental Casualty Co., 566 Pa. 464, 476-477 (2001)("This court has previously observed that fraud 'is never proclaimed from the housetops nor is it done otherwise than surreptitiously with every effort usually made to conceal the truth of what is being done. So fraud can rarely if ever be shown by direct proof. It must necessarily be largely inferred from the surrounding circumstances.'" (Citation Omitted).

PSI's books and records, Madhavi Vuppalapati's computer files, and bank records which were used to generate the Complaint and RICO case statement. E.g. [Doc. No. 5, Section 6(f); Section 20). Accordingly, the Court's application of Rule 9(b) was proper.[26]

### VII.  The Request for Interlocutory Appeal Is Meritless and Designed to Try to Avoid the Standard Merits Discovery Process.

As set forth in detail in Plaintiffs' Response to Mr. Jayaraman's joinder in this Motion, which Plaintiffs incorporate herein, there is no legal basis to certify the proposed questions for interlocutory appeal because: (i) an Article III case or controversy does not exist; (ii) there is no "controlling question of law"; (iii)  there is no "substantial ground for difference of opinion"; and (iv) an immediate appeal will not "materially advance the ultimate termination of the litigation."[27]

### CONCLUSION

For the reasons set forth above, the SSG Defendants' Motion should be denied.  As is standard in any civil case, this case should now proceed with the merits discovery process.

Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757

FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139

(412) 828-2802 (Phone)
(412) 828-2588 (Fax)

---

[26] As set forth above, Plaintiffs have properly asserted their RICO claim.  Accordingly, the Court can, as previously determined, also exercise federal question and pendent subject matter jurisdiction as well as statutory personal jurisdiction under 18 U.S.C. § 1965(b).

[27] "The statute imposes three criteria for the district court's exercise of discretion to grant a § 1292(b) certificate. The order must (1) involve a 'controlling question of law,' (2) offer 'substantial ground for difference of opinion' as to its correctness, and (3) if appealed immediately 'materially advance the ultimate termination of the litigation.' Katz v. Carte Blanche Corp., 496 F.2d 747, 754 (3d Cir.1974).

jrodkey@fowkesrodkey.com

Jayson M. Macyda
Jayson M. Macyda (admitted *pro hac vice*)
Kyko Global, Inc.
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing document was served via the Court's CM/ECF Notification System on this 11th day of May, 2020 upon the following:

Michael H. Ginsberg
mhginsberg@jonesday.com
John D. Goetz
jdgoetz@jonesday.com
Douglas Baker
ddbaker@jonesday.com
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514

**Counsel for Defendants:**

**SSG Capital Partners I, L.P.**
**SSG Capital Management (Hong Kong) Limited**
**Shyam Maheshwari**
**Ira Syavitri Noor a/k/a Ira Noor Vourloumis**
**Dinesh Goel**
**Wong Ching Him a/k/a Edwin Wong**
**Andreas Vourloumis**
**Value Team Corporation**

Jeffrey T. Morris
Elliott & Davis, PC
6425 Living Place, Suite 200
Pittsburgh PA 15206
morris@elliott-davis.com

**Counsel for Defendant, Anandhan Jayaraman**

21

The undersigned certifies that a true and correct copy of the foregoing document was served via U.S. Mail for posting on this 11th day of May, 2020 upon the following:

Prithvi Information Solutions, LTD.
Prithvi Asia Solutions Limited
214 S. Craig Street
Suite 5
Pittsburgh, PA 15213

The undersigned certifies that a true and correct copy of the foregoing document was served via Email on this 11th day of May, 2020 upon Madhavi Vuppalapati by sending an email to:

Madhavi@prithvisolutions.com
Vuppalapatim@gmail.com
Satish@prithvisolutions.com
Vuppalapatis@gmail.com
ajayaraman@gmail.com

*/s/ Joseph F. Rodkey, Jr.*