# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANNIA

KYKO GLOBAL, INC. et al.

        *Plaintiffs,*

  v.

PRITHVI INFORMATION SOLUTIONS
LTD. et al.,

        *Defendants.*

Civil Action No. 2:18-cv-01290-WSS

Hon. William S. Stickman IV

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, District Judge

On March 20, 2020, the Court denied motions to dismiss filed by the so-called "SSG Defendants"—SSG Capital Partners I, L.P. ("SSG Capital Partners"), SSG Capital Management Hong Kong, Ltd. ("SSG Hong Kong"), Wong Ching Him a/k/a/ Edwing Wong ("Him"), Andreas Vourloumis ("Vourloumis"), Shyam Maheshwari ("Maheshwari"), Dinesh Goel ("Goel"), and Ira Syavitri Noor a/k/a Ira Noor Vourloumis ("Noor") and Anandhan Jayaraman ("Jayaraman") (collectively "Defendants").[1] Defendants have now filed motions for reconsideration.

There are now nine motions pending before the Court: Plaintiffs' motion to certify the Court's order striking the appearance of VTC as a final judgment, SSG Defendants' and

---

[1] Plaintiffs Kyko Global, Inc. ("KGI"), Kyko Global GmbH ("KGG"), and Prithvi Solutions, Inc. ("PSI") (collectively "Plaintiffs") filed the ten-count Complaint against Defendants Prithvi Information Solutions, Ltd. ("PISL"); Prithvi Asia Solutions, Ltd. ("PASL"), SSG Capital Management (Hong Kong), Ltd. ("SSG Hong Kong"); SSG Capital Partners I, L.P. ("SSG Capital Partners"); Value Team Corporation ("VTC"); Madhavi Vuppalapati ("Madhavi"); Wong Ching Him a/k/a Edwin Wong ("Him"); Shyam Maheshwari ("Maheshwari"); Ira Syavitri Noor a/k/a Ira Noor Vourloumis ("Noor"); Andreas Vourloumis ("Vourloumis"), Dinesh Goel ("Goel"); and Anandhan Jayaraman ("Jayaraman"). Complaint (ECF No. 1) ("Pl's Compl.") at p. 1. Though VTC's appearance was struck, all these parties, including VTC, remain in the case.

Jayaraman's motions for reconsideration of the Court's March 10, 2020 opinion, Plaintiffs' motion to strike Jayaraman's joinder to SSG Defendants' reply in support of their motion for reconsideration, SSG Defendants' motion requesting a stay until their motion for reconsideration is adjudicated, Plaintiffs' three discovery motions, and Jayaraman's motion for an extension of time to respond to Plaintiffs' discovery motions. The Court will address Plaintiffs' motion to certify the Court's order striking the appearance of VTC in a separate opinion and order. The Court will adjudicate the remaining eight motions here.

For the set forth below, the Court will deny SSG Defendants' motion to request a stay. The Court will deny SSG Defendants' and Jayaraman's motions in support of reconsideration. The Court will also deny Plaintiffs' motion to strike Jayaraman's joinder to SSG Defendants' reply in support of their motion for reconsideration, Plaintiffs' three discovery motions, and Jayaraman's motion requesting an extension of time to respond to Plaintiffs' discovery requests as moot. Because the Court already laid out the facts of this case in detail in its prior opinion, it will forgo reciting them again. Instead, the Court will proceed directly to its analysis.

## STANDARD OF REVIEW

There are three standards of review applicable to the eight pending motions at issue: reconsideration of an interlocutory order under Rule 54(b), interlocutory appeal under 28 U.S.C. § 1292, and stays under federal common law.

### I. Motion for Reconsideration Under Rule 54(b)

The Rules do not explicitly mention "reconsideration" of interlocutory orders. Rule 54(b) appears to be pertinent by implication because it provides that a court can revise any order or decision not final before entry of final judgment. *See* FED. R. CIV. P. 54(b); *Patterson v. Nine Energy Serv., LLC*, 355 F. Supp. 3d 1065, 1108 (D. N.M. 2018). Factors that courts should

consider when contemplating reconsideration of interlocutory orders are the thoroughness of the order being reviewed, the overall progress and posture of the case, new controlling authority, new evidence, and clear indication that a court erred.

## II.      Interlocutory Appeal Under 28 U.S.C. § 1292

The final judgment rule provides that an order or opinion of a federal district court must be final to be reviewable by a federal appellate court. 28 U.S.C. § 1291. Interlocutory appeals are permitted on a limited basis under 28 U.S.C. § 1292. The purpose of Section 1292 is narrow: to permit litigants to challenge interlocutory orders posing consequences that are serious, even irreparable. *Gardner v Westinghouse Broad. Co.*, 559 F.2d 209, 212 (3d Cir. 1977) (citing *Balt. Contractors, Inc. v. Bodinger*, 348 U.S. 176, 181 (1955), *overruled by Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 288 (1988)); *Albert v. Sch. Dist. of Pittsburgh*, 181 F.2d 690, 691 (3d Cir. 1950). A federal district court determines whether an interlocutory appeal is justified by balancing a party's interest in the prompt resolution of the continuing validity of a dismissed claim with the court's interest in avoiding piecemeal litigation. *In re Kelly*, 876 F.2d 14, 15 (3d Cir. 1989) (citing *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 153–54 (1964)).

## III.     Request for a Stay Under Federal Common Law

A stay is a matter of discretion, not of right. *Nken v. Holder*, 556 U.S. 418, 433 (2009). A party requesting a stay has the burden of persuasion. *Id.* at 433–34. A court must consider four factors when reviewing a request for a stay: whether the applicant made a strong showing that he is likely to succeed on the merits, whether the applicant will be irreparably harmed if no stay is granted, whether granting a stay will substantially injure other parties interested in the proceeding, and public interest. *Id.* at 434 (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (2009)); *see also Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). The first two of these factors are the most critical.

*Nken*, 556 U.S. at 434. An applicant's chance of success on the merits and potential for irreparable injury must be greater than a mere possibility. *Id*. at 435.

## ANALYSIS

The Court will aggregate its analysis of the eight pending motions into three subject areas: (1) SSG Defendants' and Jayaraman's motions for reconsideration of the Court's prior opinion and Plaintiffs' motion to strike Jayaraman's reply in support, (2) SSG Defendants' motion requesting a stay, and (3) the parties' discovery-related motions.

### I.    Motions for Reconsideration

SSG Defendants' and Jayaraman's motions for reconsideration address five topics: the facts of the case, Jayaraman's admissions, personal jurisdiction, subject matter jurisdiction, their request for a stay, and their alternative request for interlocutory appeal. The Court will discuss each in turn.[2]

*A. Factual Errors*

SSG Defendants and Jayaraman allege that there are two factual errors in the Court's opinion: 1) the Court's designation of PISL, PASL, and Madhavi as "SSG Defendants," and 2) the Court's holding that Jayaraman resided in Pittsburgh during the timeframe when the allegations in the Complaint took place. The first alleged factual error is an error of form, not substance, and does not materially impact the Court's analysis. The second allegation of error is meritless.

---

[2] Jayaraman adopts SSG Defendants' motion for reconsideration as though fully restated. Defendant Anandhan Jayaraman's Joinder in SSG Defendants' Motion for Reconsideration or in the Alternative to Certify for Interlocutory Appeal (ECF No. 144) ("Jayaraman's Joinder to SSG Def.'s Mot. for Reconsideration") at p. 2. The Court's references to, and rulings on, SSG Defendants' arguments will therefore implicitly apply to Jayaraman's arguments as well. Any arguments particular to Jayaraman's brief will be discussed separately.

1. <u>Designation of PISL, PASL, and Madhavi as "SSG Defendants"</u>

The first alleged factual error is how the Court characterized SSG Defendants. SSG Defendants emphasize that PISL, PASL, and Madhavi are not a part of their group. SSG Defendants' Brief in Support of Motion for Reconsideration or, in the Alternative, to Certify for Interlocutory Appeal (ECF No. 133) ("SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Consideration") at p. 8. They are correct given that none of those three parties are designated as "SSG Defendants" in SSG Defendants' motion to dismiss. Designating PISL, PASL, and Madhavi as "SSG Defendants" is not inherently incorrect, however, for the Court is entitled to so designate them for the convenience of its analysis. A party's taxonomic preferences for characterizing individual defendants or groups of defendants are not legally entitled to deference. *Taxonomically* speaking, SSG Defendants and the so-called "Prithvi Defendants" are distinct. *Typologically* speaking, however, they are intertwined: they are all participants in a well-pleaded civil RICO enterprise. The Court's grouping them together at a prior point was only for purposes of its discussion, was not outcome determinative, and was thus appropriate.

2. <u>Jayaraman's Residence</u>

The Court determined that Jayaraman resided in Pittsburgh, Pennsylvania during the timeframe when the unlawful conduct pleaded in the Complaint took place. The Court predicated this determination on Plaintiffs' supplemental brief, Plaintiffs' RICO Statement, and the affidavits of Plaintiffs' Director and Chief Executive Officer Kiran Kulkarni ("Kulkarni"), former PISL and PSI employee David Amorose ("Amorose"), and former PISL and PSI employee Guru Prasad Rao Pandyar ("Pandyar"). *Kyko Global, Inc. v. Prithvi Info. Solutions Ltd.*, Case No. 2:18-cv-01290, 2020 WL 1159439, at **1, 28, 33 (W.D. Pa. March. 10, 2020). Having thoroughly reconsidered the matter, the Court holds that its residency determination was not erroneous.

Jayaraman opposes the Court's use of Plaintiffs' supplemental discovery in several ways. *Id.* at pp. 3–4, ¶ 10. Jayaraman attacks the use of the Kulkarni Declaration because Kulkarni apparently had no personal knowledge, therefore, his attestations should be disregarded. *Id.* at p. 3, ¶¶ 8, 10. This argument is not persuasive. Kulkarni, Amorose, and Pandyar all made their declarations based on their personal knowledge. They said as much and the Court must construe these statements in a light favorable to Plaintiffs. *See* Declaration of Kiran Kulkarni in Support of Plaintiffs' Brief in Opposition to SSG Defendants' Motion to Dismiss and in Support of Plaintiffs' Motion to Obtain Leave to Conduct Jurisdictional Discovery Ex. 1 (ECF No. 40-1) ("Kulkarni Decl.") at p. 1; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(2) Ex. F (ECF No. 109-6) ("Amorose Decl.") at p. 1; Plaintiffs' Supplemental Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(2) Ex. M (ECF No. 109-13) ("Pandyar Decl.") at p. 1.

Jayaraman also attacks the Court's use of supplemental discovery, arguing that it does not show that Jayaraman resided in Pittsburgh and participated in the money laundering operation with Madhavi. Jayaraman's Joinder to SSG Def.'s Mot. for Reconsideration at pp. 2–6, ¶¶ 6–14. It is true, as Jayaraman says, that the Amorose Declaration does not explicitly establish his residency in Pittsburgh. But the Court's conclusion did not hinge on the Amorose Declaration alone. The Court never explicitly represented the Amorose Declaration as suggesting that Jayaraman lived in Pittsburgh. The Amorose Declaration was simply one of many different pieces of evidence used in a string cite that cumulatively supported several different conclusions. Moreover, Paragraph 12 of the Kulkarni Declaration explicitly states that "Ms. [Madhavi] Vuppalapati and Defendant Anandhan Jayaraman, who are married lived in Pittsburgh and PISL's registered office was (and remains) located in Pittsburgh." Kulkarni Decl. at p. 3, ¶ 12. This piece of evidence shows that

the Court did not make a factual or legal error about Jayaraman's residency. Therefore, even if this issue boils down to credibility determination between Kulkarni and Jayaraman, under the applicable standard of review, the Court deferred to Kulkarni and the allegations in the Complaint. The Court properly construed all allegations in the light most favorable to Plaintiffs in making its finding. *See* FED. R. CIV. P. 12(b)(2); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).[3]

### B. Jayaraman's January 15, 2020 Motion to Withdraw Admissions

Jayaraman contends that the Court erred in denying his motion to withdraw admissions. Jayaraman continues to take the position he adopted in his original motion to withdraw admissions: Plaintiffs made two judicial admissions in the United States District Court for the Western District of Washington. Compl. at p. 1, Case No. 2:13-cv-01034-MJP (W.D. Wash. June 17, 2013) (ECF No. 1). These admissions purportedly render the Court's Rule 36 prejudice prong analysis erroneous. Jayaraman's Joinder to SSG Def.'s Mot. for Reconsideration at pp. 3, 5, ¶¶ 9, 15.

Jayaraman's contention is unpersuasive for two reasons. First, judicial admissions in the Western District of Washington litigation do not defeat the Court's analysis of prejudice. Nowhere in his motion for reconsideration does Jayaraman highlight where exactly in the Western District of Washington litigation Plaintiffs supposedly made two judicial admissions. The Court took a closer look at the case and noticed that Paragraph 12 addresses Jayaraman's residency: "Defendant

---

[3] Jayaraman states in his motion for reconsideration that he is not a "Prithvi defendant" and that he had nothing to do with the Prithvi family of businesses. Jayaraman's Joinder to SSG Def.'s Mot. for Reconsideration at p. 2, ¶ 5. This statement is curious. At the summary judgment stage of the Western District of Washington Litigation, Judge Martha Pechman held that "Defendant Anandhan Jagaraman is also the Secretary and Treasurer of Prithvi Solutions, Inc." *See* Order Denying Motion to Dismiss at p. 5, Case No. 2:13-cv-01034-MJP (W.D. Wash. Feb. 3, 2014) (ECF No. 121) ("Mr. Jagaraman [sic] served as an officer for Defendants PSI (Secretary and Treasurer) and IBS (incorporator and president); entities alleged to have actively participated in the scheme.").

Madhavi and Anandhan Jagaraman [sic], husband and wife and the marital community composed thereof, are individuals who reside in Bellevue, Washington and conduct business in the State of Washington. . . .Defendant Anandhan Jagaraman [sic] is also the Secretary and Treasurer of Prithvi Solutions, Inc." Compl. at p. 4, ¶ 12, Case No. 2:13-cv-01034-MJP (W.D. Wash. June 17, 2013) (ECF No. 1). This quoted language does not say, however, that Jayaraman resided *exclusively* in the greater Seattle area. He may have resided in two different places as Madhavi apparently did. Jayaraman's residence in Pittsburgh and cooperation in the alleged civil RICO conspiracy is *plausible* under Rule 12.

Second, as the Court noted in its opinion, it need not find prejudice to deny a motion to withdraw admissions. *Kyko Global, Inc.*, 2020 WL 1159439, at *15 (citing *Kleckner v. Govler Trucking Corp.*, 103 F.R.D. 553, 557 (M.D. Pa. 1984)). Rule 36 grants the Court wide discretion. In the alternative that there were past admissions, the Court holds that its exercise of discretion was still not erroneous. Jayaraman failed to show good cause for his failure to answer Plaintiffs' requests for admissions.

*C. Subject Matter Jurisdiction*

SSG Defendants claim that the Court's analyses of diversity and federal question subject matter jurisdiction were clearly erroneous. The Court disagrees.

1. Diversity Subject Matter Jurisdiction

SSG Defendants contend that the Court's analysis of its diversity subject matter jurisdiction was erroneous because it incorrectly held that PISL had two principal places of business: India and Pennsylvania. In the alternative that PISL is a Pennsylvania company, SSG Defendants contend that would destroy diversity with PSI, which is also incorporated in Pennsylvania. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at pp. 13–14. When a party is a citizen of a

foreign state, diversity jurisdiction is dictated by 28 U.S.C. § 1332(a)(2) or 28 U.S.C. § 1332(a)(3). SSG Defendants' construction of those provisions is mistaken, and therefore their contention fails.

Section 1332 clearly states that a corporation is a citizen of any state where it is incorporated *and* of the state where it has its principal place of business, that is, its nerve center. 28 U.S.C. § 1332. As the United States District Court for the Eastern District of New York noted in *Grunblatt v. UnumProvident Corp.*, 270 F. Supp. 2d 347, 351 (E.D.N.Y. 2003), "the principal place of business prong does not replace the citizenship of the state of incorporation; it merely adds another state of citizenship—*either* of which could destroy diversity." SSG Defendants are correct in stating that PISL cannot have two principal places of business, but in doing so confuse the issue. The Court clearly stated that PISL is a citizen of Pennsylvania and India, which is true. It never said that PISL has two nerve centers. The Court's holding on that point was not error.

Turning to SSG Defendants' argument in the alternative, the Court followed Third Circuit precedent in noting that Section 1332(a)(3) requires partial diversity, not complete diversity. *Kyko Global, Inc.*, 2020 WL 1159439, at *17 (citing *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 498 (3d Cir. 1997)). SSG Defendants asserted that if "PSI and PISL are both Pennsylvania citizens, diversity cannot exist," and in doing so cite both Section 1332(a)(2) and Section 1332(a)(3). Yet complete diversity is not required. Only partial diversity is required, and the facts satisfy that requirement.

Finally, the Court held that in the alternative that there is no diversity under Section 1332(a)(3), there *is* diversity under Section 1332(a)(2). Complete or maximum diversity under Section 1332(a)(2) only works if the Court assumes, as is alleged, that PSI is a citizen of Delaware and has its principal place of business in Delaware. The Amorose Declaration, however, asserts that though PSI is a Delaware corporation, its never center was in Pittsburgh. Amorose Decl. at

p. 2, ¶ 4. If the Amorose Declaration were given weight, it would destroy the possibility for complete diversity jurisdiction under Section 1332(a)(2) because Pennsylvania entities would be on both sides of the litigation. Plaintiffs correctly note that subject matter jurisdiction is determined at the time of filing. *See* Pl.'s Br. in Opp'n to SSG Def.'s Mot. for Reconsideration at p. 13 (citing *Grupo Dataflux v. Atlas Global Grp. L.P.*, 541 U.S. 567, 570–71 (2004)). Under the time-of-filing rule, the Court was right to conclude, in the alternative, that diversity under Section 1332(a)(2) is available. *Compare Kyko Global, Inc.*, 2020 WL 1159439, at **1, 18, *with Grupo Dataflux*, 541 U.S. at 571. The Court's holding that it could exercise diversity subject matter jurisdiction was not erroneous.

### 2. Federal Question Subject Matter Jurisdiction

Plaintiffs plead a violation of the RICO statute, specifically 18 U.S.C. § 1962(c). Under Section 1962(c), a plaintiff has the burden to plead four elements: 1) the existence of an enterprise affecting interstate commerce; 2) defendants were employed or associated with the enterprise; 3) defendants participated, either directly or indirectly, in the conduct of the affairs of the enterprise; and 4) through a pattern of racketeering activity that includes at least two racketeering acts. *Shearing v. E.F. Hutton Grp., Inc.*, 885 F.2d 1162, 1165 (3d Cir. 1989), *abrog. on other grounds by Beck v. Prupis*, 529 U.S. 494 (2000) (citing *R.A.G.S. Coulture, Inc. v. Hyatt*, 774 F.2d 1350, 1352 (5th Cir. 1985)); *Rose v. Bartle*, 871 F.2d 331, 358 (3d Cir. 1989). SSG Defendants contend that an affirmative defense defeats federal question jurisdiction. In the alternative that the affirmative defense does not apply, they contend that the Court's holding that it could exercise federal question jurisdiction was clearly erroneous because Plaintiffs failed to plead the necessary elements. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at pp. 14–20. The Court disagrees

*i.* *Affirmative Defense:* In Pari Delicto *Doctrine*

SSG Defendants argue that the Court's federal question analysis was clearly erroneous because it overlooked the *in pari delecto* doctrine, an equitable affirmative defense spanning several different claims. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 14. "The doctrine of *in pari delicto* provides that a plaintiff may not assert a claim against a defendant if the plaintiff bears fault for the claim." *Off. Cmte. of Unsecured Creditors v. R.F. Lafferty & Co., Inc.*, 267 F.3d 340, 354 (3d Cir. 2001) (citing cases). It is limited to situations when a plaintiff bears at least substantially equal responsibility for his injury. *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 307 (1985). SSG Defendants assert that PSI is the only party that has RICO standing. Because PSI was involved in the alleged RICO conspiracy, they also assert that Plaintiffs' RICO allegations can be attributed to themselves. This line of argument raises a couple of threshold issues: whether an affirmative defense can be raised at the dismissal stage of litigation, and even if so, whether the *in pari delecto* doctrine even applies in the context of RICO actions. *See R.F. Laffety & Co.*, 267 F.3d at 355 (asking whether post-petition events in a bankruptcy action trigger equitable defenses like *in pari delicto*). For now, the Court need only consider the first issue.

An affirmative defense, such as the doctrine of *in pari delicto*, can be considered only in a motion to dismiss if it is "established on the face of the complaint." *In re Reading Broad., Inc.*, 390 B.R. 532 (E.D. Pa. 2008) (citing *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001)). To not consider an affirmative defense is the general rule; to consider it is the exception. The exception applies only when a complaint contains information that triggers the affirmative defense on its face. *In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir. 2005). Here as in *In re Reading Broad., Inc.*, analysis of this particular kind of affirmative defense requires analysis of the facts—not just

11

jurisdictional facts, but facts going to the merits pertaining to PSI's involvement in the RICO conspiracy. To consider this affirmative defense at this stage would be premature. *See id.* The Court will wait until trial to resolve whether this affirmative defense applies to RICO claims generally and Plaintiffs' claim specifically.[4] The Court will address the sufficiency of Plaintiffs' RICO claim.

### ii. *Element 1: Existence of a RICO Enterprise*

SSG Defendants assert that Plaintiffs failed to adequately plead their involvement with a RICO enterprise. To properly plead the first element of a Section 1962(c) violation, a plaintiff must satisfy the requirements established by the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 583 (1981) and in *Boyle v. United States*, 556 U.S. 938, 940 (2009). Several of SSG Defendants' arguments explicitly or implicitly address factors from *Turkette* and *Boyle*. These arguments do not, however, articulate the relevant standard of review—Rule 12(b)(6)—let alone assess Plaintiffs' Complaint and RICO statement using that standard. This global problem, along with more particular defects in their reasoning, render their arguments unpersuasive.

### a. The *Boyle* Test

SSG Defendants assert that Plaintiffs' failed to show an association-in-fact enterprise. All the Complaint contains, according to SSG Defendants, are generalized, conclusory statements about Defendants in general, not SSG Defendants as a group or any of its members in particular. *See* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 15. This argument is not persuasive. The allegation that the Complaint is conclusory is itself conclusory. The Complaint *does* allege that all Defendants formed an association-in-fact enterprise under 18 U.S.C. § 1961(4).

---

[4] The Court notes that Defendants improvidently raised the *in pari delicto* doctrine for the first time in their motions for reconsideration. Motions for reconsideration are ordinarily not the appropriate vehicle for introducing new arguments.

Section 1961(4) defines an "enterprise" as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The three sub-elements needed to be proven to establish an association-in-fact enterprise pursuant to Section 1961(4) under *Boyle* are 1) a purpose for the enterprise, 2) relationships among those associated with the enterprise, and 3) longevity permitting the associates to pursue that purpose. *Boyle*, 556 U.S. at 946. "The existence *vel non* of a RICO enterprise is a question of fact for the jury." *United States v. Console*, 13 F.3d 641, 650 (3d Cir. 1993) (citing *United States v. Riccobene*, 708 F.2d 214, 222 (3d Cir. 1983)). The purpose of the association-in-fact pleaded here is to steal and launder bond funds through fraudulent wire transfers. The Complaint shows the relationships among those associated with the enterprise by naming individual and entity Defendants, detailing where they reside, and how individual Defendants serve in various capacities as leaders entity Defendants. *See* Pl. Compl. at pp. 24, ¶¶ 235 et seq. That is particularized information. That the roles and activities of each Defendant in the civil RICO conspiracy alleged are not laid out in exhaustive detail does not render the Complaint conclusory. Under Rule 12, the Complaint is not required to be exhaustive. It is merely required to put Defendants on notice. And it does. Finally, the Complaint pleads that 2008 through 2014 was the timeframe when the association-in-fact enterprise accomplished its purpose, an adequate period of longevity. Thus, all three elements for pleading an association-in-fact enterprise were satisfied. Defendants raise no authority showing that the Complaint here is otherwise deficient under Rule 12. In fact, they completely fail to cite *Boyle* or cases interpreting *Boyle*. The Court's holding that Plaintiffs pleaded an association-in-fact under Rule 12 and Section 1961(4) under the *Boyle* test was not erroneous.

b. The *Turkette* Test

SSG Defendants' appear to attack the sufficiency of the Court's *Turkette* analysis in three ways: they assert that even if Plaintiffs' demonstrated an association-in-fact, they still failed to show that it was an ongoing organization, a continuing unit, and that it was apart from the pattern of activity it engaged in.[5] According to SSG Defendants, this case only concerns a benign, one-time financial transaction: a bond restructuring deal. *See* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 16. These lines of attack are novel; in their original motion to dismiss, they never addressed any of the *Turkette* tests' three prongs. Here they raise all of them— the ongoing organization requirement, the continuity requirement/duration requirement, and the distinctiveness requirement. Their reasoning the second time around is not any more persuasive than the first.

First, the Court will consider whether Plaintiffs' adequately pleaded the first prong of the *Turkette* test—the ongoing organization requirement—an issue not briefed in the original motions to dismiss. To satisfy the first prong, a plaintiff "must show that some sort of structure exists within the group for the making of decisions, whether it be hierarchical or consensual,'" through a demonstration of a hierarchical structure itself is not required. *Console*, 13 F.3d at 651 (citing *Riccobene*, 709 F.2d at 222); *United States v. Bergrin*, 650 F.3d 257, 266 & n. 5 (3d Cir. 2011). The Complaint does establish a structure within a group for making decisions. It states that Defendants are interrelated as spouses or business partners who conducted activities individually and through legal entities. *See* Pl. Compl. at p. 24, ¶ 233. The Complaint later states that Defendants agreed and coordinated among themselves to launder bond funds from PSI. *See id.* at p. 27, ¶ 265. That the Complaint does not set forth a hierarchy within SSG Defendants'

---

[5] Although the first paragraph of page sixteen of SSG Defendants' brief in support of their motion for reconsideration only explicitly touches the duration or continuity requirement, the fifth sentence of that paragraph appears to implicate all three prongs of the *Turkette* test.

association-in-fact enterprise is not dispositive because, as noted above, a hierarchy is not required. Consent is required and consent is established. Plaintiffs' satisfied the first prong of the *Turkette* test.

Second, the Court will consider whether Plaintiffs' adequately pleaded the second prong of the *Turkette* test—the continuity requirement—an issue also not briefed in the original motions to dismiss. To satisfy this prong, a plaintiff must show "'that each person perform[ed] a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization.'" *Console*, 13 F.3d at 650. Continuity can be closed-or open-ended: the former consists of predicate offenses taking place over a period of at least twelve straight months, while the latter consists of past conduct projecting into the future with a threat of repetition. *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 403 (E.D. Pa. 2009) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989); and then citing *Tabas v. Tabas*, 47 F.3d 1280, 1293 (3d Cir. 1995)). The Complaint pleads closed-ended continuity in a timeframe lasting well over twelve months through several different theories of how the civil RICO conspiracy was accomplished, each presented in the alternative to one another. These theories turn on Defendants consent and coordination using their various roles as operators of various entities comprising SSG Defendants to launder bond funds between 2008 and 2014. *See* Pl. Compl. at pp. 25–28, ¶¶ 246, 263–65, 282. The Complaint pleads that Defendants' association-in-fact "had a sufficient duration which allowed Defendants to achieve their common purpose to divert the Bonds away from PSI and to Defendants." *See id.* at p. 24, ¶ 234. As a result, the Court found that Plaintiffs pled that SSG Defendants committed multiple predicate offenses and continued to provide legitimate services while they are alleged to have engaged in racketeering activities. *Compare Console*, 13 F.3d at 652, *with* Pl. Compl. at pp. 25–28, ¶¶ 256, 266, 276, 281–83.

Third, the Court will consider whether Plaintiffs adequately pleaded the third prong—the distinctiveness requirement—an issue also not briefed in the original motions to dismiss. To satisfy the third element, a plaintiff must show that the association-in-fact has an existence "beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." *Console*, 13 F.3d at 652. SSG Plaintiffs plead that multiple entities and individuals combined to form one enterprise. *See Riverwoods Chappaqua Corp v. Marine Midland Bank, N.A.*, 30 F.3d 339 (2d Cir. 1994). They never alleged a single-entity enterprise, such as an enterprise that solely consists of a single corporation and its employees. The Court's holding that Plaintiffs sufficiently pleaded an association-in-fact, therefore, was not clearly erroneous. Having established that Plaintiffs satisfied the *Boyle* and *Turkette* tests, the Court also concludes that its analysis of the first element of Plaintiffs' Section 1962(c) claim under Rule 12 was not clearly erroneous as well.

### iii. *Element 3: Conduct of a RICO Enterprise*

SSG Defendants contend that Plaintiffs' filed to establish the third element of a civil RICO conspiracy—a demonstration that they engaged in a pattern of racketeering activity. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 23. SSG Defendants' object to the fact that the Court did not analyze their conduct on an individual defendant-by-defendant basis. This argument is not persuasive to the Court.

To adequately plead the third element of a RICO Section 1962(c) claim, a plaintiff must satisfy the management test. The management test provides that a defendant must participate in the operation or management of the enterprise itself to be liable. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d at 300. Contrary to SSG Defendants' representation, the Court's opinion clearly stated that "Plaintiffs' Complaint details

the contribution of each Defendant in operating or managing an enterprise(s) as a part of a conspiracy to steal and launder bond funds." *Kyko Global, Inc.*, 2020 WL 1159439, at *21 (citing Pl.'s Compl. at pp. 2–3, 9–15, 21–28, ¶¶ 5- 38, 97–145, 207–288). There is no explanation by SSG Defendants of how Plaintiffs' Complaint failed to pass the threshold under Rule 12. The Court's analysis of the third element of Plaintiffs' civil RICO claim was therefore not clearly erroneous.

### iv. *Element 4: Predicate Offenses*

The fourth element of a RICO Section 1962(c) claim requires a showing of a pattern of racketeering activity that includes at least two predicate racketeering acts. *Shearing*, 885 F.2d at 1165. Thus, an analysis of the fourth element has two parts: analysis of predicate offenses and analysis of the pattern of racketeering they create. As to the first part, Plaintiffs plead three predicate racketeering acts: violations of the National Stolen Property Act ("NSP") of 1934, Pub. L. 73-246, 48 Stat. 794 (codified as amended at 18 U.S.C. §§ 2311 et seq.), the International Travel Act ("ITA") of 1961, Pub. L. 87-63, 75 Stat. 129-2 (codified as amended at 18 U.S.C. § 1952), and the Money Laundering Control Act ("MLCA") of 1986, Pub. L. 99-570, 100 Stat. 3207 (codified as amended at 18 U.S.C. §§ 1956–57). Pl. Compl. at pp. 24–29, ¶¶ 231–88. As to the second part, Plaintiffs' plead that these three predicate offenses constituted a pattern of racketeering activity. The question here is whether the Court's analysis of the fourth element of Plaintiffs' RICO Section 1962(c) claim was clearly erroneous. The answer is "No."

### a. Standard of Review

Ordinarily, a plaintiff need only provide in their complaint a short and plain statement of their claim showing that they are entitled to relief. FED. R. CIV. P. 8(a)(2). When a plaintiff pleads a fraud claim or a claim "sounding in fraud," however, Rule 9(b)'s heightened pleading standard

applies. Rule 9(b) states that "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). *Kyko Global, Inc.*, 2020 WL 1159439, at *22 (citing *Seville Indus. Mach. Corp v. Southmost Mach Corp.*, 742 F.2d 786, 791 (3d Cir. 1984); and then citing *Ramiro Aviles v. S&P Global, Inc.*, 380 F. Supp. 3d 221, 256 (S.D.N.Y. 2019)). The Third Circuit has held that, at times, courts should apply a more flexible interpretation of Rule 9(b). *E.g.*, *Seville*, 742 F.2d at 791; *Christidis v. First Penn. Mortg. Trust*, 717 F.2d 96, 100 (3d Cir. 1983); *see also Klapper v. Com. Realty Trust*, 657 F. Supp. 948, 959 (D. Del. 1987); 5 CHARLES A. WRIGHT & ALAN R. MILLER, FED. PRAC. & PROC. § 1298 (3d ed. 1969). Contrary to SSG Defendants' representation, there is no three-prong test for applying a flexible interpretation of Rule 9(b). SSG Defendants' distillation of *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992), *In re Burlington Coat Factory*, 114 F.3d 1410, 1418 (3d Cir. 1997), and *Friedberg v. Barefoot Architect Inc.*, 723 F. App'x 100, 103 (3d Cir. 2018) was incorrect. The rule for applying a flexible interpretation of Rule 9(b) in the Third Circuit is simpler and comes from two decisions: *Shapiro*, 964 F.2d at 285 and *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989). The rule from *Shapiro* and *Craftmatic* is that when a plaintiff seeks a flexible application of Rule 9(b), its "complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead it with particularity." *Shapiro*, 964 F.2d at 285 (citing *Craftmatic*, 890 F.2d at 645). One of the strongest arguments for a flexible application of Rule 9(b) is that a defendant is concealing information making a particularized pleading impossible; the Third Circuit's rule is crafted to address that very scenario.

The Court applied a relaxed interpretation of Rule 9(b) in reviewing the sufficiency of Plaintiffs' predicate offenses because factual information critical to the outcome of this case was

deemed to be within Defendants' exclusive control despite Plaintiffs' attempts to acquire it. In doing so, the Court held that all three of Plaintiffs' predicate offenses passed muster and formed a pattern of racketeering activity, therefore, Plaintiffs satisfied the fourth element of their Section 1962(c) claim. SSG Defendants contend that the Court erred in applying a more flexible version of Rule 9(b) to all three predicate offenses and in concluding that they formed a pattern of racketeering activity SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 19.

The Court's initial opinion unnecessarily applied the heighted pleading requirements of Rule 9(b) to Plaintiffs' MLCA and ITA claims. In fact, only the requirements of Rule 8(a)(2) applies to those claims. This misapplication, however, strengthens, not weakens, the Court's ultimate finding, for Rule 8(a)(2) is an easier standard to satisfy than Rule 9(b). Plaintiffs MLCA and ITA claims were sufficiently pleaded under Rule 8(a)(2). Plaintiffs' NSP claim was sufficiently pleaded under a strict application of Rule 9(b). And all three predicate offenses cumulatively constituted a pattern of racketeering activity.

### b. Money Laundering Control Act Claim

Plaintiffs plead that Defendants violated the MLCA, specifically, MLCA Sections 1956 and 1957. Pl.'s Compl. at pp. 26–28, ¶¶ 257–276 (citing 18 U.S.C. § 1956; and then citing 18 U.S.C. § 1957). Rule 8(a)(2) applies to MLCA claims, not Rule 9(b). *Davila Uviles v. RYS Int'l Corp.*, 443 F. Supp. 2d 233, 238 (D. Puerto Rico 2006) (citing *Leung v. Law*, 387 F. Supp. 2d 105 (E.D.N.Y. 2005)). The elements for a money laundering claim under the MLCA are fourfold: 1) a defendant conducted a financial transaction; 2) the transaction involved proceeds of a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7); 3) a defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and 4) a defendant knew that the financial transaction was designed in whole or in party to conceal

or disguise the source, ownership, control, and so on, of those proceeds. *Leung*, 387 F. Supp. 2d at 118 (citing *United States v. Maher*, 108 F.3d 1513, 1527–28 (2d Cir. 1997)). The allegations in the Complaint address these four elements, and in doing so satisfy Rule 8(a)(2). *See* Pl.'s Compl. at pp. 26–28, ¶¶ 257–276.

c. International Travel Act Claim

Plaintiffs pleaded violations of the ITA, specifically ITA Section 1952(a)(1) and Section 1952(a)(3). *Id.* at p. 28, ¶¶ 277–280. The term "unlawful activity" in the ITA contemplates violation of several different laws, including laws punishing money laundering. *Feldman v. Am. Dawn, Inc.*, 849 F.3d 1333, 1342 (11th Cir. 2017) (citing 18 U.S.C. § 1952(a)(1), (b); and then citing 18 U.S.C. § 1956). In construing the Complaint in a light most favorable to Plaintiffs, it appears that the unlawful activity alleged is money laundering in violation of MLCA Sections 1956 and 1957. *See* Pl.'s Compl. at p. 26–28, ¶¶ 257–276. As noted previously, Rule 8(a)(2) applies to MLCA claims, not Rule 9(b). *Davila*, 443 F. Supp. 2d at 238 (citing *Leung*, 387 F. Supp. 2d at 105). It logically follows that when the specified unlawful activity in an ITA Section 1952(a) claim are money laundering claims under MLCA Sections 1956 and 1957, Rule 8(a)(2), not Rule 9(b), applies to the Court's review of the ITA claim as well. *See id.* There are three elements to an ITA violation: 1) interstate travel or use of an interstate facility, 2) an intent to promote an unlawful activity, and 3) an overt act in furtherance of an unlawful activity. *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979) (citing 18 U.S.C. § 1952(a); and then citing *United States v. Polizzi*, 500 F.2d 856, 897 (9th Cir.), *cert. denied*, 419 U.S. 1120 (1975)). The allegations in the Complaint sufficiently pleaded these elements under Rule 8(a)(2). *See* Pl.'s Compl. at pp. 26–28, ¶¶ 257–280.

d. National Stolen Property Act Claim

Plaintiffs plead violations of the NSP, specifically NSP Sections 2314 and 2315. Pl.'s Compl. at pp. 25–26, ¶¶ 244–256 (citing 18 U.S.C. § 2314; and then citing 18 U.S.C. § 2315). "The major distinction between s 2315 and s 2314 is that the former focuses on the receipt of such goods, the latter on the interstate transportation of such goods." *United States v. Tashjian*, 660 F.2d 829, 840 (1st Cir. 1981). Plaintiffs' NSP claim sounds in fraud, therefore, the Court's review is guided by Rule 9(b), not Rule 8(a)(2). *Freedom Med. Inc. v. Gillespie*, 634 F. Supp. 2d 490 (E.D. Pa. 2007) (citing *Seville Indus.*, 742 F.2d at 792 & n.7). Plaintiffs did not explicitly plead the requirements of the Third Circuit's requirement for a flexible application of Rule 9(b) under *Shapiro* and *Craftmatic*, therefore, a strict application of Rule 9(b) is warranted.

The elements for an NSP claim are twofold: 1) interstate transportation of a stolen, converted, or fraudulently taken property of at least $5,000.00 value; and 2) with a fraudulent intent. *United States v. Freeman*, 619 F.2d 1112, 1118 (5th Cir. 1980 (citing *United States v. Driscoll*, 454 F.2d 792, 797 (5th Cir. 1972)). The allegations sufficiently pleaded these elements under Rule 9(b). *See* Pl.'s Compl. at pp. 25–26, ¶¶ 244–256. The Complaint alleges that "Defendants knew that the Bonds funds that they transferred away from PSI were stolen and converted," and in doing so violated NSP Section 2314. *Id.* at p. 26, ¶¶ 248–49. SSG Defendants' statement that "Plaintiffs allege no facts about any SSG Defendants' knowledge" is therefore demonstrably false. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 25. Their gloss of the allegations as suggesting that PSI voluntarily transferred the money to SSG Defendants is unreasonable, for it neglects the basic principle that the allegations must be construed in a light most favorable to Plaintiffs. The Complaint clearly suggests that the transfers were fraudulent.

### e. Pattern of Racketeering Activity

To plead the fourth element of a RICO Section 1962(c) offense sufficiently, Plaintiffs must not only plead the predicate offenses sufficiently in and of themselves, but must also satisfy two more requirements to show a pattern of racketeering activity: the relatedness requirement and the continuity requirement. The relatedness requirement mandates a showing that at least two predicate criminal offenses were committed that are related to an overall pattern of racketeering activity. The continuity requirement requires a showing that at least two predicate criminal acts hint at a threat of future criminal activity. *Hughes v. Consol-Pa. Coal Co.*, 945 F.2d 594, 609 (3d Cir. 1991) (citing *H.J. Inc*, 492 U.S. at 239). SSG Defendants contend that Plaintiffs failed both requirements. This is an issue not raised in their original motion to dismiss. It is inappropriate to introduce new arguments at the reconsideration stage. That said, SSG Defendants are still wrong. Plaintiffs satisfied both requirements.

First, the Court must address whether Plaintiffs sufficiently pleaded a pattern of racketeering activity by satisfying the relatedness requirement. RICO proscribes any person from engaging in conduct with an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(c). The term "pattern of racketeering activity" requires "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the omission of a prior act of racketeering activity. . . ." 18 U.S.C. § 1961(5). Pleading two predicate offenses is insufficient in and of itself—a plaintiff must plead that predicate offenses proximately caused a violation of Section 1962(c). *Baglio v. Baska*, 940 F. Supp. 819, 833 (W.D. Pa. 1996) (citing cases). As the Supreme Court noted in *H.J. Inc.*, 492 U.S. at 238, "It is not the number of predicates but the

relationship that they bear to each other or to some external organizing principle" that renders them into a pattern. The meaning of the term "pattern" is flexible. *Id.*

Here, there is a "pattern of conduct" situated around an external organizing principle: Defendants' scheme to launder bond funds belonging to PSI. The "pattern of conduct" organized around that principle are three predicate offenses committed by Defendants: violations of the NSP, ITA, and MLCA. Pl.'s Compl. at pp. 24–29, ¶¶ 231–88. The specific conduct involved not only the receipt of three wire transfers, but, at minimum, creating bogus memoranda of understanding, creating bank accounts, creating bogus accounts receivable, sending and receiving telephonic and electronic communications facilitating the conspiracy, (Goel's) visiting Pittsburgh in 2008 to create a pass through entity for laundering the bond funds, and other conduct that will be revealed through discovery. This conduct proximately caused a violation of Section 1962(c). As will be noted in the personal jurisdiction analysis below, each of the SSG Defendants received one of the fraudulent wire transfers themselves directly as an entity managing the receiving bank account or indirectly as an individual operator of an entity managing the receiving bank account. The critical flaw in SSG Defendants' brief is ignoring the liability of individual SSG Defendants for the actions of the entities they operated. They did not conspire as individuals in a vacuum, but as individuals in key positions of organizations whose assets they used for unlawful purposes. *See LSC Assocs. v. Lombas & Nettleton Fin. Corp.*, 629 F. Supp. 989, 983 (E.D. Pa. 1986). This dimension of the Court's analysis of the fourth element of Plaintiffs' Section 1962(c) claim, therefore, was not erroneous.

Second, the Court must address whether Plaintiffs sufficiently pleaded a pattern of racketeering activity by satisfying the continuity requirement. SSG Defendants argue that because the alleged predicate criminal acts only occurred over an eight-month period between November

2020 to June 2011 and did not hint at any future crimes, Plaintiffs did not satisfy the threshold for

pleading the fourth element of a RICO Section 1962(c) violation. This argument is unpersuasive.

As the Supreme Court noted in *H.J. Inc.*, 492 U.S. at 241, there are two types of "continuity" for

determining risk of future criminal conduct suggested by predicate criminal offenses: closed-and-

open-ended continuity. Closed continuity refers to a series of predicate offenses committed in a

closed period that constituted a substantial period. Open continuity, on the other hand, refers to a

series of predicate offenses that is not yet "continuous" yet poses a "threat of continuity." A

distinct threat of a long-term racketeering activity can either be implicit or explicit. *Id.* at 242.

There is no bright line standard for what continuity looks like: it is a case by case determination.

*Id.* The Supreme Court has invited lower courts to define what continuity looks like, however,

with more particularity. The Third Circuit, for example, held that twelve months or less is not a

"substantial period." *Hughes*, 945 F.2d at 611.

SSG Defendants position appears to be that Plaintiffs' case exclusively relies on a closed

period theory of continuity, hence their emphasis of the fact that the period when the wire transfers

took place only lasted eight months. Plaintiffs never take that position in their Complaint though.

Indeed, conspiratorial conduct was alleged to have occurred over a longer period lasting from, at

the very least, 2008 through 2014. That is a period of several years, well over the Third Circuit's

threshold. The Court cannot conclude that a closed-period theory of continuity is implausible

based on the facts alleged in the face of the Complaint under Rule 12. Even if the facts could not

support a closed period theory of continuity here, an open period theory of continuity is still

supported by the record. The wire transfers in 2011 implied the risk of future fraudulent wire

transfers in the future barring Plaintiffs' discovery of the scheme. Plaintiffs' never alleged that

this was a "one-time racket," so the facts do not foreclose the plausibility of an open period theory

of continuity either. The Court's analysis of the fourth element of Plaintiffs' Section 1962(c) claim, therefore, was not erroneous.

### f. Conclusion

The Court's analysis of the fourth element of Plaintiffs' civil RICO claim under 18 U.S.C. § 1962(c) erred in method but not in result. *See, e.g.*, Pl.'s Compl. at pp. 11 14, 27, ¶¶ 110, 114, 137, 263–64, 287. The following findings reflect the Court's revised analysis of federal question jurisdiction: 1) Rule 8(a)(2) applies to Plaintiff's MLCA and ITA claims, 2) Rule 9(b) rigidly applies to Plaintiffs' NSP claim, 3) Plaintiffs sufficiently pleaded all three predicate offenses, 4) Plaintiffs' sufficiently pleaded the relatedness requirement for showing a pattern of racketeering activity, and 5) Plaintiffs' sufficiently pleaded the continuity requirement for a showing a pattern of racketeering activity. Based on these five findings, the Court holds that Plaintiffs sufficiently pleaded the fourth element of their Section 1962(c) claim. The Court's ultimate conclusion that it can exercise federal question jurisdiction was not erroneous.

### D. *Personal Jurisdiction*

SSG Defendants argue that the Court's specific personal jurisdiction analysis is clearly erroneous because it ignored constitutional requirements, overestimated the importance of Madhavi and Jayaraman's contacts with the forum, and failed to show that Vourloumis, Him, Maheshwari, Goel, Noor, SSG Capital Partners, VTC, and SSG Hong Kong each had sufficient contacts with the forum. *See* SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reonsideration at pp. 7–11. They also argue that the Court erred in holding that it could exercise statutory personal jurisdiction over foreign Defendants in this case. The Court disagrees.

### 1. Traditional Minimum Contacts Test

SSG Defendants contend that the Court's traditional minimum contacts analysis was erroneous because it ignored the United States Supreme Court's decision in *Walden v. Fiore*, 571 U.S. 277 (2014) and a recent decision by the United States Court of Appeals for the Third Circuit in *Kyko Global., Inc. v. Bhongir*, Case No. 19-1807, 2020 WL 1545858, at **1, 3 (3d Cir. Apr. 1, 2020). SSG Defendants cite *Walden* for the proposition that the Court should analyze each Defendant's contacts with a forum and show that they all have meaningful contacts with the forum. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 7 (citing *Walden*, 571 U.S. at 285–86); SSG Defendants' Reply Brief in Support of their Motion for Reconsideration or, in the Alternative, to Certify for Interlocutory Appeal (ECF No. 154) ("SSG Def.'s Reply Br. in Supp. of SSG Def.'s Mot. for Reconsideration") at p. 2. They argue that the Court did not satisfy that requirement. They are wrong.

Two rules of law recited in *Walden* are important here: the rule that a plaintiff's only link to the forum cannot be a plaintiff or a third party and the rule that each defendant must have sufficient contacts with the forum. These rules of law stem from *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), a foundational precedent that the Court discussed in its opinion multiple times. *Compare Walden*, 571 U.S. at 284–86 (citing *Burger King*, 471 U.S. at 462, 478–80), *with Kyko Global, Inc.*, 2020 WL 1159439, at **25–29 (citing *Burger King*, 471 U.S. at 475–76). As to the first rule from *Walden*, the Court's opinion does not exclusively rely on the link between PSI and SSG Defendants. It is the link between SSG Defendants and Madhavi that is most significant, a link that SSG Defendants fail to adequately explain. As to the second rule from *Walden*, the Court's opinion adequately discussed the contacts of Defendants with the forum. *Walden* did not require this Court to make a dry, formal list of each defendant with a corresponding contact analysis in neat, segregated paragraphs. What the Court did was sufficient under *Walden*—

it provided concise analysis of three categories of contacts in determining that the traditional minimum contacts analysis was satisfied as to all SSG Defendants: the wire transfers between Madhavi and SSG Defendants, Goel's trip to Pittsburgh in 2008, and the electronic and physical communications between SSG Defendants and other individuals and entities associated with Prithvi's family of businesses. This analysis was not erroneous.

The critical facts to keep in mind are the relationships between individual SSG Defendants, entity SSG Defendants, and non-SSG Defendants. The upshot of all of these connections is that all SSG Defendants had constructive, if not actual knowledge of each other's fraudulent activities. In particular, individual SSG Defendants occupy leadership positions in entity SSG Defendants, therefore, the former had constructive, if not actual knowledge that the bank accounts of the latter received facilitated fraudulent wire transfers. SSG Defendants raise in their brief a Third Circuit case that allegedly dismantles the Court's analysis of these connections. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Consideration at p. 8 (citing *Bhongir*, 2020 WL 1545858, at *3). But what they neglect to mention is that the case they cite—*Bhongir*—is unpublished and non-binding. There is no way the Court could have cited *Bhongir* because it was published a month after this Court's opinion was issued. Nevertheless, even if *Bhongir* were available to the Court at the time of publication, it is still distinguishable.

In *Bhongir*, Kyko sued Omkar Bhongir ("Bhongir"), a California resident who served on the board of directors of Prithvi from 2005 – 2009, claiming that he induced Kyko to enter into a fraud factoring scheme. Kyko pleaded allegations of negligence and fraud. *Bhongir*, 2020 WL 1545858, at *1. After the parties conducted jurisdictional discovery, Bhongir moved for dismissal under Rule 12(b)(2). The district court granted the motion for lack of personal jurisdiction. The Third Circuit affirmed. Returning to the traditional minimum contacts test, the Third Circuit held

that there was no personal jurisdiction over the negligence claim because Bhongir's communications with a Prithvi board member in Pennsylvania were not enough. That he visited Pennsylvania twice was also insufficient because both of his trips were personal, not professional, in nature. *Id.* This case is easily distinguishable because Goel's trip to Pittsburgh, unlike Bhongir's, was professional, not personal.

The most vital aspect of the minimum contacts analysis here are the wire transfers between bank accounts belonging to PSI; PISL; Prithvi, LLC; PASL; SSG Capital Partners; and VTC. All SSG Defendants are linked to bank accounts that received wire transfers in capacities that render them liable. All the wire transfers to SSG Defendants are contacts for the traditional minimum contacts analysis. SSG Defendants have proffered no case law holding the opposite. The Court holds that its traditional minimum contacts analysis was not clearly erroneous. *See World-Wide Volkswagen Corp.*, 444 U.S. at 292 (citing cases); *Elbeco Inc. v. Estrella de Plato, Corp.*, 989 F. Supp. 669, 677 (E.D. Pa. 1997) (citing *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1222 (3d Cir. 1992)).

## 2. Effects Test

SSG Defendants argue that the Court's analysis of the effects test under *Calder v. Jones*, 465 U.S. 783 (1984) was clearly erroneous. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at pp. 11–12. The effects test has three elements: 1) the defendant committed an intentional tort, 2) the plaintiff felt the brunt of the harm in the forum so that the forum is the focal point of tortious activity, and 3) the defendant aimed his tortious conduct at the forum. Contrary to SSG Defendants position, *Walden* did not "drastically limit" *Calder*—it merely clarified that personal jurisdiction turns on an international tortfeasor's contacts with the forum. *See* Plaintiffs' Brief in Opposition to SSG Defendants' Motion to Dismiss Pursuant to Federal Rules of Civil

Procedure 12(b)(1), 12(b)(2), and 12(b)(6) (ECF No. 39) ("Pl.'s Br. in Opp'n to SSG Def.'s Mot. to Dismiss") at p. 9 (citing *Walden*, 571 U.S. at 286). The Court's analysis of all three elements of the effects test properly followed *Calder* and *Walden*.

SSG Defendants have two major lines of argument. First, they argue that the effects test is not satisfied because the intentional tort alleged did not take place in the forum and was not connected to the forum in a meaningful way. This is not a persuasive argument. The wire transfer scheme originated in Pittsburgh and was managed in Pittsburgh. Pittsburgh is rightfully characterized as the place where the brunt of the harm was felt, as the focal point of where the harm was directed, and as the target of where the harm was aimed. Second, SSG Defendants cite *Bhongir* for the conclusion that the third element was not established. In that case, the Third Circuit determined that the third element—the express aiming of tortious conduct at the forum state—was not established. The only evidence of contacts in that case was calls and emails exchanged between Bhongir and another Prithvi board member in Pittsburgh and the fact that Bhongir made two personal trips to Pittsburgh, evidence found insufficient in-and-of itself. *Id.* at *3. It is not clear from *Bhongir* what the calls and emails were, so it is difficult for the Court to make a complete comparison. The Court also reiterates that *Bhongir* is unpublished and non-binding. This case involves much more evidence of aimed tortious conduct in the form of the wire transfers and Goel's professional, not personal, visit to Pittsburgh, than that in *Bhongir*. In construing Plaintiffs' allegations in a light most favorable to them under Rule 12, the Court concludes that its analysis of the effects test was not erroneous.

3. Conspiracy Test

SSG Defendants contend that the Court's analysis of conspiracy jurisdiction was erroneous. Conspiracy jurisdiction imputes contacts of a resident coconspirator to a foreign

coconspirator. *Mass. Sch .of Law at Andover, Inc. v. Am. Bar Ass'n*, 846 F. Supp. 374, 379 (E.D. Pa. 1994). The test is whether a resident coconspirator performed substantial acts in furtherance of the conspiracy within the forum and the foreign coconspirator was or should have been aware of those acts. *Am. Bar Ass'n*, 846 F. Supp. at 379–80. SSG Defendants position appears to be that conspiracy jurisdiction is unconstitutional under the Supreme Court's decision in *Walden*. This is yet another novel argument that did not appear in the original briefing. Nevertheless, the Court does not find the argument persuasive.

SSG Defendants do not dispute how the conspiracy jurisdiction test was formulated or applied assuming that conspiracy jurisdiction is lawful. Their critique strictly relies on *Walden* and lower court cases interpreting it. They neglect to point out, however, that there are two bases for concluding that conspiracy jurisdiction is unlawful. It can be unlawful strictly because it conflicts with a forum's long-arm statute if it provides greater protections than that afforded under the United States Constitution. Even if a forum's long-arm statute's protections are construed to be co-equivalent with those afforded under the Fourteenth Amendment, as Pennsylvania's is, conspiracy jurisdiction can still be unlawful if it violates the level of protection afforded by the Fourteenth Amendment itself. Neither SSG Defendants nor the four federal district court opinions they cite appear to make this distinction, and instead predicate their reasoning on a soupy blend of state and federal law due process principles.

As noted in this Court's opinion, choice-of-law principles dictate that conspiracy jurisdiction is an issue of state law because specific jurisdiction is analyzed according to a forum's long-arm statute. *United Healthcare Serv.'s, Inc. v. Cephalon, Inc.*, Case No. 17-555, 2018 WL 878766, at **1, 5 & n.4 (E.D. Pa. Feb. 13, 2018). So, while other federal district courts may be fine to ignore conspiracy jurisdiction because *it is not* commensurate with the law of their forums,

the Court is justified in adopting conspiracy jurisdiction here because *it is* commensurate with Pennsylvania law. *Compare Kyko Global, Inc.*, 2020 WL 1159439, at *31 (citing cases), *with Hannah v. Blanchette*, Case No. H-13-3119, 2014 4185816, at **1, 5 (S.D. Tex. Aug. 21, 2014) (citing cases), *and Martin v. Eide Bailly LLP, Case No. 1:15-cv-1202-WTL-DKL,*, 2016 WL 4496570, at **1, 4 (S.D. Ind. Aug. 26, 2016). The procedural protections afforded by Pennsylvania's long-arm statute are coextensive with those afforded by the Fourteenth Amendment, so there is no need for a bifurcated analysis. Even if there were, federal courts considering the federal constitutionality of conspiracy jurisdiction have found the doctrine to be completely in line with *Walden*. *See Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 293 (S.D.N.Y. 2019) (citing *Walden*, 571 U.S. at 286); *Cephalon, Inc.*, 2018 WL 878766, at **1, 5; *Best Chari Inc. v. Factory Direct Wholesale, LLC*, 11 F. Supp. 3d 828, 839–40 (S.D. Ind. 2015).[6] Thus, the Court's analysis of conspiracy jurisdiction was not clearly erroneous.

### 4. Personal Jurisdiction Under the RICO Statute

The Court held that it could exercise personal jurisdiction over Plaintiffs' Section 1962(c) claim under that the RICO statute's venue provision: 18 U.S.C. § 1965(b). *Kyko Global, Inc.*, 2020 WL 1159439, at *18 (citing 18 U.S.C. § 1962(c) (emphasis added)). SSG Defendants' insist that Section 1965(b) does not apply to foreign defendants because RICO does not permit international service of process, and cite five out-of-circuit cases for that proposition. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 13 & n.15. The Court disagrees.

---

[6] Plaintiffs mischaracterized *Plumbers' Loc. Union NO. 690 Health Plan v. Apotex Corp.*, Case No. 16-665, 2017 WL 3129147, at ** 1, 1 (E.D. Pa. July 24, 2017) as declining to invoke conspiracy jurisdiction post-*Walden*. That decision actually declined to reach the issue of whether conspiracy jurisdiction is lawful.

There is no Supreme Court or Third Circuit case on point directly addressing the issue of whether Section 1965(b) allows for international service of process, therefore, the Court must look to other courts for guidance. There is a circuit split on this issue.[7] SSG Defendants cite the United States Court of Appeals for the Seventh Circuit's decision in *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 940 (7th Cir. 2000) for the proposition that "RICO permits service 'only in the judicial districts of the United States and not worldwide.'" SSG Def.'s Br. in Supp. of SSG Def.'s Mot. for Reconsideration at p. 13.[8] There's just one problem: *Reimer* is an ERISA case, not a RICO case. *Reimer* only barely refers to a prior RICO case in which the Seventh Circuit held that worldwide service process under RICO Section 1965(d) was not authorized under former Rule 4(f). The Seventh Circuit clarified that while under former Rule 4(f), service could not be made on foreign defendants internationally unless allowed by statute, under Rule 4(k)(2), does the opposite: it allows service to be made internationally unless doing so would violate a federal statute. *Id.* at 941. It still held that RICO's service of process provision only allows for service in the United States because RICO Section 1965 only refers to districts in the United States; it does not refer to worldwide service of process. Several federal district courts have so held using similar reasoning. *E.g., Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) (citing cases). What SSG Defendants' failed to note is that the Seventh Circuit's

---

[7] As to international service under Section 1965(b), Plaintiffs say that "The case law is also clear." Pl.'s Br. in Opp'n to Jayaraman's Mot. for Reconsideration at p. 14. As a matter of fact, the law is not that clear. None of the cases Plaintiffs' raise in their brief opposing reconsideration are on point. Both parties overlooked the circuit split entirely.

[8] SSG Defendants cite *PT United Can Co. Ltd. v. Crown Cork & Seal Co., Inc.*, 138 F.3d 65 (2d Cir. 1998), however, that case does not address the issue of whether Section 1965(b) permits international service. SSG Defendants also cite *Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil*, 75 F. Supp. 3d 1343, 1360 (D. Colo. 2014), yet international service was not at issue in that case either.

analysis is merely dicta, for it was only discussing RICO Section 1965(b) as an analogy in explaining ERISA's corollary service of process provision.

Even if it were not dicta, the Court is more persuaded by the United States Court of Appeals for the Eleventh Circuit's decision in *Brink's Mat Ltd. v. Diamond*, 906 F.2d 1519 (11th Cir. 1990). As the Eleventh Circuit noted, "There are no restrictions, explicit or implicit, in the language of 18 U.S.C.A. § 1965(b)." Given the congressional intent to broaden scope of service through implementing that provision, it declined to adopt the Seventh Circuit's more restrictive interpretation. *Id.* at 1523 (citing cases). The Court hereby adopts the Eleventh Circuit's reasoning.[9]

Rule 4(k) states that unless a statute prohibits international service, international service is presumed. There is no such prohibitive language in Section 1965(b), therefore, the Court was correct in holding that it could exercise personal jurisdiction over foreign defendants generally and here specifically. That Section 1965(b) allows for international service of process does not end the analysis, for the Court must still show that exercising personal jurisdiction under RICO satisfies constitutional requirements. But the Court already addressed those requirements in its opinion, so it need not change anything. The Court's exercising statutory jurisdiction over SSG Defendants' through RICO Section 1965(b) was not erroneous.

*E. Venue*

Jayaraman contends that the Court's venue analysis was erroneous because an Indian court would be more conversant with Indian laws that were allegedly violated than this Court. Jayaraman's Joinder in SSG Def.'s Mot. for Reconsideration at p. 4, ¶ 11. This argument is not

---

[9] SSG Defendants cite this case for the proposition that that Section 1965(b) does not allow for international service of foreign defendants—it says the opposite.

persuasive. As the Court noted in its opinion, Jayaraman inappropriately raised an alternative forum (India) for the first time in a reply brief in support of his original motion to dismiss. Even in the alternative that the Court considered India an alternative forum, there are no other reasons provided at the reconsideration stage as to why India is a better forum or override the presumption that Plaintiffs' choice of forum is proper. The Court's venue analysis was not clearly erroneous. *See Kyko Global, Inc.*, 20 WL 1159439, at **36–39.

### F. Interlocutory Appeal

SSG Defendants' ask the Court to certify interlocutory appeal under 28 U.S.C. § 1292(b). SSG Defendants want to appeal four questions of law. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 20. Their position is untenable: they do not explain how Section 1292(b) works, how it is interpreted, or how it applies to these particular questions. Having explored those issues on its own initiative, the Court holds that permissive interlocutory appeal is inappropriate.

In 1958, Congress implemented Section 1292(b). Section 1292(b) authorizes permissive interlocutory appeals, that is appeals "that involve 'a controlling question of law' the immediate appeal of which 'may materially advance the ultimate termination of the litigation.'" *Tidewater Oil Co. v. United States*, 409 U.S. 151, 165 (1972) (citing 28 U.S.C. § 1292(b)). The conventional wisdom is that interlocutory appeal under Section 1292(b) is the exception, rather than the rule. *See Cardona v. Gen. Motors Corp.*, 939 F. Supp. 351, 353 (D.N.J. (1996) (citing 16 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE, AND PROCEDURE § 3929 (1977)). According to a recent study by the Federal Judicial Center, however, fifty-two percent of Section 1292(b) applications ($n = 636$) between October 1, 2013 through June, 30, 2019 were granted. EMERY G. LEE III ET AL., FED. JUD. CTR., PERMISSIVE INTERLOCUTORY APPEALS, 2013–2019 1 (2019). The burden is on the movant to establish that there is 1) a controlling question of law, 2) generating a

substantial difference of opinion, 3) the resolution of which by an appeals court will materially advance the ultimate termination of the litigation. *Cardona*, 939 F. Supp. at 353. A question of law is controlling if incorrect disposition would lead to the final judgment being reversed. *Id.* (citing *Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974)). A mere disagreement with a district court's opinion does not constitute a substantial difference of opinion. *Id.* For the reasons given below, the Court should deny SSG Defendants' alternative request for interlocutory appeal.

1. Controlling Question of Law

The first issue for appeal—the legality of conspiracy jurisdiction—is not controlling because it is addressed in the alternative to the traditional minimum contacts test and effects test. The remaining three issues for appeal, if incorrectly decided, would lead to reversal, as they all pertain to jurisdiction and the sufficiency of Plaintiffs' RICO claims. The first issue therefore fails at the first prong. The second and third issues move on to the second prong.

2. Substantial Difference of Opinion

There are grounds for disagreement with the Court's ruling, but those grounds are not substantial. There is no genuine doubt as to the correct legal standards for evaluating specific personal jurisdiction, statutory jurisdiction under RICO Section 1965(b), or the sufficiency of pleading a violation of 18 U.S.C. § 1962(c), 18 U.S.C. §§ 2314–15, 18 U.S.C. § 1952, or 18 U.S.C. §§ 1956–57. SSG Defendants do not even address the elements, let alone supply specific substantial grounds for differences in opinion or otherwise explain how this case has illuminated novel questions of law that the Third Circuit should address immediately. *See* Pl.'s Br. in Opp'n to Jayaraman's Mot. for Reconsideration at p. 11. Permissive interlocutory appeal under Section 1292(b) is therefore inappropriate at this stage. The Court need not address the third prong.

*G. Conclusion*

The Court holds that its May 10, 2020 opinion denying SSG Defendants' and Jayaraman's motions to dismiss was not erroneous. No portion of that opinion will be vacated. Jayaraman's request to have his admissions withdrawn was properly denied. Plaintiffs' adequately pleaded personal jurisdiction, subject matter jurisdiction, and venue. Interlocutory appeal is inappropriate at this stage. Having considered its prior reasoning and engaged new arguments, this opinion simply affirms those holdings and adds three salient clarifications. First, the Court's designation of PISL, PASL, and Madhavi as "SSG Defendants" in its prior opinion was not a material mistake. Second, the Supreme Court's decision in *Walden* did not eliminate conspiracy jurisdiction. Third, Rule 8(a)(2) controls Plaintiffs' MLCA and ITA claims, while Rule 9(b) controls their NSP claim. All three of Plaintiffs' predicate offenses to the RICO statute were still well-pleaded under those respective standards of review.

## II.     Motion for Stay

SSG Defendants request a stay until the issues raised in their motion for reconsideration are resolved by either this Court or the Third Circuit. SSG Defendants' Motion to Stay ("ECF No. 135) ("SSG Def.'s Mot. to Stay") at pp. 1–2, ¶ 1. SSG Defendants' motion requesting a stay is denied as the Court has already concluded that permissive appeal is not warranted.

## III.     Discovery-Related Motions

Plaintiffs' filed three motions requesting more subject matter and jurisdictional discovery. Plaintiffs' Motion to Conduct Jurisdictional Discovery Depositions of Value Team Corporation and Defendants Edwin Wong, Andreas Vourloumis, and Ira Noor Vourloumis (ECF No. 149) ("Pl.'s Mot. to Compel VTC, Him, Vourloumis, and Noor") at p. 1; Plaintiffs' Motion to Compel Jurisdictional Discovery (ECF No. 151) ("Pl.'s Mot. to Compel Jayaraman, Madhavi, Satish, PISL, and PASL") at p. 1; Plaintiffs' Motion to Conduct Subject Matter Jurisdiction Discovery (ECF

No. 153) ("Pl.'s Mot. to Conduct Subject Matter Discovery") at p. 1. These motions are all submitted in the alternative that the Court declines to vacate its prior ruling as to personal jurisdiction and subject matter jurisdiction. Pl.'s Mot. to Compel VTC, Him, Vourloumis, and Noor at pp. 2, 10, ¶ 3; Pl.'s Mot. to Compel Jayaraman, Madhavi, Satish, PISL, and PASL at p. 2, ¶ 4; Pl.'s Mot. to Conduct Subject Matter Discovery at p. 2, ¶ 4. SSG Defendants responded. SSG Defendants' Combined Opposition to Plaintiffs' Motions for Additional Jurisdictional Discovery (ECF No. 155) ("SSG Def.'s Opp'n to Pl.'s Discovery Motions") at p. 1. Jayaraman filed a motion requesting an extension of time to respond to Plaintiffs' request for jurisdictional discovery. Motion for Extension of Time to Respond to Plaintiffs' Motion to Compel Jurisdictional Discovery (ECF No. 157) ("Pl.'s Mot. for Ext. of Time to Respond to Pl.'s Mot. to Compel") at p. 1. Having determined that both motions for reconsideration will be denied, Plaintiffs' and Jayaraman's discovery-related motions will be denied as moot.

## CONCLUSION

AND NOW, this 6th day of July 2020, IT IS HEREBY ORDERED that SSG Defendants' motion to stay proceedings pending adjudication of their motion for reconsideration of the Court's March 10, 2020 opinion (ECF No. 135) is DENIED. SSG Defendants' and Jayaraman's motions for reconsideration of the Court's March 10, 2020 opinion (ECF Nos. 132 and 144) are DENIED. Plaintiffs' motion to strike Jayaraman's joinder to SSG Defendants' reply brief in support of his motion for reconsideration (ECF No. 158) is DENIED as MOOT. Plaintiffs' three discovery motions and Jayaraman's motion requesting an extension of time to respond (ECF Nos. 149, 151, 153, and 157) are DENIED as MOOT.

**WILLIAM S. STICKMAN IV**
**UNITED STATES DISTRICT JUDGE**