**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation<br><br>                    Plaintiffs,<br><br>v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation,  SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company<br><br>                    Defendants. | Case No. 2:18-cv-1290-WSS |

**RULE 26(f) REPORT OF PARTIES' PLANNING MEETING**

1.     **Identification of counsel and unrepresented parties**.

Jayson Macyda - Counsel for Plaintiffs
Kyko Global Inc. and Affiliates
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

Joseph F. Rodkey, Jr. - Counsel for Plaintiffs
Fowkes Rodkey
P.O. Box 173, 732 Allegheny River Boulevard
Oakmont, PA 15139
(412) 828-2802
jrodkey@fowkesrodkey.com

1

Counsel for the SSG Defendants[1]:

Michael H. Ginsberg (Pa. Bar #43582)
John D. Goetz (Pa. Bar #47759)
Douglas Baker (Pa. Bar #318634)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514
Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Email: mhginsberg@jonesday.com
Email: jdgoetz@jonesday.com
Email: ddbaker@jonesday.com

Counsel for Defendant Anadhan Jayaraman:

Jeffrey T. Morris
Elliott & Davis P.C.
6425 Living Place
Suite 200
Pittsburgh PA 15206
morris@elliott-davis.com

**Unrepresented Parties:**

**Prithvi Information Solutions Ltd.** ("PISL") - Unrepresented Defendant registered to do business in Pittsburgh, Pennsylvania. PISL is not an SSG Defendant. Plaintiffs filed a motion for entry of Default and Default Judgment against PISL. This Court denied Plaintiffs' motion without prejudice. [Doc. No. 102].

**Madhavi Vuppalapati** - Unrepresented Defendant who currently resides in India. Ms. Vuppalapati is not an SSG Defendant. Plaintiffs filed a motion for entry of Default and Default Judgment against Ms. Vuppalapati. This Court denied Plaintiffs' motion without prejudice. [Doc. No. 102].

**Value Team Corporation** ("VTC") - Unrepresented Defendant whose registered agent's address is listed as: 4th Floor, Ellen Skelton Building, 3076, Sir Francis Drake Highway, Road Town, Tortola, British Virgin Islands VG1110.

**Prithvi Asia Solutions Limited** ("PASL") - Unrepresented Defendant whose registered agent's address is listed as: 6/F, ING Tower 308 Des Voeux Road Central, Hong Kong. PASL is not an SSG Defendant. Plaintiffs instituted service under the Hague Convention and the Hong Kong Special Administrative Region has requested that Plaintiffs re-submit their application solely to change the requesting governmental body from "Hong Kong" to "Hong Kong, China." Plaintiffs have conducted due diligence and have determined, to the best of their knowledge,

---

[1] The SSG Defendants are only the following: SSG Capital Partners I, L.P.; SSG Capital Management (Hong Kong) Limited; Shyam Maheshwari; Ira Syavitri Noor a/k/a Ira Noor Vourloumis; Dinesh Goel; Wong Ching Him a/k/a Edwin Wong; and Andreas Vourloumis.

information, and belief, PASL is no longer at this address and Plaintiffs are unaware of PASL's current registered address/location if one still exists.  Further, Plaintiffs further state that, during the material times set forth in the Complaint, it is uncontested that Madhavi Vuppalapati and Satish Vuppalati were controlling directors/officers of PASL.   Accordingly, Plaintiffs request this Court to allow Plaintiffs to effect service on PASL by serving Madhavi Vuppalapati via email in the same manner that this Court has approved in Doc. No. 61..

In the paragraph below, the Jones Day law firm attempts to make arguments on behalf of PASL, an entity that they do not represent. In any event, during the material times in question in the Complaint, Madhavi Vuppalapati and Satish Vuppalapati were officers/directors of PASL regardless of whether PASL was a wholly owned subsidiary of PSI.

The SSG Defendants note that Plaintiffs have no basis at this point in the litigation for stating that "it is uncontested that Madhavi Vuppalapati and Satish Vuppalati were controlling directors/officers of PASL."  Jurisdictional discovery revealed that PASL was a wholly owned subsidiary of PSI, a Plaintiff in this action.

2.    **Set forth the general nature of the case** (patent, civil rights, anti-trust, class action,  etc.):

**Plaintiffs state the following:**

Defendants engaged in a conspiracy and violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by stealing approximately $35,000,000 of bonds funds belonging to plaintiff Prithvi Solutions Inc. as set forth in Plaintiffs' RICO Case Statement [Doc. No. 5].

Defendants also committed torts arising under state law with respect to their theft of the bonds funds.  In the alternative, Plaintiffs assert breach of contract/quasi contract claims against Defendants SSG Hong Kong, SSG Capital Partners I, LP, as well as Value Team Corporation with respect to approximately $23,000,000 of receivables collectively owed from these Defendants to Prithvi Solutions Inc. according to Prithvi Solutions Inc.'s books and records.

The SSG Defendants' statements below are nothing but argument and illustrate the SSG Defendants' attempt to distort the facts of this case. While claiming in their jurisdictional discovery depositions that the SSG Defendants were not involved with the financial affairs of PSI, they now claim to have knowledge regarding the financial affairs of PSI and assert that an agreement between PSI and PISL to utilize the bond funds appears to be "fabricated."  To the contrary, and consistent with the Bond Circular and with the knowledge of the bond holders, the bond funds were earmarked for use in the U.S. to conduct business operations in the U.S. and PISL and PSI subsequently entered into an agreement for the benefit of PSI to have PSI solely execute business operations in the U.S. by utilizing the bond funds.  PSI did, in fact, utilize a portion of the bond funds to execute business operations in the U.S. before the Defendants fraudulently transferred the remaining bond funds as set forth in Plaintiffs' Complaint and RICO Case Statement.

The SSG Defendants also state that, "[t]he only other basis for keeping the SSG

Defendants in this case is the fraudulent balance sheet that PISL and PSI provided to Kyko showing 'loans' to SSG and VTC." First, PISL and PSI did not "provide" Kyko with anything.  Kyko discovered PSI's balance sheet independently after it obtained PSI's books and records.  Second, Kyko also discovered that PSI's balance sheet has been audited by at least one external independent Accounting firm that verified that the loans are due and owing as stated on the balance sheet. Accordingly, Plaintiffs' alternative claims based in contract/quasi-contract are well-grounded.[2]

Further, with respect to the SSG Defendants' arguments pertaining to personal jurisdiction and subject matter jurisdiction, they simply repeat the same arguments they made in their previously filed Motion to Dismiss Plaintiffs' Complaint and their Motion for Reconsideration of this Court's denial of same.  In response, the Court devoted 121 pages which explain that the Plaintiffs have set forth viable causes of action which can proceed on the merits.  Accordingly, rather than repeat their previously made arguments here, Plaintiffs hereby incorporate their responses to the SSG Defendants' motions and this Court's 121 pages which state  Plaintiffs have set forth viable causes of action which can proceed on the merits.

**SSG Defendants' Response:**

The SSG Defendants purchased distressed bonds issued by PISL in a routine transaction and agreed in good faith to restructure those bonds.  The restructuring had three parts, a repurchase of one-third of the bonds by PISL, a forgiveness of one-third of the bonds, and the agreement by PISL and the SSG Defendants that one-third of the bonds could be exchanged for equity in PISL in the event that PISL returned to profitability.  Nothing about this restructuring was fraudulent—SSG Fund I and VTC were legitimate holders of the PISL bonds, and the restructuring was an arm's length transaction to assist PISL in its effort to return to profitability.  Even the Complaint fails to allege that this bond transaction was criminal.

Plaintiffs' claims of fraud, and their entire RICO claim, are grounded on a single allegation that PSI was the rightful owner of the Bond proceeds:

Consistent with the Bond Offer Circular, PISL and PSI entered into an agreement wherein the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States.

Compl. ¶ 101.

However, Plaintiffs have never identified any documentation supporting this allegation.  PSI did not exist when the PISL Bonds were issued, so this allegation appears to be fabricated.  Even if such an agreement between PISL and PSI existed, which it did not, it would have violated the express terms of the PISL

---

[2] Notwithstanding their denials in the Rule 26(f) Report, the SSG Defendants nevertheless suggest that such loans could indeed exist.  As stated in their 11th Affirmative Defense: "Plaintiffs breach-of-contract claims are barred because the SSG Defendants performed all relevant obligations in good faith under any contracts relevant to this action." [Doc. No. 139, Pg. 59].

Bond Circular.  ECF No 154-4 ("Bond Circular"), at 43, 61 (restricting PISL from pledging any "undertaking, assets or revenues (present or future) to secure … any loan" and requiring PISL and *all* subsidiaries, including PSI, to pledge security interests in their receivables in favor of the bondholders, which were SSG Fund I and VTC).  Without this purported PSI-PISL agreement—which does not and could not have legally existed—PSI had no right to the money, so nothing could have been stolen from it, meaning there is no actionable claim under RICO.

The only other basis for keeping the SSG Defendants in this case is the fraudulent balance sheet that PISL and PSI provided to Kyko showing "loans" to SSG and VTC.  ECF No. 108-4.  However, there were no loans, there are no loan agreements, and there has been no explanation of why SSG and VTC would be borrowing money from a distressed company when in fact SSG Fund I and VTC were holders of $50 million of PISL bonds.  Nor have Plaintiffs ever produced the purported loan agreement.   Three deponents testified during jurisdictional discovery that these loans do not exist.  ECF No. 108-1, at 15; ECF No. 108-2, at 19; ECF No. 108-3, at 10.

The SSG Defendants also maintain that the Court does not have personal jurisdiction over any of them.  There is nothing in the Complaint demonstrating that the SSG Defendants purposefully directed any activities into Pennsylvania. There are no allegations that the SSG Defendants engaged in any discussions, meetings, business transactions, or any activities whatsoever within Pennsylvania. Aside from certain of the SSG Defendants' mere ownership of PISL bonds, the Complaint does not allege any facts showing that the SSG Defendants had relevant contacts with Pennsylvania, and jurisdictional discovery revealed no such contacts. The SSG Defendants maintain that the Court improperly imputed the activities of the Plaintiff PSI and non-SSG Defendants, including Madhavi Vuppalapati and PISL, to the SSG Defendants.  The Court committed other errors of law in finding personal jurisdiction, including (i) failing to perform an individualized analysis of the SSG Defendants (ECF No. 164 at 26); (ii) inflating random and fortuitous email communications with parties that may or may not have been in Pennsylvania; and (iii) using PSI's purported harm as a basis for personal jurisdiction.  All of these bases contravene Supreme Court precedent, including *Walden v. Fiore*, 571 U.S. 277, 286 (2014), *Rush v. Savchuk*, 444 U.S. 320, 332 (1980), and *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017).

The SSG Defendants further maintain that the Court lacks federal question subject matter jurisdiction.   Only the RICO claim provides federal question jurisdiction, and that claim is fatally flawed for three reasons:  (i) it fails to state a legally viable claim under the statute; (ii) it is barred by the doctrine of *in pari delicto*, since the Complaint alleges that PSI was harmed through purported fraudulent activity of which it was a participant, *see* Compl. at ¶¶ 118, 123-24; and (iii) the claim is barred by the statute of limitations governing RICO claims, since, under the Complaint's allegations, Plaintiff PSI was necessarily aware of the allegations in the Complaint as allegedly an active participant in those actions:  the Complaint states that, "[o]n or about November 3, 2010, *PSI*…transferred" all of the purportedly stolen money *from its own bank account* "at Defendants' behest." *See* Compl. at ¶¶ 123-24 (emphasis added).

The SSG Defendants also maintain that diversity jurisdiction is unavailable. Plaintiffs never met their burden to establish that *any* defendant in the case is a United States citizen—which is necessary for diversity jurisdiction.  For example,

Defendant PISL is not a citizen of any State.  A corporation, including PISL, can only have one *global* "principal place of business."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (a corporation only has *one* "nerve center," which is the "single place" where its "officers direct, control, and coordinate the corporation's activities").  The Complaint never alleges that PISL had its *sole* principal place of business in Pennsylvania, or any other State.  Rather, the Complaint pleaded ambiguously that PISL had "its principal place of business *in the United States* located in Pittsburgh, Pennsylvania."  Compl. ¶ 5 (emphasis added).  This allegation fails on its face to establish that PISL is a resident of Pennsylvania because it is not enough to allege that PISL has "a" principal place of business in Pennsylvania.  *See S. Freedman & Co. v. Raab*, 180 F. App'x 316, 320 (3d Cir. 2006) (affirming dismissal for lack of diversity jurisdiction where the complaint alleged only that a company had "'*a* principal place of business' in Pennsylvania" but not "the" principal place of business).  Without that allegation, the Court lacks diversity jurisdiction.  *Dresser Indus., Inc. v. Underwriters at Lloyd's of London*, 106 F.3d 494, 499 (3d Cir. 1997) (diversity jurisdiction does not exist "in suits between aliens on one side of the controversy and aliens and citizens on the other").  As discovery will make clear—and as Plaintiffs already know—PISL always maintained its "nerve center" in Hyderabad, India.

**Jayaraman Response**:   In addition to the statements set forth on behalf of the SGS Defendants hereinabove, most of which are equally applicable to Jayaraman, Jayaraman asserts he had no involvement or participation in any of the transactions or conduct alleged in Plaintiffs' Complaint and, to the best of his knowledge, the subject transactions were entirely compliant with controlling law and in particular the rules and regulations of the Reserve Bank of India.

3.   **Date Rule 26(f) Conference was held, the identification of those participating therein and the identification of any party who may not yet have been served or entered an appearance as of the date of said Conference:**

The Conference was held on July 16, 2020.

Jayson M. Macyda and Joseph F. Rodkey, Jr. participated on behalf of Plaintiffs.

Michael Ginsberg John Goetz, and Douglas Baker participated on behalf of the SSG Defendants.

Jeffrey T Morris participated on behalf of Defendant Jayaraman

Value Team Corporation, Prithvi Asia Solutions Ltd, Prithvi Information Solutions Ltd., and Madhavi Vuppalapati did not participate.

4.   **Date of Rule 16 Initial Scheduling Conference as scheduled by the Court**:

August 11, 2020 at 10:00 a.m.

**Defendant Jayaraman Response**:  Jayaraman concurs with the above statement on behalf of SSG Defendants and submits likewise, it remains his position that the Court

lacks personal jurisdiction over him as well as subject matter jurisdiction in this matter.

5.  **Identify any party who has filed or anticipates filing a dispositive motion pursuant to Fed. R. Civ. P. 12 and the date(s) by which any such anticipated motion may be filed:**

> **Plaintiffs state the following regarding the SSG Defendants' paragraph below:**

> The statute of limitations is an affirmative defense under Fed. R. Civ. P. 8(c). As such, it is *Defendants' burden to factually establish* that Plaintiffs' claims are barred by the statute of limitations, and not Plaintiffs' burden to demonstrate that their claims are not barred by the statute of limitations. See Gruber v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990)("When the statute of limitations is raised as a defense, we have recognized that it 'is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant.")(citation omitted).  The SSG Defendants' affirmative defense regarding the statute of limitations is baldly asserted in conclusory form: "Plaintiffs' claims are barred by the applicable statutes of limitations. In particular, and without limitation, Plaintiffs' RICO claim is untimely." [Doc. No. 139, Pg. 58].[3]  Mr. Jayaraman's affirmative defense is similarly deficient: "Plaintiffs' claims are barred by the applicable statute of limitations." [Doc. No. 138, pg. 2].  Accordingly, the Defendants have failed to assert any facts and failed to make any attempt to establish their burden of demonstrating Plaintiffs' claims are allegedly time-barred, and Plaintiffs are otherwise entitled to conduct merits discovery with respect to Defendants' conclusory and baldly asserted affirmative defenses thereby making a Fed. R. Civ. P. 12(c) motion improper (and is futile as later discussed).

> Further, during the February 5, 2019, status conference, Judge Phipps specifically inquired whether the various statutes of limitations in the case would be tolled under "Discovery rules" and on the basis of "fraud" and Plaintiffs informed Judge Phipps that these types of tolling doctrines are at issue in this case.  See February 5, 2019 Trs. Pgs. 23-24.

> By way of example and not limitation, in Beauty Time Inc. v. Vu Skin Systems Inc., 118 F.3d 140, 146 (3d. Cir. 1997) the court stated that when, "the underlying events being sued upon ... sound inherently in fraud or deceit ... [that], without more, will toll the statute of limitations until such time as the fraud has been revealed, or should have been revealed by the exercise of due diligence by plaintiffs." (citation omitted). See Also Sheet Metal Workers, Local 19 v. 2300 Group Inc., 949 F.2d 1274, 1280 (3d. Cir. 1991)(discussing tolling under doctrine of fraudulent concealment and stating, "[i]rrespective of any inherent fraud, the inquiry here is whether there was an affirmative and independent act of concealment that would divert or mislead a plaintiff

---

[3] This Court stated: "SSG Defendants assert in a footnote that there are 'insurmountable statute of limitations issues with Plaintiffs' RICO claim,' but then decline to address them fully. SSG Def.'s Br. in Supp. of SSG Def.'s Mot. to Dismiss at p. 18. As an affirmative defense, Defendants are free to raise the statute of limitations after answering the Complaint." Kyko Global Inc. v. Prithvi Information Solutions Ltd., 2020 WL 1159439, Civ. Action No. 2:18-cv-01290-WSS, at *24, n.20 (W.D. Pa. March 10, 2020).  Thus, after telling this Court that there are allegedly "insurmountable statute of limitations issues" and the Court allowing the SSG Defendants to raise the statute of limitations as an affirmative defense, the SSG Defendants fail to provide any facts or any discussion whatsoever in their affirmative defense to explain how Plaintiffs' claims are allegedly time-barred but now seek to dismiss Plaintiffs' claims on the pleadings alone.

about the underlying cause of action.").[4]   Accordingly, the nature and extent of Defendants' fraud and their acts of fraudulent concealment, coupled with Plaintiffs' discovery of same, are issues of fact that require the parties to undergo merits discovery and are otherwise incapable of being adjudicated from the pleadings alone under a Fed. R. Civ. P. 12(c) motion. See Crouse v. Cyclops Industries, 560 Pa. 394, 404 (2000)("Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue 'best determined by the collective judgment, wisdom and experience of jurors.'")(citation omitted).

"Where Rule 12(c) is invoked based on the theory that the plaintiff failed to state a viable claim, federal courts apply the same standard of review applicable to Rule 12(b)(6) motions." Germinaro v. Fidelity National Title Ins. Co., 107 F.Supp.3d 439, 447 (W.D. Pa. 2015). Under Fed. R. Civ. P. 12(b)(6), "[a]plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief that is plausible on its face ... A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff." Kyko Global Inc., 2020 WL 1159439, at *12 (citations omitted).

Plaintiffs' Complaint states in pertinent part: "On or about November, 2016, PSI discovered the nature and extent of Ms. Vuppalapati's acts of misappropriating the Bonds funds" (¶158); "On or about November, 2016, PSI discovered the nature and extent of Defendants' acts of misappropriating the Bonds funds (¶187); "On or about November, 2016, PSI discovered the nature and extent of Defendants' concert of action as discussed above" (¶197); "On or about November, 2016, PSI discovered the nature and extent of Defendants' conversion as previously set forth herein." (¶205); "On or about November, 2016, PSI discovered the nature and extent of Defendants' conspiracy as set forth above" (¶229); "On or about November, 2016, PSI discovered the nature and extent of Defendants' actions as set forth above" (¶288).

Under Fed. R. Civ. P. 12(c), this Court must accept the foregoing allegations as true i.e. Plaintiffs discovered the nature and extent of their claims referenced above on or about November 2016. The shortest statute of limitations period applicable to Plaintiffs' claims is two years.  Plaintiffs filed their Complaint on September 26, 2018 - or within 1 year and 10 months from discovering their claims. Accordingly, the SSG Defendants' proposed Fed. R. Civ. P. 12(c) motion is futile.  It is nothing but a continuation of a series of motions and maneuvering employed since the outset of this case to try to avoid having to fully undergo the complete standard merits discovery process ( i.e. not just initial disclosures) and to continue to needlessly run up Plaintiffs' litigation expenses.

Fed. R. Civ. P. 16(a)(3) states:  "In any action, the court may order the attorneys and any unrepresented parties to appear for one or more pretrial conferences for such purposes as: discouraging wasteful pretrial activities." Moreover, Fed. R. Civ. P. 16(c)(2)(A),(P) states: "At any pretrial conference, the court may consider and take appropriate action on the following matters: [A] formulating and simplifying the issues, and eliminating frivolous claims or defenses; [P] facilitating in other ways the just, speedy, and inexpensive disposition of the action."  Accordingly, Plaintiffs request that this Court preclude Defendants from filing their proposed motion under Fed. R. Civ. P. 12(c) and permit Defendants to file their motion based on the alleged expiration of the statute of limitations at the conclusion of discovery under Fed. R. Civ. P. 56 where the

---

[4] Plaintiffs have already informed this Court that some evidence has been destroyed or hidden from Plaintiffs [Doc. No. 159, pg. 3] which is discussed later in this Report.

Defendants' statute of limitations affirmative defenses can be properly reviewed based on the factual merits.

**SSG Defendants' Response:**  The SSG Defendants anticipate filing a motion pursuant to Federal Rule of Civil Procedure 12(c) to address statute of limitations issues with certain counts in Plaintiffs' Complaint.  Judge Phipps first raised the statute of limitations issues during the initial conference in this case.  ECF No. 38, at 23 ("And what is the statute of limitations for these transactions that took place in 2010?").  This Court then explained in its March 10, 2020 Opinion, that "[a]s an affirmative defense, Defendants are free to raise the statute of limitations after answering the Complaint." Op. at 53 n.20.  The SSG Defendants do not propose staying discovery while the motion is pending—to the contrary, the SSG Defendants agree that discovery should commence on August 11, 2020.

**Defendant Jayaraman Response**:  Jayaraman concurs with the above statement on behalf of SSG Defendants and will likely file a dispositive motion at the appropriate time.

6.    **Designate the specific Alternative Dispute Resolution (ADR) process the parties have discussed and selected, if any, and specify the anticipated time frame for completion of the ADR process.  Set forth any other information the parties wish  to communicate to the court regarding the ADR designation:**

Plaintiffs assert that the parties should mediate their dispute on or before October 10, 2020.

In response to the SSG Defendants' statements below, Plaintiffs hereby incorporate their discussion in Section 7.

**SSG Defendants' Response:**

The SSG Defendants believe the parties should engage in mediation by October 10, 2020, which is 60 days after the initial case management conference set for August 11, 2020.  The SSG Defendants believe that mediation will be most productive after the parties have exchanged initial disclosures, and Plaintiffs provide the following documents described in more detail elsewhere in this Report:

(1) documentation supporting their allegation in Paragraph 101 of the Complaint;

(2) any loan agreement—or any documents showing the existence of a loan agreement—between PSI and any of the SSG Defendants, as described in the Complaint at ¶¶ 56, 61, 66, 127, 131, 147, 290-98, 300-310, 312-18; and

(3) any documents supporting the Complaint's allegations regarding PSI's "discovery" in November 2016 of the Complaint's allegations, *see* Compl. ¶¶ 158, 187, 197, 205, 229, 288, and any basis for PSI's failure to discover these allegations earlier.

Each of these categories of documents falls within Plaintiffs' initial disclosure obligations. Fed. R. Civ. P. 26(a)(1)(A)(ii).

**Defendant Jayaraman Response**:  Jayaraman asserts that mediation is the preferred ADR process to be utilized in this case.

7.    **Set forth any change that any party proposes to be made in the timing, form or requirements of Fed. R. Civ. P. Rule 26(a) disclosures, whether such change is opposed by any other party, whether any party has filed a motion seeking such change and whether any such motion has been ruled on by the Court**:

Plaintiffs state that no changes should be made regarding the requirements of Fed. R. Civ. P. 26(a) disclosures. Similar to Defendants, Plaintiffs reserve the right to seek a 10-day extension of time if necessary.

Because Defendants carry the burden to establish their affirmative defenses (Gruber v. Price Waterhouse, 911 F.2d 960, 963 (3d Cir. 1990)), Plaintiffs state that, without limiting other disclosures required under Fed. R. Civ. P. 26(a), Defendants produce documents that allegedly support their affirmative defenses which are presented to Plaintiffs in manner wherein the documents are clearly labeled given Defendants assert multiple affirmative defenses (*e.g.* documents "x, y, z" pertain to affirmative defense based on statute of limitations; documents "a, b, c" pertain to SSG Defendants' affirmative defense of the *in pari delicto* doctrine, etc.  ).

**With respect to the SSG Defendants' response below, Plaintiffs state as follows:**

Some evidence relative to this case has destroyed or hidden from Plaintiffs.  [Doc. No. 159, pg. 3]. Further, Mr. Jayaraman has unambiguously and openly admitted that Satish Vuppalapati and Madhavi Vuppalapati have documents that pertain to this lawsuit that they refuse to produce.  As Mr. Jayaraman admitted: "I have previously requested both Satish Vuppalapati and Madhavi Vuppalapati for relevant documents that pertain to the lawsuit.  They have both refused to provide me any documents since I am not an officer of the Defendant company." [Doc. No. 160-1, ¶14].[5]   Further, some of the documentation is either in the possession of third parties (for example, and without limitation, Prithvi's former auditors) or the existence of which will be proved through witness testimony due to, at least in part, the destruction/hiding of evidence.

The SSG Defendants seek documentation pertaining to: (i) an agreement between PISL and PSI regarding the bond funds ("Bond Fund Agreement Documentation"); (ii) documentation between PSI and any of the SSG Defendants that pertain to a loan agreement ("Loan Agreement Documentation"); (iii) "any documentation related to the Complaint's allegations regarding PSI's 'discovery' in November 2016 of the allegations in the Complaint, despite the Complaint also pleading that PSI participated in the purportedly actionable wire transfers in November 2010" ("PSI Discovery Documentation"). Tellingly, the SSG Defendants do not seek any of their requested documentation from Defendant Madhavi Vuppalapati and Defendant Jayaraman likely out of fear of what would be produced and to otherwise attempt to seize on the fact that some documentary evidence has been destroyed. Nevertheless, as discussed in the preceding paragraph, some of the documentation is in the possession of third parties/Ms.

---

[5] As set forth in Section 9, Plaintiffs intend to take legal action to compel production of these documents in India.

Vuppalapati/Satish Vuppalapati or otherwise will be proved to have existed through witness testimony.

Fed. R. Civ. P. 26(a)(1)(A)(ii) states a party must produce: "**a copy--or a description by category and location**--of all documents, electronically stored information, and tangible things that the disclosing party **has in its possession, custody, or control** and may use to support its claims or defenses, unless the use would be solely for impeachment" (emphasis added). With respect to the Bond Fund Agreement Documentation and Loan Agreement Documentation, Plaintiffs will respond as expressly permitted under Fed. R. Civ. P. 26(a)(1)(A)(ii) and with respect to the circumstances pertaining to the evidence as previously discussed above.

With respect to the PSI Discovery Documentation, this is not a request for documentation but merely a recapitulation of the SSG Defendants' *in pari delicto* affirmative defense (which fails to assert any facts and in which they carry the burden to establish) previously made in their Motion for Reconsideration for the first time [Doc. No. 131, Pgs. 20-21] which fails for the reasons set forth in Plaintiffs' response to same. [Doc. No. 146, Pgs. 16-17]. As Plaintiffs set forth therein, PSI was clearly harmed by, and did not benefit from, the fraudulent scheme perpetrated by Madhavi Vuppalapati and the Defendants. As such, Madhavi Vuppalapati's fraudulent conduct with respect to her transferring funds from PSI's accounts to effectuate the Defendants' fraudulent scheme - which was not known to all of PSI's management at that time - is not imputed to PSI as a matter of law.

Further, as set forth in Plaintiffs' Complaint and RICO Case Statement, the fraudulent scheme was effectuated through a multitude of wire transfers as well as internal oral and written communications among the Defendants. And as mentioned above, evidence in this case has been destroyed or is being withheld in India. Finally, when and how PSI discovered its claims in November 2016 is within the knowledge of witnesses who discovered the claims.

Fed. R. Civ. P. 26(a)(1)(C) states in pertinent part: "A party must make the initial disclosures ... unless a party objects during the conference that initial disclosures are not appropriate in this action and states the objection in the proposed discovery plan." For the reasons set forth above, PSI Discovery Documentation is not a legitimate request for documentation but is merely an extension of the SSG Defendants' factually unsupported *in pari delicto* argument. Nevertheless, it is simply not possible for Plaintiffs to produce, in the context of an initial disclosure, "any documentation related to the Complaint's allegations regarding PSI's 'discovery' in November 2016 of the allegations in the Complaint, despite the Complaint also pleading that PSI participated in the purportedly actionable wire transfers in November 2010." As such, the PSI Discovery Documentation should be exempted from the initial disclosure requirement pursuant to Fed. R. Civ. P. 26(a)(1)(C).

For sake of clarity, Plaintiffs submit that to the extent that any witness testifies that he/she relied upon any particular documentation during deposition or otherwise, the Defendants can then make a request for production of specific documents at that time as expressly permitted under Fed. R. Civ. P. 34 and Fed. R. Civ. P. 45.

**SSG Defendants' Response:**

The SSG Defendants agree that initial disclosures should be due on August

25, 2020, but reserve the right to seek a 10-day extension of time for initial disclosures based on potential complications arising out of the Covid-19 pandemic.

The SSG Defendants further assert that Plaintiffs should include in their initial disclosures the following documents, which are essential to their claims.

*First*, Plaintiffs should produce any documentation supporting their allegation in Paragraph 101 of the Complaint:

> Consistent with the Bond Offer Circular, PISL and PSI entered into an agreement wherein the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States.

Compl. ¶ 101 (emphasis added). This "agreement" is critical to many of Plaintiffs' claims, including the RICO count. Accordingly, any such agreement is one that Plaintiffs must ""use to support its claims or defenses" and must be produced as part of initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(ii) ("[A] party must, without awaiting a discovery request, provide to the other parties … a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses.").

*Second*, Plaintiffs should produce any loan agreement—or any documents or information demonstrating the existence of such a loan agreement—between PSI and any of the SSG Defendants. This includes any documents relating to the purported loans alleged in the Complaint at ¶¶ 56, 61, 66, 127, 131, 147, 290-98, 300-310, 312-18.

*Third*, Plaintiffs should provide any documentation related to the Complaint's allegations regarding PSI's "discovery" in November 2016 of the allegations in the Complaint, despite the Complaint also pleading that PSI participated in the purportedly actionable wire transfers in November 2010. *See* Compl. ¶¶ 158, 187, 197, 205, 229, 288 ("On or about November, 2016, PSI discovered the nature and extent of Defendants' actions as set forth above."); *id.* ¶¶ 123 ("On or about November 3, 2010, PSI, at Defendants' behest, transferred approximately $7,000,000 USD of the $35,000,000 USD to PISL."); *id.* ¶ 124 ("On or about November 3, 2010, PSI, at Defendants' behest, transferred $20,400,000 USD of the $35,000,000 USD to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong.").

Each of these categories falls within Plaintiffs' initial disclosure obligations. Fed. R. Civ. P. 26(a)(1)(A)(ii). Moreover, prompt production of these documents will assist in the speedy resolution of this action and help ensure that ADR is as productive as possible.

**Defendant Jayaraman Response**: Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue of the timing of Rule 26(a) disclosures.

8.   **Subjects on which fact discovery may be needed**.  (By executing this report, no party shall be deemed to (1) have waived the right to conduct discovery on subjects not listed

herein or (2) be required to first seek the permission of the Court to conduct discovery with regard to subjects not listed herein):

**Plaintiffs state:**  Without waiving any right to conduct discovery regarding any subject in this case, discovery is currently needed regarding the following topics: (i) Defendants' association with each other as well as their relationship, and involvement with Prithvi Information Solutions Ltd. and Prithvi Solutions Inc. (ii) due diligence conducted by SSG Capital Management (Hong Kong) Limited and/or SSG Capital Partners I, L.P. and Value Team Corporation of Prithvi Information Solutions Ltd. and Prithvi Solutions Inc. before and after acquisition of bonds, (iii) transactions and occurrences that relate to the acquisition, and the purported restructuring of, the bonds, (iv) memorandums of understanding that relate to the allegations set forth in the Complaint, (v) accounting of bonds funds and all monies paid, directly and indirectly, pursuant thereto and any memorandum of understanding at issue in the case, (vi) transactions and occurrences related to the release of bonds funds from an escrow account(s) (vii) all settlement agreements of any kind entered among Defendants that relate to the bonds funds at issue in this case or the allegations set forth in the Complaint, (viii) all communications among Defendants that relate to the bonds funds at issue in this case, (ix) services provided by SSG Capital Management (Hong Kong) Limited and/or SSG Capital Partners I, L.P. to Prithvi Information Solutions Ltd., Prithvi Solutions Inc. and its management, (x) third-party discovery regarding documents and witness knowledge pertaining to the issues discussed above.

**SSG Defendants' Response:**

The SSG Defendants assert that discovery should encompass, among other things, the following subjects:

(1)   Plaintiffs' allegation in Paragraph 101 of the Complaint that PSI was the rightful owner of the Bond proceeds.  Compl. ¶ 101 ("Consistent with the Bond Offer Circular, PISL and PSI entered into an agreement wherein the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States.").  Discovery should encompass any other relevant intra-company agreements within the Prithvi family of companies. Discovery should also include documents related to the date of PSI's formation and the terms and limitations of the Bond Circular by which the Bonds were issued.

(2)   Plaintiffs' contention that PSI had loan agreements with certain SSG Defendants as described in the Complaint.  Compl. at ¶¶ 56, 61, 66, 127, 131, 147, 290-98, 300-310, 312-18.

(3)   Plaintiffs' claim that PSI "discovered" the Complaint's allegations in November 2016, *see* Compl. ¶¶ 158, 187, 197, 205, 229, 288, despite Plaintiffs' other allegations that PSI was a participant in the purported fraudulent actions in 2010, *see id.* ¶ 123 ("On or about November 3, 2010, PSI, at Defendants' behest, transferred approximately $7,000,000 USD of the $35,000,000 USD to PISL."); *id.*

¶ 124 ("On or about November 3, 2010, PSI, at Defendants' behest, transferred $20,400,000 USD of the $35,000,000 USD to Prithvi Asia's bank account at Hang Seng Bank Limited located in Hong Kong.").

(4) Plaintiffs' contention that PSI transferred money "at the behest" of Defendants. Compl. ¶¶ 118, 123-24.

(5) PSI's corporate structure, employees, directors and officers, assets, finances, salary lists, corporate headquarters, locations of employees, and business activities from 2008 to 2014. This discovery would include information related to the declaration of Kyko's CEO, Kiran Kulkarni, that PSI was "a shell company with no business, no employees and no operations." ECF No. 154-2, ¶ 4.

(6) Information that Plaintiffs have collected from PSI, PISL, Madhavi Vuppalapati, PSAL, and any officers or directors of the Prithvi family of business, including all documents Kyko retrieved from Madhavi Vuppalapati's computer or hard drive in the Washington litigation.

(7) The locations of all other parties in this case between 2008 and 2014, including during the wire transfers alleged in the Complaint. This discovery should address Kyko's sworn declarations in other cases that PISL, PSI, Madhavi Vuppalapati and others operated out of or were headquartered in Washington state during this time period. *See, e.g.,* ECF No. 154-1. Additional areas of inquiry would be financial and office records kept by PSI from 2008 to 2014.

(8) PSI's financial status and transactions between 2008 and 2014, including banks statements, balance sheets, income statements, expense reports, money transfers, asset lists, audited financial statements, loan agreements, documents provided by PSI for PISL's corporate disclosures, and corporate expenditures. Importantly, this discovery would encompass anything that could indicate that PSI claimed the Bond proceeds as part of its assets during the 2008 to 2014 timeframe. This discovery would also include PSI's bank records related to the location at which any wire transfers in the Complaint were performed and the role PSI had in such transfers.

(9) Any settlement or cooperation agreements between the Plaintiffs and any witnesses (current or anticipated) in this case, including without limitation Guru Pandyar, David Amorose, and Defendant Jayaraman. This includes any agreements Kyko has with potential witnesses who, like Mr. Pandyar, testify on behalf of Kyko in order to avoid being sued. *See Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. 13-1034, (W.D. Wash.), ECF Nos. 250; 390, at 10; 291.

(10) Assertions made in the declarations and affidavits of Kiran Kulkarni, Guru Pandyar, and David Amorose in this litigation and in other Kyko actions, such as the litigation in Washington state. This would include any documents these witnesses relied on to make their sworn statements.

(11)  Kyko's correspondence with third parties regarding this litigation and the SSG Defendants, including any agreements Kyko has with third parties attempting to obtain financial remuneration from any of the SSG Defendants.

(12)  Communications between PSI and other entities—including PISL, PASL, Madhavi Vuppalapati, Anandhan Jayaraman, Satish Vuppalapati, BNY Mellon (the Bond trustee), and bondholders—relating to the Bonds and Bond proceeds.

(13)  PSI's contention that the Memorandums of Understanding (MOUs) were "shams."

(14)  Kyko's claim to standing in this matter, including documents showing ownership or interest in PSI.

**Defendant Jayaraman Response**:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue of the anticipated subject matter and scope of discovery

9.    **Set forth suggested dates for the following** (The parties may elect by agreement to schedule a Post-Discovery Status Conference, as identified in Paragraph 12, below, at the conclusion of Fact-Discovery rather than at the conclusion of Expert Discovery.  In that event, the parties should provide suggested dates only for the events identified in sub-paragraphs 9.a through 9.e, below.  The parties shall provide such information even if dispositive motions pursuant to Fed. R. Civ. P. 12 have been or are anticipated to be filed.  If there are dates on which the parties have been unable to agree, set forth the date each party proposes and a brief statement in support of each such party's proposed date.  Attach to this report form a proposed Court Order setting forth all dates agreed to below and leaving a blank for the insertion of a date by the Court for any date not agreed  to):

**Plaintiffs' Proposal:**  Plaintiffs set forth the following - without prejudice to file a motion to seek extension at a later date - based on the assumption, subject to subpart (i), that discovery commences on August 11, 2020, and is designed to account for:

(i)    VTC's capacity to participate in this proceeding:

On July 6, 2020 this Court entered an Order that denied Plaintiffs' Motion for Entry of Final Judgment Pursuant to Fed. R. Civ. P. 54(b) which states in pertinent part: "The Court has not precluded Plaintiffs from seeking a default judgment against VTC, and Plaintiffs were informed in prior orders that their request was simply premature. Plaintiffs can obtain a final judgment for the purposes of certification under Rule 54(b) by obtaining default judgment against VTC." [Doc. No. 163, Pg. 2].

The July 6, 2020 Order also states in pertinent part: "VTC does not have … the capacity to appear, defend itself or otherwise participate in this litigation due to its being struck off of the BVI Registry." [Doc. No. 163, Pg. 2].  Plaintiffs respectfully state that this is an incorrect statement of BVI law. VTC is not excused from having to participate in this proceeding (irrespective of if/when a default judgment is entered against VTC) by refusing to restore itself to the BVI corporate registry.  See [Doc. No. 107-2].

At the July 16, 2020 conference, the SSG Defendants stated that they would produce documents in their possession that pertain to VTC to the extent that they are in the SSG Defendants' possession (with reservation of rights to assert objections).  However, given the Court's ruling regarding the status of VTC, VTC cannot produce documents or witnesses on its own accord in this proceeding which will result in the exclusion of evidence.  Accordingly, Plaintiffs submit that this Court should immediately enter a default judgment against VTC with a certification of final judgment under Fed. R. Civ. P.54(b) to allow Plaintiffs to seek immediate appellate review of this Court's ruling regarding VTC's ability to participate in this proceeding under BVI law.

**With respect to the SSG Defendants' discussion regarding VTC set forth below:**
Plaintiffs state that they object to same because this Court has stricken the Jones Day law firm's Notice of Appearance on behalf of VTC and, therefore, the Jones Day law firm cannot attempt to make arguments or proposals on VTC's behalf in an impermissible attempt to represent VTC in this matter, or (for the third time) to try to prevent default judgment from being entered against VTC.

(ii)    The delay in the prosecution and defense of this matter due to the coronavirus pandemic.

(iii)   The delay associated with compelling discovery from entities/witnesses located in foreign countries.

While Plaintiffs maintain that this Court has personal jurisdiction over VTC, it may nevertheless become necessary to undertake action in BVI to compel VTC to produce evidence in this case (per subpart (i) above).

Although Defendant Anandhan Jayaraman knows the location of Defendant Madhavi Vuppalapati (his wife) and non-party Satish Vuppalapati (Mr. Jayaraman's brother-in-law who filed an Affidavit in this case), he has refused to disclose their exact whereabouts in India.  Nevertheless, Plaintiffs now believe that they may be able to locate Ms. Vuppalapati and Mr. Vuppalapati.

Further, Mr. Jayaraman has unambiguously and openly admitted that Satish Vuppalapati and Madhavi Vuppalapati have documents that pertain to this lawsuit that they refuse to produce.  As Mr. Jayaraman admitted: "I have previously requested both Satish Vuppalapati and Madhavi Vuppalapati for relevant documents that pertain to the lawsuit.  They have both refused to provide me any documents since I am not an officer of the Defendant company." [Doc. No. 160-1, ¶14].

The process to serve witnesses in the British Virgin Islands and India with a Letter of Request issued from this Court in accordance with the governing law can easily exceed 6 months.  Moreover, given that these witnesses will likely fail to comply with a Letter of Request, Plaintiffs reasonably anticipate that they may be required to undertake separate legal action in the British Virgin Islands and India to enforce compliance.  This process would also require additional, and unknown, time to complete (the Indian legal system is severely backlogged which has resulted in severe delays in case processing times.)

(iv)   The need to subpoena third-party domestic witnesses who are anticipated to be some of whom are expected to be uncooperative.

(v)   Given the parties' frequent disputes regarding jurisdictional discovery, the anticipated need to allow this Court time to rule upon the parties' discovery motions.

(vi)  The need to travel overseas to conduct depositions to the extent possible given the coronavirus pandemic. The remote jurisdictional discovery process of witnesses located in Hong Kong demonstrated that the witnesses became fatigued due to the 12 hours time change; delays also occurred due to technical difficulties.  While Plaintiffs intend to conduct depositions remotely to the extent they deem feasible, Plaintiffs maintain that given the factual complexity of this matter and exhibits related thereto, and to account for the fatigue associated with conducting lengthy depositions concurrently on opposite sides of the globe, in-person depositions are necessary in this case at least in part (at such time it is safe to do so).

**SSG Defendants' Proposal:**

The SSG Defendants propose that the Post-Discovery Status Conference occur at the conclusion of Fact Discovery rather than at the conclusion of Expert Discovery and thus assert that dates must only be provided for sub-paragraphs 9.a through 9.e, below.

As to Plaintiffs' contention regarding the appropriateness of any default judgments here, the SSG Defendants note Judge Phipps originally held that no default judgments should be issued until after merits discovery is concluded.  ECF No. 38, at 24 ("[T]here's a strong preference in the Federal Courts, and I hope all courts, to litigate cases on the merits and not by default and not through court order that are something other than the merits. Would you have any objection to holding off and staying any entries of default until -- if we get to the point that discovery in this case occurs -- discovery would be complete?").  This Court then adopted that holding:  "Plaintiffs' motions are premature and in contravention of the instruction of the Honorable Peter J. Phipps at the Rule 26(f) conference held on February 5, 2019…. In the interest of continuity, the undersigned adopts the view set forth by Judge Phipps at the February 5, 2019, conference."  ECF No. 62, at 1.

**Defendant Jayaraman's Proposal**:   Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue of the timing of Rule 26(a) disclosures and the timing of the Post-Discovery status conference.

a.   **Date(s) on which disclosures required by Fed. R. Civ. P. 26(a) have been or will be made:**

**Plaintiffs' Proposal:**  August 25, 2020.  Plaintiffs reserve the right to seek a 10-day extension of same.

**SSG Defendants' Proposal:**  August 25, 2020.  The SSG Defendants reserve the right to seek a 10-day extension of time for initial disclosures based on potential complications arising out of the Covid-19 pandemic.

**Defendant Jayaraman's Proposal**:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue of the timing of Rule 26(a) disclosures.

**b.     Date by which any additional parties shall be joined:**

**Plaintiffs' Proposal:**  February 10, 2021
Without waiving their right to join any other party, Plaintiffs state that they intend to add Satish Vuppalapati as a defendant in this case.  As Plaintiffs previously informed this Court, Mr. Vuppalapati is Defendant Madhavi Vuppalapati's brother and Defendant Anandhan Jayaraman's brother-in-law who was involved with operating the Prithvi entities and was otherwise involved in the fraudulent scheme set out in Plaintiffs' Complaint.

As this Court is aware, Mr. Vuppalapati has submitted an affidavit in this case to support Defendant Jayaraman's defense. [Doc. No. 114].  Accordingly, Defendant Jayaraman is clearly able to communicate with Mr. Vuppalapati and Mr. Vuppalapati has long been aware of this case.  Therefore, Plaintiffs request that this Court permit them to serve their Amended Complaint that lists Mr. Vuppalapati as a defendant on Defendant Jayaraman and on Mr. Vuppalapati himself via email in the same manner that this Court has approved in Doc. No. 61 (Mr. Jayaraman's and Mr. Vuppalapati's email addresses are listed therein).

**SSG Defendants' Proposal**:  N/A.

**Defendant Jayaraman's Proposal:**  N/A

**c.     Date by which the pleadings shall be amended:**

**Plaintiffs' Proposal:**  February 10, 2021

**SSG Defendants' Proposal:**  N/A.

**Defendant Jayaraman's Proposal**:  N/A

**d.     Date by which fact discovery should be completed:**

**Plaintiffs' Proposal:**  June 14, 2021.  Plaintiffs are cautiously optimistic that fact discovery can be completed by this date.  However, given the known evidentiary issues previously discussed above, Plaintiffs reserve the right to request an extension of this date - or any other date listed in this Report - to the extent necessary.

**SSG Defendants' Proposal:**  June 14, 2021.

**Defendant Jayaraman's Proposal**:  June 14, 2021.

**e.     If the parties agree that discovery should be conducted in phases or limited to or focused on particular issues, identify the proposed phases or issues and the dates by which discovery as to each phase or issue should be**

18

completed:

**Plaintiffs' Proposal:**  NA

**SSG Defendants' Proposal:**  None.

**Defendant Jayaraman's Proposal**:  None.

f.      **Date by which plaintiff's expert reports should be filed:**

**Plaintiffs' Proposal:**  August 2, 2021

**SSG Defendants' Proposal:**  The SSG Defendants propose that the Post-Discovery Status Conference occur at the conclusion of Fact Discovery rather than at the conclusion of Expert Discovery and thus assert that dates for expert reports need not be scheduled at this time.

**Defendant Jayaraman's Proposal**:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants respecting the timing of expert reports.

g.      **Date by which depositions of plaintiff's expert(s) should be completed:**

**Plaintiffs' Proposal:**  September 3, 2021

**SSG Defendants' Proposal:**  The SSG Defendants propose that the Post-Discovery Status Conference occur at the conclusion of Fact Discovery rather than at the conclusion of Expert Discovery and thus assert that dates for expert reports need not be scheduled at this time.

**Defendant Jayaraman's Proposal**:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue.

h.      **Date by which defendant's expert reports should be filed:**

**Plaintiffs' Proposal:**  August 2, 2021

**SSG Defendants' Proposal:**  The SSG Defendants propose that the Post-Discovery Status Conference occur at the conclusion of Fact Discovery rather than at the conclusion of Expert Discovery and thus assert that dates for expert reports need not be scheduled at this time.  If required to select a date for the filing of expert reports now, the SSG Defendants propose September 3, 2021.

**Defendant Jayaraman's Proposal**:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue.

i.      **Date by which depositions of defendant's expert(s) should be completed:**

Plaintiffs' Proposal:  September 3, 2021

SSG Defendants' Proposal:  The SSG Defendants propose that the Post-Discovery Status Conference occur at the conclusion of Fact Discovery rather than at the conclusion of Expert Discovery and thus assert that dates for expert reports need not be scheduled at this time.  If required to select a date for depositions of defendants' experts, the SSG Defendants propose October 1, 2021.

Defendant Jayaraman's Proposal:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue.

j.    Date by which third party expert's reports should be filed:  NA

k.    Date by which depositions of third party's expert(s) should be completed: NA

10.    If the parties agree that changes should be made to the limitations on discovery imposed by the Federal Rules of Civil Procedure or Local Rule or that any other limitations should  be imposed on discovery, set forth such changes or limitations:

**Plaintiffs' Response:**

As set forth in Section 8, the parties have submitted a combined total of 24 expansive topical areas to be addressed in discovery.  As set forth in Section 2, Defendants intend to continue to litigate whether personal jurisdiction exists and whether federal question and diversity jurisdiction exists. Given the complex legal and fact issues set forth in Plaintiffs' Complaint,  RICO case statement, and this Report, Plaintiffs assert that the 1 day, 7 hours default time limitation contained in Fed. R. Civ. P. 30(d)(1) to complete depositions be modified to permit Plaintiffs to examine each Defendant/deponent for a minimum of 2 days for a total of 14 hours without prejudice to Plaintiffs' right to file a motion to show cause why additional time is required to complete the examinations at a later date, or to file a motion to show cause that other individuals/entities should be examined beyond the default time limitation contained in Fed. R. Civ. P. 30(d)(1).

As set forth below, the Defendants oppose any extension of the default time limitation contained in Fed. R. Civ. P. 30(d)(1). In doing so, it is readily apparent that Defendants' strategy is to try to drum up as many fact and legal issues as possible to try to defeat Plaintiffs' claims, and then preclude Plaintiffs from having the necessary amount of time to examine witnesses  regarding the issues that they have created. Further,  by way of example, some of  the jurisdictional discovery depositions taken in November 2019 lasted approximately 4 hours.  Thus, it is simply impossible for Plaintiffs to complete their examinations of witnesses regarding *all* discovery topics at issue in this case within 7 hours per witness.  Fed. R. Civ. P. 30(d)(1) states: "Unless otherwise stipulated or

ordered by the court, a deposition is limited to 1 day of 7 hours. The court **must** allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." (emphasis added). Accordingly, this Court should modify the time limitation as Plaintiffs request.

Plaintiffs further state that for depositions that may/will be conducted remotely of witnesses located overseas, that those depositions may be separated into multiday segments not to exceed the total amount of time allotted for the examination. By way of example (but not limitation), 14 hours of total deposition could occur over 3 days with roughly 4½ hours of deposition time occurring on each day. Conducting depositions in this manner would help alleviate the severe fatigue that will be experienced by all parties given the significant time change between the U.S./Canada and China, Singapore, and India where most (if not all) of the foreign witnesses reside.

Finally, to the extent that the coronavirus eases making in-person depositions of the foreign witnesses feasible, the parties should work in good faith to try to agree upon a single location for all or "blocks" of depositions to occur. This would significantly reduce the expense of requiring the parties to travel on multiple occasions to multiple different locations to complete each examination. If the parties are unable to agree upon a single location, then any party should be permitted to file a motion to set forth legal cause as to why the depositions should proceed in a single location.

Plaintiffs assert that the number of Defendants (and excluding any subpoenaed non-party witnesses) in this matter exceed 10. Therefore, Plaintiffs (and Defendants) do not need to seek leave of Court to complete their examinations under Fed. R. Civ. P. 30(a)(2). Even though the number of Defendants alone in this case exceeds ten, Defendants object to any depositions beyond 10. Thus, the SSG Defendants effectively seek to preclude Plaintiffs from examining any non-party witness and to prohibit Plaintiffs from having the opportunity to examine all party opponents in this case. See U.S. v. One 1971 Corvette Stingray, 1990 WL 4374, Case No. 89-5398, at *1 (E.D. Pa. Jan. 18 1990)([The] "Federal Rules of Civil Procedure ... giv[e] one, of course, broad rights to discovery, including the taking of oral depositions ... To depose a party opponent is self-evidently reasonable; not to depose a party opponent is presumptively malpractice."). Accordingly, this Court should permit Plaintiffs to conduct more than 10 depositions without seeking leave in advance from this Court.

**SSG Defendants' Response:**

At this time, the SSG Defendants propose no limitations beyond those imposed by the Federal Rules of Civil Procedure or Local Rules. Fed. R. Civ. P. 30 ("Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours."). The SSG Defendants object to Plaintiffs' categorical request to extend depositions beyond the number and time limits provided for by the Federal Rules of Civil Procedure or Local Rules. Nor have Plaintiffs satisfied their burden for why

doubling each deposition's time limit is necessary. *See Carroll v. Acme Truck Line, Inc.*, No. 2:12-CV-1114, 2013 WL 2237691, at *1 (W.D. Pa. May 21, 2013) (explaining that "[t]he burden is on the party seeking to exceed the time limit" contained in the Federal Rules).

The SSG Defendants also request that all parties be permitted to take and defend depositions remotely. Given the complications of the Covid-19 pandemic—including travel restrictions, mandatory quarantines, and general considerations of safety for the parties and their attorneys—in-person depositions likely are not feasible for the foreseeable future.

**Defendant Jayaraman's Response**:  Defendant Jayaraman proposes no limitations beyond those imposed by the Federal Rules of Civil Procedure or Local Rules. Jayaraman specifically objects to Plaintiffs' request to extend depositions beyond the number and time limits provided for by the Federal Rules of Civil Procedure or Local Rules.

11.  Please answer the following questions in regard to the discovery of electronically stored information ("ESI"):

    **a.**     **ESI.** Is either party seeking the discovery of ESI in this case?
           ☐  **Yes**        ☐  No [If "No," skip to sub-part (e) below.]

    **b.**     **ESI Discovery Plan.** The parties have reviewed and discussed the Court's Checklist for Rule 26(f) Meet and Confer Regarding Electronically Stored Information set forth in "Appendix LCvR 26.2.C-CHECKLIST" to the Local Rules  and:

        ☐  Have agreed that, in light of the facts and issues in this case, there is no need to complete an ESI discovery plan, and will conduct ESI discovery by

        **Sending requests for production of ESI under Fed. R. Civ. P. 34**

        ☐  Have developed an ESI discovery plan (as attached).
        ☐  Will have an ESI discovery plan completed by
        ☐  NOTE:  At the direction of the Court, parties may be required to submit a draft of the Stipulated Order re: Discovery of Electronically Stored Information for Standard Litigation set forth in "Appendix LCvR 26.2.E-MODEL ORDER" to the Local Rules, to address specific issues relative to the parties' exchange of electronic discovery and ESI.  If the parties are unable to do so, they should advise the Court promptly.

    **c.**     **Preservation.** Have the parties agreed on any protocol for the preservation of electronic data and/or potentially relevant ESI?
           ☐  Yes        ☐  **No**

    **d.**     **ADR.**  Does any party believe that the exchange of ESI is necessary prior

to conducting meaningful Alternative Dispute Resolution ("ADR") in this case?

☐ **Yes**        ☐ No

Plaintiffs state that such information is limited as discussed in Sections 6 and 7.

e. **Clawback Agreement**. The parties have reviewed F.R.C.P. 26(b)(5), F.R.E. 502 and LCvR 16.1.D, Procedures Following Inadvertent Disclosure, and:

☐ **Request the Court enter an Order implementing Federal Rule of Evidence 502(d) such as the model Order set forth in "Appendix LCvR 16.1.D" to the Local Rules and filed with this Report.**
☐ Have agreed on alternate non-waiver language, which either is or will be incorporated within the ESI discovery plan.
☐ Are unable to agree on appropriate non-waiver language.

f. **EDSM and E-Mediator.** Does any party believe that the appointment of an E-Discovery Special Master ("EDSM") or E-Mediator would help resolve ESI discovery issues in this case? For further information, see the Court's official website at http://www.pawd.uscourts.gov.

☐ Yes        ☐ **No**

g. **Other**. Identify all outstanding disputes concerning any ESI issues:

**Plaintiffs' Response:** NA

**SSG Defendants' Response:** None.

**Defendant Jayaraman's Response:** None.

12. Set forth whether the parties have elected to schedule the Post-Discovery Status Conference following the completion of Fact Discovery or Expert Discovery; in either event the parties shall be prepared at the Post-Discovery Status Conference to discuss and/or schedule the following: (The parties are *not* required during their Rule 26(f) Conference to consider or propose dates for the items identified below. Those dates will be determined, if necessary, at the Post-Discovery Status Conference. Lead trial counsel for each party and each unrepresented party are required to attend the Post-Discovery Status Conference with their calendars in hand to discuss those items listed below that require scheduling. In addition, a representative with settlement authority of each party shall be required to attend; representatives with settlement authority of any insurance company providing any coverage shall be available throughout the

23

Conference by telephone):

**Plaintiffs' Response:**  Plaintiffs state that the Post-Discovery Status Conference should occur after completion of Expert Discovery.  Without prejudice to assert additional or different reasons later in this case, Plaintiffs state that expert witnesses may be needed to conduct a forensic accounting of the Defendants' financial accounts, documentation, and the like.   Further, Plaintiffs state that computer forensics experts many be needed in this matter. Therefore, the post-discovery Status Conference should occur after completion of Expert Discovery.

**SSG Defendants' Response:**

The SSG Defendants propose holding the Post-Discovery Conference after the conclusion of Fact Discovery.  It is likely that fact discovery will resolve major issues in the case.   Fact discovery will likely narrow the claims and parties in this case significantly.   The SSG Defendants further believe that fact discovery will provide sufficient information for certain parties to move for summary judgment, in whole or in part.   Accordingly, the SSG Defendants believe a Post-Discovery Status Conference will be most efficient following the resolution of fact discovery before the parties engage in expert discovery and other costly trial preparation.

**Defendant Jayaraman's Response**:  Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue.

    a.     **Settlement and/or transfer to an ADR procedure;**

    b.     **Dates for the filing of expert reports and the completion of expert discovery as itemized in sub-paragraphs 9.f. through 9.k., above, if the parties elected to defer such discovery until after the Post-Discovery Status Conference;**

    c.     **Dates by which dispositive motions pursuant to Fed. R. Civ. P. 56, replies thereto and responses to replies should be filed;**

    d.     **Dates by which parties' pre-trial statements should be filed;**

    e.     **Dates by which *in limine* and *Daubert* motions and responses thereto should be filed;**

    f.     **Dates on which motions *in limine* and *Daubert* motions shall be heard;**

    g.     **Dates proposed for final pre-trial conference;**

    h.     **Presumptive and final trial dates.**

**13.**    Set forth any other order(s) that the parties agree should be entered by the court

pursuant to Fed. R. Civ. P. 16(b) or 26(c):

**Plaintiffs' Response:**

With respect to the SSG Defendants' Response below, Plaintiffs state as follows:

This Court has already denied the SSG Defendants' attempt to impose upon Plaintiffs the protective order that they seek to impose once again below. [Doc. Nos. 81, 82]. Moreover, and without limitation (and as Plaintiffs stated previously regarding this issue), Plaintiffs will not agree to a limitation that they can only use documentation in "this litigation." As set forth in Section 2 above, the SSG Defendants have stated that they intend to continue to challenge personal jurisdiction and subject matter jurisdiction in this case. Therefore, if this case is somehow dismissed later in this proceeding on one of these bases, Plaintiffs are entitled to utilize the documentation produced in this proceeding in a court that has personal/subject matter jurisdiction over this matter (as dismissal on jurisdictional grounds is not an adjudication on the merits). That said, Plaintiffs will attempt in good faith to try to reach an agreement with the SSG Defendants.

**SSG Defendants' Response:**

The SSG Defendants intend to seek a protective order that would limit the use of confidential documents to this litigation. The SSG Defendants' business involves highly proprietary information, including trade secrets and other protected information. Merits discovery is likely to implicate this information. Accordingly, the SSG Defendants intend to send a proposed protective order to Plaintiffs' counsel and then meet and confer with counsel to discuss the terms of the agreement.

**Defendant Jayaraman's Response**: Defendant Jayaraman concurs with the position asserted by the SSG Defendants on the issue.

14. Set forth whether the parties anticipate that the court may have to appoint a special master to deal with any matter and if so, specify the proposed role of any such master and any special qualifications that such master may require to perform such role:

NA

15. If the parties have failed to agree with regard to any subject for which a report is required as set forth above, except for proposed dates required in paragraph 9, above, briefly set forth the position of each party with regard to each matter on which agreement has not been reached:

**Plaintiffs' Response:**  Please see above.

**SSG Defendants' Response:**  Please see above.

**Defendant Jayaraman's Response**:  Please see above.


**16.**   Set forth whether the parties have considered the possibility of settlement of the action  and describe briefly the nature of that consideration:


**Plaintiffs' Response:**   Plaintiffs state that on October 19, 2018, the SSG Defendants offered to have a settlement conference in Hong Kong to settle all current litigation among the parties. [Doc. No.  16-8].  On October 22, 2018, Plaintiffs responded to the SSG Defendants' offer to have a settlement conference and tried to obtain a framework for the parties to engage in settlement discussions. [Doc. No.  10-2].  On October 23, 2018, the SSG Defendants rejected Plaintiffs' proposed framework to engage in settlement discussions but stated that they remain open to discussing settlement.  [Doc. No.  10-3].

**SSG Defendants' Response:**

No settlement discussions—or offers to engage in such discussions—have taken place.  Plaintiffs mischaracterize the documents they cite.  In response to Kyko's multiple requests to meet, the SSG Defendants' Hong Kong counsel contacted Kyko's counsel, on a without prejudice basis, to meet in Hong Kong for the purpose of discussing the underlying facts given the many misconceptions in Kyko's understanding of the facts.  *See* Doc. No. Nos. 10-3, 16-8.  The SSG Defendants did not offer to engage in settlement discussions.

The SSG Defendants will participate in good faith in ADR as described above and in the parties' ADR stipulation

**Defendant Jayaraman's Response**:  No settlement discussions—or offers to engage in such discussions—have taken place. Jayaraman will participate in good faith in the ADR process selected.


Respectfully submitted,

/s/ *Douglas Baker*

Michael H. Ginsberg (Pa. Bar #43582)
John D. Goetz (Pa. Bar #47759)
Douglas Baker (Pa. Bar #318634)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA 15219-2514

Telephone: (412) 391-3939
Facsimile: (412) 394-7959
Email: mhginsberg@jonesday.com
Email: jdgoetz@jonesday.com
Email: ddbaker@jonesday.com
Counsel for the SSG Defendants (SSG Capital
Partners I, L.P., SSG Capital Management (Hong
Kong) Limited, Shyam Maheshwari, Ira Syavitri
Noor a/k/a Ira Noor Vourloumis, Dinesh Goel,
Wong Ching Him a/k/a Edwin Wong, and Andreas
Vourloumis)


Joseph F. Rodkey, Jr.
Pa. I.D. No. 66757
FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139
(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
jrodkey@fowkesrodkey.com

Jayson M. Macyda
Jayson M. Macyda (admitted *pro hac vice*)
Kyko Global, Inc.
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com
Counsel for Plaintiffs


Jeffrey T. Morris
PA ID No. 31010
Elliott & Davis PC
6425 Living Place
Suite 200
Pittsburgh PA 15222
morris@elliott-davis.com
Counsel for Anandhan Jayaraman