# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation,  SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company<br><br>　　　　　　　　Defendants. | Case No. 2:18-cv-1290-WSS |

**PLAINTIFFS' RESPONSE TO THE SSG DEFENDANTS' EMERGENCY MOTION FOR A STATUS CONFERENCE TO SCHEDULE AN EVIDENTIARY HEARING ON THE CAPACITY OF PSI, AND THE STANDING OF KYKO,  TO BRING THIS ACTION**

NOW COME Plaintiffs Kyko Global, Inc., Kyko Global GmbH, and Prithvi Solutions Inc. (collectively "Plaintiffs") and state the following as their Response to the SSG Defendants' Motion:

## **INTRODUCTION**

On April 7, 2020, the SSG Defendants asserted the affirmative defense of lack of standing (ECF No. 139, Pg. 57).[1] The SSG Defendants failed to raise their purported standing and related lack of capacity concerns in any of the motions they filed after this date, and failed to raise these issues at the August 11, 2020, Rule 26(f) Conference perceiving a tactical advantage in remaining silent.

On August 12, 2020, Plaintiffs filed a Motion for Reconsideration to order Defendants Mr. Wong, Mr. Vourloumis and Mrs. Vourloumis to appear to give deposition testimony. (ECF No. 178). On the same day, Plaintiffs filed a Renewed Motion for Entry of Default Judgment Against Value Team Corporation ("VTC"). (ECF Nos. 176, 177). Realizing that these motions carry the potential to moot the recently filed Petition for Writ of Mandamus in the Third Circuit Court of Appeals (which should have never been filed in the first place) and allow entry of Default Judgment against VTC, on August 13, 2020, the SSG Defendants declared - after being aware of its purported standing and capacity concerns for no less than four months - that there is an "emergency" that requires this court to "stay" this proceeding to conduct an evidentiary hearing.

The SSG Defendants' Motion is nothing but a transparent attempt to have the Jones Day law firm, now the fourth time, to try to act as VTC's counsel to try to prevent entry of Default Judgment against VTC notwithstanding having its notice of appearance stricken,[2] and to prevent

---

[1] Fed. R. Civ. P. 11 applies equally to defenses as it does to claims.
[2] The SSG Defendants' motive in filing this Motion is unquestionable. After willfully failing to restore

1

this Court from ordering the requested depositions to proceed. It also represents an endless parade of filings aimed at trying to avoid having to participate in the standard merits discovery process. Nothing more.

Instead of bothering to conduct an investigation into the facts before declaring their long-known "emergency," the SSG Defendants engage in baseless "gotcha" arguments premised on invented theories of bad faith and innuendo all designed to try to prevent this Court from potentially granting the motions discussed above and to try to avoid the merits discovery process.

Had the SSG Defendants bothered to learn the facts before filing their Motion, they would have learned that Sojitz' Writ of Attachment expired long before Plaintiffs filed this case and that Sojitz otherwise informed Plaintiffs that it abandoned its interest in PSI. Further, they would have learned that Kyko's failure to pay the $575 in outstanding franchise tax owing to Delaware was mere oversight that was only recently discovered during the course of Kyko's recently filed Complaint against SSG in Hong Kong. But the SSG Defendants are not interested in facts, only obfuscation and delay.

There is no "emergency" that requires an evidentiary hearing. The SSG Defendants' so-called lack of capacity/standing "defense" should be heard after the close of discovery when a complete fact record has been developed, just like any other claim or defense asserted in this case. In short, it is time for the grandstanding to end and the development of the factual record to begin.

---

itself to the British Virgin Islands' Corporate Registry for almost two years, having the SSG Defendants "run cover" to try to preclude entry of Default Judgment during this time and intentionally running up Plaintiffs' litigation expense in the process, today VTC delivered a letter to the Court informing of its intention to restore itself to the Corporate Registry and which explicitly requests this Court to prevent entry of Default Judgment. **(Exhibit J)**. The gamesmanship and bad faith are self-evident. Default judgment is warranted.

## TIMELINE OF EVENTS

The following is the relevant timeframe of events with respect to the issues raised in the SSG Defendants' Motion presented in summary form:[3]

**June 27, 2007**

On June 27, 2007, PSI was incorporated.  **(Exhibit A)**.

**March 27, 2013**

Non-party Sojitz Corporation ("Sojitz") instituted proceedings to attach the shares of PSI. (ECF No. 179-3).  On July 1, 2013, the Sheriff filed its last return of service of the Writ of Attachment of PSI's shares. *Id.*

Guru Pandyar - PISL's and PSI's former Assistant Vice President of Finance and Accounts - was in charge of handling legal process directed to the companies during this time. He never received any legal process that required PSI's stock certificates to be delivered to a third party nor did he deliver PSI's stock certificates to any third party. **(Exhibit B)**. Accordingly, Sojitz never received PSI's stock certificates.

Having not received the shares of PSI's stock as discussed above, Sojitz' Writs of Attachment had expired ***no later than July 1 2016*** - 3 years from July 1, 2013 - or 7 months before Kyko was awarded PSI's shares as discussed later below.  *See*  10 Del. C § 5081.[4]

---

[3] As this Court is aware, there is an extremely extensive litigation history among, without limitation, Kyko, the Prithvi entities, Defendant Madhavi Vuppalapti, Defendant Anandhan Jayaraman, Satish Vuppalapati, and the SSG Defendants.  Thus, in setting forth the following timeline, Plaintiffs do not purport to provide the Court with a complete history of all events that have occurred among these parties.  Plaintiffs merely attempt to highlight those areas that relate to SSG's Motion and to present them below in summary form.

[4] "An execution shall not bind goods and chattels until it is delivered to the sheriff or other proper officer to be executed. An execution shall, from the time it is so delivered, bind all the goods and chattels of the defendant within the bailiwick, which shall be actually levied upon within 60 days thereafter. No levy upon goods and chattels, made by virtue of execution process, shall be of any force or effect as against a subsequent execution levied upon the same goods and chattels for a longer period than 3 years from the making of such first mentioned levy."

**2013-2014**

Kyko informed Sojitz on multiple occasions of its claims against PISL, its interim money judgment entered in the U.S. District Court for the Western District of Washington, and its intent to enforce the interim money judgment. Kyko offered to enter into a cooperation agreement with Sojitz to undertake joint collection action against PISL. Sojitz ultimately declined Kyko's offer because Sojitz decided to cease its collection efforts and was no longer interested in pursuing the matter. Accordingly, by early 2014, Sojitz abandoned its interest in PSI. **(Exhibit C)**.

**September 12, 2016**

Judge Mariane Spearman of the Superior Court of the State of Washington King County executed the collection agent order that, among other things, permits Kyko to "take any steps necessary to collect the Receivables as if the Receivables were directly owed to it." ("Collection Agent Order"). **(Exhibit D)**. "SSG Capital" and "Value Team Corporation" are listed, among others, as receivables that may be owing to PSI in the Collection Agent Order.

**February 16, 2017**

Judge Spearman appointed Referee Eric Watness to oversee the Washington State Court litigation and to make judicially binding rulings in an expedited manner. On February 16, 2017, Referee Watness awarded PSI's stock to Kyko. **(Exhibit E)**. By this time, Sojitz' Writs of Attachment had expired and Sojitz informed Kyko that it abandoned its interest in PSI 3 years before. Accordingly, effective February 16, 2017, Kyko became sole owner of PSI's stock *to wit* "Kyko Global GmbH shall be entitled to exercise all rights as sole shareholder of PSI, and Kiran Kulkarni shall be entitled to exercise all rights as sole director and officer of PSI."

In entering his Order, Referee Watness was simply unaware that Sojitz had no interest in PSI's stock at this time. Indeed, there was no way for him to know this as indicated in his Order.

The reference to Sojitz in the Order was the handiwork of Madhavi Vuppalapati: as part of her unrelenting campaign to prevent Kyko from collecting its judgment, she simply lied to Referee Watness to try to create a lien priority issue between Sojitz and Kyko when in fact none existed.

**April 15, 2018**

Kyko values its shares in PSI at a $10.00 par value. (**Exhibit F).**

**July 11, 2018**

Kyko files its Writ of Attachment of PSI's shares in Delaware. **(Exhibit G)**.

**September 26, 2018**

Plaintiffs file their Complaint in this Court.

**October 4, 2018**

SSG Defendants hire former Jones Day lawyer, Aaron Farmer, to file a Motion to try to invalidate the Collection Agent Order. On October 16, 2018, the Superior Court of the State of Washington King County denied the Motion and affirmed Kyko's ability to collect debts owing to PSI. (*See* previous discussion in ECF No. 16, Pgs. 4-5; ECF No. 16-3; ECF No. 16-4).

**August 11, 2020**

At the Rule 26(f) conference conducted on August 11, 2020, Plaintiffs informed this Court that they recently filed a lawsuit in Hong Kong as a defensive measure given that the SSG Defendants indicated in the Rule 26(f) Report that they will continue to contest personal jurisdiction and subject matter jurisdiction in this Court. As part of the Hong Kong filing process, Plaintiffs' Hong Kong solicitor requested Plaintiffs to produce various corporate documents related to PSI. It was at this time that Plaintiffs became aware that it inadvertently failed to pay $575 in outstanding franchise tax owing to Delaware. Accordingly, Plaintiffs paid the outstanding tax, filed the required Certificate of Revival and PSI is now in good standing.

**(Exhibits A & C)**.

## PSI HAS LEGAL CAPACITY TO MAINTAIN THIS SUIT

The SSG Defendants' "*Emergency*" Motion boldly claims that PSI lacked the capacity to bring this action because in 2013, PSI's charter became inoperative and void for failure to pay franchise taxes and/or complete an annual report under the Delaware General Corporation Law ("Del. Code") (8 Del. C. §1 et seq.) and that "PSI had no right or ability to sue any defendant in this case." (ECF No.179 at ¶¶1-8).

Knowing at the time the "*Emergency*" Motion was filed, that PSI's corporate charter had been revived (the SSG Defendants attached the PSI Certificate for Revival of Charter to the "*Emergency*" Motion (ECF No/ 179-2)), the SSG Defendants nonetheless make the legal proclamation that pursuant to 8 Del. C. §510, "PSI was indisputably a void corporation, with an inoperative charter, beginning on March 1, 2013, and continuing until at least August 11, 2020" (ECF No. 179 at ¶¶ 4, 6) that "had no capacity to file this lawsuit in September 2018 nor capacity to maintain this lawsuit for nearly two years." (ECF No. 179 at ¶ 8). The SSG Defendants purport to buttress their argument on a one-page case that did not even involve the subsequent revival of a corporate charter (as is the case here) (ECF No. 179 at ¶ 7); and then represent to this Court that "PSI had no right or ability to sue any defendant in this case." (ECF 179 at ¶8); *see Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936 (Del. 1990).

Inexplicably, the SSG Defendants fail to inform the Court that clear Delaware statutory law and case law construing the same is unquestionably and directly to the contrary - *the PSI revival retroactively restored all corporate powers and validated all prior corporate acts*. The "void" corporate actions disappeared and all actions previously taken by PSI are now considered

to have been performed by a corporation in good standing.[5]

Under Delaware law, a corporation whose certificate of incorporation has become forfeited or void for failure to pay franchise taxes (as the case here) "may at any time procure an extension, restoration, renewal or revival of its certificate of incorporation, together with all the rights, franchises, privileges and immunities and subject to all of its duties, debts and liabilities which had been secured or imposed by its original certificate of incorporation and all amendments thereto." 8 Del. C. §312(b).  A corporation may revive a certificate of incorporation by "executing, acknowledging and filing a certificate" in accordance with section 103 of Title 8. (Which, as the SSG Defendants acknowledge, PSI did on August 11, 2020.) (ECF No. 179 at ¶ 3).

The legal import of the revival is fatal to the assertions of the SSG Defendants because the Delaware Code requires, once the corporation has been reinstated, that all prior actions are deemed to have been done and performed "with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect." 8 Del. C. §312(e).  The clear and unambiguous Delaware Code mandates:

> [T]he corporation shall be renewed and revived with the same force and effect as if its certificate of incorporation had not been forfeited or void pursuant to this title, or had not expired by limitation**.** *Such reinstatement shall validate all contracts, acts, matters and things made, done and performed within the scope of its certificate of incorporation by the corporation, its officers and agents during the time when its certificate of incorporation was forfeited or void pursuant to this title, or after its expiration by limitation, with the same force and effect and to all intents and purposes as if the certificate of incorporation had at all times remained in full force and effect.*
> *See* 8 Del. C, § 312(e) (emphasis added).

---

[5] The SSG Defendants also fail to inform the Court that a party's lack of capacity on the date an action is commenced does not create a jurisdictional defect (nor an "*emergency*") because a lack of capacity may be cured. *Lewis v. Ascension Parish School Bd.,* 662 F.3d 343, 347 (5th Cir. 2011) ("capacity to sue can be cured.") (citing 6A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE (2010) § 1570, at 676).

Courts unquestioningly apply this Delaware Code mandate and always reject arguments like those of the SSG Defendants proffer here.[6]

The SSG Defendants tell this Court that by virtue of 8 Del. C. §510, PSI lacked capacity to bring or maintain this suit *without mentioning* to this Court 8 Del. C, § 312(e) or the seminal Delaware Supreme Court case of *Frederic G. Krapf & Son, Inc. v. Gorson*, holding that:

> It is true that 8 Del. C. §510 provides that, upon forfeiture of a charter for failure to pay franchise taxes, all of the corporation's powers become inoperative, *but this provision must be read in light of 8 Del. Code § 312* which provides for a method of reinstating corporate charters which have been forfeited. Subsection (e) provides that upon reinstatement of a charter all contracts and other matters done and performed . . . . during the time the charter was inoperative shall be validated .... To be sure, the performance of corporate acts following forfeiture is wrongful at the time, but the later reinstatement validates the corporate acts.
> *Frederic G. Krapf & Son, Inc. v. Gorson*, 243 A.2d 713, 714-715 (Del. 1968).

---

[6] *See Darley LiquorMart, Inc. v. Bechtel*, 1982 Del. Super. LEXIS 784, *1-2, 9 (Del. Super. Apr. 22, 1982) ("[R]einstatement of the certificate of plaintiff corporation after the action was filed validated the act of filing this action."); *In re: HealthTRIO, Inc.*, No. 09-34404 (Bankr. D. Col. May 2, 2012) at *6-7 (Charter of Delaware corporation was void at the time it signed Chapter 7 involuntary petition; during pendency of action charter was revived. Relying on 8 Del. C. §312(e), "[t]hat section makes it clear that all of [Petitioner's] rights and obligations were reinstated upon the revival of its corporate charter and that *such revival relates back to validate all actions taken by it during the time its corporate charter was forfeit*. The Court concludes . . . [Petitioner] enjoyed the legal capacity to join this action as a petitioning creditor . . . .") (emphasis added); *In re Efoora, Inc.*, 472 B.R. 481, 486-87 (Bankr. N.D. Ill. 2012) (applying the Del. Code holding corporation that has forfeited certificate of incorporation still exists and had capacity to file bankruptcy case); *Backyard Wrestling, Inc. v. Pro-Active Entertainment Group, Inc.*, 398 F. App'x 299, 300 (9th cir. 2010) (Under Delaware law, where a corporation was void but then renewed, it is as though the corporation was never void, and the corporation regains all of its previous rights, including the capacity to sue . . . . Under [Del. C.] 8 §312(e), and applying *Krapf*, even if BWI lacked capacity to sue at the time of the district court's March 19, 2019 judgment on damages and entry of permanent injunction, the fact that BWI has been reinstated through Certificate of Renewal results in a validation of all its corporate acts, including suit against Herrera."); *V.E.C. Corp. of Delaware, v. Hilliard*, 2011 U.S. Dist. LEXIS 152759, at *13-19 (S.D.N.Y. Dec. 13, 2011) ("[U]pon the reinstatement of the corporation pursuant to Section 312(e), it regains the ability to prosecute the actions on its behalf and any action taken while its charter was voided is ratified . . . . Although VEC was a void corporation when it commenced this action . . . the issuance of a certificate of renewal resuscitates the corporation and validates actions taken while it was void. Therefore, VEC has standing to prosecute this action.").

8

The Delaware Supreme Court went on to also make clear that:

> the statute has no bearing in a contest between private parties. It is a remedy given the state against the corporation, the officers of which persist in exercising its corporate powers after the charter forfeiture.
>
> * * *
>
> [F]ailure to pay franchise taxes is an issue solely between the corporation and the state since the franchise tax statutes are for revenue raising purposes alone.
>
> * * *
>
> We think it clear that in the absence of fraud or bad faith a corporate officer may enter into a contract binding on the corporation, even after forfeiture of the charter, particularly when, as at bar, the forfeiture came about by inadvertence.
>
> *Frederic G. Krapf & Son, Inc.,* 243 A.2d at 715

*Krapf* has been cited and followed in many of the authorities cited herein. In addition, *see also Parker v. Cardiac Science, Inc.*, No. 04-71028 (E.D. Mich. Nov. 27, 2006) at *5 (Following and applying *Krapf* holding valid an assignment executed by corporation during period of forfeiture for non-payment of franchise taxes). The *Parker* court also noted that the party asserting the same type of offensive use of the Del. Code that the SSG Defendants attempt to advance here "has not provided any authority to establish that a private party can use the statute at issue as it seeks to do so here." *See Parker*, at *5.

Given the clarity of the law, it is not surprising that the SSG Defendants have likewise failed in this regard. Inexplicably, the SSG Defendants, represented by one of the world's largest law firms, apparently "*missed*" all of this clear authority that is directly contrary to the position taken in their "*Emergency*" Motion.

Finally, the diatribe launched by the SSG Defendants (ECF No. 179 ¶¶ 9- 12) accusing Plaintiffs and their counsel of intentionally lying about the status of PSI has absolutely nothing to do with the legal capacity of PSI to commence and proceed with this action in light of the Certificate for Revival of Charter. It is nothing more than a transparent attempt to mislead and distract the Court from the clear Delaware law (the SSG Defendants avoid) on the issue of PSI's

capacity.[7]

## PLAINTIFFS DID NOT INENTIONALLY MISREPSENT PSI'S STATUS

As discussed in Mr. Kulkarni's Declaration (**Exhibit C**), he is responsible for ensuring corporate taxes are paid and he recently became aware that he inadvertently failed to pay the $575 in outstanding franchise tax. Therefore, Mr. Kulkarni, and consequently Plaintiffs' lawyers and others, honestly believed at the time of filing this Complaint and all times thereafter that PSI was active and in good standing. It was not until shortly after Plaintiffs filed the Hong Kong Lawsuit against SSG Capital on or about July 30, 2020 , that Mr. Kulkarni became aware that the franchise tax was unpaid. Immediately upon learning this, he paid the required tax and filed the Certificate of Revival.[8] Accordingly, there was no intentional misrepresentation made in this proceeding and PSI is now in good standing in Delaware (**Exhibit A**) and has otherwise been revived as set forth in the preceding section as if it were an active entity at the time of filing the Complaint.

## KYKO OWNS PSI

As previously set forth above, Sojitz' Writ of Attach with respect to PSI's shares expired on *July 1 2016* - over 7 months before Kyko was awarded the shares on February 16, 2017, and three years after Sojitz informed Kyko in *2014* that it abandoned its interest in PSI. Kyko is clearly the controlling shareholder.

The SSG Defendants state that, "[a]ccording to Delaware court records, it appears Kyko

---

[7] Indeed, the SSG Defendants laid-low and aimed to spring a trap later in this case hoping that Plaintiffs would not notice that the Delaware Franchise Tax was unpaid thereby possibly precluding revival.

[8] Indeed, it would make no sense to knowingly fail to pay the $575 in back taxes and institute a lawsuit on behalf of an entity you know to be void, but then spend thousands of dollars in litigation expense to prosecute a case in the name of the void entity (or an entity in which you do not own). Moreover, unlike VTC who has intentionally failed to reinstate itself to the British Virgin Islands' Corporate Registry to defend in this case by paying the required fees, Kyko's failure arises from a mistake that was immediately corrected upon discovery.

does not own PSI" and that this represents a "serious issue." (ECF No. 179, Pg. 5).  In actuality, the serious issue is how the SSG Defendants failed to conduct any factual investigation into this matter before declaring an "emergency" and then proceeding on accusations of bad faith and innuendo to have the Court address a matter on an expedited basis which they have known about for at least four months.

## KYKO HAS STANDING IN THIS CASE INDEPENDENTLY OF PSI

The SSG Defendants claim the Kyko lacks standing.  In doing so, the SSG Defendants fail to inform this Court of their previous failed attempt to invalidate the Collection Agent Order back on October 16, 2018 (which they now try to recycle again in this Court).  As the Collection Agent Order explicitly states:

> 4. Kyko is hereby appointed as collection agent to collect the Receivables **on behalf of PSI**, its subsidiaries and its affiliates, as applicable, directly from the foregoing debtors and/or their respective successors and assigns;
>
> 5. Kyko shall be entitled to take **any steps** necessary to collect the Receivables **as if the Receivables were directly owed to it**.  (emphasis added). **(Exhibit D)**

While Kyko is the controlling shareholder of PSI as discussed above, Kyko nevertheless has standing in this matter to bring claims in its own capacity to satisfy PSI's money judgment owing to Kyko **(Exhibit C, Ex. 1)(Exhibit H)**  irrespective of any hypothetical conflicts regarding rights of ownership to PSI.  Thus, Kyko's damages and Kyko's standing to bring claims related to those damages independently of PSI has already been judicially established.

How can Kyko's standing be any clearer?

## THERE IS NO BASIS TO CONDUCT AN EXPEDITED EVIDENTIARY HEARING

As discussed above, the SSG Defendants' request for an "emergency" evidentiary hearing is baseless.  Nevertheless, this Court is not able to conduct the requested evidentiary hearing at all.  First, Plaintiffs have demanded a jury trial of all fact issues in this case, and consequently,

11

the SSG Defendants cannot circumvent Plaintiffs' constitutional right to a jury trial by having this Court act as the finder of fact. Second, Sojitz is a non-party Japanese corporation, and therefore, it appears that this Court lacks personal jurisdiction over Sojitz to allow this Court to render an opinion that addresses its Writs of Attachment. Third, it also does not appear that this Court has subject matter jurisdiction to determine a lien priority matter arising under Delaware law between Kyko and Sojitz, a non-party Japanese corporation.

Further, merits discovery just begun last week and the SSG Defendants have just now raised Kyko's alleged lack of ownership of PSI with respect to Sojitz' previously filed Writs of Attachment even though Defendants Maheshwari and Goel - self pro-claimed "equity holders" and "long standing partners" of PISL (which formerly held PSI's shares) - were directly involved in brokering a financial settlement between PISL and Sojitz. **(Exhibit I)**. Thus, and without limitation, Plaintiffs have the right to discover the SSG Defendants' relationship with Sojitz to obtain rebuttal evidence to the allegations asserted in this Motion and to potentially establish that the SSG Defendants' ability to contest standing/lack of capacity is barred under the doctrines of laches, waiver, and similar doctrines.

Finally, if this Court is going to order an expedited evidentiary notwithstanding all of the foregoing discussed in this Response, then Plaintiffs hereby renew their request to have this Court conduct an evidentiary hearing regarding when VTC was served with the Complaint in this case and to obtain the factual bases for the SSG Defendants' repeated filings that have prevented entry of default judgment to date (ECF No. 91); *see also* (ECF Nos. 76, 77). As previously stated, one of the main purposes of the SSG Defendant's Motion here is to try to preclude entry of Default Judgment Against VTC. (*See Also* intentional references to VTC in ECF No. 179 ¶¶ 8,12). Accordingly, Plaintiffs are entitled to determine the factual circumstances regarding

VTC's knowledge of this lawsuit, service of process of same, the factual bases for the SSG Defendants' repeated filings that have prevented entry of default judgment against VTC to date, and to determine whether Fed. R. Civ. P. 11 may have been violated. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)(holding that one of the factors for entry of default judgment is "whether defendant's delay is due to culpable conduct."). The witnesses would include, at a minimum, the lawyers for Jones Day, Peter Cairns, Dinesh Goel, and Shyam Maheshwari.

## CONCLUSION

For the reasons set forth above, the SSG Defendants' Motion should be denied. In the event this Court grants the expedited evidentiary hearing, then Plaintiffs renew their previous request to conduct an evidentiary hearing with respect to entry of default judgment against VTC which should be heard in conjunction with the hearing requested by the SSG Defendants.

Respectfully submitted,

*/s/ Joseph F. Rodkey, Jr.*
Pa. I.D. No. 66757

FOWKES ♦ RODKEY
732 Allegheny River Blvd.
P.O. Box 173
Oakmont, PA 15139

(412) 828-2802 (Phone)
(412) 828-2588 (Fax)
jrodkey@fowkesrodkey.com

Jayson M. Macyda
Jayson M. Macyda (admitted *pro hac vice*)
Kyko Global, Inc.
P.O. Box 87491
Canton, MI 48187
(248) 243-6685
generalcounsel@kykoglobal.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a true and correct copy of the foregoing document was served via the Court's CM/ECF Notification System on this 18th day of August, 2020 upon the following:

>Michael H. Ginsberg
>mhginsberg@jonesday.com
>John D. Goetz
>jdgoetz@jonesday.com
>Douglas Baker
>ddbaker@jonesday.com
>JONES DAY
>500 Grant Street, Suite 4500
>Pittsburgh, PA  15219-2514

**Counsel for Defendants:**

**SSG Capital Partners I, L.P.**
**SSG Capital Management (Hong Kong) Limited**
**Shyam Maheshwari**
**Ira Syavitri Noor a/k/a Ira Noor Vourloumis**
**Dinesh Goel**
**Wong Ching Him a/k/a Edwin Wong**
**Andreas Vourloumis**
**Value Team Corporation**

>Jeffrey T. Morris
>Elliott & Davis, PC
>6425 Living Place, Suite 200
>Pittsburgh PA 15206
>morris@elliott-davis.com

**Counsel for Defendant, Anandhan Jayaraman**

The undersigned certifies that a true and correct copy of the foregoing document was served via U.S. Mail for posting on this 18th day of August, 2020 upon the following:

>Prithvi Information Solutions, LTD.
>Prithvi Asia Solutions Limited
>214 S. Craig Street
>Suite 5
>Pittsburgh, PA 15213

The undersigned certifies that a true and correct copy of the foregoing document was served via Email on this 18th day of August, 2020  upon Madhavi Vuppalapati by sending an email to:

Madhavi@prithvisolutions.com
Vuppalapatim@gmail.com
Satish@prithvisolutions.com
Vuppalapatis@gmail.com
ajayaraman@gmail.com


*/s/ Joseph F. Rodkey, Jr.*