EXHIBIT C



**SLINDE NELSON**

August 26, 2020

*VIA US MAIL AND E-MAIL*
Commissioner Eric Watness
JAMS, The Resolution Experts
600 University St., Suite 1910
Seattle, WA 98101

    **Re:**    *Kyko v. Prithvi*, Case No. 13-2-41165-2 SEA

Dear Commissioner Watness,

    This firm represents Judgment Creditors Kyko Global Inc. and Kyko Global Gmbh (collectively, **Kyko**) in the above-noted case. Kyko respectfully requests relief relating to an Order you previously entered in this case on February 16, 2017 (**February 2017 Order**) that awards Kyko shares of Prithvi Solutions Inc. (**PSI**) *See Exhibit 1*.

**Background**

    Preliminarily, you may recall that you were appointed as the Referee in this matter under the Order of Judge Spearman entered on May 30, 2014. *See Exhibit 2*. You were specifically granted all powers under RCW 6.32, the Court Rules, and "all powers necessary to conduct supplemental proceedings pursuant to [the order under which you were appointed] and make all necessary rulings." *Id*. at ¶ 2. When an initial challenge was made to the scope of your powers, Judge Spearman confirmed that you had all powers necessary to conduct supplemental proceedings pursuant to her prior order and to make all necessary rulings. *See Exhibit 3, Order dated July 7, 2014*. It was pursuant to these powers that you made the February 2017 Order.

    In the February 2017 Order, you ordered Judgment Debtor Prithvi Information Solutions Ltd. (**PISL**), which you found was the owner of all shares in PSI (**Shares**), to, *inter alia*: (1) turn over or surrender its right to possess any of the Shares to Kyko; and (2) recognize the transfer of the Shares to Kyko, record such transfer in PSI's books and records, and effect the issuance of replacement Shares in the name of Kyko. *Ex. 1* at ¶¶ 3-5.

    In supplemental findings contained in the February 2017 Order (the **Supplemental Findings**), you noted that Judgment Debtor Madhavi Vuppalapati (**Ms. Vuppalapati**) provided you with an unsworn and uncorroborated assertion that the Shares had already been turned over to Sojitz Corporation (**Sojitz**) pursuant to a writ of attachment entered on April 4, 2013 in Delaware. *Id.* at Ex. A. You further noted, among other things, that: (1) there was no evidence to support Ms. Vuppalapati's allegations; and (2) Sojitz

was not a party in the matter before you and that any conflict over the ownership rights of the Shares could not be adjudicated at that time and should be resolved separately between Kyko and Sojitz. *Id.* at Ex. A.

For the reasons that follow, Kyko respectfully requests that you conduct a hearing to determine whether your February 2017 Order should be amended to remove the Supplemental Findings to unambiguously reflect that Kyko obtained clear title of PSI's shares as of February 16, 2017.

**The Requested Hearing is Necessary to Confirm that Kyko Obtained Clear
Title to PSI's Shares on February 16, 2017**

Kyko and PSI are prosecuting a case in the United States District Court for the Western District of Pennsylvania - case no. 2:19-cv-01290 - wherein the defendants have challenged Kyko's ownership of PSI based on your Supplemental Findings in the February 2017 Order. In short, the defendants question whether Kyko was ever a controlling shareholder of PSI.

Unbeknownst to you when you made your Supplemental Findings, prior to February 16, 2017, Sojitz never received PSI's shares, its Writ of Attachment of PSI's shares had already expired, and Sojitz had already informed Kyko that it had abandoned its collection efforts against PSI's shares. Thus, Kyko had clear title of PSI's shares on this date. Ms. Vuppalapati, as she and her brother Satish Vuppalapati had done before with respect to a stock ownership issue (discussed later), simply lied to you to try to create a lien priority issue between Kyko and Sojitz when none actually existed in her never-ending campaign to prevent Kyko from collecting on its judgment.

Given the foregoing, Kyko hereby respectfully requests that you conduct a hearing in the following manner:

1. Ms. Vuppalapati should be required to appear via video link at a U.S. Consulate's office in India (where she currently resides) to provide testimony and be cross-examined regarding the facts and circumstances pertaining to the February 2017 Order, and in particular, her email to you that stated PSI's shares were given to Sojitz.

2. As a precondition to your considering Ms. Vuppalapati's testimony, Ms. Vuppalapati and/or the Judgment Debtors should be required to pay the arrears they owe to JAMS as well as the fees that will be incurred as a result of the requested hearing. It would be inequitable to permit Ms. Vuppalapati to participate in this hearing when Ms. Vuppalapati and Judgment Debtors have failed to pay their required portion of the fees.

3. Kyko should be permitted to submit declarations (or provide witness testimony via video link if you think necessary) that establish that Sojitz never received PSI's shares, that Sojitz' Writ of Attachment expired before February 16, 2017, and that it abandoned its collection efforts against in PSI's shares before February 16, 2017.

4. Sojitz should be provided an opportunity to participate in a resolution of this matter. To that end, Kyko has provided Sojitz with a copy of this letter. *See Exhibit 4.*

Exhibit C 002

By conducting a hearing as set forth above, Kyko asserts that you will be provided evidence that permits you to remove the Supplemental Findings in the February 2017 Order to unambiguously confirm that Kyko obtained clear title of PSI's shares as of February 16, 2017.

**You Have Already Addressed a Similar Fabricated Dispute with
Respect to Shares of Agadia Systems, Inc.**

Prior to the February 2017 Order, you resolved a very similar fabricated dispute arising from another baseless claim made by Ms. Vuppalapati and Satish Vuppalapati wherein they asserted that PSI's shares of Agadia Systems, Inc. (**Agadia**) that you ordered to be turned over to Kyko had already been sold to non-party Ennar Energy Ltd. (**Ennar**). *See Exhibit 5, Order dated August 8, 2014.* You noted, among other things, in that proceeding that Mr. Vuppalapati's purported evidence "lacks credibility" and that Ms. Vuppalapati's and Mr. Vuppalapati's evidence in general "did not add up" and awarded Kyko ownership of PSI's shares of Agadia.[1] Your order was affirmed on appeal to Judge Spearman. *See Ex. 6, Order dated September 5, 2014.*[2]

**Conclusion**

For the reasons set forth above, Kyko requests that you conduct a hearing - as you did regarding the fabricated dispute pertaining to Agadia's shares - to determine whether your February 2017 Order should be amended to remove the Supplemental Findings to unambiguously confirm that Kyko obtained clear title of PSI's shares as of February 16, 2017.

Please contact me to discuss this matter at your earliest convenience.

Sincerely,

Keith A. Pitt

Enclosures
KAP/crl

---

[1] Your Order specifically provided Ennar an opportunity to participate in this proceeding to discuss its purported purchase of PSI's shares.

[2] On December 13, 2017, the U.S. Justice Department indicted the Vuppalapatis based on the loan factoring receivable fraud leading to the money judgment that Kyko seeks to enforce in this proceeding. *See Exhibit 7, Indictment.*

Exhibit C 003

# EXHIBIT 1

Exhibit C 004

1
2
3
4
5
6
7                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8    KYKO GLOBAL INC., a Canadian corporation
     and KYKO GLOBAL GMBH a Bahamian              Case No. 13-2-41165-2 SEA
9    corporation,
                                                  [Proposed] ORDER REQUIRING
10                    Judgment Creditors,          PRITHVI INFORMATION SOLUTIONS
                                                  LTD. TO TURN OVER SHARES IN
11   v.                                           PRITHVI SOLUTIONS INC. TO KYKO
                                                  GLOBAL INC. AND KYKO GLOBAL
12   PRITHVI INFORMATION SOLUTIONS,               GMBH
     LTD., et al.,
13
                      Judgment Debtors.
14

15        This matter came before ERIC B. WATNESS, having been duly appointed as REFEREE

16   in the above-referenced proceeding under the ORDER GRANTING MOTION FOR REFEREE

17   entered on May 30, 2014 by the Honorable Marianne C. Spearman, Chief Civil Judge, King

18   County Superior Court, and having reviewed the Order and various Motions and Pleadings as set

19   forth below, enters the following Rulings:

20        IT IS HEREBY ORDERED as follows:

21        1.    WHEREAS on September 6, 2013, Judgment Creditors Kyko Global Inc. and

22   Kyko Global GmbH (collectively, "Kyko") obtained a judgment in United States District Court,

23   Western District of Washington (Case No. 2:13-CV-1034 MJP) against Judgment Debtors

24   including but not limited to Prithvi Information Solutions Ltd. ("PISL") and Prithvi Solutions

25   Inc. ("PSI") in the amount of $17,568,854 with interest accruing at the rate of 2.45% per month;

26

2. WHEREAS on June 30, 2016, Kyko obtained a final judgment in United States District Court, Western District of Washington (Case No. 2:13-CV-1034 MJP) against Judgment Debtors including but not limited to PISL and PSI in the amount of $134,318,640 (the "Final Judgment");

3. WHEREAS Judgment Debtor PISL owns all of the issued and outstanding shares in the capital of Judgment Debtor PSI; *SEE EXH A ATTACHED.*

4. PISL is hereby ordered to turn over or surrender its right to possess any shares in PSI (the "Shares"), and PSI is hereby ordered to reissue new share certificates in the name of Kyko Global GmbH to evidence compliance therewith;

5. PSI is hereby ordered to (i) recognize the transfer of the Shares to Kyko Global GmbH, (ii) record such transfer on PSI's book and records (iii) effect the issuance of replacement shares in the name of Kyko Global GmbH, and (iv) take all steps necessary to remove the current directors and officers of PSI and replace them with Kiran Kulkarni as Kyko Global GmbH's nominee for sole director and officer of PSI;

6. Kyko Global GmbH shall be entitled to exercise all rights as sole shareholder of PSI, and Kiran Kulkarni shall be entitled to exercise all rights as sole director and officer of PSI; and

7. Kyko shall be entitled to sell, transfer, or otherwise dispose of the Shares as it sees fit, and shall report to the Referee within fourteen (14) days of doing so to obtain credit against the Judgment in the appropriate amount. In the event that Kyko Global GmbH decides to retain the Shares, it shall provide the Referee with a valuation thereof within twelve (12) months of the ruling so that appropriate credit may be applied to the Final Judgment.

DATED THIS 16TH day of *February, 2017*

*Eric B. Watness, Commissioner (Ret.), Referee*

PAGE 2 – ORDER REQUIRING PRITHVI INFORMATION SOLUTIONS LTD. TO TURN OVER SHARES IN PRITHVI SOLUTIONS INC. TO KYKO GLOBAL INC. AND KYKO GLOBAL GMBH

Exhibit C 006

EXHIBIT 1
Page 2 of 4

Presented by:

1

2

3 _____

4 **Darian Stanford, #44604**
**Slinde Nelson Stanford**

5
Attorneys for Judgment Creditors
6 Kyko Global, Inc. and Kyko Global
GMBH
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PAGE 3 – ORDER REQUIRING PRITHVI INFORMATION SOLUTIONS LTD. TO TURN
OVER SHARES IN PRITHVI SOLUTIONS INC. TO KYKO GLOBAL INC. AND KYKO
GLOBAL GMBH

Exhibit C 007

EXHIBIT 1
Page 3 of 4

Exhibit A

SUPPLEMENTAL FINDINGS

In response to the Request of Kyko Global Inc., et al, for an Order to Transfer Shares of Prithvi Information Solutions LTD ("shares") the Referee received an unsworn statement via email from Defendant, Madhavi Vuppalapati, alleging that these shares were turned over to Sojitz Corporation pursuant to a Writ of Attachment entered on April 4, 2013 in Castle County Superior Court for Delaware cause number C.A. No. N13J-00945. No documentary evidence was submitted to verify that allegation. And the Delaware Secretary of State reveals no filings relating to PSI after June 27, 2007. Since Sojitz Corporation is not a party to this matter any conflict over the rights to ownership of these shares cannot be adjudicated here and should be resolved separately between Kyko Global Inc., et al, and Sojitz Corporation.

Exhibit C 008

EXHIBIT 1
Page 4 of 4

# EXHIBIT 2

Exhibit C 009


FILED
KING COUNTY, WASHINGTON

MAY 3 0 2014

SUPERIOR COURT CLERK
BY PHILLIP HENNINGS
DEPUTY

1
2
3
4
5
6
7
8

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

9  KYKO GLOBAL INC., a Canadian corporation
   and KYKO GLOBAL GMBH a Bahamian
10 corporation,

11          Judgment Creditors,

12     v.

13 PRITHVI INFORMATION SOLUTIONS,
   LTD., a Pennsylvania corporation; PRITHVI
14 INFORMATION SOLUTIONS
   INTERNATIONAL, LLC, a Pennsylvania
15 limited liability company; PRITHVI
   SOLUTIONS, INC., a Delaware corporation;
16 INALYTIX INC., a Nevada corporation;
   AVANI INVESTMENTS INC., a Delaware
17 corporation; ANANYA CAPITAL INC., a
   Delaware corporation; MADHAVI
18 VUPPALAPATI, DCGS, INC., a Pennsylvania
   company; EPP, INC., a Washington
19 corporation; FINANCIAL OXYGEN INC., a
   Washington corporation; HUAWEI LATIN
20 AMERICAN SOLUTIONS INC., a Florida
   corporation; and L3C, INC., a Washington
21 corporation,

22          Judgment Debtors.

Case No. 13-2-41165-2 SEA

ORDER GRANTING MOTION FOR
~~DETERMINATION OF FIFTH~~ APPOINTMENT OF
~~AMENDMENT OBJECTIONS,~~
~~APPOINTING~~ REFEREE, ~~PRODUCING~~
~~DOCUMENTS AND SANCTIONS.~~

~~[PROPOSED]~~

23

24      Plaintiffs/Judgment Creditors Kyko Global and Kyko Global GMBH ("Kyko")

25 have moved for:

26

ORDER GRANTING MOTION FOR DETERMINATION OF FIFTH
AMENDMENT OBJECTIONS, ETC. - 1

SEADOCS:465530.1

Exhibit C 010

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

EXHIBIT 2
Page 1 of 4

1.    Determination of Debtor Madhavi Vuppalapati ("Debtor") assertion of the
5th Amendment and attorney client privilege to avoid answering questions regarding debtor's
assets;

2.    Appointment of a referee for future exams to attend and rule on objections
on future proceedings to be held in the same matter as a deposition;

3.    Order requiring Debtor to turn over documents identified during the
examination and to sanction Debtor for failing to turn over documents ordered by the court but
not produced by Debtor.

This Court, having considered the motion and supporting declaration, and the
pleadings and filings herein, and good cause having been shown, now hereby

IT IS ORDERED that plaintiffs/judgment creditors Kyko's motion for is hereby
granted as follows:

1.    Debtor's blanket assertion of the Fifth Amendment privilege to avoid
answering questions regarding Debtor's assets is improper without first stating a valid factual
basis for fear of criminal prosecution. Debtor will answer all questions not do not meet this
requirement. Additionally, Debtor will answer all questions regarding her source of funds used
to pay legal fees since this information is not protected by the attorney-client privilege. To the
extent Debtor has been previously ordered to answer questions about companies that are not the
target of specific fraud allegations, she must continue to answer all those questions along with
any other questions on assets she has previously testified to in the past under oath;

*Reserved for determination by Referee*

2.    The court hereby appoints a referee under RCW 6.32.010 for future exams
to attend and rule on objections on future proceedings to be held in the same matter as a
deposition. The referee will have all the powers set forth in RCW 6.32 and the Court Rules to
rule on objections and to schedule supplemental proceedings in the same manner as depositions.

ORDER GRANTING MOTION FOR DETERMINATION OF FIFTH
AMENDMENT OBJECTIONS, ETC. - 2

Exhibit C 011

SEADOCS:465530.1

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

EXHIBIT 2
Page 2 of 4

1   The referee appointed is _Eric Watness_ ~~unless both parties stipulate to the choice of~~

2   ~~a referee of their choosing~~.  The referee shall all have powers necessary to conduct supplemental

3   proceedings pursuant to this order and make all necessary rulings. Each Plaintiffs and Defendants

4   shall be responsible for half of the referee's fee, unless the referee decides otherwise.  Any appeal

5   from the referee's order will be to this court and it must be filed within 5 days of the referee's

6   ruling;

7               3.      Debtor Madhavi Vuppalapati is to turn over all documents previously

8   ordered from Debtor in the court's orders of December 17, 2013 and April 17, 2014, including

9   those identified by Debtor during the February 13 and May 16, 2014 examinations as being in

10  her possession or control within five days from the date of this order.  Debtor is sanctioned $____

11  _____ for failing to turn over documents ordered by the court previously but not

12  produced by Debtor, including information on the Mini Cooper sold by Debtor in January 2014

13  but not previously disclosed to Judgment Creditors.  This sanction will be stricken if Debtor is in

14  full compliance with this order within ten days from entry.  Debtor is ordered to turn over to

15  plaintiff the proceeds of the sale of the Mini Cooper with five days of the date of this order.

_Reserved for determination by Referee_

16              IT IS SO ORDERED this _30th_ day of May, 2014.

17

18                              _____

19                              Mariane C. Spearman, Chief Civil Judge
                                King County Superior Court

20

21

22

23

24

25

26

ORDER GRANTING MOTION FOR DETERMINATION OF FIFTH
AMENDMENT OBJECTIONS, ETC. - 3

Exhibit C 012

SEADOCS:465530.1

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

EXHIBIT 2
Page 3 of 4

1    Presented by:

2    *s/ James T. Yand*
     _____
3    John R. Knapp, Jr.,WSB No. 29343
     James T. Yand, WSB No. 18730
4    MILLER NASH LLP
     4400 Two Union Square
5    601 Union Street
     Seattle, WA 98101
6    Phone:  (206) 622-8484
     Fax:  (206) 622-7485
7    E-mail:  john.knapp@millernash.com
     E-mail:  james.yand@millernash.com
8
     Attorneys for Judgment Creditors
9    Kyko Global, Inc. and Kyko Global
     GMBH
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING MOTION FOR DETERMINATION OF FIFTH
AMENDMENT OBJECTIONS, ETC. - 4
                                          Exhibit C 013

SEADOCS:465530.1

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101        EXHIBIT 2
                                  Page 4 of 4

# EXHIBIT 3

Exhibit C 014

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

KYKO GLOBAL INC., A Canadian corporation      )
and KYKO GLOBAL GMBH a Bahamian               )
corporation,                                  )
                                              )
                 Judgment Creditors,          )        Case # 13-2-41165-2 SEA
                                              )
        v.                                    )
                                              )
PRITHVI INFORMATION SOLUTIONS, LTD.,          )
A Pennsylvania corporation; PRITHVI           )
INFORMATION SOLUTIONS INTERNATIONAL,          )        ~~Proposed~~ Order on
LLC, a Pennsylvania a limited liability company; )     Interim Report of Referee and
PRITHVI SOLUTIONS, INC. a Delaware            )        Request for Instructions
corporation; INALYTIX INC., a Nevada Corporation;)
AVANI INVESTMENTS INC., a Delaware            )
Corporation; ANANYA CAPITAL INC., a           )
Delaware Corporation; MADHAVI VUPPALAPATI,    )
DCGS, INC.,  a Pennsylvania company;          )
EPP. INC., a Washington corporation,          )
FINANCIAL OXYGEN INC., a Washington           )
corporation; HUAWEI LATIN AMERICAN            )
SOLUTIONS,  INC., a Florida corporation; and  )
L3C, INC., a Washington corporation,          )
                                              )
                 Judgment Debtors.            )
_____)

The Court, having reviewed the Interim Report and Request of Eric B. Watness, Referee
Appointed herein, for Instructions from the Court, Orders as follows:

Exhibit C 015

EXHIBIT 3
Page 1 of 2

**IT IS HEREBY ORDERED that**

The referee shall have all powers necessary to conduct supplemental proceedings pursuant to the courts May 30th order & shall make all necessary rulings. The referee's power shall include the authority to order that the judgment debtor turn over to plaintiff the proceeds from the sale of personal property pursuant to RCW 6.32.080

Any appeal to from an order of the referee shall be filed with this court within 5 days of the referee's order.

DATED THIS _____7ᵗʰ_____ day of July, 2014.

_____

Mariane C. Spearman, Chief Civil Judge
King County Superior Court

Presented by:

_____

Eric B. Watness, Referee

Exhibit C 016

EXHIBIT 3
Page 2 of 2

# EXHIBIT 4

Exhibit C 017

Nobuhiro Sawai
Manager
Section 3, Legal Department
**Sojitz Corporation**
1-1, Uchisaiwaicho 2-chome
Chiyoda-ku, Tokyo 100-8691, Japan
Email: sawai.nobuhiro@sojitz.com

Koji Izutani, Shinichiro Aoki, Antonette Buono,
Kenji Asano, Sita Kinoshita, and Atsuhiko Tsukamoto
Governors
**Sojitz Corporation of America**
701 5th Avenue, Suite 1160
Seattle, WA 98104-4810

Registered Agent
**Sojitz Corporation of America**
**c/o Corporation Service Company**
300 Deschutes Way SW, Suite 208 MC-CSC1
Tumwater, WA 98501

Stephen A. Loney Jr.
**Hogan Lovells US LLP**
1735 Market Street, Floor 23
Philadelphia, PA 19103
Email: stephen.loney@hoganlovells.com

Exhibit C 018

EXHIBIT 4
Page 1 of 1

# EXHIBIT 5

Exhibit C 019

SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

| | |
|---|---|
| KYKO GLOBAL INC., A Canadian corporation and KYKO GLOBAL GMBH a Bahamian corporation, ) ) ) ) | |
| Judgment Creditors, ) ) | Case # 13-2-41165-2 SEA |
| v. ) ) | |
| PRITHVI INFORMATION SOLUTIONS, LTD., A Pennsylvania corporation; PRITHVI INFORMATION SOLUTIONS INTERNATIONAL, LLC, a Pennsylvania a limited liability company; PRITHVI SOLUTIONS, INC. a Delaware corporation; INALYTIX INC., a Nevada Corporation; AVANI INVESTMENTS INC., a Delaware Corporation; ANANYA CAPITAL INC., a Delaware Corporation; MADHAVI VUPPALAPATI, DCGS, INC.,  a Pennsylvania company; EPP. INC., a Washington corporation, FINANCIAL OXYGEN INC., a Washington corporation; HUAWEI LATIN AMERICAN SOLUTIONS,  INC., a Florida corporation; and L3C, INC., a Washington corporation, ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | REFEREE'S RULING ON MOTION FOR TURNOVER OF PROPERTY |
| Judgment Debtors. ) ) | |

Comes now ERIC B. WATNESS, having been duly appointed as REFEREE in the above referenced proceeding under the ORDER GRANTING MOTION FOR APPOINTMENT OF REFEREE entered on May 30, 2014 by the Honorable Marianne C. Spearman, Chief Civil Judge, King County Superior Court, and having reviewed the Order and various Motions and Pleadings as set forth below enters the following Rulings:

The Judgment Creditor Kyko Global Inc. filed a Motion for Turnover of Property dated June 27, 2014. In that request it seeks delivery of proceeds from the sale of a Mini Cooper once owned by Judgment Debtor, Madhavi Vuppalapati, surrender of cash that she brought into the United States from India and the transfer shares held by Prithvi Solutions Inc. (PSI) in Agadia Systems

1

Exhibit C 020

EXHIBIT 5
Page 1 of 9

Inc. On July 18, 2014 the Judgment Creditor also requested by Letter that the Judgment Debtor produce previously sought records and documents and that the Judgment Debtor be directed to answer Interrogatory questions to which she has previously interposed her Fifth Amendment objection. Ms. Vuppalapati has responded that she no longer has the proceeds from the sale of the vehicle nor does she possess any funds that she brought into United States from India. Furthermore, she asserts that she is no longer legally able to cause any transfer of shares of Agadia Inc. She has also raised certain evidence objections concerning exhibits attached to the declaration of Sonal Thomas. And the Judgment Debtor has reiterated her Fifth Amendment objection to production of documents for Prithvi Solutions International Inc. and Interrogatories. In her Reply she also seeks a ruling that she not be responsible for Kyko's attorney fees and costs.

## 1.0 Evidence objections:

The Judgment Debtor contends that Ms. Thomas' declaration is not made from personal knowledge, lacks an adequate foundation to support authenticity of attached exhibits and was based upon hearsay. The general security agreement was signed by the Judgment Debtor in her capacity as CEO but she provided no substantial basis on which to attack the authenticity of that document. The UCC financing statements are copies of documents filed with the Delaware Department of State in 2013 and 2014. The guarantee was signed by the Judgment Debtor in her representative capacity as CEO and also in her personal capacity yet she provided no substantive basis on which to attack the authenticity of that document. The same is true copies of checks in the amount of $2 million each likewise signed by the Judgment Debtor on behalf of Prithvi Solutions Inc. The financial statement supplied for Prithvi Information Solutions LTD is ignored by the Referee because it was erroneously attached and irrelevant to the issues currently at hand. Otherwise the financial statements for Prithvi Solutions Inc. (PSI) dated March 31, 2012, March 31, 2013 and September 30, 2012 are submitted on behalf of the Judgment Debtor in this matter through its' CPA, RAM Associates, agent of a party opponent. The Debtor made no credible objection as to the authenticity of those documents and they are admitted as statements against her interest. Furthermore, as pointed out by the Judgment Creditor, these are supplemental proceedings where the rules of evidence need not apply. ER 1101(c)(3). Since the objections were formalistic in nature and not supported by any evidence of lack of authenticity, the documents are all accepted as such by the Referee subject to weight.

## 2.0 Turn Over of Property.

2.1 Must the Judgment Debtor be required to turn over cash she previously brought into the United States? During her supplemental proceedings examination of May 16, 2014 the Judgment Debtor stated that she "maybe" received $10,000 from her parents, Murthy Devi Vuppalapati and Rama Rao Vuppalapati, and she thought she deposited $6000 in a bank account. On further questioning about her possession of the funds, she answered that she no longer had the funds because "I've spent it." See page 123–134 of Supplemental Proceedings Examination of M. Vuppalapati Vol. 2, 5/16/14 in Kyko Global Inc. v. PSI LTD et al 13–2 – 41165–2SEA. This request by the Judgment Creditor is denied.

2.2 Must the Debtor now turn over sale proceeds from the sale of the Mini Cooper? Similarly in the same examination the Judgment Debtor stated that she sold a Mini Cooper in January 2014 for what she thought was $10,000. During that interrogation the Judgment Debtor did not pursue questioning about her retention of those funds. She was previously directed to surrender those funds to the Judgment Creditor but now states that she has also spent them. She has offered to pay $2000 per month toward the ruling requiring her to surrender sale proceeds to the Judgment Creditor. It appears that the funds have been dissipated. The Judgment Creditor's motion to require the Judgment Debtor to turn over $10,000 is denied. However, the Debtor's offer to make payments should be accepted and the Judgment Debtor shall begin to make minimum $2000 per month payments as promised commencing not later than August 15, 2014.


2.3 Must the Judgment Debtor turn over stock held by PSI in Agadia Systems Inc.? PSI clearly represented it owned 60% stock in Agadia Systems Inc. The financial statement for March 31, 2012 shows that the 60% common stock ownership totaled $2,715,312 in value. See Prithvi Solutions Inc. Financial Statement dated March 31, 2013 by Ram Associates, CPAs, page 9. A March 31, 2013 financial statement represented that PSI still owned 60% of common stock then valued at $3,703,566. And the September 30, 2012 Financial Statement represented that share ownership in Agadia Systems Inc. was then valued at $3,008,710. The Judgment Creditor presented a letter dated January 29, 2014 from Madhavi Vuppalapati on behalf of Prithvi Solutions Inc. informing Agadia Systems Inc. minority shareholder, Sri Swarma, that Prithvi Solutions Inc. intended to sell its 60% holding to Global Advisors (Singapore) Pte. Ltd. for the sum of $10,800,000.

In his July 2, 2014 Satish Vuppalapati stated that he is and has been the Director of Prithvi Solutions Inc. since its inception. He added that Ms. Vuppalapati resigned as an officer of PSI in March 2014 and lacks authority to speak on its behalf. He asserted that PSI sold all of its stock to Ennar Energy LTD in June 2012. He further represented that Ennar paid for the stock and was given stock certificates in 2012. Mr. Vuppalapati states that as of July 2, 2014 "Ennar Energy LTD is in the process of getting approval from the Indian government. This is why Ennar Energy LTD is not currently named as the majority shareholder of record on Agadia's books and records." In his July 11, 2014 Declaration to Support Surreply Satish Vuppalapati supplied a copy of a Stock Sale and Pledge Agreement made on June 14, 2013 in which Prithvi Solutions Inc. and Prithvi Information Solutions Ltd sold to Ennar Energy LTD 1,200,000 shares of common stock in Agadia Systems Inc. for the sum of $3,630,000. See Exhibit 2. He also supplied two share certificates evidencing ownership by Prithvi Solutions Inc. of 1,200,000 shares of Agadia Systems Inc.as of September 21, 2008. See Exhibit 4. And he provided redacted, partial documents purporting to be deposits of funds from Ennar Energy to Prithvi Information Solutions LTD on February 2, 2012 and December 28, 2012. He explains that Agadia stock holdings were still shown on the March 2012, September 2012 and March 2013 Financial Statements despite the sale because the transaction had not yet been finalized "…and the stock was still in the name of PRI." PRI did not report the funds because the payment was made to its parent organization Prithvi Information Solutions Ltd.  See Declaration of Satish Vuppalapati, in Support of Sur-Reply, Page 2.

EXHIBIT 5
Page 3 of 9

Attorney Amit Kamble states from his research that the sale of the stock shares must require specific and prior approval of the Reserve Bank of India, a process that requires only a few months, not 2 years to obtain provided that the Indian company qualifies for such investment. He also stated that Ennar Energy is a dormant company and non-operational having failed to make any statutory filings since 2006. He opines that, since the transaction was never approved by the Indian Government, the sale was never completed and, therefore, the shares of ownership remain with PSI. The Declaration of Advocate M. Venkateswer Rao refutes these legal conclusions. But this analysis does little to resolve the inconsistencies offered by the Judgment Debtor concerning the ownership of Agadia shares. The legalities of the sale and the form of the documents are raised as further indicia of problems with stock ownership. Ennar Energy Ltd is not a party to this dispute and will need to be given notice in order to clear title to the shares. Aside from these concerns over claims to stock ownership, Mr. S. Vuppalapati's testimony lacks credibility. How can he say on the one hand that the Ennar Energy paid for the stock and was given the certificates in 2012 and then state that the stock was still in the name of PSI? How could three consecutive PSI Financial Statements overlook this very significant transaction? And how do the deposits from Ennar Energy to PISL at odd times on February 2, 2012 and December 28, 2012 document a sale of stock by PSI? Finally, if the stock had been sold as alleged in 2012, how can Ms. Madhavi Vuppalapati justify her notice of a sale of the same shares to the minority shareholder as late as January 2014? This testimony does not add up. And since the Indian Government has not approved the sale, the shares remain in PSI and its interest in them shall be tendered to the Judgment Creditor.

RCW 6.32.080 allows for the court to order a judgment debtor to immediately pay money or deliver articles of personal property to a sheriff where it appears that the judgment debtor has in her possession or under control money or other personal property belonging to her that is capable of manual delivery and that her right to possession is not substantially disputed. Should Ennar Energy Ltd. seek to substantially dispute this conclusion, it shall be joined hereto to resolve any claims it may have.

3.0 Delivery of Documents:

The Judgment Creditor has requested specific documents from the Judgment Debtor in its letter of July 18, 2014. These include tax records, bank statements and a copy of a lease and a life insurance policy. In addition, it also demands that a corporate vehicle be delivered to the sheriff, and that the Debtor relinquish sale proceeds of the Mini Cooper, provide a list of her valuables and divulge contact information for Shivand B. Finally, they also seek answers to specific interrogatories previously presented to the Judgment Debtor over her objections.

3.1 Tax records: The Judgment Debtor has provided her 2011 1040 tax forms and stated that she will provide 2012 and 2013 forms by the "end of the month" (July which has now passed). Judgment Debtor added that she will seek 2010 tax forms from her CPA for Prithvi Information Solutions International (PISI) tax forms and provide 2012 and 2013 when filed. The Judgment Debtor declined to provide tax forms for Prithvi Information Solutions Limited (PISL) as she does

EXHIBIT 5
Page 4 of 9

not have access to them. Rather, she has directed the Judgment Creditor to PISL for those forms. And the Judgment Debtor stated there are no tax returns for Inalytix.

Ms. Vuppalapati should deliver her 2012 and 2013 IRS 1040 forms and attachments as well any PISI tax forms upon filing or now in her possession or control and, if taxes have not yet been filed, inform the Referee and Judgment Creditor when those forms will be filed. She shall also deliver any PISL forms in her possession. Otherwise the Judgment Debtor is excused from delivering tax forms for PISL not in her possession and Inalytix as they do not exist.

3.2 Bank records: The Judgment Debtor provided her Chase bank records for account # 8695 including November 2013 through April 2014 except February 2014 (which she previously provided) and stated that Chase account number 9901 had previously been closed. She also included her Wells Fargo statements January 2014 through June 2014 in her response. The Judgment Debtor stated that her PNC bank statement and PNC PISI LLC accounts were closed and she does not have access to those. She has provided U.S. Bank PISI LLC accounts previously for April 2014 through July 2014. The Judgment Debtor asserted her Fifth Amendment privilege with respect to bank statements for Prithvi Solutions Inc. (PSI). This issue is discussed below pertaining to other Fifth Amendment objections. And she states that there are no account receivables due to her. She provided a copy of a lease and her New York Life insurance policy statements in response to the demand to produce. Finally, the Judgment Debtor stated there are no Wells Fargo credit card statements. With the exception of PSI bank records not produced, the Judgment Debtor has complied with the Judgment Creditor's demand to produce bank records.

3.3 Property: The Judgment Debtor stated that she will turn over possession of a corporate vehicle to the sheriff after communicating with Srinivas Sista who apparently has possession of the vehicle. She previously provided February 2014 Chase bank statement showing disposition of funds from the Mini Cooper sale which were used to pay for a bankruptcy attorney and other monthly expenses. She stated that she will provide a list of valuable items when she returns to the U.S. The payment of Mini Cooper sale proceeds is discussed above. The Judgment Debtor shall deliver possession of the corporate vehicle to the sheriff by August 15, 2014 and provide a list of her person valuables on August 18, 2014.

3.4 Interrogatories: The Judgment Debtor has raised general objections to answering interrogatories. She asserts that answers to interrogatories are not required by court rules and that the interrogatories call for a legal opinion, are overly broad on their face, confusing, burdensome and oppressive. She also objects on the grounds that interrogatories call for answers protected by attorney-client privilege, are duplicative, require disclosure of confidences and mistake prior testimony or are based on facts not in evidence. Of these objections only the objection based upon disclosure of attorney-client confidences is sustained. The Judgment Debtor shall not be required to divulge attorney-client confidences nor shall her attorneys be included as respondents to interrogatories beyond their role as counsel. With the exception of her Fifth Amendment objections (discussed below) the balance of the Judgment Debtor's objections are overruled because she did not provide any factual argument to support them and

objections based on rules of evidence are unavailable in these Supplemental Proceedings. ER 1101(c)(3).

3.5 Judgment Debtor's Objections to Production of Documents. The Judgment Debtor argued that the demand to produce documents for Prithvi Solutions Inc. (PSI) was sent to her in her personal capacity and not as an agent of the corporation. The Judgment Creditor, however, points out that PSI was directed to appear and produce documents through its agent, Madhavi Vuppalapati. See Order Compelling Attendance at Supplemental Proceedings filed May 6, 2014 which directed PSI "… by and through its officer Madhavi Vuppalapati ("Madhavi")…" to appear and bring with it specified business records. That basis for objection is not sustained.

More substantively Ms. Vuppalapati also asserted her Fifth Amendment privilege to production of documents asserting that they could be used against her in a criminal prosecution or lead to other evidence. And she added that the act of production admits existence of the documents thus supplying a link in the chain of evidence that would be needed for prosecution. She further asserted that production of bank statements would be a testimonial act. She maintains that there is a nexus between the documents sought and potential criminal charges and convictions and that there is a reasonable possibility that, by delivery, she would be open to prosecution.

The Judgment Creditor responds that, while individuals are entitled to protection under the Fifth Amendment from producing documents on their own behalf, corporations possess no such privilege even when requests for production are sent to an individual agent of the corporation. Braswell v. US, 487 US 99, 108 S. CT. 2284, 101 L.Ed.2d 98(1988). That matter, similar to this, involved an individual who was the president of two corporations as well as the sole shareholder. In that case, the books and records were held to belong to the corporation, not to the individual shareholder or president. The fact that the officer holds the records in his representative capacity carries with it a duty to produce the documents when so ordered. As in Braswell the Judgment Debtor, Madhavi Vuppalapati, holds corporate records in her representative capacity, not in her personal capacity. Therefore, she has a duty to produce the records on behalf of the corporation even though that may provide a link in the chain of prosecution against her personally. She cannot lodge her Fifth Amendment Privilege on behalf of the corporation and must turn over the documents.

3.6 Providing Answers to Interrogatories: The Judgment Debtor objected to Interrogatories number 11 through 26 consecutively with the exception of interrogatory numbers 15 and 26 which she answered substantively. The Judgment Debtor raised general objections to Interrogatories 11, 12, 13 and 14 but did not provide a factual basis to support her objections. Again, ER 1101 permits avoidance of evidence rules in Supplemental Proceedings. Even so, to the extent that "Prithvi entities" is vague it shall apply to any entity using the name "Prithvy" and no other entity so as not to be misleading. Therefore, the rest of her general objections to those Interrogatories fail and she is directed to answer each of those inquiries.

6

Exhibit C 025

EXHIBIT 5
Page 6 of 9

The Judgment Debtor, however, invoked her Fifth Amendment privilege against self-incrimination in response to Interrogatory numbers 16, 17, 18, 19, 20, 21, 22, 23, 24 and 25. Interrogatory 16 seeks information concerning whether any "Prithvi entities" maintain an ownership interest in Agadia Inc. and asked her to describe the ownership interest, whether that interest is or was represented in stock and the location by street address of the shares. As previously ruled, a general blanket Fifth Amendment privilege will not be sustained. It was concluded in a prior ruling that the proper procedure for establishing whether the privilege will apply is to first determine whether external circumstances support the privilege. If there are no external circumstances, then the court (referee in this instance) must proceed with an in camera hearing to assess whether there is sufficient factual predicate to justify the assertion of privilege claim. And there must be a reasonable basis to apprehend danger from a direct answer to a potentially incriminating interrogatory. More to the point, there must be a genuine, and not solely a fanciful or illusory, claim that prosecution will occur. Otherwise, the claim must be rejected as insufficient to overcome the correlative duty of the court and litigant to testify to the truth. See Referee's Ruling on Motions dated July 7, 2014.

Given this test the Judgment Debtor has failed to identify any factual basis to conclude that answers to interrogatory number 16 will result in prosecution. There are no external circumstances that would lead to a conclusion that testimony will provide a link in the chain of evidence and no explanation has been provided in camera that shows any connection to prosecution. Interrogatory numbers 17, 18, 19, 20, 21 and 22 all relate to an alleged transfer of an ownership interest in Prithvy Catalytic Inc. to third parties. Again it is not clear from the question or the answer given by the Judgment Debtor as to how answers might provide a link in the chain of potential prosecution nor is there any proof of pending or imminent investigation of this transaction by law enforcement officials. The Declaration of Irwin Schwartz submitted in camera has again been reviewed in relation to this question but the opinions and conclusions offered there, while discussing potential for links in a chain toward prosecution, does not show how the answers to how a transfer of ownership of interests in Prithvy Catalytic Inc. and identifying documents related thereto will result in prosecution. Without more, the Judgment Debtor's answers must be given in substance to each of these interrogatories with the exception of Interrogatories numbered 21 and 22. Interrogatories 21 and 22 seek to have the Judgment Debtor indicate whether the parties to the loan obtained permission from the Reserve Bank of India prior to transfer. It is clear from evidence provided by Satish Vuppalapati that no permission has been obtained. And it is not clear to the Referee why that information is sought as it does not appear to lead to discovery of assets that can be attached. Finally, it appears on the face of the question that an answer adverse to the interests of the respondent might lead to prosecution. Ms. Vuppalapati is excused from answering Interrogatory #21 and 22 under the Fifth Amendment to the US Constitution.

Interrogatory number 23 on its face and through reasonable judicial imagination, if answered contrary to her interests, could support a link in the chain of prosecution for income tax fraud. External circumstances demonstrate the potential for that concern. It is also not clear how an answer to that question will assist the Judgment Creditor in collection of its judgment. Ms.

Exhibit C 026

EXHIBIT 5
Page 7 of 9

Vuppalapati is excused from answering Interrogatory #23 under the Fifth Amendment to the US Constitution.

Interrogatories 24 and 25 seek to have the Respondent identify people who are related in specific ways to Koolstudent LLC and Cemetrix Inc. Again the Judgment Creditor fails to show how her answers to those interrogatories will result prosecution or that there is pending investigation regarding her involvement with those entities. Furthermore, the Judgment Creditor reminds us that Judge Spearman has already ruled that objections are limited to companies that Kyko alleges are fictitious and fraudulent. See Fifth Amendment Motion at 7. Agadia, Inc., PCI and Cemetrix are not fictitious entities. Furthermore, it appears that the Judgment Debtor was previously ordered in bankruptcy court to answer questions regarding the identity and contact information of shareholders. See Fifth Amendment Reply at 3. Therefore, the Judgment Debtor must answer questions as to those entities.

4.0 The Judgment Creditor has not documented its fees and costs. Therefore, fees and costs are reserved.

5.0 Ruling

5.1. The Judgment Debtor shall not be required to turn over remaining funds she previously brought into the United States because those funds are no longer in her control.

5.2. Likewise the Judgment Debtor is excused from delivering the sale proceeds from the Mini Cooper because those funds have been spent. However, the Judgment Debtor shall fulfill her offer to commence payment of $2000 per month toward that $10,000 obligation.

5.3. Prithvi Solutions shall turn over or surrender its right to possess any shares in Agadia Systems Ltd. and shall issue share certificates in the name of the Judgment Creditor to evidence compliance with this ruling.

5.4. The Judgment Creditor shall seek an Order to Show directing Ennar Energy Ltd to appear and Show Cause why it should not relinquish any right to ownership of Agadia Systems Ltd.

5.5. Ms. Vuppalapati shall deliver her 2012 and 2013 IRS 1040 forms and attachments as well as PISI tax forms now in her possession or upon later filing.

5.6. The Judgment Debtor shall deliver possession of the corporate vehicle to the sheriff and provide a list of her person valuables.

5.7. The Judgment Debtor shall not be required to divulge attorney-client confidences nor shall her attorneys be included as respondents to interrogatories beyond their role as counsel. With the exception of her Fifth Amendment objections (discussed below) the balance of the Judgment Debtor's objections are overruled and she shall deliver all documents and answer any interrogatories not otherwise excused herein.

5.8. Madhavi Vuppalapati, as a corporate officer, holds PSI corporate records in her representative capacity, not in her personal capacity. Her claim to Fifth Amendment protection on behalf of the corporation is denied and she shall produce all records on behalf of the corporation.

EXHIBIT 5
Page 8 of 9

5.9. Madhavi Vuppalapati is directed to answer Interrogatories 11, 12, 13 and 14.

5.10. Madhavi Vuppalapati shall answer each Interrogatory numbered 17, 18, 19, and 20.

5.11. Madhavi Vuppalapati is excused from answering Interrogatory #21 and #22 under the Fifth Amendment to the US Constitution.

5.12. Madhavi Vuppalapati is excused from answering Interrogatory #23 under the Fifth Amendment to the US Constitution.

5.13. Fees and costs in favor of the Judgment Creditor are reserved.

Dated this _____ day of August, 2014.

_____
Eric B. Watness, Commissioner (Ret.), Referee

9

Exhibit C 028

EXHIBIT 5
Page 9 of 9

# EXHIBIT 6

Exhibit C 029

1

2

3

4

5

6

7                    SUPERIOR COURT OF WASHINGTON FOR KING COUNTY

8    KYKO GLOBAL INC., a Canadian corporation
     and KYKO GLOBAL GMBH a Bahamian              Case No. 13-2-41165-2 SEA
9    corporation,
                                                  ORDER AFFIRMING REFEREE'S
10                    Judgment Creditors,          RULING ON MOTION FOR TURNOVER
                                                  OF PROPERTY
11        v.
                                                  [PROPOSED]
12   PRITHVI INFORMATION SOLUTIONS,
     LTD., et al.,
13
                      Judgment Debtors.
14

15              THIS MATTER having come on for determination through Judgment Debtor's

16   Notice of Appeal dated August 15, 2014, and the Court having reviewed the Appeal, Docket

17   Nos. 172-174, together with the Response from Judgment Creditors and Reply of Judgment

18   Debtors, together with the records and files herein and finding good cause, NOW,

19   THEREFORE:

20              IT IS HEREBY ORDERED that Judgment Debtors' Appeal is DENIED and the

21   August 8, 2014, ruling of the Referee is affirmed in all respects regarding the following rulings:

22              Section 5.3.  Prithvi Solutions shall turn over or surrender its right to possess any

23   shares in Agadia Systems Inc. and shall issue share certificates in the name of the Judgment

24   Creditor to evidence compliance with this ruling.

25

26

ORDER AFFIRMING REFEREE'S RULING ON MOTION FOR TURNOVER
OF PROPERTY - 1

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON  98101

SEADOCS:467992.2
558590-0001                      Exhibit C 030                    EXHIBIT 6
                                                                  Page 1 of 2

1        Section 5.4.  The Judgment Creditor shall seek an Order to Show directing Ennar

2 Energy Ltd to appear and Show Cause why it should not relinquish any right to ownership of

3 Agadia Systems Inc.

4        IT IS FURTHER ORDERED that Judgment Debtors shall comply with the terms

5 of this Order within five (5) days of the date of entry.  If Prithvi Solutions' shares in Agadia

6 Systems Inc. have not been transferred to Judgment Creditor within five days as required by

7 Judgment Debtors, the Court will issue Show Cause to Judgment Debtors for Contempt of Court

8 and appropriate sanctions.

9 _____

10 _____

11       DONE IN OPEN COURT THIS _5th_ day of ___Sept___, 2014.

12

13 _____

14       Mariane C. Spearman
      Chief Civil Judge

15 Presented by:

16 *s/ James T. Yand*
   John R. Knapp, Jr., WSB No. 29343

17    James T. Yand, WSB No. 18730
   MILLER NASH LLP

18    4400 Two Union Square
   601 Union Street

19    Seattle, WA 98101
   Phone:  (206) 622-8484

20    Fax:  (206) 622-7485
   E-mail:  john.knapp@millernash.com

21    E-mail:  james.yand@millernash.com

22    Attorneys for Judgment Creditors
   Kyko Global, Inc. and Kyko Global

23    GMBH

24

25

26

ORDER AFFIRMING REFEREE'S RULING ON MOTION FOR TURNOVER
OF PROPERTY - 2

MILLER NASH LLP
ATTORNEYS AT LAW
T: (206) 622-8484 | F: (206) 622-7485
4400 TWO UNION SQUARE
601 UNION STREET
SEATTLE, WASHINGTON 98101

# EXHIBIT 7

Exhibit C 032

1

2

3

4

5

Presented to the Court by the foreman of the
Grand Jury in open Court, in the presence of
the Grand Jury and FILED in the U.S.
DISTRICT COURT at Seattle, Washington.

_December 13_ 20_17_

WILLIAM M. McCOOL, Clerk

By _Emily Nero_ Deputy

6

7

8

9

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

UNITED STATES OF AMERICA,

Plaintiff,

**CR17-317 RSL**

No.

**INDICTMENT**

13

14

15

16

17

v.

MADHAVI VUPPALAPATI, SATISH
KUMAR VUPPALAPATI, SRINIVAS
SISTA, and GURU PRASAD RAO
PANDYAR,

Defendants.

18

19

The Grand Jury charges that:

20

21

**INTRODUCTION**

22

At all material times:

23

1.     MADHAVI VUPPALAPATI and SATISH KUMAR VUPPALAPATI are

24

a sister and brother team that owned, operated, and otherwise controlled a number of

25

companies, many of which were affiliated with a publically traded company in India

26

called Prithvi Information Solutions, Limited ("Prithvi").  Together with their co-

27

conspirators, MADHAVI and SATISH VUPPALAPATI orchestrated a factoring fraud

28

Indictment - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 033

EXHIBIT 7
Page 1 of 18

1  scheme that resulted in millions of dollars of loss to a company called Kyko Global, Inc.

2  During the scheme, MADHAVI VUPPALAPATI's primary residence was in Bellevue,

3  Washington. SATISH VUPPALAPATI resided in India but traveled to the United States

4  to facilitate the scheme.

5     2.     SRINIVAS SISTA was a full-time employee of various companies

6  affiliated with Prithvi.  During much of the fraud scheme, he worked in Bellevue,

7  Washington.

8     3.     GURU PRASAD RAO PANDYAR was another full-time employee of

9  various companies affiliated with Prithvi.  During much of the fraud scheme, GURU

10  PANDYAR worked in Bellevue, Washington.

11    4.     Prithvi Solutions, Inc. ("PSI") is a Delaware corporation registered to do

12  business in Washington.  MADHAVI VUPPALAPATI was the president of PSI.

13    5.     Prithvi Information Solutions International, LLC ("PISI") is a Pennsylvania

14  limited liability company registered to do business in Washington.  PISI's sole member

15  was MADHAVI VUPPALAPATI.

16    6.     Prithvi Catalytic, Inc. ("Prithvi Catalytic") is a Delaware corporation

17  registered to do business in Washington.   Prithvi Catalytic's principal place of business

18  was Bellevue, Washington.  MADHAVI VUPPALAPATI was the owner of Prithvi

19  Catalytic until 2014.

20    7.     Inalytix, Inc. ("Inalytix") is a Nevada corporation and its principal place of

21  business is located in Bellevue, Washington.  Inalytix's president and director was

22  MADHAVI VUPPALAPATI.

23    8.     International Business Solutions, Inc. ("IBS") is a North Carolina

24  corporation, under the control of MADHAVI and SATISH VUPPALAPATI.

25    9.     Avani Investments, Inc. ("Avani") is a Delaware corporation created by

26  GURU PANDYAR and his spouse.

27

28  Indictment - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 034

EXHIBIT 7
Page 2 of 18

10. Ananya Capital Inc. ("Ananya") is a Delaware corporation and registered to do business in Washington and with its principal place of business in Redmond, Washington. SRINIVAS SISTA was Ananya's agent, president and director.

11. Cemetrix, Inc., is a Washington company. MADHAVI VUPPALAPATI is the company's registered agent.

12. DCGS, Inc. ("DCGS") was created as a Pennsylvania corporation by MADHAVI VUPPALAPATI on or about June 1, 2012. The office address for DCGS, Inc. was a condominium in Pittsburgh owned by MADHAVI VUPPALAPATI.

13. EPP, Inc. ("EPP") was created as a Washington corporation by MADHAVI VUPPALAPATI on or about July 12, 2012. EPP's principal location was identified as a Bellevue address owned by a cousin of MADHAVI VUPPALAPATI, and its registered agent is MADHAVI VUPPALAPATI.

14. Financial Oxygen, Inc. ("Financial Oxygen") was created as a Washington corporation by SRINIVAS SISTA on or about May 1, 2012, and its principal place of business was SRINIVAS SISTA's home address in Redmond. SRINIVAS SISTA was Financial Oxygen's president and registered agent.

15. Huawei Latin American Solutions, Inc. ("Huawei") was created as a Florida corporation. On or about January 17, 2012, SRINIVAS SISTA registered Huawei to do business in Washington and indicated that the company's principal place of business was in Bellevue, Washington.

16. L3C, Inc. ("L3C") was created as a Washington corporation by GURU PANDYAR on July 13, 2012.

17. Kyko Global, Inc. ("Kyko") is a Canadian corporation with its principal place of business in Ontario, Canada. Kyko Global GmbH is a wholly-owned subsidiary of Kyko with its principal place of business in the Bahamas.

18. Among other financial services, Kyko provides accounts receivable factoring services. "Accounts receivable" is an accounting term signifying debts owed to

Indictment - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 035

EXHIBIT 7
Page 3 of 18

a company for services rendered.  An "accounts receivable factoring agreement" is an agreement between the company to which the receivables are owed, the company with the obligation to pay, and a third-party company.  The right to collect payment for the receivables is assigned to the third-party company, which in turn provides advance payment to the company to which the receivables were owed originally in return for a factoring fee.

## COUNTS 1-15

### (Wire Fraud)

**A.    The Scheme and Artifice to Defraud**

19.    The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 18 of this Indictment.

20.    Beginning on or around August 2011, and continuing until on or about July 2014, at Bellevue, within the Western District of Washington, and elsewhere, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, and others known and unknown to the grand jury, knowingly devised a scheme and artifice to defraud Kyko and to obtain money and property by means of materially-false and fraudulent pretenses, representations, and promises, and by means of the concealment of material facts.

21.    The essence of the scheme was for the defendants and their co-conspirators to fraudulently induce Kyko to enter factoring agreements under which the defendants would sell and assign nonexistent receivables to Kyko in return for payments under the factoring agreement.

**B.    The Manner and Means of the Scheme**

The manner and means used to accomplish the scheme to defraud included the following:

Indictment - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 036

EXHIBIT 7
Page 4 of 18

1    **1.    The Defendants Induce Kyko to Enter Into the Factoring Arrangement**

2    22.    In 2011, the defendants entered into negotiations with Kyko about the

3    possibility of Kyko providing accounts receivable factoring services to Prithvi.  During

4    the negotiations, MADHAVI and SATISH VUPPALAPATI represented to Kyko that

5    Prithvi was a successful and growing company that provided information technology

6    services to a number of customers in the United States.  MADHAVI and SATISH

7    VUPPALAPATI claimed that Prithvi had valuable accounts receivable with a number of

8    reputable clients.

9    23.    MADHAVI and SATISH VUPPALAPATI offered to assign accounts

10   receivable related to a number of well-known companies, including the following five

11   companies:  (1) Huawei, a global networking and telecommunications company;

12   (2) Financial Oxygen, a large U.S. financial services company; (3) DICK's Sporting

13   Goods, a national retailer with over 600 stores; (4) Enterprise Products Partners, a

14   publicly listed U.S. energy asset company; and (5) L3 Communications, a U.S. publicly

15   listed defense contractor.

16   24.    In truth and fact, these five companies either were not customers of Prithvi

17   or were not asked to approve the assignment of accounts receivable to Kyko.

18   Nevertheless, the defendants and their co-conspirators went to great lengths to create the

19   illusion that these companies had agreed to permit Prithvi to assign accounts receivable to

20   Kyko.  Among other things, the defendants created sham companies using abbreviated or

21   slightly different names of the actual businesses, and opened bank accounts under the

22   names of the sham companies.  The actual and sham companies corresponded as follows:

23

24

| Actual Company | Sham Company |
|---|---|
| DICK'S Sporting Goods, Inc. | DCGS, Inc. |
| Enterprise Products Partners, L.P. | EPP, Inc. |

25

26

27

28   Indictment - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 037

EXHIBIT 7
Page 5 of 18

| Financial Oxygen, Inc. (based in California) | Financial Oxygen, Inc. (based in Washington) |
|---|---|
| Huawei Investment & Holding Co. Ltd. | Huawei Latin American Solutions, Inc. |
| L-3 Communications Holdings, Inc. | L3C, Inc. |

25.     The defendants and their co-conspirators created fraudulent websites for the sham companies that duplicated information from the authentic company's website or redirected to the authentic company's website.  Members of the conspiracy even posed as employees of the sham companies using false identities and email accounts that were cleverly designed to appear like accounts belonging to the authentic companies.

26.     Deceived by this elaborate ruse, Kyko entered into three factoring agreements with Prithvi and its related entities (hereinafter, collectively, "the Prithvi companies").   SATISH VUPPALAPATI signed the first agreement in approximately September 2011 in his capacity as Managing Director of Prithvi.  On approximately November 21, 2011, GURU PANDYAR signed the two remaining contracts in his capacity as "AVP -- Operations & Accounts" for PISI and Prithvi Catalytic respectively.

27.     The agreements called for the Prithvi companies to assign certain accounts receivable to Kyko.  Under the agreements, as the Prithvi companies performed work, they would issue invoices to bill their purported customers for services rendered.  However, instead of sending the invoices directly to the purported customer, the Prithvi companies would send them to Kyko.  Kyko, in turn, would contact the purported customer on each invoice to confirm that the work was performed and that the invoice was legitimate.  After receiving confirmation of the invoice's legitimacy from the purported customer, Kyko would advance the Prithvi companies a portion of the accounts receivable.  Once the purported customer was ready to pay what it owed, the customer would pay Kyko directly.  On receipt of payment for the invoice, Kyko would remit the balance of the accounts receivable, minus the amount already advanced to the Prithvi

Indictment - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 038

EXHIBIT 7
Page 6 of 18

1  companies and minus a factoring fee. According to the agreement, the Prithvi companies

2  were liable for full payment of the accounts receivable to Kyko if the purported customer

3  failed to pay.

4       28.    In connection with the factoring agreements, the defendants executed a

5  number of documents including guarantees, security agreements, and checks, all to

6  induce Kyko into believing that Kyko would have a means to recover funds in the event

7  that one of the customers failed to pay on an invoice. For example, on or about

8  November 21, 2011, GURU PANDYAR executed guarantees on behalf of PISI and

9  Prithvi Catalytic that indemnified and guaranteed payment to Kyko. Similarly, on or

10 about December 2, 2011, MADHAVI and SATISH VUPPALAPATI executed separate

11 guarantees that personally guaranteed payment to Kyko. SATISH VUPPALAPATI

12 signed his guarantee as an "Individual residing in India." MADHAVI VUPPALAPATI

13 signed her guarantee as an "Individual residing in the State of Washington." Her

14 guarantee also indicated that it was signed, sealed and delivered in the presence of an

15 individual in Bellevue, Washington.

16      29.    The defendants took sophisticated steps to create the appearance that the

17 five sham customers had approved the assignment of the accounts receivable to Kyko.

18 For example, the defendants provided Kyko with letters of assignment that were

19 purportedly reviewed and agreed to by the sham customers. In truth and fact, the letters

20 were signed by members of the conspiracy posing as employees of the sham customers.

21      30.    To start the factoring process, the defendants sent Kyko invoices in which

22 the Prithvi companies purported to bill the five customers for services rendered. After

23 receiving the invoices, Kyko contacted the customers directly using the purported

24 customer email addresses provided by the defendants, to confirm the legitimacy of the

25 invoices. Then, the defendants, impersonating employees of the sham customers,

26 confirmed the invoices.

27

28 Indictment - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 039

EXHIBIT 7
Page 7 of 18

31.     On or about December 9, 2011, Kyko began advancing funds to the defendants under the factoring arrangement after Kyko received confirmation from the purported customers that the invoices subject to payment were legitimate.  To create the appearance that the sham customers were making payments on the invoices, the defendants transferred money received from Kyko to bank accounts for the sham businesses, and then made purported invoice payments to Kyko from those accounts.

**2.      Payments from the Five Sham Customers Cease**

32.     On or about February 12, 2013, payments to Kyko from the sham customers stopped.  At that time, the sham customers owed Kyko over $14 million in outstanding payments.

33.     When Kyko contacted the defendants about the delinquent payments, the defendants fraudulently explained that Prithvi was embroiled in a lawsuit with a Japanese corporation that had garnished Prithvi's bank accounts and assumed ownership of the five customer's receivables.  The defendants fraudulently assured Kyko that the matter would be resolved and that payments would resume soon.

**3.      Defendants Issue Fraudulent Guarantees to Continue the Scheme**

34.     To appease Kyko and to continue the fraud scheme, the defendants continued to issue fraudulent guarantees and to make false promises to Kyko.

35.     To further deceive Kyko into believing that it would receive payment, the defendants issued a number of fraudulent guarantees backed by numerous checks that Kyko purportedly could cash to satisfy any outstanding amounts owed.  For example, on about March 12, 2013, MADHAVI VUPPALAPATI issued to Kyko ten personal guarantee checks in the amount of $2,000,000 each for a total of $20,000,000.  On or about March 12, 2013, MADHAVI VUPPALAPATI also issued to Kyko the following guarantee checks to be issued on behalf of the following companies: (a) ten checks in the amount of $2,000,000 each for a total of $20,000,0000 from the bank account for Prithvi

Indictment - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 040

EXHIBIT 7
Page 8 of 18

1  Information Solutions, LLC; (b) ten checks in the amount of $2,000,000 each for a total

2  of $20,000,0000 on behalf of Prithvi; (c) ten checks in the amount of $2,000,000 each for

3  a total of $20,000,000 on behalf of Inalytix; (d) ten checks in the amount of $2,000,000

4  each for a total of $20,000,000 on behalf of Prithvi Catalytic; and (e) ten checks in the

5  amount of $2,000,000 each for a total of $20,000,000 on behalf of PSI. MADHAVI

6  VUPPALAPATI issued these checks knowing that Kyko would not be able to redeem

7  them because there was insufficient funds in the accounts on which they were drawn.

8        36.     In approximately March 2013, the defendants offered to replace the

9  overdue receivables owed by the five sham customers with other receivables owed to

10 Prithvi companies.  On or about March 29, 2013, the defendants issued and executed a

11 guarantee to Kyko that was binding on Prithvi Catalytic, PSI, PISI, Inalytix, IBS, Avani,

12 Ananya, MADHAVI VUPPALAPATI in an individual capacity, and SATISH

13 VUPPALAPATI in and individual capacity.  Among other things, the guarantee

14 identified approximately 46 customers that purportedly owed accounts receivable to

15 Prithvi Catalytic, PSI, PISI, Inalytix, IBS, Avani, and Ananya.  The defendants executed

16 numerous documents to assign these accounts receivable to Kyko and to guarantee

17 payment to Kyko.

### 4.     Kyko Discovers the Fraud

18

19

20       37.     Even after payments from the sham customers stopped, the defendants

21 repeatedly assured Kyko that the Prithvi companies had performed work for the original

22 five customers and the 46 new customers.  For example, on or about April 24, 2013,

23 despite knowing fully that the original five customers were sham entities created solely to

24 deceive Kyko, MADHAVI VUPPALAPATI executed a declaration at Kyko's request in

25 Redmond, Washington under penalty of perjury, that averred that Prithvi had performed

26 work for the original five customers, and that the accounts receivable related to that work

27 were owed to Kyko.  The declaration attached and incorporated schedules purporting to

28 Indictment - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 041                                                    EXHIBIT 7
                                                               Page 9 of 18

1    show the receivables that the sham customers owed.  On or about April 26, 2013,

2    SATISH VUPPALAPATI, executed a similar declaration in India.

3        38.      Unbeknownst to the defendants, Kyko contacted the actual companies that

4    were purportedly Prithvi customers.  Through its investigation of these companies, Kyko

5    discovered that the defendants and their co-conspirators had created sham companies to

6    impersonate the companies.

7        39.      On June 17, 2013, Kyko filed a lawsuit in the Western District of

8    Washington against the defendants and businesses used to perpetrate the factoring fraud

9    scheme.  To frustrate Kyko's attempts to recover assets, MADHAVI and SATISH

10   VUPPALAPATI continued to made false promises and representations to Kyko.  In

11   particular, MADHAVI and SATISH VUPPALAPATI made false promises to repay

12   Kyko and offered to assign additional accounts receivable to Kyko.

13   **C.**     **Execution of the Scheme to Defraud**

14        40.      On or about the below-listed dates, at Bellevue and Redmond, within the

15   Western District of Washington and elsewhere, MADHAVI VUPPALAPATI, SATISH

16   VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, and others known and

17   unknown to the grand jury, for the purpose of executing the aforementioned scheme and

18   artifice to defraud and to obtain money by means of false and fraudulent pretenses,

19   representations, promises and concealment of material facts, and attempting to do so, did

20   knowingly and intentionally cause to be transmitted, in interstate commerce by means of

21   a wire communication, certain signs, signals, and sounds, as described below, each

22   transmission of which constitutes a separate count of this Indictment.

| Count | Date | Wire |
|-------|------|------|
| 1. | 12/21/2012 | Email from "Tanu Gupta" to Kyko and GURU PANDYAR regarding "Confirmation of Invoices." |

28   Indictment - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 042

EXHIBIT 7
Page 10 of 18

| 2. | 12/21/2012 | Email from "Alves Oilveira" to Kyko and GURU PANDYAR regarding "Confirmation of Invoices." |
|---|---|---|
| 3. | 12/27/2012 | Wire transfer of $779,382 from Huawei Latin American Solutions, Inc. in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 4. | 1/3/2013 | Email from "Aravind Kumar" to Kyko and GURU PANDYAR regarding "Confirmation of Invoices." |
| 5. | 1/4/2013 | Wire transfer of $218,719 from EPP, Inc. in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 6. | 1/23/2013 | Email from GURU PANDYAR to Kyko and SATISH VUPPALAPATI regarding "Overdue Amounts of Prithvi Customers." |
| 7. | 1/23/2013 | Email from "Tanu Gupta" to Kyko and GURU PANDYAR regarding "Confirmation of Invoice." |
| 8. | 1/24/2013 | Wire transfer of $216,711 from EPP, Inc. in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 9. | 1/24/2013 | Wire transfer of $260,125 from Financial Oxygen, Inc. in Redmond, WA to Kyko's account at the National Bank of Canada. |
| 10. | 2/8/2013 | Wire transfer of $260,125 from Financial Oxygen, Inc. in Redmond, WA to Kyko's account at the National Bank of Canada. |

Indictment - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 043

EXHIBIT 7
Page 11 of 18

| 11. | 2/11/2013 | Wire transfer of $232,525 from L3C, Inc in Bellevue, WA to Kyko's account at the National Bank of Canada. |
|-----|-----------|----------------------------------------------------------------------------------------------------------|
| 12. | 2/12/2013 | Wire transfer of $236,510 from L3C, Inc in Bellevue, WA to Kyko's account at the National Bank of Canada. |
| 13. | 2/13/2013 | Email from GURU PANDYAR to Kyko and SATISH VUPPALAPATI regarding "Prithvi Outstanding over 140 & 135 days." |
| 14. | 4/16/2013 | Email from GURU PANDYAR to Kyko and SATISH and MADHAVI VUPPALAPATI regarding "Kyko Checks" |
| 15. | 4/24/2013 | Email from GURU PANDYAR to Kyko and SATISH and MADHAVI VUPPALAPATI regarding "Affidavits" |

All in violation of Title 18, United States Code, Section 1343.

## COUNTS 16 - 20

### (Willfully Failing to Pay Over Employment Taxes)

41.     The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 39 of this Indictment.

42.     At all times relevant to this indictment, Prithvi Catalytic was a corporation doing business in Bellevue, Washington.  Prithvi Catalytic was in the business of providing professional consulting services and workforce solutions.

Indictment - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 044

EXHIBIT 7
Page 12 of 18

43.     Beginning in or about 2010, and continuing until on or about September, 2013, defendant MADHAVI VUPPALAPATI acted as Prithvi Catalytic's general manager.  MADHAVI VUPPALAPATI made business decisions for the company.  She controlled Prithvi Catalytic's business affairs, approved payments by the company, and controlled Prithvi Catalytic's bank accounts.

44.     During the third quarter of 2012 through third quarter of 2013, defendant MADHAVI caused Prithvi Catalytic to transfer funds to Prithvi Information Systems Limited, a separate company for which MADHAVI VUPPALAPATI was the Chairperson and Director, at the same time, failing to pay over to the Internal Revenue Service payroll tax withheld from Prithvi Catalytic's employees' paychecks.  Prithvi Information Systems used the funds, in some cases, for day-to-day operations and payments made to MADHAVI VUPPALAPATI.

### Employment Tax Withholding

45.     At all times relevant to this Indictment, Prithvi Catalytic withheld taxes from its employees' paychecks, including federal income taxes, Medicare and social security taxes (often referred to as Federal Insurance Contribution Act or "FICA" taxes). These taxes will be referred to in this Indictment collectively as "payroll taxes."

46.     Prithvi Catalytic was required to make deposits of the payroll taxes to the Internal Revenue Service on a periodic basis.  In addition, Prithvi Catalytic was required to file, following the end of each calendar quarter, an Employer's Quarterly Federal Income Tax Return (Form 941), setting forth the total amount of wages and other compensation subject to withholding, the total amount of income tax withheld, the total amount of social security and Medicare taxes due, and the total tax deposits.

47.     As the owner of Prithvi Catalytic, defendant MADHAVI VUPPALAPATI was a "responsible person," that is, she had the corporate responsibility to collect, truthfully account for, and pay over Prithvi Catalytic's payroll taxes.

Indictment - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 045

EXHIBIT 7
Page 13 of 18

48.     Throughout the calendar years 2012 and 2013, Prithvi Catalytic withheld tax payments from its employees' paychecks.  However, beginning in approximately July 2012, Prithvi Catalyticmade no payments to the Internal Revenue Service, which were due by the following Wednesday or Friday after employees were paid.

49.     Beginning in the third quarter of 2012, Prithvi Catalytic further failed to file quarterly employment tax returns (Forms 941) with the Internal Revenue Service. Each Form 941 was due to be filed at the end of the month following the end of each calendar quarter.  For example, the Form 941 for the third quarter of 2012 was due on or before July 31, 2012, because the third calendar quarter ended on June 30, 2012.

50.     Altogether, during the five calendar quarters alleged in Counts 16 through 20 of this Indictment, Prithvi Catalytic failed to account for and pay over approximately $3,897,873.72 in payroll taxes.

### Failure to Account For and Pay Over Employment Tax

51.     For tax years 2012 and 2013, defendant MADHAVI VUPPALAPATI did willfully fail to truthfully account for and pay over to the Internal Revenue Service all of the federal income taxes withheld and Federal Insurance Contribution Act taxes due and owing to the United States on behalf of Prithvi Catalytic and its employees, for each of the following quarters, with each calendar quarter constituting a separate count of this Indictment:

| Count | Quarter | Amount |
|:-----:|:-------:|:------:|
| 16 | Third Quarter of 2012 | $746,893.11 |
| 17 | Fourth Quarter of 2012 | $867,482.63 |
| 18 | First Quarter of 2013 | $866,610.26 |
| 19 | Second Quarter of 2013 | $463,882.00 |
| 20 | Third Quarter of 2013 | $953,005.72 |

All in violation of Title 26, United States Code, Section 7202.

Indictment - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 046

EXHIBIT 7
Page 14 of 18

## COUNT 21

### (Money Laundering Conspiracy)

52. The Grand Jury realleges and incorporates, as if fully set forth herein, Paragraphs 1 - 51 of this Indictment.

53. Beginning on or around August 2011, and continuing until on or about July 2014, at Bellevue, within the Western District of Washington, and elsewhere, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR, and others known and unknown to the grand jury, did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956 and Section 1957, to wit:

a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the

Indictment - 15

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 047

EXHIBIT 7
Page 15 of 18

1 | nature, location, source, ownership, and control of the proceeds of specified unlawful

2 | activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

3 |        c.      to knowingly engage and attempt to engage, in monetary

4 | transactions by, through or to a financial institution, affecting interstate and foreign

5 | commerce, in criminally derived property of a value greater than $10,000, such property

6 | having been derived from a specified unlawful activity, that is, wire fraud, in violation of

7 | Title 18, United States Code, Section 1343, in violation of Title 18, United States Code,

8 | Section 1957.

9 |      All in violation of Title 18, United States Code, Section 1956(h).

10 |

11 | **FORFEITURE ALLEGATION**

12 | **Wire Fraud**

13 |     54.    The Grand Jury realleges and incorporates, as if fully set forth herein,

14 | Paragraphs 1 - 53 of this Indictment, for the purpose of alleging forfeitures pursuant to

15 | Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code,

16 | Section 2461(c).

17 |     55.    Upon conviction of the offenses in violation of Title 18, United States

18 | Code, Section 1343 set forth in Counts 1-15 of this Indictment, the defendants,

19 | MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU

20 | PANDYAR, shall forfeit to the United States of America, pursuant to Title 18, United

21 | States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any

22 | property, real or personal, which constitutes or is derived from proceeds traceable to the

23 | offenses.  The property to be forfeited includes, but is not limited to, a money judgment

24 | in the amount of $14,424,074.50, representing a portion of the proceeds obtained by the

25 | offences.

26 |

27 |

28 | Indictment - 16

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 048

EXHIBIT 7
Page 16 of 18

1 | **Money Laundering Conspiracy**

2      56.    The Grand Jury realleges and incorporates, as if fully set forth herein,

3 Paragraphs 1 - 53 of this Indictment, for the purpose of alleging forfeitures pursuant to

4 Title 18, United States Code, Sections 982(a)(1).

5      57.    Upon conviction of the offenses in violation of Title 18, United States

6 Code, Section 1956(h), as set forth in Count 26, the defendants, MADHAVI

7 VUPPALAPATI, SATISH VUPPALAPATI, SRINIVAS SISTA, GURU PANDYAR,

8 shall forfeit to the United States of America, pursuant to Title 18, United States Code,

9 Section 982(a)(1), any property, real or personal, involved in such offense, and any

10 property traceable to such property.

11 | **Substitute Assets**

12      58.    If any of the property described above, as a result of any act or omission of

13 the defendants:

14        a.    cannot be located upon the exercise of due diligence;

15        b.    has been transferred or sold to, or deposited with, a third party;

16        c.    has been placed beyond the jurisdiction of the court;

17        d.    has been substantially diminished in value; or

18        e.    has been commingled with other property which cannot be divided

19           without difficulty,

20

21 //

22

23 //

24

25

26

27

28 Indictment - 17

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 049

EXHIBIT 7
Page 17 of 18

1   the United States of America shall be entitled to forfeiture of substitute property pursuant

2   to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States

3   Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c).

4

5                                        A TRUE BILL:

6                                        DATED:    12·13·17

7                                        *Signature of Foreperson Redacted Per*
                                         *Policy of Judicial Conference*
8

9                                        _____
                                         FOREPERSON
10

11

12

13   ANNETTE L. HAYES
14   United States Attorney

15

16

17   ANDREW C. FRIEDMAN
18   Assistant United States Attorney

19

20

21   FRANCIS FRANZE-NAKAMURA
22   Assistant United States Attorney

23

24

25

26

27

28   Indictment - 18

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Exhibit C 050

EXHIBIT 7
Page 18 of 18