# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

KYKO GLOBAL, INC., a Canadian
corporation, KYKO GLOBAL GmbH, a
Bahamian corporation, PRITHVI
SOLUTIONS, INC., a Delaware Corporation,

      *Plaintiffs*,

      v.

PRITHVI INFORMATION SOLUTIONS,
LTD, an Indian corporation, VALUE TEAM
CORPORATION, a British Virgin Islands
corporation, SSG CAPITAL PARTNERS I,
L.P., a Cayman Islands Limited Partnership,
SSG CAPITAL MANAGEMENT (HONG
KONG) LIMITED, a private Hong Kong
company, MADHAVI VUPPALAPATI, an
individual, ANANDHAN JAYARAMAN, an
Individual, SHYAM MAHESHWARI, an
individual, IRA SYAVITRI NOOR A/K/A
IRA NOOR VOURLOUMIS, an individual,
DINESH GOEL, an individual, WONG
CHING HIM a/k/a Edwin Wong, an
individual, ANDREAS VOURLOUMIS, an
individual, PRITHVI ASIA SOLUTIONS
LIMITED, a Hong Kong company,

      *Defendants*.

Civil Action No. 2:18-cv-01290-WSS

*Electronically Filed*

## SSG DEFENDANTS' SUPPLEMENTAL BRIEF REGARDING KYKO'S ALLEGED OWNERSHIP OF PSI AND STANDING TO BRING THIS ACTION

**INTRODUCTION**

The SSG Defendants[1] have raised one essential threshold question: has Kyko[2] satisfied its burden of proof to show that it owns Prithvi Solutions, Inc. ("PSI"), or has authority to act on PSI's behalf, such that Kyko has valid standing to sue as, and on behalf of, PSI?

Kyko bears the burden to prove affirmatively with competent evidence that it is the controlling shareholder of and has authority to file lawsuits as PSI. If Kyko has no such ownership *and* authority, it lacks standing and PSI is not a valid plaintiff. *See Gateway Estates, Inc. v. New Castle Cty.*, No. N13C-07-307, 2015 WL 13145613, at *15–16 (Del. Super. Ct. Sept. 29, 2015) (plaintiff corporation lacked standing because purported corporate representative had "not adequately demonstrated that he ha[d] an interest in [the company] that would authorize him to commence [an] action on behalf of [it]").

Kyko has failed to meet its burden. It has presented no evidence to prove its alleged ownership. The only relevant record evidence shows that Prithvi Information Solutions Ltd ("PISL") owned PSI in 2010. Ex. 1 (Register of Members); *see also* Compl. ¶¶ 100, 119. After that, the ownership of PSI is open to significant questions. In 2013, Sojitz Corporation filed and served a writ of attachment to obtain PSI's shares. ECF 179-3 at 16. Madhavi Vuppalapati later stated that the shares were in fact turned over to Sojitz in 2013, ECF No. 179-5 at 5. In February 2017, a referee in Washington purported to order PISL to turn over its shares in PSI to Kyko Global GmbH, but also noted Madhavi's statement about Sojitz and disclaimed that he could actually determine any party's ownership. *See* ECF 179-5 at 5–6. Then, over a year *after* obtaining the referee's order in Washington, Kyko sought a writ of attachment in Delaware "to

———————————
[1] The "SSG Defendants" include only SSG Capital Partners I, L.P., SSG Capital Management (Hong Kong) Ltd., Edwin Wong, Andreas Vourloumis, Shyam Maheshwari, Dinesh Goel, and Ira Syavitri Noor.

[2] Except as noted, "Kyko" refers to both Kyko Global, Inc. and Kyko Global GmbH.

attach the stock of Prithvi Solutions, Inc., a Delaware corporation, *owned by Prithvi Information Solutions Ltd.*" ECF No. 183-7 at 16–17 (emphasis added). Kyko did not even wait for that writ to issue before filing this case. *See id.*

At the August 19 Status Conference on this issue (the "Status Conference"), Plaintiffs' counsel clarified Kyko's position, asserting repeatedly that Kyko's claim to PSI rests solely on the February 2017 Washington referee order. There are numerous problems with this contention, including that the Washington referee had no authority under Washington law to order any direct turnover of shares, and that the referee's order was never adopted or confirmed by the Washington Superior Court. Nor did the referee follow any of the statutory procedures to satisfy a judgment debt through the sale of property.

Kyko's actions over the last few years also bely its own position: *after* the referee's order was docketed on May 2, 2018, Kyko went to Delaware to try and obtain PSI's shares, asserting to the court there that the shares were *still* "owned by Prithvi Information Solutions, Ltd." ECF 183-7 at 16–17. At the Status Conference, Mr. Macyda conceded that Kyko's attachment failed, explaining that PSI's certificated shares were in India and not in Kyko's possession. And, despite relying on the referee's putative share-turnover order, which requested transfer of PSI's shares to only "Kyko Global GmbH," ECF 179-5 at 3, Plaintiffs' counsel declared last week to the Third Circuit that PSI's sole parent company is "Kyko Global, Inc." *See* Ex. 2 (PSI Disclosure).

In short, who owns PSI is an open question. Kyko has not produced PSI's certificated shares, nor any evidence to show that it validly obtained and owns the shares. Kyko instead relies solely on a legally void and ineffective Washington referee order. Additionally, within just the last few years, Kyko has advanced contradictory positions on this question before several different courts, contending, in order, that PSI was variously owned: (1) by PISL (pre-2017),

ECF 179-5 at 3; (2) then by Kyko Global GmbH (February 2017), *id.*; (3) then by PISL again (July 11 through September 11, 2018), ECF 183-3 at 16–17; (4) then by *both* Kyko entities (September 26, 2018), ECF 1 ¶¶ 2, 4; (5) then by PISL a third time (October through December 2018), ECF 183-3 at 17, Ex. 8; (6) then by Kyko Global GmbH (at the Status Conference, citing ECF 179-5); and (7) now by only Kyko Global, Inc., Ex. 2. None of these assertions is based on evidence—just Kyko's *ipse dixit*. Given this dearth of proof, the Court has sufficient grounds to dismiss PSI from the case based on the current record. Alternatively, the Court should hold an evidentiary hearing to determine whether Kyko can meet its burden to establish standing.

## BACKGROUND

I.     **PSI before 2017: PISL owns PSI's shares; Sojitz files a writ of attachment.**

PSI was incorporated in Delaware on June 27, 2007, as a wholly owned subsidiary of PISL. ECF 1 at ¶ 100; ECF 109-6 at 7. On March 16, 2010, PSI filed its last annual report. ECF No. 109-6 at 8. In that annual report, PSI named Madhavi Vuppalapati as CEO, the only officer, and identified no directors. *Id.* As of September 8, 2010, all of PSI's shares were owned solely by PISL. *See* Ex. 1.[3]

On April 4, 2013, Sojitz Corporation initiated writ-of-attachment proceedings in Delaware under 8 Del. C. § 324 to obtain the stock of PSI pursuant to PISL's remaining judgment debt from an arbitration award to Sojitz. ECF 179-3 at 7. PSI's registered agent in Delaware was served with Sojitz's writ of attachment in May 2013. ECF 179-3 at 16. Madhavi Vuppalapati later said that, pursuant to Sojitz's attachment, PSI's shares were in fact turned over to Sojitz. ECF 179-5 at 5. Kyko says that Madhavi "simply lied." ECF 183 at 5. Yet it appears that Madhavi's statements were perhaps true. *See* Ex. 9 (Ginsberg Aff.) at Exs. A, F, G, H.

---

[3] The Register of Members attached as Exhibit 1 was provided to Kyko during jurisdictional discovery at Bates SSG00064.

**II.     The Washington cases:  Kyko's attempt to procure PSI's shares.**

In June 2013, Kyko filed various fraud claims—completely unrelated to the claims at issue here—against Prithvi parties, including PISL and PSI, in federal court in Washington.  *See Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. 13-cv-1034 (W.D. Wash.).  After obtaining an interim judgment against PSI, PISL, and others pursuant to a breached settlement agreement (ECF 183-3 at 6), Kyko filed a supplemental proceeding in the King County Superior Court to enforce the federal judgment against the Prithvi debtors, including PISL and PSI.  *See Kyko Glob., Inc. v. Prithvi Info. Sols., Ltd.*, No. 13-2-41165-2-SEA (Wash. King Cty. Super. Ct.).

Kyko moved there for appointment of a referee "to address the scheduling, attendance and ruling on objections, in the same manner as would follow for a deposition."  Ex. 3 at 8 (Referee Mot.).  When the Prithvi parties objected, Kyko asserted that the referee's role would be *solely administrative*—the referee would still have to "bring rulings to [the superior] court for review."  *See* Ex. 4 at 4 (Referee Reply) ("The referee can direct where examinations will take place and for how long, rule on objections and address the production of records and only bring rulings to this court for review after the facts and issues have been fully considered and ruled upon by the referee.").  The superior court granted Kyko's motion and appointed Mr. Eric Watness as referee "under RCW 6.32.010 for future exams to attend and rule on objections on future proceedings to be held in the same matter as a deposition.  The referee will have all the powers set forth in RCW 6.32 and the Court Rules to rule on objections and to schedule supplemental proceedings in the same manner as depositions."  Ex. 5 (Referee Order).

Mr. Watness later requested clarification of his authority—in particular, whether he had authority to order turnover of property, because "the statute [Wash. Rev. Code § 6.32.080] does not specifically authorize the Referee to require turning over property."  *See* Ex. 6 at 2–3 (Referee Report).  In response, the court purported to delegate Mr. Watness limited power:

The referee's power shall include the authority to order that the judgment debtor turn over to plaintiff the proceeds from the sale of personal property pursuant to RCW 6.32.080. Any appeal from an order of the referee shall be filed with this court within 5 days of the referee's order.

Ex. 7 at 2 (Referee Clarification).

Three years later, in February 2017, Mr. Watness adopted a proposed "order" submitted by Kyko relating to PSI's shares. *See* ECF 179-5. Kyko's proposed order had asserted unconditionally that "PISL owns all of the issued and outstanding shares in the capital of Judgment Debtor PSI," but Mr. Watness explained in "Supplemental Findings" that Madhavi told him via email that PSI's shares had already been turned over to Sojitz "pursuant to a Writ of Attachment" in Sojitz's Delaware case. *Id.* at 3, 5. Mr. Watness never decided who owned the shares, asserting that "any conflict over the rights to ownership of [PSI's] shares cannot be adjudicated here" and that ownership interests would have to be "resolved separately between Kyko Global Inc., et al, and Sojitz Corporation." *Id.* at 5. But Mr. Watness then ostensibly ordered "PISL … to turn over or surrender its right to possess any shares in PSI" to Kyko Global GmbH, and that "Kyko Global GmbH shall be entitled to exercise all rights as sole shareholder of PSI." *Id.* at 3. Mr. Watness's putative order also stated that, if "Kyko Global GmbH decides to retain the Shares, it shall provide the Referee with a valuation thereof within twelve (12) months of the ruling so that appropriate credit may be applied to the Final Judgment." *Id.*

Just over a year later, Mr. Watness signed another proposed order from Kyko, noting that Kyko had "elected to retain the shares and ha[d] provided evidence which demonstrate[d] that the shares [had] a total par value of $10.00." ECF 183-6 at 3. Mr. Watness thus ordered that $10 be deducted from the Prithvi parties' judgment debt, representing the value of PSI which supposedly had been transferred to Kyko Global GmbH. *Id.* Mr. Watness added two handwritten notes. First, he noted that his order was essentially ex parte because the Prithvi

parties had not submitted a response. *Id.* Second, Mr. Watness noted that his "ruling" could then "be confirmed by the Superior Court." *Id.*

These putative orders, although signed in February 2017 and April 2018, were not docketed in the Superior Court until May 2, 2018. *See* ECF 179-5 at 2; 183-7 at 8. Neither putative order was ever adopted or confirmed by the Superior Court by motion or otherwise.

## III. Kyko's 2018 Delaware writ of attachment.

On July 11, 2018—over a year after Mr. Watness ordered the turnover of PSI's shares and months after Mr. Watness's putative orders were docketed—Kyko initiated a writ-of-attachment proceeding in Delaware seeking to obtain PSI's shares. *See* ECF 183-7. Although Kyko now claims that, "effective February 16, 2017, Kyko became sole owner of PSI's stock," ECF No. 183 at 4, its September 11, 2018 Praecipe for Issuance of Writ of Attachment asserted that PSI's shares were then still "owned by Prithvi Information Solutions Ltd."

> PLEASE ISSUE a Writ of Attachment *fi. fa.* to the Sheriff of New Castle County to attach the stock of Prithvi Solutions, Inc., a Delaware corporation, **owned by Prithvi Information Solutions Ltd**….

ECF No. 183-7 at 16 (emphasis added). The writ of attachment served on PSI's registered agent likewise asserted that PSI's stock was "owned by Prithvi Information Solutions Ltd." *Id.* at 17. Kyko's requested writ did not issue until October 27, 2018, a month *after* Kyko had filed this action.[4] *Id.* at 15. Thus, while Kyko was asserting in this Court that "Kyko is a controlling shareholder of PSI," ECF 1 at ¶ 4, it was contemporaneously alleging in Delaware that PSI's stock was still "owned by [PISL]," ECF No 183-7 at 16–17.

## ARGUMENT

Kyko has purported to file suit as PSI. The question before the Court is whether Kyko

---

[4] The last docket entry in Kyko's writ-of-attachment proceeding, which Kyko omitted, is the Sheriff's return of the writ, dated December 6, 2018. *See* Ex. 8.

has standing to do that—*i.e.*, does Kyko validly own PSI such that it can file a lawsuit in PSI's name? Kyko bears the burden of proof. But Kyko has not proved its ownership with any competent evidence. And the "orders" of the Washington referee do not establish valid ownership. Because Kyko has not proven its standing, the Court should either simply dismiss PSI as a Plaintiff or hold an evidentiary hearing to resolve the issue.

## I. Kyko must prove it has standing to bring claims as PSI.

### A. Kyko's claim of ownership of PSI is a threshold issue of standing.

"The doctrine [of standing] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Without a clear ownership interest in a corporation, a person cannot file claims as, or on behalf of, the corporation. *Meredith v. The Ionian Trader*, 279 F.2d 471, 473–74 (2d Cir. 1960) ("A suit initiated without authority from the party named as plaintiff is a nullity and any judgment obtained in such a suit is void."); *Peninsula Prop. Owners Ass'n, Inc. v. Crescent Res., LLC*, 614 S.E.2d 351, 356 (N.C. Ct. App. 2005) (unauthorized litigation on behalf of corporation meant that plaintiff "lacked the authority to commence legal proceedings against [defendant] and does not possess standing" and that "[w]ithout standing, the trial court could not exercise subject matter jurisdiction over its claims"); *Cmty. Collaborative of Bridgeport, Inc. v. Ganim*, 698 A.2d 245, 252 (Conn. 1997) (claims dismissed based on "lack of standing" because person filing suit in the name of corporation "did not have the authority to initiate this action"); *Developmental Disabilities Advocacy Ctr., Inc. v. Melton*, 521 F. Supp. 365, 372 (D.N.H. 1981) (advocacy group "who purport[ed] to represent … named plaintiffs … lack[ed] standing" because the group failed to "receiv[e] authority from the purported client"). The SSG

Defendants, for instance, do not have standing to bring claims on behalf of Kyko.[5]

*Gateway Estates* is instructive. The court there dismissed a corporate plaintiff for lack of standing because the person filing the claim for the corporation had "not adequately demonstrated that he ha[d] an interest in [the corporation] that would authorize him to commence this action on behalf of [it]." *Gateway Estates*, 2015 WL 13145613, at *15–16. The court held that the plaintiff lacked "standing to instigate and pursue the instant litigation on behalf of" the corporation and thus dismissed its claims, even though the person purporting to represent it had filed a certificate of revival—just as Kyko has done here. *Id.* at *15.

This issue often arises in the analogous context of shareholder derivative suits, where a shareholder must prove and maintain a valid interest in a company to sue on behalf of it. *See Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 349, 354–55 (Del. 1988) (since plaintiff "ceased to be a shareholder," "plaintiff has lost standing to pursue the … claims against the defendants"). Similarly, courts dismiss bankruptcy petitions filed without clear authority to act for a corporation. *See Price v. Gurney*, 324 U.S. 100, 106–07 (1945) ("If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority … to institute the proceedings, it has no alternative but to dismiss the petition.").[6]

_____

[5] Under the standing elements, if PSI is not a valid plaintiff in this case, then it cannot allege "injury-in-fact"—"the invasion of a concrete and particularized legally protected interest" resulting in harm "that is actual or imminent, not conjectural or hypothetical." *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) (internal marks omitted). It would also be impossible to "establish" that "the alleged injury will be redressed by a favorable decision." *Id.* at 193–94.

[6] *See also In re Nica Holdings, Inc.*, 810 F.3d 781, 791 (11th Cir. 2015) (dismissing bankruptcy petition where person filing "had no such authority" to file); *In re Telluride Income Growth Ltd. P'ship*, 311 B.R. 585, 591 (Bankr. D. Colo. 2004) ("When a petition is filed by a person without authority to act, the case should be dismissed."); *In re Moni-Stat, Inc.*, 84 B.R. 756, 757 (Bankr. D. Kan. 1988) ("Helena Brown Coles had *no* authority … to initially file a voluntary bankruptcy petition on behalf of the corporation. As such, this case must be dismissed[.]"); *In re Cmty. Book Co.*, 10 F.2d 616, 616, 617 (D. Minn. 1926) (dismissing unauthorized bankruptcy petition as "ineffectual for any purpose"); *In re Arkco Properties, Inc.*, 207 B.R. 624, 631 (Bankr. E.D. Ark. 1997).

These rules also govern attorneys purporting to represent parties without authority. *See SEI Corp. v. Norton & Co.*, 631 F. Supp. 497, 501 (E.D. Pa. 1986) ("[N]o person has the right to appear as another's attorney without the other's authority." (citing *Pueblo of Santa Rosa v. Fall*, 273 U.S. 315 (1927))). "It is hornbook law that no person has the right to appear as attorney for another without first receiving authority from the purported client." *Melton*, 521 F. Supp. at 372; *Maiz v. Virani*, 311 F.3d 334, 341 n.5 (5th Cir. 2002).

**B.      Kyko bears the burden of proof to establish its standing with evidence.**

Standing is a threshold matter to be decided before a case proceeds to the merits. *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016) ("A federal court's obligation to assure itself that it has subject matter jurisdiction over a claim is antecedent to its power to reach the merits of that claim." (footnotes omitted)). Accordingly, if Kyko "do[es] not possess Article III standing," this Court "lack[s] subject matter jurisdiction to address the merits of plaintiffs' case." *ACLU-NJ v. Twp. of Wall*, 246 F.3d 258, 261 (3d Cir. 2001).

It is well settled that "Plaintiffs bear the burden of proving standing." *Storino v. Borough of Point Pleasant Beach*, 322 F.3d 293, 296 (3d Cir. 2003) (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992)). "Plaintiffs must carry that burden … with the manner and degree of evidence required at successive stages of the litigation." *Twp. of Wall*, 246 F.3d at 261 (citing *Lujan*, 504 U.S. at 561); *see also* 13B Fed. Prac. & Proc. Juris. § 3531.15 (3d ed.) ("Adequate pleading is not enough. If the facts are disputed, the plaintiff has the burden of proving standing.").

The Court may and should consider evidence to determine Kyko's standing. *Doherty v. Rutgers Sch. of Law-Newark*, 651 F.2d 893, 896 (3d Cir. 1981) (no standing where "[t]he material facts … were presented by [defendant] in various affidavits and exhibits in support of its motion to dismiss the complaint" and plaintiff "submitted no responsive affidavits or other

evidence, so the essential facts are uncontroverted"); *see Warth v. Seldin*, 422 U.S. 490, 501–02 (1975). "The district court may also hold an evidentiary hearing to determine standing." *Warnock v. Nat'l Football League*, 356 F. Supp. 2d 535, 539 (W.D. Pa. 2005), *aff'd,* 154 F. App'x 291 (3d Cir. 2005) (citation omitted). And the Court may order a hearing to ensure that Mr. Macyda and Mr. Rodkey have real authority to represent PSI. *See F. Palicio y Compania, S. A. v. Brush*, 256 F. Supp. 481, 485 (S.D.N.Y. 1966) ("At any stage of a case the court has inherent power to make inquiry as to the authority of an attorney to represent a litigant.").

### C.     Kyko's standing to sue is distinct from the validity of its corporate revival.

Whether Kyko has authority to assert claims as PSI is a separate issue from whether the SSG Defendants may challenge PSI's purported revival under Delaware law.[7] Again, *Gateway Estates* is instructive. The plaintiff corporation there, Gateway, had been revived by a man, Brendan Simison, purporting to act "as the alleged sole remaining shareholder [of Gateway] to elect himself the sole director and then, as sole director, to elect himself President, Secretary, and Treasurer of Gateway." *Gateway Estates*, 2015 WL 13145613, at *5. In response to the defendants' standing challenge, Simison argued—as Kyko has here—that the defendants "cannot allege lack of standing," that a revived corporation "is vested with all the same rights as if the corporation had never fallen into dormancy," and that "defendants are precluded from alleging any deficiencies in the corporate revival." *Id.* at *8.

The Delaware Superior Court rejected this argument, correctly distinguishing between authority to revive a corporation's charter and standing to litigate:

> [T]he validity of Simison's revival of Gateway is a separate question from whether Simison has authority to act on behalf of Gateway. [W]hile the defendants cannot

---

[7] To be clear, the SSG Defendants do not challenge here PSI's charter, nor the effects of revival under Delaware law. Nevertheless, PSI's revival cannot cure Plaintiffs' counsel's misrepresentations—or failure to perform due diligence regarding PSI's corporate status—during the nearly two years this case has been pending. *See* ECF No. 179 at 9–12.

challenge, and the Court cannot adjudicate, whether Simison has standing to revive Gateway, the Court still must determine whether Simison has standing to instigate and pursue the instant litigation on behalf of Gateway.

*Id.* at *15. Simison lost because he failed to "adequately demonstrate[] that he ha[d] an interest in Gateway that would authorize him to commence th[e] action on behalf of Gateway." *Id.* The court also explained that mere ownership was not enough; Simison had to demonstrate that he followed proper procedures under Delaware law and Gateway's by-laws authorizing him to sue on behalf of Gateway. *Id.* at *16. The court rejected Simison's "presumption that, because he is President of Gateway, he has authority to act on its behalf," because it was "not established to be valid on the record before the Court." *Id.* at *17. Simison failed to *prove* that he was a shareholder or "entitled to the shares," or "properly elected President of Gateway," or that "the President had the authority under the corporate bylaws" to sue on behalf of Gateway, or that "any bylaws granting the President such authority were properly adopted."[8] *Id.*

## II.    Kyko has not proven valid ownership of PSI.

Kyko has not proven it owns PSI. Kyko has produced no evidence of PSI's certificated shares or showing a valid transfer of PSI's stock. Rather, the only evidence of ownership in the present record shows that PISL undisputedly owned PSI in 2010. Ex. 1; Compl. ¶ 100. Kyko has produced no rebuttal evidence to show how or when PISL transferred PSI's shares to Kyko.[9] Kyko instead relies on the Washington referee's putative order from 2017, but, as explained

---

[8] "It is important to note that Simison has not provided a copy of the bylaws in any of his submissions to the Court, leaving open the question of whether Simison complied with the proper procedure for electing a full board of directors." *Id.* at *16.

[9] These matters are further complicated by Sojitz's 2013 writ of attachment. Madhavi said that PISL turned the shares over to Sojitz well before the beginning of Kyko's purported ownership claim in 2017. ECF 179-5 at 5. And while Plaintiffs' counsel argues that Madhavi "simply lied," neither affidavit submitted by Kyko directly avers that Madhavi's statement was false. ECF Nos. 183-2, 183-3. This dispute is immaterial, however, because Kyko has tied its ownership claim solely to the legally void and ineffective referee's "order."

below, that order is void under Washington law and thus ineffective to prove ownership.

Likewise, Kyko's August 2020 filings in Delaware do not resolve ownership. Delaware does not independently confirm that corporate filings are submitted by anyone with authority or ownership of the company. *See* 8 Del. C. § 312(e); 8 Del. C. § 103(c); *see also Gateway Estates*, 2015 WL 13145613, at *15–16; *In re Hawk Systems, Inc.*, No. 2018-0288-JRS, 2019 WL 4187452 (Del. Ch. Sept. 4, 2019). Merely filing a certificate of revival does not resolve whether a person "has an interest in [a corporation] that would authorize him to commence [an] action on behalf of [it]." *Gateway Estates*, 2015 WL 13145613, at *15–16. So the fact that Mr. Kulkarni filed a certificate of revival, paid taxes, and performed the steps necessary to return PSI to "good standing" in Delaware proves nothing except the *ipse dixit* that Mr. Kulkarni purports to act on behalf of PSI. *Id.* at *5, *17.

Finally, even if Kyko had demonstrated it owns PSI's shares, it has not submitted any evidence that it complied with Delaware law or PSI's corporate bylaws that would authorize it to file suit for PSI. *Id.* at *17 (no standing where party failed to prove he was "properly elected President" or that "the President had the authority under the corporate bylaws to act in the scope [putative plaintiff] argues," or that "any bylaws granting the President such authority were properly adopted"). This suit, as alleged by PSI, is therefore "a nullity." *Meredith*, 279 F.2d at 473–74; *see also Melton*, 521 F. Supp. at 372 (no standing where group lacked authority to sue on behalf of plaintiffs); *Ganim*, 698 A.2d at 252 (same); *Peninsula*, 614 S.E.2d at 356 (same).

## III. The Washington referee's order is void and cannot be a basis for Kyko's purported ownership of PSI.

Kyko grounds its claimed ownership of PSI's stock solely on Mr. Watness's putative share-turnover order from February 2017. ECF 183 at 4 ("On February 16, 2017, Referee Watness awarded PSI's stock to Kyko. … Accordingly, effective February 16, 2017, Kyko

became sole owner of PSI's stock.").  Indeed, Mr. Macyda asserted several times at the Status

Conference that the Court need look "no further" than the "February 2017 order."  But, under

Washington law, Mr. Watness had no authority to order this transfer of shares.  Nor did his order

comport with statutory procedures.  His order is thus legally void and cannot prove Kyko's

claims.  And Kyko's own actions *after* Mr. Watness's orders were placed on the Washington

docket bely its own position.  These and other factors cast significant doubt on Kyko's claim of

ownership of PSI, warranting an evidentiary hearing or even outright dismissal of PSI.

### A.    Mr. Watness had no statutory authority to order any turnover of shares.

Under Washington law, referees have only specifically enumerated powers to assist the

trial court in supplemental proceedings—*i.e.*, judgment collections—with various administrative

matters.  *See generally* Wash. Rev. Code. 6.32.  All these powers are specifically focused only

on facilitating "examinations" of judgment debtors, not adjudicating the substantive rights of

parties, and referees must therefore always report to the court with any recommendations.  *See

id.* § 6.32.060.  For example, a referee may be present for an appearance or "examination" of the

judgment debtor or a third party ordered by the court.  *See id.* §§  6.32.010, .030, .040.  A referee

may adjourn supplemental proceedings.  *Id.* § 6.32.050.  And a referee may give oral direction

and issue orders "made pursuant to" its specifically enumerated powers.  *See id.* § 6.32.180.

Kyko previously acknowledged these clear limits, requesting a referee only to

expeditiously rule on various testimonial objections.[10]  The court appointed a referee solely to

help administer the proceedings within a referee's limited enumerated powers under Wash. Rev.

---

[10] *See* Ex. 3 at 8 ("[I]t is necessary to appoint a referee to address the scheduling, attendance and ruling on objections, in the same manner as would follow for a deposition."); Ex. 4 at 4 ("The revolving door to this court on the many questions raised during these many supplemental proceedings is sufficient to demonstrate the need to have a referee appointed to address the objections and scheduling issues raised in this case.").

Code § 6.32. *See* Ex. 5. No statute gave Mr. Watness authority to order the turnover of shares.

But once Mr. Watness was appointed, Kyko reneged on its assertions that he would have only limited powers and sought the turnover of shares of a different entity. Mr. Watness himself recognized that he had no such authority under Washington law. *See* Ex. 6. Kyko cannot point to a single statute that grants referees the power to order a judgment debtor to turn over shares it owns directly to a judgment creditor. Mr. Watness's putative share-turnover order therefore exceeded his authority under Washington law and is void. *Dike v. Dike*, 448 P.2d 490, 494 (Wash. 1968) (an order issued by one who that "lacks the inherent power to make or enter the particular order involved, is void. . . . [and a ] void order . . . is a nullity" (citation omitted)).

**B.     The Superior Court had no authority to delegate power to Mr. Watness to order any turnover of shares.**

In response to Mr. Watness's request for clarification of his authority, the Washington Superior Court purported to delegate to him "the authority to order that the judgment debtor turn over to plaintiff the proceeds from the sale of personal property pursuant to RCW 6.32.080." Ex. 7. That purported delegation contravened Washington law and was thus invalid.

The Washington Constitution vests judicial power exclusively in the judiciary, including the Superior Court. *See* Wash. Const. Art IV, § 1. Unless otherwise allowed by statute, courts may not delegate that authority to others, including referees. *See, e.g.*, *State v. Summers*, 375 P.2d 143, 145–46 (Wash. 1962) (trial court "unlawful[ly] delegat[ed]" its "judicial authority" under statute by "authoriz[ing] the probation officer to fix the amount of [restitution] payments").[11] Indeed, the Washington Court of Appeals recently held that a trial court unlawfully delegated its statutory authority to Mr. Watness in a different case. *See In re Estate*

---

[11] *In re Estate of Cooper*, 913 P.2d 393, 402 (Wash. Ct. App. 1996) (court erred in delegating authority to special master); *State v. Forbes*, 719 P.2d 941, 945 (Wash. Ct. App. 1986) (trial court "abdicat[ed]" its "authority" by delegating power to prosecutor's office to set restitution amounts).

*of Johnson*, No. 47124-8-II, 2016 WL 6599648, at *13 (Wash. Ct. App. Nov. 8, 2016) (unpubl.).

No statute allows a court to delegate power to order the direct turnover of property from a debtor to a creditor. This includes RCW § 6.32.080, the statute the court cited. All relevant statutes that authorize delegations of authority to referees expressly limit that authority by requiring referees to merely "report" findings and recommendations to the court. *See* Wash. Rev. Code §§ 2.24.060, 6.32.060. As Kyko recognized, the referee assists the court with administrative tasks while ensuring the court has "the final say." Ex. 4 at 4 & n.9. Accordingly, the trial court's purported delegation of authority to Mr. Watness was in "error," "unlawful," and an "abdication" of the powers vested in the judiciary alone. *Summers*, 375 P.2d at 145–46 ("unlawful delegation of judicial authority"); *Forbes*, 719 P.2d at 945 ("abdication of the trial court's authority"); *Cooper*, 913 P.2d at 402 ("error" for court to use another's work product). And despite having previously recognized the clear limits on Mr. Watness's statutory authority, Kyko manipulated the unlawful delegation to its own advantage.

### C. Mr. Watness's putative share-turnover order violated clear Washington procedures for supplemental proceedings.

Even assuming that Mr. Watness had authority to order a turnover of shares (he did not), his putative order—really just Kyko's proposed order with Mr. Watness's signature—still violated Washington statutory requirements and is thus void in at least two ways. *See Hatfield v. Greco*, 557 P.2d 340, 342 (Wash. 1976) ("[W]hen a remedy is purely statutory in character, the methods of procedure provided in the statute are exclusive and mandatory, and are to be strictly construed[;] … if the method of procedure prescribed by it is not strictly observed, jurisdiction will fail to attach and the proceeding will be a nullity." (citation omitted)); *Dike*, 448 P.2d at 494.

*First*, no Washington statute allows a court or referee to order that a judgment debtor's property be turned over directly to a judgment creditor. *See Bounds v. Galbraith*, 206 P. 357,

358 (Wash. 1922) (supplemental proceeding is a "purely statutory proceeding" in which the statutes are "controlling"). Instead, executing on a debtor's personal property requires "deliver[y of] the articles of personal property to a sheriff" *for a public auction and sale* or a "receiver" for management, not directly to the judgment creditor. Wash. Rev. Code § 6.32.080. The reason for this is obvious: only an auction and sale or management by a receiver could neutrally and objectively determine the property's value to be applied against the money judgment.[12]

Here, in stark violation of these statutory procedures, Kyko's proposed order adopted by Mr. Watness purported to allow Kyko Global GmbH to take *direct* possession of PSI's shares from PISL and then report back to the court its subjective belief as to the value of PSI for application against the judgment. That process contravened not only Washington statutes, but even the unlawful purported delegation from the superior court. *See* Wash. Rev. Code § 6.17.130; Ex. 7 (unlawfully delegating authority to order the turnover of only "the proceeds from the *sale* of personal property" (emphasis added)). If Kyko wanted to obtain PSI's shares validly under Washington law to satisfy the judgment debt, it would have had to purchase them at a sheriff's public auction or from an appointed receiver. *See* Wash. Rev. Code § 6.17.130. But Kyko manipulated the supplemental proceedings to try to unlawfully obtain PSI's shares *directly*—through an essentially ex parte process no less—which shares Kyko then unsurprisingly appraised at only $10. *See* ECF 183-6 at 3. That process was statutorily invalid

---

[12] *See* Wash. Rev. Code § 6.17.130; *Klepsch v. Donald*, 51 P. 352, 353 (Wash. 1897) (approving order to "deliver the said personal property to the sheriff . . . to be by said sheriff sold in the manner provided by law under execution, and the proceeds applied to the payment of respondent's judgment"); *Le Tastevin, Inc. v. Seattle First Nat'l Bank*, 974 P.2d 896, 898 (Wash. Ct. App. 1999) ("[T]he procedure requires the sheriff of the county in which the property is located to perform the levy and sale of the property."); *see Hendricks & Lewis PLLC v. Clinton*, 766 F.3d 991, 999 (9th Cir. 2014) (similar process for receivers).

and is thus ineffective to prove any legitimate ownership of PSI.  *Hatfield*, 557 P.2d at 342.[13]

 *Second*, the putative transfer order violated the statutory process for dealing with disputed ownership.  If ownership of a debtor's property is "substantially disputed," then such property may not be sold to satisfy a judgment until the ownership is determined "as in other civil actions."  *See* Wash. Rev. Code § 6.32.270.  Any third parties whose rights are implicated by the ownership dispute are made parties to the case.  Wash. Rev. Code § 6.32.270.  Critically, a court cannot "refuse to adjudicate the respective interests in the property as between the judgment debtor and the third person claimant .… If any interests are adjudicated, all the respective interests should be adjudicated."  *Junkin v. Anderson*, 120 P.2d 548, 555 (Wash. 1941).

 Mr. Watness's share-turnover order violated Washington law by noting the existence of disputed ownership of the shares without adjudicating that dispute.  *Compare* ECF 179-5 at 5, *with Junkin*, 120 P.2d at 553 ("[T]he court may *not* adjudicate the respective interests in [disputed] property.").  It does not matter that Sojitz did not assert a claim to the shares; Madhavi's mere disclaimer of PISL's ownership created a substantial dispute as a matter of law that should have triggered additional procedures to determine the parties' respective rights.  *See Junkin*, 120 P.2d at 553 ("The judgment debtor's disclaimer of ownership of personal property, taken together with his claim of ownership in a certain other person, can create a substantial dispute as to ownership within the meaning of this section, even though the adverse claimant has not personally presented his claim."); *Bounds*, 206 P. at 358; Wash. Rev. Code § 6.32.270.

### D. Mr. Watness's orders were never adopted by the Superior Court.

Mr. Watness had no authority to order direct turnover PSI's shares under Washington

---

[13] The referee's statutorily invalid procedure also failed to provide notice to other interested parties about the transfer of PSI's property and thus prevented those other parties from raising claims to ownership of PSI's property.  Other parties include bondholders in PSI's parent company, such as certain SSG entities, to whom PISL still owes money.

law.  And even if the Superior Court might have had such authority (it likely did not given the statutory procedural violations explained above), Mr. Watness's orders regarding PSI's shares were never adopted, confirmed, or endorsed by the Superior Court after they were docketed in May 2018.  And because judicial power in Washington is vested solely in courts, the Superior Court's failure to validate Mr. Watness's putative orders in any way separately demonstrates their ineffectiveness.  Put simply, the court never had "the final say."  Ex. 4 at 4 n.9.

### E.  Kyko's post-2017 actions contradict its reliance on the referee orders.

Kyko's own actions show that even it did not believe that Mr. Watness's "order" had any legal effect.  Over a year after Mr. Watness purported to order the turnover of PSI's shares, Kyko sought its own writ of attachment in Delaware to obtain PSI's shares.  *See* ECF 183-7.  This action belies Kyko's assertions that Mr. Watness's putative share-turnover order was sufficient by itself to transfer ownership of PSI from PISL to Kyko Global GmbH.  More importantly, Kyko expressly averred in its Delaware filings, *before* and *after* it filed the Complaint in this case, that ***PISL*** still owned the PSI shares.  ECF 183-7 at 16–17.  Nor can Kyko point to its writ of attachment as proof of ownership because (1) that writ was based only on the legally void referee's order, ECF 183-7 at 3–10, and (2) Kyko's attachment proceeding went no further than Sojitz's, which Kyko asserts was ineffective, ECF 183 at 3.

### F.  Even assuming the referee's turnover order was effective, Kyko has given no evidence of a valid transfer from Kyko Global GmbH to Kyko Global, Inc.

Even assuming that Mr. Watness's order was legally valid and effective (it is not), it at most ordered the transfer of PSI's shares to "Kyko Global GmbH."  *See* ECF 179-5 at 3.  But Plaintiffs' counsel recently represented to the Third Circuit that PSI's *only* parent company is "Kyko Global, Inc."  Ex. 2.  Kyko has provided no evidence to prove any valid transfer of PSI's shares between the two Kyko entities.  Kyko's actions thus once again undermine its assertions

to this Court that the Washington referee's order was legally effective.

## IV.    The Kulkarni and Pandyar affidavits are irrelevant and unreliable.

Kyko submitted two affidavits before the Status Conference, one by Kiran Kulkarni and one by Guru Pandyar. Neither affidavit attempts to prove that Kyko validly owns PSI's shares. And neither affidavit should be credited.

Mr. Kulkarni never states that Kyko validly owns PSI's shares. *See* ECF No 183-3. Nor does he even assert that Sojitz does *not* own the PSI shares. *Id.* Rather, he contends only that "Sojitz decided to cease its collection efforts" "against PISL" sometime in 2014. *Id.* ¶ 10. This statement is irrelevant given that Sojitz undeniably sought to obtain PSI's shares in mid-*2013*. ECF 179-3 at 16. More importantly, it appears that Mr. Kulkarni's statements are factually contradicted by attachments to Mr. Ginsberg's affidavit: (1) court documents showing that Sojitz is *still* pursuing collection efforts against PISL and related parties in India, *see* Ex. 9 (Ginsberg Aff.) at Ex. B, *see also* Ex. 10; and (2) emails between Sojitz and PISL facilitating the transfer of PSI's shares to Sojitz in *June 2013*, *see* Ex. 9 (Ginsberg Aff.) at Exs. F, G.

Mr. Pandyar's affidavit also fails to satisfy Kyko's burden of affirmative proof because Mr. Pandyar nowhere claims that Kyko validly owns PSI's shares. ECF No. 183-2, at ¶ 5.[14] And this Court should not credit Mr. Pandyar's statements in any event. Exhibit D to Mr. Ginsberg's affidavit indisputably shows that Mr. Pandyar not only received Sojitz's writ of attachment, he also forwarded it to the Vuppalapatis, demonstrating that Mr. Pandyar's statement that he "never received any legal process" related to PSI's shares is false. *See* Ex. 9 (Ginsberg Aff.) at Ex. D. Moreover, Kyko has already shown Mr. Pandyar's willingness to lie under oath

---

[14] If anything, Mr. Pandyar's affidavit suggests that *PISL* might still own the shares. ECF No. 183-2, ¶ 7 ("To the best of my information, knowledge, and belief, PSI's stock certificates have never been delivered to a third-party.").

and penalty of perjury.[15]  Mr. Pandyar has pleaded guilty to fraud crimes he committed when

working with Prithvi companies.  *See* Ex. 11.  And he recently leveraged his cooperation with

and testimony for Kyko to seek leniency in his criminal proceeding.  *See* Ex. 12 at ¶ 2(d).

## CONCLUSION AND RELIEF SOUGHT

Ultimately, as the party asserting standing to sue, it is Kyko's burden to prove it owns

PSI's shares and has authority to sue as, and for, PSI.  Despite its many filings, Kyko has not met

its burden.  The Court thus has adequate basis on the record to dismiss PSI from the case.

*Doherty*, 651 F.2d at 896.  In light of counsel's representations at the Status Conference, Kyko

rests its claimed ownership entirely on the Washington referee's putative share-turnover order.

If the Court concludes that that document was ineffective under Washington law to effectuate the

transfer of PSI from PISL to Kyko Global GmbH, then dismissal of PSI is appropriate now.

*Warth*, 422 U.S. at 501–02 ("If … the plaintiff's standing does not adequately appear from all

materials of record, the complaint must be dismissed.").

Alternatively, the Court should grant the SSG Defendants' motion and hold an

evidentiary hearing to examine Kyko's witnesses about its purported ownership of PSI, including

Guru Pandyar and Kiran Kulkarni.  The veracity of these two declarants is an open issue,

justifying an evidentiary hearing.  *See, e.g.*, *Access 4 All, Inc. v. Boardwalk Regency Corp.*, No.

08-3817, 2010 WL 4860565, at *8 n.16 (D.N.J. Nov. 23, 2010) ("Courts must conduct

evidentiary hearings to determine standing when there are disputed factual issues and witness

credibility determinations to be resolved." (collecting cases)).

---

[15] ECF No. 154-3, ¶ 7 (Kulkarni affidavit explaining fraudulent statements from Mr. Pandyar).  Mr. Pandyar lied to and defrauded Kyko for years, *id.* ¶¶ 6–15, before signing a "cooperation agreement" with Kyko, *see Kyko Glob., Inc.*, No. 13-1034, (W.D. Wash.), ECF Nos. 250; 390, at 10; 291.

Respectfully submitted,

Dated:  August 26, 2020

<u>/s/  *John D. Goetz*</u>
Michael H. Ginsberg (Pa. Bar #43582)
John D. Goetz (Pa. Bar #47759)
Douglas Baker (Pa. Bar #318634)
JONES DAY
500 Grant Street, Suite 4500
Pittsburgh, PA  15219-2514
Telephone:  (412) 391-3939
Facsimile:  (412) 394-7959
Email: mhginsberg@jonesday.com
Email: jdgoetz@jonesday.com
Email: ddbaker@jonesday.com

**Counsel for Defendants SSG Capital Partners I, L.P., SSG Capital Management (Hong Kong) Limited, Shyam Maheshwari, Ira Syavitri Noor a/k/a Ira Noor Vourloumis, Dinesh Goel, Wong Ching Him a/k/a Edwin Wong, and Andreas Vourloumis**