# Exhibit 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KYKO GLOBAL, INC., a Canadian corporation, KYKO GLOBAL GmbH, a Bahamian corporation, PRITHVI SOLUTIONS, INC., a Delaware Corporation,<br><br>     *Plaintiffs*,<br><br>  v.<br><br>PRITHVI INFORMATION SOLUTIONS, LTD, an Indian corporation, VALUE TEAM CORPORATION, a British Virgin Islands corporation, SSG CAPITAL PARTNERS I, L.P., a Cayman Islands Limited Partnership, SSG CAPITAL MANAGEMENT (HONG KONG) LIMITED, a private Hong Kong company, MADHAVI VUPPALAPATI, an individual, ANANDHAN JAYARAMAN, an Individual, SHYAM MAHESHWARI, an individual, IRA SYAVITRI NOOR A/K/A IRA NOOR VOURLOUMIS, an individual, DINESH GOEL, an individual, WONG CHING HIM a/k/a Edwin Wong, an individual, ANDREAS VOURLOUMIS, an individual, PRITHVI ASIA SOLUTIONS LIMITED, a Hong Kong company,<br><br>     *Defendants*. | Civil Action No. 2:18-cv-01290-WSS<br><br>*Electronically Filed* |

## AFFIDAVIT OF MICHAEL H. GINSBERG

I, Michael H. Ginsberg, hereby swear as follows:

1.      I am over the age of 18, suffer no legal disability, and am otherwise competent to make this affidavit.

2.      I am a partner at Jones Day and counsel of record in the above-captioned action for the "SSG Defendants," which include only SSG Capital Partners I, L.P., SSG Capital

Management (Hong Kong) Limited, Shyam Maheshwari, Ira Syavitri Noor a/k/a Ira Noor Vourloumis, Dinesh Goel, Wong Ching Him a/k/a Edwin Wong, and Andreas Vourloumis.

3.       On August 19, 2020, I received an email from non-party Mr. Satish Vuppalapti, a true and correct copy of which is attached hereto as Exhibit A.  Because neither I nor Jones Day represents Mr. Vuppalati in this or any other matter, neither I nor anyone else from Jones Day responded to this message.

4.        On August 20, 2020, I received two more emails from Mr. Vuppalapati, true and correct copies of which, including related attachments, are attached hereto as Exhibits B and C. Because neither I nor Jones Day represents Mr. Vuppalati in this or any other matter, neither I nor anyone else from Jones Day responded to these messages.

5.       On August 23, 2020, I received two more emails from Mr. Vuppalapati, true and correct copies of which, including related attachments, are attached hereto as Exhibits D and E. Because neither I nor Jones Day represents Mr. Vuppalati in this or any other matter, neither I nor anyone else from Jones Day responded to these messages.

6.       On August 25, 2020, I received three more emails from Mr. Vuppalapati, true and correct copies of which, including related attachments, are attached hereto as Exhibits F, G, and H.  Because neither I nor Jones Day represents Mr. Vuppalati in this or any other matter, neither I nor anyone else from Jones Day responded to the first two messages.

7.       After we received a third email from Mr. Vuppalapati on August 25, 2020, John Goetz, counsel for the SSG Defendants, responded to Mr. Vuppalapati as shown in Exhibit H to tell him that Jones Day does not represent him and that he has the option and right to consult with counsel.

8.    Other than the above-identified emails, I have received to date no other written or oral communications from Mr. Vuppalapati.

9.    Other than Mr. Goetz's communication described above, neither I nor any other counsel for the SSG Defendants in this matter has communicated to Mr. Vuppalapati about this case or any other topic.

10.    I submit this affidavit because Mr. Vuppalapati's email communications and attachments appear relevant to the issues pending before the Court.

11.    I have no personal knowledge regarding the veracity or credibility of any of Mr. Vuppalapati's statements or any of the subject matters implicated by Mr. Vuppalapati's emails or attachments.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on:  _8/26/2020_

Michael H. Ginsberg

3

# Exhibit A

**From:** satish@prithvisolutions.com
**Sent:** Wednesday, August 19, 2020 11:47 AM
**To:** Goetz, John D.; Ginsberg, Michael H.
**Subject:** Information reg kyko vs ssg

** External mail **

 Hello,

Kyko has responded to the SSG's emergency hearing saying that they are the rightful owner of PSI. SSG had claimed that Sojitz were the rightful owner of PSI due to a judgement.Kyko however argue that PSI's stock certificate was not handed over to Sojitz. Kyko also argues in their reply that Sojitz are not interested in collecting from the Prithvi group of companies.

I Satish Vuppalapati am the MD of PISL and am disputing these statements. I am willing to give affidavit to state that he has handed over the certificate to one Mr.Srinivasan of sojitz corporation in india. He has also stated that it is untrue to state that Sojitz is not pursuing collection efforts - they are trying to collect in India.

Thanks
Satish
--
Sent from my Android device with K-9 Mail. Please excuse my brevity.

# Exhibit B

| From: | Satish Vuppalapati <satish@prithvisolutions.com> |
| --- | --- |
| Sent: | Thursday, August 20, 2020 10:45 AM |
| To: | Goetz, John D.; Ginsberg, Michael H. |
| Subject: | court cases- collection efforts |
| Attachments: | Sojitz CC 140-10.pdf; Sojitz Execution petition 66 of 2014.pdf; case status report.pdf; sojit ep status.pdf; sojitz criminal status.pdf |

** External mail **

Dear All,

Pls find below the particulars of the proceedings in india which are still being actively pursued by Sojitz. A copy of the complaint and latest status are also attached for your information and necessary action, if required my legal counsel can give an affidavit to the affect which kind of proves that they are actively pursuing the collection efforts.

Thanks
satish

| S. No. | Particulars of Proceedings | Presiding Court | |
| --- | --- | --- | --- |
| 1. | Prithvi: criminal case<br><br>Sojitz Corporation v. M/s Prithvi Information Solutions Ltd. & Ors (C.C. No. 140 of 2009 before Court of IX Metropolitan Magistrate at Miyapur; thereafter transferred to court of 25th Metropolitan Magistrate at Cyberabad and renumbered as C.C.No.904 of 2014) | Court of 25th Metropolitan Magistrate at Cyberabad<br><br>The criminal complaint is still pending before the Magistrate and is being adjourned time to time pending the quashing petition filed in the High Court. | |
| 2. | Prithvi: Quashing Petition<br><br>1. M/s Madhavi Vuppalapati & Ors. V. Sojitz Corporation & Anr. (Cr.P No. 1951 of 2010)<br>2. Mr. Srikanth Reddy Gaddam & Ors. v. Sojitz | High Court of Judicature at Hyderabad for the State of Telangana and for the State of Andhra Pradesh<br><br>The quashing petitions are still pending in the High Court | |

1

| | | | |
|---|---|---|---|
| | Corporation & Anr (Cr.P. No. 6364 of 2010) | | |
| 3. | Prithvi Enforcement Arbitral Award<br><br>M/s Sojitz Corporation v. Prithvi Information Solutions Ltd. (E.P. No. 208/2014 and E.P. No. 209/2014).<br><br>**Note**: EP Nos. 65 and 66 of 2014 have been renumbered before the new judge as EPs 208 and 209 of 2014, respectively.<br><br>**Note**: The EA no.115/2014 in old EP 65/2014 (renumbered as EP 208/2014) has been renumbered as EA 94/2014, EA 116/2014 has been renumbered as EA 96/2014 filed in old EP No. 66/2014 (renumbered as EP 209/2014). | Ranga Reddy District Court, Hyderabad | |
| | | | |

# IN THE COURT OF THE HON'BLE IX METROPOLITAN MAGISTRATE AT MIYAPUR

CC. NO.        OF 2009

<u>BETWEEN:</u>



**SOJITZ CORPORATION,**

(THROUGH ITS AUTHORISED REPRESENTATIVE
MR. YUKIHISA MATSUMOTO, s/o Mr.Hisakichi Matsumoto, Aged about 50
Years) HAVING ITS OFFICES AT
1-20, AKASAKA 6- CHOME
MINATO-KU TOKYO-107-8665
JAPAN.

...Petitioner /Complainant

AND

1   M/S **PRITHVI INFORMATION SOLUTIONS LIMITED,**
HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,
CYBER TOWERS, HITEC CITY,
MADHAPUR,
HYDERABAD-500081

... Accused No.1

2   **MR.V.V. RAMARAO,** s/o Not Known, Age not known
CHAIRMAN,
C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,
HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,
CYBER TOWERS, HITEC CITY,
MADHAPUR,
HYDERABAD-500081

... Accused No.2

**MS. MADHAVI VUPPALAPATI,** d/o Mr. V.V. Ramarao, Age not
known
CHAIRPERSON/DIRECTOR,
C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,
HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,
CYBER TOWERS, HITEC CITY,

Compared By
Certified to be True Copy

MADHAPUR,

HYDERABAD-500081 ∴ Accused No.3

4  **MR. SATISH KUMAR VUPPALAPATI**, s/o Mr. V.V. Ramarao, ⅄

known

MANAGING DIRECTOR,

C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,

HYDERABAD-500081 ... Accused No.4

**MR. SRIKANT REDDY GADDAM**, s/o Not Known, Age not kno

EXECUTIVE DIRECTOR,

C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,

HYDERABAD-500081 ... Accused No.5

6  **DR. SATYAPAL NARANG**, s/o Not Known, Age not known

DIRECTOR,

C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,

HYDERABAD-500081 ... Accused No.6

**MR. OMKAR SRINIVAS BHONGIR**, s/o Not Known, Age not l

DIRECTOR,

C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,
HYDERABAD-500081

... Accused No.7

8   **MR. S. LALITH PRASAD**, s/o Not Known, Age not known
DIRECTOR,
C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,
HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,
CYBER TOWERS, HITEC CITY,
MADHAPUR,
HYDERABAD-500081

... Accused No.8

9   **MR. C.P. SHARMA**, s/o Not Known, Age not known
VICE PRESIDENT (BUSINESS DEVELOPMENT),
C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,
HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,
CYBER TOWERS, HITEC CITY,
MADHAPUR,
HYDERABAD-500081

... Accused No.9

& ALSO AT:
PRITHVI INFORMATION SOLUTIONS LIMITED,
20-F, FIRST FLOOR,
CONNAUGHT PLACE,
NEW DELHI 110 001.

10  **MR. P.S. SHASTRY**, s/o Not Known, Age not known
COMPANY SECRETARY/C.F.O.,
C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,
HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,
CYBER TOWERS, HITEC CITY,
MADHAPUR,
HYDERABAD-500081

... Accused No.10

11  **MR.C.R.DASH**, s/o Not Known, Age not known
C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,

HYDERABAD-500081                    ... Accused No.11


12   **MR.GOPAL SHARMA**, s/o Not Known, Age not known

C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,

HYDERABAD-500081                    ... Accused No.12

& ALSO AT:

PRITHVI INFORMATION SOLUTIONS LIMITED,

20-?, FIRST FLOOR,

CONNAUGHT PLACE,

NEW DELHI 110 001.


13.   **MR.P.R.BANSAL**, s/o Not Known, Age not known

ADVISOR,

C/O M/S PRITHVI INFORMATION SOLUTIONS LIMITED,

HAVING ITS OFFICES AT 10Q3-AI, 19TH FLOOR,

CYBER TOWERS, HITEC CITY,

MADHAPUR,

HYDERABAD-500081                    ... Accused No.13


**PETITION FILED UNDER SECTION 200 OF CRIMINAL PROC**

**CODE 1973 FOR THE OFFENCES U/S 405/406/409/420/34 READ WI**

**INDIAN PENAL CODE, 1860**



**Nature of offence:**    Under sections 405/406/409/420

with 120B Indian Penal Code, 18




2. **Date of offence:**  26.06.2007 and continuing

3. **Place of offence:**  Madhapur, Hyderabad

4. **Jurisdiction of Police Station:** Madhapur

5. **List of Witnesses:**

1. Mr. Yukihisa Matsumoto, Sojitz Corporation, Japan, General Manager for Telecommunications Project, IT Business Department, s/o Mr. Hisakichi Matsumoto, aged about 50 years r/o 2 – 15 – 3, Ibukino, Izumi – shi, Osaka 594 – 0041, Japan

2. Mr. Masahiro Ota, Sojitz Corporation, Japan, Manager, Telecommunication System, Administration Sect, IT Business Department, s/o Mr. Kozo Ota, aged about 44 years r/o Miyazaki 1 – 9 – 46, Cityhouse – Miyazakidia 107, Miyamae – ku, Kawasaki – shi, Kanagawa 216 – 0033, Japan

3. Mr. Yoichi Harumoto, Sojitz India Private Limited, India, Deputy General Manager & Group Head, Machinery Department, s/o Mr. Shigeru Harumoto, aged about 31 years r/o D –





4. Concerned officers of BSNl

relevant records

5. Concerned officers of Punjab l

Bank with relevant records

6. Such other and further witnesse

Hon'ble Court may deem

proper



6. BRIEF FACTS OF THE CASE:

1. That the present complaint is being filed with respect to the a

cheating and criminal breach of trust committed by the Respo:

Accused No.1 Company, its Directors and some of its offic

conspiracy with one another and in the alternative, with co

intention against the Petitioner/ Complainant. The acts 

Respondents/ Accused have unlawfully caused the Peti

Complainant substantial financial loss and further are of 

nature, as to have the possible effect of seriously affecting the

of Hyderabad to attract foreign investment and in particula

Japan. The Complaint is for the offences under s

420/405/406/409/34 read with 120B of the Indian Penal Code,







2. That the Complainant is a Company incorporated under the laws of Japan having its registered office at 1-20, Akasaka 6-chome, Minato-ku, Tokyo 107-8665, Japan.

3. That for the purposes of the present proceedings, the Complainant Company is being represented through its Authorised Representatives Mr. Masahiro Ota and Mr. Yukihisa Matsumoto, who has been duly authorised to file, institute and pursue the present complaint vide Special Power of Attorney dated 06.08.2009. A copy of the said Special Power of Attorney is annexed hereto and is marked as *Annexure A* to this complaint. The Special Power of Attorney has been executed by a Representative Director of the Complainant who is competent and authorised to execute such document and grant such authority under Japanese Law. The Applicable Certificate of the Tokyo Legal Affairs Bureau certifying that Mr. Yutaka Kase is a Representative Director of the Complainant is annexed herewith together with a true English translation of the same and is marked as *Annexure B* to this Complaint. That the aforementioned Authorised Representatives are familiar with the facts of the present complaint based verily upon the personal knowledge and the relevant records.

4. That the Complainant Company is engaged in the business of international trade and, inter alia, provides trade finance in respect of the sale of equipment and accessories required in the field of telecommunications.





5. That the Accused No.1 is a company incorporated und Companies Act 1956 having its registered office abovementioned address. The accused No. 2 to 13 are the Ch Managing Director, Directors and other officers of the Company and they are severally and jointly liable for the day affairs and conduct of the business of the accused Company have been actively participating in its management. Furthern these accused are liable to be proceeded against as they ma representations to the Complainant for and on behalf of the company on various separate occasions. That Accused No. relevant times, held himself out to be the Chairman of the No.1 and interacted with the Complainant in that capacity. H the 10th Annual Report of the Accused No.1 for the Financ 2007-2008, makes no reference to the Accused No.2 hol aforesaid office and Accused No.3 is stated to be the Chairp the Accused No.1 and inter alia looks after the affairs of the No.1 in United States and is stated to be there a pres Accused No.4 is the Managing Director of the Accused No Accused Nos. 9 & 12 were based in Delhi at the relevant pe were interacting with the Complainant's representative on basis. That Accused Nos. 9 & 12 were based at the Delhi the Accused No.1 and made numerous misrepresentation representatives of the Complainant Company. That further No.9 signed the letter calling upon BSNL to set a instructions earlier received by it from the Accused No.1 to payments in a stipulated Escrow Account. That Accused No alia, signed the mandate forms with respect to Axis Bank, most of the dishonestly misappropriated funds were diver

Accused No.13, with the active support of Accused No.2 & 4 held himself out to be an Advisor for the Accused No.1 and in this capacity attended most of the meetings at Hyderabad and was actively involved in the misrepresentations made and false undertakings given to the Complainant. The other Accused persons were variously involved in the fraudulent activities of the Accused No.1, whereby unlawful gain was attained for the Accused No.1 and unlawful loss was caused to the Complainant. In this manner all the abovementioned accused colluded and conspired with one another to wrongful loss to the Complainant.

6. That in order to properly appreciate the case, it is essential to detail certain relevant facts and circumstances which have led to the institution of the present Complaint and the same are enumerated as under:

a) That in March 2007, BSNL announced a tender for the procurement of certain telecommunication equipment. Clause 11 of the Tender Document clearly stipulated that 95% of the value of the equipment would be payable by BSNL immediately upon the satisfactory supply of the equipment which was the subject matter of the tender and the remaining 5% was payable by BSNL within six months thereof. The Accused No.1 was one of the bidders in respect of the said tender. A Chinese Company, Huawei, who manufactured the equipment to be supplied, entered into negotiations with the Accused No.1 and the salient features of the bid, such as the bid price, specification, delivery schedule, logistics,




hardware/software ratio and other commercial cond[...]
were decided between Huawei and the Accused No.1[...]
bid was submitted by the Accused No.1 on 04.06.20[...]
BSNL's corporate office in New Delhi and on the same[...]
the bids were opened and the Accused No.1's bid was f[...]
to be in order.



SR- 69 70/09
2018/09

b) That as Huawei had done business with the Complainar[...]
the past, it contacted the Complainant and asked it[...]
consider the grant of trade finance to the Accused No.1.T[...]
thereafter, pursuant to telephonic discussions betw[...]
Huawei, the Complainant and the Accused No.1,[...]
Complainant's representatives agreed to visit Hyderabad [...]
a meeting with the Accused No.1's representatives, so th[...]
the Complainant could better understand the scope of t[...]
project and the nature of each party's involvement an[...]
undertakings. That the aforesaid meeting took place [...]
Hyderabad on 26.06.2007 and was attended on behalf of th[...]
Complainant by Mr. Yoichi Harumoto and Mr.Gopalan. O[...]
behalf of the Accused No.1, the meeting was attended b[...]
Accused Nos.2, 11 & 13. That at the meeting the Accused[...]
No.2, who held himself out as being the Chairman of the[...]
Accused No.1, made numerous claims about his Company's[...]
order-book, financial standing and his belief in conducting[...]
his Company's business in an absolutely honest manner. The[...]
Complainant raised numerous queries regarding the reason[...]
for the Accused No.1 tendering for a Hardware Contract[...]
when the Accused No.1 was essentially a software solutions[...]
Company; the Accused at the meeting responded by[...]



indicating that they were looking towards expanding the Accused Company's business and developing a software-hardware synergy. That much of this meeting concentrated on discussing the modalities of repayment in respect of any trade finance that the Complainant may extend to the Accused Company and the Accused assured the Complainant Company's representatives that Huawei, who had already had numerous dealings with the Complainant Company, had informed them of the Complainant Company's requirements, including, inter alia, the need to set up a dedicated escrow account into which all the monies received from BSNL would have to be deposited.

c) That, thereafter further meetings took place in Hyderabad on 02.07.2007 and 17.08.2007 between the Complainant's representatives and the aforesaid Accused persons and also at Delhi between the Complainant's representatives and Accused No.s 9 & 12. That at all these meetings the Accused persons assured the Complainant's representatives that if the Complainant extended trade finance to the Accused Company, there would be no delay in repayment of the same and that the assurances given on behalf of the Accused Company would be scrupulously adhered to. The Accused again made numerous claims regarding the business ethics of their Company and in this manner even induced the Complainant Company to agree to the usance period stipulated in the agreement hereto between the Complainant and the Accused No.1. In lieu thereof the Accused agreed to



adhere to the mechanism regarding the setting

operation of an Escrow Account in all particulars.

d) That pursuant to the aforesaid meetings, further nego

took place between Huawei and the Complainant an

between the Accused and the Complainant. On 08.1

BSNL placed an advance purchase order upon the A

No.1.



e) That, in the circumstances, pursuant to the represent

made by the accused persons and believing them to be

an agreement dated 29.11.2007 was entered into betwee

Complainant and the Accused No.1 for procuremen

supply of goods to Bharat Sanchar Nigam Ltd. The g

consisted of 10G, 40 Channels DWDM equip

manufactured by M/s Huawei Technologies Co. Ltd. A

copy of the Supply Agreement dated 29.11.2007 is ann

hereto and is marked as **Annexure C** to this Complain

essence, Huawei were to manufacture the equipment and

Complainant was to purchase the same on Letter of Cı

(L/C) basis. Subsequently the Complainant sold the sam

the Accused No.1 on Document against Payment (D/A) ba

After completion of custom clearance at the Inc

seaport/airport by the Accused No.1, the said equipm

would be supplied by the Accused No.1, in terms of

tender conditions and BSNL's purchase order, to BSN

Upon satisfactory receipt of the equipment, BSNL wou

release payments into an Escrow Account with a view



protecting the Complainant Company's substantial financial exposure.

f) That in these circumstances, the mode of appropriation and distribution of the payments to be received by Accused No.1 from BSNL, between the Complainant and the Accused No.1, became the most important feature of the agreement between these two parties. That as stated hereinabove, it was agreed between the Accused No.1 and the Complainant that an irrevocable Escrow account would be set up for the purpose of receiving all payments from BSNL with respect to the 10G, 40 Channels DWDM Contract. It was further agreed between the parties that Bharat Sanchar Nigam Ltd. would be provided with the details of the said Escrow Account and that BSNL would be called upon to confirm this payment arrangement and further to direct each circle to release payment for the equipment received by it under the aforesaid contract into the said Escrow account.

g) That on the basis of the assurances given by the accused with regard to the transfer/deposit of all payments relating to the contract in question, into an Escrow Account, a tripartite Agreement dated 10.12.2007 was executed between Sojitz Corporation, M/s Prithvi Information Solutions Ltd. and Punjab National Bank. In pursuance thereof, a segregated and irrevocable Escrow Account under the name and style "Punjab National Bank- A/c Prithvi Information Solutions Ltd. No. 4437002100000506 was opened. Accused No.11



signed the Escrow Agreement on behalf of Accused No.1. A true copy of the Escrow Agreement dated 10.12.2007 is annexed hereto and is marked as *Annexure D* to this Complaint.

h) That it is pertinent to mention that the accused persons undertook to ensure that the payments issued by Bharat Sanchar Nigam Ltd. towards payment of dues would conform to the terms and conditions of the Escrow Agreement, which inter alia, contemplated that:



1) Cheques would be drawn in favour of "Punjab National Bank- A/c Prithvi Information Solutions Ltd. No. 4437002100000506.

2) Cheques would contain endorsement "Not negotiable/account payee or beneficiary only", clearly on the face of the Cheque drawn.

3) Cheques would be deposited directly to Punjab National Bank, where the Escrow Account was being maintained.

4) It was further clarified that the term "Cheque" wherever used under the Agreement would deem to include the payment made by Bharat Sanchar Nigam Ltd. through telegraphic transfer or any other mode.



i) That vide a letter dated 01.12.2007, addressed by the Accused No.1, to the Joint Deputy Director General (MM),



Bharat Sanchar Nigam Ltd., BSNL was informed of the details of the Escrow Account. It was further stipulated vide the same letter that all the proceeds against the contract were to be made only to the designated Escrow Account with the Punjab National Bank and not to any other account. Bharat Sanchar Nigam Ltd. was requested to register the Escrow Account Number and issue a letter of confirmation in this regard. A true and typed copy of the letter dated 01.12.2007 is annexed hereto and is marked as *Annexure E* to this Complaint. It is necessary to highlight that this letter clearly spelt out the agreement between the Complainant and the Accused to the effect that the payment instructions thereby established could only be altered upon the written consent of all the three parties to the Escrow Agreement.

j) That Bharat Sanchar Nigam Ltd. replied to the aforesaid communication of the Accused vide their letter dated 05.12.2007 wherein they agreed to conform to the aforesaid payment mechanism. Bharat Sanchar Nigam Ltd. further clarified that necessary instructions in connection with the release of payments would be made to all paying authorities at the time of placing of the formal Purchase Orders. A true and typed copy of the reply issued by Bharat Sanchar Nigam Ltd. dated 05.12.2007 is annexed hereto and is marked as *Annexure F* to this complaint.

k) That subsequently, a Formal Purchase Order bearing No. CT/PO/31/2007/08 dated _____2008 was issued by Bharat



Sanchar Nigam Ltd. in favour of Accused No.1 for the procurement of the goods mentioned therein. It is appropriate to stress that the Formal Purchase Order was only issued after all matters relating to the disbursement of payments by BSNL had been placed on record and all the concerned parties had concurred to the same. Indeed, the details of the Escrow Account were duly mentioned in the Formal Purchase Order. In pursuance of the agreement between the parties, the Complainant supplied the equipment mentioned in the relevant invoices which was duly received and accepted by Bharat Sanchar Nigam Ltd. It is further pertinent to point out that at no point of time did the Accused or Bharat Sanchar Nigam Limited raise any issue regarding the quality of equipment supplied. The Complainant then raised on the Accused company invoices amounting to Japanese Yen Five Billion, Fifty Two Million, One Thousand and Nine Hundred and Ninety Nine as the price of the goods supplied. A true and typed copy of the substantial part of the Purchase Order dated 04.01.2008 is annexed hereto and is marked as *Annexure G* to this complaint.



That as no payments were received in the Escrow Account, the Complainant began to suspect that something was wrong. In the circumstances, the Complainant had no alternative but to take up the matter with the Accused. However, the Complainant only got evasive replies from them, indicating that they were taking up the matter with BSNL. The Complainant, having no alternative but to keep pressing the

issue, repeatedly called upon the Accused in October, November and December, 2008 to find out why remittances had not been received in the Escrow Account.

m) That the conduct of the Accused remained evasive and when called the Accused started becoming elusive. In the circumstances, the Complainant informed the Accused that it would take up the matter with BSNL. At this stage, the Accused informed the Complainant that some payment had been received from BSNL but that that payment had been mistakenly sent by BSNL to another bank account in respect of some other contract that the Accused had entered into with BSNL. The Accused undertook to make good the payment received by forwarding the same to the Escrow Account. That the Accused No.2 affirmed the aforementioned facts vide his letter dated 06.02.2009, a true copy whereof is annexed herewith and is marked as *Annexure H* to the Complaint. However, despite numerous requests by the Complainant, the Accused refused to furnish details of the payments which had been received from BSNL and which had allegedly been mistakenly forwarded to another account of the Accused No.1.

That on 13.02.2009, the Complainant sent a Notice to the accused persons demanding transfer of all payments received by them against the goods supplied to Bharat Sanchar Nigam Ltd. into the Escrow

interest. The accused persons were also requested to furnish a detailed account of the amount received directly from Bharat Sanchar Nigam Ltd. as the Accused had acted illegally and in blatant violation of the express agreement between the parties. A true copy of the notice dated 13.02.2009 is annexed hereto and is marked as *Annexure I* to this complaint.



o) That in response to the Notice dated 13.02.2009, the accused sent another letter dated 19.02.2009 wherein they once again acknowledged their liability and agreed to make good the payment against the goods supplied by the Complainant in compliance with the terms and conditions laid down in the Escrow Agreement. A perusal of the letter dated 19.02.2009 would bear out this aspect of the case and a copy of the same is annexed hereto and is marked as *Annexure J* to this complaint.

p) That it would not be out of place to mention that in further acknowledgment of their liability, the accused persons in order to discharge their part liability, issued a letter dated 26.02.2009 addressed to Punjab National Bank whereby it was instructed to remit a sum of Rupees Twenty Seven Crores Fifty Seven Lakhs in favour of the Complainant Company. A true and typed copy of the letter dated 26.02.2009 is annexed hereto and is marked as *Annexure K* to this complaint.





q)     That thereafter, during the course of various discussions held between the Complainant and the Accused Company, the Accused again admitted their liability and assured the Complainant that they would clear their debts at the earliest. In fact on 03.03.2009, the accused held a joint meeting with the Complainant and signed a Statement of Account for the 10G DWDM Project as of 28.02.2009, confirming the outstanding amount as payable on the said date. A true and typed copy of the statement of account as mentioned above is annexed hereto and is marked as *Annexure L* to this Complaint. That vide their letter dated 30.03.2009, once again admitted and acknowledged their liability and proposed a revised payment schedule, which proposal was never accepted by the Complainant. A true copy the letter dated 30.03.2009 is annexed hereto and marked as *Annexure M.* Thereafter, the Accused on numerous occasions undertook to make payment to the Complainant but failed to do so.

r)     That, despite the assurances given by the Accused, the Complainant had serious misgivings about the intentions of the Accused and began to fear that they had become the victims of a serious fraud. In the circumstances and with a view to finding out the facts for themselves, the Complainant instructed its Counsel to move various applications under The Right to Information Act.

s)     That the official replies to the aforesaid RTI applications clearly indicated that the Accused had, with a fraudulent and

dishonest intention, unilaterally had the mode of payment amended by issuing instructions to Bharat Sanchar Nigam Ltd. which were not only contrary to but also clearly violative of the express terms and conditions incorporated in the Escrow Agreement and the various undertakings given by the Accused persons. That the responses to the RTI applications are evidence enough of the criminal intent and mala fides of the Accused. The response to the RTI application made to BSNL, Chennai clearly evidence that sometime prior to 30.10.2008, the Accused had given a malafide form to BSNL requiring it to forward payments to an account of the Accused No.1, held with Axis Bank, Secunderabad. The Complainant further discovered that the accused had issued letter dated 05.11.2008 to Bharat Sanchar Nigam Ltd. wherein they had asked for an amendment/change of the payment conditions citing some change in their accounting arrangements. A true and type copy of the letter dated 05.11.2008 is annexed hereto and marked as *Annexure N* to this Complaint.

t) That the responses to the RTI applications moved on behalf of the Complainant, further clearly showed that the Accused had deliberately mislead the Complainant by stating that BSNL had mistakenly forwarded some payments to another account of the Accused in respect of another contract of the Accused with BSNL. The replies to the RTI application clearly evidenced that there was no other such contract with respect to which payments were due and payable by BSNL to

the Accused No.1 at the relevant time. That true copies of the replies to the RTI applications are annexed herewith and are collectively marked as *Annexure O* to this complaint.

u) That the mala fide intent of the accused persons is further evident from the fact that a mere perusal of the letter dated 05.11.2008 clearly shows that the change in payment schedule happened around the same time when payments became due and payable by BSNL and receivable by the Complainant. It is also borne out from the record that the accused persons in connivance and conspiracy with one another had instructed Bharat Sanchar Nigam Ltd. to await the details of the bank where the money was to be diverted. Indeed, the mala fides of the Accused are further clearly evident from the fact that the first payment from BSNL Kolkata (Eastern Circle) was made on 18.02.2009 which was after Accused No.2's written admission dated 06.02.2009 referred to hereinabove and already annexed herewith as Annexure H .

v) That the accused persons thus, in complete contravention of the agreement arrived at between the parties and with a view to defraud the Complainant and misappropriate the amount in question, issued mandates to Bharat Sanchar Nigam Ltd. to transfer the payments against the goods supplied to Axis Bank, having Account No. 068010200009317 instead of the Escrow Account. A true and copied copy of the Mandate Form



issued by the accused is annexed hereto and is marked as *Annexure P* to this Complaint.



w) That on receipt of the Accused No.1 letter dated 05.11.2008, on the very same day, Bharat Sanchar Nigam Ltd. vide their letter dated 05.11.08, agreed to amend the banking arrangement for payment as postulated under the Purchase Order No. CT/PO/31/2007-08 dated 04.01.2008. That at no point of time was the Complainant intimated nor was its consent taken with regard to the change in the routing of payments. The Accused acted unilaterally and even attempted to cover up their acts with other lies, thereby clearly establishing their dishonest intention to cause wrongful loss to the Complainant and wrongful gains to themselves. A true and typed copy of the letter dated 05.11.2008 whereby BSNL agreed to incorporate necessary changes in the payment schedule is annexed hereto and is marked as *Annexure Q* to this Complaint.

x) That the Complainant has every reason to believe that certain officers of BSNL acted in concert with the Accused in furtherance of their illegal acts. The letter dated 01.12.2007 clearly stipulated that the Escrow Account conditions could not be altered or amended without the written consent of all the parties to the Escrow Agreement. This was acknowledged and accepted by BSNL. In the circumstances, the ease with which the Accused were able to circumvent the Escrow arrangement, suggests the necessary involvement of certain



officers of the BSNL. However, since the Complainant has no means for determining the identity of said officers, BSNL and the said officers have not been cited as accused in this Complaint. The Complainant, however, reserves the right to initiate appropriate proceedings/lodge complainants in this regard, in due course. The Complainant hereby further reserves its right to initiate civil proceedings.

y) That upon coming to know of the fraudulent conduct of the Accused persons the Complainant variously took up the matter with the Accused No.s 2, 3 and 4. The Complainant called upon the Accused to explain their conduct and informed the Accused that the Complainant was now left with no alternative but to initiate civil and criminal proceedings against the Accused. The Accused were unable to satisfactorily explain their conduct but requested the Complainant not to initiate any proceedings at that time and undertook to start making payments to the Complainant forthwith. However, no such payments were forthcoming.

z) That with a view to covering their tracks, the Accused continuously made a series of misrepresentations to the Complainant/ Petitioner. By a letter dated 27.03.2009 the Accused No.9, asked BSNL to revert back to the payment procedures contemplated under the Supply Agreement. However, to cover up the fact that the Accused has intentionally instructed BSNL to make payments to a person account in direct contravention of the Supply Agreement, the





Accused presented he Complainant/ Petitioner with an alternative letter addressed to BSNL and similarly dated 27.03.2009, asking BSNL to make payment into the Escrow Account. However, in the latter letter the Accused deliberately omitted any reference to its previous instructions to divert funds into its own account. The Accused created the latter letter solely for the purpose of hiding from the Complainant its previous improper instructions to BSNL. That true copies of the aforesaid letters are annexed herewith and are collectively marked as *Annexure R (Colly)*.

aa) That at no time did the Accused agree to confirm the extent of the payments received by them from BSNL. They repeatedly made misrepresentations and gave false assurances of payment with a view to getting the Complainant to defer the initiation of any legal action against the Accused. Clearly, the accused right from the inception of the agreement in question had the dishonest intention of defrauding the Complainant of very large sums of money. The Accused repeatedly made misrepresentations to the Complaint with a view to buying time, causing loss to the Complainant and further causing the Complainant to defer legal action against the Accused. The Complainant is in the process of moving further RTI applications to discover the extent of payments received by the Accused which were to be remitted to the Escrow Account and which were illegally diverted by the Accused. However, the Complainant has reason to believe that the Accused have received in excess of



Rs.186 Crores and illegally diverted the same. A tabulated chart of the payments received by Accused No.1 from BSNL is annexed herewith and is marked as *Annexure S* to this Complaint.

7. That in the light of abovementioned facts and circumstances and material on record, it is manifestly clear that the Complainant has been defrauded and cheated by the accused persons in, at least, the sum of Rupees 186 Crores. The accused persons are liable to be proceeded against and punished in accordance with law in respect of the following offences;

(i) All the accused are liable to be proceeded against for the offence of cheating as defined under Section 420 of the Indian Penal Code. As already stated hereinbefore, the accused right since the inception of the agreement in November 2007, had the dishonest intention of defrauding the Complainant by inducing it to supply the goods based on the representations and assurances that the payments received against the outstanding invoices would be transferred into an Escrow account. However, once the goods were supplied and the amounts became due, the Accused unilaterally issued instructions to Bharat Sanchar Nigam Ltd. to change the payment schedule and transfer the funds into an account of their own choice. This clearly establishes that the accused right from the beginning had the fraudulent intention of causing wrongful gain to themselves and wrongful loss to the Complainant.

(ii) That the offence of cheating is further made out from the fact that the accused pursuant to persistent requests made by the Complainant to make good their liability, on each occasion undertook to make payment forthwith and in this regard they made further representations and gave further assurances to the Complainant. However despite that, the accused failed to honour their commitment and till date they have not cleared their dues.

(iii) That the accused persons are also liable to be proceeded against under Section 409 of the Indian Penal Code as they acted in patent violation of a contract which was reached upon between the parties by virtue of agreement dated 10.12.2007 (Escrow Agreement). The very fact that the accused unilaterally issued instructions to Bharat Sanchar Nigam Ltd. to change the payment schedule and transfer the funds into an account of their own choice clearly shows that there was a palpable breach of express terms and conditions as postulated under the escrow agreement, as also, the Supply Agreement dated 29th November, 2007 wherein the escrow mechanism was stipulated and further wherein the Complainant's rights to all receivables from BSNL were stipulated and agreed upon between the Complainant and the Accused . Hence the accused are liable to being proceeded against and punished under Section 409 of the Indian Penal Code as well. That the import of the initial Escrow Agreement was that the Complainant was entitled to at least 91.9 % of all sums received from BSNL in respect of the contract under consideration. That even if BSNL had wrongly transferred monies into another account of the Accused, the Accused received the same on trust for the Complainant and were liable to discharge that trust in terms of the



letter and spirit of the Agreement of the parties. That all monies received by the Accused from BSNL with respect to the contract which is the subject matter of this Complaint were held by the Accused on trust for the Complainant. That as per the agreement between the Complainant and the Accused, the monies received from BSNL were to be remitted to the Escrow Account and were even otherwise the property of the Complainant. The Accused dishonestly misappropriated and converted unto their own use the said monies and further used the said monies in violation of a specific legal contract. The Accused have committed criminal breach of trust as defined under Section 405 and punishable under Section 406 of The Indian Penal Code. The Accused came to be entrusted with the said sums in the course of their business as merchants and are, as such, guilty of the higher offence of criminal breach of trust within the contemplate of Section 409 of The Indian Penal Code, 1860.

(iv)   That the accused No. 2 to 13, who are the Chairman, Managing Director and other Directors of the accused Company have acted in connivance and conspiracy with one another by making assurances and representations to the Complainant Company at different intervals. Consequently they are liable to be proceeded against and punished under Section 120B of the Indian Penal Code since they acted in concert in order to achieve the illegal design of misappropriating the amounts due to the Complainant by cheating it.

(v)   All the accused persons acted and performed different acts in furtherance of their common intention of defrauding the

Complainant and cheating it. Hence they are liable to be proceeded against and punished under Section 34 of the Indian Penal Code.

### 7. CAUSE OF ACTION:

That the present complaint is being filed with respect to the acts of cheating and criminal breach of trust committed by the Respondent/ Accused No.1 Company, its Directors and some of its officers, in conspiracy with one another and in the alternative, with common intention against the Petitioner/ Complainant. The acts of the Respondents/ Accused have unlawfully caused the Petitioner/ Complainant substantial financial loss and further are of such a nature, as to have the possible effect of seriously affecting the ability of Hyderabad to attract foreign investment and in particular from Japan. The Complaint is for offences under sections 420/405/406/409/34 read with 120B of the Indian Penal Code, 1860.

### 8. JURISDICTION:

This Hon'ble Court at Madhapur, Cyberabad has territorial jurisdiction and is competent to try the present Complaint. The Accused Company is having its registered office at HITEC City, Madhapur, Hyderabad. The Agreement between the parties and the Escrow Agreement were executed at Hyderabad. The false representations made by the Accused were, inter alia, made at Madhapur, Hyderabad. On account of above acts and omissions committed by the accused persons, jurisdiction of this Hon'ble Court is clearly made out.

### 9. LIMITATION:    The Complaint is being filed within limitation

### 10. PRAYER:

It is therefore prayed that this Hon'ble Court may



a) kindly be pleased to proceed, summon the accused named in the complaint, try them and punish them for offences under Sections 420/406/120B/34 of the Indian Penal Code and/or

b) the Complainant may be awarded compensation under section 357 Cr. P.C. and/or

pass any other or further order as it may deem appropriate in the facts and circumstances of the case and in the interest of justice.

COUNSEL FOR THE COMPLAINANT                    COMPLAINANT 

## VERIFICATION

I Mr. Yukihisa Matsumoto, Sojitz Corporation, Japan, General Manager for Telecommunications Project, IT Business Department, s/o Mr. Hisakichi Matsumoto, aged about 50 years r/o 2 – 15 – 3, Ibukino, Izumi – shi, Osaka 594 – 0041, Japan, presently camped at Hyderabad, the Complainant herein do hereby declares that the contents of the above paras are true to my personal knowledge and on legal advise and thus I have not suppressed any material facts of the case and verified and signed on 19th August 2009 at Hyderabad.

COUNSEL FOR THE COMPLAINANT                    COMPLAINANT 





In the Court of the IX Metropolitan
Received
Date
Kukatpally, Hyd.

CR 6970/09
2018/09



IX Metropolitan Magistrate
Cyberabad at Kuk

COURT OF THE
IX M. M. Cybarabad.
Kukatpally, R.R. Dist.

C.A.No. 547 Dt: 11/3/10
Application filed on: 11/3/10
Charges Served on: 11/3/10
Charges recognised on: 11/3/10
Remish ..... 60/- Dt: 11/3/10
........ 11/3/10
........ 11/3/10

Court Attendant
Kukatpally, 11/3/10

# MEMORANDUM OF CRIMINAL MISCELLANEOUS PETITION
## (Under Sec.482 Cr.P.C)
### IN THE HIGH COURT OF JUDICATURE OF ANDHRA PRADESH AT HYDERABAD

Crl.M.P.No.     of 2010

in

Crl.P.No.     of 2010

Between:-

1. Mr.Srikanth Reddy Gaddam, (A-5)
   S/o.G.Narasimha Reddy, aged 35 yrs.,
   C/o.M/s.Prithvi Information Solutions Limited,
   Having its Offices at 10Q3-A1, 19th Floor,
   Cyber Towers, Hitec City, Madhapur,
   Hyderabad-500081.

2. Mr.Omkar Srinivas Bhongir, (A-7)
   S/o.Kasayya, aged 42 yrs.,
   Having its Offices at 10Q3-A1, 19th Floor,
   Cyber Towers, Hitec City, Madhapur,
   Hyderabad-500081.

3. Mr.P.R.Bansal, (A-13)
   S/o.Omkarmal Bansal, aged 53 yrs.,
   Having its Offices at 10Q3-A1, 19th Floor,
   Cyber Towers, Hitec City, Madhapur,
   Hyderabad-500081.

... Petitioners/Accused No.5, 7 & 13.

## AND

1. Sojitz Corporation (through its Authorised representative
   Mr.Yukishisa Matasumoto, S/o.Mr.Hisakichi Atasumoto,
   Aged about 50 years, Having its office at 1-20,
   Akasaka 6 – Chome, Minato-Ku, Tokyo – 107-8665,
   Japan.

... Complainant.

2. State of A.P. rep., by Public Prosecutor,
   High Court, Hyderabad.

... Complainants/Respondents.

## STAY PETITION

For the reasons stated in the Memorandum of Quashing Petition, it is prayed that this Hon'ble Court may be pleased to stay all further proceedings including the appearance of the petitioners in C.C.No.140 of 2010 on the file of the IX Metropolitan Magistrate at Miyapur, R.R.District, pending disposal of the quashing petition before this Hon'ble High Court.

Hyderabad,

Date: -7-2010.

IN THE HIGH COURT OF A.P.
HYDERABAD

Crl.M.P.No.     of 2010

in

Crl.P.No.     of 2010

## STAY PETITION

Filed by:

Sri C.Praveen Kumar, (181)
Advocate,

Counsel for the Petitioners.

## IN THE COURT OF PRINCIPAL DISTRICT JUDGE, RANGA REDDY DISTRICT AT L. B. NAGAR

### Execution Petition No. 66 of 2014

(Seeking enforcement/execution of Delayed Interest and Costs Award dated 29 August 2011)

**Between:**

M/s Sojitz Corporation
1-1, Uchisaiwaicho
2 – Chome, Chiyoda-ku,
Tokyo – 1008691, Japan
Represented by its Power of Attorney Holder
Mr. Naoki Kazama

...Petitioner/Decree-Holder

and

Prithvi Information Solutions Limited
Prithvi House, No. 2-56/2/19,
near Thanda, Khanamet, Hitech City, Madhapur,
Hyderabad- 500081
Andhra Pradesh, India.
Represented by its Managing Director

....Respondent/Judgment-Debtor

---

### EXECUTION PETITION UNDER ORDER 21 RULE 11 OF THE CODE OF CIVIL PROCEDURE, 1908 AND SECTIONS 46, 47 AND 48 OF THE ARBITRATION AND CONCILIATION ACT, 1996 FILED BY THE CLAIMANT/DECREE-HOLDER

| | | |
|---|---|---|
| 1. | Suit Number/Name of Court | Delayed Interest and Costs Award dated 29 August 2011 (**"Delayed Interest and Costs Award"**) passed by the arbitral tribunal comprising of Mr. John Rowland QC, Mr. Christopher Lau SC and Mr. Makhdoom Ali Khan SC (**"Arbitral Tribunal"**) in accordance with the London Court of International Arbitration Rules (**"LCIA Rules"**) in Arbitration No. 91419 in Singapore. |
| 2. | Claimant/Decree-Holder | M/s Sojitz Corporation 1-1, Uchisaiwaicho 2 – Chome, Chiyoda-ku, Tokyo – 1008691, Japan |
| 3. | Respondent/Judgement Debtor | Prithvi Information Solutions Limited Prithvi House, No. 2-56/2/19, near Thanda, Khanamet, Hitech City, Madhapur, Hyderabad- 500081 Andhra Pradesh, India. |
| 4. | Date of Decree | 29 August 2011 |
| 5. | Whether any appeal preferred from the Decree | No appeal has been filed by the Judgement-Debtor against the Delayed Interest and Costs Award to the knowledge of the Decree Holder |

*(Court received stamp, partially legible)*
RECEIVED ... COURT
04 APR ...
RAJESH ...

| | | |
|---|---|---|
| 8. | Previous application of any with date and result | No previous application has been filed. |
| | Payment or adjustment if any | N/A |
| | Whether Decree is transferred or not | No |
| 9. | Amount with interest due upon the decree or other relief granted thereby to any cross decree together with particulars. | **Amount of interest awarded under the Delayed Interest and Costs Award**<br><br>Amount by way of delayed Interest. : JPY 324,244,307<br><br>Equivalent amount is Indian Rupees : INR 18,74,24,455<br><br>Note: Amounts in respect of Goods and interest for usance period was awarded to the Petitioner by the Arbitral Tribunal through a separate award, i.e. the Final Partial Award dated 29 April 2011 read with the Memorandum of correction dated 9 May 2011 in respect of which the Petitioner is filing a separate execution application before this Hon'ble Court. |
| 10. | Amount of cost, if any awarded. | **Amount of costs awarded under the Delayed Interest and Cost Award**<br><br>Professional legal fees incurred by Sojitz pursuant to the arbitration proceedings : USD 1,367,368.63<br><br>Costs by way of disbursements for expert fee and expenses, travel costs of Sojitz' in-house counsel, witnesses and related expenses : USD 192,808.61<br><br>Payments made by Sojitz to LCIA : USD 167,615.74<br><br>Cost in respect of the time incurred by the Sojitz' in-house counsel team. : USD 61,647.50<br><br>Total amount awarded as costs : USD 1,789,440.48<br><br>Equivalent amount is Indian Rupees : INR 10,75,89,214<br><br>**Total E.P. amount** : **INR 29,50,13,669** |
| 11. | Against whom to be executed | Prithvi Information Solutions Limited Prithvi House, No. 2-56/2/19, near Thanda, Khanamet, Hitech City, Madhapur, Hyderabad- 500081 Andhra Pradesh, India. |

| | |
|---|---|
| 12 | Mode in which assistance of Court is required. |

The Decree-ho...

dated 29 August 20...

Arbitral Tribunal in...

against the Judgmen...

the Delayed Interes...

Delayed Interest a...

reserves its right to...

the amounts award...

separate execution...

**The Decree-Holde...**

The Decree-Holde...

properties describ...

Court to attach th...

Procedure Code, ...

tangible moveab...

decretal amount ...

other order(s) a...

the interest of ju...

Advocate for ...

Place: Hyd...

Date:

2

| 12 | Mode in which the assistance of the Court is required. | (i) | By the attachment and sale, or by sale without attachment, of any property (immovable or movable) and/or funds in bank accounts of the Judgment-Debtor; |
|---|---|---|---|
| | | (ii) | by the arrest and detention in prison of the relevant directors and officers of the Judgment-Debtor; |
| | | (iii) | by the appointment of a receiver in respect of the assets of the Judgement Debtor; and |
| | | (iv) | otherwise, as the nature of the relief granted may require. |

The Decree-holder submits that in spite of the Delayed Interest and Costs Award dated 29 August 2011 ("**Delayed Interest and Costs Award**") being passed by the Arbitral Tribunal in accordance with the LCIA Rules in Singapore in Arbitration No. 91419 against the Judgment-Debtor, the Judgment-Debtor has deliberately failed to comply with the Delayed Interest and Costs Award by not making payment of monies as per the Delayed Interest and Costs Award to the Decree-Holder. The Decree-Holder hereby reserves its right to initiate further execution proceedings or other proceedings to realize the amounts awarded under the Delayed Interest and Costs Award including by filing separate execution petition(s) as and when necessitated.

**The Decree-Holder humbly prays as follows:**

The Decree-Holder submits that the Judgment-Debtor owns, *inter alia*, certain moveable properties described in the Schedule to this Petition. The Decree-Holder prays the Hon'ble Court to attach the movable properties under Order XXI Rules 43, 46, 64 & 66 of the Civil Procedure Code, 1908 described in the Schedule to this Petition and auction and sell all tangible moveable assets described in the Schedule to this Petition for realizing the decretal amount along with future interest till the date of payment thereof and pass such other order(s) as may be deemed fit and proper in the circumstances of the case and in the interest of justice.

Decree-Holder

Advocate for Decree-Holder

Place: Hyderabad.
Date: 04/4/2014



3



## VERIFICATION

I, Naoki Kazama, S/o Mr. Toshio Kazama, aged 45 years, R/o 11-17-104, Honkomagome 1-chome, Bunkyo-ku, Tokyo113-0021, Japan, having temporarily come down to Hyderabad, Special Power of Attorney Holder, do hereby verify that the contents of:

(i) Paras 1-27,30,33,35 and 38 of this affidavit are true and correct to the best of my personal knowledge, information and belief; and

(ii) All other paras and the prayers in this affidavit are based on advice received by me from my legal counsel, which I believe to be true and correct.

Verified on this the 4th day of April 2014.



Decree-Holder

4

## SCHEDULE OF PROPERTIES

### Schedule of Movable Property / Asset

1. All the movable assets of the Judgment-Debtor in/around the office premises of the Judgment-Debtor at Prithvi House, No. 2-56/2/19, near Thanda, Khanamet, Hitech City, Madhapur, Hyderabad- 500081 Andhra Pradesh, India which are estimated by the Decree-Holder as follows:

| S.No | Description | Number | Estimated Value |
|------|-------------|--------|-----------------|
| 1. | Tables | 30 | Rs. 30,000 (1000 x 30) |
| 2. | Chairs | 50 | Rs. 25,000 (500 x 50) |
| 3. | Air Conditioners | 10 | Rs.1,00,000(10,000x10) |
| 4. | Generator | 1 | Rs.1,00,000 |
| 5. | Refrigerator | 1 | Rs.10,000 |
| 6. | Computers | 20 | Rs.2,00,000(10,000x20) |
| 7. | Intercom | 1 | Rs.1000 |
| 8. | Cubicles/Partitions | 10 | Rs.10,000(1000x10) |
| 9. | Printers | 2 | Rs.2000(1000x2) |
| Total Estimated Value | | | Rs.4,78,000 |

2. Judgment-Debtor's entire stocks of raw materials, semi-finished and finished goods, consumable stores and spares and such other movables including book-debts, bills whether documentary or clear, outstanding monies receivables (except to the extent charged in favour of/held on behalf of the Petitioner), both present and future, and whole of the moveable properties of the Respondent including its moveable plant and machinery, machinery spares, tools and accessories and other movables both present and future whether installed or not and whether now lying loose or which are now lying or stored in or about or shall hereafter from time to time be brought into or upon or be stored or be in or about all of the Respondent's factories, premises and godowns or wherever else such assets or properties may be or be held by any party to the order or disposition of the Respondent or in the course of transit or on high seas or on order or delivery both present and future book-debts (except to the extent charged in favour of/held on behalf of the

Petitioner) and all other moveable assets of the Respondent including but not limited to documents of title to the goods, outstanding moneys, receivables including receivables or claims under any cash or other incentive schemes including by way of refund of duties as applicable under any law/regulation/policy in force, bills, invoice documents, contracts, insurance policies, guarantees, engagements, securities, investments and rights and all future machinery belonging to or in the possession of or under the control of the Respondent wherever lying stored and kept and whether in possession of the Respondent or of any third party whether in India or elsewhere throughout the world (including all such goods, other movables assets as may be in course of shipment transit or delivery).

The Decree-Holder reserves the right with the permission of this Hon'ble Court to seek further details from the Judgment-Debtor and/or include in this Execution Petition and the Schedule any other assets of the Judgment-Debtor identified later.

## VERIFICATION

I, Naoki Kazama, S/o Mr. Toshio Kazama, aged 45 years, R/o 11-17-104, Honkomagome 1-chome, Bunkyo-ku, Tokyo113-0021, Japan, having temporarily come down to Hyderabad, Special Power of Attorney Holder, do hereby verify that the contents of:

(i) Paras 1-27,30,33,35 and 38 of this affidavit are true and correct to the best of my personal knowledge, information and belief; and

(ii) All other paras and the prayers in this affidavit are based on advice received by me from my legal counsel, which I believe to be true and correct.

Verified on this the _4th_ day of April 2014.

Decree-Holder

IN THE COURT OF HON'BLE
PRINCIPAL DISTRICT JUDGE,
RANGA REDDY DISTRICT,
AT L. B. NAGAR

E.P. NO.        of 2014

Between:

M/s Sojitz Corporation
                    ...Petitioner/DHR

and

Prithvi Information Solutions Limited
                    ....Respondent/JDR

<u>EXECUTION PETITION UNDER
ORDER 21 RULE 11 OF C.P.C. &
SECS. 46, 47 AND 48 OF THE
ARBITRATION AND CONCILIATION
ACT, 1996 FILED BY THE
CLAIMANT/DECREE-HOLDER</u>

Filed on: 4/4/2014.

Filed by :

SRI AVINASH DESAI
Advocate

Counsel for petitioner/DHR

'BLE
JDGE,
ICT,

014

er/DHR

imited
lent/JDR

IDER
P.C. &
THE
ATION
E
DER

## IN THE COURT OF HON'BLE PRINCIPAL DISTRICT JUDGE, RANGA REDDY DISTRICT, AT L. B. NAGAR

### EXECUTION PETITION NO. 66 OF 2014

(Seeking enforcement/execution of Delayed Interest and Costs Award dated 29 August 2011)

Between:

M/s Sojitz Corporation
1-1, Uchisaiwaicho
2 – Chome, Chiyoda-ku,
Tokyo – 1008691, Japan
Represented by its Power of Attorney Holder
Mr. Naoki Kazama

...Petitioner/Decree-Holder

and

Prithvi Information Solutions Limited
Prithvi House, No. 2-56/2/19,
near Thanda, Khanamet, Hitech City, Madhapur,
Hyderabad- 500081
Andhra Pradesh, India.
Represented by its Managing Director

....Respondent/Judgment-Debtor

### AFFIDAVIT

I, Naoki Kazama, S/o Mr. Toshio Kazama, aged 45 years, R/o 11-17-104, Honkomagome 1-chome, Bunkyo-ku, Tokyo113-0021, Japan, having temporarily come down to Hyderabad, Special Power of Attorney Holder, do hereby solemnly affirm and state as under:

1.  I am the Special Power of Attorney Holder of the Petitioner, which is valid and subsisting to represent the Petitioner and as such I am fully conversant with the facts and circumstances of the case. I further state that I have filed a separate application under Rule 32 of the Andhra Pradesh Civil Rules of Practice and Circular Orders, 1990 and as such I am entitled to represent the Petitioner. A true copy of the Power of Attorney is annexed hereto and marked as **Annexure A**.

2.  The Petitioner / Decree-Holder is a company incorporated under the laws of Japan having its registered office and principal place of business at 1-1, Uchisaiwaicho 2 – Chome, Chiyoda-ku, Tokyo – 1008691, Japan and is engaged in the business of international trade and trade financing.



8

3. The Respondent/Judgment-Debtor is a company incorporated under the Companies Act, 1956 having its registered office at Prithvi House, No. 2-56/2/19, near Thanda, Khanamet, Hitech City, Madhapur, Hyderabad- 500081, Andhra Pradesh, India.

4. On 8 November 2007, the Respondent was awarded a tender ("**Tender**") by Bharat Sanchar Nigam Limited ("**BSNL**") for the supply of 40 Channel 10G Dense Wavelength Division Multiplexer equipment ("**Goods**"). Pursuant to the Tender, BSNL issued an advance purchase order (bearing reference no. MM/TX/032007/000328) dated 08 November 2007 to the Respondent (including its amendment dated 27 November 2007) (the advance purchase order dated 8 November 2007 and the amendment dated 27 November 2007 are collectively referred to as the "BSNL APO"). Thereafter, the Respondent entered into an agreement dated 29 November 2007 read with the addendum dated 12 December 2007 (such agreement and the addendum are collectively referred to as the "**Supply Agreement**") with the Petitioner under which the Petitioner was to procure the Goods from Huawei Technologies Company Limited and supply the Goods to the Respondent, to facilitate supply to BSNL in accordance with the BSNL APO. The total value of Goods required to be supplied by the Petitioner under the Supply Agreement was USD 47,483,113.98. A certified copy of the supply agreement dated 29 November, 2007 is annexed hereto and marked as **Annexure B** and a certified copy of the addendum to the supply agreement dated 12 December 2007 is marked as **Annexure C**.

5. Under Article VI (k) of the Supply Agreement, the parties had agreed that the Petitioner would have a charge on the receivables of the Respondent from BSNL in connection with the BSNL APO. Accordingly, the Respondent created a charge (subsequently modified pursuant to the addendum to the supply agreement dated 12 December 2007) on the book debts under the Supply Agreement in relation to the BSNL APO, in favour of the Petitioner and registered such charge with the registrar of companies. A true copy of the Form-8 creating the charge is annexed hereto and marked as **Annexure D** and a true copy of the Form-8 modifying such charge pursuant to the addendum to the supply agreement dated 12 December 2007 is marked as **Annexure E**.

9

Jer the

56/2/19,

Andhra

y Bharat

; Dense

Tender,

ce no.

iuding its

dated 8

illectively

i into an

ecember

o as the

o procure

Goods to

NL APO.

ie Supply

greement

B and a

iher 2007

i that the

n BSNL in

a charge

ient dated

relation to

e with the

s annexed

fying such

December

N

6. In connection with the Supply Agreement, the Petitioner, Respondent and the Punjab National Bank ("PNB") entered into an escrow agreement dated 10 December 2007 (amended vide addendum dated 29 April 2009) (the escrow agreement dated 10 December 2007 and the addendum dated 29 April 2009 are collectively referred to as the "**Escrow Agreement**") under which all payments from BSNL to the Respondent in terms of the BSNL APO were to be made directly in a designated escrow account with PNB, in the name and style of "Punjab National Bank-A/c Prithvi Information Solutions Limited No. 443700210000056 ("**Escrow Account**"). Pursuant to Clause 4.1 of the Escrow Agreement, the Petitioner is the sole beneficiary of the monies deposited in the Escrow Account. A true copy of the Escrow Agreement (including the addendum dated 29 April 2009) is annexed hereto and marked as **Annexure F**.

7. In accordance with the Supply Agreement, the Goods were supplied to the Respondent over a five month period from 16 January 2008 to 18 June 2008. Thereafter, the Respondent supplied the Goods to BSNL, which were duly accepted and paid for by BSNL to the Respondent. However, despite the Petitioner having supplied full value of the Goods as required under the Supply Agreement, payments made by BSNL to the Respondent, pursuant to the supply of Goods, were not deposited in the Escrow Account but into accounts held by the Respondent with banks other than PNB, at the direction of the Respondent (without the knowledge or consent of the Petitioner, such directions being malicious and in violation of the agreements entered into between the Petitioner and the Respondent). In fact, the first deposit by BSNL into the Escrow Account did not occur until 14 August 2009. Consequently, disputes arose between the Petitioner and the Respondent due to non-payment of the outstanding amounts for the Goods supplied by the Respondent and deficit funds in the Escrow Account.

8. The Supply Agreement contained an arbitration clause in Article VIII (C). The provision of Article VIII (C) of the Supply Agreement is extracted below.

*"All disputes, controversies or differences which may arise between SELLER (Petitioner) and PURCHASER (Respondent), out of or in connection with or in relation to this contract, or for the breach thereof, shall be settled by arbitration in Singapore in accordance with the LCIA Rules applicable to the Court of*

*International Arbitration at Singapore. The award of Arbitrator(s) shall be final and binding upon both parties. The venue of the arbitration will be Singapore".*

9. Pursuant to Article VIII (C), the Supply Agreement was governed by the laws of England, United Kingdom and the trade terms under the Supply Agreement were governed by and interpreted under the provisions of the International Rules for the Interpretation of Trade Terms (Incoterms) 2000.

10. Since the Respondent did not come forward for an amicable settlement of disputes, the Petitioner was constrained to submitted a request for arbitration on 26 August 2009 claiming the following amounts from the Respondent:

   (i)     JPY 4,474,648,394 in respect of the Goods;

   (ii)    JPY 41,493,547 in respect of interest for usance period in accordance with Article VI(d) of the Supply Agreement;

   (iii)   'delayed interest' in accordance with Article VI(q) of the Supply Agreement; and

   (iv)    costs of arbitration and other legal costs pursuant to the arbitration.

11. The Arbitral Tribunal constituted pursuant to the request for arbitration convened the hearing on merits from 13 September 2010 to 18 September 2010. During the arbitration proceedings, the Respondent submitted extensive briefs, witness statements, live testimony and expert reports on the merits of Petitioner's claims, in addition to bringing its own counter-claims against the claims of the Petitioner. The Respondent did not contest the jurisdiction of the Arbitral Tribunal or the arbitrability of the disputes.

12. On 29 April 2011 the Arbitral Tribunal after having given due opportunity to both the parties and considering the claims of the Petitioner and the counter-claims raised by the Respondent, passed a 'final partial award' for an amount of JPY 4,517,141,941 in favour of the Petitioner while rejecting the counter-claims raised by the Respondent. Subsequently, on 9 May 2011, the Arbitral Tribunal published a Memorandum of correction correcting two typographical errors in the 'final partial award'. In terms of the final partial award read with the supplemental Memorandum of correction ("**Final Partial Award**"), the Arbitral Tribunal, directed the Respondent

to pay an amount of approx. JPY 4,516,141,941 in respect of Goods and interest on usance period in respect of which the Petitioner is filing a separate execution application before this Hon'ble Court.

13. The Final Partial Award did not adjudicate on the liability of the Respondent towards the Petitioner in respect of 'delayed interest' in accordance with Article VI (q) of the Supply Agreement and costs (set out in para 10(iii) and 10(iv) above) in respect of which submissions were invited by the Arbitral Tribunal from the Petitioner and the Respondent within 28 days from 29 April 2011 (with liberty to extend such date).

14. On 28 May 2011, the Petitioner made its submissions in respect of the 'delayed interest and costs' before the Arbitral Tribunal. The Respondent, however, did not make any submissions or appearances before the Arbitral Tribunal in relation to the adjudication on 'delayed interest and costs'.

15. I submit that thereafter, the Petitioner and the Respondent had commenced settlement discussions in order to negotiate the amounts payable by the Respondent under the Final Partial Award and the award in respect of delayed interest and costs (which was under consideration of the Arbitral Tribunal at the time of settlement discussions).

16. Pending adjudication by the Arbitral Tribunal in respect of 'delayed interest and costs', the Petitioner and the Respondent entered into a settlement agreement ("Settlement Agreement") on 29 August 2011, under which the Petitioner agreed to accept and the Respondent agreed to pay a reduced amount of approx. USD 29.5 million (coupled with interest), in addition to the USD 2,000,000 already paid, in full and final settlement of all causes of action that either the Petitioner or the Respondent may have under the Supply Agreement and/or in relation to supply of the Goods. This negotiated amount of USD 29.5 million was to be paid by the Respondent in seven instalments between 5 August 2011 and 6 June 2013 as per Schedule 1 to the Settlement Agreement ("Schedule 1"). Further, as per Clause 5 of the Settlement Agreement, the Respondent had agreed to provide the Petitioner with security in respect of USD 21.5 million by creating a charge, which was to be

registered by the Respondent with the registrar of companies. A true copy of the Settlement Agreement is annexed hereto and marked as **Annexure G**.

In the meantime, despite various enquires being made and extensions being granted by the Arbitral Tribunal to the Respondent, the Respondent failed to make any submissions in respect of 'delayed interest and costs' to the Arbitral Tribunal. Accordingly, the Arbitral Tribunal proceeded to determine the issues relating to the computation of 'delayed interest and costs' on the basis of the submissions made by the Petitioner before the Arbitral Tribunal and having regard to the Arbitral Tribunal's findings in the Final Partial Award, passed an award on 'delayed interest and costs' (**"Delayed Interest and Costs Award"**) on 29 August 2011. A certified copy of the Delayed Interest and Costs Award is annexed hereto and marked as **Annexure H**.

18. In terms of the Delayed Interest and Costs Award, the Respondent was directed to pay to the Petitioner the following amounts:

    (i) JPY 324,244,307 in respect of 'delayed interest' under Article VI(p) of the Supply Agreement; and

    (ii) USD 1,789,440.48 in respect of the costs incurred by the Petitioner in the course of the arbitration proceedings.

19. The Settlement Agreement recorded in Clause 9 that in the event of a breach of such agreement, including failure on the part of the Respondent to pay amounts due, on or before the date specified in Schedule 1, the entire outstanding balance under the Final Partial Award and the Delayed Interest and Costs Award would immediately become due and payable and the Respondent would then consent to a judgement being entered on the basis of the awards (less the amounts already paid) in the courts of any competent jurisdiction.

20. The Respondent failed to comply with the terms of the Settlement Agreement. Not only did the Respondent fail to make payments to the Petitioner in accordance with Schedule 1, the Respondent also failed to create charge in favour of the Petitioner as contemplated in Clause 5 of the Settlement Agreement. After several failed attempts at ensuring that the Respondent complied with the terms of the Settlement Agreement, the Petitioner by way of a letter dated 4 October 2013 informed the

of the

being

) make

ibunal.

1 to the

; made

Arbitral

nterest

ertified

ked as

cted to

of the

in the

ach of

1 nts

alance

would

ent to

lready

it. Not

e with

itioner

failed

ement

ed the

Respondent that they had repudiated the Settlement Agreement and that the Petitioner had accepted such repudiation of the Settlement Agreement by the Respondent.

21. Upon the repudiation of the Settlement Agreement by the Respondent, the Petitioner proceeded to enforce the Final Partial Award and the Delayed Interest and Costs Award against the assets of the Respondent in Pennsylvania, United States in accordance with Clause 9 of the Settlement Agreement. The Petitioner accordingly filed a petition on 25 October 2011 bearing case number cv-01321 (**"US Enforcement Petition"**) before the United States District Court, in the Western District of Pennsylvania (**"Pennsylvania Court"**) to commence enforcement proceedings. Pursuant to the US Enforcement Petition, several interim orders were passed by the Pennsylvania Court between 6 December 2011 and 20 December 2012. A true copy of the US Enforcement Petition is annexed hereto and marked as **Annexure I** and true copies of the orders passed by the Pennsylvania Court are marked as **Annexure J**.

22. During the pendency of the US Enforcement Petition, the Petitioner and the Respondent resumed settlement negotiations and thereafter entered into a Reinstatement and Amendment Agreement dated 12 June 2012 (**"RAA"**) to reinstate and amend certain terms and conditions of the Settlement Agreement. Schedule 1 of the RAA recorded that an amount of USD 19.5 million had already been paid by the Respondent to the Petitioner and a further amount of USD 10.5 million was to be paid by the Respondent in accordance with such Schedule 1. A true copy of the RAA is annexed hereto and marked as **Annexure K**.

23. Clause 8 of the RAA, which amended Clause 10 of the Settlement Agreement, provided that the Petitioner would withdraw the US Enforcement Petition upon execution of the RAA. Further, sub-clause (b) of Clause 8 of the RAA provided that in the event the Respondent failed to make payment that remained due under the RAA on the due date of such payment, such failure would constitute a material breach of the RAA and entitle the Petitioner to judgement in the amount of USD 35.3 million, less any payments made by the Respondent to the Petitioner, subsequent to the RAA. In addition to the right to enter judgment by confession as set forth in Clause 8(b) of the RAA, sub-clause (c) of Clause 8 of the RAA entitled

the Petitioner to reinstitute or commence proceedings against the Respondent in any jurisdiction in respect of the Final Partial Award and the Delayed Interest and Costs Award.

Pursuant to the RAA, the Respondent paid only an amount of USD 1,523,000 to the Petitioner and defaulted in making the balance payments in accordance with Schedule 1 of the RAA. Consequently, the Petitioner took recourse to the confession of judgement process available to it under Clause 8(b) of the RAA. The Petitioner had, as agreed under the RAA withdrawn US Enforcement Petition. Pursuant to Clause 8(b) of the RAA, the Petitioner filed a petition, on 17 December 2012, bearing case number MC-12-271 (**"Confession of Judgement Petition"**) before the Pennsylvania Court, seeking entry of judgement against the Respondent for an amount of USD 33,777,000 (i.e., USD 35,300,000, being the authorised judgement amount **less** USD 1,523,000 being amounts already paid under the RAA.). A true copy of the Confession of Judgement Petition is annexed hereto and marked as **Annexure L.**

25.    Pursuant to the Confession of Judgement Petition, the Pennsylvania Court by its order dated 18 December 2012, entered judgment for an amount of USD 33,777,000 in favour of the Petitioner. In the meantime, pursuant to the withdrawal of the US Enforcement Petition by the Petitioner, the Pennsylvania Court by its order dated 20 December 2012 passed an order dismissing the US Enforcement Petition. A true copy of the order dated 18 December 2012 of the Pennsylvania Court is annexed hereto and marked as **Annexure M** and a true copy of the order dated 20 December 2012 is marked as **Annexure N.**

26.    The proceedings in respect of the Confession of Judgement Petition (**"US Proceedings"**) are currently pending before the Pennsylvania Court. However, as at the date of this Execution Petition, no amounts have been recovered by the Petitioner from the Respondent, pursuant to the US Proceedings. If, however, during the course of the proceedings before this Hon'ble Court, any amounts are received/recovered by the Petitioner from the Respondent pursuant to the US Proceedings, the Petitioner will file an affidavit before this Hon'ble Court disclosing the details of any such recovery. Hence, the Petitioner is filing the instant

15

Execution Petition seeking enforcement and execution the Final Partial Award in its favour.

27. As at the date of the instant Execution Petition, an amount of INR 12,72,35,509.00 is lying in the Escrow Account for the sole benefit of the Petitioner. The Assistant Commissioner of Income Tax, Circle-16(3), Basheerbagh, Hyderabad ("ACIT") had issued a notice dated 25 November 2011 to PNB, under Section 226(3) of the Income Tax Act, 1961, demanding payment of amounts either owed by PNB to the Respondent or held by PNB for or on account of the Respondent, to satisfy arrears of income tax due from the Respondent. Despite the fact that the Petitioner is the sole beneficiary of the amounts lying in the Escrow Account, which in any event are charged in favour of the Petitioner (copies of the Form-8s evidencing the charge are annexed as Annexure D and Annexure E), the Tax Recovery Officer concerned wrongfully attached the amounts in the Escrow Account ("TRO Attachment") to recover the tax arrears of the Respondent. As at the date of the instant Execution Petition, the TRO Attachment continues to remain in force. If the TRO Attachment is revoked, the amount of INR 12,72,35,509.00 lying in Escrow Account is likely to be released in favour of the Petitioner (the sole beneficiary of such amounts). The Petitioner has already made representations before the ACIT and the Central Board of Direct Taxes explaining the legality of the monies lying in the Escrow Account and will be initiating separate proceedings to effect the release of such monies as per the advice of its local Indian counsel. Once the monies in the Escrow Account are released to the Petitioner, the Petitioner will file an affidavit before this Hon'ble Court disclosing the details of the monies recovered by it.

28. I have been informed by my local Indian counsel, and believe, that the Delayed Interest and Costs Award is a "foreign award" as defined in Section 44 of the Arbitration and Conciliation Act, 1996, which is binding between the parties and all the conditions contemplated for enforcement of a foreign award were fulfilled and further there is no impediment to enforce the Delayed Interest and Costs Award passed by the Arbitral Tribunal in Singapore for its enforcement in India.

29. I have been informed by my local Indian counsel, and believe, that the proceedings of the Arbitral Tribunal were in accordance with the LCIA Rules applicable to the London Court of International Arbitration in Singapore and proper notice for such

arbitration was given to the parties and the composition of the Arbitral Tribunal was in accordance with the said rules. Further, the Final Partial Award has been issued in Singapore which, I have been informed by my local Indian counsel, and believe, is a country notified by the Government of India to be a country to which the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 1958 ("**New York Convention**") applies and India and Japan are also signatories to the New York Convention. Hence the Final Partial Award is recognized as a "foreign award" for the purpose of the Arbitration and Conciliation Act, 1996 and is enforceable as such in India.

30. I state that according to the Decree-Holder, the Delayed Interest and Costs Award passed by the Arbitral Tribunal in Singapore has become final and there are no stay orders or applications against the Delayed Interest and Costs Award to the knowledge of the Decree-Holder, as the Decree-Holder has not received any order or summons challenging the Delayed Interest and Costs Award or any part thereof. The Delayed Interest and Costs Award is thus binding on the Judgment-Debtor and the Decree-Holder is entitled to enforce the Delayed Interest and Costs Award. The Delayed Interest and Costs Award involves payment of money, which the Judgment-Debtor has failed, neglected and refused to make to the Decree-Holder.

31. I have been informed by my local Indian counsel, and believe, that the Delayed Interest and Costs Award is a foreign award and it is settled law that every final foreign arbitral award is to be enforced as if it were a decree of the Court under the provisions of the Code of Civil Procedure, 1908. Therefore, there is no need to have separate proceedings for deciding the enforceability and executing the Final Partial Award thereafter. The Decree-Holder relies on the judgment of the Hon'ble Supreme Court of India in **Fuerst Day Lawson Ltd. v. Jindal Exports Ltd. (2001) 6 SCC 356**. Therefore, the instant Execution Petition is being made for the enforcement as well as for the execution of the Final Partial Award.

32. I have been informed by my local Indian counsel and believe that this Hon'ble Court has the jurisdiction to entertain the instant Execution Petition as it is settled law that enforcement proceedings can be brought wherever the property of the Judgment-Debtor may be situated. I state that the properties of the Judgment-Debtor are situated in Hyderabad, Andhra Pradesh (within the jurisdiction of this Hon'ble

17

Court) and the registered office of the Judgment-Debtor is in Hyderabad, Andhra Pradesh.

33. I further state that the Judgement-Debtor is liable to pay an amount of INR 29,50,13,669 (Rupees twenty nine crores fifty lacs thirteen thousand six hundred and sixty nine) (calculated in accordance with the exchange rate prevailing on 3 April 2014) in satisfaction of the Delayed Interest and Costs Award. A true copy of the Reserve Bank of India webpage indicating the exchange rate prevailing on 3 April 2014 is marked as **Annexure O.**

34. The Judgment-Debtor owns movable assets as referred to in the Schedule to this Execution Petition and such assets as may otherwise be discovered by an execution application for discovery of the assets of the Judgement-Debtor. The Decree-Holder is entitled to claim, and prays for, an order of injunction restraining the Judgment-Debtor from dealing with and/or disposing of and/or alienating and/or encumbering or creating third party interests in any manner whatsoever on all or part of the assets of the Judgment Debtor. It is also necessary that a receiver be appointed in respect of the assets mentioned herein and the said receiver be directed to sell the assets by public auction or by private treaty and adjust the sale proceeds thereof to satisfy the amounts awarded to the Decree-Holder.

35. I say that save and except as aforesaid, the Decree-Holder does not presently have full knowledge of any other assets of the Judgment-Debtor. The Decree-Holder seeks the directions of this Hon'ble Court to the Judgment-Debtor, through its competent directors and/or officers, to file an affidavit disclosing the details of:

(a) all assets of the Judgment-Debtor, both movable (including all receivables) and immovable, along with details of encumbrances, if any, over such assets;

(b) all bank accounts owned and operated by the Judgment-Debtor along with the latest bank account statements;

(c) all fixed deposits and/or other investments by the Judgment-Debtor;

(d) the total assets and liabilities of the Judgment-Debtor; and

(e) all receivables of the Judgment-Debtor.



18

36. The Decree-Holder hereby reserves its rights with the permission of this Hon'ble Court to seek further details from the Judgment-Debtor and/or include in this Execution Petition and the Schedule any other assets of the Judgment-Debtor identified later.

37. In the event the Judgment-Debtor fails to file the affidavit as aforesaid, appropriate direction may also be passed directing the directors of the Judgment-Debtor to be personally present in Court for examination.

38. This Execution Petition is *bonafide* and has been made to meet the ends of justice. The Decree-Holder reserves all its rights to take any further legal action, including civil and/or criminal, against the Judgment-Debtor as well as the right to initiate fresh or further execution proceedings in this or any other jurisdiction(s) as may be warranted to protect the rights of and/or recover the awarded sum to the Decree-Holder.

It is therefore most respectfully prayed that, in view of the aforesaid, this Hon'ble court may be pleased to:

(a) enforce and execute the Delayed Interest and Costs Award dated 29 August 2011 read with the Memorandum of correction dated 9 May 2011 passed by the Arbitral Tribunal in Singapore;

(b) direct the attachment and sale of the assets/properties mentioned in Schedule to this Execution Petition and appropriate the proceeds towards the satisfaction of the sums awarded to the Decree-Holder;

(c) direct the attachment of such further assets, receivables and bank accounts as may be necessary for the satisfaction of the awarded sum due to the Decree-Holder;

(d) direct the Judgment-Debtor to disclose:

(i) all assets of the Judgment-Debtor, both movable and immovable, along with details of encumbrances, if any, over such assets;

(ii) all bank accounts owned and operated by the Judgment-Debtor along with the latest bank account statements;

(iii) all fixed deposits and/or other investments by the Judgment-Debtor

(iv) the total assets and liabilities of the Judgment-Debtor;

19

s Hon'ble

le in this

nt-Debtor

(v) all receivables of the Judgment-Debtor; and

(vi) attach such further assets, receivables and bank accounts as may be necessary for the satisfaction of the awarded sum due to the Decree-Holder.

propriate

btor to be

(e) pass an ad-interim order restraining the Judgment-Debtor from dealing with and/or disposing of and/or alienating and/or encumbering or creating third party interests in any manner whatsoever on all or part of the assets of the Judgment Debtor;

of justice.

including

to initiate

s may be

cree-

(f) award costs of this Execution Petition; and

(g) pass such other orders as this Hon'ble Court may deem fit in the facts and circumstances of this case.

DEPONENT

ourt may

Sworn and signed before
me on this __4__ day of April 2014
at _Hyderabad_

[Notary / Advocate]

ust 2011

e Arbitral

le to this

sums

as may

ler;

ong with

with the

(In The Court of

District Judge, Ranga Re

At L.B. Nagar.

E.P. No.        Of 2014

Between:-

M/s. Sojitz Cooperatial

                    ____ DHR

And.

Pritini Information Soluti :

          Ltd ____ Jt

AFFIDAVIT

Filed on : 4/4/2014

Filed by : Avinash Desai
            M. Ramu
              Advocates

        Counsel for DHR

Skip to Navigation    Skip to Main Content    Site map      A-   A   A+    (A)   A   Language   English ⊕

## Search Menu

Download eCourts Services App :

**CNR Number**

**Case Status**

**Court Orders**

**Cause List**

**Caveat Search**

**Location**

Back

### District Courts, Rangareddy

#### Case Details

| | | | | | |
|---|---|---|---|---|---|
| Case Type | EP - EXECUTION PETITION | | | | |
| Filing Number | 4391/2017 | | Filing Date | | 04-04-2014 |
| Registration Number | 1300240/2017 | | Registration Date | | 04-04-2014 |
| CNR Number | TSRA000100212017   *(Note the CNR number for future reference)* | | | | *View QR Code / Cause Title* |

#### Case Status

| | |
|---|---|
| First Hearing Date | 31st August 2017 |
| Next Hearing Date | 18th September 2020 |
| Stage of Case | FOR FILING COMPROMISE |
| Court Number and Judge | 12-XIII Addl District and Sessions Judge |

#### Petitioner and Advocate

1) M/s Sojitz Corporation.Rep by its Power of Attorney Holder Mr.Naoki Kazama.
   Advocate- Avinash Desai

#### Respondent and Advocate

1) Prithvi Information Slutions Ltd.Rep by its Managing Director.

#### Acts

| Under Act(s) | Under Section(s) |
|---|---|
| ARBITRATION AND CONCILIATION ACT | O21R43. |

#### History of Case Hearing

| Judge | Business On Date | Hearing Date | Purpose of hearing |
|---|---|---|---|
| XIII Addl District and Sessions Judge | 31-08-2017 | 10-10-2017 | PROCESS |
| XIII Addl District and Sessions Judge | 10-10-2017 | 20-11-2017 | CALL ON |
| XIII Addl District and Sessions Judge | 20-11-2017 | 31-01-2018 | CALL ON |
| XIII Addl District and Sessions Judge | 31-01-2018 | 12-04-2018 | CALL ON |
| XIII Addl District and Sessions Judge | 12-04-2018 | 13-06-2018 | CALL ON |
| XIII Addl District and Sessions Judge | 13-06-2018 | 30-07-2018 | CALL ON |
| XIII Addl District and Sessions Judge | 30-07-2018 | 28-09-2018 | CALL ON |
| XIII Addl District and Sessions Judge | 28-09-2018 | 31-10-2018 | NOTICE |
| XIII Addl District and Sessions Judge | 31-10-2018 | 19-12-2018 | NOTICE |
| XIII Addl District and Sessions Judge | 19-12-2018 | 24-01-2019 | NOTICE |
| XIII Addl District and Sessions Judge | 24-01-2019 | 22-03-2019 | CALL ON |
| XIII Addl District and Sessions Judge | 22-03-2019 | 06-06-2019 | CALL ON |

| XIII Addl District and Sessions Judge | 06-06-2019 | 25-07-2019 | CALL ON |
| XIII Addl District and Sessions Judge | 25-07-2019 | 24-09-2019 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 24-09-2019 | 07-11-2019 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 07-11-2019 | 30-01-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 30-01-2020 | 14-02-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 14-02-2020 | 12-03-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 12-03-2020 | 13-04-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 13-04-2020 | 16-06-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 16-06-2020 | 16-07-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 16-07-2020 | 19-08-2020 | FOR FILING COMPROMISE |
| XIII Addl District and Sessions Judge | 19-08-2020 | 18-09-2020 | FOR FILING COMPROMISE |

About Us              Terms and Condions                              Last Reviewed and Updated on : 05 February
NewsLe__er           Copy Right Policy                               2020
Informaon__          Hyper Linking Policy
Help Videos          Privacy Policy                                  Download eCourts Services App :
Site map             Accessibility
Contact Us           Statement
Web Informaon__      Screen Reader Access
Manager              Disclaimer

INDIA CODE

This site is designed, hosted and maintained by Naonal In__formacs Cen_tre (NIC)_ Ministry of
Electronics & Informaon T__echnology, Government of India.

S3 © 2016 eCommi__ee Supreme Court of India. All Rights Reserved

**Daily Status**
District Courts, Rangareddy
**In The Court Of** :XIII Addl District and Sessions Judge
**CNR Number** :TSRA000100212017
**Case Number** :EP/1300240/2017
M/s Sojitz Corporation.Rep by its Power of Attorney Holder Mr.Naoki Kazama.  **Versus**  Prithvi Information
Slutions Ltd.Rep by its Managing Director.
**Date**  : 19-08-2020

---

| | |
|---|---|
| **Business** | : Due to lock down of COVID-19. Call on 18.09.2020. |
| **Next Purpose** | : FOR FILING COMPROMISE |
| **Next Hearing Date** | : 18-09-2020 |

XIII Addl District and Sessions Judge

**Daily Status**
MM Courts, Kukatpalli
**In The Court Of** :IVAJCJ-Cum-XII Additional Metropolitan Magistrate
**CNR Number** :TSRA0A0002522010
**Case Number** :CC/0500904/2014
**Versus**  Prithvi Information Solutions
**Date**  : 14-08-2020

---

| | |
|---|---|
| **Business** | : As per the circular of Honorable High Court for the state of Telangana Hyderabad Roc No. 394/SO/2020 dated 16.03.2020 the case is adjourned to 15.9.2020. |
| **Next Purpose** | : CALL WITH MPs |
| **Next Hearing Date** | : 15-09-2020 |

IVAJCJ-Cum-XII Additional Metropolitan Magistrate

# Exhibit C

| | From: | Satish Vuppalapati <satish@prithvisolutions.com> |
|---|---|---|
| | Sent: | Thursday, August 20, 2020 10:51 AM |
| | To: | Goetz, John D.; Ginsberg, Michael H. |
| | Subject: | RE: court cases- collection efforts |

** External mail **

Also this are public documents and can be obtained by any attorney in india and they can search the cases

satish

**From:** Satish Vuppalapati [mailto:satish@prithvisolutions.com]
**Sent:** Thursday, August 20, 2020 8:15 PM
**To:** 'jdgoetz@jonesday.com'; 'mhginsberg@jonesday.com'
**Subject:** court cases- collection efforts

Dear All,

Pls find below the particulars of the proceedings in india which are still being actively pursued by Sojitz. A copy of the complaint and latest status are also attached for your information and necessary action, if required my legal counsel can give an affidavit to the affect which kind of proves that they are actively pursuing the collection efforts.

Thanks
satish

| S. No. | Particulars of Proceedings | Presiding Court | |
|---|---|---|---|
| 1. | Prithvi: criminal case<br><br>Sojitz Corporation v. M/s Prithvi Information Solutions Ltd. & Ors (C.C. No. 140 of 2009 before Court of IX Metropolitan Magistrate at Miyapur; thereafter transferred to court of 25th Metropolitan Magistrate at Cyberabad and renumbered as C.C.No.904 of 2014) | Court of 25th Metropolitan Magistrate at Cyberabad<br><br>The criminal complaint is still pending before the Magistrate and is being adjourned time to time pending the quashing petition filed in the High Court. | |
| 2. | Prithvi: Quashing Petition | High Court of Judicature at Hyderabad for the State of Telangana | |

| | | | |
|---|---|---|---|
| | 1. M/s Madhavi Vuppalapati & Ors. V. Sojitz Corporation & Anr. (Cr.P No. 1951 of 2010)<br>2. Mr. Srikanth Reddy Gaddam & Ors. v. Sojitz Corporation & Anr (Cr.P. No. 6364 of 2010) | and for the State of Andhra Pradesh<br><br>The quashing petitions are still pending in the High Court | |
| 3. | Prithvi Enforcement Arbitral Award<br><br>M/s Sojitz Corporation v. Prithvi Information Solutions Ltd. (E.P. No. 208/2014 and E.P. No. 209/2014).<br><br>**Note**: EP Nos. 65 and 66 of 2014 have been renumbered before the new judge as EPs 208 and 209 of 2014, respectively.<br><br>**Note**: The EA no.115/2014 in old EP 65/2014 (renumbered as EP 208/2014) has been renumbered as EA 94/2014, EA 116/2014 has been renumbered as EA 96/2014 filed in old EP No. 66/2014 (renumbered as EP 209/2014). | Ranga Reddy District Court, Hyderabad | |
| | | | |

# Exhibit D

| | |
|---|---|
| **From:** | Satish Vuppalapati <satish@prithvisolutions.com> |
| **Sent:** | Sunday, August 23, 2020 6:23 AM |
| **To:** | Goetz, John D.; Ginsberg, Michael H. |
| **Subject:** | FW: Sojitz v. Prithvi.pdf  IMPORTANT:  PLEASE READ |
| **Attachments:** | Sojitz v. Prithvi.pdf |

** External mail **

Proof that guru had knowledge of receipt of attachment

**From:** Guru Pandyar [mailto:guru@prithvisolutions.com]
**Sent:** Thursday, May 9, 2013 8:52 PM
**To:** 'Satish Vuppalapati'; 'Madhavi Vuppalapati'
**Subject:** FW: Sojitz v. Prithvi.pdf IMPORTANT: PLEASE READ

FYI…from David Kalson…

Thanks & Regards,

**Guru Pandyar | Prithvi Information Solutions**
**Asst. Vice President - Operations & Accounts**
14711 NE 29th Pl, Ste 110 Bellevue, WA 98007
☎: 425.296.5050  📠: 425.296.5070  ✉:guru@prithvisolutions.com

Disclaimer in signature: CONFIDENTIALITY NOTICE: This Electronic Mail (e-mail) contains confidential and privileged information intended only for the use of the individual or entity to which it is sent. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please immediately notify the sender by reply e-mail or telephone.

**From:** David Amorose [mailto:david.amorose@prithvisolutions.com]
**Sent:** Thursday, May 9, 2013 8:20 AM
**To:** Guru Prasad Rao Pandyar
**Subject:** FW: Sojitz v. Prithvi.pdf IMPORTANT: PLEASE READ

Regards,
**David J. Amorose**
**Controller**

**Prithvi Information Solutions**
Manor Oak Two
Suite 441
1910 Cochran Road
Pittsburgh, PA 15220
Desk : 412-450-4008
Fax  :  412-450-4005
david.amorose@prithvisolutions.com
http://www.prithvisolutions.com

CONFIDENTIALITY NOTICE: This Electronic Mail (e-mail) contains confidential and privileged information intended only for the use of the individual or entity to which it is sent. If the reader of this message is not

the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please immediately notify the sender by reply e-mail or telephone.

**From:** DKalson@cohenlaw.com [mailto:DKalson@cohenlaw.com]
**Sent:** Thursday, May 09, 2013 11:17 AM
**To:** madhavi@prithvisolutions.com; david.amorose@prithvisolutions.com
**Subject:** Sojitz v. Prithvi.pdf IMPORTANT: PLEASE READ

Madhavi, David,

Please see the attached Praecipe for Issuance of Writ of Attachment of Stock, which we just received in our office today.   I recall a conversation with David some years back that Prithvi was working to settle the Sojitz matter but evidently that did not occur.

You will want to forward this immediately to your counsel in the Sojitz matter.

PLEASE CONFIRM RECEIPT OF THIS MESSAGE.

Best regards,

--David

David J. Kalson
Cohen & Grigsby, P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152
dkalson@cohenlaw.com
412.297.4975 (tel)
412.209.1824 (direct fax)

*****************************************************************
This email contains confidential, privileged information intended only for the addressee. If you have received this email in error, please call us (collect) immediately at 412-297-4900 and ask to speak to the message sender. Also, please email the message back to the sender at Cohen & Grigsby by replying to it and then deleting it. We appreciate your assistance in correcting this error.

http://www.cohenlaw.com
*****************************************************************

*****************************************************************
IRS Circular 230 Disclosure: To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any matter addressed herein.
*****************************************************************

ORIGINAL DOCUMENT PRINTED ON CHEMICAL REACTIVE PAPER WITH MICROPRINTED BORDER

**15561**

**BAYARD, P.A.**
P.O. BOX 25130
WILMINGTON, DELAWARE 19899-5130

WILMINGTON SAVINGS FUND SOCIETY
WILMINGTON, DELAWARE

NUMBER

62-10/311

| DATE | AMOUNT |
|------|--------|
| 5/3/2013 | $20.00 |

*Twenty and No/100 Dollars*————————————————————————————

PAY
TO THE
ORDER
OF

Prithvi Solutions, Inc.

ATTORNEY BUSINESS CLIENT COST ACCOUNT

AUTHORIZED SIGNATURE

THIS DOCUMENT CONTAINS HEAT SENSITIVE INK. TOUCH OR PRESS HERE - RED IMAGE DISAPPEARS WITH HEAT.

⑈015561⑈ ⑆031100102⑆ 207406 893⑈



# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| SOJITZ CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. N13J-00945 |
| | ) | |
| PRITHVI INFORMATION | ) | |
| SOLUTIONS LIMITED, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PRAECIPE FOR ISSUANCE OF WRIT OF ATTACHMENT OF STOCK
### PURSUANT TO 8 *DEL. C.* §324

TO:    Prothonotary
        New Castle County Superior Court
        500 N. King Street
        Wilmington, DE 19901

Please issue a Writ of Attachment *fi.fa.* to the Sheriff of New Castle County to attach the certificated stock in a Delaware corporation known as Prithvi Solutions, Inc., which stock is owned by the defendant, Prithvi Information Solutions Limited ("Defendant"), and currently in the possession of the Defendant as follows:

Prithvi Information Solutions Limited
Prithvi House, 2-56/2/19
Khanamet, Madhapur, Hyderabad -500 081, India

Please further direct the Sheriff of New Castle County to serve a copy of the Writ of Attachment *fi.fa.* on the said Prithvi Solutions, Inc., by leaving copies thereof at its principal place of business in this state pursuant to 8 *Del. C.* § 321 (a), as follows:

Prithvi Solutions, Inc.
c/o Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, Delaware 19808

Please further direct the Sheriff of New Castle County to serve a copy of the Writ of Attachment *fi.fa.* on the said Prithvi Solutions, Inc., by serving the Hon. Jeffrey W. Bullock, Secretary of State of the State of Delaware pursuant to 8 *Del. C.* § 321 (b), as follows:

IN SHERIFF'S HANDS
13 MAY -7 5: 42
NEW CASTLE COUNTY

Secretary of State
John G. Townsend Bldg.
401 Federal Street, Suite 4
Dover, Delaware 19901

Dated: April 4, 2013          BAYARD, P.A.

                              /s/ Stephen B. Brauerman (No. 4952)
                              Stephen B. Brauerman (No. 4952)
                              Vanessa R. Tiradentes (No. 5398)
                              222 Delaware Avenue, Suite 900
                              Wilmington, Delaware 19899
                              (302) 655-5000

                              Attorneys for Plaintiff Sojitz Corporation

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

SOJITZ CORPORATION,                         )
                                            )
    Plaintiff,                           )
                                            )
    v.                                   )   C.A. No. N13J-00945
                                            )
PRITHVI INFORMATION                         )
SOLUTIONS LIMITED,                          )
                                            )
    Defendant.                           )
                                            )

### WRIT OF ATTACHMENT - FIERI FACIAS

TO THE SHERIFF OF NEW CASTLE COUNTY, YOU ARE COMMANDED:

    To serve this Writ of Attachment on Prithvi Solutions, Inc., and attach, levy upon, and seize the certificated stock in a Delaware corporation known as Prithvi Solutions, Inc. which stock is owned by the defendant, Prithvi Information Solutions Limited, Prithvi House, 2-56/2/19, Khanamet, Madhapur, Hyderabad -500 081, India, to satisfy the debt owed to the above named plaintiff by the defendant Prithvi Information Solutions Limited pursuant to 8 *Del. C.* §324 in the amount of **$33,794,912**.

    The amounts the defendant owes are:

| | |
|---|---|
| **Debt:** | $33,777,000.00 ($0.00 has been paid to date) |
| **Interest to date:** | $ 17,822.00 (per diem $166.56 ) |
| **Plaintiff's Court Costs:** | Included |
| **Miscellaneous Costs:** | Included |
| **Prothonotary Filing:** | $50.00 |
| **Sheriff:** | $40.00 |

Plus post judgment interest at $166.56 *per diem*

Issued: _5/7/13_

Sharon Agnew

Prothonotary

Per _Lee Anne Martin_
Deputy

IN SHERIFF'S HANDS
13 MAY -7 AM 5:32
NEW CASTLE COUNTY

**Exhibit E**

| **From:** | Satish Vuppalapati <satish@prithvisolutions.com> |
| **Sent:** | Sunday, August 23, 2020 6:31 AM |
| **To:** | Goetz, John D.; Ginsberg, Michael H. |
| **Subject:** | i can get you an affidavit from an employee of mine |

** External mail **

Dear All,

I can arrange an affidavit from an employee of PISL for the documents am providing

satish

# Exhibit F

** External mail **

**From:** s.srinivasan [mailto:s.srini@sojitz.com]
**Sent:** Wednesday, June 5, 2013 6:32 PM
**To:** Satish V
**Cc:** matsumoto.yukihisa
**Subject:** Payment Instruction Letter to PNB

Dear Mr Satish

As spoken 30 min back,
pls find attached the Prithvi Payment Instruction letter with some modification.
Kindly issue new payment instruction letter as per revised along with A-1 form
for the invoice number mentioned on the payment instruction letter.

We are changed the language of the letter to get remittance of clear fund already
available in the escrow account other than the IT attached portion of 11.85cr.

Pls hand over the stock certificate of PSI

Pls fill the exact amount of the Draft + 86 lacs and total amount ......on the instruction letter.


Rgs
srini



Success 360°. Delivered

December 27, 2012.

The Branch Head,
Punjab National Bank,
Mid Corporate Branch,
Road No.1, Banjara Hills,
Hyderabad – 500 034.

Dear Sir,

Sub : Request for Remittance.

Ref : a) Sojitz Invoice Number Mentioned below.
      b) Prithvi Escrow Account No.4437002100000506.
      c) Our letter dated September 21, 2012.

Further to our letter dated September 21, 2012, we would like to make remittance against the following invoices to SOJITZ CORPORATION:

| S.No. | Invoice No. | Amount (JPY) | BOE No. |
|-------|-------------|--------------|---------|
| 1. | SJRP-5291-NN | 790,440,689.00 | RG0000129730 |
| | **Total** | **790,440,689.00** | |

Now, we request you to remit the part payment as per available funds in the above Escrow Account towards above Invoice. Any difference on account of change in conversion rate from the rate considered by us above can be adjusted in the payment against Invoice No.SJRP-5291-NN. Please debit the equivalent rupee amount to our above referred Escrow Account and bank charges to our Current Account No.4437002100000612. We request you to remit the above amount.

Thanking you,

*OF Rs. 2.5cr TOGETHER WITH THE CLEAR BALANCE OF Rs. 86 Lacs TOTALING TO Rs. 3.3cr*

Yours faithfully,
For Prithvi Information Solutions Limited

Authorized Signatory

ENCL : A-1 FORM

Prithvi Information Solutions Ltd.
Prithvi House, # 2-56/2/19, Khanamet, Madhapur, Hyderabad - 500081, (INDIA)
Tel: 91-40-44856019, Fax: 91-40-44856021
E-mail: info@prithvisolutions.com, Website: www.prithvisolutions.com

# Exhibit G

| **From:** | Satish Vuppalapati <satish@prithvisolutions.com> |
| **Sent:** | Tuesday, August 25, 2020 8:21 AM |
| **To:** | Goetz, John D.; Ginsberg, Michael H. |
| **Subject:** | FW: Previous meeting today |

** External mail **

-----Original Message-----
From: matsumoto.yukihisa@sojitz.com [mailto:matsumoto.yukihisa@sojitz.com]
Sent: Friday, June 14, 2013 1:23 PM
To: Ritu Bhalla; satish
Subject: Previous meeting today

Dear Satish,

In refference to the previous meeting of today, I would come to your office
at around 2:30pm on my way to the airport.
So please be requested to prepare the copy of title deed and other documents
together with the DD by that time.

With best regards,
Y. Matsumoto

# Exhibit H

| From: | Goetz, John D. |
|---|---|
| Sent: | Tuesday, August 25, 2020 11:57 AM |
| To: | Satish Vuppalapati; Ginsberg, Michael H. |
| Cc: | mvrao63@gmail.com |
| Subject: | RE: explanation about the mails |

Dear Mr. Vuppalapati:

We are in receipt of your emails, including the one below where you reference your counsel. We do not represent you in this matter, and you have the option and right to consult with your counsel before you communicate with us.

As a FYI to your counsel, who we have copied, our contact information appears below.

> John D. Goetz (bio)
> Partner
> **JONES DAY® - One Firm Worldwide℠**
> 500 Grant Street, Suite 4500
> Pittsburgh, PA 15219
> Phone: 412-394-7911
> Fax: 412-394-7959
> E-mail: jdgoetz@jonesday.com

**From:** Satish Vuppalapati <satish@prithvisolutions.com>
**Sent:** Tuesday, August 25, 2020 10:07 AM
**To:** Goetz, John D. <jdgoetz@JonesDay.com>; Ginsberg, Michael H. <mhginsberg@JonesDay.com>
**Cc:** mvrao63@gmail.com
**Subject:** explanation about the mails

** External mail **

Dear All,

The first mail from mr. srinivasan asking me to hand over the stock certificate , on 5th June 2013, the second email from mr.matsumoto is regarding making copies of the stock certificates( he has written as title deeds) and handing him over the originals post our first meeting on the same day. Hope this helps

You can contact Jeff ..anands attorney  or You can contact Mr. MV Rao he can also be reached on his mobile +919394552685  my attorney who is copied on this mail if you require anything else.

Thanks
Satish