# Exhibit 11

FILED \_\_\_\_ ENTERED
LODGED \_\_\_\_ RECEIVED

FEB 01 2019

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff <br><br> v. <br><br> GURU PRASAD RAO PANDYAR, <br><br> Defendant. | NO. CR17-317RSL <br><br> **PLEA AGREEMENT** |

The United States of America, by and through Brian T. Moran, United States Attorney for the Western District of Washington, and Francis Franze-Nakamura, Assistant United States Attorney for said District, Guru Prasad Rao Pandyar, and his attorney, John M. Colvin, enter into the following Agreement, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A):

1. **The Charges**. Defendant, having been advised of the right to have this matter tried before a jury, agrees to waive that right and enters a plea of guilty to the following charges contained in the Indictment.

   a. Wire Fraud, as charged in Count 15, in violation of Title 18, United States Code, Section 1343.

   b. Money Laundering Conspiracy, as charged in Count 21, in violation of Title 18, United States Code, Section 1956(h).

PLEA AGREEMENT - 1
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

By entering these pleas of guilty, Defendant hereby waives all objections to the form of the charging document. Defendant further understands that before entering his guilty pleas, he will be placed under oath. Any statement given by Defendant under oath may be used by the United States in a prosecution for perjury or false statement.

2. **Elements of the Offenses.** The elements of the offense or offenses to which Defendant is pleading guilty are as follows:

a. The elements of Wire Fraud, as charged in Count 15, in violation of Title 18, United States Code, Section 1343, are as follows:

**First**, the defendant knowingly devised or intended to devise a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

**Second**, the statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud; that is, the intent to deceive or cheat; and

**Fourth**, the defendant transmitted, or caused to be transmitted by wire communication in interstate commerce, writings, signs, or signals to carry out or attempt to carry out an essential part of the scheme.

b. The elements of Money Laundering Conspiracy, as charged in Count 15, in violation of Title 18, United States Code, Section 1956(h), are as follows:

**First**, there was an agreement between two or more persons to commit the crime of money laundering;

**Second**, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The elements of the crime of concealment money laundering are as follows:

**First**, the defendant conducted a financial transaction involving property that represented the proceeds of wire fraud;

**Second**, the defendant knew that the property represented the proceeds of some form of unlawful activity; and

**Third**, the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature of the proceeds

3. **The Penalties**. Defendant understands that the statutory penalties applicable to the offenses to which he is pleading guilty are as follows:

    a.    For the offense of Wire Fraud, as charged in Count 15: A maximum term of imprisonment of up to twenty years, a fine of up to $250,000, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100 dollars.

    b.    For the offense of Money Laundering Conspiracy, as charged in Count 21: A maximum term of imprisonment of up to twenty years, a fine of up to $500,000 or twice the value of the property involved in the monetary transactions, a period of supervision following release from prison of up to three years, and a mandatory special assessment of $100.

If a probationary sentence is imposed, the probation period can be for up to five years. Defendant agrees that the special assessment shall be paid at or before the time of sentencing.

Defendant understands that supervised release is a period of time following imprisonment during which he will be subject to certain restrictive conditions and requirements. Defendant further understands that if supervised release is imposed and he violates one or more of the conditions or requirements, Defendant could be returned to prison for all or part of the term of supervised release that was originally imposed. This could result in Defendant's serving a total term of imprisonment greater than the statutory maximum stated above.

PLEA AGREEMENT - 3

PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Defendant understands that as a part of any sentence, in addition to any term of imprisonment and/or fine that is imposed, the Court may order Defendant to pay restitution to any victim of the offense, as required by law.

Defendant further understands that a consequence of pleading guilty may include the forfeiture of certain property either as a part of the sentence imposed by the Court, or as a result of civil judicial or administrative process.

Defendant agrees that any monetary penalty the Court imposes, including the special assessment, fine, costs, or restitution, is due and payable immediately and further agrees to submit a completed Financial Statement of Debtor form as requested by the United States Attorney's Office.

4. **Rights Waived by Pleading Guilty.** Defendant understands that by pleading guilty, he knowingly and voluntarily waives the following rights:

    a. The right to plead not guilty and to persist in a plea of not guilty;

    b. The right to a speedy and public trial before a jury of his peers;

    c. The right to the effective assistance of counsel at trial, including, if Defendant could not afford an attorney, the right to have the Court appoint one for him;

    d. The right to be presumed innocent until guilt has been established beyond a reasonable doubt at trial;

    e. The right to confront and cross-examine witnesses against Defendant at trial;

    f. The right to compel or subpoena witnesses to appear on his behalf at trial;

    g. The right to testify or to remain silent at trial, at which trial such silence could not be used against Defendant; and

    h. The right to appeal a finding of guilt or any pretrial rulings.

5. **Ultimate Sentence.** Defendant acknowledges that no one has promised or guaranteed what sentence the Court will impose.

PLEA AGREEMENT - 4

PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

6. **Restitution.** The parties agree that they will recommend that the Court apportion liability for restitution owed to Kyko Global between Defendant and other defendants charged in this case and any related case. Defendant agrees to pay restitution in the apportioned amount of $512,535.23 (which shall not be joint and several with any other defendant). Said amount shall be due and payable immediately and shall be paid in accordance with a schedule of payments as proposed by the United States Probation Office and ordered by the Court.

7. **Forfeiture of Assets.** Defendant understands that the forfeiture of property is part of the sentence that must be imposed in this case. Defendant agrees to forfeit to the United States, immediately, all of his right, title, and interest in any and all property, real or personal, that constitutes or is derived from proceeds traceable to the offense charged in Count 15, as well as any property, real personal, involved in or traceable to the offense charged in Count 21. This property is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C), Section 982(a)(1), and Title 28, United States Code, Section 2461(c), and includes, but is not limited to, a judgment for a sum of money in the amount of $512,535.23, representing a portion of the proceeds Defendant obtained as a result of the charged offenses. Defendant understands and acknowledges that this forfeited sum of money is separate and distinct from the restitution that is ordered in this case.

Defendant agrees to fully assist the United States in the forfeiture of the above-described property and to take whatever steps are necessary to pass clear title to the United States, including but not limited to: surrendering title and executing any documents necessary to effect forfeiture; assisting in bringing any property located outside the United States within the jurisdiction of the United States; and taking whatever steps are necessary to ensure that property subject to forfeiture is not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture. Defendant agrees not to file a claim to any such property in any federal forfeiture proceeding, administrative or judicial, that may be initiated.

PLEA AGREEMENT - 5

PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The United States reserves its right to proceed against any remaining property not identified in this Plea Agreement, including any property in which Defendant has any interest or control, if that property constitutes or is traceable to proceeds of the offense charged in Count 15 and/or was involved in, or traceable to, the offense charged in Count 21.

8. **Statement of Facts**. The parties agree on the following facts. Defendant admits he is guilty of the charged offense or offenses:

    a. From approximately August 2011 through July 2014, defendants GURU PANDYAR, MADHAVI VUPPALAPATI, SATISH VUPPALAPATI, and SRINIVAS SISTA devised and successfully executed a scheme to defraud Kyko Global, Inc. ("Kyko") by fraudulently inducing Kyko into entering factoring financing arrangements with a publically traded Indian company called Prithvi Information Solution, Ltd. and certain affiliated corporate entities (collectively, "Prithvi"), under which Kyko advanced payments purportedly owed to Prithvi on certain accounts receivable.[1] Unbeknownst to Kyko, the accounts receivable were entirely fictitious accounts that the defendants had created using sham companies that mimicked legitimate companies.

    b. MADHAVI VUPPALAPATI and SATISH VUPPALAPATI are a sister and brother team that owned, operated, and otherwise controlled the Prithvi companies. During the fraud scheme, MADHAVI VUPPALAPATI split her time between India and the United States, and SATISH VUPPALAPATI operated primarily

---

[1] "Accounts receivable" is an accounting term signifying debts owed to a company for services rendered. An "accounts receivable factoring agreement" is an agreement between the company to which the receivables are owed, the company with the obligation to pay, and a third-party company. The right to collect payment for the receivables is assigned to the third-party company, which in turn provides advance payment to the company to which the receivables were owed originally in return for a factoring fee.

PLEA AGREEMENT - 6
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

out of India. GURU PANDYAR was a vice president at Prithvi and worked primarily out of Prithvi's Bellevue, Washington office.

  c. In 2011, GURU PANDYAR and his co-conspirators fraudulently misrepresented to Kyko that Prithvi was a successful and growing company that provided information technology services to a number of well-known companies including, but not limited to: (1) Huawei, a global networking and telecommunications company; (2) Financial Oxygen, a large U.S. financial services company; (3) DICK's Sporting Goods, a national retailer with over 600 stores; (4) Enterprise Products Partners, a publicly listed U.S. energy asset company; and (5) L3 Communications, a U.S. publicly listed defense contractor. GURU PANDYAR and his co-conspirators offered to assign the accounts receivables related to these purported customers to Kyko in return for factoring financing.

  d. In truth and fact, these five companies either were not customers of Prithvi or were not asked to approve the assignment of accounts receivable to Kyko. Nevertheless, the defendant and his co-conspirators went to great lengths to create the illusion that these companies were active customers of Prithvi and had agreed to permit Prithvi to assign accounts receivable to Kyko. The defendant and his co-conspirators created fraudulent websites for the sham companies that duplicated information from the authentic companies' websites or redirected to the authentic companies' websites. The defendant and his co-conspirators even posed as employees of the sham companies using false identities and email accounts that were designed to appear like accounts belonging to the authentic companies. A substantial portion of the misrepresentations made to Kyko were made by co-conspirators while they were located in India. Furthermore, on multiple occasions, Kyko personnel met with Prithvi employees to discuss the factoring arrangement.

  e. Based on the this elaborate ruse, Kyko entered into factoring agreements with Prithvi, two of which were signed by GURU PANDYAR in his capacity as a vice president of Prithvi.

PLEA AGREEMENT - 7
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

f. The defendants took sophisticated steps to create the appearance that the five sham customers had approved the assignment of the accounts receivable to Kyko. For example, the defendants provided Kyko with letters of assignment that were purportedly reviewed and agreed to by the sham customers. In truth and fact, the letters were signed by members of the conspiracy posing as employees of the sham customers.

g. To start the factoring process, the defendants sent Kyko invoices in which the Prithvi companies purported to bill the five customers for services rendered. After receiving the invoices, Kyko contacted the supposed customers directly using the purported customer email addresses provided by the defendants, to confirm the legitimacy of the invoices. Then, GURU PANDYAR and his co-conspirators, impersonated the employees of the sham customers and confirmed the invoices.

h. As time went on, Prithvi was unable to sustain the fraud scheme and found it increasingly difficult to send payments from the sham customers to Kyko. The defendants concocted numerous excuses for why payments from the sham customers were late or incomplete. To further deceive Kyko into believing that it would receive payment, the defendants issued a number of fraudulent guarantees backed by numerous checks drawn on personal and corporate accounts that Kyko purportedly could cash to satisfy any outstanding amounts owed.

i. With GURU PANDYAR's assistance, MADHAVI and SATISH VUPPALAPATI also prepared and executed declarations, under penalty of perjury, that averred that Prithvi had performed work for the original five customers, and that the assigned accounts receivable related to that work were owed to Kyko. The declarations attached and incorporated fraudulent schedules purporting to show the receivables that the sham customers owed. As charged in Count 15, on April 24, 2013, GURU PANDYAR sent an email from Bellevue, Washington, to recipients outside the Western District of Washington, which attached the false declaration of MADHAVI VUPPALAPATI.

PLEA AGREEMENT - 8
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

j. At the time the fraud scheme collapsed in approximately July 2014, GURU PANDYAR and his co-conspirators had defrauded Kyko of approximately $14,424,074.50. GURU PANDYAR and his co-conspirators agreed to launder the stolen funds through various bank accounts belonging to business entities under their control in order to disguise the fact that funds came from Kyko and to make the funds appear to be derived from legitimate income. Much of the money was ultimately transferred to accounts in India.

k. During the course, and as a result, of the fraud scheme and money laundering conspiracy, GURU PANDYAR received the benefit of at least $512,535.23 in compensation as part of his employment with Prithvi.

The parties agree that the Court may consider for the purpose of sentencing additional facts contained in the Presentence Report, subject to objections by the parties, as well as any facts presented by either party at sentencing.

9. **Immigration Consequences.** Defendant recognizes that pleading guilty may have consequences with respect to his immigration status because he is not a citizen of the United States. Under federal law, a broad range of crimes are grounds for removal, including potentially the offenses to which Defendant is pleading guilty, and some offense make removal from the United States is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Defendant understands that no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty pleas may entail, even if the consequence is his mandatory removal from the United States.

10. **Acceptance of Responsibility.** At sentencing, *if* the district court concludes Defendant qualifies for a downward adjustment acceptance for acceptance of responsibility pursuant to USSG § 3E1.1(a) and the defendant's offense level is 16 or greater, the United States will make the motion necessary to permit the district court to

PLEA AGREEMENT - 9

PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

decrease the total offense level by three levels pursuant to USSG §§ 3E1.1(a) and (b), because Defendant has assisted the United States by timely notifying the United States of his intention to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

11. **Sentencing Factors**. The parties agree that the following Sentencing Guidelines provisions apply to this case:

    a. A base offense level of seven pursuant to USSG § 2B1.1(a)(1).

    b. A 20-level enhancement pursuant to USSG § 2B1.1(b)(1)(K).

    c. A two-level enhancement pursuant to USSG § 2B1.1(b)(2)(A)(iii) due to substantial financial hardship to the victim.

    d. A two-level enhancement pursuant to USSG § 2B1.1(b)(10) because a substantial part of a fraudulent scheme was committed from outside the United States.

    e. A two-level enhancement pursuant to USSG § 2S1.1(b)(2)(B) because the misconduct involved a violation of 18 U.S.C. § 1956.

The parties agree they are free to present arguments regarding the applicability of all other provisions of the United States Sentencing Guidelines. For example, the United States will seek a two-level enhancement pursuant to USSG § 2S1.1(b)(3) because the misconduct involved sophisticated money laundering. Defendant understands, however, that at the time of sentencing, the Court is free to reject these stipulated adjustments, and is further free to apply additional downward or upward adjustments in determining Defendant's Sentencing Guidelines range.

12. **Non-Prosecution of Additional Offenses**. As part of this Plea Agreement, the United States Attorney's Office for the Western District of Washington agrees not to prosecute Defendant for any additional offenses known to it as of the time of this Agreement that are based upon evidence in its possession at this time, and that arise out of the conduct giving rise to this investigation. In this regard, Defendant recognizes the United States has agreed not to prosecute all of the criminal charges the evidence

PLEA AGREEMENT - 10
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

establishes were committed by Defendant solely because of the promises made by Defendant in this Agreement. Defendant agrees, however, that for purposes of preparing the Presentence Report, the United States Attorney's Office will provide the United States Probation Office with evidence of all conduct committed by Defendant.

Defendant agrees that any charges to be dismissed before or at the time of sentencing were substantially justified in light of the evidence available to the United States, were not vexatious, frivolous or taken in bad faith, and do not provide Defendant with a basis for any future claims under the "Hyde Amendment," Pub. L. No. 105-119 (1997).

13. **Breach, Waiver, and Post-Plea Conduct.** Defendant agrees that if Defendant breaches this Plea Agreement, the United States may withdraw from this Plea Agreement and Defendant may be prosecuted for all offenses for which the United States has evidence. Defendant agrees not to oppose any steps taken by the United States to nullify this Plea Agreement, including the filing of a motion to withdraw from the Plea Agreement. Defendant also agrees that if Defendant is in breach of this Plea Agreement, Defendant has waived any objection to the re-institution of any charges in the Indictment that were previously dismissed or any additional charges that had not been prosecuted.

Defendant further understands that if, after the date of this Agreement, Defendant should engage in illegal conduct, or conduct that violates any conditions of release or the conditions of his confinement, (examples of which include, but are not limited to, obstruction of justice, failure to appear for a court proceeding, criminal conduct while pending sentencing, and false statements to law enforcement agents, the Pretrial Services Officer, Probation Officer, or Court), the United States is free under this Agreement to file additional charges against Defendant or to seek a sentence that takes such conduct into consideration by requesting the Court to apply additional adjustments or enhancements in its Sentencing Guidelines calculations in order to increase the applicable advisory Guidelines range, and/or by seeking an upward departure or variance from the calculated advisory Guidelines range. Under these circumstances, the United States is

PLEA AGREEMENT - 11
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

free to seek such adjustments, enhancements, departures, and/or variances even if otherwise precluded by the terms of the plea agreement.

14. **Waiver of Appellate Rights and Rights to Collateral Attacks.** Defendant acknowledges that by entering the guilty pleas required by this plea agreement, Defendant waives all rights to appeal from his conviction and any pretrial rulings of the court. Defendant further agrees that, provided the court imposes a custodial sentence that is within or below the Sentencing Guidelines range (or the statutory mandatory minimum, if greater than the Guidelines range) as determined by the court at the time of sentencing, Defendant waives to the full extent of the law:

    a. Any right conferred by Title 18, United States Code, Section 3742, to challenge, on direct appeal, the sentence imposed by the court, including any fine, restitution order, probation or supervised release conditions, or forfeiture order (if applicable); and

    b. Any right to bring a collateral attack against the conviction and sentence, including any restitution order imposed, except as it may relate to the effectiveness of legal representation; and

This waiver does not preclude Defendant from bringing an appropriate motion pursuant to 28 U.S.C. § 2241, to address the conditions of his confinement or the decisions of the Bureau of Prisons regarding the execution of his sentence.

If Defendant breaches this Plea Agreement at any time by appealing or collaterally attacking (except as to effectiveness of legal representation) the conviction or sentence in any way, the United States may prosecute Defendant for any counts, including those with mandatory minimum sentences, that were dismissed or not charged pursuant to this Plea Agreement.

15. **Voluntariness of Plea.** Defendant agrees that he has entered into this Plea Agreement freely and voluntarily and that no threats or promises, other than the promises contained in this Plea Agreement, were made to induce Defendant to enter his pleas of guilty.

PLEA AGREEMENT - 12

PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

16. **Statute of Limitations.** In the event this Agreement is not accepted by the Court for any reason, or Defendant has breached any of the terms of this Plea Agreement, the statute of limitations shall be deemed to have been tolled from the date of the Plea Agreement to: (1) thirty days following the date of non-acceptance of the Plea Agreement by the Court; or (2) thirty days following the date on which a breach of the Plea Agreement by Defendant is discovered by the United States Attorney's Office.

17. **Completeness of Agreement.** The United States and Defendant acknowledge that these terms constitute the entire Plea Agreement between the parties. This Agreement binds only the United States Attorney's Office for the Western District of Washington. It does not bind any other United States Attorney's Office or any other office or agency of the United States, or any state or local prosecutor.

Dated this 1ST day of February, 2019.

_____
GURU PRASAD RAO PANDYAR
Defendant

_____
JOHN M. COLVIN
Attorney for Defendant

_____
FRANCIS FRANZE-NAKAMURA
Assistant United States Attorney

PLEA AGREEMENT - 13
PANDYAR(CR17-317RSL)

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970