EXHIBIT B

| | |
|---|---|
| **From:** | Jayson Macyda |
| **To:** | Ginsberg, Michael H. |
| **Cc:** | Baker, Douglas D.; Joseph Rodkey; Goetz, John D.; Jeffrey Morris |
| **Subject:** | Re: Discovery Responses |
| **Date:** | Tuesday, September 08, 2020 3:04:35 PM |

Mike:

Unfortunately, we are at an impasse.

As stated previously, between the cornavirus and one of our team members being hospitalized for dengue fever, we are unable to respond to the SSG Defendants' discovery requests by Sept. 10 and will request Judge Stickman to allow Plaintiffs to respond on or before October 1 (this will also include PSI's documentation showing the accounts receivable/auditor's documents with respect to same as I was informed this morning that we will not be able to obtain this information by Sept. 10 as previously thought).

As previously indicated, the contract/quasi contract claims are based on PSI's documentation showing that the receivables are due and owing, and the auditor's report which confirmed the same. Moreover, we believe that the Vupplapatis may have documentation regarding these receivables in India and we have initiated legal action in India to try to compel this documentation (in addition to other information). In any event, please be advised that Plaintiffs reserve the right to seek sanctions with respect to Defendants' denials regarding the receivables.

The hard drive contains Ms. Vuppalapati's privileged information and Ms. Vuppalpati's family pictures and pictures of children. Moreover, you have failed to demonstrate how *every single document* on the hard drive is relevant to this case yet you seek production of just that. Further, the SSG Defendants will not simply turnover complete copies of their hard drives to Plaintiffs under the terms and conditions you propose here, so it's not realistic nor appropriate to try to impose these terms and conditions on Plaintiffs.

Plaintiffs reiterate that they are willing to produce documents pursuant to mutually agreeable search terms (including information pertaining to Agadia). Courts in this district hold that parties should try to devise search terms to cull through extensive electronic data. *See Pyle v. Selective Ins. Co. of America*, 2016 WL 5661749, Case No. 2:16-cv-335 (W.D. Pa. Sept. 30 2016). Moreover, if the parties cannot agree on search terms, then Judge Stickman can order those terms he deems appropriate. From there, the search can be conducted by a third party vendor if you prefer. Plaintiffs will then review the documentation generated from the search, and then produce the documentation to Defendants. This process will ensure only relevant and non-privileged information is produced in accordance with Fed. R. Civ. P. 26(b).

Pursuant to Judge Stickman's Chambers' Practices and Procedures, I will contact Ms. Abbott via email to let her know that the parties are at an impasse.

Sincerely,

Jayson M. Macyda
General Counsel - Kyko Global Inc. and Affiliates

248-243-6685
P.O. Box 87491
Canton, MI 48187 USA

On Fri, Sep 4, 2020 at 2:56 PM Ginsberg, Michael H. <mhginsberg@jonesday.com> wrote:

> Jayson:
>
> I am hopeful that we can work through these issues without involving Judge Stickman.
>
> Obviously, Kyko can only produce the documents that are currently available to it, but there appears to be no impediment to providing those documents currently in Kyko's possession and responding to non-document portions of the discovery by September 10.  As for the purported loan documents and alleged agreement on the use of the bond funds, Kyko has maintained the existence of those documents since it filed the complaint.  It appears that Kyko has no concrete evidence of the existence of those documents.  The SSG Defendants reserve all of their rights to seek sanctions and attorneys' fees incurred in responding to Kyko's claims arising from these alleged but non-existent agreements.  Kyko should also amend its complaint to delete references to these alleged agreements.
>
> With respect to Ms. Vuppalapati's hard drive, the SSG Defendants' concern is that Kyko has had exclusive access to the materials on the hard drive for more than six years, and apparently has reviewed the entire drive, including what may be privileged information.  Kyko has selectively quoted from documents printed from the drive, and have marked others into the record as exhibits during depositions.  On what basis does Kyko get to determine the relevance and/or privilege of the materials? Kyko purchased the hard drive at auction, and then used the contents – without any concern of privilege or relevance.  The SSG Defendants do not understand how Kyko can legitimately raise such concerns now.  Moreover, the SSG Defendants are not asking Kyko to take on any burden.  As a compromise, the SSG Defendants suggest that the parties agree that any privilege attaching to the materials on the hard drive are not waived as a result of Kyko's production of the hard drive.  The SSG Defendants are also willing to jointly agree to designate documents on the hard drive as confidential, under the protective order just issued.  As for materials relating to Agadia, the SSG Defendants are not prepared to agree that communications relating to Agadia are not relevant to any of the claims or defenses in this matter.  As we understand it, Agadia was a PSI subsidiary or affiliate which Kyko acquired through its Washington proceedings.  Importantly, throughout the time period when the hard drive was in Ms. Vuppalapati's possession, Agadia was affiliated with PSI and PISL, not Kyko.  The contents of the hard drive relating to Agadia may be relevant to, among other things, PSI's and Kyko's awareness of the transfer of the bond funds and may provide important evidence relating to Kyko's "discovery" of the bond restructuring transactions.  However, as a compromise, the SSG

Defendants will agree that the production of the hard drive does not waive any relevance arguments that Kyko may have with respect to Agadia-related documents.

Please let me know if we have an agreement or whether we need to involve the Court.

Mike

Michael H. Ginsberg (bio)
Partner
**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500
Pittsburgh, PA  15219
Direct: 412-394-7919
Cell:    412-977-3264
Fax:    412-394-7959
mhginsberg@jonesday.com

**From:** Jayson Macyda <GeneralCounsel@kykoglobal.com>
**Sent:** Friday, September 4, 2020 1:31 PM
**To:** Ginsberg, Michael H. <mhginsberg@JonesDay.com>
**Cc:** Baker, Douglas D. <ddbaker@jonesday.com>; Joseph Rodkey <jrodkey@fowkesrodkey.com>; Goetz, John D. <jdgoetz@JonesDay.com>; Jeffrey Morris <morris@elliott-davis.com>
**Subject:** Re: Discovery Responses

** External mail **

Mike:

As we discussed, the information you request is located in Pune, India and that office has been shut down and people are in quarantine due to the cornavirus. Also, our Head of Indian Operations and primary document reviewer resides in Pune and was recently released from the hospital and is at home recovering from dengue fever.  Thus, while we have and continue to make efforts to obtain the requested documents in the SSG Defendants' discovery requests, this process is necessarily slow.  Accordingly, we requested that you agree to allow us to respond to the SSG Defendants' discovery requests on or before Oct. 1.

With respect to your request for specific documents referenced in your email:

1. Loans among PSI and SSG and VTC

Since the very beginning of this case, Plaintiffs made it clear that Madhavi Vuppalapati and Satish Vuppalapati have either hidden or destroyed evidence that relates to this case . (ECF No 5, Pg. 7). Plaintiffs have repeatedly stated throughout this case that Madhavi and Satish have information that they refuse to produce. This was confirmed in Mr. Jayaraman's Declaration. (ECF No. 160-1, ¶14). And is further confirmed by Satish Vuppalapati himself who selectively provides "information" to the defendants. (ECF Nos. 114; 191-9). Moreover, consistent with the Plaintiffs' statements in the Rule 26(f) Report, Plaintiffs have initiated legal action in India to try to compel the Vuppalapatis to produce information related to this case. Curiously, the SSG Defendants take no action whatsoever to try to compel Madhavi, Satish, PISL, or PASL to produce information yet have issued third-party subpoenas to Guru Pandyar and NPI Cyber Risk Management Inc.

As we discussed, PSI's books and records indicate that there are receivables owing from VTC and SSG. PISL did not provide these to Plaintiffs as part of the loan factoring receivable fraud at issue in the Washington federal litigation. These receivables were discovered after Kyko obtained PSI's books and records. Further, at least one auditor has confirmed that these receivables are due and owing. Plaintiffs will provide you with PSI's books and records that reflect these receivables as well as the auditor's report and documents attached thereto by Sept. 10. As we discussed, it is possible that the auditor has the relevant agreements between PSI and SSG/VTC. In any event, as mentioned above, Plaintiffs have initiated action in India to try to compel the Vuppalapatis to produce these documents among others.

2. Agreement between PISL and PSI regarding use of bond funds.

As set forth above, Plaintiffs believe that this documentation is being withheld by Madhavi and Satish and we have initiated action in India to compel the same. In any event, it is my understanding that Guru Pandyar will testify that there was an agreement to utilize the bond funds in the event Madhavi and Satish have destroyed this document(s).

3. Hard Drive

I have conferred with Washington counsel who handled this matter and have been informed that Madhavi Vuppalapati had a lawyer when Judge Pechman issued her order that permits Ms. Vuppalapati to undertake a privilege review. To the best of his knowledge, this review never occurred. Thus, whether Ms. Vuppalapati has now "waived" all privileges is unclear and would be for Judge Pechman to decide - Plaintiffs have confirmed that there are attorney-client communications on the hard drive. In any event, Plaintiffs do not seek to invoke Ms. Vuppalapati's privilege. And as you correctly point out, she is a defendant in this case, and as such, needs to appear and state her position with respect to privileged material contained on the hard drive. As you are well-aware, Plaintiffs and the Vuppalapatis are engaged in protracted litigation in India, and a complete turnover of all documents on the hard drive would likely result in Ms. Vuppalapati's instituting further legal action against Plaintiffs.

You fail to show how *every single document* contained on the hard drive is relevant to this case. As stated in Rule 26(b), "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *nonprivileged matter* that is *relevant* to any party's claim or defense and proportional to the needs of the case ..." (emphasis added). As mentioned above, Ms. Vuppalapati's attorney-client communications are on the hard drive. Moreover, there is information pertaining to Agadia Inc. (a company that provides IT services to the healthcare industry), which is a subsidiary of Kyko, on the hard drive as well. Agadia is not a party in this case (it has nothing to do with the parties' dispute) and its management does not consent to having Agadia's documentation disclosed . Thus, utilizing search terms (whether agreed upon or ordered by the Court) will ensure that non-privileged and relevant information is produced.

Your resistance seems to be based on the fact that:Kyko would be reviewing information obtained from Ms. Vuppalapati and then turning over this information to the SSG Defendants ("And Kyko would be reviewing documents *from one of the defendants* before producing those documents *to a different defendant*. That scheme makes no sense and has no basis under the Federal Rules governing discovery.")(emphasis included).  Plaintiffs' obligation to review and turnover documents in good faith is not altered by the fact that these documents were formally in the possession of Ms. Vuppalapati. Indeed, the SSG Defendants presumably have, in good faith, previously submitted some jurisdictional discovery information to Plaintiffs on VTC's behalf (a struck off entity at that time). Further, your statement illustrates the point that Ms. Vuppalapati needs to come out of hiding, produce information, and state her position with respect to her attorney-client communications on the hard drive.

Given the foregoing, Plaintiffs request that you reconsider your position and permit

Plaintiffs to file a response to your discovery requests on or before Oct. 1 (which is prior to mediation) and to agree that the hard drive's contents should be produced using search terms. Otherwise, we will set up a conference with Judge Stickman.

Please advise.

Regarding

Sincerely,

Jayson M. Macyda

General Counsel - Kyko Global Inc. and Affiliates

248-243-6685

P.O. Box 87491

Canton, MI 48187 USA

On Tue, Sep 1, 2020 at 2:53 PM Ginsberg, Michael H. <mhginsberg@jonesday.com> wrote:

> Jayson:
>
> I'm writing to follow up on your call earlier today in which you responded to Doug Baker's email, below regarding Kyko's request for an extension of time to produce documents in response to the SSG Defendants' discovery requests. Without extension, Kyko's document production would be due on September 11.
>
> We appreciate the challenges that the pandemic has created, and because you have represented that the vast majority of documents are in located at Kyko's office in India, we are willing to accommodate Kyko's need for additional time to produce documents. We still expect that Kyko will provide its written responses on or before September 11 and the specific documents addressed in this email.

1. I want to confirm your position that Kyko does not possess any loan agreements between PSI, on the one hand, and any SSG entity or VTC, on the other. Rather, Kyko's allegations regarding the purported loans are based solely on PSI's listing of accounts receivable on PSI's balance sheet located at ECF No. 109-6, at 10, which you claim were audited by an accounting firm. You agreed to provide all of PSI's financial records in your possession (the books and records of PSI) as well as the auditor's report(s) and supporting documents by September 11 as required by the document discovery.

Second, I want to confirm that your client does not possess an agreement between PSI and PISL as alleged in Paragraph 101 of the Complaint (and elsewhere) containing the terms that "the Bonds were issued for the benefit of PSI and the Bonds funds were to be used solely by PSI to execute business operations in the United States." ECF No. 1, at ¶ 101. Your client's position is that the agreement may be in the possession of Madhavi or Satish Vuppalapati, or that they may have destroyed any such agreement. To prove the existence of this agreement, you intend to rely on the testimony of Guru Pandyar.

Neither the SSG Defendants' request for the alleged loan agreements nor the alleged agreement regarding the use of the Bond funds should come as a surprise to Kyko—the SSG Defendants have been asking for documentation supporting those allegations since the inception of the case, and those requests were specifically mentioned in the 26(f) report filed in July. There cannot be any justification for not producing either the alleged agreements or whatever documents Kyko believes support the existence of those alleged agreements by September 11.

Third, your position on Madhavi Vuppalapati's hard drive is that Kyko has possession of a copy of that hard drive containing all documents. You are nevertheless objecting to producing a complete copy of the hard drive. I want to confirm that your objections to producing a complete copy of the hard drive are (1) that certain contents may be protected by Madhavi Vuppalapati's attorney-client privilege, (2) that some documents are not, in your opinion, relevant to the current dispute, and (3) that the parties should agree on search terms in order to obtain relevant documents on the computer.

The SSG Defendants disagree. There is no basis for your refusal to produce a complete copy of that hard drive for the following reasons.

(1) Kyko has no standing to invoke Madhavi Vuppalapati's attorney-client privilege. *See Estate of Paterno v. Nat'l Collegiate Athletic Ass'n (NCAA)*, 168 A.3d 187, 193 (Pa. Super. Ct. 2017) (affirming trial court's holding that non-

client "did not have standing to assert attorney-client privilege as to communications"); 1 Attorney-Client Privilege: State Law Pennsylvania § 11:1 ("Pennsylvania recognizes that only the client whose communications with an attorney are sought for disclosure may assert the privilege.") (collecting cases). You are correct that Judge Pechman, in the Washington federal litigation, permitted Ms. Vuppalapati seven business days to perform a privilege review and claw back any privileged documents. But you neglected to mention that there were no further filings related to the privilege review in the Washington federal litigation. It appears that whatever privilege Ms. Vuppalapati may have had was waived by this inaction. This is bolstered by the fact that *Kyko* has maintained possession of the entire hard drive since 2014. You cannot claim that Ms. Vuppalapati's privilege precludes production of the hard drive while simultaneously holding a copy of those very documents and using them in this case. Finally, if Ms. Vuppalapati believes there are privileged documents on the hard drive, she is permitted to raise those issues with the Court here. She has been served in this case and was copied on the discovery requests the SSG Defendants served on Plaintiffs on August 11, 2020.

(2) There is no basis for you to object on relevance. You obtained Ms. Vuppalapati's computer in April 2014. According to Plaintiffs, this case involves alleged facts from 2007 through 2017 and beyond; the contents of the hard drive are undisputedly within the appropriate time period. Further, you have alleged that there is a vast conspiracy involving all the defendants in this case: indeed, just yesterday you asserted the "interconnected nature of all defendants in this case" in opposition to a motion. ECF No. 193, at 7. We are entitled to the information contained on Madhavi Vuppalapati's hard drive, a co-defendant in this case, to which you already have access.

Moreover, your client is asking for over $100,000,000.00 in this action, so there is no basis to claim that our request for documents is not proportional to the needs of the case. Fed. R. Civ. P. 26(b) (proportionality considers "the importance of the issues at stake in the action" and "the amount in controversy"). This is particularly true because there is virtually no burden on you or your client in producing the hard drive. Kyko's filings in the Washington federal litigation make clear that Kyko simply copied the contents of Ms. Vuppalapati's computer / hard drive onto a "forensic clone." Producing a copy of that should be exceedingly simple and inexpensive. *Strike 3 Holdings, LLC v. Bordley*, No. CV 18-868, 2019 WL 9098120, at *1 n.1 (E.D. Pa. Feb. 26, 2019) ("Production of these hard drives will not be a burden to Defendant—the hard drives are already in Defendant's possession."). There is simply no argument that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b). Nor is there any argument that Kyko, which has actions pending all over the world, lacks "resources" to comply. *Id. See, e.g., Consumer Fin. Prot. Bureau v. Navient Corp.*, No. 3:17-CV-101, 2018 WL 2088760, at *2 (M.D. Pa. May 4, 2018) ("The amount in controversy is potentially into the hundreds of millions of dollars, and every party involved is a sophisticated corporate or government entity with significant resources at its disposal. Accordingly, given that these factors weigh in favor of extensive discovery being proportional to the needs of the case, the Court is not inclined

to sustain a proportionality objection without a showing that the sought after material is unimportant to the issues in this case and the burden or expense of producing such material is excessive in comparison to the size of this litigation.").


(3)  Your proposal to make the SSG Defendants identify search terms for materials within Ms. Vuppalapati's computer is far more burdensome than what we are requesting.  Your client has already created a "forensic clone" of the hard drive containing all documents.  We're asking you to mail us a copy of that forensic clone or otherwise transmit all the documents contained therein.  By contrast, your proposal would require Kyko to expend countless hours of effort to review documents.  And Kyko would be reviewing documents *from one of the defendants* before producing those documents *to a different defendant*.  That scheme makes no sense and has no basis under the Federal Rules governing discovery.  Moreover, your proposal would unfairly deprive the SSG Defendants of information that Kyko has.  *See* Fed. R. Civ. P. 26(b) (proportionality is determined in part by "the parties' relative access to relevant information").


(4)  Kyko has selectively made use of documents located on Ms. Vuppalapati's computer without making the full contents available to the SSG Defendants.  For example, Kyko relied on Ms. Vuppalapati's private emails to support arguments in this litigation which Kyko filed before any jurisdictional discovery in this case.  *See* ECF No. 40-2 (emails between Madhavi and Satish Vuppalapati, Shyam Maheshwari, and Dinesh Goel); ECF No. 40-3 (emails including Madhavi and Satish Vuppalapati, Shyam Maheshwari, Dinesh Goel, and "Guru US"); ECF No. 40-4 (emails including Madhavi and Satish Vuppalapati, Shyam Maheshwari, and Dinesh Goel); ECF No. 40-5 (same); ECF No. 40-6 (same), and ECF No. 40-7 (emails between Satish Vuppalapati, Mathur Narayanan, and Guru Pandyar).


We again ask that you produce the PSI books and records, the auditor's files, and the entire hard drive from Madhavi Vuppalapati's computer and that you do so without any extension.  If you agree, we are happy to discuss an extension regarding our remaining discovery requests.  If you do not agree, we propose bringing the issue before the Court under Judge Stickman's chambers procedures.


Regards,


Michael H. Ginsberg (bio)
Partner
**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500

Pittsburgh, PA  15219
Direct: 412-394-7919
Cell:     412-977-3264
Fax:     412-394-7959
mhginsberg@jonesday.com

---

**From:** Baker, Douglas D. <ddbaker@jonesday.com>
**Sent:** Thursday, August 27, 2020 1:18 PM
**To:** Jayson Macyda <GeneralCounsel@kykoglobal.com>; Joseph Rodkey <jrodkey@fowkesrodkey.com>
**Cc:** Goetz, John D. <jdgoetz@JonesDay.com>; Ginsberg, Michael H. <mhginsberg@JonesDay.com>; Jeffrey Morris <morris@elliott-davis.com>
**Subject:** RE: Discovery Responses

Jayson,

We're sorry to hear your document reviewer is sick and hope he gets better very soon.  On the timing for discovery responses, we agree that some flexibility may be appropriate.  But we don't believe a three-week extension on all responses and requests is appropriate here.

In particular, in order to file the Complaint in good faith, you necessarily had to rely on certain documents immediately available to you that are integral to your claims. None of these documents is privileged; all are responsive to our initial discovery requests. We ask that you produce the below categories of documents without any extension.

- Any alleged loan agreement(s) referenced in the Complaint;

- The purported agreement between PSI and PISL referenced in paragraph 101 of the Complaint;

- Documents supporting PSI's purported "discovery" in November 2016;

- The bond circular and related documents;

- Memoranda of understanding and related documents;

- Any other responsive, non-privileged documents located in the United States or Canada in Kyko's control.

You claim that "most if not all of the requested documents" are "located in India." But Kyko Global, Inc. is a Canadian company, you and Mr. Rodkey are lawyers practicing in the United States, this case was brought—by you—in Pittsburgh, you allege that PSI was operating out of Pittsburgh during the relevant events in the Complaint, and you have been litigating related cases around the US for years.  We expect then that you and your client have many responsive, non-privileged documents that are not within the sole control of a single document reviewer in India.  This is particularly true of the documents in the list above.

We also believe that a copy of Madhavi's hard drive that Kyko obtained in the Washington litigation (*see* Request for Production No. 10) would be accessible to you now, located in either the United States or Canada.  We understand that Kyko created a "forensic clone" of that hard drive, so the burden of producing a copy should be very low.  And given that *none* of the material contained therein is privileged, and all of it is responsive, no document review of the materials should be necessary.  We ask that you produce a copy of Madhavi's hard drive in response to Request for Production No. 10 and that you do so without an extension

It was your decision to bring claims in Pittsburgh, Pennsylvania.  To assert now that you cannot comply with your discovery obligations because "most if not all of the requested documents" are being kept in India is not a legitimate basis for an extension.  We also don't believe this is a legitimate basis for postponing interrogatory responses.  Kyko has repeatedly, incorrectly alleged that the SSG Defendants are avoiding merits discovery in this case.  Just yesterday you argued to the Court that the SSG Defendants are trying to "escape the discovery process they agreed to participate on July 27, 2020" and have spent "almost 2 years trying to avoid participation in the discovery process."

On the contrary, we are actively trying to engage in the discovery process.  In particular, we would like access to certain documents—that your Complaint explicitly relies on—before we engage in mediation.  Your request would likely allow you to delay producing *any* documents until after mediation.  That is not appropriate.  We are willing to agree to an extension on some requests, provided that you agree to produce the documents in the bullet-point list above, along with a copy of Madhavi's computer hard drive and related documents.

Please let us know if you would like to discuss.  If you prefer, we would be glad to raise this issue with the Court pursuant to Judge Stickman's chambers procedures for resolving discovery disputes.

Thanks,

**Douglas Baker**
Associate
**JONES DAY® - One Firm Worldwide℠**
500 Grant Street, Suite 4500
Pittsburgh, PA 15222
Office +1.412.394.9546 (ext. 4.9546)
ddbaker@jonesday.com


**From:** Jayson Macyda <GeneralCounsel@kykoglobal.com>
**Sent:** Monday, August 24, 2020 8:42 AM
**To:** Goetz, John D. <jdgoetz@JonesDay.com>; Ginsberg, Michael H. <mhginsberg@JonesDay.com>; Baker, Douglas D. <ddbaker@jonesday.com>
**Cc:** Joseph Rodkey <jrodkey@fowkesrodkey.com>
**Subject:** Discovery Responses


** External mail **

Counsel:


I have been informed that Plaintiffs' primary document reviewer, who is located in India along with essentially most if not all of the requested documents, is believed to have coronavirus (waiting for official lab results but he has already been placed on covid treatment medication). His condition is serious and was sent to the hospital last night; his projected length of stay/quarantine is unknown. Accordingly, Plaintiffs request a 3 week extension to respond to your discovery requests, or to Oct. 1 2020, without prejudice to seek a further extension based on good cause.


Please advise.


Sincerely,

> Jayson M. Macyda
>
> General Counsel - Kyko Global Inc. and Affiliates
>
> 248-243-6685
>
> P.O. Box 87491
>
> Canton, MI 48187 USA
>
> ***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***

***This e-mail (including any attachments) may contain information that is private, confidential, or protected by attorney-client or other privilege. If you received this e-mail in error, please delete it from your system without copying it and notify sender by reply e-mail, so that our records can be corrected.***