EXHIBIT G

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KYKO GLOBAL INC. and KYKO GLOBAL GMBH, <br><br> Plaintiffs, <br><br> v. <br><br> PRITHVI INFORMATION SOLUTIONS LTD, et al., <br><br> Defendants. | CASE NO. C13-1034 MJP <br><br> ORDER ON MOTION TO DISQUALIFY AND MOTION TO DETERMINE ADMISSIBILITY |

THIS MATTER comes before the Court on Plaintiffs' Motion to Determine Admissibility of Materials on Computer of Defendant Madhavi Vuppalapati Purchased by Plaintiffs at Public Auction as Part of Execution of the Federal Judgment (Dkt. No. 163) and Defendants' Motion to Disqualify Counsel (Dkt. No. 168). Having reviewed the motions, Defendants' Response to the admissibility motion (Dkt. No. 177), Plaintiffs' Reply (Dkt. No. 182), Plaintiffs' Response to the disqualification motion (Dkt. NO. 197), and Defendants' Reply (Dkt. No. 209), and all related papers, the Court hereby DENIES the Motion to Disqualify Counsel and HOLDS that Defendants did not waive their attorney-client privilege. Accordingly,

Plaintiffs are ORDERED to provide Defendants with a copy of the hard drive within three (3) days so that Defendants may review it for privilege and Plaintiffs are ORDERED to provide Defendants with a privilege log within seven (7) days of the transfer.

**Background**

Plaintiffs Kyko Global, Inc. and Kyko Global GMBH (together "Kyko") are in the business of factoring—a type of financial arrangement where Kyko fronts money as advances on customer account receivables. (Dkt. No. 11.) In this fraud case, Kyko alleges Defendants created fictitious entities for the appearance of imitating legitimate business transactions and companies. (Dkt. No. 1.) Plaintiffs allege that using these sham companies as supposed account receivables of five legitimate companies, Defendant Prithvi Information Solutions Ltd ("PISL") and its affiliates, officers, directors and certain individuals acting in concert contracted with Kyko for factoring services. (Dkt. No. 11. at 2.) PISL and several affiliated companies executed guarantees with Kyko, promising to pay any obligation owed under the factoring agreement. Kyko alleges that in early 2013, Defendants stopped paying their invoices, leaving $17,000.00 outstanding. (Dkt. No. 11 at 4.)

The Complaint alleges fraud, negligent/intentional misrepresentation, conversion, unjust enrichment, Civil RICO claims for wire and mail, financial institution fraud, temporary and preliminary injunctive relief, and (against the entities who signed the guarantees) breach of guarantees. (Dkt. No. 1.)

Based on the Complaint and declarations submitted by Plaintiff, this Court issued an ex parte Temporary Restraining Order, finding Plaintiffs adequately pled a prima facie case for fraud and were likely to succeed on the merits of their claims. (Dkt. No. 11 at 10.) Shortly after the Order, twelve of the named Defendants, including Madhavi Vuppalapati, settled and confessed to judgment. (Dkt. Nos. 70, 116.)

Plaintiffs then obtained a Writ of Execution pursuant to which the King County Sheriff seized various items of personal property, including a computer owned by Ms. Vuppalapati, from Ms. Vuppalapati's residence on February 12, 2014. (Firuz Decl., Dkt. No. 164 & Ex. A.) The computer was sold at a public auction, and an attorney for Plaintiffs outbid a representative sent by Defendants and purchased the computer. (Dkt. No. 164 at 2–3; Dkt. No. 168 at 3; Jayaraman Decl., Dkt. No. 179 at 2.) Plaintiffs sent the computer to a third party for analysis (Dkt. No. 167 at 1–2) and now request a ruling as to the admissibility of potentially attorney-client privileged documents on the computer. (Dkt. No. 163.) Defendants, meanwhile, contend the actions of Plaintiffs violated ethical rules, that Plaintiffs must return the computer to Defendants, and that their attorneys should be disqualified from further representation of Plaintiffs. (Dkt. No. 168.)

**Analysis**

I.    Disqualification

Defendant's Motion to Disqualify Plaintiffs' firms (Dkt. No. 168) is based on a case applying an old version of the model ethical rules and an outdated ABA opinion. See Richards v. Jain, 168 F.Supp.2d 1195 (W.D. Wash. 2001); Mt. Hawley Ins. Co. v. Felman Production, Inc., 271 F.R.D. 125, 130–31 (S.D.W.Va. 2010). The current version of RPC 4.4 does not require return of inadvertently sent documents, so Plaintiffs cannot be faulted for failure to do so. See Wash. RPC 4.4(b).

It is true that when a party wrongfully obtains documents outside the normal discovery process, a court may impose sanctions including "dismissal of the action, the compelled return of all documents, restrictions regarding the use of the documents at trial, disqualification of counsel and monetary sanctions." Lynn v. Gateway Unified School Dist., No. 2:10–CV–00981–JAM–CMK, 2011 WL 6260362, *5 (E.D. Cal. Dec. 15, 2011) (citing Fayemi v. Hambrecht & Quist,

1  Inc., 174 F.R.D. 319, 324–27 (S.D.N.Y.1997)). However, such sanctions are only available
2  where the acquisition of documents was wrongful. Niceforo v. UBS Global Asset Management
3  Americas, Inc., -- F.Supp.2d --, 2014 WL 2071041, *2 (S.D.N.Y.); see also Josephson v.
4  Marshall, 2001 WL 815517, *2 (S.D.N.Y. July 19, 2001) (holding that where documents were
5  obtained outside the normal discovery process but not wrongfully, ordinary attorney-client
6  privilege analysis applies).

7       Here, Plaintiffs' acquisition of the computer was not inherently wrongful. Plaintiffs
8  purchased the computer at a public auction. To the extent Plaintiffs intended to obtain privileged
9  materials through this purchase, the ethical considerations become somewhat murkier, but
10 Plaintiffs claim they have not reviewed the materials (Dkt. No. 197 at 4), and Defendants have
11 not cited case law that supports sanctions in this context.

12      Defendants also challenge Plaintiffs' use of forensic analysis to assess the contents of the
13 hard drive, citing a WSBA opinion about the use of metadata that applied RPC 4.4(a). (Dkt. No.
14 168 at 7–8.) See WSBA Advisory Opinion 2216; RPC 4.4(a) ("In representing a client, a lawyer
15 shall not use means that have no substantial purpose other than to embarrass, delay, or burden a
16 third person, or use methods of obtaining evidence that violate the legal rights of such a
17 person."). Defendants' use of a third party vendor to make a copy of the hard drive is not
18 equivalent to metadata mining of documents produced through the normal discovery process,
19 because whereas the hard drive might plausibly contain many documents unprotected by any
20 privilege, metadata mining is expressly aimed at the kind of information one would expect to be
21 protected by attorney-client privilege and/or work-product protections. See WSBA Advisory
22 Opinion 2216 ("Metadata is the 'data about data' that is commonly embedded in electronic
23 documents and may include the date on which a document was created, its author(s), date(s) of
24

ORDER ON MOTION TO DISQUALIFY AND
MOTION TO DETERMINE ADMISSIBILITY- 4

1  revision, any review comments inserted into the document, and any redlined changes made in the
2  document.") Because it their actions had a legitimate purpose apart from the discovery of
3  privileged documents, Defendants' use of the hard drive as alleged by Plaintiffs does not violate
4  4.4(a).

5      II.    <u>Waiver of Attorney-Client Privilege</u>

6      Plaintiffs now argue that to the extent the hard drive contains attorney-client privileged
7  materials, that privilege was waived by a failure to secure the materials. (Pl's Admissibility Mot.,
8  Dkt. No. 163.)

9      Plaintiffs vacillate between calling Defendants' relinquishment of the computer an
10 "involuntary disclosure" or an "inadvertent disclosure." First, Plaintiffs cite Federal Rule of
11 Evidence 502(b), which concerns inadvertent disclosure. (Dkt. No. 163 at 4–5.) Next, they argue
12 the issue is involuntary disclosure. (Dkt. No. 163 at 7.) This difficulty is understandable: As in
13 situations where an opposing party obtains privileged information from a party's trash, "[t]his
14 case lies between the inadvertent disclosure cases, where the information is transmitted in public
15 or otherwise clearly not adequately safeguarded, and the involuntary disclosure cases, where the
16 information is acquired by third parties in spite of all possible precautions." <u>Suburban Sew 'N</u>
17 <u>Sweep, Inc. v. Swiss-Bernina, Inc.</u>, 91 F.R.D. 254, 260 (N.D. Ill. 1981).

18     Federal Rule of Evidence 502(b) is of uncertain applicability in this circumstance because
19 the disclosure (if the relinquishment of the computer to the sheriff's auction can be termed a
20 disclosure) occurred outside the usual discovery process—in other words, the disclosure was
21 arguably not "made in a federal proceeding." FRE 502(b); <u>but see</u> <u>Multiquip, Inc. v. Water</u>
22 <u>Management Systems LLC</u>, No. CV 08–403–S–EJL–REB, 2009 WL 4261214, *3 n.3 (D. Idaho
23 Nov. 23, 2009) (holding that "FRE 502(b) applies broadly to conduct taking place within the
24

ORDER ON MOTION TO DISQUALIFY AND
MOTION TO DETERMINE ADMISSIBILITY- 5

1　context of a federal proceeding."). Similarly, the clawback procedures outlined in FRCP

2　26(b)(5)(B) do not apply to documents obtained outside the usual discovery process. See United

3　States v. Comco Management Corp, No. SACV 08-0668-JVS (RNBx), 2009 WL 4609595, *2

4　(C.D. Cal. 2009); FRCP 26(b)(5)(B) (requiring that the privileged information be "produced in

5　discovery"). However, Rule 502(b) was a codification of prior common law rulings regarding

6　waiver, and waiver in this circumstance is still be governed by the common law of attorney-

7　client privilege in Washington.

8　　　　Washington courts use a balancing test to determine waiver that is similar to Rule 502(b).

9　See Sitterson v. Evergreen School Dist. No. 114, 147 Wn. App. 576, 587–88 (2008). The factors

10　that are considered in determining waiver are: "(1) the reasonableness of precautions taken to

11　prevent disclosure, (2) the amount of time taken to remedy the error, (3) the scope of discovery,

12　(4) the extent of the disclosure, and (5) the overriding issue of fairness." Id. at 588. See also Zink

13　v. City of Mesa, Nos. 27596–5–III, 28112–4–III, 2011 WL 2184965, *17 (Wn. App. June 7,

14　2011) ("Accidental release of all the communications on appeal, however, did not waive the

15　exemption for all of the documents because the disclosure was unpreventable and inadvertent.").

16　　　　The closest analogy to the unique fact pattern at issue here may be early cases in which

17　an opposing party discovers a privileged document in the other party's trash. The act of

18　discarding privileged material can lead to waiver if the opposing party can show that the person

19　who discarded the material was unconcerned with maintaining its confidentiality. So, for

20　example, when the discarded documents are fully legible, courts often hold that the privilege was

21　waived. See, e.g., United States v. McMahon, Nos. 95-5919, 95-5920, 95-5921, 1998 WL

22　372477, *5 & n.7 (4th Cir. June 8, 1998) (per curiam). But the precautions taken by the

23　discarding party are a paramount concern: When a privileged memo was discarded but torn into

24

ORDER ON MOTION TO DISQUALIFY AND
MOTION TO DETERMINE ADMISSIBILITY- 6

1  16 pieces, another court held that the privilege had not been waived. <u>McCafferty's, Inc. v. The</u>

2  <u>Bank of Glen Burnie</u>, 179 F.R.D. 163, 169 (D. Md. 1998) ("The significance of this fact cannot

3  be overstated, for it evidences her intent . . . to destroy or make the memo unintelligible before it

4  was thrown away."). When the person asserting the privilege was separated from the privileged

5  material forcibly and under time pressure, courts are also less likely to find waiver. <u>See, e.g.</u>,

6  <u>Sparshott v. Feld Entertainment, Inc.</u>, No. 99-CV-0551 (JR), 2000 WL 35825607 (D.D.C. Sept.

7  21, 2000).

8        Here, Defendant Madhavi Vuppalapati states in a declaration that she had "someone at

9  her office" reformat the hard drive on the computer and install a new operating system.

10  (Vuppalapati Decl., Dkt. No. 170 at 2.) She further states that she believed her documents had

11  been erased and were not readily accessible. (<u>Id.</u>) There is some dispute over whether the hard

12  drives were password protected at the time of the sale. (<u>See id.</u> (Vuppalapati hard drive);

13  Jayaraman Decl., Dkt. No. 169 at 2(d-link); Warren Decl., Dkt. No. 187 at 2. (stating that a clone

14  of the Vuppalapati hard drive was not password protected and that the d-link was not analyzed).)

15  It is not inconceivable that Ms. Vuppalapati believed no one could access the documents on her

16  computer, even if reformatting a hard drive does not have that actual effect. The facts here bear a

17  closer resemblance to the memo torn into 16 pieces than a document simply placed in a trash can

18  without alteration. Along with Defendants' prompt efforts to remedy the error by filing a motion

19  with the Court and the general sense that parties should not be able to force waiver of attorney-

20  client privilege through investigative activities outside the discovery process and a superior

21  understanding of the relevant technology, the Washington balancing test weighs against waiver.

22

23

24

ORDER ON MOTION TO DISQUALIFY AND
MOTION TO DETERMINE ADMISSIBILITY- 7

**Conclusion**

Plaintiffs' Motion to Disqualify Counsel is DENIED because Plaintiffs failed to show that Defendants violated Rules of Professional Conduct and Defendants' Motion to Determine Admissibility is DENIED insofar as it seeks waiver of Plaintiffs' attorney-client privilege. Plaintiffs are further ORDERED to provide Plaintiffs with a copy of the hard drive within three (3) days, and Plaintiffs are ORDERED to review the hard drive for privileged documents and provide Defendants with a privilege log within seven (7) days of the transfer.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 13th day of June, 2014.

Marsha J. Pechman
Chief United States District Judge

ORDER ON MOTION TO DISQUALIFY AND
MOTION TO DETERMINE ADMISSIBILITY- 8